**YEN PILCH ROBAINA & KRESIN PLC**
6017 N. 15th Street
Phoenix, Arizona 85014
Telephone: (602) 682-6450
Ty D. Frankel (027179)
TDF@yprklaw.com

**YEN PILCH ROBAINA & KRESIN PLC**
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
Telephone: (619) 756-7748
Patricia N. Syverson (020191)
PNS@yprklaw.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher J. Houck, on behalf of himself and all those similarly situated,<br><br>         Plaintiff,<br><br>    v.<br><br>Maricopa County,<br><br>         Defendant. | Case No. 2:23-cv-00068-DGC<br><br>**PLAINTIFF CHRISTOPHER J. HOUCK'S MOTION FOR CONDITIONAL CERTIFICATION UNDER THE FAIR LABOR STANDARDS ACT** |

Plaintiff Christopher J. Houck ("Houck") respectfully moves this Court for entry of an order: (1) conditionally certifying this case as a collective action under section 216(b) of the Fair Labor Standards Act ("FLSA"); (2) ordering that notice be issued to all current and former lieutenants employed by Maricopa County in the Patrol Division from January 11, 2020 to the present (the "Patrol Lieutenants"); (3) authorizing Houck to mail, email, and text notice to all Patrol Lieutenants; (4) approving the Proposed Notice and Consent to Opt-In to Lawsuit (**Exhibits 1-2)**; and (5) requiring that within fourteen days of the Court's ruling on this Motion, Defendant Maricopa County (the "County"), produce the requested contact information of all Patrol Lieutenants. In support of his Motion, Houck relies on the pleadings, a declaration executed by Christopher J. Houck **(Exhibit 3)**, corroborating declarations from Opt-In Plaintiffs Halverson **(Exhibit 4)**, Hunter **(Exhibit 5)**, and Sanchez **(Exhibit 6)**, and County documents. The evidence and pleadings presented by Houck sufficiently demonstrate that Houck and other Patrol Lieutenants are similarly situated with respect to the County's policies and practices applicable to them, which can be uniformly analyzed to determine whether the Patrol Lieutenants are nonexempt employees due unpaid overtime under the FLSA.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Houck brings this action against the County for its unlawful failure to pay overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Houck alleges that the County improperly classified him and the other similarly situated Patrol Lieutenants as exempt from overtime, when in reality their primary duties are nonexempt in nature. Through this action, Houck seeks to recover the overtime compensation that the Patrol Lieutenants have earned but not been paid. To that end, Houck seeks conditional certification pursuant to 29 U.S.C. § 216(b) of the following FLSA collective defined as:

> All current and former lieutenants employed by Maricopa County in the Patrol Division from January 11, 2020 through the date FLSA Notice is distributed ("Patrol Lieutenants").

Here, 14 Patrol Lieutenants have already opted in to this collective action in addition to Houck, and numerous similarly situated Patrol Lieutenants continue to be victimized by the County's illegal overtime wage practices. As a result, Houck requests authorization to send notice to potential opt-in plaintiffs and expedited discovery of the names and contact information of all current and former Patrol Lieutenants from January 11, 2020 through the date notice is distributed.[1] The statute of limitations continues to run for each individual's claim until he or she opts in, so with each passing day, many Patrol Lieutenants suffer a reduction in the amount they can recover for the County's violations of the FLSA until they opt in. 29 U.S.C. § 256(b); *see also Chastain v. Cam*, 2014 WL 3734368, at *12 (D. Or. July 28, 2014).

## II.   FACTUAL BACKGROUND

Plaintiff Houck has worked for the Maricopa County Sherriff's Office ("MCSO") from February 2007 to the present. Complaint at Doc. 1 ("Complaint") at ¶ 7; **Exhibit 3**, Declaration of Plaintiff Christopher Houck ("Houck Decl") at ¶ 3. Houck was a full-time, non-exempt employee of the County employed as a Deputy from August 2007 when he completed training until September 2017 and then as Sergeant for MSCO from September 2017 until April 4, 2022. Complaint at ¶ 8; Houck Decl. at ¶ 4. On April 4, 2022, Houck was promoted to a Lieutenant employed by the County at the MCSO in the Patrol Division and continues in the position through the present time. Complaint at ¶ 9; Houck Decl. at ¶ 5. The County hires Patrol Lieutenants like Houck to provide law enforcement throughout Maricopa County for the MCSO. Complaint at ¶ 12; Houck Decl. at ¶ 6; **Exhibit 4**, Declaration of Opt In Plaintiff Jonathan Halverson ("Halverson Decl.") at ¶ 4; **Exhibit 5**, Declaration of Opt In Plaintiff Matthew Hunter ("Hunter Decl.") at ¶ 4; **Exhibit 6**, Declaration of Opt In Plaintiff Emmanuel Sanchez ("Sanchez Decl.") at ¶ 4.

As a Patrol Lieutenant, Houck's primary job duties are law enforcement duties he

---

[1] A two-year statute of limitations exists for filing a case under the FLSA, or three years if the violation was willful. 29 U.S.C. § 255(a); *see also Curphey v. F&S Mgmt. I LLC*, 2021 WL 487882, at *5 (D. Ariz. Feb. 10, 2021); *Kuzich v. HomeStreet Bank*, 2018 WL 3872191, at *3 (D. Ariz. Aug. 15, 2018).

typically performs alongside the officers on his team on a daily basis, including rescuing crime victims, preventing or detecting crimes, conducting investigations and inspections for violations of law, performing surveillance, pursuing, restraining, and apprehending suspects, detaining or supervising suspected and convicted criminals, interviewing witnesses, and interrogating suspects. Complaint at ¶¶ 19-20; Houck Decl. at ¶ 9. While Houck has some office duties, his primary and most important duty as a Patrol Lieutenant is law enforcement acting as a first responder. Complaint at ¶ 21; Houck Decl. at ¶ 10. Houck spends every day working monitoring the police radio for patrol activity, so that he can respond to first responder law enforcement calls as required by the County. Complaint at ¶ 22; Houck Decl. at ¶ 11. Patrol Lieutenants are expected to provide law enforcement as their primary duty for the County, and they are required to respond to all high-level patrol calls and report as first responders in the field for all such calls. Complaint at ¶ 23; Houck Decl. at ¶ 12; Sanchez Decl. at ¶ 8; Hunter Decl. at ¶ 8; Halverson Decl. at ¶ 8.

Houck's supervisory role is limited, both because of the importance of his primary duty of law enforcement and because he lacks discretion in his duties involving supervision of other employees. Complaint at ¶ 9; Houck Decl. at ¶ 9. Houck's discretion in his administrative or supervisory role is limited by the decisions of his Captain, who has actual decision making authority regarding management and operations of the Patrol Division. Complaint at ¶ 25; Houck Decl. at ¶ 10. Houck's primary duty is not management. Complaint at ¶ 26; Houck Decl. at ¶ 15. He does not have authority to hire and fire employees and does not provide input regarding their employment or promotion. *Id.* He does not have discretion over other employees' employment. *Id.* He does not run a division within the MCSO. *Id.* His primary duty is not the performance of office or non-manual work directly related to the management or general business operations of MCSO. *Id.* Nor is his primary duty the performance of work requiring knowledge of an advanced type customarily acquired by prolonged course of intellectual instruction. *Id.* Ultimately, the Patrol Lieutenants' primary duty remains law enforcement, despite that they may have other limited administrative and supervisory duties as well. Complaint at ¶¶ 20-22; Houck Decl.

at ¶¶ 12-13; Halverson Decl. at ¶¶ 8-9; Sanchez Decl. at ¶¶ 8-9; Hunter Decl. at ¶¶ 8-9. They are required to be in uniform to respond to calls at a moment's notice. Houck Decl. at ¶ 16; Sanchez Decl. at ¶ 12; Hunter Decl. at ¶ 12; Halverson Decl. at ¶ 12. They must login to the Computer Aided Dispatch System so they can be dispatched on law enforcement patrol calls. *Id.* They must monitor the law enforcement radio and other patrol equipment to respond to calls. *Id.*

Despite the non-exempt nature of Houck's duties as a Patrol Lieutenant, the County classifies Houck and the Patrol Lieutenants as exempt managers and pays them a "salary." Complaint at ¶ 27; Houck Decl. at ¶¶ 17-18. Houck's "salary" as a Patrol Lieutenant is paid on an hourly basis with the requirement that Houck account for 80 hours every two weeks even when he actually works more than that amount of time. *Id.* As a Patrol Lieutenant, Houck routinely works more than forty hours per week and he is not paid time and a half for those hours worked over forty in a workweek. Complaint at ¶ 30; Houck Decl. at ¶ 19. Houck's overtime hours during a typical week ranges from two to nine hours. Complaint at ¶ 31; Houck Decl. at ¶ 20. For example, for the two week pay period from July 10, 2022 through July 24, 2022, Houck's pay stubs show that he worked 5.5 hours of overtime. Complaint at ¶ 32; Houck Decl. at ¶ 20. However, Houck was only paid for 80 hours at his regular rate of pay for this two week period, and he was not paid overtime for the 5.5 hours he was required to work beyond the forty hours per week reflected on his pay statements for that two week pay period. *Id.*

During his employment, Houck has spoken with other Patrol Lieutenants about the County's overtime policies, learning that they also were subject to the same pay practices that he has experienced. Houck Decl. at ¶ 21. Houck has first-hand knowledge that the County's policies applied uniformly to all Patrol Lieutenants from having conversations with Patrol Lieutenants who have the same job duties as he does and observing how they perform their jobs. Houck Decl. at ¶¶ 21-22. From his conversations and experiences, Houck learned that other Patrol Lieutenants are subject to the same written rules and policies that he is, and they are compensated in the same manner using the same compensation

policies that result in unpaid overtime. Houck Decl. at ¶¶ 21-24. All the Patrol Lieutenants are classified as exempt from overtime, despite having the primary duty of law enforcement, and they are not paid overtime. Complaint at ¶¶ 30, 34, 36; Houck Decl. at ¶¶ 26-27; Halverson Decl. at ¶ 21; Sanchez Decl. at ¶ 19; Hunter Decl. at ¶ 19. This is supported by the County's written documents applicable to all the Patrol Lieutenants, including the County's pay statements, Lieutenant job description, and written overtime policy. *See* Houck Decl. at ¶¶ 20, 23, 25, Exhibits A-C (Pay Statements (showing Patrol Lieutenants paid an hourly rate for 80 hours per pay period and no overtime compensation for hours worked over forty per week); Exempt Employee Policy (describing compensation policies applicable to exempt employees who the County considers ineligible for overtime); and Lieutenant Job Description (describes job duties of Patrol Lieutenants, including first responder duties, and identifies Patrol Lieutenants as "exempt" employees)); Halverson Decl. at ¶ 17, Exhibit A (Pay Statements (showing Patrol Lieutenants paid an hourly rate for 80 hours per pay period and no overtime compensation for hours worked over forty per week)).

Finally, in addition to the County documents and Houck's experiences, Opt-In Plaintiffs Halverson, Hunter, and Sanchez's experiences further support the uniformity of the County's overtime practices applicable to the Patrol Lieutenants. Like Houck, Opt-In Plaintiffs Halverson, Hunter, and Sanchez are Patrol Lieutenants classified as exempt from overtime, but like Houck, their primary duty remained first responder law enforcement duties. Halverson Decl. at ¶¶ 5, 14; Hunter Decl. at ¶¶ 5, 13; Sanchez Decl. at ¶¶ 5, 13. The Patrol Lieutenants were subject to the same County overtime policies and job duties. Hunter Decl. at ¶ 18; Halverson Decl. at ¶ 20; Sanchez Decl. at ¶ 18. Like Houck, Opt-In Plaintiffs Halverson, Hunter, and Sanchez worked more than 40 hours per week and were not paid overtime. Halverson Decl. at ¶ 16; Hunter Decl. at ¶ 15; Sanchez Decl. at ¶ 15. In addition, Opt In Plaintiffs Hunter, Halverson, and Sanchez have first-hand knowledge that the County's overtime compensation policies applied uniformly to Patrol Lieutenants from having conversations with them and observing them. Halverson Decl. at ¶¶ 18-21; Sanchez

Decl. at ¶¶ 16-19; Hunter Decl. at ¶¶ 16-19. Opt-In Plaintiffs Hunter, Halverson, and Sanchez had conversations with other Patrol Lieutenants and observed other Patrol Lieutenants while they work. *Id.* From those experiences, Opt-In Plaintiffs Halverson, Hunter, and Sanchez learned that other Patrol Lieutenants are subject to the same written rules and policies and are compensated using the same compensation policies that resulted in unpaid overtime. *Id.* Houck and Opt-In Plaintiffs Sanchez, Hunter, and Halverson collectively identified by name more than ten other Patrol Lieutenants they know who are subject to the same overtime policies that they are. Houck Decl. at ¶ 21; Sanchez Decl. at ¶ 16; Halverson Decl. at ¶ 18; Hunter Decl. at ¶ 16.

Finally, in addition to the County documents and the experiences outlined in the supporting declarations, 15 individuals – Plaintiff Houck and 14 Opt-In Plaintiffs – have already affirmed they are suffering the same FLSA violations from the County's overtime policies that apply to the Patrol Lieutenants made evident by their decision to opt in to this case.

### III.   LEGAL ARGUMENT

#### A.   CONDITIONAL CERTIFICATION IS APPROPRIATE BECAUSE ALL PATROL LIEUTENANTS ARE SIMILARLY SITUATED.

Pursuant to 29 U.S.C. § 216(b) of the FLSA, courts may authorize notice to a class that is "similarly situated" to the named plaintiff. *Stickle v. SCI W. Mkt. Support Ctr.*, 2009 WL 3241790, at *1 (D. Ariz. Sept. 30, 2009); *Wertheim v. State of Arizona*, 1993 WL 603552, at *2 (D. Ariz. Sept. 30, 1993). If the plaintiff satisfies the requisite "notice stage" determination that plaintiffs are similarly situated, conditional certification of the proposed class is proper and the case should proceed to the notification period, permitting class members to opt-in to the lawsuit.[2] *See Stickle*, 2009 WL 3241790, at *2; *Wertheim*, 1993 WL 603552, at *1. The FLSA "similarly situated" standard utilized for certification is less

---

[2] Courts also accept consents to opt-in from similarly situated employees prior to the Court authorizing distribution of notice, and 14 Opt-In Plaintiffs have already joined this case in addition to Houck (Docs. 1-2 (Exhibit A to Complaint), 5-18, 24). *See Wertheim*, 1993 WL 603552, at *8.

stringent than the requirements of Federal Rule of Civil Procedure 23(b)(3). *Taylor v. AutoZone Inc.*, 2014 WL 5843522, at *2 (D. Ariz. Nov. 12, 2014) (FLSA "similarly situated" standard "remains less stringent than the requirement that common questions predominate in certifying class actions under Rule 23"); *Wilson v. Maxim Healthcare Servs., Inc.*, 2014 WL 7340480, at *2 (W.D. Wash. Dec. 22, 2014) (same); *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) (claims and positions of employees need not be identical to meet § 216(b) similarly situated standard).

### 1. The initial conditional certification requirement is "lenient."

"The majority of courts,' including those within the District of Arizona, have 'adopted the two-tiered approach[]' in deciding whether to grant FSLA [sic] collection action status." *Villarreal v. Caremark LLC,* 2014 WL 4247730, at *3 (D. Ariz. Aug. 21, 2014) (citing *Anderson v. Ziprealty, Inc.,* 2013 WL 1882370, at *2 (D. Ariz. May 3, 2013) (citing cases)); *Barrera v. U.S. Airways Grp., Inc.,* 2013 WL 4654567, at *2 (D. Ariz. Aug. 30, 2013) (same); *Stickle,* 2009 WL 3241790, at *2 (same).[3] "At this first stage, the court require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Villarreal,* 2014 WL 4247730, at *3 (quoting *Stickle,* 2009 WL 3241790, at *2) (internal quotation marks and citations omitted). "All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." *Wertheim,* 1993 WL 603552, at *1. "'Plaintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members.'" *Juvera v. Salcido,* 294 F.R.D. 516, 520 (D. Ariz. 2013) (quotations omitted).

The requirement is a "lenient" burden of illustrating that a plaintiff is similarly

---

[3] This two-tiered approach utilized in this District has been affirmed by five United States Courts of Appeals. *See White v. Baptist Mem'l Health Care Corp.,* 699 F.3d 869, 877 (6th Cir. 2012); *Myers v. Hertz Corp.,* 624 F.3d 537, 554-55 (2d Cir. 2010); *Sandoz v. Cingular Wireless LLC,* 553 F.3d 913, 915 n.2 (5th Cir. 2008); *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1260 (11th Cir. 2008); *Thiessen v. Gen. Elec. Capital Corp.,* 267 F.3d 1095, 1105 (10th Cir. 2001).

situated to others, which may be satisfied with affidavits and the complaint alone. *Goudie v. Cable Commc'ns, Inc.*, 2008 WL 4628394, at *3-4 (D. Or. Oct. 14, 2008); *see also Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007); *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1138-39 (D. Nev. 1999). A plaintiff's burden is "low" at this initial, notice stage. *Villarreal,* 2014 WL 4247730, at *3 (citing, *inter alia, Wellens v. Daiichi Sankyo Inc.,* 2014 WL 1422979, at *2 (N.D. Cal. Apr. 11, 2014) ("[S]ome courts have held that the plaintiff bears a very light burden in substantiating allegations at this [notice] stage.")). "The Court uses a fairly lenient standard because the Court does not have much evidence" in that ordinarily, as here, the case is near its inception. *See Juvera,* 294 F.R.D. at 520 (citing *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1217-18 (11th Cir. 2001) (other citation omitted).

### 2. The County's overtime policies uniformly apply to all Patrol Lieutenants.

Given this lenient burden, motions to certify a class for notification purposes are "typically" granted. *Kesley v. Entm't U.S.A. Inc.*, 67 F. Supp. 3d 1061, 1065 (D. Ariz. 2014); *Villarreal v. Caremark LLC*, 66 F. Supp. 3d 1184, 1189 (D. Ariz. 2014). Houck need only show an identifiable factual or legal nexus between his claims and those of the similarly situated Patrol Lieutenants, such that hearing the claims together promotes judicial efficiency and comports with the FLSA's broad remedial policies. *See Stickle*, 2009 WL 3241790, at *3 (citing *Wertheim*, 1993 WL 603552, at *1). District courts have consistently granted FLSA motions for conditional certification in actions brought by law enforcement, including lieutenants, who contend they are due unpaid overtime like Houck and the Patrol Lieutenants here. *See, e.g., Udd v. City of Phoenix*, 2020 WL 8996584, at *3 (D. Ariz. March 23, 2023) (conditionally certifying FLSA collective of homicide detectives who alleged they had to work overtime off the clock without compensation); *Burke v. Management & Training Corp.*, 2017 WL 3166840, at *3 (N.D. Miss. July 25, 2017) (conditionally certifying FLSA collective of lieutenants who showed they performed similar duties, had similar responsibilities, were paid on a salary basis, were classified as exempt

from overtime, and did not receive overtime despite working more than forty hours a week); *Lewis v. Geo Group, Inc.*, 2009 WL 3763821, at *2-*3 (W.D. Okla. Nov. 9, 2009) (conditionally certifying FLSA collective of lieutenants who allege they were misclassified as exempt and should have been paid overtime for hours they worked over forty in a workweek).

Here, Houck satisfies the standard for conditional certification. The key issue is whether the Patrol Lieutenants were properly classified as exempt from overtime, when their job duties uniformly require them to perform nonexempt first responder duties as their primary and most important responsibility. The key facts revolve around uniform compensation policies applicable to all the Patrol Lieutenants, which is demonstrated in the pleadings, declarations from Houck and Opt In Plaintiffs Halverson, Hunter, and Sanchez, and County documents. *See* Section II, above. Simply put, the County classifies all of its Patrol Lieutenants as exempt employees and does not pay them overtime even when they work more than forty hours in a workweek. *See, e.g.*, Complaint at ¶¶ 30, 34, 36; Houck Decl. at ¶¶ 23, 25, 26-27; Halverson Decl. at ¶ 21; Sanchez Decl. at ¶ 19; Hunter Decl. at ¶ 19. Just as there was no need for the County to undertake an individualized inquiry into the status of each Patrol Lieutenant when the County developed and implemented the overtime policies uniformly classifying them as exempt from overtime, there is no need for the Court to conduct an individualized inquiry here. "Their common classification supports the conclusion that all class members are similarly situated." *Taylor v. Autozone, Inc.*, 2011 WL 2038514, at *2 (D. Ariz. May 24, 2011) (citing *Bogor v. Am. Pony Express, Inc.*, 2010 WL 1962465, at *3 (D. Ariz. May 17, 2010)).

The analysis of the Patrol Lieutenants' classification as exempt employees under the FLSA will require examination of evidence common to all the Patrol Lieutenants. All the Patrol Lieutenants are governed by the same compensation policies and procedures. *See* Section II, above. They are all paid a "salary" comprised of an hourly rate that accounts for 80 hours of work every two weeks even when they actually work more time than that. *See* Complaint at ¶ 27; Houck Decl. at ¶ 18; Halverson Decl. at ¶ 15; Sanchez Decl. at ¶ 14;

Hunter Decl. at ¶ 14.  They are all classified as exempt from overtime, despite having the primary duty of law enforcement.  *See* Complaint at ¶¶ 19-20, 27; Houck Decl. at ¶¶ 9-10, 17, 25-26; Sanchez Decl. at ¶¶ 5-6, 13, 19; Hunter Decl. at ¶¶ 5-6, 13, 19; Halverson Decl. at ¶¶ 5-6, 14, 21.  They lack discretion in their supervisory and administrative tasks, with the ultimate decision-making authority regarding these duties in the hands of their Captain.  Complaint at ¶¶ 24-26; Houck Decl. at ¶¶ 13-15; Sanchez Decl. ¶¶ 9-11; Halverson Decl. at ¶¶ 9-11; Hunter Decl. at ¶¶ 9-11.  Additionally, the Patrol Lieutenants have the same job duties – performing the same primary duty of law enforcement.  Complaint at ¶ 23; Houck Decl. at ¶¶ 12, 23; Sanchez Decl. at ¶ 8; Hunter Decl. at ¶ 8; Halverson Decl. at ¶ 8.  These common policies and procedures support conditional certification.  *See Taylor*, 2011 WL 2038514, at *4 ("We consider the company policies. . . for their illustration of the consistency of their operations across defendants thousands of stores. . ."); *Bogor*, 2010 WL 1962465, at *4 (declarations of opt-in plaintiffs who were subject to the same policies and procedures as named plaintiffs support conditional certification).

Given the foregoing – that the Patrol Lieutenants have a common classification, common job function, common policies and procedures applicable to them, and common compensation structure – Houck has more than satisfied the similarly situated requirement, especially given that the "lower standard for conditional certification applies."  *See Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997) ("At the notice stage, courts. . . require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan[.]") (internal quotation marks and citation omitted).  Houck has shown that the Patrol Lieutenants perform similar duties, have similar responsibilities, were compensated in the same manner, were classified as exempt from overtime under the FLSA, regularly and repeatedly worked in excess of forty hours per week, and they were denied overtime.  The Court should certify this matter as a collective action so that notice to other Patrol Lieutenants can go forward.

**B.     NOTICE SHOULD BE GIVEN TO PATROL LIEUTENANTS.**

The numerous other similarly situated Patrol Lieutenants victimized by the County's

overtime practices should be notified about this lawsuit so they may opt-in if they desire. While the FLSA does not provide specific procedures by which claimants may opt-in, the United States Supreme Court has held that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b). . . by facilitating notice to potential plaintiffs."[4] *Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 169 (1989).

The court's facilitation of notice to potential opt-in plaintiffs serves the broad remedial purpose of the FLSA. *See Brooks v. BellSouth Telecomms., Inc.,* 164 F.R.D. 561, 566 (N.D. Ala. 1995). As the Supreme Court explained, the benefits of a collective action proceeding under § 216(b) "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche*, 493 U.S. at 170.

Once the Court finds that the putative class is similarly situated and certifies the collective action, there is a strong presumption that authorization of notice follows. *See Wertheim*, 1993 WL 603552, at *6 (providing plaintiffs with multiple chances to draft an acceptable form of notice after defendants' objections to language in notice); *see Ballaris v. Wacker Silttronic Corp.*, 2001 WL 1335809 at *3 (D. Or. Aug. 24, 2001) (judge offering "If the parties are unable to reach agreement [on the form of notice], I am available to assist via a telephone conference"). It is common for a court to approve a plaintiff's proposed notice submitted with conditional certification briefing similar to the one provided by Houck in this case (**Exhibit 1**). *See, e.g., Anthony v. Rise Services, Inc.*, 2022 WL 3042854, at *3 (D. Ariz. Aug. 2, 2022) (approving FLSA notice with content like the proposed FLSA notice submitted here); *Juvera,* 294 F.R.D. at 523 (approving draft notice submitted with conditional certification briefing and authorizing plaintiff to mail notice); *Mejia v. Bimbo Bakeries USA, Inc.*, 2017 WL 6415357, at *4 (D. Ariz. Aug. 14, 2017) (approving proposed

---

[4] Although *Hoffman-La Roche* involved litigation arising under the Age Discrimination in Employment Act, courts have since adopted its holding in actions arising under the FLSA, including the District of Arizona. *Villarreal,* 2014 WL 4247730; *see also Shaffer v. Farm Fresh, Inc.,* 966 F.2d 142, 147 n.5 (4th Cir. 1992); *H & R Block, Ltd. v. Housden,* 186 F.R.D. 399, 400 (E.D. Tex. 1999); *Garner v. G.D. Searle Pharm. & Co.,* 802 F. Supp. 418, 422 (M.D. Ala. 1991).

- 11 -

notice submitted with conditional certification motion).

Like with the decision to certify the action as a collective, the decision to permit notice is subject to the same similarly situated standard, *i.e.*, Plaintiff must establish that there are similarly situated individuals who may desire to opt in to the action. *See Dybach v. State of Florida Dept. of Corr.,* 942 F.2d 1562, 1567-68 (11th Cir. 1991); *see Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519-20 (D. Md. 2000) (explaining that prior to issuing notice in a collective action, plaintiffs must make "some factual showing by affidavit or otherwise" that potential plaintiff group is similarly situated); *D'Anna v. M/A-COM, Inc.,* 903 F. Supp. 889, 893-94 (D. Md. 1995) (requiring only a "preliminary factual showing that a similarly situated group of potential plaintiffs exists" prior to issuing notice).  This requirement is satisfied by a "modest factual showing" that the named plaintiffs and other potential plaintiffs "were victims of a common policy or plan that violated the law." *Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003); *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998).  When analyzing whether the required showing has been made, the Court should not evaluate the merits of Houck's claim. *Hoffmann v. Sbarro, Inc.,* 982 F. Supp. 249, 262 (S.D.N.Y. 1997).  And, "[f]actual disputes do not negate the appropriateness of court facilitated notice." *Camper,* 200 F.R.D. at 520.

As explained above, Houck readily satisfies the similarly situated standard.  The pleadings and evidence demonstrate that he and similarly situated Patrol Lieutenants have the same job duties and are subject to the same uniform rules and policies systematically imposed on them by the County.  The Patrol Lieutenants were improperly classified as exempt from overtime and denied overtime wage compensation according to County policies uniformly applied to them.  *See* Section II, above.  Absent notice, the Patrol Lieutenants likely will not receive timely, complete, and accurate information about this action, nor will they have meaningful access to the court or an efficient method of vindicating their rights. *Cf. Hoffman-LaRoche,* 493 U.S. at 170 ("[a] collective action allows. . .plaintiffs the advantage of lower individual costs to vindicate rights by the pooling

of resources").

### C. NOTICE MUST BE EXPEDITED DUE TO THE RUNNING OF THE STATUTE OF LIMITATIONS.

Similarly situated Patrol Lieutenants unknowingly depend on this Court to authorize notice of the pendency of this case. The statute of limitations continues to run until each individual files a written consent to join the action as a party plaintiff. *See* 29 U.S.C. § 256. Since similarly situated Patrol Lieutenants' claims are eroding with each passing day, notice should be promptly authorized to reduce the losses suffered. For this reason, courts have tolled the statute of limitations during the pendency of a decision for conditional certification for equitable reasons. *See Lemley v. Graham Cty.,* 2014 WL 11631714, *6 (D. Ariz. May 16, 2014) (citing *Paltrow v. Jewish Orphans Home of S. Cal., Inc.,* 645 F.2d 757, 760 (9th Cir. 1981)).[5] Authorizing early notice to potential plaintiffs follows the Supreme Court's suggestion that a district court "begin its involvement early, at the point of the initial notice" in actions brought under § 216(b). *Hoffmann-La Roche,* 493 U.S. at 171. Notice must be expedited because time is of the essence.

### D. THE PROPOSED NOTICE IS FAIR AND ADEQUATE.

As the Supreme Court stressed, the effectiveness of a collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* at 170. A court-authorized notice prevents dissemination of "misleading communications" and reduces the likelihood that corrective notices will be necessary. *Id.* at 171.

Houck's proposal for court-approved notice (**Exhibit 1**) is "timely, accurate, and informative," *id*. at 172, and it is similar to the types of notice approved by district courts. *See, e.g., Gjurovich,* 282 F. Supp. 2d at 106-08. The Proposed Notice: provides notice of the pendency of the action; accurately describes Houck's claims and the County's denial of

---

[5] *See also Hugler v. Kazu Constr., LLC,* 262 F.Supp.3d 1032, 1039–1040 (D. Haw. 2017) ("In the Ninth Circuit, the FLSA limitations period is subject to the doctrine of equitable tolling."); *Barba v. Seung Heun Lee,* 2009 WL 8747368, at *28 (D. Ariz. Nov. 4, 2009) (same).

- 13 -

liability; accurately describes the composition of the collective; notifies potential plaintiffs of the opportunity to opt-in, explains the procedure for exercising their right to opt-in and informs individuals that they are not required to participate; explains the legal effects of joining (or not joining) the lawsuit; advises that the Court expresses no opinion regarding the merits of Houck's claims or the County's liability; accurately recites the prohibition against retaliation for participation in an FLSA action; and, accurately conveys the unenforceability of any waiver of rights to compensation due under the FLSA. The Proposed Notice is fair and accurate and should be approved for distribution.

Houck requests that the attached Proposed Notice (**Exhibit 1**) and Consent to Opt-In to Lawsuit (**Exhibit 2**) be mailed by first class mail to all current and former Patrol Lieutenants from January 11, 2020 through the date the notice is distributed. Those interested in participating would need to timely return their consents to Houck's counsel for them to be filed with the Court within ninety days of the mailing of the notice. *See Vega v. All My Sons Bus. Dev., LLC, et al.,* 2022 WL 294216, at *4 (D. Ariz. Feb. 1, 2022) (approving 90 day deadline for filing consents); *Shoults v. G4S Secure Sol. (USA) Inc.*, 2020 WL 8674000, at *4 (D. Ariz. July 31, 2020) (same); *Adams,* 242 F.R.D. at 542 (same).

In addition to mailing, Houck requests that the Notice be simultaneously emailed to the Patrol Lieutenants at their last known email address produced by the County, which is routinely approved by courts within the Ninth Circuit, including in this District. *See, e.g., Anthony*, 2022 WL 304854, at *3 (approving notice by email and text); *Scales v. Info. Strategy Design, Inc.*, 356 F.Supp.3d 881, 888-89 (D. Ariz. 2018); *O'Neal v. America's Best Tire LLC*, 2016 WL 3087296, at *6-*7 (D. Ariz. June 2, 2016); *see also Shoults,* 2020 WL 8674000, at *4. Given the real risk that potential collective action members have changed their physical addresses and the reality that many potential collective action members will prefer electronic communication, "[p]roviding notice by first class mail and email will sufficiently assure that potential collective action members receive actual notice of this case." *Lewis v. Wells Fargo & Co.*, 669 F. Supp.2d 1124, 1128 (N.D. Cal. Oct. 26, 2009).

Houck also requests that the Patrol Lieutenants be texted about the Notice. Courts allow sending of text messages to putative collective members, recognizing the difficulties in reaching putative plaintiffs and the fact that the one constant contact most people have today is their cell phone number. *See, e.g., Anthony*, 2022 WL 3042854, at *3; *Vega,* 2022 WL 294216, at *6; *Shoults*, 2020 WL 8674000, at *4. Other courts have similarly called this distribution plan "eminently reasonable," explaining that "[t]his has become a much more mobile society with one's email and cell phone number serving as the most consistent and reliable method of communication." *Irvine v. Destination Wild Dunes Mgmt.*, 132 F.Supp.3d 707, 711 (D. S.C. Sept 13, 2015); *see also Vasto v. Credico United States LLC*, 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016).

Thus, Houck requests to simultaneously send the Notice by U.S. Mail and Email, as well as to send a text message to the putative class members alerting them to the existence of the Notice and directing them to a website link with the Notice and the Consent Form accessible online. The text message would read:

> If you have worked as a Patrol Lieutenant for Maricopa County anytime from January 11, 2020 to the [the date notice is distributed], you might be entitled to join a lawsuit claiming back pay for overtime compensation. For additional information about the case and how to join, visit [insert URL].

This procedure has been approved by other courts and would help ensure the putative opt-in plaintiffs receive the notice. *See, e.g., Anthony*, 2022 WL 3042854, at *3; *Shoults* 2020 WL 8674000, at *4; *Bhumithanarn v. 22 Noodle Mkt. Corp.*, 2015 WL 4240985, at *6 (S.D. N.Y. July 13, 2015).

## IV. EXPEDITED DISCOVERY OF NAMES AND CONTACT INFORMATION IS ESSENTIAL TO ENSURE ACCURATE AND TIMELY NOTICE.

Houck seeks expedited discovery of names, addresses, email addresses, and cell phone numbers of all Patrol Lieutenants so they may receive the Proposed Notice and Consent to Opt-In to Lawsuit form. This information is clearly relevant to the subject matter of the action. *See Hoffmann-La Roche,* 493 U.S. at 170 (holding that the requirement that a defendant produce the names and addresses of former employees for the purposes of facilitating notice is "relevant to the subject matter of the action and that there were no

grounds to limit the discovery under the facts and circumstances of [the] case"). Production of this information is not only proper but is necessary to ensure all potential plaintiffs receive notice informing them of the action and their opportunity to opt in. *See Gjurovich,* 282 F. Supp. 2d at 108 (ordering defendants to produce the names and addresses of similarly situated individuals to facilitate distribution of the court-approved notice); *Taylor,* 2011 WL 2038514, at *5; *Rodriguez v. SGLC, Inc.*, 2009 WL 454613, at *2 (E.D. Cal. Feb. 5, 2009). Due to the time sensitivity of this action, Houck requests an order for the County to produce the names and contact information within fourteen days of the Court's ruling on this Motion in an importable and electronic format. *Byard v. Verizon West Virginia, Inc.*, 287 F.R.D. 365, 377 (N.D. W.Va. 2012) (ordering that opt in plaintiffs' information be produced to plaintiff in electronic format).

## V.     CONCLUSION

Houck's evidence satisfies the FLSA conditional certification standard and the issuance of notice is therefore appropriate. Houck requests that the Court approve the Proposed Notice, Consent Form, and distribution procedure. Further, Houck requests that the County be ordered to produce the names, addresses, email addresses, and cell phone numbers of all current and former Patrol Lieutenants from January 11, 2020 through the date the notice is distributed in an electronic and importable format within fourteen days.

DATED: April 11, 2023.

**YEN PILCH ROBAINA & KRESIN PLC**

 *s/Ty D. Frankel*
Ty D. Frankel
6017 N. 15th Street
Phoenix, Arizona 85014

**YEN PILCH ROBAINA & KRESIN PLC**
Patricia N. Syverson
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123

Attorneys for Plaintiff