**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher J. Houck, on behalf of himself and all those similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>Maricopa County,<br><br>    Defendant. | No. CV-23-00068-PHX-DGC<br><br>**ORDER** |

Plaintiffs claim that Defendant Maricopa County violated the Fair Labor Standards Act ("FLSA") by improperly classifying lieutenants in the East and West Patrol divisions of the Sheriff's Office as exempt managers. Defendant moves to dismiss the action, arguing that Plaintiffs have failed to name indispensable parties by not naming their spouses, and that both the named Plaintiff and five of the fourteen opt-in Plaintiffs have failed to provide valid written consent forms opting into the action. Doc. 23. Plaintiffs move for conditional certification of the matter as a collective action. Doc. 27. Each motion has been fully briefed and oral argument will not aid the Court's decision. For the reasons stated below, the Court will deny Defendant's motion to dismiss and grant Plaintiffs' motion for conditional certification.

**I.    Background.**

Plaintiff Christopher Houck has been employed by Defendant Maricopa County since February 2007. Doc. 1 ¶ 7. Houck served as a deputy in the Maricopa County

Sheriff's Office ("MCSO") until September 2017, when he was promoted to sergeant. *Id.* ¶ 8. Since April 4, 2022, Houck has been employed as a lieutenant with the MCSO Enforcement Bureau. *Id.* ¶ 9; Doc. 33 at 2.

The Enforcement Bureau has two Patrol Divisions, Patrol Bureau-East, and Patrol Bureau-West. Doc. 33 at 2. The Patrol Divisions are comprised of a Commander, patrol deputies, uniformed sergeants, lieutenants (the "Patrol Lieutenants") and administrative staff. *Id.* at 2-3.

Defendant classifies Patrol Lieutenants as exempt managers under FLSA. Doc. 1 ¶ 27. Patrol Lieutenants are paid a salary on an hourly basis, with a requirement that the Patrol Lieutenants account for at least 80 hours every two weeks. *Id.* ¶ 28. Patrol Lieutenants are not paid for hours worked beyond 80. *Id.* ¶ 30.

Houck alleges that he and other Patrol Lieutenants are responsible for performing law enforcement duties comparable to the duties he performed as a non-exempt sergeant prior to his promotion to Patrol Lieutenant. *Id.* ¶ 19. Specially, he alleges that his work includes activities such as investigating crimes and apprehending fugitives, and that his duties, hours, and compensation are indicative of similarly situated Patrol Lieutenants. *Id.* ¶ 35, 36.

Houck asserts a claim under the FLSA for improperly classifying Patrol Lieutenants as exempt employees and willfully failing to pay them for hours worked in excess of 40 hours per week. *Id.* ¶ 39, 42. Houck seeks to recover unpaid overtime compensation, interest, statutory penalties, reasonable attorneys' fees, and litigation costs. *Id.* ¶ 2.

Houck brings this claim on behalf of himself and all current and former Patrol Lieutenants employed by Defendant in the last three years. *Id.* ¶ 2, 39. Fourteen additional Plaintiffs (the "Opt-In Plaintiffs") have consented to join the action by filing consent forms with the Court. Docs. 27 at 3; 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 18, 24. Plaintiffs now move for conditional certification under 29 U.S.C. § 216(b), seeking authorization to send notice to potential opt-in Plaintiffs and expedited discovery of the names and contact

information of all current and former Patrol Lieutenants from January 11, 2020, until the date notice is distributed.  Doc. 27 at 3.

Defendant moves to dismiss the action, arguing that Plaintiffs have failed to name indispensable parties by not naming their spouses, and that both Houck and five of the fourteen opt-in Plaintiffs have failed to provide valid written consent forms opting into the action.  Doc. 23.

**II.    Motion to Dismiss.**

    **A.    Joinder of Plaintiffs' Spouses.**

Pursuant to Rule 19, Defendant requests that the Court dismiss Plaintiffs' complaint for failure to join their spouses.  Doc. 23 at 3-5.[1]  Rule 19(a) states that a non-party is necessary if in the person's absence complete relief cannot be accorded among those already parties.  Fed. R. Civ. P. 19(a).  Defendant argues that Plaintiffs' spouses are necessary because, in the event Defendant succeeds, costs and possibly attorney's fees will be awarded against Plaintiffs' martial community.  Doc. 23 at 3-5.  Plaintiffs argue that the Court should wait to join their spouses until it becomes more likely that Defendant will succeed.  Doc. 25 at 6.

Under Arizona law, spouses must be named jointly to reach community assets.  A.R.S. § 25-215; *Eng v. Stein*, 599 P.2d 796, 798 (Ariz. 1979).  Thus, Plaintiffs' spouses must be joined if an award of costs or fees is to be enforceable against their marital communities.  *See Weimer v. Maricopa Cnty. Cmty. Coll. Dist.*, 184 F.R.D. 309, 310-11 (D. Ariz. 1998) (requiring the joinder of plaintiff's spouse in a § 1983 suit); *Vicente v. City of Prescott, Ariz.*, No. CV-11-8204-PCT-DGC, 2012 WL 5878844 at *2 (D. Ariz. Nov. 21, 2012) (same); *Cutrona v. Sun Health Corp.*, No. CV 06-02184-PHX-MHM, 2007 WL 4150210 at *1-2 (D. Ariz. Nov. 19, 2007) (requiring the joinder of plaintiff's spouse in a Title VII suit).

---

[1] Defendant requests in the alternative that the Court order the Plaintiff to amend his complaint and identify all Plaintiffs and their spouses in the case caption.  Doc. 23 at 1.

But, as Plaintiffs note, the Court need not order dismissal or amendment at this time. In *Alves v. Emerald Corrections Management LLC*, No. CV-11-00509-PHX-FJM, 2011 WL 5289771 (D. Ariz. Nov. 3, 2011), Judge Martone concluded that the addition of a plaintiff's spouse in a Title VII suit was unnecessary when "based on a distant possibility that defendant might be entitled to fees and costs." *Id.* at *1. He noted that delaying the decision would not prejudice the defendant because Rule 12(h) preserved the defense of failure to join an indispensable party to as late as trial. *Id.* at *2. The same is true here. Not only does the Court presently lack information about the marital status of the Opt-In Plaintiffs, but requiring joinder now would present a procedural burden and amendment would again be necessary after the prescribed opt-in period. *See* Doc. 26 at n.4. If an award of attorney's fees or costs to Defendant becomes more than "mere speculation," Defendant can renew its request. *See Alves*, 2011 WL 5289771 at *2.

Defendant also requests amendment of the complaint to include the names of the Opt-In Plaintiffs in the case caption. Doc. 23 at 5-6. "There is very little case law regarding the legal standard for amending a caption, and no federal or local rule governs caption amendments." *Hoemke v. Macy's West Stores LLC*, No. CV-20-01317-PHX-DWL, 2020 WL 5229194, at *1 (D. Ariz. Sept. 2, 2020). The FLSA does not distinguish between opt-in plaintiffs and original plaintiffs; all opt-in plaintiffs may properly join a FLSA collective action by filing valid consent forms and remain parties to the action unless circumstances dictate dismissal. *See Campbell v. City of L.A.*, 903 F.3d 1090, 1105, 1109 (9th Cir. 2018). "[T]o the extent the parties believe the caption has any effect on their rights or obligations . . . they are mistaken." *Shafer v. Red Tie, LLC*, No. 220-CV-05726-ODW-PVCX, 2021 WL 1139739, at *2 (C.D. Cal. Mar. 25, 2021) (declining to allow plaintiffs leave to amend complaint to add opt-in plaintiffs to the case caption). Amendment of the case caption will not change the Opt-In Plaintiffs' party status, and the Court will not require it.

**B.     Validity of the Written Consent Forms.**

Plaintiffs must file written consent forms to join a collective action under the FLSA. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he

gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Defendant contends that the consent forms of the named Plaintiff, as well as at least five of the fourteen Opt-In Plaintiffs, lack an "indicia of reliability," rendering them facially invalid. Docs. 26 at 7-9, 23 at 5-9. Specifically, Defendant takes issue with the format of these consent forms, noting they do not appear to be handwritten or signed using an electronic signature program such as DocuSign. Doc. 23 at 6. Defendant requests that either the claims of those Plaintiffs with deficient consent forms be dismissed or that the Court order them to provide amended opt-in forms. Doc. 23 at 5.

Section 256(b) does not require that a person wishing to opt-in to a FLSA action submit a *signed* consent form. Instead, courts look to whether the written consent form clearly indicates consent by the opt-in plaintiff to join the lawsuit. In *Wertheim v. State of Arizona*, No. CIV-92-453-PHX-RCB, 1993, WL 603552, at *8 (D. Ariz. Sept. 30, 1993), Judge Broomfield concluded that typed, unsigned consent forms were sufficient to meet this standard: "That the opt-in forms were filled out then sent to plaintiff's counsel clearly indicates consent by the opt-ins to join this lawsuit."

The forms Defendant challenges have the typewritten contact information of the Opt-In Plaintiffs and e-signatures that appear to have been generated on the PDF consent forms. *See* Docs. 25 at 7; 27-1 at 8-12; 27-2 at 2-5, 120-23, 125-28. Defendant cites *Wingo v. Martin Transp., Inc.*, No. 2:18-CV-00141-JRG, 2018 WL 6334312, at *14 (E.D. Tex. Dec. 5, 2018), where the court noted that a wet signature or signature obtained through a verified signature program such as DocuSign would meet the demands of § 256, but Defendant admits these are mere examples of what might be a valid consent form. Doc. 26 at 8.

The Court finds *Wertheim* persuasive. By providing their personal information to counsel and affixing an e-signature, Plaintiffs have clearly indicated their consent to proceed in the matter. The Court will not require Plaintiffs to resubmit their consent forms.
///

### C. Inclusion of "Class Action" In Case Caption.

Defendant requests that the phrase "Class Action" be struck from the title of the complaint pursuant to Fed. R. Civ. P. 12(f). Doc. 23 at 7-8. Because Plaintiffs are solely seeking a collective action under FLSA § 216(b), Defendant contends that the words "Class Action" are immaterial and confusing. Doc. 23 at 7. But the complaint makes clear that Plaintiffs bring a collective action under the FLSA. *See* Docs. 1 ¶ 2 ("[t]his action is brought as a collective action pursuant to 29 U.S.C. § 216(b)"), 25-1 at 3 ("we are only pursuing an FLSA collective action lawsuit"). The Court finds the risk of confusion virtually non-existent and will not require the Plaintiffs to amend their complaint.

## IV. Conditional Certification.

Congress enacted the FLSA "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981). The statute requires employers to pay employees at one and a half times their regular hourly rate for overtime hours. *In re Farmers Ins. Exch., Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119, 1127 (9th Cir. 2007); 29 U.S.C. § 207(a). The statute exempts some employees from this requirement, including those in an executive or supervisory capacity. 29 U.S.C. § 213(a)(1).

An employee may bring a collective action to enforce the statutory overtime provisions of the FLSA on behalf of himself and others who are "similarly situated" and consent to participate in the action. 29 U.S.C. § 216(b); *see also Campbell*, 903 F.3d at 1100. The FLSA does not define the term "similarly situated" or describe the process by which courts should evaluate a prospective collective action. A majority of courts, including the Ninth Circuit, use a two-tiered approach in deciding whether to grant collective action status. *Id.*; 7B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1807 (3d ed. 2023). At the preliminary stage, the court will determine whether the potential plaintiffs are "similarly situated" – meaning whether they are "alike with regard to some *material* aspect of their litigation." *Campbell*, 903 F.3d at 1114 (emphasis in original). At the second stage, the employer may move for "decertification"

if they can show that the similarly situated requirement has not been met in light of further evidence. *Id.* at 1109. Analysis at the first stage should be "lenient" and can be satisfied by "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Shoults v. G4S Secure Sols. USA Inc.*, No. CV-19-02408-PHX-GMS, 2020 WL 8674000 at *1 (D. Ariz. July 31, 2020) (citations omitted).

Plaintiffs allege that they are improperly classified as exempt supervisors under 29 U.S.C. § 213(a)(1). They allege that Patrol Lieutenants have the non-exempt "primary duty of law enforcement," are required to respond to all high-level patrol calls, and report as first responders for such calls. Docs. 1 ¶ 23, 27 at 4-5. Plaintiffs propose certification of the following putative class: "all current and former lieutenants employed by Maricopa County in the Patrol Division from January 11, 2020, through the date FLSA Notice is distributed." Doc. 27-3 at 1.

Defendant argues that conditional certification is not appropriate because Plaintiffs have not established that there is a county-wide practice of requiring Patrol Lieutenants to complete primarily non-supervisory activities. *See* Doc. 33. In doing so, Defendant notes that the Patrol Lieutenants are subject to the same Law Enforcement Lieutenant job description, which lists primary duties including administration, supervision, and management. Docs. 27-1 at 34-38, 33 at 8-9. Defendant notes that there is no evidence of a formal policy requiring Plaintiffs to complete non-exempt work and characterizes the Plaintiffs supporting affidavits as "conclusory" and "insufficient." Doc. 33 at 11-14.

Plaintiffs sufficiently allege that they are alike with regard to a material aspect of this litigation – namely, that they all have the primary duty of law enforcement. *See Campbell,* 903 F. 3d at 1114. Affidavits submitted by Plaintiff Houck and Opt-In Plaintiffs Daniel Halverson, Matthew Hunter, and Emmanuel Sanchez avow that their supervisory role is limited and that other patrol lieutenants are subject to the same work expectations. *See* Docs. 27-1 at 10 ("I often work alongside other Patrol Lieutenants performing my duties, and I have learned that they are subject to the same overtime policies and job duties that I am."); 27-2 at 5 ("I have observed that other Patrol Lieutenants are subject to the

same overtime policies and job duties that I am, hearing them respond to calls for law enforcement duties like I do."); at 122 ("I also often work alongside other Patrol Lieutenants on a day-to-day basis, and I have observed that they are subject to the same overtime policies and job duties that I am."); at 126 ("My supervisory role is limited, both because of the importance of my primary duty of law enforcement that requires my immediate attention and because I lack discretion in my duties involving supervision of other employees."). From this evidence the Court can reasonably infer that the putative class members are victims of a "singular decision, policy, or plan" which comprises an essential element of their FLSA claim. *See Shoults*, 2020 WL 8674000 at *1; *Campbell*, 903 F.3d at 1114.

Defendant contends that the Plaintiffs' evidence is conclusory and fails to establish the existence of an illegal policy common to the prospective class. Doc. 33 at 13-14. Defendant relies on *Alonso v. Akal Security, Inc.*, No. CV-17-00836-PHX-JJT, 2017 WL 5598227 at *2 (D. Ariz. Nov. 21, 2017), in which Judge Tuchi rejected a plaintiff's motion to certify a conditional class because the pleadings "provide[d] little to no factual allegations in support of the assertion that the [class members] are similarly situated to Plaintiff." *Alonso* is easily distinguishable. The plaintiff in that case submitted a sole declaration which simply reiterated the factual allegations of his complaint and made no reference to any other individual. *Id.* Plaintiffs in this case submit four declarations which include statements concerning officers' first-hand experiences as well as conversations with other Patrol Lieutenants about their work duties. *See* Docs. 27-1 at 10-11, 27-2 at 2, 120, 125. Courts in this Circuit routinely grant conditional certification relying on affidavits from members of the potential class. *See, e.g.*, *Leuthold v. Destination Am. Inc.*, 224 F.R.D. 462, 468 (N.D. Cal. 2004) (granting conditional certification of a nationwide collective based on three declarations); *Fernandez v. Tox Corp.*, No. CV-229079-DMG-AFMX, 2023 WL 4141067 (C.D. Cal. June 15, 2023) (certifying a class based on three affidavits from putative class members); *Godhigh v. Savers, LLC*, No. 16-CV-02874-

WHO, 2016 WL 7406659, at *2, *5 (N.D. Cal. Dec. 22, 2016) (conditionally certifying a class based on six declarations of putative class members).

Defendant also asserts that Plaintiffs have failed to establish that they are materially alike. Defendant notes that the Patrol Lieutenants are assigned to different captains, work different shift times, drive different vehicles and supervise different squads. Doc. 33 at 14-16. Defendant argues that lieutenants must have differing job duties that would make meeting the "similarly situated" requirement impossible. *Id.* at 16. But as Plaintiffs note, courts in this Circuit have been clear that "[a]ny disparities in the factual employment situations of any plaintiffs who choose to opt in should be considered during the court's second tier analysis[.]" *Gillespie v. Cracker Barrel Old Country Store Inc.*, No. CV-21-00940-PHX-DJH, 2023 WL 2734459 at *10 (D. Ariz. Mar. 31, 2023) (citing *Davis v. Westgate Planet Hollywood Las Vegas, LLC*, 2009 WL 102735, at *10 (D. Nev. Jan. 12, 2009)).[2]

### V.  Information Disclosure and Form of Notice.

Plaintiffs ask the Court to enter an order (1) requiring Defendant to produce, within 14 days, the names, mailing addresses, email addresses, and cell phone numbers for all current and former Patrol Lieutenants who worked for Defendant between January 11, 2020 and the date the FLSA Notice is distributed; (2) authorizing Plaintiffs to mail the proposed Notice and Consent form (Doc. 37-1) to all potential class members via regular mail and e-mail; (3) authorizing Plaintiffs to send potential class members a text message regarding the issuance of Notice; and (4) allowing putative plaintiffs 90 days to opt-in to this action. Doc. 27-3.

Defendant objects that providing potential class members' names and contact information to Plaintiffs would violate their employees' privacy. Doc. 33 at 17. Defendant instead proposes that either Defendant or a third-party administrator be tasked with sending

---

[2] Defendant also proffers a significant amount of evidence and argument as to whether Plaintiffs are properly classified as exempt employees. *See* Docs. 33 at 2, 5-6, 8-10; 33-1; 33-2. But the merits of a plaintiff's FLSA claim are not addressed as part of conditional certification. *Taylor v. AutoZone, Inc.*, No. CV-10-8125-PCT-FJM, 2011 WL 2038514 at *4 (D. Ariz. May 24, 2011).

9

notice to the potential plaintiffs. Defendant argues that this is particularly important given the potential plaintiffs' status as sheriff's deputies. *Id.* Defendant cites *United States Department of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487 (1994), to support this point. *Id.* This case is distinguishable. The Supreme Court sought to protect the contact information of non-union members from union representatives. Similar concerns do not exist here. Many of the potential plaintiffs are likely known to Plaintiffs as they are current or past co-workers, and Defendant has failed to identify dangers that will arise from one officer knowing another officer's contact information. *See also Udd v. City of Phoenix*, No. CV-18-01868-PHX-JJT, 2020 WL 8996584 (D. Ariz. Mar. 23, 2020) (ordering defendant in a FLSA action to provide the personal information of potential class members employed as homicide detectives to named plaintiff also employed as a homicide detective).

Defendant further objects to the use of the complaint filing date as the "notice anchor date," arguing that because the statute of limitations on a FLSA claim runs until each individual files a written consent to join the action, the anchor date should be the date when notice is distributed. Doc. 33-3 at 1; *see also* 29 U.S.C. § 256(b). As Plaintiffs note, however, utilizing the date the complaint is filed allows for the "broadest notice possible" and is standard practice in this District. *Vega v. All My Sons Bus. Dev. LLC*, No. CV-20-00284-TUC-RCC, 2022 WL 684380 at *2-3 (D. Ariz. Mar. 8, 2022); *see also Gillespie*, 2023 WL 2734459 at *14. The notice anchor date should be January 11, 2020, three years prior to the complaint filing date.[3]

The parties also disagree as to proper length of the opt-in period. Though Plaintiffs propose a 90-day window, Defendant criticizes this period as "excessive" and requests a 45-day window. Docs. 33 at 17, 33-3 at 39. Plaintiffs stipulate to a 45-day window

---

[3] Because Plaintiffs allege willful violations of the FLSA, the parties do not dispute the use of a three-year statutory time period. *See* 29 U.S.C. § 255(a); Docs. 33-3 at 38, 37-1 at 2. The Court's decision to apply a three-year statute of limitations at the notice stage does not indicate a finding on willfulness; the appropriate statute of limitations may be challenged on summary judgment or a motion for decertification. *Cuphrey v. F&S Mgmt. I LLC*, No. CV-19-05904-PHX-JJT, 2021 WL 487882 at *5 (D. Ariz. Feb. 10, 2021).

provided they are allowed to send mail, email, and text messages giving Notice to potential class members. Doc. 37 at 12. The Court will adopt Plaintiff's proposal, allow the use of text messages, and set a 45-day opt-in period. *See Anthony v. Rise Servs. Inc.*, 2022 WL 3042854, at *3 (D. Ariz. Aug. 2, 2022) (allowing notice by mail, email, and text); *Gillespie*, 2023 WL 2734459 at *14 (finding notice by mail, email, and text was reasonable).

Defendant also requests that contact information for Defendant's counsel be added to the Notice form. Doc. 33-3 at 41. Cases within this District have held that granting Plaintiff's counsel exclusive access to potential collective action members could provide "an avenue to mislead potential collective action members in an attempt to secure their consent to join the lawsuit." *Bados Madrid v. Peak Construc. Inc.*, No. 2:09-CV-00311-WJS, 2009 WL 2983193, at *3 (D. Ariz. Sept. 17, 2009); *see also Udd*, 2020 WL 8996584 at *4 ("the Court will require defense counsel's contact information to be included in section 4 of the Notice as requested by Defendant."). The Court will require the Notice to include contact information for Defendant's counsel as outlined in Defendant's Proposed Notice. Doc. 33 at 40-41.

**IT IS ORDERED:**

1. Defendant's motion to dismiss (Doc. 23) is **denied**.
2. Plaintiffs' motion for conditional certification (Doc. 27) is **granted**. The Court conditionally certifies this matter as a collective action under 29 U.S.C. § 216(b) with respect to all current and former lieutenants from Patrol Divisions East and West who worked for Defendant at any time from January 11, 2020, to the present (the "potential class members").
3. Defendant shall produce, within 14 days of this order, the mailing addresses, email addresses, and phone numbers of all potential class members.
4. Plaintiff is authorized to provide notice to all potential class members. Notice shall be given in the form attached to Plaintiff's reply brief as modified below (Doc. 32-1). Individuals receiving notice will be required to opt-in to the class

on or before 45 days after notice is issued. All expenses of the notice shall be borne by Plaintiffs.

5. Plaintiffs shall modify the Notice and Consent Form as follows:

   a. Revising the first line of section two to read "Plaintiff Christopher J. Houck ("Plaintiff") brought this action under the Fair Labor Standards Act ("FLSA") alleging that he and all other past and current Patrol Lieutenants who worked for Maricopa County from January 11, 2020 through [insert date notice is distributed] are owed unpaid overtime under the FLSA." Plaintiffs should also remove the second line of section two.

   b. Plaintiffs shall include information for Defendant's counsel in section eight as outlined in Defendant's Proposed Notice (Doc. 33-3 at 40-41).

Dated this 25th day of October, 2023.

*David G. Campbell*
David G. Campbell
Senior United States District Judge