**Frankel Syverson** pllc

FRANKEL SYVERSON PLLC
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
602-598-4000
Ty D. Frankel (027179)
ty@frankelsyverson.com

9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
602-598-4000
Patricia N. Syverson (020191)
patti@frankelsyverson.com
*Attorneys for Plaintiff*

Shayna Balch Santiago, SBN 024852
Lori A. Guner, SBN 031646
Jacob R. Valdez, SBN 035634
FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
Telephone: (602) 281-3400
Fax: (602) 281-3401
ssantiago@fisherphillips.com
lguner@fisherphillips.com
jvaldez@fisherphillips.com
*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher J. Houck, on behalf of himself and all those similarly situated, | Case No. 2:23-cv-00068-DGC |
| Plaintiff, | **JOINT CASE MANAGEMENT REPORT** |
| v. | |
| Maricopa County, | |
| Defendant. | |

Pursuant to the Court's October 31, 2023 Order setting a Telephonic Rule 16 Case Management Conference, counsel for Christopher J. Houck ("Plaintiff") and counsel for Defendant Maricopa County ("Defendant" or "County") conferred on November 20, 2023, in a good faith effort to develop a Joint Case Management Plan for this litigation. The parties have jointly prepared the following:

**1.     The Parties who attended the Rule 26(f) Meeting and assisted in developing the Case Management Report.**

On behalf of Plaintiff:  Ty Frankel and Patti Syverson.

On behalf of Defendant:  Shayna Balch Santiago and Lori A. Guner.

**2.     List of parties in the case, including any parent corporations or entities (for recusal purposes).**

The parties in this case are Plaintiff Christopher J. Houck and the Defendant is Maricopa County.

**3.     A short statement of the nature of the case.**

    **a.     Plaintiff's statement of the case.**

Plaintiff Christopher J. Houck, on behalf of himself and all other similarly situated Patrol Lieutenants, brings this action against the County for its unlawful failure to pay overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Houck alleges that the County improperly classified him and the other similarly situated Patrol Lieutenants as exempt from overtime, when in reality their primary duties are nonexempt in nature. Through this action, Houck seeks to recover the overtime compensation that the Patrol Lieutenants have earned but not been paid.

Plaintiff Houck has worked for the Maricopa County Sherriff's Office ("MCSO") from February 2007 to the present. Houck was a full-time, non-exempt employee of the County employed as a Deputy from August 2007 when he completed training until September 2017 and then as Sergeant for MCSO from September 2017 until April 4, 2022. On April 4, 2022, Houck was promoted to a Lieutenant employed by the County at the MCSO in the Patrol Division and continues in the position through the present time. The

1  County hires Patrol Lieutenants like Houck to provide law enforcement throughout
2  Maricopa County for the MCSO.
3        As a Patrol Lieutenant, Houck's primary job duties are law enforcement duties he
4  typically performs alongside the officers on his team on a daily basis, including rescuing
5  crime victims, preventing or detecting crimes, conducting investigations and inspections
6  for violations of law, performing surveillance, pursuing, restraining, and apprehending
7  suspects, detaining or supervising suspected and convicted criminals, interviewing
8  witnesses, and interrogating suspects.  While Houck has some office duties, his primary
9  and most important duty as a Patrol Lieutenant is law enforcement acting as a first
10 responder.  Houck spends every work day monitoring the police radio for patrol activity,
11 so that he can respond to first responder law enforcement calls as required by the County.
12 Patrol Lieutenants are expected to provide law enforcement as their primary duty for the
13 County, and they are required to respond to all high-level patrol calls and report as first
14 responders in the field for all such calls.
15        Houck's supervisory role is limited, both because of the importance of his primary
16 duty of law enforcement and because he lacks discretion in his duties involving supervision
17 of other employees.  Houck's discretion in his administrative or supervisory role is limited
18 by the decisions of his Captain, who has actual decision making authority regarding
19 management and operations of the Patrol Division.  Houck's primary duty is not
20 management.  He does not have authority to hire and fire employees and does not provide
21 input regarding their employment or promotion.  He does not have discretion over other
22 employees' employment.  He does not run a division within the MCSO.  His primary duty
23 is not the performance of office or non-manual work directly related to the management or
24 general business operations of MCSO.  Nor is his primary duty the performance of work
25 requiring knowledge of an advanced type customarily acquired by prolonged course of
26 intellectual instruction.  Ultimately, the Patrol Lieutenants' primary duty remains law
27 enforcement, despite that they may have other limited administrative and supervisory
28 duties as well.  They are required to be in uniform to respond to calls at a moment's notice.

They must login to the Computer Aided Dispatch System so they can be dispatched on law enforcement patrol calls. They must monitor the law enforcement radio and other patrol equipment to respond to calls.

Despite the non-exempt nature of Houck's duties as a Patrol Lieutenant, the County classifies Houck and the Patrol Lieutenants as exempt managers and pays them a "salary." Houck's "salary" as a Patrol Lieutenant is paid on an hourly basis with the requirement that Houck account for 80 hours every two weeks even when he actually works more than that amount of time. As a Patrol Lieutenant, Houck routinely works more than forty hours per week and he is not paid time and a half for those hours worked over forty in a workweek. Houck's overtime hours during a typical week ranges from two to nine hours. This experience is similar to that of the other Patrol Lieutenants who comprise the collective.

### b. Defendant's statement of the case.

The Maricopa County Sherriff's Office ("MCSO") oversees law enforcement activities for Maricopa County, primary serving unincorporated areas of the County as well as contracted services in cities and towns. For purposes of law enforcement, the County is divided into five different geographical areas referred to as "Districts" and "Lake Patrol." The MCSO is also divided into two bureaus: Patrol and Custody. The Patrol Bureau (the only Bureau relevant to this case) is further broken down into divisions such as Patrol Bureau East (Districts 1, VII, and Lake Patrol), Patrol Bureau West (Districts II, III, and IV), among others.

Plaintiff Houck began working for MCSO in or about February 2007 as a Deputy Sheriff Trainee. After completing a period of probation, Plaintiff Houck became a Deputy Sheriff in or about August 2007 until September 2017. Plaintiff Houck was promoted to Sergeant in September 2017 and remained in that role until April 4, 2022. On April 4, 2022, Plaintiff Houck was promoted to Law Enforcement Lieutenant.

Pursuant to the Court's Order at Doc. 38, the Court conditionally certified this matter "as a collective action under 29 U.S.C. § 216(b) with respect to all current and

former lieutenants from Patrol Divisions East and West who worked for Defendant at any time from January 11, 2020, to the present[.]"

Plaintiff Houck's complaint contains one cause of action, for failure to pay overtime wages under the FLSA. Plaintiff Houck's claim is premised on his assertion that he and opt-in plaintiffs were improperly classified as exempt from the FLSA's overtime provisions, and therefore the County allegedly owes them unpaid overtime wages. Defendant denies that Plaintiff Houck and the opt-ins plaintiffs were improperly classified as exempt under the FLSA because their primary duties are exempt in nature. Contrary to Plaintiff's assertion that his and the opt-in plaintiffs' primary job duties are law enforcement duties, Lieutenants in the East and West Patrol Bureaus perform primarily supervisory and/or administrative duties including, but not limited to, general administration, incident management, career and professional development, supervision, community policing, and management, among other duties. Accordingly, Plaintiff Houck and the opt-in plaintiffs were properly classified as exempt from the FLSA's overtime provisions.

**4.  The jurisdictional basis for the case, describing the basis for the jurisdiction and citing specific jurisdictional statutes.**

This Court has jurisdiction over the subject matter and the parties hereto pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in the State of Arizona within this District. Plaintiff was employed by Defendant in this District.

**5.  Any parties which have not been served and an explanation of why they have not been served; and any parties which have been served but have not answered or otherwise appeared.**

All parties have been served and filed answers.

**6.  A statement of whether any party expects to add additional parties to the case or otherwise to amend pleadings.**

At present the parties do not expect to add additional parties to the case or amend the pleadings. Defendant reserves its right to seek leave of court to add spouses to this

lawsuit as party plaintiffs in compliance with the Court's Order at Doc. 38.

**7.     A listing of contemplated motions and a statement of the issues to be decided by these motions.**

The parties contemplate potential motions for summary judgment depending on the facts determined during discovery.

Defendant anticipates filing dispositive motions including a motion for summary judgment and a motion for decertification upon the conclusion of fact discovery.

**8.     Whether the case is suitable for reference to a United States Magistrate Judge for settlement conference or trial.**

Not at this time.

**9.     The status of related cases pending before other courts or other judges of this Court.**

The parties are not aware of any related cases at this time.

**10.    A discussion of issues relating to preservation, disclosure or discovery of electronically stored information, including the parties' preservation of electronically stored information and the form or forms in which it should be produced.**

The parties have met and conferred regarding document retention obligations and electronically stored information ("ESI") and do not presently anticipate any issues.  The parties agree that electronically stored information will be produced in .pdf format. Documents kept in paper form in the ordinary course of business need not be converted to .pdf format for purposes of production, but a party may do so at its own election.

**11.    A discussion of any issues relating to claims of privilege or work product.**

The parties are not aware of any specific issues that need to be addressed at this time and intend to follow the applicable rules.

**Plaintiff:**  However, Plaintiff notes that Defendant alleged in its answer that it acted in good faith.  If the good faith defense is premised on the advice of counsel, the production of otherwise privileged information is likely required.

**Defendant:**  Defendant is not presently aware of any issues that will arise in discovery relating to privilege or work product.

**12.    A discussion of whether an order under Federal Rule of Evidence 502(d) is warranted in this case.**

The parties do not request an order under FRE 502(d) in this case.

**13.    A discussion of necessary discovery, including:**

**a.    The extent, nature and location of discovery anticipated by the parties and why it is proportional to the needs of the case.**

The parties anticipate discovery in the form of interrogatories, requests for production of documents, requests for admissions, and depositions.

**b.    Suggested changes, if any, to the discovery limitations imposed by the Federal Rules of Civil Procedure.**

**Plaintiff:** None at this time.  Plaintiff maintains that individualized discovery of every opt-in plaintiff is improper because this case is certified as a collective action and requiring individualized discovery from the numerous opt-in plaintiffs, *inter alia*, is counter to the discovery procedure requiring a representative sampling in FLSA collective actions like this one and would cause duplicative discovery disproportionate to the needs of the case. *See, e.g, Kesley v. Entm't U.S.A. Inc.*, 2015 WL 4064715, at *3 (D. Ariz. July 2, 2014)("[p]ermitting the full scope of discovery authorized by the Federal Rules of Civil Procedure would undermine the purpose of conditionally certifying a collective action and would be unreasonably burdensome and wasteful of the parties' and the court's resources," and holding that a 15% representative sample was appropriate); *see also Cranney v. Carriage Servs., Inc.*, 2008 WL 2457912, at *3 (D. Nev. Jun. 16, 2008)(limiting discovery to 10% of opt in plaintiffs); *McLaughlin v. Ho Fat Seto*, 850 F.2d 586, 589 (9th Cir. 1988)(holding that district courts can award back wages under the FLSA based on representative discovery).  However, Plaintiff also believes that this issue is premature at this juncture and proposed during the parties' Rule 26(f) Conference that, to the extent Defendant seeks discovery from opt in plaintiffs, the parties should meet and confer regarding an appropriate representative sampling for opt in plaintiff discovery, including number of opt-in plaintiff depositions Defendant may take and the amount of written discovery that can be served on opt-in plaintiffs, <u>after</u> the close of the Notice period once

- 7 -

1 the full scope of the collective is known.  Plaintiff further proposed that if the parties are
2 unable to reach an agreement regarding the appropriate scope of opt in plaintiff discovery,
3 the parties would agree to seek guidance from the Court.  Defendant did not agree with
4 Plaintiff's proposal (as set forth below).  Plaintiff continues to believe this issue is premature
5 but if the Court prefers, Plaintiff requests the parties should be permitted to address this with
6 the Court as a formal discovery dispute.

7 **Defendant:** Plaintiff contends that the issue of the scope of discovery on the
8 individual opt-ins is premature at this juncture.  However, in its Order Setting Telephonic
9 Rule 16 Case Management Conference at Doc. 39, the Court required the parties to include
10 in this case management report a discussion regarding necessary discovery and any
11 suggested changes to the discovery limitations imposed by the FRCP.  Accordingly,
12 Defendant disagrees that this topic is premature.

13 Due to the fact that plaintiffs have already opted into this FLSA collective action,
14 Defendant respectfully submits that a limit of 25 requests for production, 25 requests for
15 admission, and 25 interrogatories per side is not appropriate.  Defendant proposes that the
16 parties be permitted to propound 25 requests for production, 25 requests for admission, and
17 25 interrogatories **per party** (as opposed to per side).  In other words, Defendant should be
18 permitted to propound 25 RFPS, RFAs, and interrogatories on each individual opt-in.
19 Defendant also submits that it should likewise not be limited to a total of 10 depositions.
20 See *Ingersoll v. Royal & Sunalliance USA, Inc.,* C05-1774 MAT, 2006 WL 2091097, at *3
21 *(W.D. Wash. July 25, 2006)* (Permitting individualized discovery—including depositions—
22 of all opt-in plaintiffs where the plaintiffs "fail[ed] to adequately support their contention
23 that discovery relating to a total of thirty-six individuals would be unduly burdensome.");
24 *Kaas v. Pratt & Whitney, a Consol. Subsidiary of United Techs. Corp.,* 89-8343-CIV-
25 *PAINE, 1991 WL 158943, at *8 (S.D. Fla. Mar. 18, 1991)*(Permitting interrogatories and
26 depositions of 100 members of collective action.); ; *Krueger v. New York Tel. Co.,* 163
27 *F.R.D. 446, 449 (S.D.N.Y. 1995)* (Permitting individualized discovery of opt-ins where the
28 class consisted of a "relatively small group of 162 people.").  At a minimum, Defendant

should be permitted to depose Plaintiff Houck, any opt-ins, any experts retained by Plaintiff, and other fact witnesses who may be disclosed in this case.

Plaintiff cites to two cases to support his position that Defendant should not be permitted to conduct individualized discovery of all of the opt-ins. However, those cases are distinguishable from this case because the number of class members was larger than the maximum potential number of potential class members in this case. For example, 300 plaintiffs had opted in to the *Cranney* collective action. *Cranney v. Carriage Services, Inc.*, 2:07-CV-01587-RLHPAL, 2008 WL 2457912, at *1 (D. Nev. June 16, 2008). By contrast, this matter involves a relatively small potential class. Indeed, even Plaintiff contends below that there is a "limited number for potential opt in plaintiffs." Thus far, there are 14 opt-ins plus Houck. The maximum potential number of opt-ins is no more than 47 individuals. As the Court is already aware, based on the conditional certification briefing, there is no dispute that class comprises individuals who are Law Enforcement Lieutenants and that they were classified as exempt from overtime. However, Plaintiff contends that based on the day-to-day responsibilities of the Lieutenants, they did not primarily perform exempt duties. Defendant strongly disagrees with this contention and avers that the opt-ins primarily perform job duties that are exempt in nature. In order to test the veracity of Plaintiff's claims and the assertions regarding the day-to-day job responsibilities, Defendant must conduct individualized discovery of Plaintiff and the opt-ins, including depositions and written discovery, which is appropriate and proportional to the needs of the case.

    **c.**  **The number of hours permitted for each deposition.**

The parties anticipate following the Federal Rules of Civil Procedure.

**14.**  **Statement of when the parties exchanged or will exchange Federal Rule of Civil Procedure 26(a) initial disclosures.**

Plaintiff intends to exchange his initial disclosures on December 4, 2023, as anticipated by Fed. R. Civ. Pro. 26(a)(1)(C). Defendant proposes that it will exchange its initial disclosures by December 11, 2023. Defense counsel respectfully submits that they need some additional time to prepare disclosures, review them with their client and

exchange them in light of the recent Thanksgiving holiday – during which Defendant's administrative offices were closed and lead defense counsel was on a preplanned week-long trip out of state.

**15. Proposed specific dates for each of the following:**

**Plaintiff**: This action is a relatively straightforward collective action involving one claim (an FLSA claim). The case was filed over 10 months ago and certified as a collective action on October 25, 2023 (Doc. 38). There have already been 14 Patrol Lieutenants opt into this action. And, the parties have already stipulated to (and the Court has approved) a Protective Order addressing how issues of confidentiality will be handled (Docs. 41, 42). Given that the parties are fully aware of the issues and that some of the opt in plaintiffs have already been identified and are known to Defendant, Plaintiff believes that the parties should be in a position to begin moving forward with discovery immediately and that there is no need to delay this case while waiting for the FLSA Notice period to end on January 12, 2024. Further, given the nature of this case, Plaintiff believes that an extended discovery schedule is unnecessary, especially in light of the limited claims and the limited number for potential opt in plaintiffs. Although Defendant speculates that certain discovery issues may arise and may require additional time, Plaintiff believes that it is most efficient to address such issues if and when they actually do arise. To that end, Plaintiff cannot agree to the schedule proposed by Defendant that has fact discovery ending in December 2024 and dispositive motions and decertification being briefed in the early months of 2025. Plaintiff proposes the following schedule:

    **a.** **A deadline for the completion of fact discovery**: July 26, 2024

    **b.** **Dates for full and complete expert disclosures under Federal Rule of Civil Procedure 26(a)(2)(A)-(C).**

        Plaintiff: April 12, 2024

        Defendant: May 10, 2024

        Simultaneous rebuttal: June 7, 2024

    **c.** **A deadline for completion of all expert depositions**: July 12, 2024

      **d.**    **A date by which the parties shall have engaged in face-to-face good faith settlement talks**: August 9, 2024

      **e.**    **A deadline for filing dispositive motions**: September 20, 2024

**Defendant:** Plaintiff contends that the deadlines proposed by Defendant are somehow inappropriate because this case was filed on January 11, 2023. However, since then, Defendant filed a motion to dismiss and Plaintiff filed his motion for conditional certification and the Court ruled on the motions on October 25, 2023. Discovery has just begun as of the parties' case management discussion on November 20, 2023 and the opt in period has not yet expired. Accordingly, Defendant submits that given the issues in dispute and the fact that discovery has just begun, a one-year discovery window is reasonable.

      **a.**    **A deadline for the completion of fact discovery**:[1] December 6, 2024

      **b.**    **Dates for full and complete expert disclosures under Federal Rule of Civil Procedure 26(a)(2)(A)-(C).**

      Plaintiff:   June 14, 2024

      Defendant:  July 26, 2024

      Simultaneous rebuttal:  September 6, 2024

      **c.**    **A deadline for completion of all expert depositions**: October 4, 2024

      **d.**    **A date by which the parties shall have engaged in face-to-face good faith settlement talks**: August 9, 2024

      **e.**    **A deadline for filing dispositive motions**: January 24, 2025

---

[1] Defendant submits that Plaintiff's proposed discovery deadline is not practicable. Given that the deadline for potential opt-in plaintiffs to join this action will be January 12, 2024, Defendant will be unable to serve written discovery on all of the opt-in plaintiffs until early 2024. Depending on the number of opt-in plaintiffs, it may take several months after written discovery has been completed to take party depositions. Furthermore, given that the parties do not yet know the identity or number of all of the opt-in plaintiffs, and that they will not have this information until January 12, 2024, Defendant cannot yet begin to pull the appropriate voluminous records pertaining to every opt-in. Plaintiff Houck and the opt-in plaintiffs are Law Enforcement Lieutenants. Accordingly, depending on the specific claims made by Plaintiff and the opt-ins, Defendant may need to pull police reports and/or bodycam video of specific incident responses and other voluminous records. Pulling these voluminous records could take a significant amount of time due to relevant privacy laws, which require Defendant to comply with certain procedures with respect to disclosure of various police records, including records containing personal information. Such procedures will lengthen the amount of time it will take to produce records.

**16.** **Whether a jury trial has been requested and whether the request for a jury trial is contested (if the request is contested, briefly set forth the reasons).**

Plaintiff has requested a jury trial.  Defendants are not contesting this request.

**17.** **The prospects for settlement, including any request of the Court for assistance in settlement efforts.**

The parties anticipate discussing settlement at an appropriate time but do not request the Court's assistance at this time.

**18.** **Any other matters that will aid the Court and parties in resolving this case in a just, speedy, and inexpensive manner as required by Federal Rule of Civil Procedure 1.**

**Plaintiff**:  Plaintiff proposes the following dates should Defendant file a motion for decertification of the class:

    Motion:  August 2, 2024

    Response:  August 23, 2024

    Reply:  September 13, 2024

**Defendant**: Defendant proposes the following dates should Defendant file a motion for decertification of the class:

    Motion:  April 12, 2025

    Response:  May 3, 2025

    Reply:  May 24, 2025

Plaintiff proposed that the parties could agree that service of pleadings, discovery, and other documents by email is sufficient.  Defendant did not agree to Plaintiff's proposal.  Defendant is willing to further discuss this issue as the litigation progresses.

The parties do not have any other suggestions at this time.

DATED:  November 28, 2023

                                        **FRANKEL SYVERSON PLLC**
                                        By    *s/ Ty D. Frankel*
                                        Ty D. Frankel
                                        2375 E. Camelback Road, Suite 600
                                        Phoenix, Arizona 85016

**FRANKEL SYVERSON PLLC**
Patricia N. Syverson
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123

*Attorneys for Plaintiff and the Class*


**FISHER & PHILLIPS LLP**
By     s/ Lori A. Guner (with permission)
Shayna Balch Santiago, SBN 024852
Lori A. Guner, SBN 031646
Jacob R. Valdez, SBN 035634
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487

*Attorneys for Defendant*