1

2:23-cv-00068-DGC, December 5, 2023

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

**Christopher J. Houck, on behalf of** )
**himself and all those similarly** )
**situated**, )
                                       )
                   Plaintiff, )
                                       )
              vs. ) 2:23-cv-00068-DGC
                                       )
**County of Maricopa**, )
                                       ) Phoenix, Arizona
                   Defendant. ) December 5, 2023
_____) 2:27 p.m.

**BEFORE:   THE HONORABLE DAVID G. CAMPBELL, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**TELEPHONIC SCHEDULING CONFERENCE**

Official Court Reporter:
**Elaine Cropper, RDR, CRR, CCP**
Sandra Day O'Connor U.S. Courthouse
401 West Washington Street
Suite 312, SPC 35
Phoenix, Arizona  85003-2150
(602) 322-7245

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

United States District Court

2:23-cv-00068-DGC, December 5, 2023

**APPEARANCES**

For the Plaintiff:
**TY DEREK FRANKEL, ESQ.**
Frankel Syverson, P.L.L.C.
2375 E. Camelback Rd., Ste. 600
Phoenix, AZ   85016
ty@frankelsyverson.com

**PATRICIA N. SYVERSON, ESQ.**
Frankel Syverson, P.L.L.C.
9655 Granite Ridge Dr., Ste. 200
San Diego, CA   92123
patti@frankelsyverson.com

For the Defendant:
**SHAYNA BALCH SANTIAGO, ESQ.**
**LORI AYSEGUAL GUNER, ESQ.**
Fisher & Phillips, L.L.P. - Phoenix
3200 N. Central Ave., Ste. 1550
Phoenix, AZ   85012-2487
ssantiago@fisherphillips.com
lguner@fisherphillips.com

United States District Court

3

2:23-cv-00068-DGC, December 5, 2023

**P R O C E E D I N G S**

(Court was called to order by the courtroom deputy.)

(Proceedings begin at 2:27.)

(All counsel are present telephonically.)

COURTROOM DEPUTY:  This is CV-23-68, *Houck v. Maricopa County*, on for telephonic scheduling conference.

02:27:41

Counsel, please announce your experiences.

MR. FRANKEL:  Good afternoon, Your Honor.  This is Ty Frankel and Patti Syverson on behalf of the plaintiff.

MS. SANTIAGO:  And Your Honor, Shayna Balch Santiago and Lori Guner on behalf of defendants.

02:27:58

THE COURT:  All right.  Good afternoon, counsel.

I have read your joint case management report.  I've looked over the differing proposals that you've made.  I've read several of the cases -- well, several is too much, two or three of the cases each side cites on the scope of discovery that should be permitted in this Fair Labor Standards Act case. I think the most efficient thing for me to do is to tell you what I think we should do and then let you react to it.  I think that's the best way to get in front of you the ideas I have and then hear from you to see where I think I'm wrong and I can adjust it.

02:28:17

02:28:46

Obviously, a primary issue in this case is going to be the extent of discovery that defendant is going to be permitted to conduct against the opt-in plaintiffs.  That

02:29:06

United States District Court

2:23-cv-00068-DGC, December 5, 2023

affects both the limits in terms of numbers that I place on discovery.  It affects the time we allow for discovery.

It seems to me that there are two primary reasons for the discovery to be conducted.  One is so that the defendant is equipped to make whatever argument it chooses to make later about decertifying this collective action which would require it to show that the individuals are not similarly situated and that would take some discovery.  The other is to prepare for trial but in a case like this, it's virtually sure that the trial will be conducted on a representative basis.  We won't be trying the cases of every opt-in plaintiff.  That's not the notion of a collective action.

And I haven't tried an FLSA case but I've read about others where a handful of the opt-in plaintiffs have been selected to present evidence and create a *prima facie* case of the defendant's practice.  The defendant then has an opportunity to rebut it.

But that means to me that not every opt-in plaintiff should be subject to discovery.  It seems if there's a fair sampling of them, then the defendant will have enough to make a decertification argument; and if a fair sampling of plaintiffs are deposed, the defendant will be prepared for trial.

I will say that if we get to the point of trial and plaintiff plans to put on an opt-in plaintiff that the defendant has not been allowed to depose, I'm going to let the

United States District Court

deposition happen before the trial.  In my view, it's only fair 02:31:15 and that's something plaintiff's counsel should keep in mind as the plaintiffs who are being identified for discovery are discussed.  If the plaintiff knows of individuals that it thinks that they think will be called at trial, you ought to 02:31:29 let the defendants know so that we don't end up having to do last-minute depositions when we're actually to the point of trial.

But with all of that in mind, my sense is that in a case that has currently 14 opt-in plaintiffs, may grow into the 02:31:46 mid-forties in total number, that allowing plaintiffs to conduct discovery of half of the opt-in plaintiffs is reasonable.

So that if there's 14, they could conduct discovery of seven.  If it turns out there's 30, they could conduct 02:32:07 discovery of 15.  That would ensure that they cover enough ground to be able to identify all of the arguments that might be available for them in a decertification argument and also to prepare for trial.

So with that in mind, here is what I think we ought 02:32:24 to do and I'll let you then react to everything I've said.

It seems to me that in what is paragraph three of my standard order that normally places limits of 25 on interrogatories, requests for production, and requests for admission, that I should allow that number between Mr. Houck 02:32:44

and Maricopa County.  But then I should say that in addition to that, that with respect to the 50 percent of opt-in plaintiffs defendant elects to conduct discovery of, it could serve 10 interrogatories, 10 requests for production, and 10 requests for admission on each of those opt-in plaintiffs.

I would also say that the depositions of the plaintiff, the defendant, and witnesses of the defendant, other typical witnesses, could take the seven hours allowed in the Federal Rules but a deposition of any opt-in plaintiff would be limited to three hours each.

And then with that somewhat circumscribed discovery in mind, I would allow nine months to conduct discovery. Actually, it's longer than that.  It's about 10 months or 11 months actually.  It would be to the end of September of 2024. I would adopt the defendant's proposal for expert disclosures so they would start in mid-June and they would end about the same time, at the end of September of 2024.

And I would require good-faith settlement talks on August 9 as you all have proposed.  I would require dispositive motions, that is, motions for summary judgment by the end of October, and I would say if there's any decertification motion, it would be filed by the end of October as well and we would just brief it under the normal schedule in the local rules.

And that would allow us to get through the briefing and decision on the motion for summary judgment and any

United States District Court

2:23-cv-00068-DGC, December 5, 2023

decertification motion by year's end or early next year and we could get the case set for trial.

That's my thought.  I'm happy to hear your comments on it.  If you think it's a bad idea, I want to hear why.  That won't offend me at all.

So why don't we start with plaintiff's counsel?

MR. FRANKEL:  Thank you, Your Honor.  This is Ty Frankel for the plaintiff.  Certainly we appreciate the considerable thought that you've clearly put into this.  The only -- the only issue I have is 50 percent is high compared to the records and the sampling that the opt-ins order in a typical collective action.  I do understand that given the fact that this is exceptionally large, that 50 percent may be more appropriate than it is in other cases.  I am fine with the approach.

I would ask for the opportunity to take the issue up with the clerk again in the event that the discovery -- the written discovery that serves appeared extraordinarily duplicative on the issues because 50 percent and then 10 items of each aspect of discovery has the potential to end up overlapping issues and be used more for the purpose of trying to deter plaintiffs from participating.  But, you know, it's hard to say that on the abstract.  I am fine with the approach you suggest, but I just want to flag the issue for the Court that it's often when you get the actual written discovery and

United States District Court

the detail, the devil can be in the details of what's sent, to have the opportunity to address that with the Court if we think it's appropriate.  It hopefully it won't be in light of the limitations set, though.

THE COURT:  All right.  What are the thoughts of defense counsel?

MS. SANTIAGO:  So, Your Honor, we also appreciate the thoughtfulness in your reasoning and rationale and thank you for walking us through your thought process on this.  I respectfully submit that taking discovery of only 50 percent of the opt-ins in such a small FLSA collective action is just not adequate.  And let me explain why, Your Honor.  We did cite some cases that state that with the relatively small collective, that discovery as to all of the opt-ins would be appropriate.  The cases that plaintiff cited to are vastly, vastly larger where there are, for example, in the *Cranney* case, 300 plaintiffs that have actually opted in.  In the other case, the *Kelsey*, there were 120 had opted in.  And after some disputes back and forth on exclusions like arbitration agreements, maybe the number was down to 66 but that was opted in.  Currently we have about 15 that are opted in and it's not going to go any higher than 45 or 47 based on the list that was produced to plaintiff, and that's assuming that you have 100 percent opt-in rate which is not typical in these kinds of cases.

United States District Court

2:23-cv-00068-DGC, December 5, 2023

Your Honor, I've done quite a bit of work with police departments over the years.  In my experience, the job duties and responsibilities vary greatly depending on who the individual reports to.  Here you have multiple units, multiple different managers across multiple different bureaus and, respectfully, even indulging plaintiff's arguments here that some of the individuals -- let me back up.  The issue in this case clearly is whether or not individuals were classified.  There's no dispute that these lieutenants were treated as exempt from overtime.  The question is whether or not they were actually performing exempt duties.

So even though plaintiff's contention is that some of these folks were misclassified, if there were some individuals that were performing kind of textbook examples of exempt duties and even if only five individuals out of the group were performing those textbook-exempt duties out of 15 opt-ins, that's a third of the proposed collective.  That's a huge percentage and clearly I'm not permitted to have discussions, take discovery as to those opt-ins other than through written discovery or through depositions.  And we're going to be in a position where defendant needs to move to decertify the class and we simply can't do that without taking adequate discovery as to these opt-ins, both through written discovery and with depositions.

This case is really going to come down to very

United States District Court

2:23-cv-00068-DGC, December 5, 2023

fact-specific allegations of what these individuals were doing on a day-to-day basis. It's defendant's position that these individuals were, in fact, properly classified. We briefed this for Your Honor in response to our conditional certification, that the CFRs envision and define that lieutenants and above, including captains, can be considered exempt so long as they are not providing rank and file type duties that would be performed of officers. And plaintiff's contention is these individuals were performing those rank-and-file duties but the job description clearly states, and defendant's position is, that these individuals were actually performing all of the textbook-exempt duties.

So it's really imperative for me to be able to take the depositions of each of these current opt-ins, about 15, and any additional potential opt-ins so that we can appropriately file our motion for decertification after the conclusion of discovery.

Again, this isn't a case where there's hundreds of thousands of opt-ins, or even thousands. This is a very, very small group where defendant believes the group is no bigger than 45. The plaintiff believes there might be two additional individuals that could potentially be in the class and that's before exclusions for things like statute of limitations which defendant has already noticed that some of the individuals are clearly going to be barred by the statute of limitations.

United States District Court

2:23-cv-00068-DGC, December 5, 2023

THE COURT:  All right.  I understand what both of you have said.

With respect to the defendant's argument, I am not persuaded by that argument for two reasons really.  One is the cases I read, which included those you cited plus a few more, persuaded me that a representative sample is sufficient in virtually all FLSA cases and, in fact, the *Krueger* case that defendant cited for the proposition that discovery was allowed of all 162 members of the class only allowed discovery of 36 of the 162.  It didn't allow discovery of all of them.

There were a couple of cases where it did, the *Ingersoll* and the *Kass* case, and they just weren't persuasive to me.

The second reason is that counsel for the defense represents the defendant.  You have access to the defendant and its managers.  You've got the ability to talk to captains, find out how they run their operations and you can target your discovery to those Lieutenants who have decided to opt in that you think would best support the arguments that you're going to make, so I'm not going to vary at this point from my view of 50 percent and I'm not going to lower it as plaintiff's counsel suggested might be appropriate because where I saw the low percentages, the 10 and the 15 percents, those were cases of 300 people, 1500 people in the class which of course is very different from this.

02:41:41
02:41:54
02:42:19
02:42:36
02:42:56
02:43:18

United States District Court

I will say that although I'm going to go forward with 50 percent as the rule in the case, if you believe you can demonstrate when we're part way through discovery that that is either insufficient from the defendant's perspective or overly burdensome from the plaintiff's perspective, you can raise that with me.  As we'll discuss in a moment, I don't engage in motion practice on discovery issues.  I have you call me and if one side or the other thinks the 50 percent is unworkable, then you can place a call and we will talk through that and I'll make a decision and I'll change the decision if I think it's appropriate.

If for some reason additional briefing is required, I always allow that but it happens quickly, within a week or so, so that discovery issues don't delay the case.

So that door will remain open but I want you to understand going in that I really do think 50 percent is appropriate for this case.  What I'll be looking for, if you come back to have it changed, is some clear reasons for why it's not working in the case and I will be happy to consider them at the time.

So let's walk through this case management order and I will tell you how I'm going to revise it and then we'll get out the final version.

And Kathleen, I've got some additional language here that I'm going to be reading but I've got it written out by

hand on my version.                                                          02:44:57

So in the first section, I'm going to require initial disclosures by December 11 of 2023 as defendant proposed. Paragraph two of my standard order will remain as it is so there will be 60 days to consider amending pleadings.  I don't    02:45:13 think that's necessary in the case but I always want to have a deadline.

In paragraph 3, as I indicated, I'm going to say that depositions shall be limited to seven hours each as provided by Rule 30(d) of the Federal Rules except that depositions of    02:45:33 opt-in plaintiffs other than Mr. Houck shall be limited to three hours each which I think is enough to get into the details of what a lieutenant did when it's focused.

I'm going to provide with respect to written discovery that plaintiff Houck and defendant Maricopa County    02:45:53 may propound up to 25 interrogatories, 25 requests for production, and 25 requests for admission on each other.  And then I'm going to add a sentence which says written discovery for opt-in plaintiffs other than Mr. Houck shall be limited to ten interrogatories, ten requests for production, and ten    02:46:21 requests for permission -- pardon me, for admission, including subparts, for each opt-in plaintiff.

I'm going to set a fact discovery deadline in paragraph four of September 29 of 2024.  With respect to expert discovery in paragraph 5, plaintiff's expert reports will be    02:46:49

14

2:23-cv-00068-DGC, December 5, 2023

due on June 14 of 2024, defendant reports on July 26 of 2024.    02:46:52

Plaintiff's rebuttal expert disclosures by August 16 of 2024

and expert depositions by September 27 of 2024.

When you get the order, please be sure to review

paragraphs E, F, and G, because those include some additional    02:47:20

expert requirements that will apply in the case.

Paragraph 6 is important.  If there are discovery

issues you want to raise, don't file anything.  Get together on

the phone and call me and we'll talk through those issues on

the record and resolve them.  If any briefing is required, as I    02:47:41

indicated a moment ago, we'll get that done quickly so that

discovery issues are resolved quickly and don't slow down the

case.

In paragraph 7 I'm going to set a deadline of October

25 of 2024 for dispositive motions.  There are some additional    02:47:59

requirements in paragraph 7 you should review.  Paragraph 8

we'll set August 9 of 2024 as the deadline for good-faith

settlement talks.  If you decide that you want the help of a

magistrate judge in those talks, please contact my office at

least three months before August 9 because we'll designate a    02:48:26

judge and you'll then need to get on their calendar and it

usually takes eight to ten weeks to get on the calendar of a

busy magistrate judge.

Paragraph 9 says the deadlines are real.  I do think

this is enough time for the case and I won't be inclined to    02:48:44

United States District Court

2:23-cv-00068-DGC, December 5, 2023

extend it, so I would encourage you to take full advantage of it.

Paragraph 10 sets just some briefing requirements that will apply.  In paragraph 11, I'm going to set the date of September 20 of 2024 for you to exchange two-page letters on what's going to be argued in summary judgment briefing.  I'll then get on the phone with you and we will figure out the most efficient way to brief summary judgment motions.

I will add a paragraph 12 that says a decertification motion, if any, shall be filed by October 25, 2024.

So that's my proposed order.

Plaintiff's counsel, do you have comments, questions, or concerns on any of that?

MR. FRANKEL:  No, Your Honor.

THE COURT:  How about defense counsel?

MS. SANTIAGO:  Yes, Your Honor.  I understand that you will be limiting the discovery on opt-ins in this case but that we do have the ability to approach you if it becomes an issue.  Again, we will raise this issue with you if it turns out to be insufficient.

But since we're not permitted to take discovery as to all of the opt-ins, is the judge going to be -- is Your Honor going to be requiring plaintiffs to provide a computation of damages for plaintiff and all opt-ins?

THE COURT:  Well, by that you mean a Rule 26(a)

United States District Court

2:23-cv-00068-DGC, December 5, 2023

disclosure?

02:50:39

THE WITNESS:  Yes.

THE COURT:  Well, it's in Rule 26(a).

MS. SANTIAGO:  Yes, initial disclosure calculation of all opt-ins.

02:50:47

THE COURT:  It's already required by Rule 26(a)(1)(A)(iii).

MS. SANTIAGO:  Okay.

THE COURT:  Any other questions?

MS. SANTIAGO:  Is there any way that Your Honor could be convinced to moving the decertification motion deadline to after the dispositive motion deadline so that those deadlines do not fall on the same date for defendant to file?

02:51:04

THE COURT:  Explain why you think that would be a good thing to do.

02:51:32

MS. SANTIAGO:  Because those motions are very time-consuming, as you know.  We respectfully feel that we need some additional time for discovery but understand the Court's ruling on that issue.  My client is also a governmental entity where due to various, you know, closure deadlines, availability, it does require a little bit more additional time to confer with my client on drafts and those types of things than, for example, a private non-public organization.

02:51:58

Not to mention, Your Honor, hopefully this will not impact the scheduling in the case that much, but one of the

02:52:26

United States District Court

associates on this case just came back from parental leave.  He has a two-month-old and I similarly have a two-month-old and an eight-month-old at home.  I would like to at least spend a little bit of time with my family over the holidays when the briefings fall over November, December of 2024.  But of course I defer to your discretion and judgment on setting forth the case deadlines.

THE COURT:  Hold on just a minute.

So here's the question I have in response for you.  A motion to decertify would be briefed in shorter time than a motion for summary judgment because it would be a regular motion under the Court's local rules and wouldn't have the extended period for summary judgment briefing.  It would be done well before the Christmas holidays.  You all had proposed to start the briefing on November 24 so it would be under way during the same holiday period.

And what I've wondered about is whether it's best to do a motion for summary judgment first or a motion to decertify first.  You know, you could argue that if the decertification is granted, then the motion is narrower because it's no longer a collective action and it focuses only on the named plaintiff.

You could also argue if a motion for summary judgment is successful and summary judgment is granted, if that's done first, that eliminates any need for a motion for decertification.

United States District Court

2:23-cv-00068-DGC, December 5, 2023

But from my estimate, when I have to immerse myself in a case to rule on summary judgment, it's similar to having to immerse myself in a case to rule on something like an FLSA decertification motion, and I'm likely to make a better decision if I'm immersed in the case.

I guess my question is, does the fact that one will be briefed and finished well in advance of the holidays and those thoughts have any effect upon what you think ought to happen with the briefing schedule and what is it exactly you would propose?

MS. SANTIAGO:  Well, I don't want to speak for plaintiff's counsel on this issue but I believe that both sides factored in a little bit more time for the response to decertification and reply than is set forth under the rule.  In my experience, the decertification motions as far as briefing them, filing a reply, can look and feel a lot like a motion for summary judgment even though it is subject to the ordinary motion rule.

My preference would be to file the motion for summary judgment first and then file the decertification motion because I feel like the motion for summary judgment could in some respects focus more of the issues for the decertification motion.

And obviously the time frame for the summary judgment briefing would be a little bit longer and then it would be the

United States District Court

2:23-cv-00068-DGC, December 5, 2023

shorter briefing schedule for the decertification motion.

I'm hoping that answered Your Honor's question but if it didn't, I apologize.

THE COURT:  Mr. Frankel, what do you think?

MR. FRANKEL:  It's very common in these types of cases for motions for summary judgment and decertification to be briefed around the same time.  The issues are often overlapping and there are often joint decisions on both of those issues at the same time with one impacting the other.  I don't think there's anything unusual about the schedule that the Court proposed.

I also think that there has been a pattern of delay in this case already and the plaintiff's goal is to move this case expeditiously within the time frame set by the Court at this time.  You know, with all due respect, we always try to provide extensions when appropriate and extend that professional courtesy; but already planning for that at a firm that has many hundreds of attorneys doesn't seem appropriate as far as considering the briefing schedule at this time.

THE COURT:  Well, this is what I think we should do.  I'm going to leave that date in place that I mentioned of October 25 for both motions.  I am happy to have you agree upon a schedule for responses and replies that makes sure that no side is working over the Thanksgiving holiday or the Christmas holiday.  So if you want to stipulate that a particular

United States District Court

2:23-cv-00068-DGC, December 5, 2023

response comes in a week or even two later or a reply, that's fine.  I always approve those when the parties agree; and if one of you is requesting that and the other side is being unreasonable, you can call me and we'll talk about it.

So I'm not going to do this in a way that has you working over the holidays.  We'll be able to avoid that, but I still think it will make sense to get them both filed at the same time.  I think if I'm considering them at the same time, I am likely to make a better decision on each of them.

Anything else that we ought to talk about today?

MR. FRANKEL:  This is the plaintiff's counsel.  No, Your Honor.  Thank you for your time.

MS. SANTIAGO:  I think that's all that we have from the defendant as well, Your Honor.

THE COURT:  Okay.  We'll get this order out.  Thank you, all.

(Whereupon, these proceedings recessed at 2:59 p.m.)

* * * * *

United States District Court

C E R T I F I C A T E

I, ELAINE M. CROPPER, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control, and to the best of my ability.

DATED at Phoenix, Arizona, this 20th day of December, 2023.

s/Elaine M. Cropper

_____

Elaine M. Cropper, RDR, CRR, CCP

United States District Court