**Frankel Syverson** pllc

FRANKEL SYVERSON PLLC
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
602-598-4000
Ty D. Frankel (027179)
ty@frankelsyverson.com

9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
602-598-4000
Patricia N. Syverson (020191)
patti@frankelsyverson.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher J. Houck, on behalf of himself and all those similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Maricopa County,<br><br>　　　　　Defendant. | Case No. 2:23-cv-00068-DGC<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENAS SERVED ON THIRD PARTY ENTITIES** |

Plaintiff Christopher Houck ("Houck") submits this Reply in support of his Motion for an order quashing Defendant Maricopa County's (the "County") 49 subpoenas to produce documents served on 44 third party entities for whom selected Opt In Plaintiffs Todd Brice, Benjamin Freeman, Jonathan Halverson, Alden Jackson, David Keller, Ryan Neville, Andrew Rankin, Donald Rosenberger, Jason Thomas, and Jerry Vance (the "Opt In Plaintiffs") have worked.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   Introduction**

The County attempts to have this Court believe that it had no choice but to serve 49 subpoenas on 44 third party entities where the Opt In Plaintiffs worked, claiming that was the only way it could get information about the hours the Opt In Plaintiffs worked for the County. Critically, the subpoenas are not in any way limited to information regarding hours worked, and in fact, they request time records, time sheets, applications for employment, resumes, notes, correspondence regarding applications, job offer letters, letters of rejection/withdrawal, prior employment history, payroll records, W-2 Forms, Form 1099s, year end earnings, bonuses, commissions, agreements regarding bonuses and commissions, evaluations, and legal information like settlement agreements, negotiations, witness statements, and affidavits for the Opt In Plaintiffs. The County fails to explain how the extensive information requested is proportionate to the need for the information in this straightforward overtime case. In fact, this information from third party entities goes way beyond what would be relevant to this case and unnecessarily intrudes on the relationships the Plaintiffs have with these other entities and exposes their personal information for no legitimate reason.

The County also argues that it needs the information because it has not been able to obtain a damages calculation from Plaintiff. However, the County acknowledges throughout its Response that it had been conferring with Plaintiff about having the Opt In Plaintiffs supplement their disclosure statement with a computation of damages. During that conferral process, Plaintiff repeatedly informed the County that it would supplement

1 the disclosure computation and include hours worked as soon as it got sufficient information
2 from the County to do so.  The County evaded providing basic payroll information about
3 the Opt In Plaintiffs to facilitate that process for months.  On October 24, 2024, Plaintiff
4 supplemented his disclosure statement with damages calculations and information about the
5 hours and weeks worked by the Opt In Plaintiffs based on currently available information.
6 The County now has more information about the hours the Opt In Plaintiffs worked, the
7 very information it claimed was the reason it claims to have needed to serve the subpoenas.
8 Prior to that supplementation, Plaintiff had complied with his disclosure obligations given
9 the stage of discovery and disclosures from the County and the County was on notice that
10 more detail would be provided when payroll information was received in discovery.

**II.     Plaintiff timely moved to quash Defendants' subpoenas and has standing to do so.**

The County only makes two legal arguments regarding Plaintiff's Motion: that Plaintiff does not have standing to quash subpoenas on third party entities and that Plaintiff's Motion to Quash was untimely.  Both arguments must be rejected at the outset.  The County served its subpoenas beginning on September 12, 2024.  Months prior to that time, Plaintiff made clear during the parties' extensive meet and confer efforts that he would move to quash the subpoenas if they were not limited to information relevant to when the Plaintiffs worked.  Doc. 73-1 at 54.  Nevertheless, the County proceeded with serving the subpoenas without any limitations regarding the documents sought.  As a result, Plaintiff timely filed his Motion to Quash on September 23, 2024, before any of the third party entities were required to respond to the subpoenas.  *In re New York City Policing During Summer 2020 Demonstrations*, 563 F.Supp.3d 84, 88 (S.D. N.Y. 2021)(rejecting timeliness argument regarding motion to quash that was filed more than 14 days after the subpoenas were served).  The County does not cite a single legal authority to support that the motion to quash was untimely.  Doc. 77 at 8-9.

Plaintiff also has standing to challenge the harassing third party subpoenas requesting information far beyond what would be relevant discovery in this case.  Federal courts have

2

1  held that parties to litigation have standing to challenge third party subpoenas on grounds
2  related to relevancy under Rule 26, just as Plaintiff does here. *Del Campo v. Kennedy*, 236
3  F.R.D. 454, 458-59 (N.D. Cal. 2006)(holding that party defendant had standing to obtain
4  protective order relating to information sought in third party subpoena and whether it was
5  relevant under Rule 26).  Indeed, courts within this District recognize that parties to
6  litigation can challenge subpoenas served on third parties under Rule 26, in the same manner
7  that they can challenge intrusive and burdensome discovery. *See, e.g., Firetrace USA, LLC*
8  *v. Jesclard*, 2008 WL 5146691, at *2 (D. Ariz. 2008)("The Court reads the interests required
9  for a protective order under Rule 26(c) and the 'claim of personal right or privilege' required
10 for a party to challenge a subpoena under Rule 45(c) to be the same.  Thus, under either rule
11 a party may prevent the disclosure of information from a nonparty by showing. . . [the
12 information sought] could expose the moving party to 'annoyance, embarrassment,
13 oppression, undue burden or expense'").

14 **III.    The subpoenas request information that is irrelevant and disproportionate
15          to the need for discovery in this case.**

16    The County argues that it needs the extensive records requested from 44 third-party
17 entities to determine the amount of hours worked by the Plaintiffs for the County.  The
18 County primarily claims that it needs this information because the Opt In Plaintiffs have not
19 disclosed the hours that they worked.  This is simply untrue.  They are subject to discovery
20 on that issue as part of this case.  And, in any event, Plaintiff has now disclosed the hours
21 that each Opt In Plaintiff worked.  *See* excerpt of Third Supplemental Disclosure Statement
22 attached as Exhibit 1.  In addition, the County has access to records in its possession that
23 will show most of the hours that the Opt In Plaintiffs worked (and in some cases **all** the
24 hours), including their contemporaneous time records.  The idea that the County somehow
25 needs to test the veracity of that information by obtaining essentially every document that
26 exists about the Opt In Plaintiffs from their relationships with outside entities does not meet
27 the proportionality requirements under Rule 26.  It also fails to account for the harassing
28 nature of subpoenaing extensive personal information from other entities where the

3

1  Plaintiffs work.  The records requested are irrelevant, duplicative of less harassing means
2  of getting information about hours worked, and prejudicial because they risk infringing on
3  personal information sought from the third party entities that has no relevance to the case.
4        To be clear, the County did not limit its requests to documents that would show the
5  dates or times when the Opt In Plaintiffs worked for the third party entities, which would
6  be the only information that could even arguably relate to this case.  In fact, the County
7  summarily rejected Plaintiff's request to limit the subpoenas to information about hours
8  worked, such as time records, providing no legitimate explanation as to why the additional
9  requested information was needed.  Instead, the County subpoenaed all 44 of the entities
10 subject to the third party subpoenas for time records, time sheets, applications for
11 employment, resumes, notes, correspondence regarding applications, job offer letters,
12 letters of rejection/withdrawal, prior employment history, payroll records, W-2 Forms,
13 Form 1099s, year end earnings, bonuses, commissions, agreements regarding bonuses and
14 commissions, evaluations, and legal information like settlement agreements, negotiations,
15 witness statements, and affidavits.  This information goes far beyond what could even
16 arguably be relevant in this case.  The County effectively admits as much when it claims *no*
17 *harm no foul* by pointing out that some of the third party entities did not provide all the
18 information they had requested as reason not to quash them.  Doc. 77 at 10:24-11:3.
19 Plaintiffs should not have their interests protected by how third party entities' served with
20 subpoenas unilaterally decide to respond to overbroad document requests.
21       The County's claim that it does not have sufficient discovery from Plaintiffs because
22 it needs to know when Plaintiffs were working for **other entities** to determine hours worked
23 **for the County** is misleading and nonsensical.  What the County actually needs to know is
24 when the Plaintiffs were working at the County.  As the County notes, the Plaintiffs were
25 required to track their hours in the County's timekeeping system, so that information is
26 readily available to the County on the Plaintiffs' pay statements.  To the extent that some of
27 the Plaintiffs worked more than what they reported, Plaintiff's supplemental disclosure
28

4

statement provides details about their time worked for the County with the computation of damages. *See* Exhibit 1.

### IV. The County inaccurately argues that Plaintiff has not met his disclosure obligations in the case.

The County claims to have sent the subpoenas because Plaintiff has failed to provide information regarding the Opt In Plaintiffs' hours worked as part of the disclosures required under Rule 26. As articulated in correspondence to the County on this issue during the meet and confer process, Plaintiff provided a complete damages computation in December of last year, including the formula he used to reach the amount due for back wages under federal law. Doc. 73-1 at 50-51; *see also* excerpt of Plaintiff's First Supplemental Disclosure Statement attached as Exhibit 2. Plaintiff also explained that he was diligently obtaining additional information through discovery to seasonably supplement the disclosure as necessary, but the County for months claimed to be "evaluating" whether to produce basic payroll information for the Opt-In Plaintiffs that would enable Plaintiff to make those more detailed calculations. Doc. 73-1 at 51. Regardless, Plaintiff's First Supplemental Disclosure Statement providing a precise formula for how damages would be calculated and demonstrating application of that formula through the named Plaintiff is sufficient considering the discovery that had occurred so far in the case. *Id.* (citing *Cardoza v. Bloomin' Brands*, 2015 WL 3875916, at *2 (D. Nev. June 22, 2015)("A plaintiff should disclose the basic method or formula by which it contends its damages should or will be calculated even if it cannot identify the specific dollar amount of damages pending further discovery)).

Plaintiff did not "stonewall" discovery as the County would have this Court believe. In fact, even the County recognizes that the parties have extensively conferred about Plaintiff's efforts related to updating his damages disclosure for the Opt In Plaintiffs. This included discussions about the need for the County to disclose basic payroll information for the Opt In Plaintiffs, much of which was exclusively in the County's control. Unlike most cases involving time worked that was not paid for, this case does not simply involve off the

5

clock work. The Plaintiffs were required by the County to track their time through the County's timekeeping system, even though they were not paid for that time. And while some Plaintiffs also say they worked more hours than they tracked, every single Plaintiff acknowledges that they had to track their time, and as such, the County's payroll records would be highly relevant to their damages in this case. Rather than cooperate by simply providing that basic information, the County delayed.

As a result, Plaintiff requested the payroll records for each of the Plaintiffs. Plaintiff explained that while merits discovery was limited to fifty percent of the Opt In Plaintiffs, this request for all of the Opt In Plaintiffs' pay statements really went to damages and would help the parties narrow down the issues regarding the amount of time the Opt In Plaintiffs worked. It would also help Plaintiff come up with a more precise damages calculation, at the heart of the County's Response now. This was discussed with the County during the lengthy conferral process regarding Plaintiff's computation of damages and the County's ongoing refusal to provide relevant documents responsive to discovery requests Plaintiff served early this year. Doc. 73-1 at 51. The County should have produced that basic payroll information as part of its Rule 26 disclosure obligation, and they are also required to produce the basic payroll information under Arizona law. *See* A.R.S. § 23-364(D)("Employers shall permit an employee or his or her designated representative to inspect and copy payroll records pertaining to that employee."). To date, the County is still "evaluating" whether to provide additional pay statements for two Opt In Plaintiffs, even though Plaintiff has correctly pointed out that doing so would facilitate providing the damages calculation sought, especially since some of the Opt In Plaintiffs no longer have access to their payroll records at the County and the payroll system changed during the relevant period. Doc. 73-1 at 51.

Despite the County's delay in "evaluating" whether to disclose basic payroll records for the Opt-In Plaintiffs, Plaintiff nevertheless supplemented his disclosure statement on October 24, 2024, to provide the damages calculations and hours worked by each Opt In Plaintiff to the extent possible. *See* Exhibit 1. Plaintiff will supplement the Opt In Plaintiffs'

6

damages calculation once it has obtained the additional payroll data the County has in its possession, which Plaintiff hopes will be forthcoming from the County. If that payroll data is not provided, Plaintiff intends to bring that discovery dispute promptly to the Court regarding the County's Rule 26 disclosure obligations in that regard. This explanation about the timing of Plaintiff's supplemental disclosure regarding Plaintiffs' damages is important because the County claims that is why the third party subpoenas were necessary. The County must acknowledge its contribution to the delay in Plaintiff's ability to supplement its damages calculations and also must acknowledge that it knew Plaintiff was actively working on the supplementation. Had the County simply waited until Plaintiff completed that process after receiving the pay statements, the issues at hand seemingly could have been avoided.

**V.     The County offers inconsistent and misleading arguments about the issues related to the subpoenas.**

An important thread through the County's Response is that the discovery rules apply to Plaintiff but not to the County. For example, the County attempts to hold Plaintiff to the literal requirements of Rule 45 by arguing that the Motion to Quash was untimely, which it is not as discussed above. While attempting to enforce strict compliance with Rule 45 regarding timeliness, the County simultaneously argues that it does not have to follow the requirements for service in Rule 45. This is especially troubling given that the County rejected Plaintiff's request that service by email could be sufficient in this case. While Plaintiff acknowledges that he has not been prejudiced by service by email, it was necessary to point out the County's one-sided application of the Rules in this case. It has unfortunately been a common pattern that the County applies one set of rules for itself throughout discovery, while at the same time not holding itself out to the same strict requirements it expects from Plaintiff in this litigation.

The County similarly places blame on Plaintiff for not bringing this matter to the Court as a discovery dispute, when in fact it is the County that should have done so before serving the subpoenas. The parties conferred extensively about the subpoenas at issue, and

7

on July 19, 2024, Plaintiff memorialized the parties' positions and explicitly informed the County that Plaintiff would seek to quash the subpoenas if they were not limited to requesting information about hours worked arguably relevant to this case. Doc. 73-1 at 54. Rather than continue the conferral process, limit the requests, or raise a discovery dispute at that time, the County elected to serve the subpoenas. Once they had been served, Plaintiff had no choice but to follow the explicit language of Rule 45 and timely file a motion to quash.

The County's unequal playing field also applies to its obligations under Rule 26. The County incorrectly claims that Plaintiff has not satisfied his obligations under Rule 26 related to computing damages, implying that somehow made it necessary for them to seek the extraordinary breadth of information the County seeks in the 49 subpoenas it served on 44 non-party entities. As explained above, Plaintiff provided a very detailed formula and examples in the computation of damages utilizing the information it had in December 2023. At that time, Plaintiff pointed out that if the County complied with its Rule 26 and Arizona statutory obligations to provide basic payroll information for all of the Opt In Plaintiffs, Plaintiff could swiftly supplement discovery. Nearly a year later, the County still claims to be "evaluating" whether it will provide pay statements for two of the Opt In Plaintiffs, while complaining that Plaintiff has not been able to provide the precise damages calculations as quickly as the County would like. That delay has largely occurred because many of the Opt In Plaintiffs no longer have access to their payroll information at the County, which the County knows. The County is stonewalling the ability of Plaintiff to provide the damages disclosure the County claims to want. Despite that obstacle, on October 24, 2024, Plaintiff provided a detailed computation of damages, including hours worked, for every single Opt In Plaintiff based on the currently available information Plaintiff has been able to obtain from payroll records and/or the Opt in Plaintiffs directly.

**VI.    Conclusion**

Based on the foregoing, Plaintiff respectfully requests that the Court grant Plaintiff's Motion to Quash Subpoenas Served on Third Parties.

8

DATED: October 25, 2024.

**FRANKEL SYVERSON PLLC**
By   *s/Ty D. Frankel*
Patricia N. Syverson
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123

**FRANKEL SYVERSON PLLC**
Ty D. Frankel
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016

*Attorneys for Plaintiff*