UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

Christopher J. Houck, on behalf of himself and all those similarly situated,

       Plaintiff,

       vs.

Maricopa County,

       Defendant.

No. 2:23-cv-00068-DGC

Phoenix, Arizona
August 7, 2025
2:59 p.m.

BEFORE:   THE HONORABLE DAVID G. CAMPBELL, Senior Judge

REPORTER'S TRANSCRIPT OF TELEPHONIC PROCEEDINGS

(Discovery Dispute Hearing)

Official Court Reporter:
Scott M. Coniam, RDR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 43
Phoenix, Arizona 85003-2151
(602) 322-7257

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

UNITED STATES DISTRICT COURT

A P P E A R A N C E S

For the Plaintiff:

       Frankel Syverson PLLC
       By:  Mr. Ty D. Frankel, Esq.
            Ms. Patricia N. Syverson, Esq.
       2375 E. Camelback Road, Suite 600
       Phoenix, Arizona 85016

For the Defendant:

       Fisher & Phillips LLP
       By:  Ms. Shayna Balch Santiago, Esq.
            Mr. David G. Myers, Esq.
       3200 N. Central Avenue, Suite 1550
       Phoenix, Arizona 85012

P R O C E E D I N G

(Proceedings convened at 2:59 p.m.)

THE COURTROOM DEPUTY:  On the record in civil docket 23-068, Christopher J. Houck vs. Maricopa County.  This is the time set for discovery dispute hearing.

Counsel, please announce for the record.

MR. FRANKEL:  Good afternoon, Your Honor.  This is Ty Frankel and Patty Syverson on behalf of the plaintiff patrol lieutenants.

MS. SANTIAGO:  And Shayna Balch Santiago and David Myers on behalf of the defendants -- or defendant.

THE COURT:  All right.  Good afternoon.

We got word that there's a discovery disagreement between the parties.  I got a one sentence explanation of it so I don't know much.

I understand that plaintiff has a concern about some disclosures by the defense so, Mr. Frankel, why don't we have you start.

MR. FRANKEL:  Sure.  Thank you, Your Honor.

On Friday night, around 7:30 last week, barely a week before the close of discovery, defendant disclosed four new witnesses in the case, two of whom are senior human resources people that have been disclosed specific to their exemption defense and the other two relate to payroll and compensation issues.

UNITED STATES DISTRICT COURT

Our position is that these -- this late disclosure is untimely under Rule 26(e) and these witnesses should be stricken, particularly since they significantly affect the key merits issues regarding the exemptions in the case and would have even impacted potentially the issues that we would have addressed in summary judgment of that issue in the hearing that we had last week regarding the briefing on that.

THE COURT:  All right.  Let's hear defense counsel's response.

MS. SANTIAGO:  It's interesting that plaintiff is complaining about late disclosure because we've actually received two disclosure statements with new evidence and records following our disclosure last Friday, including key records that I have not even been able to review fully through yet, but things like logs regarding hours worked and other records also relevant to our -- what arguments we are going to be raising in our motion for summary judgment.

As to the specific issue as to these witnesses, it's our position that they were not late disclosed.  It is still prior to the close of discovery and at least one of the witnesses is actually referenced by name during a prior deposition.  The other ones were generally disclosed that there are -- there was both a centralized and decentralized HR that was involved with certain issues that were the subject of deposition testimony I believe it was last month.  So it's our

position that these individuals were not late disclosed.

That being said, of course we'd be willing to work with opposing counsel if they would like to depose these individuals.  That's never been suggested by plaintiff's counsel.  The only demand that gave rise to this discovery dispute was the demands that we withdraw these witnesses from our disclosures.

THE COURT:  And that was Ms. Santiago speaking?

MS. SANTIAGO:  Yes, Your Honor.

THE COURT:  Can you explain why these witnesses could not have been discovered by the defense and disclosed earlier?

MS. SANTIAGO:  The existence -- strike that.

The -- there is both centralized and decentralized HR and we have still been investigating all the nuances that have given rise to those different roles over the years since those roles have changed with different administrations, most recently with a new administration that came in earlier this year.  There's also been turnover where there are new people in different roles where we disclosed their predecessor and we have now disclosed the new person in that new role.

THE COURT:  Well, who is that that you're referring to that is the new person?

MS. SANTIAGO:  She's Kelly Glennon, the chief human resources officer for MCSO.

THE COURT:  And how long has she been in that role?

MS. SANTIAGO:  Earlier this year.  Took over with the new administration.

THE COURT:  Do you know when?

MS. SANTIAGO:  We've previously been dealing with -- I don't have that date in front of me, Your Honor, but there was a transition period and her former -- her predecessor was deposed in this case and that is Chief Farrow.

THE COURT:  I'm sorry, is who?

MS. SANTIAGO:  Chief Farrow.  F-A-R-R-O-W, I believe.

During the deposition --

THE COURT:  Okay.  So --

MS. SANTIAGO:  What?

THE COURT:  Go ahead.  Go ahead.

MS. SANTIAGO:  During the deposition of Chief Farrow, the name was specifically brought up Erin Erskine as an individual that had information about compensation and that is the name that came on our disclosure statement that was specifically disclosed and referenced during Chief Farrow's deposition.  That's one of the name's in dispute as well.

THE COURT:  Okay.  So that's a different person than the one who took the new position, right?

MS. SANTIAGO:  Yes, Your Honor.  And that's a person that is in the centralized HR.

THE COURT:  Okay.  So those two people are who?  Erin Erskine --

MS. SANTIAGO:  Erin Erskine, that was disclosed during Keely Farrow's deposition, and then Chief Kelly Glennon is the predecessor to Keely Farrow.

THE COURT:  The person who is -- you said there are two people from central HR, that's Erskine and --

MS. SANTIAGO:  I apologize if I misstated, Your Honor.

There are three people from central HR.  There are Darrien Ellison, Jessica Redding, and Erin Erskine that are all in central HR.

Jessica Redding --

THE COURT:  And among those, who was just disclosed?

MS. SANTIAGO:  Those are three that were just disclosed, Darrien Ellison, Jessica Redding, along with Erin Erskine.  Erin Erskine was specifically referenced at Keely Farrow's deposition.  And Darrien Ellison and Jessica Redding were generally, not by name, but the existence of them in centralized Maricopa County Human Resources was disclosed as individuals with information relevant based on questions --

THE COURT:  And who is the fourth person who was disclosed?

MS. SANTIAGO:  Chief Kelly Glennon, the predecessor to the former chief of human resources for Maricopa County Sheriff's Office.  The former Chief of HR, Keely Farrow, was deposed.

THE COURT:  Okay.  Hold on for just a minute, please.

(Pause.)

THE COURT:  So if I could come back with an additional question, Ms. Balch Santiago.

Rule 26(e), as you know, says that supplements under Rule 26(a) disclosure must be made in a timely manner if the party learns that in some material respect the disclosure or response is incomplete and if the additional or corrective information has not otherwise been made known during the discovery process.

With respect to each of these witnesses, could you just explain to me when you learned of them and how the disclosure was in a timely manner within the meaning of Rule 26(e) in your view?

MS. SANTIAGO:  Yes, Your Honor.

The importance of these witnesses really came to fruition during Keely Farrow's deposition testimony and that's where these people were generally referenced.

I then needed to undertake an investigation on my end in dealing with, you know, a governmental agency to determine who the -- to vet individuals to determine if they were the proper individuals to be disclosed.  I obviously needed to confer with my client before I could formally disclose someone as a potential trial witness.

The deposition -- I don't have the date in front of me, but for Keely Farrow it just took place.  I believe it was

in June, the end of June.  I think it was late June or early July --

MR. FRANKEL:  It was June 6th.  And it was --

MS. SANTIAGO:  It was June 6th?

THE COURT:  Okay.  Hold on, Mr. Frankel.

MS. SANTIAGO:  I don't have that date in front of me, but it was -- it was likely in June of this year and I needed to confer with my client prior to doing a formal disclosure.  I submit that it is timely to the -- making the disclosures shortly after the deposition of this witness was taken.  As part of these disclosures, we also disclosed pay information, also addressed information raised during a previous call and dispute that was raised by plaintiff that we also needed to address as well.

THE COURT:  Okay.  All right.  Mr. Frankel, what are your thoughts?

MR. FRANKEL:  Keely Farrow was the human resources witness who had been identified all the way since June 21st, 2024, as the witness at the county who had knowledge regarding the exemptions classification.  Her deposition -- we began attempting to schedule it at the beginning of this year.  It was a struggle to do so but we finally got dates from defendant when the deposition was on June 6th.  These four witnesses that were disclosed last Friday were absolutely never disclosed until we got that on Friday night.  And I would submit that

these individuals should have been listed well before Ms. Farrow's deposition as existing employees of the county. Even if you take the facts that they did come up to some extent during Ms. Farrow's deposition, I don't think waiting two months from that deposition until a week before the conclusion of the discovery period and after we've had a hearing and exchanged letters regarding summary judgment briefing would be a timely disclosure under Rule 26(e).

THE COURT:  All right.  Hold on just a minute.

(Pause.)

THE COURT:  So, Mr. Frankel, I assume your request to exclude these witnesses is made under Rule 37(c)(1); is that right?

MR. FRANKEL:  I believe so, Your Honor.

THE COURT:  Before I can exclude witnesses under that rule, I must decide whether or not the delay in disclosing was substantially justified and whether or not it was harmless.  If either of those exist, then exclusion is not appropriate.

Seems to me the harmless issue can be addressed by allowing those individuals to be deposed, which I might consider doing.  I wouldn't move the briefing schedule on what we've got set on the motions because I want the case to move forward, but there does seem to be a remedy to prevent prejudice in that you don't know what these individuals are going to say.  And I think you've addressed your view of why it

wasn't substantially justified just a moment ago.

Do you have additional thoughts with respect to either of those factors under Rule 37(c)(1)?

MR. FRANKEL:  I do, Your Honor.  My concern about the prejudice to the plaintiff is the testimony from these individuals likely would have impacted the issue that we would have been moving for summary judgment on.  And there may, in fact, be additional bases to be moving for summary judgment depending on what these individuals are going to say, so we didn't have the ability to do a subset because they weren't disclosed in advance of the period in which the parties were conferring about summary judgment in the hearing regarding those issues last week.

THE COURT:  Your cross-motion for summary judgment is due on October 3rd, right?

MR. FRANKEL:  Correct.  And as it stands now, that's limited to just the good faith defense.

I guess my concern is that depending on what these individuals say, that may not be the only issue that we would necessarily be moving on.

THE COURT:  Well, let me get your reaction and the reaction of Ms. Balch Santiago to this issue.

By the way, do you go by both names, Balch Santiago, or am I calling you by the wrong name?

MS. SANTIAGO:  Santiago is fine, Your Honor.  Thank

you.

THE COURT:  Okay.  Okay.  So I'll ask for your reaction as well, Ms. Santiago.

It seems to me that these witnesses appear to be important.  They are employees of defendant who deal with the very issues that are going to be resolved in this case, whether these are exempt employees.

When they're disclosed a week before the close of discovery, it's practically impossible for them to be deposed during the discovery period.

So it seems to me that the alternatives I have are to strike them, if I find that defendant -- pardon me -- plaintiff has been prejudiced or to allow them to be deposed but require that defendant produce them in fairly short order so that they're deposed during the month of August so that plaintiff's counsel has a month, the month of September, to evaluate whether or not anything they say should be addressed in the motion for summary judgment that plaintiff's counsel will be filing on October 3rd.

This wouldn't be reopening discovery generally. That's closing tomorrow.  But because of the late disclosure, it would avoid prejudice to plaintiff of not knowing what these individuals are saying and also prejudice to plaintiff of not being able to address what they do say in the summary judgment motion plaintiff will make.  That seems to me to be a way to

address the harmlessness component of this.  I know there's still the substantial justification component, but at least we would address harmlessness in this manner.

Mr. Frankel, why don't you give me your thoughts and then Ms. Santiago can.

MR. FRANKEL:  I mean, I think that that's a middle ground as far as the harm.

I still have concerns about substantial justification considering this is the third extended discovery period from defendant and this was never mentioned when they sought the most recent extension in June as a basis of needing this additional time.

As far as the harmlessness goes, I think that if we were able to get them deposed and the court is amenable to us potentially revising the issues that we would be moving for depending on how those depositions go, I agree that that could address the harmlessness issue.

THE COURT:  Ms. Santiago.

MS. SANTIAGO:  Your Honor, when I opened up with defendant's remarks during same call, that's one of the things I offered up that we would be agreeable to allowing plaintiff the opportunity to depose these individuals, but the position taken in a prior meet-and-confer call was an all or nothing demand that these witnesses be struck.  So I would have no objection to these witnesses being deposed.  That's something

that I would have thought we could have resolved as part of a meet and confer effort.

THE COURT: All right. Are there any other discovery issues that you need to address with me today on either side?

MS. SANTIAGO: Yes, Your Honor. This is Shayna Balch Santiago again.

So in addition to plaintiff's complaint about defendant's late disclosure, plaintiff has submitted untimely disclosure of documents. Your Honor, I have not even been able to work all the way through all of these records, but some of these records appear to be handwritten logs or notes, calendars regarding hours worked dating back to January -- the year 2023 for one of the opt-ins. I can't see how this was not disclosed previously since this entire case relates to alleged unpaid wages, unpaid hours of work.

I have already -- this particular record that I'm looking purportedly relates to Rosenberger, who was already deposed.

So if plaintiff is going to be given leave of court to take the deposition of these defense witnesses, then defendant should be permitted to be able to disclose -- to be able to depose the opt-in plaintiffs regarding late-disclosed documents that I didn't have available to me prior to depositions or these documents should be struck.

THE COURT: Mr. Frankel.

MR. FRANKEL:  Well, number one, this is not an issue that the parties have met and conferred on prior to this, but I will say it's sort of shocking that she would be suggesting an issue with us having done late disclosure of documents when she disclosed 5,000 pages of additional documents this past Friday that don't just include pay statements like we were expecting, which we had been needing so we could supplement our damages disclosure and we opted not to raise that issue because there's often a clean up regarding documents that need to be produced toward the end of the case and I think that's a very different issue than witnesses that need be disclosed.

Regarding the specific calendar that she raised, that opt-in plaintiff was deposed for the full three hours, including at length regarding his damages and the pay records related to them, so I don't think that there would be any prejudice in not reopening his deposition in light of the extensive testimony that already occurred.

THE COURT:  Mr. Frankel, did Ms. Santiago have these documents in her possession at the time of the deposition?

MR. FRANKEL:  Most of the documents that we've disclosed are new pay statements just to update the records. People are continuing to work at the county.  There may be a handful of documents that had come up that we got or that we produced after the deposition.

THE COURT:  If that's the case, then she never had an

opportunity to ask the witness about those documents, right?

MR. FRANKEL:  That's correct, Your Honor.

And I think there may be one opt-in plaintiff calendar that she's referenced that wouldn't have been available at the time of his deposition.

THE COURT:  Ms. Santiago, the name of that individual is Rosenberg?

MR. FRANKEL:  We're happy to --

THE COURT:  Hold on.

MR. FRANKEL:  Oh.  I'm sorry.

THE COURT:  Hold on.

Ms. Santiago, the name of that individual is Rosenberg; is that right?

MS. SANTIAGO:  Yeah.  Donald Rosenberger is the opt-in.

THE COURT:  -berger.

All right.  What were you saying, Mr. Frankel?

MR. FRANKEL:  Ms. Santiago has suggested striking the calendar from Mr. Rosenberger and we're fine with that as a compromise.

THE COURT:  You're fine with striking the calendar?

MR. FRANKEL:  Yeah, with not relying on use of the calendar that was disclosed.

THE COURT:  Does that address your concerns, Ms. Santiago?

MS. SANTIAGO:  I don't know, Your Honor, because I have not gotten an opportunity to review through this document fully yet.  I don't know if I would perhaps need to use this for impeachment purposes if it's inconsistent with his testimony.  The document should have been disclosed.  It's dated January of 2023.  We asked specifically for logs and information in our -- I believe -- wait.  I know we asked for logs and information relating to the lead plaintiff, that we were limited on the discovery requests that we could serve on the remaining opt-ins, so I don't recall if we specifically asked for logs and notes, that's specifically one of my requests, but regardless, it's our position that this should have been produced as part of disclosures long ago since it's on the key issue of hours.

THE COURT:  Okay.  Well, are there any other issues that either side needs to raise today?

MS. SANTIAGO:  There's also some records that were disclosed as to Trowbridge, who is one of the individuals that the defense raised in the prior meet and confer with Your Honor over the issue of motion for summary judgment.  It is our position that Trowbridge is not within Patrol Bureaus East or West and no evidence has been offered that he is in Patrol Bureaus East and West and for the first time some records were just disclosed that we certainly have not been able to depose that opt-in about or take follow-up discovery regarding, so

it's our position that is also improper.

THE COURT:  And what is it you're asking with respect to Trowbridge?

MS. SANTIAGO:  Well, ideally, Your Honor, I would have liked to depose all of the opt-ins that was not permitted by Your Honor early on in this case.

THE COURT:  Ms. Santiago, I didn't ask what ideally you wanted to do.  I asked what is your request with respect to Trowbridge?

MS. SANTIAGO:  That the additional late-disclosed documents be struck.

THE COURT:  And that's because you have not had an opportunity to depose Trowbridge about them?

MS. SANTIAGO:  Or take any discovery relating to these records that have been disclosed for the first time on August 4th.

THE COURT:  Regarding Trowbridge?

MS. SANTIAGO:  Yes.  And that was this Monday, Your Honor.

THE COURT:  All right.  Well, it's frustrating to have significant disclosures being made in the final week of discovery when this case has been going on for so long and the discovery period has been extended repeatedly.  I am more interested in getting -- well, my primary interest is in getting this case resolved on the schedule we're following,

that is to get the briefing done on the dates that we established in our last call, get that issue decided and get trial -- to resolve it at trial, if needed.

But I'm also interested in getting this resolved on the merits and so what I am going to do is say, as I suggested a moment ago, that plaintiff's counsel can depose the four new witnesses who were disclosed last Friday by defendant. Those depositions should happen during the month of August and defendant should make them available during that month.

I'm also going to allow with respect to Rosenberger one of two options and you can discuss this. Either defendant can accept Mr. Frankel's offer to strike the recently disclosed calendar or if defendant doesn't want to do that, then defendant can depose Rosenberger for one additional hour during the month of August.

And the same situation will apply to Trowbridge. If Mr. Frankel offers to strike those documents -- he hasn't on this call, but if he were to do that, then defendant can decide whether to accept that offer and if the offer's accepted, then the issue's resolved. But if Mr. Frankel doesn't offer to strike those, then I'm going to allow defense counsel to depose Trowbridge during the month of August.

My view is that there's late disclosure on both sides. This course that I've just outlined will resolve the prejudice concerns arising from it and will keep us on track.

I'm not going to change the briefing schedule that was previously established with defendant's motion for summary judgment and motion to decertify due on August 29th and plaintiff's cross-motion for summary judgment due on October 3rd. We're going to keep those dates in place so we move forward on the motion.

And to address a concern you raised, Mr. Frankel, if you find in your depositions of these four newly disclosed witnesses that there is an additional ground for summary judgment, you may assert it when you file your cross-motion on October 3rd.

Are there any questions or concerns on the part of plaintiff's counsel about these rulings?

MR. FRANKEL: Regarding Lieutenant Trowbridge, I think it's important that the court know that we did, in fact, offer him as one of the individuals and provided dates for him to be deposed and defendant just elected not to depose him. And the reason we felt it was required to get the documents following the last conference is because they were then taking the position that he wouldn't be able to provide testimony regarding his overtime hours until -- for some reason they actually were to find a case to support that, then we thought we needed to have documents that would show that he was still appropriately part of the collective as he was included on the list they provided to whom notice went out, but ultimately

I submit that it's fine but, you know -- but I would ask whether his deposition being limited to the issue that they've raised specific to whether he was working in Patrol Bureau East and West rather than, you know, another three hours on the same issues that have been addressed by the 50 percent of the opt-ins whose depositions were completed today.

THE COURT: Ms. Santiago, your response to that last thought of Mr. Frankel, that is, do you agree that since you declined to depose him before, the deposition that occurs should be focused on the newly disclosed documents?

MS. SANTIAGO: Your Honor, that's false. We didn't decline to take Trowbridge's deposition. We were limited by the 50 percent discovery limitation. So of the opt-ins that were available, they provided availability for more than 50 percent of the opt-ins and we picked the maximum number of individuals that we could depose. So it's not that we declined to depose him. We were not permitted to depose him by opposing counsel because they would not permit it. So we should be able to take his deposition if they are offering up evidence relating to him being in Patrol Bureaus East or West and we should be able to take the deposition regarding that and any other issues that are raised in the late-disclosed documents for Trowbridge.

THE COURT: All right. I'm going to allow a three hour deposition of Trowbridge during the month of August.

Ms. Santiago, do you have questions or concerns about my rulings today?

MS. SANTIAGO:  The only question that I have, Your Honor, is there are time limits on the depositions that defendant is taking.  Are there similar time limits on the depositions that plaintiff is seeking, especially since we now are going to be taking six depositions in the month of August along with briefing?

THE COURT:  My inclination -- and I'll let you comment on this, Mr. Frankel -- would be to limit their depositions to three hours each as well.

MR. FRANKEL:  Your Honor, I think the limitation should be subject to the normal federal rules.  I mean, these are key witnesses, senior HR people that have now been disclosed entirely towards the full merits and bases for the exempt classifications.  And while I have no intention of using the time for the sake of it, you know, I don't think there should be limitations in place in light of how significant they've been -- the basis and how significant it is that they've been disclosed for.

THE COURT:  Well, I understand that point.

I will tell you I have long been of the view that we take too long in depositions.  In fact, when I was chair of the civil rules committee of the federal courts, I proposed the federal courts adopt Arizona's three hour limit on depositions.

It didn't fly.  Others weren't willing to do that.

I think three hours is enough for virtually any deposition, at least based on the hundred I sat through when I was practicing.  So I'm going to allow three hours each for the four new witnesses that have been identified.  Three hours for Trowbridge and one hour for Rosenberger, if defendant does not accept the offer to withdraw the documents.

Ms. Santiago, did you have any other questions or concerns?

MS. SANTIAGO:  No, Your Honor.  Thank you.

THE COURT:  Okay.  We'll look forward to getting the briefing on the dates we have set.  And as I've mentioned, this discovery should occur during the month of August because we're now -- we're now in overtime in effect because we're beyond the discovery period and I think it needs to be wrapped up quickly.

We'll get this out in a minute entry.  And look forward to getting that briefing.

Thank you.

(Proceedings adjourned at 3:40 p.m.)

C E R T I F I C A T E

I, SCOTT M. CONIAM, do herby certify that I am duly appointed and qualified to act as Official Court Reporter for the United State District Court.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED August 18, 2025.


s/Scott M. Coniam_____
SCOTT M. CONIAM, RDR, CRR

UNITED STATES DISTRICT COURT