

Shayna Balch Santiago, SBN 024852
Lori A. Guner, SBN 031646
David G. Myers, SBN 038484
FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
Telephone: (602) 281-3400
Fax: (602) 281-3401
ssantiago@fisherphillips.com
lguner@fisherphillips.com
dmyers@fisherphillips.com
Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

Christopher J. Houck, on behalf of himself
and all those similarly situated,

           Plaintiff,

   v.

Maricopa County,

           Defendant.

No. 2:23-cv-00068-DGC

**DEFENDANT'S SEPARATE STATEMENT OF FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT LOGED UNDER SEAL AT DOC. 153 AND MOTION TO DECERTIFY (DOC. 152)**

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

i

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

# INDEX OF EXHIBITS

| Exhibit No. | Description | Bates Nos. |
|---|---|---|
| **Exhibit 1:** | Declaration of Kelly Grennan | N/A |
| **Exhibit 2:** | Christopher Houck Deposition Excerpts | N/A |
| **Exhibit 3:** | Darrien Ellison Deposition Excerpts | N/A |
| **Exhibit 4:** | Maricopa County Sheriff's Office 2017 Job Analysis Report (Fields Consulting Group, Inc.) | HOUCK 000020-000169 |
| **Exhibit 5:** | Law Enforcement Lieutenant Job Description (**Exh.** 14 to Houck Deposition) | HOUCK 000175-000179 |
| **Exhibit 6:** | Deputy Sheriff Job Description | MCC 000001-000005 |
| **Exhibit 7:** | Christopher Houck FLSA Employee Acknowledgement Form | MCC 000093 |
| **Exhibit 8:** | Law Enforcement Sergeant Job Description | HOUCK 000180-000183 |
| **Exhibit 9:** | Christopher Houck W2s | MCC 025126-025128 |
| **Exhibit 10:** | David Keller Deposition Excerpts | N/A |
| **Exhibit 11:** | David Keller FLSA Employee Acknowledgement Form | MCC 002644 |
| **Exhibit 12:** | David Keller W2s | MCC 025134-025138 |
| **Exhibit 13:** | Emmanuel Sanchez FLSA Employee Acknowledgment Form | MCC 019991 |
| **Exhibit 14:** | Emmanuel Sanchez W2s | MCC 025158-025160 |
| **Exhibit 15:** | Donald Rosenberger Deposition Excerpts Vol. I | N/A |
| **Exhibit 16:** | [Intentionally left blank]. | |
| **Exhibit 17:** | Donald Rosenberger FLSA Employee Acknowledgement Form | MCC 003497 |
| **Exhibit 18:** | Donald Rosenberger W2s | MCC 025153-025157 |
| **Exhibit 19:** | Jonathan Halverson Deposition Excerpts | N/A |
| **Exhibit 20:** | Jonathan Halverson FLSA Employee Acknowledgment Form | MCC 002083 |
| **Exhibit 21:** | Jonathan Halverson W2s | MCC 025121-025125 |
| **Exhibit 22:** | Todd Brice Deposition Excerpts | N/A |
| **Exhibit 23:** | Todd Brice FLSA Employee Acknowledgment Form | MCC 001764 |
| **Exhibit 24:** | Todd Brice W2s | MCC 025109-025113 |
| **Exhibit 25:** | Ryan Neville Deposition Excerpts | N/A |

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

| Exhibit No. | Description | Bates Nos. |
|---|---|---|
| Exhibit 26: | Ryan Neville FLSA Employee Acknowledgment Form | MCC 003018 |
| Exhibit 27: | Ryan Neville W2s | MCC 025143-025146 |
| Exhibit 28: | A.J. Jackson Deposition Excerpts | N/A |
| Exhibit 29: | A.J. Jackson W2s | MCC 025129-025131 |
| Exhibit 30: | Jerry Vance Deposition Excerpts | N/A |
| Exhibit 31: | Jerry Vance FLSA Employee Acknowledgment Form | MCC 003761 |
| Exhibit 32: | Jerry Vance W2s | MCC 025164-025167 |
| Exhibit 33: | Jason Thomas Deposition Excerpts | N/A |
| Exhibit 34: | Jason Thomas FLSA Employee Acknowledgment Form | MCC 004007 |
| Exhibit 35: | Jason Thomas W2s | MCC 025161-025163 |
| Exhibit 36: | Michael Trowbridge Deposition Excerpts | N/A |
| Exhibit 37: | Michael Trowbridge Transfer Email | MCC 020216 |
| Exhibit 38: | Andrew Rankin Deposition Excerpts | N/A |
| Exhibit 39: | Andrew Rankin FLSA Employee Acknowledgment Form | MCC 004221 |
| Exhibit 40: | Andrew Rankin W2s | MCC 025150-025152 |
| Exhibit 41: | Rudy Acosta Deposition Excerpts Vol. I | N/A |
| Exhibit 42: | Rudy Acosta Deposition Excerpts Vol. II | |
| Exhibit 43: | Rudy Acosta FLSA Employee Acknowledgment Form | MCC 019992 |
| Exhibit 44: | Rudy Acosta W2s | MCC 025104-025108 |
| Exhibit 45: | Brian Jakowinicz FLSA Employee Acknowledgment Form | MCC 019994 |
| Exhibit 46: | Brian Jakowinicz W2s | MCC 025132-025133 |
| Exhibit 47: | Frederick McCann FLSA Employee Acknowledgment Form | MCC 019995 |
| Exhibit 48: | Frederick McCann W2s | MCC 025141-025142 |
| Exhibit 49: | James Kremer FLSA Employee Acknowledgment Form | MCC 019996 |
| Exhibit 50: | James Kremer W2s | MCC 025139-025140 |
| Exhibit 51: | Jennifer Cruz FLSA Employee Acknowledgment Form | MCC 024935 |
| Exhibit 52: | Jennifer Cruz W2s | MCC 025114-025115 |
| Exhibit 53: | Benjamin Freeman Deposition Excerpts | N/A |

FP 57027351.1

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

| Exhibit No. | Description | Bates Nos. |
|---|---|---|
| **Exhibit 54:** | Benjamin Freeman FLSA Employee Acknowledgment Form | MCC 017500 |
| **Exhibit 55:** | Benjamin Freeman W2s | MCC 025116-025118 |
| **Exhibit 56:** | Dmitrius Whelan-Gonzales FLSA Employee Acknowledgment Form | MCC 019997 |
| **Exhibit 57:** | Dmitrius Whelan-Gonzales W2s | MCC 025168-025172 |
| **Exhibit 58:** | MCSO Command Responsibility Policy (GB-2) | MCC 000015-000039 |
| **Exhibit 59:** | MCSO Hours Worked for Exempt Employees Policy (HR2472) | MCC000620-000622 |
| **Exhibit 60:** | MCSO Use, Assignment, and Operation of Vehicles Policy (GE-4) | MCC 000040-000053 |
| **Exhibit 61:** | Richard Ranck FLSA Employee Acknowledgement Form | MCC 019993 |
| **Exhibit 62:** | Richard Ranck W2s | MCC 025147-025149 |
| **Exhibit 63:** | Whelan-Gonzales Blue Team Supervisor Notes Excerpt | MCC 020208 |
| **Exhibit 64:** | Richard Ranck Blue Team Supervisor Notes Excerpt | MCC 020163 |
| **Exhibit 65:** | Emmanuel Sanchez Personnel Action Form | MCC 019987 |
| **Exhibit 66:** | Emmanuel Sanchez Blue Team Supervisor Notes Excerpt | MCC 020075-020076 |
| **Exhibit 67:** | Emmanuel Sanchez Blue Team Supervisor Notes Excerpt | MCC 020091 |
| **Exhibit 68:** | October 14, 2005 Opinion Letter from Department of Labor | MCC 000623-000625 |
| **Exhibit 69:** | Jeremy Goad FLSA Employee Acknowledgement Form | MCC 020237 |
| **Exhibit 70:** | Jeremy Goad W2 | MCC 025119 |
| **Exhibit 71:** | Kremer Evaluation | MCC 020053-020059 |
| **Exhibit 72:** | Kremer Supervisor Notes | MCC 020201-020206 |
| **Exhibit 73:** | March 13, 2024 Letter to Frankel Syverson re disclosure of pertinent information | |
| **Exhibit 74:** | July 15, 2024 Letter to Frankel Syverson re discovery to only 50% of the opt-ins | |
| **Exhibit 75:** | McCann Evaluation | MCC 020046-020059 |
| **Exhibit 76:** | Jakowinicz Blue Team Supervisor Notes Excerpt | MCC 020200 |
| **Exhibit 77:** | Chart regarding dates | |
| **Exhibit 78:** | Goad Blue Team Supervisor Notes Excerpt | MCC 020160 |
| **Exhibit 79:** | Whelan-Gonzales Blue Team Supervisor Notes Excerpt | MCC 025083 |

iv

| Exhibit No. | Description | Bates Nos. |
|---|---|---|
| **Exhibit 80:** | Cover Page of SWAT Operations Manual | TROW000004 |
| **Exhibit 81:** | Trowbridge Supervisor Note | TROW000035-000036 |
| **Exhibit 82:** | November 29, 2021 Trowbridge SWAT Division Memorandum | TROW000038-000040 |
| **Exhibit 83:** | January 8, 2020 Trowbridge SWAT Division Memorandum | TROW000001-000002 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FP 57027351.1

Defendant Maricopa County (the "County" and/or "Defendant"), by and through undersigned counsel, hereby submits its Separate Statement of Facts in support of its Motion for Summary Judgment lodged under seal (Doc. 153) and its Motion to Decertify (Doc. 152).

## STATEMENT OF FACTS

### I.    General Overview of the Maricopa County Sheriff's Office.

1.    The Maricopa County Sheriff's Office ("MCSO") oversees law enforcement activities for Maricopa County, primary serving unincorporated areas of the County as well as contracted services in cities and towns. **Exh. 1** (Declaration of Kelly Grennan ¶ 5). MCSO is divided into four bureaus: Administration, Compliance, Patrol and Custody. Exh. 1 (Grennan Decl. ¶ 5). The Patrol Bureau (the only Bureau relevant to this case) is further broken down into divisions such as Patrol Bureau East (Districts 1, VII, and Lake Patrol (V)), Patrol Bureau West (Districts II, III, and IV), the Patrol Resources Bureau (Intelligence Information Division, Enforcement Support Division, Judicial Enforcement Division, SWAT, Aviation Services, Extraditions, Court Security Division, and Communications Division), Investigations Bureau (Special Investigations Division, Major Crimes Division, Scientific Analysis Division, General Crimes Division, Property Management Division, and Records & AFIS) and Patrol Bureau. **Exh. 1** (Grennan Decl. ¶¶ 8, 9). The Professional Standards Bureau, Patrol Resources Bureau, Investigations Bureau, and Enforcement Support Division are not a part of Patrol Bureaus East or West. **Exh. 1** (Grennan Decl. ¶ 10); **Exh. 2** (Houck Depo., pp. 64:21-65:1). At no time from February 1, 2020 to the present has SWAT been a part of Patrol Bureau East or West. **Exh. 1** (Grennan Decl. ¶ 10).

2.    Each division within the Patrol Bureau is overseen by a Chief. **Exh. 1** (Grennan Decl. ¶ 11). Each district has a Captain/Commander, two to three Lieutenant/Commanders (which, depending on the district and shift, can serve in roles such as "Administrative Lieutenant," "Night Watch Commander," "Weekend Watch Commander," or "Acting Captain"), between two to four sergeants (mid-level supervisors who oversee patrol squads with up to eight patrol deputy and four civilian personnel), patrol deputies, detectives, and

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

administrative/civilian staff. **Exh. 1** (Grennan Decl. ¶ 12). Different squads are assigned to work different days and shifts, but each squad consistently reports to the same Lieutenant. **Exh. 1** (Grennan Decl. ¶ 12) Patrol Bureaus East and West employ the various Sherriff's deputies that can be seen patrolling Maricopa County's streets on a daily basis, along with their supervisors. **Exh. 1** (Grennan Decl. ¶ 11). Patrol deputies and sergeants are paid on an hourly basis and not considered exempt under the FLSA. **Exh. 1** (Grennan Decl. ¶ 13). However, Patrol lieutenants are classified as exempt under the FLSA and are paid a salary basis in excess of $684/week. **Exh. 1** (Grennan Decl. ¶ 13).

## II.    Conditional Class Certification

3.    On October 25, 2023, the Court granted conditional class certification under the FLSA for the following group within the MCSO:

> all current and former lieutenants from Patrol Divisions East and West who worked for Defendant at any time from January 11, 2020, to the present (the "potential class members").

(Doc. 38, p. 11).

4.    Because the FLSA has a two-year lookback period, the relevant time period is from January 11, 2021 to the present. (Doc. 1). If Plaintiff Christopher Houck ("Houck") can establish a willful violation under the FLSA, the lookback period would be extended to January 11, 2020. (Doc. 1).

5.    Prior to conditional certification, 14 individuals had already opted in. (Docs. 5-14, 16-18, 24). These individuals included Keller, Sanchez, Rosenberger, Hunter, Halverson, Brice, Neville, Jackson, Vance, Thomas, Trowbridge, Rankin, Bocardo and Aaosta. (Docs. 5-14, 16-18, 24). Following conditional class certification, another eight individuals opted in, consisting of: Goad, Ranck, Jakowinicz, McCann, Kremer, Cruz, Freeman and Whelan-Gonzales. (Docs. 44, 50, 54, 56-60). The opt-in dates for each of these additional individuals ranges from January 13, 2023 through January 4, 2025.

6.    On December 5, 2023, the Court held a Scheduling Conference in which discovery was discussed. (Doc. 55). The Court ruled that discovery may be taken of 50% of

the opt-in Plaintiffs. (Doc. 48).

7.      Following Defendant's preparation of and service of discovery on Hunter and Bocardo they unilaterally filed self-titled "Notice of Withdrawal of Consent Form." **(**Docs. 63, 65).

## III.     Maricopa County's Decision to Classify Law Enforcement Lieutenants As Exempt (2007).

8.      In 2007, Maricopa County made the decision to classify lieutenants as exempt from overtime. **Exh. 3** (Ellison Depo., pp. 8:25-10:9). This decision was reached after Maricopa County had done a review of lieutenant job duties and reviewed and relied upon guidance from the Department of Labor ("DOL"). **Exh. 3** (Ellison Depo., pp. 13:9-15:18) As Darrien Ellison testified at deposition: "So we looked at their central functions. We – we researched and looked at the resources that are on the Department of Labor. . . . There was a 2005 Department of Labor opinion letter that we were aware of that another agency or organization reached out to the Department of Labor and asked some questions about lieutenants, patrol lieutenants, and captains . . . ." **Exh. 3** (Ellison Depo., pp. 13:17 – 14:1). Mr. Ellison further testified that Maricopa County specifically relied upon an October 2005 DOL letter that specifically addressed the exempt status of patrol lieutenants. **Exh. 3** (Ellison Depo., pp. 65:2-68:22). In the opinion letter, the DOL recognized that patrol lieutenants could be exempt from overtime. **Exh. 68** (DOL Opinion Letter). Retention of Third-Party Consultant Fields Consulting to Conduct A Job Analysis For Preparation of Accurate Job Descriptions (2017).

9.      Fields Consulting Group, Inc. ("Fields") in 2016/2017. **Exh. 4** (Fields Report, HOUCK000021).  Fields was hired by Maricopa County to analyze the job duties actually performed by deputies, sergeants, lieutenants, and captains within the Patrol Bureau of MCSO. **Exh. 4**. A report was prepared in 2017. **Exh. 4**. The purpose of the Job Analysis Report was to assist Maricopa County with preparation of updated and accurate job descriptions for each rank, based on job duties *actually performed*. **Exh. 4**.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

10.     As stated in the report, Fields sent surveys to numerous individuals, performed interviews, and analyzed the responses before preparation of their findings contained in the report.  Fields received and analyzed responses to the "Task Survey" (asking questions about frequency of tasks performed) from *over 90% of the lieutenants in patrol bureau* (37 out of 41 lieutenants).  **Exh. 4** (Fields report, HOUCK000023; 28).   Part of the surveys, Fields specifically asked lieutenant about the "frequency" and "importance" of the various tasks performed.  Frequency was ranked as follows:  0: Never, 1: Yearly, 2: Quarterly, 3: Monthly, 4: Weekly, 5: During each shift.  **Exh. 4** (Fields Report; HOUCK000026).  Importance was ranked as follows: 0: Not Important; 1: Somewhat Important; 2: Important; 3: Very Important; 4: Extremely Important.  **Exh. 4** (Fields Report; HOUCK000026).  Lieutenants selected their own rankings in response to the surveys. **Exh. 4**.

11.     Upon receipt of the survey results, Fields merged the frequency and importance ratings for an overall "Importance" score.  Fields reported the findings to Maricopa County by way of "Task Cluster" tables.  The rankings for lieutenants are set forth below:

Table 7c:  Patrol Lieutenant Task Clusters Rank-ordered by Importance

| TASK CLUSTERS (Rank Order by Importance) | Mean Importance |
|---|---|
| Incident Management | 3.33 |
| Career & Professional Development | 3.30 |
| Supervision | 3.28 |
| Community Policing | 3.06 |
| Management | 2.98 |
| Administration | 2.91 |
| Court Security | 2.62 |
| Specialized Assignments (Major Crimes, SI, SWAT Division, And Lake Patrol) | 2.42 |
| Patrol Duties | 2.09 |
| Criminal Investigations | 1.97* |

*rounds to 2.0 and was determined to be critical for this rank

**Exh. 4** (Fields Report, HOUCK000034)

12.     After Fields completed its analysis, Fields "updated the class specifications (i.e. position descriptions) for each rank to accurately reflect the competency and duty requirements of each job." **Exh. 4** (Fields Report, HOUCK000055).  Fields provided draft

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

1  job descriptions to Maricopa County that "represent the core position at each rank." **Exh. 4**

2  (Fields Report, HOUCK 140). The draft job description Fields prepared for lieutenants

3  specifically included "Supervision," "Career & Professional Development," "Incident

4  Management," and "Community Policing, and Administration." **Exh. 4** (Fields Report,

5  HOUCK000152-153). Specifically excluded from the draft job description were task clusters

6  for "Patrol Duties" and "Criminal Investigations" due to Fields' assessment that the

7  importance of these duties to the lieutenant role was low. *Compare* Complete Lieutenant Task

8  List for Survey Questions at HOUCK000087-99 *with* draft Lieutenant Job Description at

9  HOUCK000148-151; *see, also,* HOUCK000034.

10  **IV.    Rollout of Current Law Enforcement Lieutenant Job Description (2019).**

11      13.    Following completion of the Fields Job Analysis, Maricopa County revised the

12  Law Enforcement Job Description to better align with the actual duties Fields determined

13  the lieutenants were performing on a day-to-day basis. **Exh. 3** (Ellison Depo., pp. 78:24-

14  81:22). Maricopa County adopted the job descriptions prepared by Fields, without making

15  any material changes to the "Essential Job Tasks" for the lieutenant positions. **Exh. 3** (Ellison

16  Depo., pp. 26:21-27:16).

17      14.    In 2019, the current version of the Law Enforcement Lieutenant job

18  description was rolled out. **Exh. 5** (Law Enforcement Lieutenant Job Description). Houck

19  and each of the deposed opt-ins (Acosta, Brice, Freeman, Halverson, Jackson, Keller, Neville,

20  Rankin, Rosenberger, Thomas, Trowbridge, Vance) have all conceded the applicability of this

21  job description to Lieutenants within the Patrol Bureau East and West divisions and that they

22  actually perform each of the duties in the job description. **Exh. 2** (Houck Depo., p. 173:3-

23  25); **Exh. 41** (Acosta Depo. Vol. I, pp. 90:13-91:8); **Exh. 22** (Brice Depo., pp. 103:23-104:16);

24  **Exh. 53** (Freeman Depo., pp. 78:24-81:15); **Exh. 19** (Halverson Depo., pp. 22:20-23:17);

25  **Exh. 28** (Jackson Depo., pp 66:5-67:22); **Exh. 10** (Keller Depo., pp. 102:16-104:25); **Exh. 25**

26  (Neville Depo., pp. 137:23-140:13); **Exh. 38** (Rankin Depo., pp. 25:8-27:3); **Exh. 15**

27  (Rosenberger Depo. Vol. I, p. 107:9-23); **Exh. 33** (Thomas Depo., p. 68:9-18); **Exh. 36**

28  (Trowbridge Depo., p. 49:5-13); **Exh. 30** (Vance Depo., pp. 29:3-31:24). Houck

15.    This Law Enforcement Lieutenant job description sets forth the essential job duties of the Law Enforcement Lieutenant position. **Exh. 5** (Law Enforcement Lieutenant Job Description). These duties include administration, incident management, career and professional development, supervision, community policing, and management. **Exh. 5** (Law Enforcement Lieutenant Job Description). Absent from the Patrol Lieutenant job description is the expectation that Lieutenants conduct criminal investigations, respond to calls for service, or engage in patrol duties. **Exh. 5** (Law Enforcement Lieutenant Job Description). Separate job descriptions exist for sergeants and deputies (officers). Contrary to the Lieutenant position, the sergeant and deputy roles are heavily focused on patrol duties, criminal investigations, and responding to calls for service. The job description for Deputy Sheriff states that the primary duties of the position are criminal investigations, response to calls for service, patrol duties, training, and administration. **Exh. 6** (Deputy Sheriff Job Description). The job description for Law Enforcement Sergeant states that the primary duties of the position are training, supervision, administration, patrol duties, and criminal investigations. **Exh. 7** (Law Enforcement Sergeant Job Description).

**V.    Imposition of Additional Administrative Duties on Sergeants, Lieutenants, and Captains Post *Melendres* Ruling.**

16.    MCSO is subject to various court orders in the case titled *Melendres v. Maricopa County*, this is a case that was filed asserting racial profiling allegations. **Exh. 1** (Grennan Decl. ¶ 15). As a result of certain court orders, MCSO has instituted reforms regarding increased supervision and monitoring by management personnel. **Exh. 1** (Grennan Decl. ¶ 15). These reforms have evolved over the years, including following Defendant's revision of its MCSO personnel job descriptions in 2019. **Exh. 1** (Grennan Decl. ¶ 15). As a result of these reforms, MCSO supervisors have been tasked with additional administrative and management duties. **Exh. 1** (Grennan Decl. ¶ 15).

**VI.    Plaintiff Christopher Houck and the Opt-Ins' Employment History During the Relevant Time Period.**

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

**A.**    **Plaintiff Christopher Houck**

17.    Houck promoted to Lieutenant on April 4, 2022. **Exh. 2** (Houck Depo., pp. 61:14-24).

18.    Upon Houck's promotion to Lieutenant, he signed a Fair Labor Standards Act (FLSA) Employee Acknowledgement form. **Exh. 7** (Houck FLSA Employee Acknowledgement Form, MCC 000093). By signing the form Houck acknowledged that Maricopa County had classified him as exempt under the FLSA. **Exh. 7** (Houck FLSA Employee Acknowledgement Form). In signing the form, Houck further acknowledged that he had received and read Maricopa County's policy titled Hours Worked for Exempt Employees. **Exh. 7** (Houck FLSA Employee Acknowledgement Form).

19.    Upon Houck's promotion to Lieutenant on April 4, 2022, he was transferred to District 7 where he worked through April 18, 2022. **Exh. 2** (Houck Depo., p. 61:14-24). While at District 7, Houck reported to Lt. Halverson, who was serving as the Acting Captain. **Exh. 2** (Houck Depo., pp. 70:22-25).

20.    Houck transferred to District 1 on April 18, 2022, where he worked until January 19, 2025. **Exh. 2** (Houck Depo., pp. 61:25-62:3). For the first seven (7) months as a patrol lieutenant in District 1, Houck served as a Watch Commander over the night shift, scheduled Wednesday through Saturday from 5:0pm to 3:0am. **Exh. 2** (Houck Depo., p. 62:4-10). Houck switched to days and was scheduled to work Wednesday through Saturday 7:0am to 5:0pm through January 19, 2025. **Exh. 2** (Houck Depo., p. 62:11-15).

21.    On January 20, 2025, Houck transferred to Court Security, which is not within Patrol Bureaus East or West. **Exh. 2** (Houck Depo., pp. 60:21-61:13).

22.    Houck filed his opt-in notice in this case on January 11, 2023. (Doc. 1-2).

23.    The longest potential relevant time period for Houck in this case is April 4, 2022 (his promotion to Lieutenant) through January 19, 2025 (the date of his transfer out of Patrol Bureaus East or West) ("Houck Relevant Time Period"). **Exh. 2** (Houck Depo., pp. 60:21-61:13); (Doc. 1-2).

24.    Houck earned a salary basis of at least $684 per week during the Houck

7

**FISHER & PHILLIPS LLP**
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

1  Relevant Time Period. **Exh. 2** (Houck Depo., p. 201:14-17)

2      25.     Houck supervised at least two employees during the Houck Relevant Time

3  Period. **Exh. 2** (Houck Depo., p. 69:7-10)

4      26.     █████████████████████████████████

5  ████████████████████████████████████████████

6  ████████████████████████████████████████████

7  ██████████████████████████

8  **B.**    **David Keller**

9      27.     Keller promoted to Lieutenant on October 19, 2020. **Exh. 10** (Keller Depo.,

10  p. 17:13-25).

11      28.     Upon Keller's promotion to Lieutenant, he signed a Fair Labor Standards Act

12  (FLSA) Employee Acknowledgement form. **Exh. 11** (Keller FLSA Employee

13  Acknowledgement Form, MCC 002644). By signing the form Keller acknowledged that

14  Maricopa County had classified him as exempt under the FLSA. **Exh. 11** (Keller FLSA

15  Employee Acknowledgement Form). In signing the form, Keller further acknowledged that

16  he had received and read Maricopa County's policy titled Hours Worked for Exempt

17  Employees. **Exh. 11** (Keller FLSA Employee Acknowledgement Form).

18      29.     From October 2020 through January 2021, Keller was assigned to District 2.

19  **Exh. 10** (Keller Depo., p. 18:1-13). He reported to Captain Shawn Braaten while assigned to

20  District 2. **Exh. 10** (Keller Depo., p. 19:4-10).

21      30.     From January 2021 through January 2022, Keller was assigned to District 7.

22  **Exh. 10** (Keller Depo., p. 18:14-22). He reported to Captain Larry Kratzer while in District

23  7. **Exh. 10** (Keller Depo., p. 14:11-13). He worked 7:30am to 5:30pm when he was assigned

24  day shifts. If he was assigned night shift as watch commander, the hours were 5:0pm to 3:0am.

25  **Exh. 10** (Keller Depo., p. 73:7-15). In District 7 Keller served as Acting Commander

26  "probably two to three times" for Captain Kratzer. **Exh. 10** (Keller Depo., p 39:3-12).

27      31.     In January 2022, Keller transferred to District 3 where he is currently assigned.

28

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

1   **Exh. 10** (Keller Depo., pp. 18:20-19:3). He currently reports to Captain Brian Stutsman in

2   District 3. **Exh. 10** (Keller Depo., p. 13:1-4). He currently works Tuesday through Friday,

3   from 7:30am to 5:30pm. **Exh. 10** (Keller Depo., p. 26:8-14). Keller served as Acting Captain

4   for Stutsman "probably…five or six times." Exh. 10 (Keller Depo., p. 39:3-12).

5       32.      Keller filed his opt-in notice in this case on January 13, 2023. (Doc. 5).

6       33.      Keller's potentially relevant time period in this case is October 19, 2020, (his

7   promotion date to Lieutenant) through the present date ("Keller Relevant Time Period). **Exh.**

8   **10** (Keller Depo., p. 17:13-25).

9       34.      Keller earned a salary basis of at least $684 per week during the Keller Relevant

10  Time Period. **Exh. 10** (Keller Depo., p. 20:8-1)

11      35.      Keller supervised at least two employees during the Keller Relevant Time

12  Period. **Exh. 10** (Keller Depo., pp. 37:14-38:2)

13      36.



19  **C.     Emmanuel Sanchez**

20      37.      Sanchez was promoted to Lieutenant on June 27, 2022, and was assigned to

21  District 3 under Captain Brian Ellis Stutsman. **Exh. 65** (Sanchez Personnel Action Form,

22  MCC 019987).

23      38.      Upon Sanchez's promotion to Lieutenant, he signed a Fair Labor Standards

24  Act (FLSA) Employee Acknowledgement form. **Exh. 13** (Sanchez FLSA Employee

25  Acknowledgement Form, MCC 019991). By signing the form Sanchez acknowledged that

26  Maricopa County had classified him as exempt under the FLSA. **Exh. 13** (Sanchez FLSA

27  Employee Acknowledgement Form). In signing the form, Sanchez further acknowledged that

28

9

he had received and read Maricopa County's policy titled Hours Worked for Exempt Employees. **Exh. 13** (Sanchez FLSA Employee Acknowledgement Form).

39.    From April 17, 2023, through February 5, 2024, Sanchez was assigned to District 2 and reported to Captain Philip Duane Hilliker. **Exh. 66** (Sanchez Blue Team Supervisor Notes Excerpt, MCC 020075-020076).

40.    On February 5, 2024, Sanchez transferred out of District 2 into the SWAT division. **Exh. 67** (Sanchez Blue Team Supervisor Notes Excerpt, MCC 020091).

41.    Sanchez filed his opt-in notice in this case on January 17, 2023. (Doc. 6).

42.    Sanchez's potentially relevant time period in this case is June 27, 2022 (his promotion date to Lieutenant) through February 5, 2024 (the date of his transfer out of Patrol Bureaus East or West divisions) ("Sanchez Relevant Time Period").

43.    [Intentionally left blank].

44.    [Intentionally left blank].

45.    ████████████████████████████████ ████ ████
██████████████████████████████████████████ ██
█ ██████████████████████████████████████████
██████ ██████ ██████████████████ ████

### D.    Donald Rosenberger

46.    Rosenberger was promoted to to Lieutenant on February 26, 2007. **Exh. 15** (Rosenberger Depo. Vol. I, p. 56:8-16).

47.    Upon Rosenberger's promotion to Lieutenant, he signed a Fair Labor Standards Act (FLSA) Employee Acknowledgement form. **Exh. 17** (Rosenberger FLSA Acknowledgement Form, MCC 003497). By signing the form Rosenberger acknowledged that Maricopa County had classified him as exempt under the FLSA. **Exh. 17** (Rosenberger FLSA Acknowledgement Form). In signing the form, Rosenberger further acknowledged that he had received and read Maricopa County's policy titled Hours Worked for Exempt Employees. **Exh. 17** (Rosenberger FLSA Acknowledgement Form).

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

10

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

48.     From at least January 2020 through January 2021, Rosenberger was assigned to District 1. **Exh. 15** (Rosenberger Depo. Vol I., pp. 42:18-43:2).

49.     From January 2021 through January 2022, Rosenberger was assigned to District 6. **Exh. 15** (Rosenberger Depo. Vol. I, p. 42:1-06). In District 6, Rosenberger first reported to Captain Lugo and then to Captain Aldorasi. **Exh. 15** (Rosenberger Depo. Vol. I, p. 41:21-25). He worked 10-hour shifts from Sunday through Wednesday while in District 6. **Exh. 15** (Rosenberger Depo. Vol. I, p. 38:11-20).

50.     From January 2022 and to the present, Rosenberger is assigned to the Lake Patrol division. **Exh. 15** (Rosenberger Depo. Vol. I, pp. 17:19-18:1). He currently works 10-hour shifts, Sunday through Wednesday. **Exh. 15** (Rosenberger Depo. Vol. I, p. 18:2-16). He initially reported to Captain Dave Lee and then Captain Aaron Flowers. At the time of his deposition on July 18, 2025, Rosenberger was reporting to Lieutenant Matt Hunter. **Exh. 15** (Rosenberger Depo. Vol. I, pp. 21:23-22:10). Matt Hunter served as the Acting Commander while Captain Aaron Flowers was transferred out. **Exh. 15** (Rosenberger Depo. Vol. I, pp. 21:23-22:10).

51.     Rosenberger filed his opt-in notice in this case on January 18, 2023. (Doc. 7).

52.     Rosenberger's potentially relevant time period in this case is January 11, 2020 (three years preceding the filing of this lawsuit) through the present date. (Rosenberger Relevant Time Period").

53.     Rosenberger assumes he earned a salary basis of at least $684 per week during the Rosenberger Relevant Time Period. **Exh. 15** (Rosenberger Depo. Vol. I, p. 63:21-25)

54.     Rosenberger supervised at least two employees during the Rosenberger Relevant Time Period. **Exh. 15** (Rosenberger Depo. Vol. I, p. 64:16-18)

55.     

1

2

### E.    Matthew Hunter

56.    Hunter filed his opt-in notice in this case on January 18, 2023. (Doc. 8).

57.    Hunter does not have a relevant time period associated with his opt-in because he filed a Notice of Withdrawal of Consent on April 5, 2024, notifying the Court that he was withdrawing his consent to opt-in to the lawsuit. (Doc. 63).

### F.    Jonathan Halverson

58.    [Intentionally left blank].

59.    Upon Halverson's promotion to Lieutenant, he signed a Fair Labor Standards Act (FLSA) Employee Acknowledgement form. **Exh. 20** (Halverson FLSA Employee Acknowledgement Form, MCC 002083). By signing the form Halverson acknowledged that Maricopa County had classified him as exempt under the FLSA. **Exh. 20** (Halverson FLSA Employee Acknowledgement Form). In signing the form, Halverson further acknowledged that he had received and read Maricopa County's policy titled Hours Worked for Exempt Employees. **Exh. 20** (Halverson FLSA Employee Acknowledgement Form).

60.    [Intentionally left blank].

61.    From March 11, 2019, through January 2021, Halverson was assigned District 7 as a lieutenant and reported to Larry Kratzer. **Exh. 19** (Halverson Depo., pp. 16:23-17:3). He worked Monday through Wednesday from 7am to 5pm. **Exh. 19** (Halverson Depo., pp. 60:25-61:4).

62.    From January 2021 through January 2022, Halverson was assigned to the Bureau of Internal Oversight and reported to Captain James McFarland. **Exh. 19** (Halverson Depo., p. 16:3-19) The Bureau of Internal Oversight is not part of the Patrol Bureaus East or West divisions. **Exh. 19** (Halverson Depo., p. 16:3-19). He worked Monday through Wednesday from 7am to 5pm. **Exh. 19** (Halverson Depo., pp. 60:25-61:4).

63.    From January 2022 through January 2024, Halverson was assigned to District

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

7, Patrol Bureau East Division and reported to Captain Larry Kratzer. **Exh. 19** (Halverson Depo., p. 15:4-14). He worked Monday through Wednesday from 7am to 5pm. **Exh. 19** (Halverson Depo., pp. 60:25-61:4). Halverson has served as "Acting Captain" multiple times, including one period that spanned 19 weeks. **Exh. 19** (Halverson Depo., pp. 33:1-3; 64:6-16; 65:9-17; 67:11-20)

64.    From January 2024 through March 2025, Halverson transferred to the traffic stop analysis unit. **Exh. 19** (Halverson Depo., 14:7-17) The traffic stop analysis unit is not within the Patrol Bureaus East or West divisions. **Exh. 19** (Halverson Depo., p. 14:7-20). He worked Monday through Wednesday from 7am to 5pm. **Exh. 19** (Halverson Depo., pp. 60:25--61:4).

65.    On March 3, 2025, Halverson was promoted to Captain for the Enforcement Support Division. **Exh. 19** (Halverson Depo., pp. 11:22-12:11). The Enforcement Support Division is not in Patrol Bureaus East or West divisions. **Exh. 19** (Halverson Depo., pp. 11:22-12:11).

66.    Halverson filed his opt-in notice in this case on January 18, 2023. (Doc. 9).

67.    Halverson's potentially relevant time period in this case is January 11, 2020 (three years preceding the filing of this lawsuit) through January 2021 (the date of his transfer our of Patrol Bureaus East or West) and from January 2022 (the date of transfer back into District 7) through January 2024 (the date of his transfer out of Patrol Bureaus East or West) ("Halverson Relevant Time Period").

68.    Halverson earned a salary basis of at least $684 per week during the Halverson Relevant Time Period. **Exh. 19** (Halverson Depo, pp. 67:24-68:2).

69.    Halverson supervised at least two employees during the Halverson Relevant Time Period. **Exh. 19** (Halverson Depo., p. 68:9-11).

70.    

FP 57027351.1

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

1 ██████████████████████████████ ████████ ██████████████████

2 ████████████████████████████████████████ ████████ ████████

3 ████████████████

### G.    Todd Brice

71.    [Intentionally left blank].

72.    Upon Brice's promotion to Lieutenant, he signed a Fair Labor Standards Act (FLSA) Employee Acknowledgement form. **Exh. 23** (Brice FLSA Employee Acknowledgement Form, MCC 001764). By signing the form Brice acknowledged that Maricopa County had classified him as exempt under the FLSA. **Exh. 23** (Brice FLSA Employee Acknowledgement Form). In signing the form, Brice further acknowledged that he had received and read Maricopa County's policy titled Hours Worked for Exempt Employees. **Exh. 23** (Brice FLSA Employee Acknowledgement Form).

73.    [Intentionally left blank].

74.    From December 4, 2017, through February 24, 2020, Brice was assigned to District 3 and reported to Captain Paul Chagolla. **Exh. 22** (Brice Depo., pp. 14:25-15:5). In District 3, Brice worked night shifts serving as Watch Commander, Sunday through Wednesday from 5:00pm to 3:0am. **Exh. 22** (Brice Depo., p. 15:14-21).

75.    From February 24, 2020, to the present, Brice has been assigned to the Compliance Bureau. **Exh. 22** (Brice Depo., pp. 13:20-14:17). The Compliance Bureau is not part of the Patrol East or West divisions. **Exh. 22** (Brice Depo., p. 14:15-24). Brice's schedule is currently Monday through Thursday, 10 hours per day. **Exh. 22** (Brice Depo., pp. 15:22--16:10).

76.    Brice filed his opt-in notice in this case on January 19, 2023. (Doc. 10).

77.    Brice's potentially relevant time period in this case is January 11, 2020 (three years preceding the filing of this lawsuit) through February 2020 (the date of his transfer out of Patrol Bureaus East or West) ("Brice Relevant Time Period").

78.    Brice earned a salary basis of at least $684 per week during the Brice Relevant

FP 57027351.1

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

1  Time Period. **Exh. 22** (Brice Depo, pp. 104:25-105:3)

2       79.     Brice supervised at least two employees during the Brice Relevant Time Period.

3  **Exh. 22** (Brice Depo., pp. 105:25-106:3)

4       80.

5

6

7

8

9

10      **H.**    **Ryan Neville**

11       81.     Neville was promoted to Lieutenant on July 26, 2021. **Exh. 25** (Neville Depo.,

12  pp. 11:25-12:12).

13       82.     Upon Neville's promotion to Lieutenant, he signed a Fair Labor Standards Act

14  (FLSA) Employee Acknowledgement form. **Exh. 26** (Neville FLSA Employee

15  Acknowledgement Form). By signing the form Neville acknowledged that Maricopa County

16  had classified him as exempt under the FLSA. **Exh. 26** (Neville FLSA Employee

17  Acknowledgement Form). In signing the form, Neville further acknowledged that he had

18  received and read Maricopa County's policy titled Hours Worked for Exempt Employees.

19  **Exh. 26** (Neville FLSA Employee Acknowledgement Form).

20       83.     From July 26, 2021, through April 2023, Neville was assigned to District 2 and

21  reported initially to Captain Joe Dietrich and then to Captain Phil Hilliker. **Exh. 25** (Neville

22  Depo., pp. 89:19-90:6). While in District 2, Neville worked the day shift, Tuesday through

23  Friday. **Exh. 25** (Neville Depo., p. 65:1-09).

24       84.     From April 2023 to the present, Neville was assigned to the Special

25  Investigations division as a Narcotics Division Commander. **Exh. 25** (Neville Depo., p. 76:9-

26  14). The Special Investigations division is not part of the Patrol Bureaus East or West. **Exh.**

27  **25** (Neville Depo., pp. 12:20-14:18).

28

FP 57027351.1

85.     Neville filed his opt-in notice in this case on January 20, 2023. (Doc. 11).

86.     Neville's potentially relevant time period in this case is July 26, 2021 (the date of his promotion to Lieutenant) through April 2023 (the date of his transfer out of Patrol Bureaus East or West) ("Neville Relevant Time Period").

87.     Neville believes he earned a salary basis of at least $684 per week during the Neville Relevant Time Period. **Exh. 25** (Neville Depo, p. 39:16-22).

88.     Neville supervised at least two employees during the Neville Relevant Time Period. **Exh. 25** (Neville Depo., pp. 40:21-25).

89.     ████████████████████████████████ ████ ████

██████████████████████████████████████████████ ████

████████████████████████████████████████████████████

██ ████████████████████████████████████████████████

████ ██████ █████████████████████

**I.     A.J. Jackson**

90.     Jackson was promoted to Lieutenant on November 28, 2022. **Exh. 28** (Jackson Depo p. 24:8-22).

91.     [Intentionally left blank].

92.     From November 28, 2022, through January 2024, Jackson was assigned to District 2 and reported to Captain Philip Hilliker. **Exh. 28** (Jackson Depo., pp. 24:19-24). Jackson worked Wednesday through Saturday. **Exh. 28** (Jackson Depo., pp. 92:2-7).

93.     From January 2024 through May 2024, Jackson was assigned to the Major Crimes division and reported to Captain Frederick Aldorasi. **Exh. 28** (Jackson Depo., pp. 25:5-26:11) The Major Crimes division is not part of the Patrol Bureaus East or West divisions. **Exh. 28** (Jackson Depo., pp. 25:5-26:11).

94.     From May 2024 through December 2024, Jackson transferred to the General Crimes division and reported to Captain John Bailey. **Exh. 28** (Jackson Depo., pp. 25:17-26:11). The General Crimes division is not part of the Patrol Bureaus East or West divisions.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

16

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

**Exh**. **28** (Jackson Depo., pp. 25:17-26:11).

95.    From December 2024 to January 2025, Jackson was assigned to the Lake Patrol Division (approximately two months) and reported to Captain Dave Lee. **Exh**. **28** (Jackson Depo., p. 26:16-25). During Lake Patrol, Jackson worked Wednesday through Saturday from 10am to 8pm. **Exh**. **28** (Jackson Depo., p. 40:16-21). On March 3, 2025, Jackson was transferred to Homicide Unit Commander. **Exh**. **28** (Jackson Depo., p. 27:1-3).

96.    Jackson filed his opt-in notice in this case on January 23, 2023. (Doc. 12).

97.    Jackson's potentially relevant time period in this case is November 28, 2022 (the date of his promotion to Lieutenant) through January 2024 (the date of his transfer out of Patrol Bureaus East or West) and December 2024 (the date he transferred into Lake Patrol) through January 2025 (the date of his transfer out of Patrol Bureaus East or West) ("Jackson Relevant Time Period").

98.    Jackson earned a salary basis of at least $684 per week during the Jackson Relevant Time Period. **Exh**. **28** (Jackson Depo, p. 44:18-23)

99.    Jackson supervised at least two employees during the Jackson Relevant Time Period. **Exh**. **28** (Jackson Depo., p. 45:6-13)

100.    

**J.    Jerry Vance**

101.    Vance was promoted to Lieutenant on January 11, 2021. **Exh**. **30** (Vance Depo., p. 14:3-05).

102.    Upon Vance' promotion to Lieutenant, he signed a Fair Labor Standards Act (FLSA) Employee Acknowledgement form. **Exh**. **31** (Vance FLSA Employee Acknowledgement Form; MCC 003761). By signing the form Vance acknowledged that Maricopa County had classified him as exempt under the FLSA. **Exh**. **31** (Vance FLSA

17

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

1  Employee Acknowledgement Form). In signing the form, Vance further acknowledged that
2  he had received and read Maricopa County's policy titled Hours Worked for Exempt
3  Employees. **Exh. 31** (Vance FLSA Employee Acknowledgement Form).

4      103.   From January 11, 2021, through March 2021, Vance was assigned to District 1
5  as the nighttime watch commander. **Exh. 30** (Vance Depo., pp. 14:10-16:13). Vance worked
6  from 5pm to 3am, Wednesday through Saturday, during his assignment as the nighttime
7  watch commander. **Exh. 30** (Vance Depo., p. 18:8-20).

8      104.   From March 2021 through July 2021, Vance was assigned to District 1 as the
9  daytime watch commander. **Exh. 30** (Vance Depo., pp. 14:10-16:13). Vance worked from
10 7am to 5pm, Wednesday through Saturday, during his assignment as the daytime watch
11 commander. **Exh. 30** (Vance Depo., p. 18:8-20).

12     105.   From July 2021 through September 2023, Vance was assigned to the Lake
13 Patrol division. **Exh. 30** (Vance Depo., p. 16:14-19). From July 2021 through September
14 2021, he worked Wednesday through Saturday, 7am to 5pm. **Exh. 30** (Vance Depo., pp.
15 18:21-19:6). From September 2021 through September 2023, he worked Monday, Tuesday,
16 Thursday and Friday from 7am to 5pm. **Exh. 30** (Vance Depo., p. 19:7-13).

17     106.   From September 2023 through January 2025, Vance was assigned to the
18 Enforcement Support division. **Exh. 30** (Vance Depo., pp. 16:23-17:5). The Enforcement
19 Support division is not part of Patrol Bureaus East or West divisions. **Exh. 30** (Vance Depo.,
20 pp. 16:23-17:8).

21     107.   From January 2025 through March 2025, Vance returned to District 1 as the
22 nighttime watch commander. **Exh. 30** (Vance Depo., p. 17:19-23). Vance worked Wednesday
23 through Saturday from 5pm to 3am. **Exh. 30** (Vance Depo., p. 27:4-11).

24     108.   From March 2025 to the present, Vance has been assigned to District 7. **Exh.**
25 30 (Vance Depo., p. 17:19-23). Vance's current schedule in District 7 is Monday through
26 Thursday, 7am to 5pm. **Exh. 30** (Vance Depo., p. 27:12-14).

27     109.   Vance filed his opt-in notice in this case on January 23, 2023. (Doc. 13).
28     110.   Vance's potentially relevant time period in this case is January 11, 2021 (the

date of his promotion to Lieutenant) through September 2023 (the date of his transfer out of Patrol Bureaus East or West) and January 2025 (the date he transferred back into District 1) through the present. ("Vance Relevant Time Period).

111.    Vance earned a salary basis of at least $684 per week during the Vance Relevant Time Period. **Exh. 30** (Vance Depo., p. 75:8-13).

112.    Vance supervised at least two employees during the Vance Relevant Time Period. **Exh. 30** (Vance Depo., pp. 75:22-25).

113.    

### K.    Jason Thomas

114.    Thomas was promoted to Lieutenant on April 4, 2022. **Exh. 33** (Thomas Depo., p. 12:15-17).

115.    Upon Thomas' promotion to Lieutenant, he signed a Fair Labor Standards Act (FLSA) Employee Acknowledgement form. **Exh. 34** (Thomas FLSA Employee Acknowledgement Form; MCC 004007). By signing the form Thomas acknowledged that Maricopa County had classified him as exempt under the FLSA. **Exh. 34** (Thomas FLSA Employee Acknowledgement Form). In signing the form, Thomas further acknowledged that he had received and read Maricopa County's policy titled Hours Worked for Exempt Employees. **Exh. 34** (Thomas FLSA Employee Acknowledgement Form).

116.    From April 4, 2022, through March 2025, Thomas was assigned to District 1. **Exh. 33** (Thomas Depo., pp. 13:24-17:25). From April 2022 and for approximately two weeks, Thomas worked Wednesday through Saturday from 5pm to 3am. **Exh. 33** (Thomas Depo., pp. 15:3-11; 17:9-17). Thereafter he worked the day shift in District 1, Wednesday through Saturday from 7am to 5pm, until about December 2022/January 2023. **Exh. 33**

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

(Thomas Depo., pp. 15:12-16; 17:13-22). Afterwards, Thomas moved his schedule to Sunday through Wednesday from 7am to 5pm until about March 2025. **Exh. 33** (Thomas Depo., pp. 15:12-16; 17:13-25).

117.    From March 2025 through June 7, 2025, Thomas was assigned to the communications division, which is not part of the Patrol Bureau East or West divisions. **Exh. 33** (Thomas Depo., p. 18:1-04). From June 7, 2025, to the present, Thomas returned to District 1. He works Monday through Thursday from 7am to 5pm. **Exh. 33** (Thomas Depo., p. 18:8-13).

118.    Thomas filed his opt-in notice in this case on January 30, 2023. (Doc. 14).

119.    Thomas' potentially relevant time period in this case is April 4, 2022 (the date of his promotion to Lieutenant) through March 2025 (the date of his transfer out of Patrol Bureau East or West) and June 7, 2025 (the date he transferred back into District 1) through the present ("Thomas Relevant Time Period").

120.



**L.    Michael Trowbridge**

121.    From November 2018 through March 3, 2025, Trowbridge was assigned as a Lieutenant to the SWAT division. **Exh. 36** (Trowbridge Depo., p. 12:1-7). As a SWAT Lieutenant he supervised two or more employees. **Exh. 36** (Trowbridge Depo., p. 63:4-10).

20

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

122.    Upon Trowbridge's promotion to Lieutenant, Maricopa County treated him as an exempt employee. **Exh.** 36 (Trowbridge Depo., p. 95:4-19).

123.    On March 3, 2025, Trowbridge was promoted to Captain. **Exh. 36** (Trowbridge Depo., pp. 11:5-12:7).

124.    Trowbridge filed his opt-in notice in this case on February 1, 2023. (Doc. 16).

125.    Trowbridge does not have a relevant time period in this case. Trowbridge was not assigned to any patrol bureau during the relevant period for this lawsuit (January 11, 2020, through the present). The SWAT division is not part of any Patrol Bureau East or West division. Trowbridge was transferred from District 2 Patrol (5042) to the SWAT Division (5055) effective November 5, 2018. **Exh. 37** (Michael Trowbridge Transfer Email, MCC 020216).

**M.    Andrew Rankin**

126.    Rankin was promoted to Lieutenant on April 4, 2022. **Exh. 38** (Rankin Depo., p. 11:17-19).

127.    Upon Rankin' promotion to Lieutenant, he signed a Fair Labor Standards Act (FLSA) Employee Acknowledgement form. **Exh. 39** (Rankin FLSA Employee Acknowledgement Form; MCC 004221). By signing the form Rankin acknowledged that Maricopa County had classified him as exempt under the FLSA. **Exh. 39** (Rankin FLSA Employee Acknowledgement Form). In signing the form, Jacksoon further acknowledged that he had received and read Maricopa County's policy titled Hours Worked for Exempt Employees. **Exh. 39** (Rankin FLSA Employee Acknowledgement Form).

128.    From April 4, 2022, through September 30, 2024, Rankin was assigned to District 3 and reported to Captain Brian Stutsman. **Exh.38** (Rankin Depo., pp. 11:20-12:10). Rankin started as a watch commander from 5pm to 3am, Sunday through Wednesday before switching to a day shift lieutenant from 8am to 6pm, Monday through Thursday. **Exh. 38** (Rankin Depo., pp. 12:13-13:2).

129.    Beginning September 30, 2024, and to the present, Rankin is currently assigned

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

to the bureau of internal oversight. **Exh. 30** (Rankin Depo., pp. 10:19-11:2). The bureau of internal oversight is not part of the Patrol Bureaus East or West divisions. **Exh. 38** (Rankin Depo., pp. 10:19-11:11). Rankin currently reports to Captain Dominic Reaulo. **Exh. 38** (Rankin Depo., p. 12:11-12).

130.    Rankin filed his opt-in notice in this case on February 10, 2023. (Doc. 17).

131.    Rankin's potentially relevant time period is April 4, 2022 (the date of his promotion to Lieutenant) through September 30, 2024 (the date of his transfer out of Patrol Bureau East or West divisions) ("Rankin Relevant Time Period").

132.    Rankin earned a salary basis of at least $684 per week during the Rankin Relevant Time Period. **Exh. 38** (Rankin Depo., p. 16:9-11)

133.    Rankin supervised at least two employees during the Rankin Relevant Time Period. **Exh. 38** (Rankin Depo., p. 16:12-13)

134.    

**N.    Kelly Bocardo**

135.    Bocardo filed her opt-in notice in this case on February 13, 2023. (Doc. 18).

136.    Bocardo does not have a relevant time period associated with her opt-in because she filed a Notice of Withdrawal of Consent on June 6, 2024, notifying the Court that she was withdrawing her consent to opt-in to the lawsuit. (Doc. 65).

**O.    Rudy Acosta**

137.    Acosta was promoted to Lieutenant on October 19, 2020. **Exh. 41** (Acosta Depo. Vol. I, p. 13:2-4). He was assigned to District 3 until February 7, 2021, and served as a night watch commander. **Exh. 41** (Acosta Depo. Vol. I, pp. 12:22-13:23). He worked Sunday through Wednesday from 5pm until 3am. **Exh. 41** (Acosta Depo. Vol. I, pp. 15:22-16:2). He reported to Captain Brian Stutsman. **Exh. 41** (Acosta Depo. Vol. I, p. 17:10-14).

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

138.    Upon Acosta's promotion to Lieutenant, he signed a Fair Labor Standards Act (FLSA) Employee Acknowledgement form. **Exh. 43** (Acosta FLSA Employee Acknowledgement Form; MCC 019992). By signing the form Acosta acknowledged that Maricopa County had classified him as exempt under the FLSA. **Exh. 43** (Acosta FLSA Employee Acknowledgement Form). In signing the form, Acosta further acknowledged that he had received and read Maricopa County's policy titled Hours Worked for Exempt Employees. **Exh. 43** (Acosta FLSA Employee Acknowledgement Form).

139.    From February 8, 2021, through April 2022, Acosta was assigned to District 1. **Exh. 41** (Acosta Depo. Vol. I, p. 17:15-20) He initially worked the same shift as District 3 (night watch commander) until he transferred to a day shift position. **Exh. 41** (Acosta Depo. Vol. I, pp. 17:18-18:12). He reported to Captain George Pepe. **Exh. 41** (Acosta Depo. Vol I., p. 21:17-22).

140.    From April 2022 to January 2024, Acosta was assigned to the general crimes division. **Exh. 41** (Acosta Depo. Vol. I, p. 28:2-7) The general crimes division is not part of the Patrol Bureaus East and West divisions. **Exh. 41** (Acosta Depo. Vol I., pp. 24:25-26:9; 28:2-10).

141.    Beginning January 2024 through the present, Acosta has been assigned to District 2. **Exh. 41** (Acosta Depo. Vol I., p. 28:11-13). Acosta worked the day shift Tuesday through Friday from 7am to 5pm. **Exh. 41** (Acosta Depo. Vol. I, p. 28:11-19). He initially reported to Captain Phil Hilliker, then Captain Aaron Flowers and now reports to Captain Michael Trowbridge. **Exh. 41** (Acosta Depo. Vol. I, pp. 29:23-30:5).

142.    Acosta filed his opt-in notice in this case on March 6, 2023. (Doc. 24).

143.    Acosta's potentially relevant time period is October 19, 2020 (the date of his promotion to Lieutenant) through April 2022 (the date of his transfer out of Patrol Bureau East or West divisions) and January 2024 (the date he transferred back in the patrol districts) through the present ("Acosta Relevant Time Period").

144.    Acosta earned a salary basis of at least $684 per week during the Acosta Relevant Time Period. At deposition Acosta testified that he did not know if he earned at

least $684 a week since his promotion to Lieutenant but "hoped" he had. **Exh. 41** (Acosta Depo. Vol. I, p. 82:8-15).

145.    Acosta supervised at least two employees during the Acosta Relevant Time Period. **Exh. 41** (Acosta Depo. Vol I , p. 83:4-7).

146.    ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

**P.    Brian Jakowiniz**

147.    [Intentionally left blank].

148.    Upon Jakowinicz's promotion to Lieutenant, he signed a Fair Labor Standards Act (FLSA) Employee Acknowledgement form. **Exh. 45** (Jakowinicz FLSA Employee Acknowledgement Form; MCC 019994). By signing the form Jakowinicz acknowledged that Maricopa County had classified him as exempt under the FLSA. **Exh. 45** (Jakowinicz FLSA Employee Acknowledgement Form). In signing the form, Jakowinicz further acknowledged that he had received and read Maricopa County's policy titled Hours Worked for Exempt Employees. **Exh. 45** (Jakowinicz FLSA Employee Acknowledgement Form).

149.    For the entire 2020 performance year and through June 9, 2021, Jakowinicz was assigned to District 1. He retired from his Lieutenant position on June 9, 2021. **Exh. 76** (Jakowinicz Blue Team Supervisor Note, MCC 020200).

150.    Jackowinicz filed his opt-in notice in this case on December 20, 2023. (Doc. 54).

151.    Jakowinicz's potentially relevant time period is January 11, 2020 (three years preceding the filing of this lawsuit) through June 4, 2021 (the date he retired from his Lieutenant position) ("Jackowinciz Relevant Time Period").

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

152.    [Intentionally left blank].

153.    [Intentionally left blank].

154.    ████████████████████████████████████ ███████

████████████████████████████████████████████████████████

██████ ████████ ████████████████████████████

**Q.    Frederick McCann**

155.    For the entire 2020 performance year, McCann was assigned to District 4 as an East Side Watch Commander and reported to Captain Larry Kretzer. **Exh. 75** (McCann Evaluation, MCC 020046-020059)

156.    McCann signed a Fair Labor Standards Act (FLSA) Employee Acknowledgement form. **Exh. 47** (McCann FLSA Employee Acknowledgement Form; MCC 019995). By signing the form McCann acknowledged that Maricopa County had classified him as exempt under the FLSA. **Exh. 47** (McCann FLSA Employee Acknowledgement Form). In signing the form, Mcann further acknowledged that he had received and read Maricopa County's policy titled Hours Worked for Exempt Employees. **Exh. 47** (McCann FLSA Employee Acknowledgement Form).

157.    In 2021, McCann transferred to District 1 and reported to Captain Cory Morrison. McCann retired from his position as a Lieutenant on September 30, 2021.

158.    McCann filed his opt-in notice in this case on December 27, 2023. (Doc. 56).

159.    McCann's potentially relevant time period is January 11, 2020 (three years preceding the filing of this lawsuit) through September 30, 2021 (the date he retired from his Lieutenant position) ("McCann Relevant Time Period").

160.    [Intentionally left blank].E

161.    [Intentionally left blank].

162.    ████████████████████████████████████ ███████

████████████████████████████████████████████████████████

████ ████████████████████████████).

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

25

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

**R.    James Kremer**

163.    For the entire 2020 performance year, Kremer was assigned to the Lake Patrol Division as a West Side Patrol Commander and reported to Captain Fred Aldorasi. **Exh. 71** (Kremer Evaluation, MCC 020053-020059).

164.    Upon Kremer's promotion to Lieutenant, he signed a Fair Labor Standards Act (FLSA) Employee Acknowledgement form. **Exh. 49** (Kremer FLSA Employee Acknowledgement Form; MCC 019996). By signing the form Kremer acknowledged that Maricopa County had classified him as exempt under the FLSA. **Exh. 49** (Kremer FLSA Employee Acknowledgement Form). In signing the form, Kremer further acknowledged that he had received and read Maricopa County's policy titled Hours Worked for Exempt Employees. **Exh. 49** (Kremer FLSA Employee Acknowledgement Form).

165.    Kremer remained in the Lake Patrol Division in 2021 until he resigned from his Lieutenant position effective April 30, 2021. He reported to Captain Dave Lee from February 2021 through his last day of employment. **Exh. 72** (Kremer Supervisor Notes, MCC 020201-020206).

166.    Kremer filed his opt-in notice in this case on December 27, 2023. (Doc. 57).

167.    Kremer's potentially relevant time period is January 11, 2020 (three years preceding the filing of this lawsuit) through April 30, 2021 (the date he retired from his Lieutenant position) ("Kremer Relevant Time Period").

168.    [Intentionally left blank].

169.    [Intentionally left blank].

170.    ████████████████████████████████████████  ████  ████
████████████████████████████████████████████████████  ████
████████████

**S.    Jennifer Cruz**

171.    Cruz was promoted to Lieutenant on July 26, 2021.

172.    Upon Cruz's promotion to Lieutenant, she signed a Fair Labor Standards Act

FP 57027351.1

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

(FLSA) Employee Acknowledgement form. **Exh. 51** (Cruz FLSA Employee Acknowledgement Form; MCC 024935). By signing the form Cruz acknowledged that Maricopa County had classified her as exempt under the FLSA. **Exh. 51** (Cruz FLSA Employee Acknowledgement Form). In signing the form, Cruz further acknowledged that she had received and read Maricopa County's policy titled Hours Worked for Exempt Employees. **Exh. 51** (Cruz FLSA Employee Acknowledgement Form).

173.    From July 26, 2021, through January 9, 2022, Cruz was assigned to District 7 and reported to Larry Kratzer.

174.    She transferred to the Training Division on January 10, 2022. The Training Division is not part of the Patrol Bureaus East or West divisions.

175.    Cruz filed her opt-in notice in this case on December 27, 2023. (Doc. 58).

176.    Cruz's potentially relevant time period is July 26, 2021 (the date of her promotion to Lieutenant through January 10, 2022 (the date she transferred out of Patrol Bureaus East or West) ("Cruz Relevant Time Period").

177.    [Intentionally left blank].

178.    [Intentionally left blank].

179.    ████████████████████████████ ██████ ████████
████████████████████████████████████ ████ ████
█████████████

**T.    Benjamin Freeman**

180.    Freeman was promoted to Lieutenant on November 28, 2022 **Exh. 53** (Freeman Depo., pp. 18:23-19:3). Since his promotion to Lieutenant, Freeman has "flexed" his hours, but does not know one way or the other how many times. **Exh. 53** (Freeman Depo., pp. 22:11-23:7).

181.    Upon Freeman's promotion to Lieutenant, he signed a Fair Labor Standards Act (FLSA) Employee Acknowledgement form. **Exh. 54** (Freeman FLSA Employee Acknowledgement Form; MCC 017500). By signing the form Freeman acknowledged that

Maricopa County had classified him as exempt under the FLSA. **Exh. 54** (Freeman FLSA Employee Acknowledgement Form). In signing the form, Freeman further acknowledged that he had received and read Maricopa County's policy titled Hours Worked for Exempt Employees. **Exh. 54** (Freeman FLSA Employee Acknowledgement Form).

182.    From November 28, 2022, through April 2023, Freeman was assigned to District 7. **Exh. 53** (Freeman Depo., pp. 18:23-21:5) Freeman worked day shift hours, which were from 6am to 4pm or 7am to 5pm. **Exh. 53** (Freeman Depo., p. 21:8-15). After approximately one month in District 7, Freeman transferred to the night shift and worked as a Watch Commander Sunday through Wednesday, from 5pm to 3am. **Exh. 53** (Freeman Depo., pp. 25:24-26:19). In this role, Freeman had discretion regarding his start and stop times. **Exh. 53** (Freeman Depo., pp. 21:13-22:3).

183.    Beginning April 2023 and through the present, Freeman has been assigned to District 3. **Exh. 53** (Freeman Depo., p. 19:7-12). Freeman works in District 3 as a night shift watch commander, Sunday through Wednesday from 6pm to 3am. **Exh. 53** (Freeman Depo., p. 38:2-12).

184.    Freeman filed his opt-in notice in this case on December 27, 2023. (Doc. 59).

185.    Freeman's potentially relevant time period is November 28, 2022 (the date of his promotion to Lieutenant) through the present ("Freeman Relevant Time Period").

186.    Freeman earned a salary basis of at least $684 per week during the Freeman Relevant Time Period. **Exh. 53** (Freeman Depo., p. 94:8-20).

187.    Freeman supervised at least two employees during the Freeman Relevant Time Period. **Exh. 53** (Freeman Depo., p. 95:6-9).

188.    ██████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████  ██████████  ████████████████████████████████████████████
████████████████████  ████████████████████████████

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

**U.    Dmitrius Whelan-Gonzales**

189.    Whelan-Gonzales signed a Fair Labor Standards Act (FLSA) Employee Acknowledgement form. **Exh. 56** (Whelan-Gonzales FLSA Employee Acknowledgement Form; MCC 019997). By signing the form Whelan-Gonzales acknowledged that Maricopa County had classified him as exempt under the FLSA. **Exh. 56** (Whelan-Gonzales FLSA Employee Acknowledgement Form). In signing the form, Whelan-Gonzales further acknowledged that he had received and read Maricopa County's policy titled Hours Worked for Exempt Employees. **Exh. 56** (Whelan-Gonzales FLSA Employee Acknowledgement Form).

190.    Whelan-Gonzales was a Lieutenant in the Major Crimes Division under Captain Frederick Aldorasi until his transfer to the Lake Patrol Division on September 25, 2023. **Exh. 63** (Whelan-Gonzales Blue Team Supervisor Notes Excerpt, MCC 020208)

191.    From September 25, 2024, through March 2025, Whelan-Gonzales was assigned to the Lake Patrol Division. **Exh.** 63 (Whelan-Gonzales Blue Team Supervisor Notes Excerpt, MCC 020208). In March of 2025, he transferred to the Enforcement Support Division. **Exh. 79** ((Whelan-Gonzales Blue Team Supervisor Notes, MCC 025083).

192.    Whelan-Gonzales filed his opt-in notice in this case on January 4, 2024. (Doc. 60).

193.    Whelan-Gonzales' potentially relevant period frame is September 25, 2023 (the date of his promotion to Lieutenant) through March 2025 (the date he transferred out of Patrol Bureaus East or West) ("Whelan-Gonzales Relevant Time Period").

194.    [Intentionally left blank].

195.    [Intentionally left blank].

196.    ████████████████████████████████████████

███████████████████████████████████████████████

███████████████████    ██████    ████████████████████

████████████████████████████    ████    ███████████████

███████████████████████████████████████████████

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

1 ████████████ ███████ ████████████████████████████████

2 ████████████████████████████████████ ████████ ████████████████████████

3 ███████

## VII.    MCSO Issued Vehicles

197.    Deputies and sergeants are issued patrol vehicles that are conspicuously marked with the MCSO logo and text. **Exh. 1** (Grennan Decl. ¶ 23). However, lieutenants are typically issued unmarked inconspicuous SUVs, trucks, or sedans (comparable to the type of vehicle issued to a detective). **Exh. 1** (Grennan Decl. ¶ 23). Each of the deposed lieutenants testified that MCSO has issued them unmarked vehicles that they are able to take home. **Exh. 41** (Acosta Depo. Vol. I, p. 66:22-25); **Exh. 22** (Brice Depo., p. 39:5-12); **Exh. 53** (Freeman Depo., 52:10-16); **Exh. 19** (Halverson Depo., p. 47:15-21); **Exh. 2** (Houck Depo., pp. 228:10-229:1); **Exh. 28** (Jackson Depo., p. 34:12-14); **Exh. 10** (Keller Depo., p. 42:19-25); **Exh. 25** (Neville Depo., p. 71:4-9); **Exh. 38** (Rankin Depo., p. 22:3-9); **Exh. 15** (Rosenberger Depo. Vol. I, p. 29:8-11); **Exh. 33** (Thomas Depo., p. 47:17-20); **Exh. 36** (Trowbridge Depo., pp. 70:25-71:5); **Exh. 30** (Vance Depo., pp. 59:24-60:2). MCSO has longstanding written policies and procedures regarding the "Use, Assignment, and Operation of Vehicles." **Exh. 60** (MCSO Use, Assignment, and Operation of Vehicles Policy (GE-4), MCC 000040-000053). These policies and procedures expressly state that "[u]nmarked vehicles shall not normally be used for traffic law enforcement functions." *Id.*, p. 8 (Office Vehicles and Equipment (C)). Instead, use of unmarked vehicles may only be used with permission of a division commander and, only then, under certain limited circumstances such as an extraordinary emergency. **Exh. 1** (Grennan Decl. ¶ 24) The policy considerations behind disallowing unmarked vehicles to perform routine traffic law enforcement functions are simple – traffic stops by law enforcement personnel in an unmarked patrol vehicle can potentially be hazardous both to the general public and the law enforcement officer involved. **Exh. 1** (Grennan Decl. ¶ 24)

## VIII.    MCSO'S Computer Aided Dispatch ("CAD") System.

198.    MCSO's CAD system is a software program that members of the MCSO have

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

on their laptops. **Exh. 2** (Houck Depo., p. 20:17-23). It is where dispatchers keep track of calls for service and dispatch deputies to take calls for service from that system. **Exh. 2** (Houck Depo., p. 20:17-23).

199.    Lieutenants in Patrol Bureaus East and West log in to the CAD system at the start of their shift in their driveway and log out at the end of their shift, also in their driveway. **Exh. 41** (Acosta Depo. Vol. I, p. 66:5-19); **Exh. 22** (Brice Depo., pp. 61:8-62:5); **Exh. 53** (Freeman Depo., pp. 52:6-53:12); **Exh. 19** (Halverson Depo., pp. 47:22-48:3); **Exh. 2** (Houck Depo., pp. 21:14-22:1); **Exh. 28** (Jackson Depo., p. 35:2-11); **Exh. 25** (Neville Depo., pp. 71:21-72:3); **Exh. 38** (Rankin Depo., pp. 90:22-91:3); **Exh. 15** (Rosenberger Depo. Vol. I, pp. 54:15-55:18); **Exh. 33** (Thomas Depo., p. 48:3-16); **Exh. 36** (Trowbridge Depo., p. 69:17-24); **Exh. 30** (Vance Depo., pp. 60:3-6; 72:8-11).

## IX.    Patrol Lieutenants' Time Spent Commuting, In Office, and In the Field

200.    While working in District 1, Houck testified it took him between 90 minutes and three hours each day, depending on traffic, to commute round trip from between his home and his office. **Exh. 2** (Houck Depo., p. 102:2-12). For the remaining seven to 8.5 hours of his shift, Houck testified he spent approximately four to five hours in his office at District 1. **Exh. 2** (Houck Depo., p. 198:9-20). Houck testified he spent approximately 20 to 25 percent of his time each week out in the field responding to calls for service. **Exh. 2** (Houck Depo., p. 19:13-21).

201.    While working in District 3, Acosta testified it took him approximately 75 to 80 minutes each day to commute round trip between his home and his office. **Exh. 41** (Acosta Depo. Vol. I, pp. 71:12-72:1). For the remainder of his 10-hour shift, Acosta estimates he spent 30% of his time in his office and 70% of his time in the field. **Exh. 41** (Acosta Depo. Vol. I, pp. 74:22-75:18). While working in District 1, Acosta testified it took him approximately one hour each day to commute round trip between his home and his office. **Exh. 41** (Acosta Depo. Vol. I, pp. 72:2-73:4). For the remainder of his 10-hour shift, Acosta estimates he spent 30% of his time in his office and 70% of his time in the field when he worked night shifts, and estimates he split his time 50/50 in his office and in the field when

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

31

1   he worked day shifts. **Exh. 41** (Acosta Depo. Vol. I, pp. 75:19-76:24). Acosta testified it

2   currently takes him approximately 30 minutes each day to commute roundtrip from his home

3   to the District 2 office. **Exh. 41** (Acosta Depo. Vol. I, pp. 73:5-74:4). Acosta testified he

4   spends approximately 90% of his time in his office versus out in the field. **Exh. 41** (Acosta

5   Depo. Vol. I, p. 74:9-21).

6       202.    While working in District 3, Brice testified it took him an hour to an hour and

7   a half to commute to work and about 50 minutes to an hour to commute back home. **Exh.**

8   **22** (Brice Depo., pp. 40:20-41:20). Brice testified it was "common" for him to head to his

9   office multiple times per week during his ten-hour shift, when he served as a watch

10  commander for the west side. **Exh. 22** (Brice Depo., p. 44:1-17). The amount of time Brice

11  spent in his office varied depending on administrative workload. He testified he could spend

12  five hours a night in his office if he had administrative tasks. **Exh. 22** (Brice Depo., pp. 53:17-

13  54:24). He also testified there were times he spent an entire day at his office. **Exh. 22** (Brice

14  Depo., p. 55:15-24). It would be rare for him to spend an entire shift in his office as a

15  nighttime watch commander. **Exh. 22** (Brice Depo., pp. 54:25-55:14). Spending half a shift

16  or more in the office was less likely than not, as the expectation was to be out in the field

17  unless administrative duties required otherwise. **Exh. 22** (Brice Depo., pp. 56:10-57:17).

18      203.    While working in District 7, Freeman testified it took one hour each way,

19  regardless of night or day shift to commute to work. **Exh. 53** (Freeman Depo., pp 47:19-

20  48:02). Freeman testified that while in District 7 – for the first 3-4 weeks - he spent 75% of

21  his time in the office and about 25% of his time in the field. **Exh. 53** (Freeman Depo., pp.

22  54:5-12). While as a watch commander in District 7, his time was closer to 50% in the office

23  and 50% in this field. Some weeks were more administrative, while other weeks allowed for

24  more time on the road. **Exh. 53** (Freeman Depo., p. 54:13-24). While working in District 3,

25  Freeman testified it took him between 30 to 45 minutes to commute to work for day shifts.

26  For the remaining 9 to 9.5 hours of his shift, Freeman spent about 75% of his time in the

27  office and 25% of his time in the field. **Exh. 53** (Freeman Depo., p. 58:3-10). After

28  transferring to night shifts in District 3, Feeman testified it takes about one hour to commute

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

1    to work. **Exh. 53** (Freeman Depo., p., 46:6-17). Freeman testified as a nighttime watch

2    commander in District 3, he spends 50% of time in the office and 50% of his time in the

3    field. **Exh. 53** (Freeman Depo., p. 57:7-24).

4    204.    While working in District 7, Halverson testified it took approximately 30

5    minutes to 45 minutes each way to commute to work. **Exh. 19** (Halverson Depo., p. 96:11-

6    14). Halverson testified that he spent two-thirds of his workday in the office. The rest of the

7    day was spent meeting with supervisors or going by a scene. **Exh. 19** (Halverson Depo., p.

8    96:15-22). Halverson testified being on scene in the field was about 10-20% of his time as a

9    lieutenant. **Exh. 19** (Halverson Depo., p. 95:12-17).

10    205.    While in District 2, Jackson testified his commute to work took approximately

11    15 minutes. **Exh. 28** (Jackson Depo., p. 34:19-25). Jackson was not able to quantify the

12    percentage of time while in District 2 that he spent in the office versus the field, but stated

13    he never spent an entire shift in the office. There were times where Jackson spent no time in

14    the office during a shift in District 2. **Exh. 28** (Jackson Depo., pp. 36:23-37:24). While in

15    Lake Patrol, Jackson testified his commute to work took approximately one hour. **Exh. 28**

16    (Jackson Depo., p. 39:21-23). Jackson spent about 50% of his time in office and 50% of time

17    in the field while in Lake Patrol. **Exh. 28** (Jackson Depo., p. 40:9-12).

18    206.    While in District 2, Keller testified it took him 35 minutes each way to

19    commute to and from work. **Exh. 10** (Keller Depo., pp. 74:2-7). For the remaining 9.5 hours

20    of his shift, Keller spent 50% of his time in the office and 50% of the time in the field. **Exh.**

21    **10** (Keller Depo., pp. 74:12-75:7). While in District 7, Keller testified it took him about 1.5

22    hours y to commute to work and two hours to commute back home. **Exh. 10** (Keller Depo.,

23    p. 71:14-25). Keller spent about 2 hours per day in the office and the remaining time (about

24    4.5 to 5 hours) were spent in the field. **Exh. 10** (Keller Depo., pp. 69:24-70:16). While in

25    District 3, Keller testified it takes about 15 minutes to commute each way to and from work.

26    **Exh. 10** (Keller Depo., p. 76:3-17). Keller testified he spends 50% of his workday in the office

27    and 50% in the field. **Exh. 10** (Keller Depo., pp.76:18-77:2). During a 10-hour shift, Keller

28    would be in the office 4.5 to 5 hours each day and in the field 4.5 to 5 hours each day. **Exh.**

**10** (Keller Depo., p. 78:2-06).

207.    While in District 2, Neville testified his commute took about 25 minutes to and from work. **Exh. 25** (Neville Depo., pp. 116:1-117:12). Neville testified he would try to spend the first "couple three hours in the office" to take care of administrative concerns. He estimated he needed about 2-3 hours per day in the office and the remainder of the day in the field. **Exh. 25** (Nevile Depo., pp. 123:15-124:3). Neville further testified that the amount of time spent in the office versus the field varied greatly depending on the needs of the district, the day of the week and whether there were major incidents. **Exh. 25** (Neville Depo., pp. 121:23-122:15).

208.    While in District 3, Rankin testified his commute to and from work took approximately 30 minutes. **Exh. 38** (Rankin Depo., p. 21:09-11). Rankin testified the majority of the remaining 9.5 hours of his shift was spent in the office. Half of the day he would be in his personal office and the other half he would be in the captain's or other sergeants' offices. **Exh. 38** (Rankin Depo., p. 24:2-9).

209.    While in District 1, Rosenberger testified it took about 30 minutes to commute each way to and from work. **Exh. 15** (Rosenberger Depo. Vol. I, pp. 43:3-9). For the remaining 9.5 hours of his 10-hour shift, Rosenberger spent one hour in the office and about 9 hours in the field. **Exh. 15** (Rosenberger Depo. Vol. I, pp. 43:23-44:1). While in District 6, Rosenberger's commute to work was about five minutes each way. **Exh. 15** (Rosenberger Depo. Vol. I, p. 39:8-11). Rosenberger spent about one hour in the office and the rest of the shift (9 hours) in the field. **Exh. 15** (Rosenberger Depo. Vol. I, p. 40:4-8). While in Lake Patrol, Rosenberger testified it takes about 25-30 minutes each way to commute to work. **Exh. 15** (Rosenberger Depo. Vol. I, p. 22:19-24). Rosenberger spends approximately one hour every workday in the office and the remaining 8.5 hours of his shift in the field. **Exh. 15** (Rosenberger Depo. Vol. I, p. 26:6-20).

210.    While in District 1, Thomas testified it takes about 20 minutes each way to commute to and from work. **Exh. 33** (Thomas Depo., p. 51:9-13). Thomas testified he spends about 3 out his 4 workweek days entirely in the office. **Exh. 33** (Thomas Depo., pp.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

34

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

1    51:24-52:9). On the remaining workday, Thomas spends his time out in the field, but the time

2    spent on the field varied by how long he is needed at the scene. **Exh. 33** (Thomas Depo., p.

3    52:10-17).

4    211.    Trowbridge testified that he spent 1.5 hours roundtrip commuting to and from

5    his office. **Exh. 36** (Trowbridge Depo., pp. 74:24-75:4). Trowbridge testified that after

6    subtracting commute time, he estimated about 60-70% of his remaining work hours were

7    spent in the field and the other 30-40% of the time were spent in the office performing

8    administrative tasks. **Exh. 36** (Trowbridge Depo., pp. 72:15-73:15).

9    212.    While in District 1 as a nighttime watch commander, Vance testified it took up

10   to 40 minutes to drive into work and approximately 20 minutes to drive home. **Exh. 30**

11   (Vance Depo., p. 61:5-23). While in District 1 in a dayshift position, Vance testified it took

12   the same amount of time to travel to and from work as working as the nighttime watch

13   commander. **Exh. 30** (Vance Depo., pp. 61:24-62:4). The majority of Vance's remaining 9

14   hours into his 10-hour shift was spent in the field, not in the office. **Exh. 30** (Vance Depo.,

15   p. 63:8-20). While in Lake Patrol as the West Side Lieutenant, Vance would drive about an

16   hour and 45 minutes each way to work. **Exh. 30** (Vance Depo., pp. 69:25-70:06). Vance spent

17   25% of his time as the Lake Patrol West Side Lieutenant in the field responding to calls. **Exh.**

18   **30** (Vance Depo., p. 69:14-24). The remaining 75% would be spent performing administrative

19   tasks. **Exh. 30** (Vance Depo., pp. 69:25-70:24). While in Lake Patrol in an administrative

20   capacity, Vance testified it took about 11 minutes to drive to work. **Exh. 30** (Vance Depo.,

21   p. 71:22-25). Vance spent about 90-95% of his day in the office. **Exh. 30** (Vance Depo., p.

22   72:12-19). While in District 7, Vance testified that there is an ability to spend significantly

23   more time in the office in District 7 compared to District 1, but not as much as in Lake Patrol.

24   District 1 was the district where he spent the least amount of time in the office. **Exh. 30**

25   (Vance Depo., pp. 105:9-106:8).

26   **X.    Primary Patrol Lieutenant Job Duties**

27   213.    The MCSO has numerous policies and procedures in place ranging from

28   "General Policies and Procedures" that govern day-to-day operations to more specific

35

"Enforcement Policies and Procedures" on discrete topics. MCSO sworn personnel are also subject to Maricopa County personnel policies and procedures. One such policy is MCSO's "Command Responsibility" policy.

214.    The MCSO Command Responsibility Policy was put into place to "ensure supervisors, at all levels, provide proper direction, coordination and control of subordinates." **Exh. 58** (MCSO Command Responsibility Policy GB-2, MCC 000015-000039). The policy defines a "Commander" as "[a]n employee with the rank of lieutenant or above" and defines a "First-Line Supervisor" as "[a]n employee with the rank of sergeant." **Exh. 58** (Policy GB-2) The policy specifically states that in order "to ensure accountability, a supervisor shall" perform tasks including, but not limited to, the following:

- Actively direct and supervise employees of a lower rank to ensure they perform assigned duties efficiently;

- Monitor situations in which subordinates are involved and ensure that proper actions are taken;

- Assume command of any situation coming to their attention that requires their involvement;

- Respond to emergencies as necessary and assume command until they are relieved by another supervisor assuming such command;

- Ensure that subordinates promptly and accurately complete all required reports on proper forms;

- Investigate reports of unlawful, improper, or immoral conduct of subordinates;

- Maintain a written record of the performance of each of their subordinate employees; and

- Document all tarries and early departures of employees. The Command Responsibility policy further states that First-line supervisors (sergeants) are required to, among other things, respond to the scene of certain arrests such as assault or injury to a member of the public by a MCSO employee, use of force, felony pursuits, and critical incidents (i.e. use of force, death, discharge

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

36

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

1    of a firearm by a MCSO employee). **Exh. 58** (Policy GB-2).

2    215.    As the above supervisory job duties demonstrate (as also corroborated by the

3    Lieutenant job description), lieutenants are not required or expected to engage in deputy level

4    tasks such as rescuing crime victims, detecting crimes, conducting criminal investigations,

5    apprehending suspects, or interviewing/interrogating individuals. Instead, lieutenants are

6    required to supervise their direct reports who carry out these law enforcement duties.

7    Accordingly, to the extent Plaintiff is alleging lieutenants use perform deputy level tasks

8    "alongside the officers" on their teams, such an argument focuses on the degree and extent

9    that individual lieutenants intentionally deviate from written job descriptions, policies and

10   procedures.

11   **XI.    Patrol Lieutenants Hold Significant Command Responsibility**

12   216.    When a patrol district's Captain/Commander is unavailable, a Patrol

13   Lieutenant will fill the role as the patrol district's "acting commander" or "acting captain, who

14   becomes the highest-ranking individual in the patrol district. **Exh. 2** (Houck Depo., p. 62:20-

15   22); **Exh. 38** (Rankin Depo., p. 33:21-25); **Exh. 41** (Acosta Depo. Vol. I, pp. 23:24-24:19).

16   The following Patrol Lieutenants have served as acting commander/captain within their

17   assigned patrol districts for periods ranging from an occasional weekend to several

18   consecutive months at a time. **Exh. 41** (Acosta Depo. Vol. I, pp. 23:6-23; 30:18-31:10); **Exh.**

19   **53** (Freeman Depo., p. 34:12-20); **Exh. 2** (Houck Depo., pp. 62:23-63:10); **Exh. 19**

20   (Halverson Depo., pp. 64:17-67:22); **Exh. 30** (Vance Depo., pp. 27-23-28:2); **Exh. 10** (Keller

21   Depo., pp. 38:20-41:20); **Exh. 38** (Rankin Depo., pp.: 33:21-34:9); **Exh. 33** (Thomas Depo.,

22   p. 18:17-25). Similarly, Patrol Lieutenants who work the night shift are referred to as the

23   "watch commander" and are the highest-ranking individual during that shift for Patrol Bureau

24   East or West, and at times for the entire County. **Exh. 2** (Houck Depo., pp. 63:11-16; 223:5-

25   224:8; 226:23-227:7); **Exh. 41** (Acosta Depo. Vol. I, p. 14:8-19).

26

27

28

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

## XII. Patrol Lieutenants' Primary Duty Involves Management and Managerial Tasks

### A. Make Recommendations as to Hiring and Promotions

217.    Many of the opt-ins testified that they were involved with and make recommendations as to hiring and promotion decisions. **Exh. 53** (Freeman Depo., pp. 97:9-99:18); **Exh. 15** (Rosenberger Depo. Vol. I, pp. 66:4-7; 86:11-91:2); **Exh. 30** (Vance Depo., pp. 87:15-89:5). For example, Patrol Lieutenants serve on hiring panels of deputy services aides, interview lateral transfer candidates and administrative assistants, and make recommendations regarding their hiring. **Exh. 42** (Acosta Depo. Vol II, pp. 119:15-123:19); **Exh. 25** (Neville Depo., pp. 98:10-99:10); **Exh. 38** (Rankin Depo., pp. 65:7-69:16). Patrol Lieutenants also serve on deputy-to-sergeant and sergeant-to-lieutenant promotion boards. **Exh. 22** (Brice Depo., pp. 111:12-112:23); **Exh. 28** (Jackson Depo., pp. 54:25-56:20).

### B. Participate in Discipline and Internal Affairs Investigations

218.    Patrol Lieutenants have the authority to report misconduct; file complaints; initiate, serve as the principal, and assume responsibility over internal affairs investigations, including making recommendations of sustained findings; issue action plans to subordinates; and issue verbal and formal coachings. **Exh. 42** (Acosta Depo. Vol. II, pp. 115:19-119:11); **Exh. 22** (Brice Depo., pp. 113:15-114:8); **Exh. 53** (Freeman Depo., pp. 101:14-102:10); **Exh. 25** (Neville Depo., pp. 93:14-97:21); **Exh. 38** (Rankin Depo., p. 60:1-15); **Exh. 33** (Thomas Depo., pp. 79:18-81:9; 87:14-21); **Exh. 2** (Houck Depo., pp. 212:16-15; 221:11-22); **Exh. 10** (Keller Depo., pp. 57:11-61:3); **Exh. 30** (Vance Depo., pp. 89:6-91:25).

### C. Supervise, Monitor, and Direct the Work of Subordinate Employees

219.    Houck and the deposed opt-ins all testified that they supervise two or more employees. **Exh. 2** (Houck Depo., p. 69:7-10); **Exh. 10** (Keller Depo., p. 37:4-19); **Exh. 15** (Rosenberger Depo. Vol. I, p. 64:16-18); **Exh. 53** (Freeman Depo., p. 95:6-09); **Exh. 19** (Halverson Depo., p. 68:9-11); **Exh. 22** (Brice Depo., pp. 105:25-106:3); **Exh. 25** (Neville Depo., p. 40:23-25); **Exh. 28** (Jackson Depo., p. 45:6-13); **Exh. 30** (Vance Depo., p. 75:22-

38

25); **Exh. 33** (Thomas Depo., p. 74:22-25); **Exh. 38** (Rankin Depo., p. 16:12-13); **Exh. 41** (Acosta Depo. Vol. I, p. 83:4-07). Patrol Lieutenants acknowledged the importance of their responsibility for supervising, monitoring, and directing the work of their subordinates. For example, Houck testified he "actively" supervises a couple hours each week and "passively" supervises "all day." **Exh. 2** (Houck Depo., pp. 189:9-190:16). As stated by Brice when asked what the primary duty of a law enforcement lieutenant is: "You are the – the supervisor, you are there to help the deputies and sergeants grow so they can one day also be supervisors, so a combination of management, leadership, policing, and unfortunately a lot of admin duties that have to be done." **Exh. 22** (Brice Depo., pp. 118:6-119:13). As stated by Vance, a Patrol Lieutenant's responsibility of managing deputies is similar across all districts. **Exh. 30** (Vance Depo., p. 25:1-15).

### D.    Assume Command and Direct Operations at Major Incidents

220.    Patrol Lieutenants are responsible for responding to significant incidents. Houck and the deposed opt-ins testified to their supervisory and managerial role when responding to significant incidents. This includes taking command of the incident until it is resolved, setting up a command post, calling in and coordinating resources, assigning duties to people on scene, ensuring notifications are given to the chain of command, and ensuring sergeants are properly doing their duties. **Exh. 53** (Freeman Depo., pp. 92:22-93:11); **Exh. 2** (Houck Depo., pp. 181:19-182:4); **Exh. 25** (Neville Depo., p. 18:8-20); **Exh. 38** (Rankin Depo., pp. 98:5-100:19); **Exh. 33** (Thomas Depo., pp. 53:9-54:6).

### E.    Evaluate Personnel Performance and Monitor and Enforce Legal Compliance Measures

221.    Patrol Lieutenants perform annual performance evaluations for each of their sergeants. **Exh. 2** (Houck Depo., pp. 218:4-219:6); **Exh. 10** (Keller Depo., pp. 61:18-62:10); **Exh. 15** (Rosenberger Depo. Vol. I, pp. 64:19-65:18); **Exh. 53** (Freeman Depo., p. 102:12-18); **Exh. 19** (Halverson Depo., p. 80:6-08); **Exh. 22** (Brice Depo., pp. 108:13-109:4); **Exh. 25** (Neville Depo., pp. 97:22-98:2); **Exh. 28** (Jackson Depo., p. 52:2-17); **Exh. 30**

**FISHER & PHILLIPS LLP**
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

(Vance Depo., p. 76:1-13); **Exh. 33** (Thomas Depo., p. 88:2-13); **Exh. 38** (Rankin Depo., p. 42:16-22); **Exh. 42** (Acosta Depo. Vol. II, p. 128:7-19). On a bi-weekly basis, Patrol Lieutenants also prepare performance notes for each of their sergeants to ensure legal compliance with policies, procedures, protocols, and court orders, which is based on a review of the sergeants' internal affairs investigations and reports, BlueTeam supervisor notes, productivity, patrol activity logs, traffic stops, arrests, accidents, and body camera video. **Exh. 22** (Brice Depo., pp. 37:15-39:4); **Exh. 53** (Freeman Depo., pp. 110:25-111:21); **Exh. 19** (Halverson Depo., pp. 22:20-24:4); **Exh. 2** (Houck Depo., pp. 174:6-179:22); **Exh. 10** (Keller Depo., pp. 41:22-42:18); **Exh. 38** (Rankin Depo., pp. 62:23-63:17); **Exh. 15** (Rosenberger Depo. Vol. I, pp. 26:21-27:23); **Exh. 36** (Trowbridge Depo., pp. 101:19-102:5); **Exh. 30** (Vance Depo., p. 77:18-25).

### F.    Participate in Training Programs, Budgeting, and Special Projects

222.    Patrol Lieutenants are responsible for several other key managerial and administrative tasks to maintain departmental functions and operational readiness. For example, Patrol Lieutenants are involved in budgeting. **Exh. 19** (Halverson Depo., p. 82:14-15); **Exh. 30** (Vance Depo., p. 84:1-19). Patrol Lieutenants conduct formal training to sergeants and deputies, serve as firearms instructors for the MCSO firearms training unit, teach substantive courses at the policy academy, and manage and oversee Field Training Officer programs. **Exh. 19** (Halverson Depo., p. 81:5-15); **Exh. 28** (Jackson Depo., pp. 50:5-51:18); **Exh. 25** (Neville Depo., pp. 105:23-111:20); **Exh. 42** (Acosta Depo. Vol. II, pp. 141:10-145:5); **Exh. 15** (Rosenberger Depo. Vol. I, pp. 66:11-67:2). Patrol Lieutenants are also tasked with special projects where they make important recommendations, including scheduling projects to address staffing issues, design and buildouts of facilities, procuring new equipment and devices like fingerprint scanners for office-wide implementation, and revising district operations manuals. **Exh. 19** (Halverson Depo., pp. 69:10--70:9); **Exh. 25** (Neville Depo., pp. 111:21-115:25); **Exh. 38** (Rankin Depo., pp. 48:17-49:13; 52:11-54:16); **Exh. 10** (Keller Depo., pp. 91:20-92:18); **Exh. 30** (Vance Depo., p. 76:19-23).

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

**XIII.  The Opt-Ins Do Not Have a Primary Duty to Serve as A First Responder.**

223.    29 C.F.R. § 541.3(b) sets forth the so-called "First Responder" rule and identifies the types of duties that would qualify as non-exempt first responder duties, if a lieutenant were to personally perform them as part of his/her primary duties. These duties include: preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims; preventing or detecting crimes; conducting investigations or inspections for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals, including those on probation or parole; interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; or other similar work. 29 C.F.R. § 541.3(b).

**A.    Preventing, Controlling or Extinguishing Fires Of Any Type**

224.    When asked at deposition regarding whether they have personally prevented, controlled or extinguished fires as a patrol lieutenant during the relevant time period, Keller, Freeman, Jackson, Thomas, and Rankin each testified they had done so "0" times. **Exh. 10** (Keller Depo., p. 83:13-20); **Exh. 53** (Freeman Depo., p. 102:23-25); **Exh. 28** (Jackson Depo., p. 70:8-13); **Exh. 33** (Thomas Depo., p. 114:2-05); **Exh. 38** (Rankin Depo., p. 75:12-15). Rosenberger, Brice, Neville, Vance, and Acosta testified they had each done so once or twice during their entire time as a patrol lieutenant. **Exh. 15** (Rosenberger Depo. Vol. I, p. 97:15-23); **Exh. 22** (Brice Depo., p. 120:4-24); **Exh. 25** (Neville Depo., pp. 134:14-135:1); **Exh. 30** (Vance Depo., p. 92:10-16); **Exh. 41** (Acosta Depo. Vol. I, p. 83:13-18).

**B.    Rescuing Fire, Crime or Accident Victims**

225.    When asked at deposition regarding whether they had personally rescued fire, crime or accident victims as a patrol lieutenant during the relevant time period, Keller, Halverson, Brice, Jackson each testified they had done so "0" times. **Exh. 10** (Keller Depo., pp. 83:21--84:8); **Exh. 19** (Halverson Depo., p. 83:2-5); **Exh. 22** (Brice Depo., p. 122:1-5); **Exh. 28** (Jackson Depo., p. 70:14-17). Rankin testified that he "once" provided a "bandage" to a person as a patrol lieutenant. **Exh. 38** (Rankin Depo., p. 75:16-25). Freeman testified he

had done so less than five times as a patrol lieutenant. **[Clip quotes from SOF] Exh. 53** (Freeman Depo., p. 103:5-11). **[Houck insert from MSJ]** Neville testified he had done so about "half a dozen" times as a patrol lieutenant. **Exh. 25** (Neville Depo., p. 135:2-19). Acosta testified he had done so "at least 10" times in nearly 5 years (since October 2020). **Exh. 41** (Acosta Depo. Vol. I, pp. 83:19--84:3). Rosenberger testified he had done so approximately "15-20" times since his transfer to Lake Patrol 3.5 years ago (since January 2022). **Exh. 15** (Rosenberger Depo. Vol. I, pp. 98:24-99:15). Vance testified he had done so approximately 20-30 times in approximately 2.5 years. **Exh. 30** (Vance Depo., pp. 92:17-94:3). Thomas testified he has responded to 10 vehicle accidents as a patrol lieutenant. **Exh. 33** (Thomas Depo., pp.114:6-115:6).

### C.    Preventing Or Detecting Crimes

226.    When asked at deposition regarding whether they had prevented or detected crimes as a patrol lieutenant during the relevant time period: Rankin testified that he cannot recall any time over the 2 years of being a patrol lieutenant where he prevented or detected crimes other than one instance where he apprehended a suspect. **Exh. 38** (Rankin Depo., pp. 76:4-77:1). Brice testified he prevented or detected crimes twice in his six months as a watch commander. **Exh. 22** (Brice Depo., pp. 122::6-21). Neville testified that he prevented or detected crimes "half a dozen times" in two years. **Exh. 25** (Neville Depo., pp. 135:20-136:24). Rosenberger testified he prevented or detected crimes "probably ten times" since his transfer to Lake Patrol 3.5 years ago (since January 2022). **Exh. 15** (Rosenberger Depo. Vol I., pp. 100:20-23). Houck testified he had "detected crimes, very infrequently," meaning "probably no more than 15" could not provide an estimate for how many times her personally prevented crimes, and instead contended that his mere presence at a location could prevent crime. **Exh. 2** (Houck Depo., pp. 244:2-22;). Thomas testified he had done so approximately 20 times since April 2022. **Exh. 33** (Thomas Depo., p. 115::7-19). Freeman testified he had done so "less than 50" times in since November 2022. **Exh. 53** (Freeman Depo., p. 103:15-23). Acosta testified he had done so 50-100 times in nearly 5 years (since

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

October 2020). **Exh. 41** (Acosta Depo. Vol. I, p 84:4-85:18). Keller testified he had done so approximately 100 times in nearly 5 years (since October 2020). **Exh. 10** (Keller Depo., p. 84:9-21). Jackson testified that he had done so but that "there is no way to approximate" the number of times. **Exh. 28** (Jackson Depo., pp. 70:18-71:2). Vance testified he had done so on a weekly basis as a patrol lieutenant. **Exh. 30** (Vance Depo., pp. 94:4-07).

### D.    Conducting Investigations Or Inspections For Violations Of Law

227.    When asked at deposition regarding whether they had conducted investigations or inspections for violations of law as a patrol lieutenant during the relevant time period, Halverson testified he could only "think of one incident" in the 4 years he was a Lieutenant. **Exh. 19** (Halverson Depo., pp. 83:13-84:4). Keller testified he had done so 6-12 times in nearly 5 years (since October 2020). **Exh. 10** (Keller Depo., p. 85:3-14). Thomas testified he had done so between ten to twelve times Since April 2022. **Exh. 33** (Thomas Depo., pp. 115:20--116:12). Houck testified he had done so "several times" but no more than 20 times since April 2022. **Exh. 2** (Houck Depo., pp. 245:19-247:6). Vance testified he had done so between 50-75 times in approximately 2.5 years. **Exh. 30** (Vance Depo., p. 84:9-15). Acosta testified he had done so at least 50 to 100 times since October 2020. **Exh. 41** (Acosta Depo. Vol. I, p. 85:19-24). Rosenberger testified he had done so "upwards of 75" times since his transfer to Lake Patrol 3.5 years ago (since January 2022). **Exh. 15** (Rosenberger Depo. Vol. I, p. 101:10-15). Freeman testified he had done so less than 100 times since November 2022. **Exh. 53** (Freeman Depo., pp. 103:24-104:2). Brice and Rankin testified that they assisted with the investigations. Specifically, Brice testified that he would assist his subordinates with the investigation but that he was not assigned as a case agent. **Exh. 22** (Brice Depo., pp. 122:22-123:21). Rankin testified that he was not the primary lieutenant but that he assisted with approximately 75 investigations over two years. **Exh. 38** (Rankin Depo., pp. 73:25-74:13). Neville and Jakson each testified that they would need to review their unit history reports to approximate a response. **Exh. 25** (Neville Depo., pp. 135:25-136:21); **Exh. 28** (Jackson Depo., p. 71:3-20).

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

E.    **Performing Surveillance**

228.    When asked at deposition regarding whether they had performed surveillance as a patrol lieutenant during the relevant time period: Halverson, Brice, and Jackson each testified that they did not perform any surveillance during their entire time as a patrol lieutenant. **Exh. 19** (Halverson Depo., p. 84:5-8); **Exh. 22** (Brice Depo., p. 114:9-17); **Exh. 28** (Jackson Depo., p. 71:21-23). Keller, Freeman, Neville, Thomas, Rankin and Acosta each testified they had done so up to ten times during their entire time as a patrol lieutenant. **Exh. 10** (Keller Depo., p. 85:17-22); **Exh. 53** (Freeman Depo., p. 104:3-6); **Exh. 25** (Neville Depo., pp. 130:23-131:10); **Exh. 33** (Thomas Depo., pp. 116:13-18); **Exh. 38** (Rankin Depo., p. 72:10-19); **Exh. 41** (Acosta Depo. Vol. I, pp. 85:25-86:5). Vance testified he performed surveillance between 10-20 times in approximately 2.5 years. **Exh. 30** (Vance Depo., p. 94:16-19). Houck testified he had done so "a few times [m]aybe 30 times or so" since April 2022. **Exh. 2** (Houck Depo., p. 247:11-15). Rosenberger testified he performed surveillance "upwards of at least 30 times" since his transfer to Lake Patrol in January 2022. **Exh. 15** (Rosenberger Depo. Vol. I, pp. 101:25-102:11).

F.    **Pursuing, Restraining and Apprehending Suspects**

229.    When asked at deposition regarding whether they had pursued, restrained or apprehended suspects as a patrol lieutenant during the relevant time period: Brice testified that he would pursue someone "maybe once a year" but does not remember apprehending anyone during the time he was a patrol lieutenant. **Exh. 22** (Brice Depo., pp. 114:18-115:21). Rosenberger and Halverson each testified they had done so once. **Exh. 15** (Rosenberger Depo. Vol I., p. 102:21-25); **Exh. 19** (Halverson Depo., pp. 84:9-12). Thomas testified he had done so 3 times since April 2022. **Exh. 33** (Thomas Depo., p. 116:19-25). Rankin testified he had done so approximately 5 times in 2 years. **Exh. 38** (Rankin Depo., pp. 72:20-73:7). Acosta testified he had done so "probably 10 to 15" times in nearly 5 years (since October 2020). **Exh. 41** (Acosta Depo. Vol. I, p. 86:6-9). Keller testified he had done so about 15 times in nearly 5 years (since October 2020). **Exh. 10** (Keller Depo., p. 86:17-

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

44

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

25). Houck testified he had done so "around 20 times" since April 2022. **Exh. 2** (Houck Depo., pp. 247:22-248:3). Vance testified he had done so between 20-30 times in 2.5 years. **Exh. 30** (Vance Depo., pp. 94:20-95:1). Freeman testified he had done so less than 50 times since November 2022. **Exh. 53** (Freeman Depo., p. 104:7-10). Neville testified he had done so less than ten times in approximately 2 years. **Exh. 25** (Neville Depo., p. 131:11-21). Jackson testified he did pursue, restrain and apprehend suspects but was unable to provide an estimate of the number of times. **Exh. 28** (Jackson Depo., pp. 71:24-72:14).

### G. Detaining Or Supervising Suspected And Convicted Criminals, Including Those On Probation Or Parole

230.     When asked at deposition regarding whether they had detained or supervised suspected and convicted criminals, including those on probation or parole, as a patrol lieutenant during the relevant time period: Keller testified he had not detained anyone on his own in approximately 4.5 years (Since October 2020). **Exh. 10** (Keller Depo., p. 88:3-15). Freeman testified he had done so less than 5 times since November 2022. **Exh. 53** (Freeman Depo., p. 104:11-24). Thomas testified he had done so 12 times since April 2022. **Exh. 33** (Thomas Depo., p. 117:1-21). Rosenberger testified he had done so "around 15" times since January 2022. **Exh. 15** (Rosenberger Depo. Vol. I, p. 103:18-21). Vance testified he had done so more than 25 times but less than 40 in approximately 2.5 years. **Exh. 30** (Vance Depo., p. 95:2-12). Rankin testified he had done so "maybe 30 times" in approximately 2 years. **Exh. 38** (Rankin Depo., p. 77:2-23). Houck testified he had done "probably about 50 times" in a supporting capacity and less than ten times in a primary capacity since April 2022. **Exh. 2** (Houck Depo., p. 248:4-14). Acosta testified he had done so "at least 15 to 20" times since October 2020. **Exh. 41** (Acosta Depo. Vol. I, p. 87:12-16).

### H. Interviewing Witnesses

231.     When asked at deposition regarding whether they had interviewed witnesses as a patrol lieutenant during the relevant time period: Rankin testified he does not remember interviewing any witnesses, but it is possible that he had done so during his two

years as a patrol lieutenant. **Exh. 38** (Rankin Depo., pp. 73:11-18). Brice testified he cannot recall but that it was not "super often". **Exh. 22** (Brice Depo., pp. 115:22-116:19). Keller, Halverson and Acosta each testified they had done so approximately 5 times. **Exh. 10** (Keller Depo., p. 88:16-20); **Exh. 19** (Halverson Depo., pp. 84:20-25); **Exh. 41** (Acosta Depo. Vol. I, p. 87:17-20). Rosenberger testified he had done so approximately 10 times since January 2022. **Exh. 15** (Rosenberger Depo. Vol. I, p. 104:7-10). Neville testified he had done so "anywhere from 10 to 50" times in approximately 2 years. **Exh. 25** (Neville Depo., p. 132:1-18). Freeman and Thomas each testified had done so approximately 20 times as a patrol lieutenant. **Exh. 53** (Freeman Depo., pp. 104:25-105:3); **Exh. 33** (Thomas Depo., pp. 117:22-118:2). Vance testified he had done so less than 50 times in approximately 2.5 years. **Exh. 30** (Vance Depo., p. 95:13-20). Houck testified he had done about 50 times in a supporting capacity and less than ten times in a primary capacity since April 2022. **Exh. 2** (Houck Depo., p. 248:4-14). Jackson testified he had done so but would provide an approximation of how many times. **Exh. 28** (Jackson Depo., p. 73:5-14).

## I.    Interrogating And Fingerprinting Suspects

232.    When asked at deposition regarding whether they had interrogated and fingerprinted suspects as a patrol lieutenant during the relevant time period: Keller, Rosenberger, Halverson, Jackson, Rankin and Acosta each testified that they had done so zero times. **Exh. 10** (Keller Depo., pp. 88:24-89:6); **Exh. 15** (Rosenberger Depo. Vol. I, p. 104:11-22); **Exh. 19** (Halverson Depo., p. 85:1-4); **Exh. 28** (Jackson Depo., p. 73:15-17); **Exh. 38** (Rankin Depo., p. 73:19-24); **Exh. 41** (Acosta Depo. Vol. I, pp. 87:21-24). Brice testified he interrogated a suspect at least once but cannot recall if it was during his time as a Watch Commander. Brice did not fingerprint any suspects. **Exh. 22** (Brice Depo., pp. 123:22-124:8). Thomas testified he interrogated approximately 4-5 times in approximately since April 2022 and does not fingerprint suspects. **Exh. 33** (Thomas Depo., p. 118:3-14). Vance testified he interrogated and fingerprinted suspects less than 20 times in approximately 2.5 years. **Exh. 30** (Vance Depo., p. 95:21-25). Neville testified he interrogated less than 30 times in

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

1  approximately 2 years and did not fingerprint any suspects. **Exh. 25** (Neville Depo., pp.

2  132:19-133:9). Freeman testified he interrogated suspects less than 50 times and fingerprinted

3  suspects zero times since November 2022. **Exh. 53** (Freeman Depo., 105:4-9).

4  **J.    Preparing Investigative Reports**

5  233.    When asked at deposition regarding whether they had prepared

6  investigative reports as a patrol lieutenant during the relevant time period: Rankin testified

7  that he does not recall "taking a primary on any investigative reports". **Exh. 38** (Rankin

8  Depo., pp. 77:24-78:3). Keller testified he prepared one in nearly 5 years (since October 2020).

9  **Exh. 10** (Keller Depo., p. 89:7-12). Acosta testified he prepared "maybe two" investigate

10  reports in nearly 5 years (since October 2020). **Exh. 41** (Acosta Depo. Vol. I, pp. 87:25-88:4).

11  Brice testified he wrote a supplement to an investigative report "maybe a handful, couple of

12  times" in the six months as a Watch Commander. **Exh. 22** (Brice Depo., p. 124:9-16).

13  Halverson testified he prepared investigative reports two or three times in approximately 4

14  years. **Exh. 19** (Halverson Depo., p. 85:5-8). Rosenberger testified he prepared investigative

15  reports 3 times since January 2022. **Exh. 15** (Rosenberger Depo. Vol. I, p. 105:8-11. Neville

16  and Vance each testified they prepared less than 10 investigative reports. **Exh. 25** (Neville

17  Depo., pp. 133:10-134:13); **Exh. 30** (Vance Depo., p. 96:1-4). Thomas testified he prepared

18  an investigative report approximately 10 times since April 2022. **Exh. 33** (Thomas Depo., p.

19  118:15-21). Freeman and Jackson each testified that they had prepared investigative reports

20  but are unable to provide an approximation. **Exh. 53** (Freeman Depo., p. 105:10-25); **Exh.**

21  **28** (Jackson Depo., p. 74:10-21).

22  **K.    Traffic Stops**

23  234.    When asked at deposition regarding whether they had performed any

24  traffic stops as a patrol lieutenant during the relevant time period: Houck testified that his

25  understanding is the MCSO does not want lieutenants performing routine traffic stops unless

26  it's a significant safety issue. Houck further testified that lieutenants have unmarked vehicles

27  because they do not want bystanders flagging down lieutenants to handle calls for service.

28

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

Houck testified that this was a verbal order to him by his Captain. **Exh. 2** (Houck Depo., pp. 229:2-230:10). Acosta testified that he agreed with his supervisor's statement in his traffic stop review which stated "I was unable to locate any traffic stops. This is not unusual for a lieutenant, as traffic stop activity is not his primary responsibility." **Exh. 41** (Acosta Depo. Vol. I, pp. 128:25-129:16). Rankin testified that he has not made a traffic stop since 2015-2016. Rankin stated that he operated under personal preference whether to make stops, unless there was an emergency where he needed to intervene. **Exh. 38** (Rankin Depo., pp. 63:18-64:22). Keller testified that it is "normal" for lieutenants to perform traffic stops but that he does not do as many as other lieutenants because he specifically chooses to only perform a traffic stop when its for reckless driving or a DUI. **Exh. 10** (Keller Depo., pp. 42:19-44:15). Freeman testified that he performed "maybe one" traffic stop per week as a Watch Commander. **Exh. 53** (Freeman Depo., pp. 114:6-116:12). Thomas has performed 1-2 traffic stops since April 2022. Thomas stated that his primary responsibility is not civil traffic violations. **Exh. 33** (Thomas Depo., pp. 52:24-53:8). Halverson testified he performed 2-3 traffic stops over a four year period. **Exh. 19** (Halverson Depo., pp. 85:14-85:21). Vance testified he performed approximately 13 traffic stops between 2021 and 2023. **Exh. 30** (Vance Depo., p. 103:8-24). Rosenberger testified he has completed approximately 40 traffic stops in about 6 months (from January 2025 to July 2025). **Exh. 15** (Rosenberger Depo. Vol. I, p. 34:3-20). Rosenberger further testified that he averaged 20-25 traffic stops per year for 2022 and 2023 during Lake Patrol. **Exh. 15** (Rosenberger Depo. Vol. I, p. 35:12-23). Jackson testified that he performed traffic stops as a lieutenant but did not provide a number. **Exh. 28** (Jackson Depo., pp. 97:24-98:5).

235.    [Intentionally left blank].

## XIV.  ADP And WorkDay

236.    During the relevant time period, Defendant has utilized two timekeeping and payroll providers ADP and Workday. While Defendant has no obligation under the FLSA to keep accurate records of hours worked for *exempt* employees, Defendant nevertheless requires all employees (exempt and non-exempt) to track their hours worked in its

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

1  timekeeping system. **Exh. 1** (Grennan Decl. ¶ 20). For exempt employees, work schedules

2  are preloaded into the timekeeping system. **Exh. 2** (Houck Depo., pp. 53:1-55:13); **Exh. 53**

3  (Freeman Depo., pp. 59:17-61:20). The hours appear as a total number of hours per day for

4  each scheduled day of the week. For example, Houck testified that in District 1 he worked

5  Wednesday, Thursday, Friday and Saturday. So Workday would automatically populate 10

6  hours on Wednesday, 10 hours on Thursday, 10 hours on Friday and 10 hours on Saturday.

7  **Exh. 2** (Houck Depo., pp. 52:25-53:12). At the end of each pay period, lieutenants are

8  instructed to make adjustments (up or down) to their pre-loaded hours to accurately reflect

9  the actual hours they have worked, and to certify the same. **Exh. 35** (Thomas Depo., pp.

10  29:8-30:6) Houck and the opt-ins concede that their adjustments to the ADP and/or

11  Workday systems were self-reported and done on the "honor code." **Exh. 25** (Neville Depo.,

12  pp. 63:6-64:7).

13      237.    Maricopa County is a public agency that maintains a public accountability

14  policy regarding payment of wages to exempt employees. **Exh. 59** (MCSO Hours Worked

15  for Exempt Employees Policy (HR2472), MCC000620-622). That policy provides, in

16  pertinent part: "Maricopa County is a public employer who provides paid leave and has a

17  compensation system based on principles of public accountability. Exempt employees and

18  those not covered by the FLSA who are eligible for paid leave will not be paid for hours they

19  do not work or use paid leave. All exempt and not covered employees must account for

20  timekeeping system at least the hours for which they are paid by either working or using

21  leave." **Exh. 59** (Policy HR2472)

22      238.    Maricopa County's payroll system requires all employees' pay to be entered as

23  an hourly rate, even for employees who are salaried. Thus, in order for payroll to be processed

24  correctly, exempt employees' pay must be manually converted to an hourly rate before it is

25  submitted for payroll. Therefore, lieutenants' pay stubs show an "hourly" rate but they are

26  actually salaried employees.

27  **XV.    Unlogged Hours**

28      239.    Some of the opt ins have alleged they worked hours outside of their regularly

scheduled work hours and failed to log those hours into Defendant's timekeeping system, Workday. However, none of the opt-ins have claimed they were ever told not to log hours. To the contrary, Acosta admitted he was never told not to log hours and was actually instructed and encouraged to log all hours. Exh. 41 (Acosta Depo. Vol I, p. 96:7-13).

## XVI.   [Additional Facts Relevant to Defendant's Motion to Decertify]

240.     Some Patrol Lieutenants have not served on promotion boards, some Patrol Lieutenants have not been involved with interviewing or hiring decisions, and some Patrol Lieutenants have not been involved with promotions or hiring whatsoever. **Exh. 42** (Acosta Depo. Vol. II, p. 119:12-14); **Exh. 38** (Rankin Depo., p. 42:23-24); **Exh. 25** (Neville Depo., p. 98:3-4); **Exh. 22** (Brice Depo., p. 107:9-16); **Exh. 28** (Jackson Depotr., p. 57:6-10); **Exh. 2** (Houck Depo., pp. 210:11-13; 211:6-11); **Exh. 10** (Keller Depo., pp. 53:24-54:5; 62:11-13).

241.     Jackson and Vance each testified they have never provided verbal and/or formal coaching. **Exh. 28** (Jackson Depo., pp. 57:11-59:15); **Exh. 30** (Vance Depo., p. 91:10-20).

242.     Houck, Jackson, and Keller testified they have never been involved in budgeting. **Exh. 2** (Houck Depo., p. 222:10-12); **Exh. 28** (Jackson Depo., p. 59: 22-25); **Exh. 10** (Keller Depo., p. 93:11-12).

243.     Houck and Rankin each testified they have not conducted any formal training as a Patrol Lieutenant. **Exh. 2** (Houck Depo., p. 220:10-13); **Exh. 38** (Rankin Depo., p. 59:9-16).

244.     Houck and Jackson each testified they have not been involved with any special projects relating to materials, supplies, machinery, equipment, and the like. **Exh. 2** (Houck Depo., p. 222:5-9); **Exh. 28** (Jackson Depo., p. 59:16-25).

245.     Patrol Lieutenants conceded that the regular duties and responsibilities vary significantly between day shifts and nights, as well from district to district. **Exh. 28** (Jackson Depo., pp. 67:15-68:9); **Exh. 42** (Acosta Depo. Vol. II, p.130:20-15; 131:16-132:20). Moreover, Patrol Lieutenants characterized their primary duties in significantly different

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

ways. **Exh. 2** (Houck Depo., pp. 19:18-11; 234:22-25); **Exh. 10** (Keller Depo., pp. 105:24-106:13); **Exh. 33** (Thomas Depo., p. 53:5-20); **Exh. 25** (Neville Depo., pp. 16:6-17:9; 142:17-144:22). Patrol Lieutenants further testified to significant differences in the amount of time they spend performing their job duties, with some conceding they cannot accurately quantify the time they spend on certain tasks because of the overlap of managerial, administrative, office, and field responsibilities. **Exh. 2** (Houck Depo., pp. 181:7-15; 186:19-22; 189:9-190:2; 191:3-15; 192:4-192:12; 193:13-21; 198:6-15; 198:17-199:17); **Exh. 41** (Acosta Depo. Vol. I, p. 42:5-14); **Exh. 19** (Halverson Depo., pp. 24:13-25:13); **Exh. 28** (Jackson Depo., pp. 36:23-38:6).

## XVII. Additional Employment Facts for Opt-In Plaintiffs Jeremy Goad and Richard Ranck

### A. Jeremy Goad

246.    Goad worked as a lieutenant in District 4. **Exh. 1** (Grennan Decl. ¶ 50).  His last day of employment with MCSO was March 2, 2021. **Exh**. **1** (Grennan Decl. 50); (MCC 020163).

247.    Upon Goad's promotion to Lieutenant, he signed a Fair Labor Standards Act (FLSA) Employee Acknowledgement form. **Exh. 69** (Goad FLSA Employee Acknowledgement Form; MCC 020237). By signing the form Goad acknowledged that Maricopa County had classified him as exempt under the FLSA. **Exh. 69** (Goad FLSA Employee Acknowledgement Form ). In signing the form, Goad further acknowledged that he had received and read Maricopa County's policy titled Hours Worked for Exempt Employees. **Exh. 69** (Goad FLSA Employee Acknowledgement Form).

248.    As of November 28, 2020, Goad was assigned to District 4.  **Exh. 78** (Goad Blue Team Supervisor Notes Excerpts, MCC020160.  In District 4 he served as the Division Commander for several weeks in his Captain's absence.  **Exh. 78** (Goad Blue Team Supervisor Notes Excerpts, MCC020160).  was assigned to District 1 as a Watch Commander.  **Exh. 78** (Goad Blue Team Supervisor Notes Excerpts, MCC 020163).

249. Goad filed his opt-in notice in this case on November 28, 2023. (Doc. 44).

250. Goad's potentially relevant time period is November 28, 2020 (three years prior to his opt in date) through his last day worked, January 5, 2021 ("Goad Relevant Time Period").

251. ███████████████████████████████████████████ ██████ ████████

██████████

**B. Richard Ranck**

252. Ranck was promoted to Lieutenant on November 28, 2022. **Exh. 64** (Ranck Blue Team Supervisor Notes Excerpt, MCC 020163)

253. Upon Ranck's promotion to Lieutenant, he signed a Fair Labor Standards Act (FLSA) Employee Acknowledgement form. **Exh. 61** (Ranck FLSA Employee Acknowledgement Form; MCC 019993). By signing the form Ranck acknowledged that Maricopa County had classified him as exempt under the FLSA. **Exh. 61** (Ranck FLSA Employee Acknowledgement Form). In signing the form, Ranck further acknowledged that he had received and read Maricopa County's policy titled Hours Worked for Exempt Employees. **Exh. 61** (Ranck FLSA Employee Acknowledgement Form

254. On November 28, 2022, Ranck was assigned to District 1 as a Watch Commander. **Exh. 64** (Ranck Blue Team Supervisor Notes Excerpt, MCC 020163).

255. Ranck filed his opt-in notice in this case on December 7, 2023. (Doc. 50).

256. Rank's potentially relevant time period is November 28, 2022 (the date of his promotion) to the present, unless he has transferred out of District 1 ("Ranck Relevant Time Period").

257. ██████████████████████████████████ █████ ████ ███████████████████████████████████████ █████ ███████████████████████████████████████████ ████ ████████████████████

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

# XVIII.    Additional Facts Regarding First Responder Duties

258.    Plaintiff Halverson testified he responded to calls for service as the primary unit 46 times in 2020, six times in 2021, ten times in 2022, and seven times through June 2023, yet he would typically expect a patrol deputy to respond to calls for service as the primary unit more than 100 times per year. **Exh. 19** (Halverson: 89:7–91:5). Plaintiff Jackson responded to calls for service as the primary unit ten times during a seven-month period in 2023, yet he would expect that number to be higher for a patrol deputy. **Exh. 28** (Jackson: 79:18–24).

259.    Plaintiff Keller testified to approximately 15 instances since October 2020, yet his patrol deputies pursue, restrain, or apprehend suspects an average of "three times a day." **Exh. 10** (Keller Depo., p.86:17–87:17). Plaintiff Rosenberger testified that his patrol deputies during that same time period, the "majority of them could get an arrest every day." **Exh. 15** (Rosenberger Depo. Vol. I, pp. 102:12-25; 110:2-20).

260.    Plaintiff Rosenberger testified to approximately 15 instances since January 2022, yet "a good amount" of his patrol deputies detain or supervise a suspected or convicted criminal at least once per shift, especially because "if they're making traffic stops, they're detaining somebody." **Exh. 15** (Rosenberger Depo., pp. 103:1-21; 110:21-111:4).

261.    Plaintiff Acosta conducted approximately 10 to 50 interviews in District 2 between July 2021 and April 2023 but testified that is "[c]ertainly not to the level that a deputy would be expected to do . . . ." **Exh. 42** (Acosta Depo. Vol. II:, p. 132:1–18). Similarly, Plaintiff Keller has conducted approximately five interviews since October 2020, while his patrol deputies interview witnesses "daily" and "365 at minimum a year." **Exh. 10** (Keller Depo., p.88:16–23).

262.    Keller, he was asked whether the number of primary investigative reports he has prepared is "lower than sheriff deputy officers that are doing patrol," and his response was, "Oh, significantly, yes." **Exh. 10** (Keller Depo., p.133:10–134:13).

263.    Plaintiff Freeman testified he conducted approximately one traffic stop per week when serving as Watch Commander of District 7 and expects a patrol deputy in District 7 "to make quite a few" on a weekly basis. **Exh. 53** (Freeman: 116:8–21).

**XIX.    Additional Facts Relating to Michael Trowbridge's Duty Assignment in SWAT**

264.    Trowbridge may offer the following four documents for the position that SWAT was in Patrol Bureau West: (1) a Maricopa County Sherriff's Office Patrol Resource Bureau SWAT Division Operations Manual ("SWAT Operations Manual") (**Exh. 80,** cover page produced at TROW000004), (2) a "Supervisor Note" that Trowbridge entered for a sergeant (**Exh. 81,** TROW000035-36); (3) a 11/29/21 Memorandum from Trowbridge in "SWAT Division" to Deputy Chief McWilliams in "Investigations Bureau" (**Exh. 82,** TROW000038-40; and (4) A 1/8/20 Memorandum from Trowbridge in "SWAT Division" to Deputy Chief Brandimarte in Patrol Bureau West (**Exh. 83,** TROW000001-2).

265.    As for the SWAT Operations Manual, Trowbridge testified that the manual was produced because it "was just showing that were in the patrol resource bureau" as of the date of the manual." **Exh. 36** (Trowbridge Depo., pp. 24:25-25:5). Trowbridge further testified that he did not have an understanding as to whether Patrol Resource Bureau was its own independent bureau apart from Patrol Bureaus East or West. **Exh. 36** (Trowbridge Depo., pp. 25:12-18).

266.    As for the Supervisor Note, Trowbridge testified he produced it because "TROW 36, the second page" "shows his title is sergeant enforcement command/patrol and enforcement support." **Exh. 36** (Trowbridge Depo., pp. 26:12-24). However, Trowbridge quickly conceded that he didn't have any understanding one wat or the other whether "command/patrol and enforcement" was "separate and apart from patrol bureau east or west. **Exh. 36** (Trowbridge Depo., p. 27:3-11).

267.    As for the11/29/21 Memorandum, Trowbridge testified he produced it because it "was showing that in November of '21 … we would have switched from patrol bureau west over to investigations bureau." **Exh. 36 (**Trowbridge Depo., p. 27:12-19).  But when asked if there was a reference to patrol bureau west on the Memorandum, Trowbridge

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

54

1  conceded "[t]here's not.  Investigations bureau is a separate – separata from patrol bureau

2  west." **Exh. 36** (Trowbridge Depo., p. 27:20-25).

3      268.    As for the 1/9/20 Memorandum, a memo from one individual to another is

4  not indicative of what department SWAT fell under.  Even putting that aside, it is dated

5  before the relevant time period in this case.  Trowbridge opted in on February 1, 2023.  Doc.

6  16.  Thus, even if a 3-year lookback period were to apply, his relevant period would be

7  February 1, 2020, through March 3, 2025.  [SOF, ¶¶ 123-24].  A memo dated January 9, 2020,

8  does not establish whether SWAT was part of patrol bureau west nearly two weeks later.  At

9  deposition, Trowbridge testified that he did not have any other facts or records (other than

10  the above referenced documents) to support his position that SWAT was in Patrol Bureaus

11  East or West. **Exh. 36** (Trowbridge Depo., p. 30:12-24).

12      269.    Houck testified that the SWAT division is not within the patrol bureaus east

13  or west. **Exh. 2 (**Houck Depo., pp. 66:08-20).

14      270.    When asked if SWAT was within patrol bureaus east or west, Halverson

15  testified "they are not assigned to those bureaus." **Exh. 19 (**Halverson Depo., pp. 13:12-16).

16      271.    When asked if SWAT was within patrol bureaus east or west, Neville testified

17  "neither". **Exh. 25 (**Neville Depo., pp. 24:02-03).

18  **XX.**    **Additional Facts Regarding Plaintiffs' Discretion to Set Their Own Start/Stop**

19          **Times, Days Worked, or Lunches**

20      272.    Freeman testified that he had discretion regarding his start and stop times for

21  his schedule. **Exh. 53** (Freeman Depo., pp. 21:16-24). Freeman further testified he had

22  reasonable discretion on setting his hours worked. **Exh. 53** (Freeman Depo., pp. 21:16-

23  24).  He would communicate with his counterpart his reason for starting later, earlier, or going

24  home early or staying late. **Exh. 53** (Freeman Depo., pp. 37:07-16).

25      273.    Rosenberger testified that he can start his schedule "pretty much whenever I

26  want." **Exh. 15** (Rosenberger Depo. 18:11-16).  Further, when asked whether he was aware

27  of any other lieutenants in Lake Patrol that similarly get to start and end their shift based on

28

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

1    their discretion, Rosenberger testified "all three lieutenants in Lake Patrol have that
2    discretion". **Exh. 15** (Rosenberger Depo., pp. 18:17-21).

3    274.    Rankin testified that there was flexibility to his work schedule.  He would try
4    to log on as early as possible.  **Exh.** (Rankin Depo., pp. 21:12 – 22:02). Further, Rankin
5    testified that every rank took a lunch break "when you have the time to take your lunch".
6    **Exh.** (Rankin Depo., pp. 102:10-21).

7    275.    Trowbridge testified that he had the discretion to take a lunch for as long as he
8    preferred. **Exh. 36** (Trowbridge Depo., pp. 99:18 – 100:03).  Further, Trowbridge testified
9    he had discretion to "a certain extent" on when he could start and stop his shift and that it
10   was based on what was occurring in the field. **Exh. 36** (Trowbridge Depo., pp. 71:16-23).

11   **XXI.    Additional Facts Regarding Plaintiffs' Use of Their County Vehicle as a**
12   **"Home Office" or Doing Administrative Work in Their County Vehicle**

13   276.    Freeman testified that he performed administrative work from his company-
14   issued vehicle "almost nightly". **Exh. 53** (Freeman Depo., pp. 55:15 – 56:04).

15   277.    Rosenberger testified that he used his county-issued vehicle to perform
16   administrative work while assigned to District 6, Lake Patrol and District 1, specifically stating
17   that he reviewed paperwork. **Exh. 15** (Rosenberger Depo., pp.41:01-20).

18   278.    Vance testified that he would perform administrative work from his vehicle's
19   laptop and would prefer to perform administrative work from his vehicle rath than going into
20   the office. **Exh. 30** (Vance Depo., pp. 63:08 – 64:08).

21   279.    Trowbridge testified that when he was busy, he would do his online training
22   and Blue Team Supervisor notes from his vehicle. **Exh. 36** (Trowbridge Depo., p.101:07-12).

23   **XXII.  Additional Facts Regarding Plaintiffs' Duty of Incident Management**

24   280.    When asked to describe the essential job task of "incident management" in his
25   own words, Houck testified that lieutenants "respond to major scenes and set up … a
26   command post. Where you basically set up a pop-up tent and you coordinate the resources
27   that coming out, like the --- the SWAT team, the hostage negotiation team, and you basically

28

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

FP 57027351.1

take charge or command of the incident until the incident is resolved." **Exh. 2** (Houck Depo., pp. 181:19-182:4).

281.    Houck testified that whenever "something of significance" occurred such as a barricade situation or murder, he was expected to take command of the scene, make judgment calls in real time and then provide a briefing up the chain of command "after [he] made the world safe." **Exh. 2** (Houck 224:9-225:14)..

282.    Defendant sent two letters to Plaintiff's counsel requesting the identities of any opt-ins that were anticipated to offer declarations in this case.  **Exh. 73** (March 13, 2024 Letter to Frankel Syverson); **Exh. 74** (July 15, 2024 Letter to Frankel Syverson).

## XXIII.    Additional Facts Regarding the Primary Duty Analysis

### A.    Relative Importance of Exempt Duties

283.    Acosta testified that when he worked in District 1, his primary duty was "basically giving guidance and – and ensuring that the deputies were safe and that they were following policies and procedures and – and that they were documenting whatever they needed to document to ensure it was done appropriately." **Exh. 42** (Acosta depo., 129:17-132:20). Plaintiff Acosta now works day shifts in District 2, where he serves more of an administrative lieutenant role and characterizes his primary responsibilities as overseeing "internal affairs investigations," working with the "field training program," and "building maintenance and anything that has to do with supplies for . . . the district itself." **Exh. 42** (Acosta Depo. Vol. II., 129:17-132:20).

284.    Houck testified his "primary duty as patrol lieutenant remains law enforcement, being *available* to respond to calls," yet he agreed that it is not the primary duty of a Patrol Lieutenant to *actually* "respond to calls for service." **Exh. 1** (Houck Depo., 19:18-11, 234:22-25).

285.    Keller testified his "primary duty is to uphold the laws, lead by example, while managing [his] sergeant and deputies," and testified that there are "some personnel . . . that

**FISHER & PHILLIPS LLP**
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

are in management positions, all ranks [including lieutenant], that their primary job is just to sit in their office." **Exh. 10** (Keller depo., 105:24-106:13).

286.    Thomas, his primary responsibility is "incident command" of "significant incidents," where he "set[s] up a command post," "request[s] additional resources," "assign[s] duties to people on scene," "ensure[s] notifications are given to the chain of command," and "[e]nsure[s] the sergeants are properly doing their duties." **Exh. 33** (Thomas Depo., 53:5-20).

287.    Neville testified that his responsibilities as watch commander are "primarily command and control trying to keep everything balanced and make sure that resources are gotten to the patrol deputies on the ground." **Exh. 25** (Neville depo., 16:6-17:9). Neville further testified about his responsibilities as follows: "So I'm being held to the standard of you are not an engaged leader, you're not out there with your troops, you're not responding to these emergency calls because you're spending your entire time in the office, that's a bad mark on my reputation. I would be held accountable for that, up to and including discipline. But then when I go out and do it, I'm also told you still have your administrative stuff you have to get taken care of . . . ." **Exh. 25** (Neville depo., 142:17-144:22).

**B.    Amount of Time Spent Performing Exempt Work**

288.    Houck estimates that he spends 25% percent of his time performing administrative duties; less than 5% of his time performing incident management; very little time each week actively supervising his sergeants; passively supervising his sergeants "all the time;" 5 to 10% of his time performing management duties; 75% of his time monitoring the radio, which he describes is a function of his primary duty of patrol; 20 to 25% percent of his time each week actually responding to calls for service; between 45 minutes to three hours of every 10-hour shift commuting to and from the District 1 facility depending on traffic; and between four and five hours of every 10-hour shift in his office performing administrative duties and conversing with sergeants. **Exh.2** (Houck depo., 181:7-15, 186:19-22, 189:9-190:2, 191:3-15, 192:4-192:12, 193:13-21, 198:6-199:17).

289.    Acosta estimates that he currently spends approximately 65% of his time performing administrative work, another 15% performing duties related to internal affairs, and five percent 5% for patrol functions. **Exh. 41** (Acosta depo., 42:5-14).

290.    Halverson was asked to estimate how much time he spent each day (over more than a two-year period in District 7) performing the administrative tasks set forth in the Patrol Lieutenant job description, and he testified he could not provide an accurate percentage because all the essential duties set forth in the job description "are intermixed" and "every task [he] did involve[d] administration, supervisory oversight, management, mentoring, professional development." **Exh. 19** (Halverson depo., 24:13-25:13).

291.    Jackson testified that when he worked in District 2 from November 2022 through January 2024, the tasks he performed while working in his office were "[j]ust regular administrative stuff like checking e-mails, supervisor notes, report reviews, just the standards," yet he could not quantify what percentage of time he actually spent in his office versus out in the field because "[i]t would be a guess." **Exh. 28** (Jackson depo., 36:23-38:6).

RESPECTFULLY SUBMITTED this 27th day of September 2025.

FISHER & PHILLIPS LLP

By  s/ Shayna Balch Santiago
　　　Shayna Balch Santiago
　　　Lori A. Guner
　　　David Myers
　　　3200 N. Central Avenue, Suite 1550
　　　Phoenix, Arizona 85012-2487
　　　Attorneys for Defendants

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on September 27, 2025, I electronically transmitted the attached

3  document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4  Notice of Electronic Filing to the following CM/ECF registrant(s):

5
6  Ty D. Frankel
   Yen Pilch Robaina & Kresin PLC
   6017 N. 15th Street
7  Phoenix, Arizona 85014
8  tdf@yprklaw.com
   Attorneys for Plaintiff

9
   Patricia N. Syverson
10 Yen Pilch Robaina & Kresin PLC
11 9655 Granite Ridge Drive, Suite 200
   San Diego, California 92123
12 pns@yprklaw.com
   Attorneys for Plaintiff

13
14  s/ Michelle C. Xochicale

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FP 57027351.1