# EXHIBIT 61



# FAIR LABOR STANDARDS ACT (FLSA)
## EMPLOYEE ACKNOWLEDGEMENT FORM

| Effective Date | Dept. No. | Department Name |
|---|---|---|
| 11/28/2022 | 500 | Maricopa County Sheriff Office |

## I. EMPLOYEE INFORMATION

| Employee ID: ████████ | Position #: 2938 | Name (Last, First): Ranck, Richard |
|---|---|---|
| Market Range Title: Law Enforcement Lieutenant | | Working Title: Law Enforcement Lieutenant |

**FLSA Status:**
- ☐ Non-Exempt (Hourly employee paid for all hours worked and overtime pay for hours worked over 40 in a work week.)
- ☒ Exempt (Not eligible for overtime pay.)

## II. NON-EXEMPT SUMMARY AND ACKNOWLEDGEMENT

The purpose of the Hours Worked and Overtime Policy is to outline the County's compliance with federal and state laws pertaining to hours worked and overtime. Non-exempt employees are required to read this policy, direct any questions they have to their department HR liaison, and to sign this acknowledgment form. Employees can obtain a copy of the Hours Worked and Overtime Policy from their department HR liaison or by going to:
http://az-maricopacountyintranet.maricopa.gov/190/Policy-Library.

I acknowledge that my FLSA status is non-exempt as stated above and that:
- I was provided access to, read, understand, and will comply with the Hours Worked and Overtime Policy.
- I sought clarification for any questions that I had regarding this policy from my department HR liaison and will seek further clarification if I have additional questions in the future.
- I understand that violation of this policy may result in disciplinary action up to and including termination.
- I understand that a copy of this signed acknowledgment form will be placed in my personnel file.

| Employee Signature | Date |
|---|---|

## III. EXEMPT SUMMARY AND ACKNOWLEDGEMENT

The purpose of the Hours Worked for Exempt Employees Policy is to outline the County's tracking of work hours for employees who are exempt from the overtime provisions of the FLSA in accordance with the principles of public accountability. Exempt employees are required to read this policy, to direct any questions they have to their department HR liaison, and to sign this acknowledgment form. Employees can obtain a copy of the Hours Worked for Exempt Employees Policy from their department HR liaison or by going to: http://az-maricopacountyintranet.maricopa.gov/190/Policy-Library.

I acknowledge that my FLSA status is exempt as stated above and that:
- I was provided access to, read, understand, and will comply with the Hours Worked for Exempt Employees Policy.
- I sought clarification for any questions that I had regarding this policy from my department HR liaison and will seek further clarification if I have additional questions in the future.
- I understand that violation of this policy may result in disciplinary action up to and including termination.
- I understand that a copy of this signed acknowledgment form will be placed in my personnel file.

| Employee Signature _(signature)_ | Date 11/17/22 |
|---|---|

## IV. SUPERVISOR ACKNOWLEDGEMENT

I certify that I received, read, and understand the Hours Worked and Overtime Policy or the Hours Worked for Exempt Employees Policy, whichever is applicable; will comply with the provisions of this policy as it relates to the employee mentioned above; will seek clarification from my department HR liaison if I have questions regarding this policy and the treatment of the employee mentioned above; and I understand that violation of this policy as a supervisor may result in disciplinary action up to and including termination.

| Supervisor Name (print) Gertrude T. Jackson | Supervisor Signature _(signature) for MCSO HR_ | Date 11/17/2022 |
|---|---|---|

**NOTE:** Signed acknowledgement forms are maintained by departments while a copy of the form must be sent to Employee Records.

CONFIDENTIAL
ATTORNEY EYES ONLY
Revised: 08/07/2017

MCC 019993

# EXHIBIT 62

# FILED

# UNDER

# SEAL

# EXHIBIT 63

# FILED UNDER SEAL

# EXHIBIT 64

# FILED

# UNDER

# SEAL

# EXHIBIT 65

# FILED

# UNDER

# SEAL

# EXHIBIT 66

# FILED

# UNDER

# SEAL

On 4/17/23 I completed a review of Lt. Sanchez' Blue Team Dashboard and an EI Pro review and observed no issues or concerns. I will continue to monitor for changes. I also conducted a review in TraCS for any traffic stops conducted during this rating period and no traffic stops were conducted. I completed a review of his HUB Training and observed that he was current with his training.


**Supervisor Notes:**

IA No: SN2023-00014057  Date received: 04/24/2023

    Allegations against the captioned employee:

      Notes - GC19-Facial Hair Review -
      Notes-No traffic stops conducted during review period -
      Notes-Reviewed employee's EIS information -


    Involved employee(s):

      Captain Philip Duane Hilliker [S1478] (Complainant)
      Work address:
      Work phone: (███████████

    Summary:

LT Sanchez was transferred to District 2 on 4/17/23.  His first week was last week.  I met with Lt Sanchez and told him what I was expecting of him.  He was assigned the auxiliary roles in District 2 which include IA's, support squad, advanced patrol investigations and FTO program.  LT Sanchez has a background from PSB which makes him a good fit for this position.  In addition to this I have worked with Lt Sanchez several times in the past and have known him to be a dedicated and reliable person with a great work ethic and moral character.  I was also excited to see LT Sanchez join the District 2 family.

Lt Sanchez hit the ground running this last week as he filled in for me on Friday 4/21/23 so I could pick my daughter up from camp out of town.  While I was out a business owner came to the district looking for me.  Lt Sanchez took the time to figure out what he was looking for and then started putting a plan together to address the issue.  As of today this plan is already moving forward with the support squad scoping out the area where the issue is so they can come up with an advanced plan to address the issue.  The issue identified was trespassers near an operational mine that are getting close to being very dangerous as they are going in and out of the property where heavy machines are operating.  In addition to this LT Sanchez also met with Sgt █████ and worked with him to help improve his IA investigation.  In addition to this LT Sanchez has volunteered to sit in and do interviews with Sgt █████ to show him how to improve his interviews.


Lt Sanchez did not conduct any traffic stops therefore there was no BWC to review.  I also checked EI Pro and found nothing new of concern.  LT Sanchez is abiding by MCSO facial hair policy.


**Supervisor Notes:**

IA No: SN2023-00015861  Date received: 04/27/2023

    Allegations against the captioned employee:

      Notes - GC19-Facial Hair Review -
      Notes-No traffic stops conducted during review period -
      Notes-Reviewed employee's EIS information -

CONFIDENTIAL
ATTORNEY EYES ONLY

# EXHIBIT 67

# FILED

# UNDER

# SEAL

# EXHIBIT 68



EXHIBIT    5
Witness:  K. Grennan
Date:  09/05/25
Stenographer:   AZ CR50223

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

**October 14, 2005**                                                                                                 **FLSA2005-40**

Dear **Name\*,**

This is in response to your request for an opinion on the application of 29 C.F.R. Part 541 (copy enclosed) to high ranking police officers and fire fighters. Specifically you asked whether a particular city's Police Lieutenants, Police Captains, and Fire Battalion Chiefs are exempt from the minimum wage and overtime provisions of the Fair Labor Standards Act (FLSA).

The job duties of the Police Lieutenant include the following: supervising a group of Police Officers and Sergeants assigned to patrol duties; deploying patrol units in accordance with needs of the workload; planning, directing, and coordinating activities of any of the special units; assisting and instructing Police Officers and Sergeants in handling difficult problems; conducting and participating in training courses; supervising and participating in the development and maintenance of a police records system; performing employee appraisals on subordinates; and disciplining subordinates when required. Additionally, Police Lieutenants are responsible for the following duties: supervising, commanding and reviewing work of station and field personnel; assisting in the direction of the training and development of personnel; assisting in budget preparation and management; and coordinating and directing expenditures, material acquisition, and maintenance.

The Police Captain position is the commanding officer for one to several divisions of the Police Department. The Police Captain plans, coordinates, and controls the activities of division personnel regarding allocation and deployment of personnel and equipment as well as evaluates performance, recommends strategies and develops policies and procedures regarding division activities. Your letter lists the following job functions of the Police Captain: conducting and participating in training courses; performing employee appraisals on subordinates; holding subordinates accountable for rules, regulations and written directives; disciplining subordinates; making decisions in accordance with laws, regulations and policies; and assisting in budget preparation and management.

The Fire Battalion Chief performs work under the direction of the Assistant Fire Chief but manages and provides leadership for a section of the Fire Department. The position involves managing the administrative and operational functions of the assigned section while integrating the Department's goals into day-to-day operation. The Fire Battalion Chief position is responsible for the following activities: enforcing and implementing rules, regulations, procedures and values of the Fire Department; directing activities of personnel; taking proper action in all emergency situations until relieved by higher ranking officer; coordinating pre-fire planning, company inspection activities, and conducting routine fire cause investigations; preparing, reviewing and processing reports and records; and assisting in necessary research and preparation of budget needs. The completed questionnaire attached to your letter states that all three positions spend 50% or more of their time in management, customarily and regularly direct the work of at least 2 full time employees, and make suggestions regarding the hiring, firing, advancement and promotion of other employees which are given particular weight.

You have stated that the employees in question are paid at least $455 a week on a salary basis as is defined in 29 C.F.R. § 541.602. Based on the information that you provided regarding the primary duties of each position, the three positions are exempt under the executive exemption, as explained below. We note that job titles alone are "insufficient to establish the exempt status of an employee," and the exempt status of any particular employee turns on "whether the employee's salary and duties meet the requirements of the regulations" 29 C.F.R. § 541.2.

As you know, Section 13(a)(1) of the FLSA provides an exemption from the minimum wage and overtime provisions for any employee employed in a bona fide executive, administrative, or professional capacity, as defined by the Department. The Department of Labor's updated Part 541 regulations that define certain executive, administrative and professional exempt employees were

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

published as a final rule in the Federal Register on April 23, 2004 (69 FR 22122). The revised Part 541 regulations went into effect on August 23, 2004.

Revised § 541.3(b) of the Regulations states that the §13(a)(1) exemptions do not apply to police officers, fire fighters or other first responder employees who perform work such as extinguishing fires, rescuing crime or accident victims, performing surveillance, pursuing or restraining suspects, interviewing witnesses, and other similar work identified in the regulations because their primary duty is not management or directly related to the management or general business operations of the employer. Thus, such employees do not qualify for an exemption as an executive or administrative employee under § 541.100 or § 541.200. These positions also do not meet the test for an employee in a professional capacity because there is no requirement of knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction. 29 C.F.R. §§ 541.3(b)(1)-(4).

However, the § 13(a)(1) exemptions may apply to police lieutenants, police captains, and fire battalion chiefs positions so long as the employees in these positions meet all of the requirements set out in the Regulations. See 69 Fed. Reg. 22122, 22130 (April 23, 2004) (citing e.g. West v. Anne Arundel County, Maryland, 137 F.3d 752 (4th Cir.), cert. denied, 525 U.S. 1048 (1998)). Specifically, they may fit within the regulatory exemption for Executive Employees in § 541.100. Section 541.100 states that an employee is employed in a "bona fide executive capacity" for purposes of the exemption if the employee is:

(1)  Compensated on a salary basis at a rate of not less than $455 per week…, exclusive of board, lodging or other facilities;
(2)  Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
(3)  Who customarily and regularly directs the work of two or more other employees; and
(4)  Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

Because the salary requirements of the regulation are met, application of the exemption to the three positions you described turns on whether the positions meet the primary duty requirement of § 541.100(a)(2)-(4).

Meeting the requirements of § 541.100(a)(2) depends on the employees' "primary duty" in their management position. Primary duty is defined in § 541.700(a) as "principal, main, major, or most important duty that the employee performs." Factors to consider in determining an employee's primary duty include "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. §541.700(a). It is important to remember that the primary duty determination is based on all of the facts and circumstances in each individual case with major emphasis on the character of the employee's job as a whole. Further, although the amount of time spent on exempt work can act as a guide, time is not conclusive. However, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. 29 CFR § 541.700(b).

Section 541.102 is a non-exhaustive list that illustrates what type of activities constitutes "management." Your letter included job descriptions which stated that each position involved the primary duty of management of a recognized department or subdivision for more than 50% of the time in each case. The management duties included, but were not limited to, selecting and training other employees; setting work schedules; directing the work of others; evaluating worker productivity; handling complaints and grievances; disciplining employees; determining techniques, materials, and equipment to be used; and determining supplies, equipment and tools to be purchased. Each of the

MCC 000624

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

duties that you described is mentioned in the § 541.102 list. Therefore, so long as the employee's actual activities correspond with his or her job description, each position meets the primary duty requirement of management laid out in § 541.100(a)(2).

Next, § 541.100(a)(3) states that the employee must customarily and regularly direct the work of two or more employees. Again, you stated in your job description that the employees in the position of police lieutenant, police captain, and fire battalion chief regularly direct the work of at least two employees. Therefore, those positions meet the second part of the "executive" employee duties test.

The third duties requirement under the executive exemption is that the employee must have the authority to hire or fire other employees or have their suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees be given particular weight. 29 C.F.R. § 541.100(a)(4). In determining whether an employee's suggestions and recommendations are given "particular weight," factors such as whether it is part of the employee's job to make such recommendations, the frequency with which such recommendations are made or requested, the frequency with which the recommendations are relied upon, among others, are relevant. However, the regulations do not require the employee to have authority to make the ultimate decision and a higher level manager's recommendation may be given more importance. 29 C.F.R. §541.105. The questionnaires you provided stated that each employee's recommendation is given particular weight while others make the final decision regarding hiring, firing, advancement, or promotion of other employees (due to the civil service system). Thus, this requirement appears to be satisfied.

Accordingly, the duties described in your letter are sufficient to qualify the City's Police Lieutenants, Police Captains, and Fire Battalion Chiefs as exempt from the minimum wage and overtime provisions of the FLSA. Therefore, so long as the actual duties performed by these employees are consistent with those described, the referenced employees are exempt from these provisions of the FLSA.

This opinion is based exclusively on the facts and circumstances described in your request and is given on the basis of your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the questions presented. Existence of any other factual or historical background not contained in your request might require a different conclusion than the one expressed herein. You have represented that this opinion is not sought by a party to a pending private litigation concerning the issue addressed herein. You have also represented that this opinion is not sought in connection with an investigation or litigation between a client or firm and the Wage and Hour Division or the Department of Labor. This opinion letter is issued as an official ruling of the Wage and Hour Division for purposes of the Portal-to-Portal Act, 29 U.S.C. 259. See 29 C.F.R. 790.17(d), 790.19; Hultgren v. County of Lancaster, Nebraska, 913 F.2d 498, 507 (8th Cir. 1990).

We trust that the above discussion is responsive to your inquiry.

Sincerely,


Alfred B. Robinson, Jr.
Deputy Administrator

Enclosures: 29 C.F.R. Part 541


*\* Note: The actual name(s) was removed to preserve privacy in accordance with 5 U.S.C. 552 (b)(7).*

MCC 000625

# EXHIBIT 69



# FAIR LABOR STANDARDS ACT (FLSA) EMPLOYEE ACKNOWLEDGEMENT FORM

| Effective Date | Dept. No. | Department Name |
|---|---|---|
| September 14, 2011 | 500 | Maricopa County Sheriff's Office |

## I. EMPLOYEE INFORMATION

| | | |
|---|---|---|
| **Employee ID:** ▮▮▮▮▮ | **Position #:** 00014969 | **Name** (Last, First): Goad,Jeremy T |
| **Market Range Title:** Law Enforcement Officer | | **Working Title:** Deputy Sheriff |

| | |
|---|---|
| **FLSA Status:** Non-Exempt | Non-Exempt = Hourly employee paid for all hours worked and overtime pay for hours worked over 40 in a work week. |
| | Exempt = Not eligible for overtime pay. |

## II. NON-EXEMPT SUMMARY AND ACKNOWLEDGEMENT

The purpose of the Hours Worked and Overtime Policy (B7006) is to outline the County's compliance with federal and state laws pertaining to hours worked and overtime. Non-exempt employees are required to read this policy, to direct any questions they have to their department HR liaison, and to sign this acknowledgement form. Employees can obtain a copy of the Hours Worked and Overtime Policy (B7006) from their department HR liaison or by going to Employee Compensation's website: http://ebc.maricopa.gov/pp/budget/pdf/B7006.pdf

I acknowledge that my FLSA status is non-exempt as stated above and that:
- I was provided access to, read, understand, and will comply with the Hours Worked and Overtime Policy (B7006).
- I sought clarification for any questions that I had regarding this policy from my department HR liaison and will seek further clarification if I have additional questions in the future.
- I understand that violation of this policy may result in disciplinary action up to and including termination.
- I understand that a copy of this signed acknowledgment form will be placed in my personnel file.

_____    10-27-2011
Employee Signature                                                   Date

## III. EXEMPT SUMMARY AND ACKNOWLEDGEMENT

The purpose of the Hours Worked for Exempt Employees Policy (B7011) is to outline the County's tracking of work hours for employees who are exempt from the overtime provisions of the FLSA in accordance with the principles of public accountability. Exempt employees are required to read this policy, to direct any questions they have to their department HR liaison, and to sign this acknowledgement form. Employees can obtain a copy of the Hours Worked for Exempt Employees Policy (B7011) from their department HR liaison or by going to Employee Compensation's website: http://ebc.maricopa.gov/pp/budget/pdf/B7011.pdf

I acknowledge that my FLSA status is exempt as stated above and that:
- I was provided access to, read, understand, and will comply with the Hours Worked for Exempt Employees Policy (B7011).
- I sought clarification for any questions that I had regarding this policy from my department HR liaison and will seek further clarification if I have additional questions in the future.
- I understand that violation of this policy may result in disciplinary action up to and including termination.
- I understand that a copy of this signed acknowledgment form will be placed in my personnel file.

_____    10-27-2011
Employee Signature                                                   Date

## IV. SUPERVISOR ACKNOWLEDGEMENT

I certify that I received, read, and understand the Hours Worked and Overtime Policy (B7006) or the Hours Worked for Exempt Employees Policy (B7011) , whichever is applicable; will comply with the provisions of this policy as it relates to the employee mentioned above; will seek clarification from my department HR liaison if I have questions regarding this policy and the treatment of the employee mentioned above; and I understand that violation of this policy as a supervisor may result in disciplinary action up to and including termination.

PHILLIP FERTNER                    _____    10-27-11
Supervisor Name (print)            Supervisor Signature                Date

**NOTE:** The original signed acknowledgement form is maintained by the department while a copy of the form must be sent to Employee Records.

Revised: 8/4/11

CONFIDENTIAL ATTORNEY EYES ONLY

MCC 020237

# EXHIBIT 70

# FILED

# UNDER

# SEAL

# EXHIBIT 71

# FILED

# UNDER

# SEAL



# Maricopa County Sheriff's Office
## Employee Performance Appraisal

RECEIVED DEC 1 8 2020

| Employee ID | Serial # | Name (Last, First) | Class | Appraisal Type |
|---|---|---|---|---|
| | S0881 | KREMER, JAMES | 050848 | Annual |

| Appointment Date | Low Org | Extension of Probation | Disciplinary Action this Period | Eligible For Increase | Meets Min Performance Standards |
|---|---|---|---|---|---|
| 9/26/2016 | 5046 | No | No | True | Yes |

### Job Description

LIEUTENANT:  Under direction of a division commander, is responsible for supervising a unit or section of the Office in the performance of law enforcement duties. Duties include, but are not limited to: overseeing district operations and supervising patrol sergeants; responding to major events within a patrol jurisdiction; liaising with posse personnel for assistance; inspecting personnel and equipment; issuing orders and distribution information as needed; patrolling assigned area of operation and supporting the personnel; directing crime scene activity when appropriate; administrating routine inquires by the news media; receiving and investigating complaints on subordinate personnel; instructing in policies, procedures and techniques; making recommendations of disciplinary action for substandard performance; and assuming duties of the division commander in his absence, as appropriate.

| RATING DIMENSION | RATING |
|---|---|
| Adherence to Policy and Procedures | Meets Standards. |

Lieutenant Kremer is well versed in MCSO policy and conducts himself as a true professional at all times. Lt. Kremer has also demonstrated his understanding of the federal orders/guidelines, state statutes, and office policy as they apply to his duties as a commander.

Supervisor Notes - SN2019-00057166  Date:01/14/2020
Lt Kremer continues to stay on top of his administrative job requirements. Completes his BT supervisor notes and all other applicable documentation on time and without boilerplate or conclusory type language. (Knowledge of MCSO Policy) Recently, Lt. Kremer reviewed and forwarded a use of force entry by one of his supervisors. Both Lt. Kremer and I reviewed the BWC footage and believed that the demeanor exhibited by the deputy, although within policy, could have been much more professional and might have prevented the actual need to resort to the use of force during a DUI arrest. Jim intentionally waited several days from the actual incident and met with the deputy. Showed him the video and then discussed his performance. After the review, the deputy acknowledged that he should have been more patient and provided a more in-depth explanation of the process to the suspect in-custody. In doing so, it could have eliminated the need for an elevated use of force. This is the kind of supervisory review and observations that keep us in compliance and help to train our employee's, no matter how experienced they may be.

Supervisor Notes - SN2020-00003133  Date:01/23/2020
(Adherence to policy/Understand the Court Order) Lt. Kremer continues to demonstrate that he pays close attention to the processes that are in place to ensure compliance measures are being met. Recently, Jim was spot checking the Patrol Activity Logs and noticed that several were missed by his supervisor. After contacting him he was reminded that due to a vacation, this sergeant had a fellow supervisor covering. Lt. Kremer had a conversation with the responsible supervisor to ensure that this does not re-occur. And reminded them both to go back several days from their previous review to make sure these do not get missed in the future. Reviewed with them requirements under GB-2 Command Responsibility and the consequences of failing to meet those requirements.

Supervisor Notes - SN2019-00045299 Date:10/15/2019
(Adherence to policy) Lt Kremer has been very timely in his response to all matters concerning his people or the organizational needs. An example of this is recently Jim was assigned a Service Complaint that was made anonymously but provided the Deputies name and a one-month time period which the boating stop was initiated. The complaint involved a jet-ski that was stopped and issued a citation for speed. Complainant left, no name of contact information. Lt. Kremer went into immediate action and reviewed countless BWC footage to locate a few that might have fallen into the parameters of the complaint. As always, Jim was through and precise in his review of all the footage and was quick to complete this complaint and investigation (free of boilerplate language) to ensure that our deputy did not act outside of policy.

Supervisor Notes - SN2020-00005258  Date:02/06/2020
(Adherence to policy) During a recent discovery of an alleged incident of misconduct, Lt. Kremer handled the situation appropriately and in accordance with MCSO policy. This is an example of Jim's knowledge of policy and professionalism.

CONFIDENTIAL
ATTORNEY EYES ONLY

MCC 020053



# Maricopa County Sheriff's Office
## Employee Performance Appraisal

| Employee ID | Serial # | Name (Last, First) | Class | Appraisal Type |
|---|---|---|---|---|
| | S0881 | KREMER, JAMES | 050848 | Annual |

| Workplace Professionalism | Meets Standards. |
|---|---|

Lieutenant Kremer consistently adheres to to Policy CP-3. Work Place Professionalism. Jim is well versed in office policies and procedures, supports others and gives guidance when questions arise about policies and procedures.

Lieutenant Kremer is always dressed appropriately for the workplace and is properly groomed according to Policy GC-19. Jim is the West Side Patrol commander and is always sharp, clean and very professional looking in his uniform.

Jim is organized in his professional duties His assigned work truck and issued gear are kept both clean and mission ready at all times, in accordance with GC-20.

Supervisor Notes - SN2020-00029466  Date:07/08/2020
(Work Place professionalism) During this evaluation period, Lt. Kremer adjusted his work hours and worked the 4th of July weekend to assist the needs of the division. Jim arrived to work on time and in a clean and pressed uniform. His assigned vehicle was clean and looked professional.

Supervisor Notes - SN2020-00014841 Date:04/13/2020
(Work place professionalism) I had the opportunity to visit with Jim on Easter Sunday 4/12 at the Lake Pleasant Operations Center. I found that the duty station was clean and organized as was Lt. Kremer's patrol vehicle. Jim also presented himself in a clean and professional looking uniform representing the organization very strongly. Jim has been keeping me up to date on his staffing issues and manpower shortages. Most recently, informing me that he expects to have a deputy's resignation letter next week due to her relocating out of state.

| Performance of Essential Job Duties | Exceeds Standards. EIS Examples Required. |
|---|---|

Lieutenant Kremer has not only met all requirements of the job description listed on the first page of the EPA, but he has consistently exceeded them. Jim is always on time for his assigned shift and is mindful of his scheduled work hours.  Lieutenant Kremer is precise and organized in his work. These personal and professional attributes allow Jim to plan his time in an efficient and effective manner and when appropriate, establish a schedule and adhere to it.

Supervisor Notes - SN2019-00048957  Date:11/13/2019
(Performance of essential job functions), In an attempt to establish and disseminate to all division commanders, I had requested that Jim update and revise the "Supervisor Guide to S&R Operations". The revision was several years overdue and left the Patrol Commanders with inaccurate expectations of the Search and rescue personnel, which also had a negative effect on the investigation that was inherently necessary with any missing individual. Jim, completed a clean and comprehensive work product in the required time period.

Supervisor Notes - SN2019-00056854  Date:12/29/2019
On 12/08/19 (Performance of essential job duties/Supervisory Responsibilities) Lt. Kremer received a Command Review notification through Blue Team for an IR. This was a criminal speeding incident which was initiated by one of his deputies at lake Pleasant, but also involved two additional LP deputies. After reading the report he identified several issues that required attention. In addition to the report review he also watched the BWC footage for the incident where he noted separate concerns to include BWC Issue, Prisoner control and Officer safety in addition to the report issues. Jim wrote a detailed list of what each of the deficiencies were and what actions he took to address each of them for each of the involved. This is the level of attention that all supervisors need to employ to ensure that our personnel are working at their very best.

Supervisor Notes - SN2020-00003133  Date:01/23/2020
(Performance of Essential Job Duties) Lt. Kremer continues to show that he is very supportive in the development and growth of his personnel. Jim consistently encourages training to provide knowledge and career development. Currently Jim has several of his team in EMT training, Dive Training and routing Search and Rescue Training to ensure the necessary skills are maintained. I conducted a review of TraCS to determine if any traffic stop history existed, I was unaware of.

Supervisor Notes - SN2020-00005258  Date:02/06/2020
(Performance of essential job duties) Mett with Lt. Kremer to discuss the need for further oversight on his peoples OT and need to employ additional parameters for his supervisors and deputies. During our discussion it was obvious that Jim could see where

CONFIDENTIAL
ATTORNEY EYES ONLY

MCC 020054



**Maricopa County Sheriff's Office**
Employee Performance Appraisal

| Employee ID | Serial # | Name (Last, First) | Class | Appraisal Type |
|---|---|---|---|---|
| | S0881 | KREMER, JAMES | 050848 | Annual |

some of the issues existed and offered a few solutions that he would employ to the next pay period to alleviate unnecessary OT and to reduce even what is justifiable. I appreciate Jim's initiative and problem-solving process.

| Quality of Work | Exceeds Standards. EIS Examples Required. |
|---|---|

Lieutenant Kremer produces a very good work product, which is routinely turned in within the required timeframe and without boilerplate or conclusory language. During this evaluation period, I have reviewed several Internal Investigations that Jim has reviewed and submitted to me for command review. To date, there have been no noted deficiencies in the product he has summitted to me causing the need for a return or further conversation.

Supervisor Notes - SN2019-00048299  Date:10/15/2019
(Quality of work) (Adherence to policy) Lt Kremer has been very timely in his response to all matters concerning his people or the organizational needs. An example of this is recently Jim was assigned a Service Complaint that was made anonymously but provided the Deputies name and a one-month time period which the boating stop was initiated. The complaint involved a jet-ski that was stopped and issued a citation for speed. Complainant left, no name of contact information. Lt. Kremer went into immediate action and reviewed countless BWC footage to locate a few that might have fallen into the parameters of the complaint. As always, Jim was through and precise in his review of all the footage and was quick to complete this complaint and investigation (free of boilerplate language) to ensure that our deputy did not act outside of policy.

Supervisor Notes - SN2019-00048957  Date:11/13/2019
In an attempt to establish and disseminate to all division commanders, I had requested that Jim update and revise the "Supervisor Guide to S&R Operations". The revision was several years overdue and left the Patrol Commanders with inaccurate expectations of the Search and rescue personnel, which also had a negative effect on the investigation that was inherently necessary with any missing individual. Jim, completed a clean and comprehensive work product in the required time period.

Supervisor Notes - SN2020-00025362  Date:06/11/2020
Jim continues to remain focused on his area's or responsibility and has consistently shown up to work dressed professionally, and on-time. I can always count on Lt. Kremer to provide deep considerations into Lake Patrol issues, regardless of where those issues are or whose area of responsibility it is. An example of this is when Canyons Lakes patrol boat went down due to a blown engine. When Jim learned of the issue and the cost to replace, Jim offered a few suggestions to include a taking one engine from a watercraft that has not been utilized for a few years and is equipped with a suitable replacement engine. A great example of Lt. Kremer's "outside of the box" thinking and his ability to problem solve. Nice Job!

Supervisor Notes - SN2019-00048299  Date: 10/15/2019
Lt Kremer has been very timely in his response to all matters concerning his people or the organizational needs. An example of this is recently Jim was assigned a Service Complaint that was made anonymously but provided the Deputies name and a one-month time period which the boating stop was initiated. The complaint involved a jet-ski that was stopped and issued a citation for speed. Complainant left, no name of contact information. Lt. Kremer went into immediate action and reviewed countless BWC footage to locate a few that might have fallen into the parameters of the complaint. As always, Jim was through and precise in his review of all the footage and was quick to complete this complaint and investigation (free of boilerplate language) to ensure that our deputy did not act outside of policy.

| Mandatory Training Completed | Yes |
|---|---|

Lieutenant Kremer has completed all of the AZ POST required training including continuing and proficiency training. This also includes all of the court ordered training as well, to include Fourth and Fourteenth Amendment training and SRELE.

| Leadership | Exceeds Standards. EIS Examples Required. |
|---|---|

CONFIDENTIAL
ATTORNEY EYES ONLY

MCC 020055



**Maricopa County Sheriff's Office**
Employee Performance Appraisal

| Employee ID | Serial # | Name (Last, First) | Class | Appraisal Type |
|---|---|---|---|---|
| | S0881 | KREMER, JAMES | 050848 | Annual |

Lieutenant Kremer does posses the ability to positively influence the behaviors of other employees and has effectively asserted his ability while fulfilling his role as the West Side Patrol Commander. During the past summer season Jim's Lake Pleasant and Bartlett Lake squads have stood out among the entire division with the amount of criminal arrests, OUI's and park violations. This has been so significant that the Detective Sergeant who reviews all Lake Patrol generated IR's has even commented to me and has authored emails to Lt. Kremer about the proactive approach that his squads have been routinely producing. Their activity is largely due to Jim's leadership and strong presence. I have worked with Lieutenant Kremer for just over three decades and I can affirm, that he has always been professional, respectful and lead from the front supervisor and commander who demands from his people a non-discriminatory work environment and approach to Law enforcement.

Supervisor Notes - SN2020-00022436  Date:05/26/2020
(Leadership) Lt. Kremer is a conscientious employee and someone who consistently leads from the front. Jim reports to work on time and follows his work schedule, rarely asking for a day off! Lt. Kremer's actions have provided a strong leadership presence and have created a very disciplined and productive working environment. His squads lead the division thus far in OUI arrests and criminal citations.

Supervisor Notes - SN2020-00035154  Date:08/17/2020
LT. Kremer continues to individually discuss his subordinates traffic stops at least once a month and documents his review in his supervisor notes as required by policy. As I review them monthly, its easy to see that each one is a specific notation of his observations during the rating periods which are specific in nature. Allowing for a true evaluation in real time. (Workplace Professionalism) Jimmy shows up to work on time and dressed appropriately. Wearing a clean and professional uniform. As a result, his supervisors and their subordinates also follow the lieutenants lead and are always dressed appropriately looking sharp and representing the office in the best possible light.

Supervisor Notes - SN2019-00045299  Date:10/15/2019
(leadership) (Adherence to policy) Lt Kremer has been very timely in his response to all matters concerning his people or the organizational needs. An example of this is recently Jim was assigned a Service Complaint that was made anonymously but provided the Deputies name and a one-month time period which the boating stop was initiated. The complaint involved a jet-ski that was stopped and issued a citation for speed. Complainant left, no name of contact information. Lt. Kremer went into immediate action and reviewed countless BWC footage to locate a few that might have fallen into the parameters of the complaint. As always, Jim was through and precise in his review of all the footage and was quick to complete this complaint and investigation (free of boilerplate language) to ensure that our deputy did not act outside of policy.

**Transfer Evaluation**

| Quality of Supervisory Review/Supervisor Accountability | Exceeds Standards. EIS Examples Required. |
|---|---|

Lieutenant Kremer meets all the requirements set forth by policy GB-2, Command Responsibility. This is very evident in his daily review of all required documentation for completeness and accuracy, including, but not limited to, TraCs, PAL, BWC, Incident reports, memorandum's, court summited documents and other position specific documentation.

Jim is an engaged and involved commander who has identified a fine balance of oversight while providing his subordinates the ability to effectively run their squads. He has consistently throughout this evaluation period demonstrated that he ensures that our personnel are doing their jobs, following policy and that it's being accomplished in a non-discriminatory environment.

Jim completes through and timely documentation through the EIS Blue Team Supervisor Nots as per policy. He is observant of his employee's EIS thresholds to ensure that they are not falling into a problematic position.

Part of Lieutenant Kramer's responsibilities is reviewing traffic stop video of his deputies BWC. He is diligent in his responsibilities in order to identify data relating to alleged racial or other bias-based policing. He discusses the traffic stops made by each of them under his supervision at least one time per month and documents his discussions in his Blue Team Supervisor Notes .

In accordance with Policy CP-8, Preventing Racial and Other Biased-Based Profiling, Lieutenant Kremer consistently reinforces that discriminatory policing is unacceptable along with the mandatory nature of reporting such violation's.

CONFIDENTIAL
ATTORNEY EYES ONLY

MCC 020056



# Maricopa County Sheriff's Office
## Employee Performance Appraisal

| Employee ID | Serial # | Name (Last, First) | Class | Appraisal Type |
|---|---|---|---|---|
| | S0881 | KREMER, JAMES | 050848 | Annual |

Supervisor Notes - SN2020-00035154  Date:08/17/2020
(Quality of supervisor review) LT. Kremer continues to Individually discuss his subordinates traffic stops at least once a month and documents his review in his supervisor notes as required by policy. As I review them monthly, its easy to see that each one is a specific notation of his observations during the rating periods which are specific in nature. Allowing for a true evaluation in real time. (Workplace Professionalism) Jimmy shows up to work on time and dressed appropriately. Wearing a clean and professional uniform. As a result, his supervisors and their subordinates also follow the lieutenants lead and are always dressed appropriately looking sharp and representing the office in the best possible light.

Supervisor Notes - SN2020-00005258  Date:02/06/2020
(Quality of Supervisory review) During my review of Lt. Kremer's supervisor notes I'm pleased to see that he completes through and comprehensive notes on all his employee's, free form any boiler plate language and within the required time-frame. (Adherence to policy) During a recent discovery of an alleged incident of mis-conduct, lt. Kremer handled the situation appropriately and in accordance with MCSO policy. This is an example of Jim's knowledge of policy and professionalism.

Supervisor Notes - SN2020-00029466  Date:07/08/2020
(Quality or Supervisory review/Supervisor Accountability) Lt. Kremer has been completing his required supervisor notes which are routinely significant to each of his subordinates. Each note is reflective of his observations regarding a specific category within the organizational performance appraisal. To date, Jim has not missed any of the bi-monthly required notes.

Supervisor Notes - SN2019-00057166  Date:01/14/2020
Lt Kremer continues to stay on top of his administrative job requirements. Completes his BT supervisor notes and all other applicable documentation on time and without boilerplate or conclusory type language. (Knowledge of MCSO Policy) Recently, Lt. Kremer reviewed and forwarded a use of force entry by one of his supervisors. Both Lt. Kremer and I reviewed the BWC footage and believed that the demeanor exhibited by the deputy, although within policy, could have been much more professional and might have prevented the actual need to resort to the use of force during a DUI arrest. Jim intentionally waited several days from the actual incident and met with the deputy. Showed him the video and then discussed his performance. After the review, the deputy acknowledged that he should have been more patient and provided a more in-depth explanation of the process to the suspect in-custody. In doing so, it could have eliminated the need for an elevated use of force. This is the kind of supervisory review and observations that keep us in compliance and help to train our employee's, no matter how experienced they may be.

## COMPLAINTS AND DISPOSITIONS

Lieutenant Kremer is not the subject of any current investigations and their have not been any complaints filed against him during this evaluation period.

## EMPLOYEE RANK AND ASSIGNMENT HISTORY

Lieutenant Kremer has been assigned to the Lake Patrol Division as the West Side Patrol Commander for this entire evaluation period and has been under my direct supervision.

Pursuant to the Court Order Paragraph 99 requirements on Lieutenant Kremer;

Complainants: None
Discipline: None
Commendations: None
Awards: None
Admin/Civil Claims/Lawsuits: None
Training History: See Training section
Supervisory actions resulting from alerts: None

CONFIDENTIAL
ATTORNEY EYES ONLY



# Maricopa County Sheriff's Office
Employee Performance Appraisal

| Employee ID | Serial # | Name (Last, First) | Class | Appraisal Type |
|---|---|---|---|---|
|  | S0881 | KREMER, JAMES | 050848 | Annual |

## SIGNATURES

I, _____, (immediate supervisor) hereby acknowledge that in completing this Employee Performance Appraisal, I appropriately reviewed and analyzed the following information with respect to this employee: (1) all EIS Tracking data, including but not limited to, the Dashboard for the employee for "Other Observed Behaviors," (2) Internal Complaints & Dispositions, (3) External Complaints & Dispositions, (4) Commendation and Awards, and (5) whether the employee is a party to a lawsuit related to performance of his/her job duties for MCSO. To the extent I found relevant information regarding any of these categories, I appropriately documented it above.

CONFIDENTIAL
ATTORNEY EYES ONLY

11/19/2020 2:46:54 PM

MCC 020058



# Maricopa County Sheriff's Office
## Employee Performance Appraisal

| Employee ID | Serial # | Name (Last, First) | Class | Appraisal Type |
|---|---|---|---|---|
| ▮ | S0881 | KREMER, JAMES | 050848 | Annual |

**Immediate Supervisor (Name and Rank)**

FRED ADARASI

Date: 11/19/2020    Serial #: 875    Signature: _J. A. Cline_

**Commander (Name and Rank)**

FRED ADARASI

Date: 11/19/2020    Serial #: 875    Signature: _J. A. Cline_

**Bureau Chief or Designee (Name and Rank)**

DEPUTY CHIEF W.C. MORRISON

Date: 12/6/2020    Serial #: 1509    Signature: W.C. M____

**Employee (Name and Rank)**

KREMER, JAMES This appraisal has been discussed with me and a copy has been provided to me

Date: 12/18/2020    Serial #: S0881    Signature: _James J. Kremer_

**A probationary period has not officially ended until the last day of the probation period is completed, including any extension thereto.**

CONFIDENTIAL
ATTORNEY EYES ONLY

MCC 020059

# EXHIBIT 72

# FILED

# UNDER

# SEAL

# EXHIBIT 73



fisherphillips.com

**Phoenix**
3200 N. Central Avenue
Suite 1550
Phoenix, AZ 85012

(602) 281-3400 Tel
(602) 281-3401 Fax

**Writer's Direct Dial:**
(602) 281-3410
(602) 281-3413

**Writer's E-mail:**
lguner@fisherphillips.com

March 13, 2024

**VIA EMAIL ONLY**
*TY@FRANKELSYVERSON.COM*
*PATTI@FRANKELSYVERSON.COM*)

Ty D. Frankel
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016

Patricia N. Syverson
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123

> **Re:     *Christopher J. Houck v. Maricopa County***
> ***Arizona District Court Case No.: 2:23-cv-00068-DGC***

Dear Ty and Patti:

As the discovery phase of this matter has begun, we are writing to request that you disclose pertinent information, as set forth below, so that we may promptly conduct discovery.

As detailed more fully in our letter to you sent earlier today, Plaintiff has propounded discovery requests in his First Set of Requests for Production and First Set of Non-Uniform Interrogatories that seek discovery related to <u>all</u> Opt-In Plaintiffs. However, in its Case Management Order at Doc. 48, the Court limited discovery in this case to 50% of the Opt-In Plaintiffs. Furthermore, during the case management conference on December 5, 2023, the Court stated that if Plaintiff plants to put on any Opt-In Plaintiffs at trial that Defendant has not been allowed to depose, the Court will allow Defendant to take depositions of those Opt-In Plaintiffs before trial. The Court further stated that Plaintiff must let Defendant know which Opt-In Plaintiffs he plans to put on at trial, in order to avoid Defendant having to take last-minute depositions before trial.

Please confirm whether it is still Plaintiff's position that Defendant is limited to only taking discovery as to 50% of the Opt-In Plaintiffs while Plaintiff is purportedly entitled to discovery as to all Opt-In Plaintiffs. Such a position is inequitable. If your position remains that Defendant is only permitted to take written or oral discovery of 50% of the Opt-In Plaintiffs, then Defendant is entitled to know the identities of any individuals Plaintiff plans on offering testimony for either at trial or via declaration in this case. Specifically, we expect Plaintiff to immediately disclose the identities of any Opt-In Plaintiffs for which Defendant did **not** propound written discovery on if their declarations/affidavits will be offered by Plaintiff to oppose Defendant's future motions for summary

**Fisher & Phillips LLP**

Atlanta • Baltimore • Bethesda • Boston • Charlotte • Chicago • Cleveland • Columbia • Columbus • Dallas • Denver • Detroit • Fort Lauderdale • Gulfport
Houston • Irvine • Kansas City • Las Vegas • Los Angeles • Louisville • Memphis • Nashville • New Jersey • New Orleans • New York • Orlando • Philadelphia
Phoenix • Pittsburgh • Portland • Sacramento • San Diego • San Francisco • Seattle • Tampa • Washington, DC • Woodland Hills

FP 49456294.1

Ty D. Frankel
Patricia N. Syverson
March 13, 2024
Page 2

judgment and/or motion to decertify. Defendant is also entitled to the identities of any Opt-In Plaintiffs that Plaintiff plans on offering as trial witnesses, or whose testimony will be offered for any other purpose in this case. Plaintiff and the Opt-In Plaintiffs are the ones pursuing their claims against Defendant. And Plaintiff should not be allowed to block Defendant's valid efforts to conduct discovery in support of its defenses only to later be sandbagged with newly disclosed evidence and testimony after discovery has closed.

Furthermore, as you know, Arizona law provides that spouses must be named jointly to reach community assets, therefore Plaintiff and the Opt-In Plaintiffs' spouses must be joined in order for an award of costs or fees to be enforceable against their marital communities. A.R.S. § 25-215; *Eng v. Stein*, 599 P.2d 796, 798 (Ariz. 1979); *see also Weimer v. Maricopa Cnty. Cmty. Coll. Dist.*, 184 F.R.D. 309, 310-11 (D. Ariz. 1998); *Vicente v. City of Prescott, Ariz.*, No. CV-11-8204-PCT-DGC, 2012 WL 5878844 at *2 (D. Ariz. Nov. 21, 2012); *Cutrona v. Sun Health Corp.*, No. CV 06-02184-PHX-MHM, 2007 WL 4150210 at *1-2 (D. Ariz. Nov. 19, 2007). In its Order at Doc. 38, the Court stated that if becomes apparent that an award of attorney's fees or costs to Defendant is possible, Defendant can request that Plaintiff and the Opt-In Plaintiffs' spouses be joined in this lawsuit. Accordingly, Plaintiff must disclose whether he and the Opt-In Plaintiffs are married, and if so, their spouses' names.

Plaintiff must further disclose whether he and any of the Opt-In Plaintiffs have filed for bankruptcy in the last three years, the date on which bankruptcy was filed, the case number, and the full name under which bankruptcy was filed. This information is relevant to the claims because if Plaintiff and any of the Opt-In Plaintiffs are in bankruptcy, title to their claims in this action will vest in the bankruptcy trustee. "It is true, as the trustee contends, that, upon the filing of a petition in bankruptcy, all property in which the bankrupt has or may claim an interest passes under the control of the bankruptcy court and, upon adjudication, title to all property of the bankrupt vests in the trustee as of the day of the filing of the petition." *Heffron v. W. Loan & Bldg. Co.*, 84 F.2d 301, 303 (9th Cir. 1936). If title to Plaintiff's claim vests in a trustee, then he cannot be a proper representative of the collective.

Finally, plaintiff must disclose if he and the Opt-In Plaintiffs have ever been convicted of or pled guilty to a crime, and if so: (a) the nature of the crime, (b) the date of conviction and the name and address of the court, (c) the sentence and/or fine imposed, (d) if they were imprisoned, the name and address of the correctional facility, and (e) if other charges were dropped, the nature of such other charges. This information is highly relevant because Plaintiffs and the Opt-In Plaintiffs are putting forth damages assessments, therefore their credibility is at issue. Pursuant to Fed. R. Evid. 609, a plaintiff's character for truthfulness may be attacked by way of evidence of a criminal conviction. Therefore, Defendant is entitled to this information.

Given that expert disclosure deadlines are approaching in a few months, please supplement Plaintiff's disclosures by **Wednesday, March 27, 2024** with the aforementioned information. We are happy to meet and confer with you regarding the aforementioned issues if you feel that doing so would be productive.

Sincerely,

Shayna Balch Santiago
Partner
Lori A. Guner
Associate
Jacob Valdez
Associate
For FISHER & PHILLIPS LLP

LAG:lag

# EXHIBIT 74



fisherphillips.com

**Phoenix**
3200 N. Central Avenue
Suite 1550
Phoenix, AZ 85012

(602) 281-3400 Tel
(602) 281-3401 Fax

**Writer's Direct Dial:**
(602) 281-3406
(602) 281-3413
(602) 281-3395

**Writer's E-mail:**
ssantiago@fisherphillips.com
lguner@fisherphillips.com
jvaldez@fisherphillips.com

July 15, 2024

**VIA EMAIL ONLY**
*TY@FRANKELSYVERSON.COM*
*PATTI@FRANKELSYVERSON.COM*

Ty D. Frankel
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016

Patricia N. Syverson
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123

>    *Re:   Christopher J. Houck v. Maricopa County*
>    *Arizona District Court Case No.: 2:23-cv-00068-DGC*

Dear Ty and Patti:

We are writing in a final attempt to resolve some pending discovery issues with you. If we cannot resolve these issues amongst ourselves then we will be seeking court intervention.

As set forth more fully in our letter dated March 13, 2024, despite the Court's limitation of written discovery to only 50% of the opt-ins, we are nevertheless entitled to some basic information relating to all of the opt-ins. To begin, we are entitled to damage computations for each of the opt-ins (including their representations that they were in Patrol Bureaus East or West during the relevant time period as well as alleged hours worked during each workweek). We are also entitled to know:

1. whether Plaintiff and/or any of the opt-ins have filed for bankruptcy in the last three years;

2. whether Plaintiff and the opt-ins are married, and if so, their spouses' names;

3. whether Plaintiff and the opt-ins have ever been convicted of or pled guilty to a crime; and

4. whether Plaintiff plans on offering either live testimony or declarations of any of the opt-ins on whom Defendant has been unable to serve written discovery or depose.

**Fisher & Phillips LLP**
**Atlanta • Baltimore • B**ethesda **• Boston • Charlotte • Chicago • Cleveland • Columbia • Columbus • Dallas • Denver • De**troit **• Fort Lauderdale • Gulfport**
Houston • Irvine **• Kansas City • Las Vegas • Los Angeles • Louisville • Memphis •** Nashville **• New Jersey • New Orleans •** New York **• O**rlando **• Philadelphia**
**Phoenix •** Pittsburgh **• Portland •** Sacramento **• San Diego • San Francisco •** Seattle **• Tampa • Washington, DC •** Woodland Hills

FP 51573252.1

Ty D. Frankel
Patricia N. Syverson
July 15, 2024
Page 2

We met and conferred regarding these issues over the phone on March 27, 2024 and further agreed to send you additional case law support for our position regarding entitlement to bankruptcy histories. This additional case law is set forth below.

As you are well aware, in order for the Court to have jurisdiction over this case, Plaintiff and the opt-ins must have standing. *Local Nos. 175 & 505 Pension Trust v. Anchor Capitol Advisors*, 498 F.3d 920, 923 (9th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)) ("Standing is the threshold issue of any federal action, a matter of jurisdiction because 'the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III.'"). When a plaintiff files for bankruptcy, a bankruptcy estate is created, and the bankruptcy trustee, not the plaintiff as debtor, has the exclusive right to sue on behalf of the bankruptcy estate. 11 U.S.C. § 541(a) ("The commencement of a case under section 301, 302, or 303 of this title creates an estate."); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983) (holding Section 541 is broad in scope and includes causes of action); *In re Estate of Spirtos*, 443 F.3d 1172, 1176 (9th Cir. 2006) ("[T]he bankruptcy code endows the bankruptcy trustee with the exclusive right to sue on behalf of the estate."); *see, e.g., Wieburg v. GTE Sw. Inc.*, 272 F.3d 302 (5th Cir. 2001), 272 F.3d at 307 ("Trustee is the real party in interest and . . . Wieburg lacked standing to pursue the discrimination claims."); *In re Eisen*, 31 F.3d 1447, 1451 n.2 (9th Cir. 1994) ("Once appointed a trustee, the debtor's assets and claims pass to the trustee, making the trustee the proper party in interest, and the only party with standing to appeal the bankruptcy court's order.") (citation omitted) (internal quotation marks omitted); *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707-09 (9th Cir. 1986) (holding that debtor's claim of emotional distress properly belonged to the bankruptcy estate). Based on the above, Plaintiff and the opt-ins' bankruptcy histories are highly relevant given they will be determinative on whether the opt-ins have standing in this case. It is also Defendant's position that Plaintiff and opt-ins should provide this information as part of their mandatory disclosure obligations.

As to disclosure of whether any of the opt-ins are married and disclosure of the names of their spouses, we are likewise entitled to that information. The judge already ruled that "[i]f an award of attorney's fees or costs to Defendant becomes more than "mere speculation," Defendant can renew its request" to join spouses. (Doc. 38, p. 4). And as you have already represented to us in the past, it takes a significant amount of time for you to be able to obtain even simple information from your clients (including whether your clients work off duty jobs). We should not be required to wait until the conclusion of this case to have your office request this information for the first time, only to have your clients refuse to provide it. Indeed, this appears to not just be a theoretical concern. Following our propounding of written discovery on 50% of the opt-ins, we were surprised to receive a unilaterally and self-titled "Opt-In Plaintiff Matthew Hunter's Notice of Withdrawal of Consent Form Without Prejudice." (Doc. 63). Following our propounding of written discovery on Lt. Bocardo, we were also surprised to receive a unilaterally and self-titled "Opt-In Plaintiff Kelly Bocardo's Notice of Withdrawal of Consent Form Without Prejudice." (Doc. 65). These notices were filed due to Lt. Hunter and Lt. Bocardo's unwillingness to engage in the discovery process. Such self-titled withdrawals were not appropriate, were not filed with Defendant's consent, and were not permitted under the rules. Fed. R. Civ. P. 41(a)(1)(A) ("plaintiff may dismiss an action without a court order by filing: (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared"); Fed. R. Civ. Pro. 41(a)(2) ( "Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's

Ty D. Frankel
Patricia N. Syverson
July 15, 2024
Page 3

instance save upon order of the court"). *Reyes v. Texas EZPawn, L.P.*, Civil Action No. V-03-128, 2006 WL 3513936 at *1 (S.D. Tex. Dec. 6, 2006) ("[S]imply withdrawing the consent forms of opt-in plaintiffs does not automatically dismiss their claims without an order of this Court."). Regardless, it now creates legal issues as to potential recovery of fees and costs at the conclusion of this case in the event Defendant obtains complete dismissal of Plaintiff and the remaining opt-ins' claims.

As to disclosure of whether any of the opt-ins have been convicted or pled guilty to a crime, we are also entitled to this information. Pursuant to Fed. R. Evid. 609, a witness's character for truthfulness may be attacked by evidence of a criminal conviction. *United States v. Gay*, 967 F.2d 322, 328 (9th Cir. 1992) ("[e]vidence of prior frauds is considered probative of the witness's character for truthfulness or untruthfulness."); *State v. Hatch*, 225 Ariz. 409, 412 (App. 2010) citing *State v. Gretzler*, 126 Ariz. 60, 85 (1980) (modified on other grounds) ("Conviction of a felony is material to a witness's credibility.").

Finally, we are entitled to know whether Plaintiff plans on offering the testimony of any of the opt-ins we have not been permitted to conduct written discovery on either at trial or in the form of an affidavit or declaration. These opt-ins include: Emmanuel Sanchez; Michael Throwbridge; Rudy Acosta; Jeremy Goad; James Kremer; Frederick McCann; Richard Rank; Dmitrius Whelan-Gonzales; and Brian Jakowinicz. We previously asked for this information in our March 13, 2024 letter but never received a response from your office. We are entitled to know whether Plaintiff plans on offering testimony of any of the above opt-ins so that Defendant is not sandbagged later in this case following the close of discovery. If Plaintiff does plan on offering the testimony of these individuals, then Defendant is entitled to take further discovery relating to them. Indeed, as the Court already indicated during the December 5, 2023 case management conference, if Plaintiff plans to put on any opt-ins at trial that Defendant has not been allowed to depose, the Court will allow Defendant to take depositions of those opt-ins before trial. The Court further stated that Plaintiff must let Defendant know which opt-ins he plans to put on at trial, in order to avoid Defendant having to take last-minute depositions before trial. We are entitled to presently know whether Plaintiff plans to limit testimony to the opt-ins the parties are actively engaged in discovery regarding, or whether Plaintiff plans to offer more comprehensive testimony from additional witnesses so that we can plan discovery efforts accordingly.

Accordingly, Defendant requests the Plaintiff immediately supplement its disclosures regarding the above information. If Plaintiff's position regarding Defendant's entitlement to the aforementioned requests remain unchanged, please let us know immediately.

Sincerely,

Shayna Balch Santiago
Partner
Lori A. Guner
Associate
Jacob Valdez
Associate
For FISHER & PHILLIPS LLP

SBS:mcc

FP 51573252.1

# EXHIBIT 75

# FILED

# UNDER

# SEAL

# EXHIBIT 76

# FILED

# UNDER

# SEAL

# EXHIBIT 77

**Potential Limitations Periods**

| Plaintiff Name | Relevant Dates In Patrol Bureaus East or West | Dates to Be Excluded/Dismissed | Potentially* Worked in Patrol Bureaus East or West Within 3-Year-Lookback Period | Potentially* Worked in Patrol Bureaus East or West Within 2-Year-Lookback Period |
|---|---|---|---|---|
| **Acosta**<br><br>Opt-In Date: 3/6/23 (Doc. 24); DOSF ¶142<br>Promotion to Lt: 10/19/2020 DOSF ¶137 | 10/19/2020-2/7/21 (District 3) SOF¶137<br><br>2/8/21-4/22 (District 1)  SOF¶ 139<br><br>1/2024 to present (District 2) SOF ¶141 | Prior to 10/19/20 Promotion to Lt.<br><br>4/2022-1/2024 (General Crimes - not in Patrol Bureaus East or West) SOF ¶140 | Yes | Yes |
| **Brice**<br><br>Opt-In Date: 1/19/23 (Doc. 10)<br>Promotion to Lt: SOF ¶¶71 | 1/19/20-2/23/20 (District 3) SOF ¶ 74 | 2/24/2020 to present (Compliance Bureau – not in Patrol Bureaus East or West) SOF ¶75 | Yes | No |

| Plaintiff Name | Relevant Dates In Patrol Bureaus East or West | Dates to Be Excluded/Dismissed | Potentially* Worked in Patrol Bureaus East or West Within <u>3-Year</u>-Lookback Period | Potentially* Worked in Patrol Bureaus East or West Within <u>2-Year</u>-Lookback Period |
|---|---|---|---|---|
| **Freeman**<br><br>Opt-In Date: 12/27/23 (Doc. 59)<br>Promotion to Lt: 11/28/22 SOF ¶180 | 11/28/22-4/2023 (District 7) SOF ¶182<br><br>4/2023 to present (District 3) SOF¶ 183 | Prior to 11/28/2022 Promotion to Lt.  SOF ¶ 180 | Yes | Yes |
| **Halverson**<br><br>Opt-In Date: 1/18/23 (Doc. 9)<br>Promotion to Lt: | 1/18/20 – January 2021<br><br>January 2022 – January 2024 (District 7) SOF ¶ 63 | January 2021 – January 2022 (Bureau of Internal Oversight – not in Patrol Bureaus East or West) SOF 62<br><br>January 2024-March 2, 2025 (Traffic Stop Analysis Unit – not in Patrol Bureaus East or West) SOF ¶64<br><br>3/3/25 to present (Promotion to Captain) SOF ¶65 | Yes | Yes |

| Plaintiff Name | Relevant Dates In Patrol Bureaus East or West | Dates to Be Excluded/Dismissed | Potentially* Worked in Patrol Bureaus East or West Within 3-Year-Lookback Period | Potentially* Worked in Patrol Bureaus East or West Within 2-Year-Lookback Period |
|---|---|---|---|---|
| **Houck**<br><br>Opt-In Date: 1/11/23 (Doc. 1-2)<br>Promotion to Lt: 4/2/22 SOF ¶17 | 4/4/22-4/18/22 (District 7)  SOF ¶19<br><br>4/18/22-1/19/25 (District 1)  SOF ¶20 | Prior to 4/4/22 promotion to Lt.<br><br>1/20/25 to present (Court Security – not in Patrol Bureaus East or West) SOF ¶21 | Yes | Yes |
| **Jackson**<br><br>Opt-In Date: 1/23/23 (Doc. 12)<br>Promotion to Lt: 11/28/22 SOF ¶90 | 11/28/22-January 2024 (District 2) SOF ¶92.<br><br>December 2024 to Early 2025 (Lake Patrol) SOF ¶95 | Prior to 11/28/22 Promotion to Lt.<br><br>January 2024- May 2024 (Major Crimes – not in Patrol Bureaus East or West) DOSF 93<br><br>May 2024 – December 2024 (General Crimes – not in Patrol Bureaus East or West) SOF ¶94<br><br>March 3, 2025 – Present (Homicide – not in Patrol Bureaus East or West) SOF ¶95 | Yes | Yes |

| Plaintiff Name | Relevant Dates In Patrol Bureaus East or West | Dates to Be Excluded/Dismissed | Potentially* Worked in Patrol Bureaus East or West Within 3-Year-Lookback Period | Potentially* Worked in Patrol Bureaus East or West Within 2-Year-Lookback Period |
|---|---|---|---|---|
| **Keller**<br><br>Opt-In Date: 1/13/23 (Doc. 5)<br>Promotion to Lt: 10/19/20 SOF ¶27 | 10/19/20-January 2021 (District 2) SOF ¶29<br><br>January 2021-January 2022 (District 7) SOF ¶30.<br><br>January 2022 to present (District 3) | Prior to 10/19/20 Promotion to Lt. SOF ¶27 | Yes | Yes |
| **Neville**<br><br>Opt-In Date: 1/20/23 (Doc. 11)<br>Promotion to Lt: 7/26/21 SOF ¶81 | 7/26/21-April 2023 (District 2) SOF ¶82 | Prior to 17/26/21 Promotion to Lt. SOF ¶81<br><br>April 2023 to present (Special Investigations – not in Patrol Bureaus East or West SOF ¶84) | Yes | Yes |

| Plaintiff Name | Relevant Dates In Patrol Bureaus East or West | Dates to Be Excluded/Dismissed | Potentially* Worked in Patrol Bureaus East or West Within 3-Year-Lookback Period | Potentially* Worked in Patrol Bureaus East or West Within 2-Year-Lookback Period |
|---|---|---|---|---|
| **Rankin**<br><br>Opt-In Date: 2/10/23 (Doc. 17)<br>Promotion to Lt: 4/4/22 SOF ¶126 | 4/4/22-9/30/24 (District 3) SOF ¶128 | Prior to 4/4/22 Promotion to Lt. SOF ¶126<br><br>9/30/24 – present (Bureau of Internal Oversight – not in Patrol Bureaus East or West DOSF 129 | Yes | Yes |
| **Rosenberger**<br><br>Opt-In Date: 1/18/23 (Doc. 7)<br>Promotion to Lt:1/18/07 SOF ¶46 | 1/18/2020-January 2022 (District 1) SOF ¶48<br><br>January 2022 to present (Lake Patrol) SOF ¶50 | | Yes | Yes |

| Plaintiff Name | Relevant Dates In Patrol Bureaus East or West | Dates to Be Excluded/Dismissed | Potentially* Worked in Patrol Bureaus East or West Within <u>3-Year</u>-Lookback Period | Potentially* Worked in Patrol Bureaus East or West Within <u>2-Year</u>-Lookback Period |
|---|---|---|---|---|
| **Trowbridge**<br><br>Opt-In Date: 2/1/23 (Doc. 16)<br>Promotion to Lt: | N/A | **Entire Period**<br><br>Lt In SWAT 11/5/18-3/3/25 SOF ¶121; promoted to Captain 3/3/25. MCC02016; SOF ¶123 | **No**<br><br>*In SWAT whole period* | **No**<br><br>*In SWAT whole period* |
| **Thomas**<br><br>Opt-In Date: 1/30/23 (Doc. 14)<br>Promotion to Lt: 4/4/22 SOF ¶114 | 4/4/22-March 2025 SOF ¶116<br><br>6/7/25 – present (District 1) SOF ¶118 | Prior to 4/4/22 Promotion to Lt. SOF ¶114<br><br>March 2025 – June 7, 2025 (Communications division – not part of Patrol Bureaus East or West) SOF ¶117 | Yes | Yes |

| Plaintiff Name | Relevant Dates In Patrol Bureaus East or West | Dates to Be Excluded/Dismissed | Potentially* Worked in Patrol Bureaus East or West Within 3-Year-Lookback Period | Potentially* Worked in Patrol Bureaus East or West Within 2-Year-Lookback Period |
|---|---|---|---|---|
| **Vance**<br><br>Opt-In Date: 1/23/23 (Doc. 13)<br>Promotion to Lt:1/11/21 SOF ¶101 | 1/11/21-July 2021 (District 1) SOF ¶103, 104<br><br>July 2021 to September 2023 (Lake Patrol) SOF ¶105<br><br>January 2025 to March 2025 (District 1) SOF ¶107<br><br>March 2025 to present (District 7) SOF ¶108 | Prior to 1/11/21 Promotion to Lt. SOF ¶101<br><br>September 2023 to January 2025 (Enforcement Support division – not in Patrol Bureau East or West) SOF ¶106 | Yes | Yes |
| **Cruz**<br><br>Opt-In Date: 12/27/23 (Doc. 58)<br>Promotion to Lt: 7/26/21 SOF ¶171 | 7/26/21-1/9/22 (District 7) SOF ¶173 | Prior to 7/26/21 Promotion to Lt. SOF ¶171<br><br>1/10/22 to present (Training Division – not part of Patrol Bureaus East or West) SOF ¶174 | Yes | Yes |

| Plaintiff Name | Relevant Dates In Patrol Bureaus East or West | Dates to Be Excluded/Dismissed | Potentially* Worked in Patrol Bureaus East or West Within 3-Year-Lookback Period | Potentially* Worked in Patrol Bureaus East or West Within 2-Year-Lookback Period |
|---|---|---|---|---|
| **Hunter**<br><br>Opt-In Date: 1/18/23 (Doc. 8)<br>Promotion to Lt: | Filed Notice of Withdrawal of Consent Form 4/5/24 (Doc. 63) | | No – Withdrawn | No – Withdrawn |
| **Goad**<br><br>Opt-In Date: 11/28/23 (Doc. 44) | 11/28/20-1/5/21 SOF ¶ 246 | 1/5/21 to present (last day worked) SOF ¶ 246 | Yes | No |
| **McCann**<br><br>Opt-In Date: 12/27/23 (Doc. 56)<br>Promotion to Lt: 12/27/99 SOF ¶155 | 12/27/20-2021 (District 4) SOF ¶155<br><br>2021 – 9/20/21(District 1) SOF ¶157 | 9/20/21 to present (Retired) SOF ¶157 | Yes | No |

| Plaintiff Name | Relevant Dates In Patrol Bureaus East or West | Dates to Be Excluded/Dismissed | Potentially* Worked in Patrol Bureaus East or West Within 3-Year-Lookback Period | Potentially* Worked in Patrol Bureaus East or West Within 2-Year-Lookback Period |
|---|---|---|---|---|
| **Sanchez**<br><br>Opt-In Date: 1/17/23 (Doc. 6)<br>Promotion to Lt: 6/27/22 SOF ¶37 | 6/27/22 – 4/16/23 (District 3) SOF ¶37<br><br>4/17/23-2/5/249 (District 2) SOF ¶39 | Prior to 6/27/22 Promotion to Lt. SOF ¶37<br><br>2/5/24 to present (SWAT – not in Patrol Bureaus East or West) SOF ¶40 | Yes | Yes |
| **Ranck**<br><br>Opt-In Date: 12/07/23 (Doc. 50)<br>Promotion to Lt: 11/28/22 SOF ¶252 | 11/28/22-present (District 1) SOF ¶¶ 252, 254 | Prior to 11/28/22 promotion to Lt. SOF ¶ 252 | Yes | Yes |
| **Bocardo**<br><br>Opt-In Date: 2/13/23 (Doc. 18) | Filed Notice of Withdrawal of Consent Form 6/6/24 (Doc. 65) | | No – Withdrawn | No – Withdrawn |

| Plaintiff Name | Relevant Dates In Patrol Bureaus East or West | Dates to Be Excluded/Dismissed | Potentially* Worked in Patrol Bureaus East or West Within 3-Year-Lookback Period | Potentially* Worked in Patrol Bureaus East or West Within 2-Year-Lookback Period |
|---|---|---|---|---|
| **Kremer**<br><br>Opt-In Date: 12/27/23 (Doc. 57)<br>Promotion to Lt: 9/26/16 SOF ¶163 | 12/27/20-4/30/21 (Lake Patrol) SOF ¶163 | 5/1/21 to present (Retired) SOF ¶165 | Yes | No |
| **Jakowinicz**<br><br>Opt In Date 12/20/23 (Doc. 54)<br>Promotion to Lt: 6/4/07 SOF ¶147 | 12/20/20 – 6/4/21 (District 1) SOF ¶149 | 6/4/21 to present (Retired) SOF ¶149 | Yes | No |

| Plaintiff Name | Relevant Dates In Patrol Bureaus East or West | Dates to Be Excluded/Dismissed | Potentially* Worked in Patrol Bureaus East or West Within 3-Year-Lookback Period | Potentially* Worked in Patrol Bureaus East or West Within 2-Year-Lookback Period |
|---|---|---|---|---|
| **Whelan-Gonzales**<br><br>Opt-In Date: 1/4/24 (Doc. 60) | 9/25/23-March 2025 (Lake Patrol) SOF ¶191 | Prior to 9/25/23 (Major Crimes – not in Patrol Bureaus East or West) SOF ¶190<br><br>March 2025 to present (Enforcement Support Division – not in Patrol Bureaus East or West) SOF ¶191 | Yes | Yes |

*This chart merely takes into account whether the plaintiffs worked any days in Patrol Bureaus East or West during the 2 or 3-year lookback periods.

# EXHIBIT 78

# FILED

# UNDER

# SEAL

# EXHIBIT 79

# FILED

# UNDER

# SEAL

# EXHIBIT 80

# Maricopa County Sheriff's Office
## Patrol Resource Bureau
## SWAT Division
## Operational Manual
## Effective April 6, 2020



*The content of this Office manual provides specific guidance regarding the administrative practices and procedures associated with the SWAT Division. The contents are not intended to supersede or conflict with Office Policy, but to clarify and define the division's daily operations. Personnel assigned to the SWAT Division shall be responsible for reading, understanding, and complying with the provisions contained in this Operations Manual, in addition to Maricopa County Sheriff's Office Policy.*

**Approved by:**

**Division Commander:** _____     **Date:** _____

**Bureau Commander:** _____     **Date:** _____



TROW000004

# EXHIBIT 81

# FILED

# UNDER

# SEAL

# EXHIBIT 82

# FILED

# UNDER

# SEAL

<u>TYR Tactical Body Armor Kits for Medics</u>- Medics are apart of our tactical operations and are in very close proximity during the operation itself. Body Armor would assist in helping to ensure their safety.

<u>Bravo Company Manufacturing (BCM) Rifles</u>- The current rifles being used by the TOU are starting to experience some issues. The current rifles are only a few years old but have thousands of rounds through them.

<u>EOD Bomb Suit</u>- One Bomb Suit will expire in 2023, currently we are ordering one additional Bomb Suit to replace a currently expired suit. This purchase is being made through the Grant Process.

<u>IR Laser Aiming Systems</u>- Currently the Bomb Squad is not equipped with the proper low light sighting systems for their assigned weapon platform.

<u>Training Aid Kits</u>- These kits will provide the Bomb Squad with realistic training aids to be used for x-ray and RSP Training. This training will enhance the EOD squad's capabilities. Currently the Bomb Squad does not have such training equipment.

<u>Polaris Ranger</u>- This would replace our current John Deer Gator; it would provide the Bomb Squad with a vehicle to be used during special event details. It would provide a much smaller footprint for two bomb techs with equipment.

<u>.338 Lapua Precision Rifle System</u>- This would be an addition to our unit. This would allow a two-man element to deploy with the same weapon system for hard barrier targets. This system would be equipped the same as the current .308 weapon system to provide an easy transition from weapon to weapon.

<u>Cadex Rifle Chassis System</u>- This would equip the current rifle system the same as the current .308 weapon system.

<u>40 Foot Shipping Container</u>- This container would be used to complete the explosive breaching façade.

<u>Packbot Antenna Batteries</u>- Currently each robot platform has one battery per antenna. A second battery would allow for the robot to be deployed for a longer period of time.

<u>Lenco BearCat G3 Armored Vehicle</u>- The SWAT Division will be in need for a new purchase of an armored vehicle during FY22/23 due to the mileage on the current armored vehicles being used.

Respectfully Submitted,


LT. M. Trowbridge #1703

TROW000039

**Subject:** _____FY 22/23 Request for SWAT Division_____**Date:** _11/29/21_____

**Chain of Command Signatures:**

_____     _____     _____
**Direct Supervisor's Signature**     Serial #        **Date**
Comments: _____
_____
_____

_____     _____     _____
**Lieutenant/Section Commander's Signature**     Serial #     **Date**
Comments: _____
_____
_____

_____     _____     _____
**Division/District Commander's Signature**     Serial #     **Date**
Comments: _____
_____
_____

_____     _____     _____
**Deputy Chief's Signature**     Serial #     **Date**
Comments: _____
_____
_____
_____

_____     _____     _____
**Executive Chief's Signature**     Serial #     **Date**
Comments: _____
_____
_____
_____

_____     _____     _____
**Chief Deputy/Chief of Staff/CFO's Signature**     Serial #     **Date**
Comments: _____
_____
_____
_____

TROW000040

# EXHIBIT 83

# FILED

# UNDER

# SEAL