# Frankel Syverson PLLC

FRANKEL SYVERSON PLLC
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
602-598-4000
Ty D. Frankel (027179)
ty@frankelsyverson.com

9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
602-598-4000
Patricia N. Syverson (020191)
patti@frankelsyverson.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher J. Houck, on behalf of himself and all those similarly situated,<br><br>          Plaintiff,<br><br>      v.<br><br>Maricopa County,<br><br>          Defendant. | Case No. 2:23-cv-00068-DGC<br><br><br>**PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Christopher Houck ("Houck" or "Plaintiff") submits this Response in Opposition to Defendant's Motion for Summary Judgment (Doc. 154) and affirmatively files this Cross-Motion for Summary Judgment.

## I.    Introduction

Maricopa County bases its Motion on the amount of time it claims the Patrol Lieutenants perform managerial or other exempt duties, claiming that the Patrol Lieutenants' position that they are nonexempt first responders is only based on their "subjective belief" about the importance of those duties. The County's position demonstrates a fundamental misunderstanding of the law regarding first responders, which makes clear that law enforcement personnel are not exempt from overtime when first responder duties are the most important aspect of their jobs. The extensive evidence in the record demonstrates as a matter of law that the Patrol Lieutenants are first responders, and their primary and most important duty is law enforcement. The County completely ignores the case law directly on point demonstrating this to be the case, instead skewing its analysis toward a self-serving calculation of percentages of law enforcement versus exempt duties that fails to account for the proper legal analysis about whether the Patrol Lieutenants are first responders. Tellingly, the County does not cite a single case in its Motion that granted summary judgment in favor of finding that lieutenants are exempt from overtime under the FLSA that was decided after the first responder exception went into effect. In contrast, Houck cites cases supporting that the Patrol Lieutenants are first responders as a matter of law. In addition, the Patrol Lieutenants are entitled to summary judgment on liquidated damages and willfulness.

## II.    Statement of Facts

The issues raised in this Cross-Motion and Response hinge on a full and accurate understanding of the Patrol Lieutenant job position. The Patrol Lieutenants are employed by the County in the East and West Patrol Bureaus as active law enforcement officers. During their shifts, each of the Patrol Lieutenants are required to be in uniform (including wearing their Body Worn Camera ("BWC")), logged into the computer-aided dispatch ("CAD") system and monitoring the police radio, as the Patrol Lieutenants are not simply

working in the office but are required to be ready at a moment's notice to respond to any high-level patrol calls. *See, e.g.,* SOF ¶ 292 (Ex. 6, Jackson 30:8-23, 32:15–34:14, 35:2-20, 40:2-8, 43:3-8 ("uniformed, armed, prepared to be a first responder or respond as backup", logged into CAD and monitoring the radio); Ex. 1, Houck 21:9-22:23, 30:5-23, 31:15-32:14, 96:3-11 (logged in, monitoring radio so "can respond to first responder law enforcement calls as required by the County"); Ex. 15, Cpt. Bailey 54:9-13 ("the lieutenants that all worked under me wore their uniform.  They wore their body armor.  They wore their body worn cameras.  And they were expected to carry the same equipment that a deputy would carry when he was on duty"); Ex. 14, Cpt. Aldorasi 23:7-24:9 (lieutenants' job is not simply an office job – they have to be involved in patrol duties, logged into CAD, monitor radio for activity); Ex. 18, Cpt. Stutsman 34:6-35:3 62:6-10 (required to wear BWC "just like a deputy is", logged in and monitoring the radio)).[1]

Each of the Patrol Lieutenants are expected to provide law enforcement as their primary duty, including being required to respond to all high-level patrol calls and report as first responders in the field for all such calls – including "major incidents" such as armed robberies, homicides, shooting victim incidents, drownings, and school threats. *See, e.g.,* SOF ¶ 293 (Ex. 13, Vance 66:11-67:9 (required to respond to "major incidents" "like, a deputy-involved shooting, deputy-involved accident, if an employee got injured, if a suspect or a member of the public got injured at the hands of the sheriff's office'" and "major incidents like, you know, shooting in a community, an accident where somebody died or has

---

[1] *See also* SOF ¶ 292 (Ex. 14, Cpt. Aldorasi 27:9-14 (wear BWC); Ex. 16, Cpt. Kratzer 25:2-25, 27:12-28:6, 52:2-4 (wears a uniform and BWC so they can respond, logged into CAD and monitoring radio); Ex. 5, Halverson 35:20-36:19 (in uniform); Ex. 17, Cpt. Lee 35:20-36:2, 38:15-39:1, 54:6-17, 66:19-23 (in uniform, with BWC, logged into CAD and monitoring radio in case need to respond); Ex. 4, Freeman 50:16-53:12 (in uniform and required to be logged on during normal shift when doing law enforcement); Ex. 11, Thomas 47:2-51:5 (in uniform, including BWC, logged in and monitoring radio); Ex. 9, Rankin 19:17-25, 21:22-22:12, 90:22-91:3, 104:2-6 (in uniform and expected to be logged in); Ex. 7, Keller 64:18-65:8, 99:7-10, 100:9-101:6 (in uniform, logged into CAD and monitor radio); Ex. 10, Rosenberger 44:10-21, 46:16-25 (logged into CAD); Ex. 5, Halverson 35:20-36:19, 46:3-10 (logged into CAD and monitoring calls for service before driving to work); Ex. 8, Neville 71:1-72:3 (logged into CAD); Ex. 13, Vance 59:1-61:4, 62:7-17 (logged into CAD); Ex. 3, Brice 35:1–37:4, 37:21-39:12 (required to be logged into CAD, monitor radio and be available for calls); Doc. 27-1, Houck Decl. at 10, ¶11-11, ¶16; Doc. 27-2, Halverson Decl. at 3, ¶7 and 4, ¶12 and Sanchez Decl. at 127, ¶12).

the potential to die due to their injuries"); Ex. 15, Cpt. Bailey 43:10-19, 62:6-63:21 ("you would expect a watch commander or a lieutenant to show up on" all newsworthy, unusual or major emergency incidents – such as armed robberies, homicides, shooting victim incidents); Ex. 17, Cpt. Lee 42:9-13, 56:4-57:5 (expected to respond to major incidents, which includes drownings); Ex. 16, Cpt. Kratzer 26:12-19, 45:7-16 (expected to respond to major incidents, as outlined in the MCSO policy)).[2]

And such first responder duties take priority over any administrative tasks Patrol Lieutenants had: "[A]ll the administrative duties come to a screeching halt when preservation of life is foremost.  They will respond, and they will stop what they're doing." SOF ¶ 294 (Ex. 18, Cpt. Stutsman 65:22-66:1); *see also* SOF ¶ 294 (Ex. 18, Cpt. Stutsman 66:20-22 ("that's the preservation of life I mentioned. That is foremost, and then property and then administrative"); Ex. 3, Brice 49:20-50:3, 54:9-16, 57:13-16 ("you're still listening to radio and something kicks out, then you got to unfortunately drop all of that and then go and take that call…the difficulty of patrol, is you have these [administrative] assignments and you are constantly being pulled away from those assignments and you have to come back"; "if you spend all your time doing admin, you are not doing your job, right. Admin stuff is important, but you got to -- we are here for policing"); Ex. 6, Jackson 93:25-94:5, 96:7-17, 96:24-97:5 (as a patrol lieutenant "you are uniformed, armed, listened to the radio, monitoring CAD, so you are ready to respond at all times and expected to respond. So doing an EPA [employee performance evaluation] would take a back burner to first responder duties as -- as they came

---

[2] *See also, e.g.,* SOF ¶ 293 (Ex. 18, Cpt. Stutsman 57:3-16, 59:12-60:15, 66:17-19 (should go out on all Officer Involved Shooting (OIS) calls, "absolutely" should respond to school threat calls); Ex. 2, Acosta 78:8-79:4 (required to go on "serious calls" or "critical incidents", such as shootings, aggravated assault search where people were injured, major accidents, kidnapping, murder, hostage situation, bus accident with lots of kids); Ex. 4, Freeman 27:1-22, 28:4-20, 30:4-24 (function was to respond to significant events, such as major crimes, anything with media, homicide, suicide, serious vehicular accidents, shooting, assaults, "deputy-involved shooting"); Ex. 8, Neville 124:6-125:14 (expected to go to major incidents, any time a "gun gets fired in a district that I'm a commander of.  I'm going to [respond].");  Ex. 9, Rankin 17:2-14 (go to priority calls to service that would need incident command, such as shootings, stabbings, anything where an officer got hurt, questionable deaths) and Rankin 97:11-25 (go to more serious calls, like homicide); Doc. 27-1, Houck Decl. at 10, ¶10; Doc. 27-2, Halverson Decl. at 3, ¶8 and Sanchez Decl. at 126, ¶8).

up.")).[3]    As Houck explained, as a Patrol Lieutenant his job involved "going to calls, monitoring the radio, assisting with the apprehension of bad guys, putting together – helping deputies put together criminal investigations" "being ready" as that accounts for "75 percent of my time. That's what I'm there for. I'm there to respond to calls. I'm there to respond to things that need a command presence."    SOF ¶ 295 (Ex. 1, Houck 192:4-193:12). Significantly, Patrol Lieutenants are subject to reprimand or discipline for failure to respond to such incidents.  *See, e.g.,* SOF ¶ 296 (Ex. 14, Cpt. Aldorasi 24:10-19; Ex. 17, Cpt. Lee 37:1-38:5; Ex. 18, Cpt. Stutsman 35:10-19; Ex. 16, Cpt. Kratzer 26:21-27:10).

Simply stated, the Patrol Lieutenants' primary role is as a law enforcement officer. As Houck explained:

> "The duties that I have as a patrol lieutenant are exactly the same as I had as a patrol sergeant….My primary duty as a patrol lieutenant remains law enforcement, being available to respond to calls, being -- having to show up in uniform, be on the radio, be logged in to the CAD system to be dispatched to calls. I'm not a -- in a management-type role. I'm still in a first responder role….That my primary duty remains law enforcement. That's what – that's what I'm there for."

SOF ¶ 297 (Ex. 1, Houck 19:22-20:11). *See also* SOF ¶ 297 (Ex. 8, Neville 26:11-27:20 (still law enforcement role: "I was responding to calls for service. I was taking calls as a primary. I was writing reports. I was doing a lot of the same jobs that I did as a patrol sergeant when I worked as a sergeant in District II.")).  This understanding of the Patrol Lieutenant's role was shared by the Patrol Lieutenants' Captains as well.  For example, Captain Stutsman explained that he expected his Patrol Lieutenants were actively involved in law enforcement as "we're cops first, always":

> "[M]y lieutenants are uniformed.  They respond.  They are constantly monitoring. They go out when necessary and they are engaged….So my lieutenants are engaged in the field. Yes, they have administrative duties.  Yes, they spend time in the office, but they are available to respond to all calls for service."

---

[3] *See also* SOF ¶ 294 (Ex. 15, Cpt. Bailey 66:11-67:7 (for "big events" or serious calls, the call would take priority over administrative tasks); Ex. 14, Cpt. Aldorasi 27:2-8 (law enforcement is more important than administrative duties); Ex. 17, Cpt. Lee 44:24-45:9 ("managing a major incident definitely is more important than those administrative tasks"); Ex. 16, Cpt. Kratzer 26:21-27:10, 28:20-29:12 (when first responder incident presents itself, it is the priority over administrative tasks); Ex. 9, Rankin 94:21-95:15, 95:20-96:20 ("primary function was to patrol and the needs of patrol and to assist and lead patrol, and then everything was secondary to that"); Doc. 27-1, Houck Decl. at 10, ¶12; Doc. 27-2, Halverson Decl. at 3, ¶6 and Sanchez Decl. at 126, ¶6).

SOF ¶ 298 (Ex. 18, Cpt. Stutsman 58:22-59:4, 33:3-10); *see also* SOF ¶ 298 (Ex. 18, Cpt. Stutsman 36:14-22 ("But the lieutenants, that's their job.  They are to get out there.  They're to make sure that everything is done, so, yes, they will be responding…. [T]hey are uniformed, and I do want them out there hands-on at the scene."), Ex. 18, Cpt. Stutsman 16:13-20 (lieutenants are "first responders")).

## III.    Legal Standard

When parties file cross-motions for summary judgment, the Court considers each motion on its own merits.  *See Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).   Further, the district "court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them."  *Id.* at 1134.[4]  A court may grant summary judgment where "there is no genuine dispute as to any material fact" of a party's prima facie case, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## IV.    The Patrol Lieutenants are First Responders who are Entitled to Overtime.

The County spends most of its Motion focused on the specific duties of the executive and administrative exemptions to overtime, tallying up the amount of time Patrol Lieutenants spend on purportedly exempt tasks in comparison to other non-exempt duties.  The County seizes on old case law focusing its primary duty analysis on how much exempt work is performed, which predates the first responder exception enacted in 2004 that significantly impacted how courts determine if first responders like the Patrol Lieutenants are entitled to overtime.   As discussed more fully below, application of the first responder exception overlaps with analysis of whether the overtime exemptions apply, with courts primarily focusing on whether an employee must respond to certain first responder calls regardless of

---

[4] Where parties file cross motions for summary judgment on the same issue, the court must consider both motions and all the evidence submitted by both parties.  *Fair Hous. Council of Riverside Cnty., Inc.*, 249 F.3d at 1136.  To facilitate the Court's review of the evidence in line with that legal standard, Plaintiff cites to his additional Statement of Facts and Controverting Statement of Facts for the record support of both the issues he is affirmatively moving for summary judgment on and those he is opposing from the County's motion.

1    any other work they may be doing.  When a first responder emergency call takes precedence,
2    courts routinely find that the employee's primary duty is first responder work, regardless of
3    the amount of time they may spend performing exempt versus non-exempt duties.   As
4    discussed more fully below, there is no dispute of fact that the Patrol Lieutenants are first
5    responders and entitled to summary judgment in their favor.[5]

6          **A.**     **The FLSA must be applied in a way that favors employees.**

7          When considering whether the Patrol Lieutenants are entitled to overtime, the Court
8    must conduct its analysis in line with the broad remedial purpose of the FLSA designed to
9    weigh in favor of finding employees are entitled to overtime.  The FLSA is "remedial and
10   humanitarian in purpose," reflecting an intent by Congress to protect broadly the "rights of
11   those who toil."  *Carson v. City of Los Angeles*, 2016 WL 7647681, at *4 (C.D. Cal. Sept.
12   22, 2016)(quoting *Tennessee Coal, Iron & R.R. v. Muscoda Local No. 123*, 321 U.S. 590,
13   597 (1944)).   Consistent with that purpose, courts are to construe the FLSA liberally,
14   "recognizing that broad coverage is essential" to accomplish the statute's goals.  *Id.* (quoting
15   *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985)).  The FLSA's
16   protections of course include overtime pay, which the Patrol Lieutenants are seeking.  29
17   U.S.C. § 207.  There are several exemptions to the requirement to pay employees overtime,
18   including those "white collar" or "highly compensated" exemptions focused on by the
19   County for workers "employed in a bona fide executive, administrative, or professional
20   capacity."  29 U.S.C. § 213(a)(1).  However, FLSA exemptions should be applied "only in
21   instances plainly and unmistakably within the exemptions terms and spirit."  *Carson*, 2016
22   WL 7647681, at *4 (internal citations omitted).

23         **B.**     **The first responder exception negates application of the white collar and
24   highly compensated exemptions.**

           The first responder exception to the overtime exemptions under the FLSA negates
25

26   ―――――――――――――――――――
     [5] Although Plaintiff affirmatively moves for summary judgment on this issue, the analysis
     and evidence must also be considered in response to the County's Motion seeking summary
27   judgment about whether they are exempt as well.  *See* Section III *supra*.  In addition, the first
     responder analysis overlaps with the white collar and highly compensated exemption
28   analysis in Section V below, which is incorporated by this reference to the extent that it
     impacts whether the Patrol Lieutenants are first responders as a matter of law.

application of the executive, administrative, or highly compensated exemptions.  In 2004, the Department of Labor addressed concern that changes in the white collar or highly compensated exemptions could cause first responders to lose their right to overtime pay.  *Carson*, 2016 WL 7647681, at *5.  To address that concern, the Department of Labor promulgated a new regulation, 29 C.F.R. § 541.3, clarifying the scope of the white collar and highly compensated exemptions in their application to first responders.  *Id.*  Subsection (b) is the "first responder" exception to the white collar and highly compensated exemptions raised by the County, and it explicitly provides that those exemptions "do not apply to police officers" and "similar employees, regardless of rank or pay level," who perform certain first responder tasks.  29 C.F.R. § 541.3(b)(1).  The regulation provides that the exemptions do not apply to first responders including police officers because their primary duty is not managerial, administrative, or professional in nature, even if they perform exempt tasks.  29 C.F.R. § 541.3(b)(2)-(4).  Although not in the regulation itself, first responders also do not qualify as exempt under the highly compensated test because their primary duty does not include performance of office or non-manual labor work.  *Cunningham v. Mission Support Alliance, LLC*, 2019 WL 13201913, at *4 (E.D. Wash. July 22, 2019).

**C.     The first responder analysis must consider the practical nature of the job.**

The legal analysis regarding the application of the first responder exception requires courts to take into account the practical nature of being a first responder.  Given the nature of the work, much of a first responder's time and day may be devoted to work that is not necessarily frontline law enforcement, but that does not negate the fact that their primary duty is still first responder in nature.  At least one court within the Ninth Circuit has directly addressed this issue.  In *Cunningham v. Mission Support Alliance, LLC*, fire captains argued that the white collar exemptions did not apply to them because their primary duty was as emergency first responders.  2019 WL 13201913, at *1.  Based on analysis of emergency response data, the court found that the captains spent less than 3% of their time on duty responding to emergency calls.  *Id.* at *2.  The captains also had supervisory duties, initiated requests for repairs and supplies, and created pre-incident plans to help other personnel

respond effectively to emergencies. *Id.* Considering those facts, the court analyzed whether the captains' primary duty warranted application of an exemption from overtime or instead warranted a finding they were first responders entitled to overtime. *Id.* at *4.

The court held that the relative importance of the duties analyzed weighed in favor of finding the captains were first responders entitled to overtime because they "must be prepared to leave the station in response to an emergency call" and such calls "take preference over any other activity." *Id.* at *5. When considering the amount of time the captains spent performing exempt versus nonexempt work, the court emphasized that "[t]ime alone [] is not the sole test." *Id.* Although the captains "spent less than 3% of their time on duty responding to emergency calls," the court found that such a small percentage of first responder work out in the field did not mean that the captains were not first responders as a matter of law. *Id.* In reaching that conclusion, the court acknowledged the reality that "the very nature of emergency response work involves waiting for the next call." *Id.* Despite the small percentage of time spent actually on first responder work in the field, the court held that the captains were first responders entitled to overtime as a matter of law. *Id.* The court dismissed the defendant's argument about time when the captains were the most senior officers present at the station. *Id.* at *6. The court instead focused on the fact that the principal, main, major, or most important duty that the captains performed was emergency response because the captains were required to respond to certain emergency calls that come in regardless of whatever else they might be doing. *Id.* at *6-*7. The court even noted that "[t]he majority of federal courts surveyed that have analyzed the primary duty for similarly ranked first responders[6] since the first responder regulation's enactment have found that the primary duty of the first responder is emergency response." *Id.* at *7.

Similarly, in *Carson*, the court analyzed whether fire department captains were

---

[6] That case involved captains, a seemingly higher rank than the Patrol Lieutenants who are supervised by captains. *See, e.g.,* SOF ¶ 299 (Ex. 14, Cpt. Aldorasi 12:19-13:7 (captains' duties included supervising Patrol Lieutenants); Ex. 15, Cpt. Bailey 32:20-34:4 (captains were responsible for evaluating the Patrol Lieutenants and ensuring they were complying with all County policies and procedures); Doc. 155-4 at Ex. 5 (noting Law Enforcement Lieutenants report to Law Enforcement Captains)).

entitled to overtime because the first responder exception to the white collar and highly compensated exemptions applied. *Carson*, 2016 WL 7647681, at *6. The court held that the captains' "primary duty consists of nonexempt emergency response work because their emergency response duties outweigh any exempt work in terms of relative importance," noting that "responding to emergencies is the single most important part of [their] job." *Id.* at *7. And while the captains are responsible for managing the scene when they are out in the field, the court held that "[t]he first responder regulation specifically states that an individual who directs the work of other employees at an emergency scene will not automatically be transformed into a manager." *Id.* The court also emphasized that first responder work does not necessarily require the work to be performed on the scene, noting that office tasks can also relate to first responder duties. *Id.* at *7-*8. *See also Barrows v. City of Chattanooga*, 944 F.Supp.2d 596, 604-05 (E.D. Tenn. 2013)(holding that although captain's firefighting duties were not the largest percentage of his time, they were the most important duties performed because he was tasked with interrupting whatever other tasks to respond to calls).[7]

**D.    The facts support that the Patrol Lieutenants are first responders as a matter of law.**

Under this proper analysis of the first responder exception, there is no dispute of fact that the Patrol Lieutenants' primary duty is as a first responder. There is overwhelming evidence demonstrating that the Patrol Lieutenants' primary duty is law enforcement and engaging in first responder duties. In particular, as set forth above in Section II, each of the Patrol Lieutenants are required to be in uniform (including BWC), logged into the CAD system and monitoring the radio, as the Patrol Lieutenants are required to be ready at a moment's notice to respond to any calls. *See, e.g.,* SOF ¶ 292 (Ex. 6, Jackson 30:8-23, 32:15–34:14, 35:2-20, 40:2-8, 43:3-8 ("uniformed, armed, prepared to be a first responder or respond as backup"); Ex. 1, Houck 21:9-22:23, 30:5-23, 31:15-32:14, 96:3-11 (logged in,

---

[7] It should be noted that the County cites to the *Barrows* case in its Motion to Decertify (Doc. 152), demonstrating that the County was aware of the law regarding the first responder exception analysis directly on point yet chose not to acknowledge it in its Motion for Summary Judgment.

monitoring radio so "can respond to first responder law enforcement calls as required by the County")). Each of the Patrol Lieutenants are expected to provide law enforcement as their primary and most important duty, including being required to respond to all high-level patrol calls and report as first responders in the field for all such calls. *See, e.g.,* SOF ¶ 293 (Ex. 13, Vance 66:11-67:9 (required to respond to "major incidents" "like, a deputy-involved shooting, deputy-involved accident, if an employee got injured, if a suspect or a member of the public got injured at the hands of the sheriff's office'" and "major incidents like, you know, shooting in a community, an accident where somebody died or has the potential to die due to their injuries")). And such first responder duties took priority over any other tasks Patrol Lieutenants had: "[A]ll the administrative duties come to a screeching halt when preservation of life is foremost. They will respond, and they will stop what they're doing." SOF ¶ 294 (Ex. 18, Cpt. Stutsman 65:22-66:1). As Houck explained, as a Patrol Lieutenant his job involved "going to calls, monitoring the radio, assisting with the apprehension of bad guys," putting together "criminal investigations" and "being ready"; "That's what I'm there for. I'm there to respond to calls. I'm there to respond to things that need a command presence." SOF ¶ 295 (Ex. 1, Houck 192:4-193:12). *See Cunningham*, 2019 WL 13201913, at *5 (noting that time alone on tasks is not the sole test, emphasizing the significance that the employees had to respond to emergency calls regardless of anything else they were working on).[8]

### E. The County misapplies the analysis required to determine if the Patrol Lieutenants are due overtime under the first responder exception.

The County ignores the great weight of authority that analyzes application of the first responder exception discussed above, which makes clear that simply calculating how much time an employee performs non-exempt tasks is insufficient to determine if their primary duty is as a first responder. The County attempts to narrow application of the first responder exception based on how much time the Patrol Lieutenants are "personally engaged in

---

[8] The relationship between the Patrol Lieutenants' salary in comparison to the compensation of the non-exempt sergeants immediately below them in the chain of command also supports that the Patrol Lieutenants are non-exempt first responders. *See* discussion below at Section V(C)(2)(d).

frontline law enforcement," such as when they are actively completing those tasks specifically enumerated in 29 C.F.R. § 541.3(b). Doc. 154 at 23-24. To that end, the County improperly focuses the analysis of whether the first responder exception applies on how much time the Patrol Lieutenants spend actively "patrolling the streets, pulling vehicles over, and performing other low ranking law enforcement activities." Doc. 154 at 27:5-8. This ignores the practical reality of what it means to be a first responder, and courts recognize that of course a first responder cannot always be completing emergency first responder tasks – that is just not the nature of the job of a first responder. As a result, "[t]he main inquiry is determining the principal, main, major or most important duty that the employee performs. . . with the major emphasis on the character of the employee's job as a whole." *Cunningham*, 2019 WL 13201913, at *6 (internal citation omitted). As discussed above, the Patrol Lieutenants' most important duty is emergency response, which is evident from the fact that regardless of the time of day or whatever the Patrol Lieutenants are doing, if a high level emergency call comes in, the Patrol Lieutenants must respond to the call. *See id.*

To support its incorrect analysis, the County relies on legal authority that is either outdated or simply does not support what it is cited for. The County cites to the *Miller* and *Maestas* decisions to support the proposition that what matters is whether the Patrol Lieutenants were in the field exclusively acting as first responders for significant periods of time. In making that argument, the County even goes so far as to argue that the Patrol Lieutenants' work on the scene of an emergency is not first responder work if they are simultaneously conducting management duties as they work alongside their subordinates.[9]

---

[9] The County attempts to discount the significance of the Patrol Lieutenants' first responder work in the field by arguing that plaintiffs do not lose exempt status "merely because he or she performs ordinary work performed by subordinate employees." Doc. 154 at 24. Setting aside the factual reality of first responder work by the Patrol Lieutenants, the cases cited by the County to support this proposition have nothing to do with law enforcement, so the analysis is irrelevant to the first responder exception at issue in this case. *See Wainscoat v. Reynolds Elec. & Engineering Co., Inc.*, 471 F.2d 1157, 1161-62 (9th Cir. 1973)(granting summary judgment regarding application of executive exemption on operations superintendent who performed manual labor, to which the first responder exception did not apply); *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1108-09, 1116-17 (9th Cir. 2001)(addressing whether managers at an RV park were exempt executives, having nothing to do with first responder issues).

However, the cases cited by the County actually acknowledge that exempt tasks, such as managerial tasks, and first responder tasks are typically intertwined.  In that situation, a first responder is completing first responder work when they are on the scene of an emergency response, even if the emergency field work involves management or supervision duties.  *See Miller v. Travis County*, 2018 WL 1004860, at *9 (W.D. Tex. Feb. 21, 2018)(recognizing circumstances when "managing while engaging in frontline law enforcement does not make management their primary duty"); *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 827, 828 (10th Cir. Jan. 4, 2012)("Although the first responder regulation reaffirms the primary duty test, it changes the analysis in a subtle but significant way: It states that first responders are not exempt executives even if they "also direct [ ] the work of other employees in the conduct of an investigation or fire.").[10]

Indeed, given the nature of first responder work, "management-like tasks undertaken in conjunction with, or directly related to, primary first responder duties do not turn a first responder into an exempt executive or administrator."  *Morrison v. County of Fairfax, VA*, 826 F.3d 758, 767 (4th Cir. 2016); *see also Barrows*, 944 Supp.2d at 604 ("the first responder regulation specifically states that an individual who directs the work of other employees at a fire scene will not automatically be transformed into a manager").  In *Morrison*, the court noted the "substantial burden" that employers must meet to show that an employee is not entitled to overtime and then focused its analysis on determining what is "the more important part of the job" to decide if the first responder exception applies, discounting the significance of managerial duties that are performed as part of their first responder tasks in the field.  *Id.* at 769.  The court emphasized that "[w]hatever the precise importance of the Captain's non-firefighting duties – the evaluations, the disciplinary reports, the annual conforming changes to station policies – it is clear that fighting fires is the more important part of the job" because

---

[10] Importantly, these cases do not support summary judgment in favor of the County, having held that there was a dispute of fact regarding the nature of the work performed.  *See Miller*, 2018 WL 1004860, at *6, *10 (finding there was a dispute of fact on the nature of lieutenants' duties and ordering that the jury must decide); *Maestas*, 664 F.3d, at 829-31 (finding there was a dispute of fact about whether captains, lieutenants, and other subordinate officers were exempt from overtime, weighing not just the time spent on duties but their relative importance as well).

"[w]hen an emergency call comes in, it takes priority[.]"  *Id.*  The court even stated that "it would be illogical to give much weight to how much time a Captain devotes to answering emergency calls; that time presumably would vary from year to year, based on how many emergencies arise, without changing the character of the employee's job as a whole.  *Id.* (internal citations omitted).

The County also misleads the Court with its analysis regarding the preamble to the Department of Labor first responder regulation.  The County seems to imply that lieutenants who perform certain enumerated managerial duties are exempt from overtime, claiming that was "set forth by the Department of Labor."  Doc. 154 at 24:14-25:2.  However, the citation that the County relies on is from the preamble to the first responder exception, which summarized the case law that existed in 2004 prior to the enactment of the first responder exception by stating:

> "**Federal courts** have found **high-level** police and fire officials to be exempt executive or administrative employees **only if**, in addition to satisfying the other pertinent requirements, such as directing the work of two or more other full time employees as required for the executive exemption, their **primary duty** is performing managerial tasks such as evaluating personnel performance. . ."

69 Fed. Reg. at 22130 (Apr. 23, 2004) (emphasis added).  The County fails to acknowledge that simply performing managerial tasks is not enough – the Court must also complete its primary duty analysis to determine whether they are in fact managers versus first responders.

This is where the County's analysis goes completely off the rails.  The County uses this 2004 preamble to the first responder exception as authority for the proposition that the primary duty analysis depends on how much exempt work is performed.  That is completely at odds with the language in the preamble itself, recognizing that the Patrol Lieutenants would be exempt "only if" their primary duty is completing the enumerated managerial tasks. *Id.*  Importantly, that analysis requires consideration of the Patrol Lieutenants' job as a whole and focuses on whether the first responder work is the "most important" because it takes precedence over the other duties that they are required to perform.  In fact, the preamble cited by the County itself notes that "[m]ost of the courts facing this issue have held that police officers. . . are not exempt."  *See Barrows*, 944 F.Supp.2d at 603 (quoting 69 Fed.Reg. at

13

22129).

Throughout its analysis of the various exemptions and the first responder exception, the County cites outdated cases that it claims support the proposition that the Patrol Lieutenants are not first responders entitled to overtime, which were decided before the first responder exception even existed.[11]  *See, e.g., Barner v. City of Novata*, 17 F.3d 1257 (9th Cir. 1994); *Anderson v. City of Cleveland*, 90 F.Supp.2d 906, 912 (E.D. Tenn. 2000); *Auer v. Robbins*, 65 F.3d 702, 713 (8th Cir. 1995); *Shockley v. City of Newport News*, 997 F.2d 18, 26 (4th Cir. 1993).  It should be obvious why that obliterates the County's legal analysis, because the first responder exception necessarily impacts whether the Patrol Lieutenants are performing the primary duty of nonexempt work.  In fact, courts recognize that cases decided before the first responder regulation was promulgated "do not reflect the clarification of the primary duty standard provided by that regulation."  *Morrison*, 826 F.3d at 768.[12]

The County's reliance on a 2005 Department of Labor Opinion letter is irrelevant to determining how the first responder regulation analysis must be applied.  Doc. 154 at 2:9-11.  While that Department of Labor Opinion letter acknowledges the first responder exception, it was written in 2005 before many of the cases interpreting the first responder exception were decided and in fact only references *West v. Anne Arundel County*, 137 F.3d, 752 (4th Cir, 1996) in its discussion of the first responder exception, a case that that has been superseded by the first responder regulation itself. *Morrison*, 826 F.3d at 768 (noting that

---

[11] The County also cites Department of Labor regulations outlining what must be proven to support the position that the Patrol Lieutenants are exempt executive or administrative employees.  Doc. 154 at 24-25.  However, the County never addresses the case law on point that analyzes the first responder exception in the context of the exemption regulations cited, which demonstrates that the County's rote matching of certain tasks that Patrol Lieutenants perform with its self-serving interpretation of tasks listed in the exemption regulations misapplies the law.

[12] The County cites the *Anderson*, *Auer*, and *Shockley* decisions to support its general proposition that the Patrol Lieutenants are exempt because they manage a "squad."  Doc. 154 at 14.  The County fails to identify any specific managerial tasks that are completed when discussing whether the Patrol Lieutenants manage a department or squad and relies on this outdated caselaw that fails to properly evaluate their management duties in conjunction with the first responder exception as discussed at length above.  This is similarly true when the County examines each of the elements of the exemptions, such as when they claim that the Patrol Lieutenants direct the work of two or more employees but fail to account for the fact that is done in conjunction with first responder work.  *See, e.g.*, Doc. 154 at 15.

14

reliance on precedent pre-dating the 2004 first responder regulation, including the *West* decision, is "misplaced"). Furthermore, the County's self-serving conclusion that the opinion letter somehow supports that the Patrol Lieutenants are exempt as a matter of law ignores that the opinion was "based exclusively on the facts and circumstances described" by the employer in that specific instance, even noting that that the existence of any other factual background could require a different conclusion. *See* Wage & Hour Division, Dep't of Labor, Opinion Letter dated Oct. 4, 2005, 2005 WL 3308611, at *4.

Finally, the County's factual characterization of the nature of the Patrol Lieutenants' work misrepresents the reality of their jobs. For example, the County attempts to minimize the Patrol Lieutenants' first responder work by calculating the number of times it claims they were the "primary responding unit" on the call. This is completely irrelevant based on the proper analysis of their first responder duties requiring a holistic examination of the job. *See* Section IV(C) *supra*. Furthermore, the County also argues that when the Patrol Lieutenants are required to respond to "serious" or "high priority" calls, they are on the scene for purposes of providing mentoring, feedback, directing operations, or assuming command. However, as discussed at length, the case law makes clear that the Patrol Lieutenants are still first responders when they are performing exempt duties on the scene of an emergency. *See id*.

## V. The Patrol Lieutenants are first responders who are not exempt executives, administrators, or highly compensated employees.

The County acknowledges that the primary issue in the case is whether the Patrol Lieutenants are first responders who are entitled to overtime under the FLSA. Doc. 154 at 4:7-10. Nevertheless, the County spends twenty-two pages of its Motion painstakingly trying to convince the Court that the Patrol Lieutenants qualify for the executive, administrative, and highly compensated exemptions to the FLSA, ignoring that application of the first responder exception would negate application of the exemptions that the County relies on. As discussed at length above, Plaintiff is entitled to summary judgment that the Patrol Lieutenants are first responders entitled to overtime. There is no reason to evaluate the executive, administrative, or highly compensated exemptions because the Patrol

Lieutenants are first responders as a matter of law.  *See* discussion supra at § IV.

### A. The County is not entitled to summary judgment on the executive, administrative, and highly compensated exemptions.

Even if the Court were to consider application of the executive, administrative, and highly compensated exemptions, the County misapplies the legal analysis for determining whether the exemptions apply to first responders like the Patrol Lieutenants.  The County bears the burden of establishing that an exemption applies.  *Peterson v. Navajo County*, 2022 WL 992664, at *3 (D. Ariz. March 31, 2022)(citing *Klem v. Cty. of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000)).  The FLSA exemptions apply only to workers that plainly and unmistakably fit within their terms and spirit.  *Id.*  The criteria in the white-collar exemption regulations are absolute, such that the employer must prove the employee "meets every requirement before the employee will be deprived of protection of the [FLSA]."  *Id.* (quoting *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1125 (9th Cir. 2002)).

As discussed in the preceding Section, the Patrol Lieutenants are nonexempt first responders as a matter of law.  If the Court believes there is a dispute of fact on that issue, that necessarily requires analysis of the specific exemptions addressed in the County's Motion involving executives, administrators, and highly compensated employees.  As will be discussed in this Section, the exemptions analysis requires examination of the first responder exception that has been discussed at length already.  When considering analysis of the white collar exemptions, at minimum, the County's Motion should be denied because there is a dispute of fact regarding whether the Patrol Lieutenants' primary duty is exempt in nature versus first responder in nature.  *See Peterson,* 2022 WL 992664, at *4 (finding analysis of exempt duties versus first responder duties created a dispute of fact for the jury to decide); *Escribano v. Travis County*, 2016 WL 8856918, at *10 (W.D. Tex. Aug. 25, 2016)(holding that there was a factual dispute as to whether exempt managerial duties or non-exempt first responder duties are more important).

### B. County's analysis of the executive, administrative, and highly compensated exemptions misapplies the law.

As discussed above in regard to why summary judgment in favor of Plaintiff is

warranted (*see* Section IV incorporated by this reference), the County's legal analysis improperly ignores the first responder exception, which impacts how the court analyzes whether the Patrol Lieutenants' primary duty is exempt in nature.  In 2004, the Department of Labor proposed changes to the regulations governing the white-collar exemptions that the County relies on, which generated concerns that first responders would become exempt employees and lose their right to overtime.  *See Morrison*, 626 F.3d at 762.  To address that concern, the Department of Labor promulgated the first responder exception to the white-collar exemptions, which was implemented to ensure that law enforcement personnel whose primary duty is first responder work will not be considered exempt from overtime.  *Id.*  The first responder exception states in relevant part:

> (b)(1) The section 13(a)(1) exemptions and the regulations in this part also do not apply to police officers. . . and similar employees, regardless of rank or pay level, who perform work such as. . . rescuing fire, crime or accident victims, preventing or detecting crimes; conducting investigations or inspections for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals, including those on probation or parole; interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; or other similar work.

29 C.F.R. § 541.3.  The regulation also states that such employees do not qualify as exempt executive or administrative employees because their primary duty is not management or related to the general business operations of the employer and even explicitly notes that a police officer whose primary duty is to investigate crimes is not exempt merely because they direct the work of other employees when completing that task.  *Id.*

While it is true that the first responder exception does not supplant the primary duty test, the first responder exception does impact how the primary duty test is analyzed and routinely results in first responders being found entitled to overtime if they are dispatched to emergency calls.  *Morrison*, 826 F.3d at 767.  The broad principle of the first responder exception is that exempt tasks like management "undertaken in conjunction with, or directly related to, primary first responder duties do not turn a first responder into an exempt executive or administrator."  *Id.*  Under the first responder regulation, tasks performed as part of or in furtherance of the employee's first responder duties will not render the employee

exempt from overtime pay requirements. *Id*. at 769.

Furthermore, courts consider an employee's first responder duties when analyzing each of the elements of the primary duty test, which the County neglected to do when arguing that the white-collar exemptions to the FLSA apply. *See Morrison*, 826 F.3d at 769-70 (accounting for the nature of first responder work when evaluating each of the factors of the primary duty test, not simply focusing on the purportedly exempt tasks that the employees perform). The County improperly focuses its analysis of the executive, administrative, and highly compensated exemptions on its own self-serving interpretation of the regulations for the white-collar exemptions from the Department of Labor, ignoring the first responder exception entirely in its analysis of the exemptions. For example, when analyzing whether the Patrol Lieutenants' primary duty was management or administration, the County evaluates how the Department of Labor defines management in 29 C.F.R. § 541.02 and § 541.200(a). Doc. 154 at 6 and 16. When analyzing what the Patrol Lieutenants' "primary duty" was, the County relies only on the general regulation defining what constitutes a primary duty in 29 C.F.R. § 541.700(a). Doc. 154 at 10. And, to the extent that the County cites cases to support its position on the merits of the exemptions, it relies on cases that were decided many years before the first responder exception to the exemptions went into effect. Doc. 154 at 14.

The County's reliance only on the general regulations delineating the executive, administrative, and highly compensated exemptions, in addition to case law that is more than twenty years old that pre-dates the first responder exception enacted in 2004, is completely improper. *Morrison*, 826 F.3d at 768 (finding it problematic to rely on "cases [that] were decided before the first responder regulation was promulgated" because "they do not reflect the clarification of the primary duty standard provided by that regulation"). As discussed at length in this Motion, the law is clear that the first responder exception to the white-collar overtime exemptions significantly impacts the analysis of whether employees like the Patrol Lieutenants are exempt. The County completely fails to address the first responder exception in its analysis of the application of the exemptions, misapplying the legal standard regarding

1   whether first responders are exempt from overtime following the enactment of that regulation

2   in 2004.  *See* discussion *supra*.

3       **C.    The Patrol Lieutenants are not exempt executives or administrators.**

4           **1.    The Patrol Lieutenants' primary duty is first responder work.**

5           For the County to prove that the Patrol Lieutenants are exempt executives, it must

6   show that their primary duty is management, and tasks performed in furtherance of first

7   responder duties will not render them exempt.  *Morrison*, 826 F.3d at 769.  For the County

8   to prove that the Patrol Lieutenants are exempt administrators, it must show that their

9   primary duty is the performance of office or non-manual work directly related to

10  management or general business operations, and tasks performed in furtherance of first

11  responder duties will not render them exempt.  *Id*.  Whatever the precise importance of the

12  Patrol Lieutenants' duties that are exempt in nature, it is clear that acting as a first responder

13  is the most important part of being a Patrol Lieutenant.   The undisputed evidence

14  demonstrates that Patrol Lieutenants must drop everything to take a high level emergency

15  call no matter what else they are working on.  *See, e.g.,* SOF ¶ 294 (Ex. 18, Cpt. Stutsman

16  65:22-66:1 ("[A]ll the administrative duties come to a screeching halt when preservation of

17  life is foremost.  They will respond, and they will stop what they're doing."); Ex. 3, Brice

18  49:20-50:3, 54:9-16, 57:13-16 ("you're still listening to radio and something kicks out, then

19  you got to unfortunately drop all of that and then go and take that call"; "if you spend all

20  your time doing admin, you are not doing your job, right. Admin stuff is important, but you

21  got to -- we are here for policing"); Ex. 6, Jackson 93:25-94:5, 96:7-17, 96:24-97:5 ("you

22  are ready to respond at all times and expected to respond. So doing an EPA [employee

23  performance evaluation] would take a back burner to first responder duties as -- as they came

24  up.")).[13]  Under these circumstances, the Patrol Lieutenants' primary duty is as a first

---

25  [13] *See also* SOF ¶ 294 (Ex. 18, Cpt. Stutsman 66:20-22 ("that's the preservation of life I
26  mentioned. That is foremost, and then property and then administrative"); Ex. 15, Cpt. Bailey
    66:11-67:7 (for "big events" or serious calls, the call would take priority over administrative
27  tasks); Ex. 14, Cpt. Aldorasi 27:2-8 (law enforcement is more important than administrative
    duties); Ex. 17, Cpt. Lee 44:24-45:9 ("managing a major incident definitely is more
28  important than those administrative tasks"); Ex. 16, Cpt. Kratzer 26:21-27:10, 28:20-29:12

responder and they are entitled to overtime. *See Cunningham*, 2019 WL 13201913, at *8 (despite all the managerial and administrative duties that captains performed, their primary duty was first response because responding to an emergency takes precedence over all the other duties).

### a. The County's reliance on the job description or consultant report is misplaced.

Ignoring that reality, the County begins its analysis by arguing that the Patrol Lieutenants' job description and an outside consultant report support that "Incident Management" and "Supervision" are "some of the most important and commonly performed tasks." Doc. 154 at 7. To the extent that the County places weight on the Patrol Lieutenants' job description or the Fields report from an outside consultant purportedly summarizing their general job duties, this is not the appropriate focus of the analysis because "the determination of whether an employee is exempt is an inquiry that is based on the particular facts of his employment and not general descriptions." *Morrison*, 826 F.3d at FN 4 (quoting *Ale v. Tenn. Valley Auth.*, 259 F.3d 680, 689 (6th Cir. 2001)(employer job descriptions and employee resumes too general and vague to support a finding that "what [the] employee actually does on a day-to-day basis" is exempt under the executive or administrative exemptions)). The job description and Fields report are framed at a high level of generality and "thus do not add appreciably to or call into question the more specific evidentiary submissions of the parties" showing how the Patrol Lieutenants actually perform their jobs. *See Morrison*, 826 F.3d at FN 4. In fact, senior Human Resources employees from the County agree that how the Patrol Lieutenants *actually* perform their jobs is what matters, not the job descriptions. SOF ¶ 300 (Ex. 19, Ellison 50:19-51:13; Ex. 20, Erskine 36:4-24).

The County also provides little explanation about which parts of the job description or Fields report provide any real support for finding that the Patrol Lieutenants are exempt from overtime. The County simply states that the Fields report and job description include

---

(when first responder incident presents itself, it is the priority over administrative tasks); Ex. 9, Rankin 94:21-95:15, 95:20-96:20 ("primary function was to patrol and the needs of patrol and to assist and lead patrol, and then everything was secondary to that"); Doc. 27-1, Houck Decl. at 10, ¶12; Doc. 27-2, Halverson Decl. at 3, ¶6 and Sanchez Decl. at 126, ¶6).

"Supervision," "Career and Professional Development," and "Community Policing, and Administration." Doc. 154 at FN 5. The County then summarily claims that the task clusters for the Patrol Lieutenants excluded "Patrol Duties" and "Criminal Investigations" due to the Fields consultant's assessment of the importance of those roles. *Id.* Other than these general references to headings and "task clusters," the County never cites to any details regarding how Patrol Lieutenants perform their job that are written into the documents it attempts to rely on.

In fact, when you look beyond the County's superficial reliance on the headings in the job description, it becomes clear that the Patrol Lieutenants' duties are not what the County would lead this Court to believe. For example, under the heading "Incident Management," the job description indicates that the Patrol Lieutenants "manage[] and report[] to emergency incident scenes that require an increase in command presence." Doc. 155-4 at Ex. 5. The job description also indicates that it "is not an all-inclusive list of all job duties that may be required," so the County's narrow focus on its importance is greatly diminished. *Id.* Senior Human Resources personnel also agree that the job description does not contain all the duties that the Patrol Lieutenants perform. SOF ¶ 301 (Ex. 22, Grennan 29:17-21). And, importantly, the County completely ignores aspects of the job description supporting that the Patrol Lieutenants are first responders, such as their classification as "Law Enforcement." Doc. 155-4 at Ex. 5. In addition, the job description indicates that the Patrol Lieutenants must be certified by the State of Arizona as Peace Officers, must have the ability to maintain composure in stressful situations that require emergency action, indicates that they may face dangerous, hostile, and at times life threatening conditions, and must have the ability to perform sprints, jumping and vaulting tasks, and other physical acts commensurate with law enforcement activity in the field. *Id.*

Similarly, the Fields report lists first responder duties that the Patrol Lieutenants perform, including for example interviewing and interrogating suspects, interviewing victims and witnesses at crime scenes, and initiating traffic stops to ensure public safety. SOF ¶ 302 (Ex. 22, Grennan 31:12-34:25; 39:14-40:24; Docs. 155-2, 155-3 and 155-11 at

21

Ex. 4).  The County's contention that these patrol duties were simply left out of the job description based on the consultant's assessment of their importance does not mean the patrol duties are not performed by the Patrol Lieutenants.  Key County human resources personnel testified that the Fields report delineates numerous first responder tasks that the Patrol Lieutenants perform.  SOF ¶ 303 (Ex. 21, Farrow 109:6-110:20; 111:14-115:9; Ex. 22, Grennan 38:23-40:23).

When examining the extensive evidence in the record regarding how the Patrol Lieutenants perform their jobs rather than just generalized documentation, it is clear that they are not exempt employees and instead are law enforcement officers performing non-exempt first responder duties.  For example, Patrol Lieutenants are expected to respond to high level calls, such as such as armed robberies, homicides, shooting victim incidents, drownings, school threats.  *See* Section IV(D) and V(C)(1), *supra*.  And at the calls the Patrol Lieutenants would routinely be involved in active law enforcement duties.  *See, e.g.,* SOF ¶¶ 294, 305 (Ex. 6, Jackson 93:25-94:5, 96:7-17, 96:24-97:5 (lieutenants were "absolutely" first responders as they were "expected in their role to respond to an emergency incident and [ ] administer lifesaving efforts in whatever capacity that may be in, so you risk life and limb to save that of another"); Ex. 9, Rankin 94:21-95:15, 95:20-96:20 ("primary function was to patrol and the needs of patrol and to assist and lead patrol, and then everything was secondary to that"; includes "directing work" as well as "going to the important calls yourself to manage things when they are of high priority"); Ex. 15, Cpt. Bailey 45:1-5, 54:19-55:7, 56:20-57:3 ("primary function" is to "protect the public", "prevent crime" and "oversee and manage the assets" that are involved in first responder duties and, in doing so, they are also engaged as a first responder when necessary)).

### b.    The County fails to properly consider "management" duties in light of first responder exception

The County's misapplication of the exemption analysis following enactment of the first responder exception is especially clear in its analysis of whether the Patrol Lieutenants exercise discretion on matters of significance.  The County is convinced that the Patrol

Lieutenants are exempt because when they are required to respond to major incidents, the County claims that they take charge of the incident until it is resolved. Doc. 154 at 20. Similarly, during the limited times when a Patrol Lieutenant was covering as a Watch Commander at night, the County claims that they would take command of the scene on calls they were required to respond to. *Id*. The County fails to apprehend the interplay between the first responder exception to overtime and the exemptions analysis necessary to account for the nature of work when an employee is a first responder. The case law is clear that management-like tasks undertaken in conjunction with or directly related to first responder duties do not turn a first responder into an exempt executive or administrator. *See Barrows*, 944 F.Supp.2d at 603 (relying on *Mullins* and holding that "management and supervisory activities performed by the categories of employees listed in § 541.3(b) ... undertaken as a part of the employees' primary field law enforcement duties" are non-exempt).

As a factual matter, the County misrepresents what occurs in this situation as the Patrol Lieutenants ultimately must run decision-making by their Captains and/or Chiefs (in particular major incidents) and update captains and chief about status of all calls they are monitoring. SOF ¶ 304 (Ex. 1, Houck 115:13-116:7; Ex. 11, Thomas 20:2-21:2, 24:16-21; Ex. 8, Neville 126:2-128:8). And, Patrol Lieutenants are responsible for "incident management" of high-level calls which is not simply supervision and management but involves being actively engaged in law enforcement duties. *See* SOF ¶ 305 (Ex. 15, Cpt. Bailey 26:23-27:17 (when "running an incident" – such as a barricade, a warrant service, an aggravated assault – "the lieutenants are the ones that pretty much go in and they become the incident manager for that event…So are they putting hands on a suspect and putting handcuffs on a suspect? It happens occasionally. But for the most part, they're directing the law enforcement operation at the time of the incident."); Ex. 18, Cpt. Stutsman 22:5-23:18 and Ex. 16, Cpt. Kratzer 20:13-21:3, 21:15-22:13 (incident management occurs in the field and "absolutely" involves law enforcement duties); Ex. 14, Cpt. Aldorasi 16:14-18:4 (incident management routinely includes "any sort of major incident that might occur in the field: maybe a death, a fatal car accident, a homicide that occurs in the streets, you know, in

23

our community, hit-and-run" and the lieutenants involved are engaged in first responder duties); Ex. 17, Cpt. Lee 26:3-27:1, 39:19-23, 41:4-17 ("Lieutenants manage bigger incidents where there needs to be additional resources requested, interagency communication, command posts"; management of these types of large incidents are "a first responder activity"); Ex. 8, Neville 126:2-128:8 (duties on scene include "coordinating" the command and control center, as well as in one example, "responding with the [deputies and sergeants]" to rescue and recover flood victims and control looting); Ex. 3, Brice 118:6-119:13, 122:6-21 (primary duty is controlling the scene and do what needs to be done, engage in active patrolling to prevent crime)).  All such duties involve the Patrol Lieutenants engaging in non-exempt, first responder duties.  As Lieutenant Halverson explained:

> *Q.* Earlier you indicated that you are a first responder. Do you remember that testimony?
> *A.* Yes.
> *Q.* What exactly do you mean by that? Do you mean that you are the one actually making arrests and doing investigations, or is that a reference to your supervising, overseeing, giving feedback to your sergeants and your deputies who are preforming those duties?
> *A.* **They are all first responder responsibilities.** I have actually been the one to go out and take the calls for service and clear them or write a report. I have been the one to actually go and make the arrest. I have also been the one that does the very same job as the sergeant or a senior deputy in helping them make the decisions and process the scene, whether it is being there or do it telephonically.

SOF ¶ 306 (Ex. 5, Halverson 86:10-25); *see also* SOF ¶ 306 (Ex. 5, Halverson 93:10-23, 94:11-15 (even if the non-primary responder, he would be "directing that call, analyzing evidence, making the decisions on probable cause, ensuring that the deputy processes it the correct way")).

### c.    The County mischaracterizes testimony to support their exemption argument.

The County also relies on testimony from the Patrol Lieutenants from when they were asked at their depositions to draw a legal conclusion regarding what their "primary duty" was as a Patrol Lieutenant. Doc. 154 at 11-12.  The Patrol Lieutenants did their best to testify about their jobs, including describing some tasks that they perform that may be managerial in nature that the County now seizes on in its Motion.  However, the County's effort to cherry-pick certain lines of questioning misrepresents the character of the Patrol Lieutenants'

job as a whole.  For example, in addition to describing his position as providing guidance and ensuring deputies followed policy, Acosta also testified that in District 1, during the day he was "mostly going to patrols, going to actual calls for service," and the night shift was "absolutely more focused on the patrol calls."  Plt's CSOF ¶ 283 (Ex. 2, Acosta 77:7-79:12, 131:3-9).  Houck testified that he did not just need to be "available" to go on calls but that his duties included "having to show up in uniform, be on the radio, be logged in to the CAD system to be dispatched to calls. I'm not a -- in a management-type role. I'm still in a first responder role….[M]y primary duty remains law enforcement.  That's what – that's what I'm there for." Plt's CSOF ¶ 284 (Ex. 1, Houck 19:22-20:11; *see also* Ex. 1, Houck 192:4-193:12).[14]  In addition to "command and control" duties, Neville testified that "primarily night shift patrol commander but also day shift, I was responding to calls for service. I was taking calls as a primary. I was writing reports. I was doing a lot of the same jobs that I did as a patrol sergeant when I worked as a sergeant in District II….Certainly there is an administrative role to being a lieutenant to a captain, but there is also a first responder aspect to it where you are going out on those scenes;" "first responder duties" included "responding to major incidents, traffic accidents, emergency calls for service." Plt's CSOF ¶ 287 (Ex. 8, Neville 26:11-27:20).  He would try and "get my admin stuff knocked out in the first two to three hours of my shift and then spend the rest of the time out there, the majority of the time I tried to be out in the field. If there was a major incident, if there was a shooting, I was going. If there was an armed robbery, I was going; I was responding in person." Plt's CSOF ¶ 287 (Ex. 8, Neville 141:16-23). And, the County ignores specific testimony about what patrol duties should be included on the job description.  *See, e.g.,* Plt's CSOF ¶¶ 285-286 (Ex. 7, Keller 103:12-15, 104:13-25 ("My duties at first and foremost is being a law enforcement officer," and job description should include those duties); Ex. 11, Thomas

---

[14] The County's claim that "[Houck] agreed that it is not the primary duty of a Patrol Lieutenant to *actually* 'respond to calls for service'" (Doc. 154 at 11:17-19 (emphasis original)) ignores that the context of the testimony was in comparison to deputies who are required to "take all the calls that come in from dispatch," including calls that do not require a Patrol Lieutenant because they are low level crimes.  Plt's CSOF ¶ 284 (Ex. 1, Houck 234:1-25).

68:19-69:5, 70:5-13 ("still a law enforcement officer" so job description should include "respond to calls for service, make arrests upon probable cause" and "ensure public safety")). Considering the critical fact that the Patrol Lieutenants have to drop anything that they are doing to respond to an emergency call, there is no question that their primary duty is first responder work. *See* discussion, *supra*, at Section IV(D).

### 2.    The County's legal and factual analysis characterizing the Patrol Lieutenants' work is incorrect.

#### a.    Amount of time on exempt vs non-exempt duties

The County makes various flawed arguments related to how it characterizes the amount of time that the Patrol Lieutenants perform exempt works versus first responder work. First, the County argues that the Patrol Lieutenants are exempt from overtime based on the amount of time that the Patrol Lieutenants spend actively engaged in law enforcement tasks like rescuing a victim or detecting a crime. Doc. 154 at 9-10. Setting aside the factual inaccuracy of the County's position, the County's focus on the amount of time that the Patrol Lieutenants spend out in the field is legally improper. As the court held in *Morrison*, it is common that a first responder would not spend much of their time completing first responder duties in the field. *Morrison*, 826 F.3d at 769. The nature of this type of first responder emergency work is generally to wait, so it would be "illogical" to give much consideration to the amount of time a first responder devotes to work in the field related to emergency calls. *Id.* at 770. "That time presumably would vary from year to year, based on how many emergencies arise, without changing the character of the employee's job as a whole." *Id.* (internal citation omitted).

The County also improperly focuses its analysis on percentage estimates about the amount of time Patrol Lieutenants spend performing exempt duties versus on patrol. Doc. 154 at 12-13. However, the County's narrow focus on the amount of time performing exempt versus non-exempt tasks misapplies the analysis required for determining whether first responders like Patrol Lieutenants are exempt from overtime. The law is clear that "[p]rimary duty does not mean the most time consuming duty; it instead connotes the

'principal' or 'chief' – meaning the most important duty performed by the employee." *Barrows*, 944 F.Supp.2d at 601 (internal citations omitted); *see also Cunningham*, 2019 WL 13201913, at *5 (holding that captains were exempt from overtime even though they only spent 3% of their time on duty responding to emergency calls).

Furthermore, the County's assumptions about the amount of work Patrol Lieutenants conduct in the field versus in the office similarly misapprehends the law related to first responders and overtime.  For example, the County calculates what percentage of days Houck spent performing first responder tasks, arriving at an estimate of 25%.  Doc. 154 at 10.  In arriving at that percentage, the County attempted to calculate the amount of time Houck was directly participating in a first responder task in the field like rescuing a victim, detecting a crime, or interrogating a witness.  Doc. 154 at 9-10.  Setting aside the fact that first responder tasks are not necessarily limited to work in the field like those tasks identified by the County, it is also illogical to assume that the remaining 75% of time that Houck was working was therefore exempt work.  The County conducted a similar analysis regarding other Patrol Lieutenants, calculating a percentage of time they are in the field versus in the office under the presumption that time in the office necessarily constitutes exempt work. Doc. 154 at 17-19.

The County's analysis is wrong.  It is not proper to assume that time in the field versus time in the office are inversely related with respect to the characterization of the work that the Patrol Lieutenants are doing, meaning that any time not on the scene of a crime means that employee is engaged in an exempt managerial task.  *Morrison*, 826 F.3d at 770.  The County's focus on the amount of time working as a first responder in the field versus in the office also misapprehends the nature of their work and thus their primary duty.  The Patrol Lieutenants, just like any first responder, may have the primary duty of first responder even if significant time is spent performing tasks that have little or nothing to do with law enforcement work in the field.  *See Barrows*, 944 F.Supp.2d at 604 ("The fact that Plaintiff's direct firefighting duties did not constitute the largest percentage of his time does not detract in any way from the fact that Plaintiff's primary duty was as a firefighter").

Even if the Court were to accept the percentages that the County relies on, they actually support that the Patrol Lieutenants are first responders as a matter of law. Although not very clear, the County represents that that Patrol Lieutenants spend approximately between 10% and 50% of their time in the field working as a first responder. Doc. 154 at 17-19. Setting aside the fact that the County arrives at these percentages by accounting for every minute at the office as non-exempt work, these percentages significantly skewed in favor of the County still demonstrate the extensive first responder work that the Patrol Lieutenants do even when focused entirely on duties out in the field. *Cunningham*, 2019 WL 13201913, at *1 (holding that captains who spent 3% of their job on first responder calls were first responders entitled to overtime).

### b.    Free from Supervision/Exercise of Discretion

The County argues that the Patrol Lieutenants are free from supervision because of limited periods of time when they were serving as "acting commander" or "Watch Commander." Doc. 154 at 13. In these instances, the Patrol Lieutenants ultimately must run decision-making by their Captains and/or Chiefs (in particular major incidents) and update captains and chief about status of all calls they are monitoring. SOF ¶ 304 (Ex. 1, Houck 115:13-116:7; Ex. 11, Thomas 20:2-21:2, 24:16-21); *see also* SOF ¶ 304 (Ex. 8, Neville 126:2-128:8 (as a watch commander, he was "scene commander" but was still "getting my orders from my captain")). This situation cannot possibly turn Patrol Lieutenants into exempt managers simply because they had temporary periods of time with less limitations on their discretion than they ordinarily would. Like the fire captains in *Morrison*, the Patrol Lieutenants are still in contact with their superiors during this time they are acting captains or Watch Commanders, which diminishes any supervisory role that the County claims they may temporarily have had. *See* 826 F.3d at 771 (noting that the captains are not relatively free from supervision even during periods when their superiors are not at the station because they still have telephone and email contact with them).

The Patrol Lieutenants also have little freedom in deciding how to perform their jobs, which weighs in favor of them being nonexempt from overtime. For example, the Captains

– not the Patrol Lieutenants – had final decision-making power in terms of district decisions. *See, e.g.,* SOF ¶ 307 (Ex. 15, Cpt. Bailey 24:16-25:1 ("I would let the lieutenants make their decisions.  But if it was a decision that I thought maybe was not the best interest of the office or the individual, I would overrule them.") and 33:3-34:4, 59:12-60:12 (Captains reviewed lieutenants on all tasks they performed to ensure they followed all the County policies and tracked the lieutenants consistently throughout day when logged onto CAD); Ex. 8, Neville 25:20-26:1 (as lieutenant he doesn't have "the kind of command latitude to be able to make day-to-day decisions that shape the landscape of this agency by personnel or policy", decisions go through "his bosses"); Ex. 1, Houck 15:6-12 (no authority to make important decisions); Doc. 27-1, Houck Decl. at 10, ¶14; Doc. 27-2, Halverson Decl. at 4, ¶10 and Sanchez Decl. at 126, ¶10).  As Lieutenant Jackson explained, the job description says "The Law Enforcement Lieutenant administers, plans, organizes and directs the operations of a district," [but] that's not true. That would be the captain's job. The law enforcement lieutenant supports the captain in that -- in that mission."  SOF ¶ 308 (Ex. 6, Jackson 66:23-67:9).  And, even when they may be the highest ranking official on duty such as when they are serving a period as night commander or an acting captain, the Patrol Lieutenants ultimately must run decision-making by their Captains and/or Chief.  SOF ¶ 304 (Ex. 1, Houck 115:13-116:7 (after night shift, had to update captains and chief about status of all calls); Ex. 11, Thomas 20:2-21:2, 24:16-21 (when acting captain, may still have contact with captain if any major issues came up); Ex. 8, Neville 126:2-128:8 (as a watch commander, he was "scene commander" but was still "getting my orders from my captain who, at the time, is asleep in his bed")).  This supports that the Patrol Lieutenants are first responders.  *See Morrison*, 826 F.3d at 771 (noting that the captains are not relatively free from supervision even during periods when their superiors are not at the station because they still have telephone and email contact with them).

Further, the Patrol Lieutenants "supervise by policy" – *i.e.*, enforce the County's policies – and have no discretion to deviate from the County's policies that they have no role in setting.  SOF ¶ 309 (Ex. 7, Keller 91:10-19 ("There is no discretion from a captain to

lieutenant. The way we're told how we supervise is by policy. So it's all the same.")).  For

example, Patrol Lieutenants do not create paid sick time policies for their subordinates but

simply convey and follow the County's established paid sick time policy.  *See, e.g.,* SOF ¶

301 (Ex. 11, Thomas 75:21-76:4, Ex. 8, Neville 93:7-18, Ex. 9, Rankin 36:24-37:6, Ex. 4,

Freeman 96:23-97:8).  The Patrol Lieutenants also do not have final or full authority to: **(1)**

**create department policies** (*see, e.g.,* Ex. 8, Neville 26:6-10 (would have to go through

policy review process if didn't agree with policy); Ex. 9, Rankin 48:17-52:10 (updated

operations manual but really no discretion; specifically told what to do by captain)); **(2)**

**make final scheduling decisions** (*see, e.g.,* Ex. 1, Houck 72:12-14, 75:8-76:3 (need

captain's permission for scheduling); Ex. 4, Freeman 95:17-25 (did not make scheduling

decisions); Ex. 11, Thomas 88:14-89:15 (no authority to permanently adjust someone's

schedule or change squad, requires "captain's approval"); Ex. 6, Jackson 45:21-46:10 (made

recommendations but not accepted); Ex. 13, Vance 104:12-20 (could only temporarily

change schedules)); **(3) discipline sergeants or deputies** (*see, e.g.,* Ex. 1, Houck 15:6-12,

209:21-210:10, 211:20-212:7 (no authority to issue discipline); Ex. 8, Neville 26:2-5

(decision to place on admin leave would have to go through executive chief level); Ex. 3,

Brice 107:9-16 (not permitted to make recommendations regarding discipline); Ex. 7, Keller

54:6-20 (not permitted to discipline subordinates)); **(4) hire or fire employees** (*see, e.g.,* Ex.

15, Cpt. Bailey 25:7-16 (lieutenants "had no say in hiring or firing or even assignments");

Ex. 18, Cpt. Stutsman 28:19-29:9 (even as a Captain, can be involved in the process but does

not have discretion to hire or fire – all goes through HR); Ex. 14, Cpt. Aldorasi 20:12-21:1,

22:6-12 (lieutenants and even captains do not have authority – all goes through HR;

lieutenants may have "advisory' role on staffing issues but they "do not have the last say");

Ex. 2, Acosta 119:15-123:10 (involved in making recommendations but "didn't make the

final say" as that would go up to captain and chief); Ex. 17, Cpt. Lee 32:4-19, 33:4-19; Ex.

16, Cpt. Kratzer 23:10-24:25, Ex. 1, Houck 15:6-12, 209:16-210:10, 211:20-212:2; and Ex.

9, Rankin 70:8-14 (lieutenants and even captains involved in process but HR makes

decisions); Ex. 4, Freeman 98:10-99:8 and Ex. 8, Neville 98:10-23 (involved in promotional

panel or interviewing but didn't make final determination); Ex. 6, Jackson 57:6-10, Ex. 3, Brice 107:9-16 and Ex. 7, Keller 53:24-54:5 (not involved in hiring/firing); Doc. 27-1, Houck Decl. at 10, ¶15; Doc. 27-2, Halverson Decl. at 4, ¶11 and Sanchez Decl. at 127, ¶11); or **(5) make purchase/budgeting decisions** (*see, e.g.,* Ex. 1, Houck 222:10-18 (never heard of lieutenants doing budgeting); Ex. 8, Neville 142:20-143:4 (filled out a purchase order but numerous higher command signatures required to finalize)). *See* SOF ¶¶ 311-315.

### c.    Management duties

As set forth above, the County fails to properly account for the law providing that management-like tasks undertaken in conjunction with or directly related to first responder duties do not turn a first responder into an exempt executive or administrator. *See Barrows*, 944 F.Supp.2d at 603 (relying on *Mullins* and holding that "management and supervisory activities performed by the categories of employees listed in § 541.3(b) ... undertaken as a part of the employees' primary field law enforcement duties" are non-exempt). *See* Section IV, above.

Further, even when considering the management duties, the County mischaracterizes the Patrol Lieutenants' work. For example, ignoring the evidence in the record, the County provides a list of tasks that it claims demonstrates that the Patrol Lieutenants regularly and customarily performed a "wide variety" of managerial duties. Doc. 154 at 7-9. Many of the tasks – such as "taking command of significant incidents until they are resolved" – do not involve simply "managerial tasks," but law enforcement tasks as well. Doc. 154 at 8:16-20. *See, e.g.,* SOF ¶ 316 (Ex. 18, Cpt. Stutsman 22:5-23:18; Ex. 16, Cpt. Kratzer 20:13-21:3, 21:15-22:13; Ex. 14, Cpt. Aldorasi 16:14-18:4; Ex. 17, Cpt. Lee 26:3-27:1, 39:19-23, 41:4-17; Ex. 8, Neville 126:2-128:8; Ex. 3, Brice 118:6-119:13, 122:6-21). And, attempting to make it appear the Patrol Lieutenant's managerial duties were more significant, the County resorted to cherry-picking the Patrol Lieutenants' testimony. For example, the County stated Houck testified that:

- he "put procedures in place regarding call outs", **BUT** Houck also testified that really what that entailed was simply having the sergeants and deputies follow the County's

sick leave and vacation policies (Ex. 1, Houck 208:10-209:8)

- "had authority to file complaints about employees with internal affairs", **<u>BUT</u>** Houck also testified that "[a]nybody in the sheriff's office or outside the sheriff's office can file complaints," including third parties and anonymously, and that he was "forbidden by policy to issue discipline" and could only "enter a complaint in BlueTeam and sen[d] it to PSB to investigate and discipline" (Ex. 1, Houck 212:3-11, 214:4-215:1)

- "conducted informalized training", **<u>BUT</u>** Houck also testified that it simply consisted of "briefing my squad" on how to handle certain calls or fill out certain forms or going over how a call went and only happened maybe "six, seven times a year" (Ex. 1, Houck 220:10-221:10)

*See* SOF ¶ 317. Finally, Houck testified that he only "5 to 10 percent" of his time was spent on management duties. *See* SOF ¶ 318 (Ex. 1, Houck 191:12-15). Similar cherry-picking occurred as to the other Patrol Lieutenants' testimony. *See* Plt's CSOF at ¶¶ 217-220.

### d.  Relationship of Salary

The County also claims *without any factual support* that the Patrol Lieutenants received a 10% pay raise following their promotion from sergeant. Even if the Patrol Lieutenants are assigned a higher pay grade than the non-exempt sergeants below them, the sergeants make more than the Patrol Lieutenants when factoring in their overtime, which even results in Patrol Lieutenants not wanting to be promoted above sergeant. *See, e.g.,* SOF ¶ 319 (Ex. 4, Freeman 131:19-132:1 (had to work a lot of off duty work to make up for decrease in pay following promotion to Patrol Lieutenant)); *see also* SOF ¶¶ 89, 100, 257 (reflecting that Patrol Lieutenants' total compensation was less the year following their promotion from sergeant to lieutenant). This weighs in favor of finding the Patrol Lieutenants are non-exempt as well. *See Morrison*, 826 F.3d at 771-72 (in finding that captains were non-exempt employees, the court emphasized that multiple captains testified that they waited to ask for promotions because being promoted would reduce their total take-home pay since the non-exempt employees just below them made overtime).

**D.    The Patrol Lieutenants are not exempt under the highly compensated exemption.**

As a preliminary matter, the County concedes that it only met the threshold salary requirement for the highly compensated exemption for a small number of Opt In Plaintiffs and for limited periods of time.  Doc. 154 at 21:23-7.  For all other periods in which the Patrol Lieutenants who are part of the collective worked during the relevant time period, they did not satisfy the salary threshold requirement.  To the extent that the Patrol Lieutenants did not satisfy the salary threshold, they cannot be exempt under the highly compensated exemption.  29 C.F.R. § 541.601(a).

Regardless of their salaries, the Patrol Lieutenants are not exempt under the highly compensated exemption because their primary duty is law enforcement, not office or non-manual work.  The highly compensated employee exemption makes explicit that it "applies only to employees whose primary duty includes performance of office or non-manual work." 29 C.F.R. § 541.601(d).  Because the Patrol Lieutenants' primary duty is law enforcement, the Patrol Lieutenants do not fall within the highly compensated employee exemption. *Morrison*, 826 F.3d at FN 11 ("Because the County has not shown that the Captains' primary duty is anything other than firefighting and emergency aid, the County also cannot show that the Captains fall within the highly compensated employee exemption."); *see also Carson*, 2016 WL 7647681, at *8 (concluding that highly compensated exemption does not apply because the plaintiff's primary duty involves emergency response and not office work or non-manual work).  The Department of Labor also stated in the preamble to the first responder exception that police officers cannot qualify as exempt under the highly compensated exemption, because it "applies only to employees whose primary duty includes office or non-manual work."  Department of Labor Preamble to First Responder Regulation, 69 FR 22122-01, 2004 WL 865626, at *22129-130.  This is true even when the employee spends only a small portion of their time conducting first responder work in the field, because the primary duty can still be as a first responder when the first responder duties take priority over all the other work that they do.  *See Cunningham*, 2019 WL 13201913, at *8.  Thus, the

County's claim that the Patrol Lieutenants are exempt highly compensated employees based on job duties that they may or may not perform relating to managerial or administrative work is completely misplaced. The County focuses its analysis on 29 C.F.R. § 541.601(c) of the regulation, ignoring that the Patrol Lieutenants' primary duty not being office or non-manual work negates the application of the exemption entirely under 29 C.F.R. § 541.601(d).

**VI.    Trowbridge is properly part of the collective.**

Lieutenant Trowbridge worked within Patrol Bureau West during the relevant time period, which is January 11, 2020 through the present. SOF ¶ 321. Trowbridge filed his Consent Form to opt in to the case on February 1, 2023. Doc. 16. As such, he is entitled to overtime he earned working with Patrol Bureau East or West from February 1, 2020 to the present. 29 U.S.C. §§ 255-256. The County contends that Trowbridge did not work for Patrol Bureau East or West during this period because he was part of SWAT from November 15, 2018 through March 3, 2025. However, Trowbridge testified that SWAT was part of Patrol Bureau West at least from January of 2020 through March of 2022. SOF ¶ 320 (Ex. 12, Trowbridge 12:25-13:6; 29:20-30:17; 40:3-16). In fact, when specifically asked at his deposition whether he fell within the collective definition comprised of "all current and former lieutenants from patrol divisions east and west who worked for [the County] at any time from January 11, 2020 and the present," Trowbridge unequivocally answered, "Yes. Definitely." SOF ¶ 321 (Ex. 12, Trowbridge 31:24-32:15). Trowbridge's testimony based on his personal knowledge about his work performing patrol duties at the County is corroborated by County documents demonstrating periods of time when SWAT was part of Patrol. SOF ¶ 322 (Ex. 12, Trowbridge 15:4-16:1; 24:17-25:9; 26:12-21; 31:24-34:20; 47:2-48:11; 107:14-108:25 and exhibits referenced in deposition (Doc. 155-10 at Exs. 80-83)).

**VII.   The Patrol Lieutenants are due overtime for all the hours they worked above forty in a workweek.**

Without a single fact cite or legal cite to support its argument, the County claims that the Patrol Lieutenants should not be able to recover for any hours that were not recorded in the County's timekeeping system. However, the law is clear that the Patrol Lieutenants are entitled to be paid for all their hours worked based on their testimony and the evidence in the

record. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946); *Ader v. SimonMed Imaging Inc.*, 465 F.Supp.3d 953, 965-66 (D. Ariz. 2020) (internal citation omitted). The Patrol Lieutenants are entitled to be paid for all the hours that they worked, including work that is performed off the clock. *See Manuel v. Quest Diagnostics, Inc.*, 341 F. App'x 348, 349 (9th Cir. 2009)(employee's testimony that she worked overtime between 10 and 20 times sufficient)); *Buenaventura v. Champion Drywall, Inc.*, 2012 WL 1032428, at *2 (D. Nev. Mar. 27, 2012)(plaintiffs' deposition testimony that they regularly worked Monday through Saturday and on an occasional Sunday, and regularly worked over eight hours on the days they worked, was sufficient); *Nash v. Res., Inc.*, 982 F. Supp. 1427, 1432-35 (D. Or. 1997)(plaintiff's testimony that he almost always worked six days a week, 10–12 hours a day, without naming specific weeks, established the amount and extent of overtime by reasonable inference).

Some Patrol Lieutenants tracked all their hours in the timekeeping system and the records show how many hours they worked, including overtime. *See, e.g.,* SOF ¶ 323 (Ex. 2, Acosta 36:6-11, 48:14-50:7; Ex. 7, Keller 24:11-25:10, 26:15-20. 34:18-35:15, 125:10-12 ("But if I have to [work over 40 hours], and it's something that needs to get done, I will give you that extra time, but I reflect that appropriately."); Ex. 1, Houck 48:1-13, 85:6-18.[15] Others tracked only up to 40 hours per week or 80 hours per two week pay period, but they worked additional hours off the clock. *See, e.g.,* SOF ¶ 324 (Ex. 6, Jackson 92:17-20 (so long as 40 hours, may not always modify); Ex. 9, Rankin 31:8-32:2 (may not have always recorded); Ex. 12, Trowbridge 103:22-104:10 (not "very religious" about adjusting time because "it was almost depressing because you weren't getting paid more than 80 hours"); Ex. 19, Ellison 102:12-105:6; Opt in Plaintiffs' Responses to NUI No. 6 (Ex. 25)). The County claims that such off the clock hours cannot be included because the County required them to track all their time. That is factually untrue. While the County had a policy of

---

[15] *See also* SOF ¶ 323 (Ex. 8, Neville 57:17-58:12, 61:25-63:5; Ex. 3, Brice 18:24-19:23, 22:10-23:2; Ex. 4, Freeman 60:5-61:15; Ex. 6, Jackson 91:12-15; Ex. 5, Halverson 61:5-16; Ex. 9, Rankin 31:8-32:22; Ex. 10, Rosenberger 13:23-14:15; Ex. 11, Thomas 25:3-26:4, 43:1-46:23; Ex. 12, Trowbridge 103:22-104:24, 106:19-107:1; Opt in Plaintiffs' Responses to NUI No. 6 (Ex. 24); Ex. 19, Ellison 102:12-105:6)).

requiring Patrol Lieutenants to track their hours, the County only required Patrol Lieutenants to account for 40 hours per week or 80 hours per two week pay period, which is not necessarily their actual hours worked.  SOF ¶ 325 (Ex. 19, Ellison 100:9-25; 101:6-12; 101:18-102:1).  Regardless, there is testimony, written discovery, and payroll records supporting that the Patrol Lieutenants were required to work more than forty hours a week without receiving overtime. *See, e.g.,* SOF ¶ 326 (citing testimony of Patrol Lieutenants and a County employee, declarations, discovery responses and paystubs).  The law requires that the Patrol Lieutenants be paid for all the overtime that they worked.

Further, the County's claim that it would have no way to reasonably know if the Patrol Lieutenants were working overtime unless they track their time is completely unsupportable.  The County knows that the Patrol Lieutenants work overtime, which is made evident by the Captains' testimony indicating that Patrol Lieutenants work overtime and the fact that the County's CAD records (and many payroll records) show that to be the case as well.  *See, e.g.*, SOF ¶ 327 (Doc. 159-1 at 17-75 (Houck's CAD Patrol Activity Log from CAD); Doc. 27-1, at 13-32, Doc. 27-2 at 6-117 (paystubs)).  The County cannot simply ignore this information and claim lack of knowledge now.  *Navarro v. Bean Drywall, Inc.*, 2009 WL 10707832, at *4 (D. Ariz. Oct. 16, 2009)(recognizing that "an employer who knows or should have known that an employee is or was working overtime must comply with the provisions of the FLSA")(internal citation omitted).

**VIII.   There is no issue regarding declarations from Opt In Plaintiffs.**

The County preemptively argues that Opt In Plaintiffs who were not deposed in the case should not be allowed to submit declarations in support of this Response.  The issue is moot because the Opt In Plaintiffs that the County is concerned with have not submitted declarations in support of the dispositive motion briefing.

In any event, it must be noted that the County is wrong about its position.  Opt In Plaintiffs Cruz, Goad, McCann, Sanchez, Rank, Kremer, Jakowinicz, and Whelan-Gonzalez have been listed as witnesses in the case in Plaintiff's disclosures.  The County had fair opportunity to choose which Opt In Plaintiffs to depose when it selected its witnesses for

depositions. Far from not being allowed to depose these witnesses, the County chose not to select them as part of its representative sample. The representative sampling of 50% of the Opt In Plaintiffs is completely appropriate in a collective action like this one, just as the Court held when it limited the scope of discovery involving the Opt In Plaintiffs to avoid unnecessary duplication. *See, e.g, Kesley v. Entm't U.S.A. Inc.*, 2015 WL 4064715, at *3 (D. Ariz. July 2, 2014)("[p]ermitting the full scope of discovery authorized by the Federal Rules of Civil Procedure would undermine the purpose of conditionally certifying a collective action and would be unreasonably burdensome and wasteful of the parties' and the court's resources," and holding that a 15% representative sample was appropriate).

The case law cited by the County addresses unique issues related to Rule 23 class certification briefing and absent class members, which does not apply to the FLSA collective action here. Regardless, one of the cases cited by the County supports representative sampling of depositions, which is ultimately at the heart of the County's complaints about the discovery from Opt In Plaintiffs. *See, e.g., Vazquez v. Leprino Foods Company*, 2019 WL 4670871, at *3 (E.D. Cal. Sept. 25, 2019)(allowing plaintiff to depose only 7 of the 56 new witnesses who submitted declarations in support of defendant's opposition to Rule 23 class action certification).[16] Here, the County was aware of the witnesses it is concerned about, could have deposed them as part of the representative sample, and in any event would have had sufficient notice of the substance of any such declaration testimony given the representative sample of depositions that it was allowed to take from the Opt In Plaintiffs.

---

[16] The hypocrisy of the County's position must also be noted. The County has repeatedly raised nonexistent concerns about being surprised by declarations during summary judgment briefing, when in fact there is no such "surprise" from the Patrol Lieutenants. Yet, the County filed a previously undisclosed declaration from Kelly Grennan on September 29, 2025 in support of its Motion for Summary Judgment. Doc. 159. Despite asking questions of Grennan at her deposition, the County still submitted this declaration with new information after the filing of its Motion and well after the close of the extended discovery period. Doc. 127 (noting that fact discovery closed August 8, 2025 other than specific depositions by the end of August 2025). The declaration should be disregarded under Rule 37(c)(1) for having not been timely disclosed, especially considering that it is from one of the witnesses that the County disclosed late and discovery had to be reopened to take her deposition as a result.

1   **IX.     The Patrol Lieutenants only seek overtime during the relevant time period.**

2           The County incorrectly argues that the Patrol Lieutenants are only entitled to damages

3   from January 11, 2022 to the present and that they are seeking damages for periods of time

4   that they were not in Patrol Bureaus East or West.  The County's timeframe referenced in its

5   Motion is wrong.  The relevant time period in this case is January 11, 2020 to the present

6   (three years back from the date the Complaint at Doc. 1 was filed).  29 U.S.C. § 255(a).

7   Regardless, the County knows that the Patrol Lieutenants are only seeking time they worked

8   within Patrol Bureaus East or West during their individual three-year lookback periods

9   consistent with the FLSA statute of limitations, which is evident from the County's chart

10  summarizing its position regarding the relevant time period that each Patrol Lieutenant may

11  be due wages for time they worked in Patrol Bureau East or West.  Other than Trowbridge

12  (addressed in Section VI) and the Opt In Plaintiffs who have withdrawn and therefore are

13  not seeking damages, the County acknowledges that every Patrol Lieutenant in the case has

14  claims within the FLSA statute of limitations period.  *See* 155-10, at Ex. 77.

15  **X.      The Patrol Lieutenants are entitled to liquidated damages.**

16          Plaintiff is entitled to summary judgment in favor of the Patrol Lieutenants on the

17  issue of liquidated damages.[17]  "Under the FLSA, liquidated damages are mandatory unless

18  the employer shows that it acted in subjective good faith and had objectively reasonable

19  grounds for believing its conduct did not violate the FLSA."  *Peterson,* 2022 WL 992664, at

20  *4 (citing *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 920 (9th Cir. 2003)).  The employer

21  has the burden to "establish that it had an honest intention to ascertain and follow the dictates

22  of the Act and that it had reasonable grounds for believing that its conduct complied with the

23  Act."  *Id.* (quoting *Flores v. City of San Gabriel*, 824 F.3d 890, 905 (9th Cir. 2016)(internal

24  quotations and brackets omitted)).  "The Ninth Circuit describes this as a heavy burden."

25  *Ader,* 465 F.Supp.3d at 972.

26          An employer is not acting with reasonable grounds to believe it complied with the

27  _____

28  [17] Although Plaintiff affirmatively moves for summary judgment on this issue, the analysis
    and evidence must also be considered in response to County's Motion seeking summary
    judgment on this issue as well.  *See* Section III *supra*.

FLSA by relying on its own lay person analysis of administrative guidance from the Department of Labor.  Although addressing good faith in the Section 259 context, the federal court in *Renfro* rejected the notion that an employer could rely on its own interpretation of administrative guidance regarding the FLSA to support the good faith defense, because the good faith defense "was not intended to make each employer his own judge of whether or not he has been guilty of a violation."  *Renfro v. City of Emporia*, 732 F.Supp.1116, 1119 (D. Kan. 1990).  The court also noted that reliance on administrative interpretations hedged with qualifications that they depend upon particular circumstances will not support good faith reliance.  *Id.*[18]  Importantly, federal courts utilize similar reasoning when determining whether an employer acted with a reasonable belief that it was in compliance with the law under the Section 260 good faith defense to liquidated damages as well, noting that "[a]s a general rule the court is skeptical that a defendant's reliance on its own interpretation of the law can satisfy its burden."  *Ackley v. Dep't of Corrections of State of Kan.*, 855 F.Supp. 680, 688 (D. Kan. 1994).  Decades old legal authority and post hac explanations by an employer also cannot satisfy the employer's burden to prove good faith to overcome liquidated damages, which are the "norm" in FLSA cases.  *Cunningham*, 2019 WL 13201913, at *13-*15.

Here, the County cannot meet its burden on the good faith defense because it did not have objectively reasonable grounds for believing its conduct complied with the FLSA.  In deciding to classify the Patrol Lieutenants as exempt, the County relied on human resources employees who failed to properly consider and understand the law.  Darrien Ellison, the senior Human Resources employee who made the decision to classify the Patrol Lieutenants as exempt from overtime in 2007, testified that he does not recall evaluating the first responder exception when the decision was made.  SOF ¶ 328 (Ex. 19, Ellison 8:25-10:9;

---

[18] The district court in *Renfro* separately found that the employer did not meet its burden on the good faith defense for purposes of avoiding liquidated damages, noting that it had not requested a written opinion from the Department of Labor and discounting its other attempts to communicate with the agency about the issue.  *Renfro v. City of Emporia*, 1990 WL 95097, at *2 (D. Kan. June 19, 1990), aff'd *Renfro v. City of Emporia*, 948 F.2d 1529, 1541 (10th Cir. 1991).

16:8-14).   Despite being tasked with determining the classification, Mr. Ellison also fundamentally misunderstands the law, believing that an employee cannot be a first responder under the exception if they have any managerial duties.[19]  SOF ¶ 329 (Ex. 19, Ellison 26:12-16).  Had the County not failed to consult with legal counsel at any point regarding the Patrol Lieutenants' classification, perhaps this misconception about the law could have been corrected.  SOF ¶ 330 (Ex. 19, Ellison 26:12-20; 33:3-12).

Undeterred by these facts, the County argues that the good faith defense applies by claiming that it relied on a 2005 Department of Labor opinion letter when it reclassified the Patrol Lieutenants from non-exempt to exempt employees in 2007.  The County relied entirely on its own employees' lay opinions about the application of the Department of Labor letter when making the decision to classify the Patrol Lieutenants as exempt.[20]  SOF ¶ 331 (Ex. 19, Ellison 11:15-24; 13:5-8; 33:3-12).  The senior Human Resources official who decided to classify the Patrol Lieutenants as exempt in 2007 admits that the County never consulted with legal counsel about the decision.  SOF ¶ 332 (Ex. 19, Ellison 33:3-12; 68:13-70:10; 75:2-76:2).  This cannot support the affirmative defense of good faith.  *See, e.g., Wang v. The Hearst Corp.*, No. 12 Civ. 793(HB), 2012 WL 6621717, at *2 (noting that it is "difficult to imagine that a good faith defense regarding the FLSA raised by a [large] corporation ... would not involve the advice of its legal department"); *Ackley*, 855 F.Supp. at 688 ("court is skeptical that a defendant's reliance on its own interpretation of the law can satisfy its burden.").

The County also claims that the duties described in the Department of Labor letter were "nearly identical" to the job duties performed by the Patrol Lieutenants, in an apparent effort to justify why reliance on that opinion could have been reasonable.  However, the

---

[19]  As discussed at length in Section IV, law enforcement employees like the Patrol Lieutenants can be exempt first responders even if they have management duties.

[20]  The County appears to identify one of its lay employees involved with the original classification, Mary Lou Sarrault, as an FLSA "expert," but the County admits that she has no law degree, no formal recognition as an expert, and in fact the County did not even consider this employee important enough in the classification decision to disclose her as a witness in this case.  SOF ¶ 333 (Ex. 19, Ellison 12:2-13:18; 14:5-13; 62:20-23 (when asked if she was an FLSA expert, Ellison responded, "that was just what we called her.")).

County did not know about the factual circumstances that led to the Department of Labor determination it claims to have relied on, with senior Human Resources personnel at the County testifying that the County was unaware of the precise circumstances that were considered by the Department of Labor in reaching its conclusion. SOF ¶ 334 (Ex. 19, Ellison 68:13-70:7; 73:6-74:1; 75:7-76:2). And, critically, the County could not have reasonably relied on that Department of Labor letter because it explicitly cautions that the "opinion is based exclusively on the facts and circumstances described in the [the employer's] request" and that the "[e]xistence of any other factual or historical background not contained in [the employer's] request might require a different conclusion[.]" FLSA2005-40 Opinion Letter, 2004 WL 330811 (Oct. 14, 2005). The County never submitted its own request to the Department of Labor about the exempt status of the Patrol Lieutenants, nor does the person who was tasked with the classification determination recall having ever researched any case law regarding the classification. SOF ¶ 335 (Ex. 19, Ellison 76:11-19). This inaction shows a lack of good faith as well. *Ackley*, 844 F.Supp. at 688 ("The most logical step for a defendant concerned about the legality of its compensation plan is to seek an opinion from the relevant government agency, the Wage and Hour Division of the Department of Labor.").

The County also alludes to an outside consultant report that was commissioned in 2017 to update the Patrol Lieutenants' job description in support of the good faith defense, but the County does not explain how simply updating its job description means that it acted with good faith and had reasonable grounds to believe that the County's classification was in compliance with the FLSA. Finally, the County attempts to rationalize its decades old classification with the contradictory claim that the Patrol Lieutenants' job duties "have not significantly changed" but if they have the changes demonstrate more managerial and administrative duties. Setting aside that courts reject this type of post hac explanation by employers to justify good faith, there is evidence that the Patrol Lieutenants' job has changed in a way that necessitated legal analysis of the classification. The County received correspondence indicating that Patrol Lieutenants believed their job duties had changed such

that they were non-exempt, and human resources employees testified about potential changes in their job duties resulting from staffing shortages during the COVID-19 pandemic in 2020. SOF ¶ 336 (Ex. 26, HOUCK000238-241; Ex. 19, Ellison 41:24-42:10; Ex. 21, Farrow 86:1-88:14; 117:10-118:6).  Yet, the County did not re-evaluate the legality of their classification. SOF ¶ 337 (Ex. 19, Ellison 51:10-13; Ex. 21, Farrow 86:1-88:14; 117:10-118:6).

Ultimately, the County did not have a good faith basis to believe that it was in compliance with the law, having not consulted with legal counsel to ensure it was acting reasonably in determining that the Patrol Lieutenants were exempt or later when issues arose about the classification.  The Patrol Lieutenants are entitled to summary judgment on this issue.

## XI.    The County's violation of the FLSA is willful.

Plaintiff is entitled to summary judgment on the issue of willfulness.[21]   When an FLSA violation is "willful," the limitations period looks back three years from the filing date of a consent to join the case. 29 U.S.C. §§255(a), 256.  Willful conduct means "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [statute]."  *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 918 (9th Cir. 2003), cert. denied, 541 U.S. 1030 (2004).  An employer's violation of the FLSA is willful when it is "on notice of its FLSA requirements yet takes no affirmative action to assure compliance with them."  *Flores v. City of San Gabriel*, 824 F.3d 890, 906 (9th Cir. 2016).  Willfulness exists where the employer disregarded the very possibility that it was violating the statute. *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003).

There is undisputed evidence that the County recklessly disregarded the law by failing to conduct any investigation when it was presented with complaints about the Patrol Lieutenants' classification as exempt from overtime.  Houck sent senior human resources personnel, Keely Farrow, correspondence raising concerns that he performed the same duties as a non-exempt sergeant when he was a Patrol Lieutenant, emphasizing that Patrol

---

[21] Although Plaintiff affirmatively moves for summary judgment on this issue, the analysis and evidence must also be considered in response to County's Motion seeking summary judgment on this issue as well.  *See* Section III *supra*.

Lieutenants agreed with his belief that they should be paid overtime based on the job duties they are required to perform.  SOF ¶ 338 (Ex. 26, HOUCK000238-241; Ex. 21, Farrow 40:12-41:16).  He also raised the fact that lieutenants in other departments are non-exempt and entitled to overtime.  SOF ¶ 339 (Ex. 21, Farrow 45:1-7; Ex. 26, HOUCK000238-241).  Nevertheless, the County failed to investigate its classification of the Patrol Lieutenants as exempt after it was made aware of concerns about whether the classification applies.  Keely Farrow, who was a senior Human Resources employee tasked with answering questions from Patrol Lieutenants like Houck about their exemption classification, testified that she did not speak with legal counsel or consult with anyone else at the County about Houck's inquiry raising concerns about the Patrol Lieutenants' improper classification.  SOF ¶ 340 (Ex. 21, Farrow 36:13-39:16, 40:4-6, 41:22-42:5, 45:1-18).  Ms. Farrow had access to lawyers at the County to ask questions related to Human Resources issues that arise, but she still never talked with them about the exemption classification even though she did not have training on the FLSA.  SOF ¶ 341 (Ex. 21, Farrow 41:22-42:5, 44:16-25, 45:8-18, 57:8-20, 59:12-22, 60:19-61:5, 67:8-68:3).  Ms. Farrow also neglected to do any investigation into whether the Patrol Lieutenants were properly classified after Houck raised his concerns about the exemption; she never talked to any other Patrol Lieutenants or their Captains about it or looked into whether their duties impacted the legality of the classification.  SOF ¶ 342 (Ex. 21, Farrow 47:25-48:19, 71:21-24).

After Houck stated that the Patrol Lieutenants do not perform exempt job duties and specifically raised the first responder exception, Ms. Farrow could not recall any affirmative steps taken to ensure the County had them properly classified.  SOF ¶ 343 (Ex. 21, Farrow 75:14-77:21, 78:16-24).  Ms. Farrow does not even recall having considered the first responder exception to the overtime exemption when considering the concerns raised about the Patrol Lieutenants' classification.  SOF ¶ 344 (Ex. 21, Farrow 73:24-74:19).  Ms. Farrow also acknowledged that Houck contacted her specifically stating that his Captain informed him that the Patrol Lieutenants' job duties had changed since they were classified as exempt from overtime and specifically asking for an investigation into the classification of Patrol

Lieutenants versus other types of lieutenants, yet Ms. Farrow did nothing to investigate that either.  SOF ¶ 345 (Ex. 21, Farrow 90:8-91:11).  Ms. Farrow also testified that COVID-19 caused significant staffing decreases that impacted how the Patrol Lieutenants performed their jobs, yet the County never conducted any investigation into whether they remained properly classified as exempt.  SOF ¶ 346 (Ex. 21, Farrow 86:1-88:14, 117:10-118:6).

Importantly, the County relies on the department run by Ms. Farrow to report changes in the Patrol Lieutenants' role to central human resources when they occur, so Human Resources can consider any potential issues regarding their classification as exempt.  SOF ¶ 347 (Ex. 19, Ellison 56:15-57:5, 60:6-18, 66:5-67:7, 68:5-22; Ex. 20, Erskine 30:17-25, 45:2-46:10; Doc. 155-8 at Ex. 59 (MCC000620-622 at § F)).  Farrow's job duties include identifying issues within the Sheriff's Department where the Patrol Lieutenants work that may need to be addressed by central human resources for the County.  SOF ¶ 348 (Ex. 21, Farrow 51:19-52:1).  Mr. Ellison, a chief human resources employee within the central Human Resources department, admitted that the department where Houck worked should have taken steps to evaluate the issues that he raised about the exemption classification.  SOF ¶ 349 (Ex. 19, Ellison 43:18-44:3, 45:15-25).  However, the issues raised by Houck were never investigated further by anyone at the County, in violation of its own internal policy about monitoring their job duties.  SOF ¶ 350 (Ex. 20, Erskine 30:17-31:19, 46:11-21; Ex. 19, Ellison 51:10-13; Ex. 21, Farrow 71:21-72:3, 75:14-25, 76:13-80:4, 90:8-91:11).  Chief Human Resources Officer Grennan has never even seen the correspondence from Houck regarding his belief that the Patrol Lieutenants are misclassified.  SOF ¶ 351 (Ex. 22, Grennan 13:16-18, 21:20-22:2).  She also testified that she is not aware of any investigation that was ever done by the County regarding issues related to the exemption classification for the Patrol Lieutenants.  SOF ¶ 352 (Ex. 22, Grennan 13:16-18, 20:7-12).

Ultimately, the undisputed evidence shows that the County was on notice of a potential FLSA violation involving the Patrol Lieutenants, and it took no affirmative steps to investigate the issue.  Under these circumstances, there is a willful violation as a matter of law.  *See Acosta v. TBG Logistics, LLC*, 2018 WL 3145938, at *3 (D. Ariz. June 27,

44

2018)(finding employer willfully violated the FLSA because it received information related to unpaid overtime and failed to conduct any investigation into whether employees were entitled to overtime).  To avoid a willfulness finding, the County simply reiterates that it made the original classification decision based on a 2005 Department of Labor Opinion, ignoring the fact that it failed to act reasonably in making that determination as outlined extensively in Section X *supra*.  The County also alludes to a consultant who was commissioned to update the Patrol Lieutenants' job description about ten years after the original classification, but the County does not and cannot explain how simply updating a job description impacts a willfulness finding.  The County provides no basis to avoid willfulness given the great weight of evidence provided by Plaintiff on this issue and summary judgment should be granted in favor of the Patrol Lieutenants.

**XII.    Two Opt In Plaintiffs properly withdrew from the case.**

The County raises an issue that it never brought up during its meet and confer process on summary judgment relating to Opt In Plaintiffs Hunter and Bocardo who filed notices to withdraw their consent forms.  Doc. 154 at 33.  Opt In Plaintiffs Hunter and Bocardo properly exercised their right to withdraw as opt in plaintiffs, just like they had a right to join the case by filing a consent form.  Doc. 63 and 65.  When the County previously inquired about this issue over a year ago, Plaintiff affirmed that Opt In Plaintiffs Hunter and Bocardo properly withdrew their consent forms using a procedure routinely accepted for completing this simple litigation task.  *See Vega v. All My Sons Business Development LLC, et al.*, No. CV-20-00284-TUC-RCC (D. Ariz. Jan. 17, 2024)(Order approving FLSA class and collective action settlement as to FLSA opt in plaintiffs who did not file notices withdrawing their consent forms); *Risbrook v. Blue Horseshoe Network, LLC*, 2020 WL 13441574, at *2 (E.D. Mich. Sept. 4, 2020)(recognizing notices of withdrawal filed for opt ins and noting that settlement did not apply to them).  There is simply no issue to address regarding these Plaintiffs.

**XIII.    Conclusion**

Based on the foregoing, Houck respectfully requests that the Court grant summary

45

judgment in favor of the Patrol Lieutenants regarding the first responder exception, liquidated damages, and willfulness. The County's Motion addressing all other issues should be denied.

DATED: November 21, 2025.

FRANKEL SYVERSON PLLC
By   *s/ Ty D. Frankel*
Ty D. Frankel
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016

FRANKEL SYVERSON PLLC
Patricia N. Syverson
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123

*Attorneys for Plaintiff*