# EXHIBIT 19

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Christopher J. Houck, on         )
behalf of himself and all        )
those similarly situated,        )
                                 )
        Plaintiff,               ) No.
                                 ) 2:23-cv-00068-DGC
vs.                              )
                                 )
Maricopa County,                 )
                                 )
        Defendant.               )
_____)

DEPOSITION OF DARRIEN ELLISON

Phoenix, Arizona
August 28, 2025
9:04 a.m.

REPORTED BY:
Kellie L. Olney, RPR
AZ Certified Reporter No. 50223

PREPARED FOR:
Superior Court
(Original)



**Griffin Group International**
**888.529.9990 | 602.264.2230**

8

Q.   So it was a question related to how promotions might work?

A.   No.  It has nothing to do with promotions.  It has to do with a step plan for -- at the time he was a deputy sheriff, and so whether -- basically whether the County had a step plan so that next year would he move to that step, would he move to this step, would he move to that step.  Step plans don't have anything to do with promotions.

Q.   Okay.  And other than that, have you had any interactions with Lieutenant Houck?

A.   Have I had any interactions with Lieutenant Houck?  Not to my knowledge.

Q.   Are you aware that there are other patrol lieutenants who opted into the case?

A.   Am I aware that others?  I believe -- yes.

Q.   And do you know the names of any of the individuals who --

A.   No, I do not.

Q.   -- opted in --

Do you know whether you've had any interactions with any of the other opt-in plaintiffs in this case?

MS. BALCH SANTIAGO:  Form.  Foundation.

THE WITNESS:  No, I do not.

Q.   BY MR. FRANKEL:  Are patrol lieutenants



9

entitled to overtime?

A.    Patrol lieutenants are --

MS. BALCH SANTIAGO:  Form.

THE WITNESS:  Patrol lieutenants are classified exempt.  So, no, they are not entitled to overtime.

Q.    BY MR. FRANKEL:  What is your understanding for why they're classified as exempt?

A.    Because of their -- they fit the executive exemption and the administrative exemption under the Fair Labor Standard Act [verbatim].

Q.    Were you involved in the decision to arrive at that classification?

A.    Yes.

Q.    When was that decision made?

A.    So the change was made in 2007.

Q.    2007?

A.    Mm-hm.

Q.    Is that a yes?

A.    Yes.

Q.    And prior to that were the patrol lieutenants getting overtime?

A.    So yes and no, meaning that there was a time that they were exempt, and then there was a time that they were changed to be overtime eligible, until they were changed back to being exempt in 2007.



10

Q.   Do you recall what period that they were overtime eligible?

A.   **From probably 1997 to 2007.**

Q.   And then in 2007 you mentioned that there was a decision made to switch them over to exempt status?

A.   **To move them back to exempt status again, yes.**

Q.   And that was based on the executive exemption and administrative exemption?

A.   **Yes.**

Q.   What were their duties during the period when they were overtime eligible?

MS. BALCH SANTIAGO:  Form.  Foundation.

THE WITNESS:  So what happened when we changed them from -- so they were exempt.  And their duties were the same as they were when they were exempt when they were non-exempt and then when they were exempt.

The reason that they were changed to non-exempt wasn't because they qualified under the FLSA to be hourly and non-exempt.  It was because there was concern with the salary compression between a sergeant and lieutenant.

And so the County, in 1997, decided that they would make them hourly so that they could evaluate the compression and see what -- basically look at the hourly, see the compression with the sergeant, and



11

then -- back in 2005.

And so the reason that they went hourly had nothing to do with the fact that they -- basically they were always doing management and they always qualified under the executive and administrative exemption of the FLSA.

Q.   BY MR. FRANKEL:  When you say they always qualified, was that a determination that you were making?

MS. BALCH SANTIAGO:  Form and overbroad. Answer if you can.

THE WITNESS:  So I was not at the County in 1997.  In 2007, I was involved because I was at the County.

Q.   BY MR. FRANKEL:  So in 2007, when there was the switch back from non-exempt hourly for the patrol lieutenants to exempt, you were involved with that?

A.   Yes.

Q.   What was your role at the time?

A.   My role was to analyze the FLSA and essentially assess whether or not lieutenants should be or could qualify as exempt under the Fair Labor Standard Act.

Q.   Do you have a legal background?

A.   No, I do not.

Q.   What was your job title at the time?



12

A.    I believe I was compensation coordinator.

Q.    Who else was involved with the decision to reclassify the patrol lieutenants as exempt in 2007?

A.    So we had -- one of my peers was our FLSA expert, and the reason she was our FLSA expert is because prior to coming to the County, she worked as a Department of Labor investigator, so she assisted the -- she assisted in providing consultation and advice on that.  I'm sure I would have also had a conversation with my boss and discussed the outcome with the boss.

Q.    What was the name of the DOL investigator?

A.    Mary Lou Sarrault.

Q.    Mary Lou -- what was the last name?

A.    Sarrault.

Q.    And what was her title at the County at the time?

A.    I don't recall what her title would have been. She would have been either a consultant, or at one point I think she was a comp analyst.  She was the -- she was a previous manager at the County and then retired.

       And so at that time she was retired, but we hired her back, and she was helping us with projects as well as advising us, you know, helping us with FLSA concerns and challenges.

Q.    And what was your boss's name who was involved?



13

A.    I believe it was Jessica Wilson.

Q.    And what was her title?

A.    I believe it was either compensation supervisor or compensation manager.

Q.    Was legal counsel involved?

A.    No.

Q.    Did Mary Lou or Jessica have a law degree?

A.    No.

Q.    Do you recall what information was evaluated to make the determination that the patrol lieutenants were eligible for the executive or administrative exemption?

MS. BALCH SANTIAGO:  Form.  Overbroad as to time, if you could specify that.

Q.    BY MR. FRANKEL:  When the decision was being made to reclassify them in 2007, do you recall what information was evaluated to make that decision?

A.    Yes.  So we looked at their central functions. We -- we researched and looked at the resources that are on the Department of Labor.  They have some really useful resources, from frequently asked questions, from the actual rules and regulations.

There was a 2005 Department of Labor opinion letter that we were aware of that another agency or organization reached out to the Department of Labor and asked some questions about lieutenants, patrol



14

lieutenants, and captains and I think fire captains.

And as -- also, as I mentioned, had conversations with the -- or with our FLSA expert, Mary Lou.

Q.   Was her title "FLSA expert," or is that just your characterization of her --

A.   That was just what we called her.  Her title, it was either -- I don't know if it was consultant or comp analyst or -- but we called her our "FLSA expert," and we had her -- one of her responsibilities at different times was to basically keep us updated on any of the FLSA changes because that was one of her passions.  She really enjoyed the FLSA and knew it well.

Q.   Since that decision was made in consultation with Mary Lou in 2007, has there been any reevaluation by the County of whether the patrol lieutenants are properly classified as exempt?

MS. BALCH SANTIAGO:  Form.  Overbroad.

THE WITNESS:  Yes.

Q.   BY MR. FRANKEL:  When?

A.   2016, 2017.

Q.   And who was involved in that?

A.   We had an outside consultant, Fields Consulting, conduct the job analysis on that.  And then I was involved as far as just being there for, you



16

responder exception to the exemption applied?

A.    So --

MS. BALCH SANTIAGO:  Form.

Answer if you can.

MR. FRANKEL:  The "answer if you can" is coaching, so that needs to stop.

**THE WITNESS:  So can you repeat the question?**

Q.    BY MR. FRANKEL:  Sure.  At the point in time in 2007 when the County was evaluating whether the patrol lieutenants were properly classified as exempt, was there an evaluation of whether the first responder exception applied?

MS. BALCH SANTIAGO:  Form.

**THE WITNESS:  I don't recall.**

Q.    BY MR. FRANKEL:  In 2016, 2017, when Fields was commissioned regarding the evaluation of the patrol lieutenants, do you know whether the first responder exception was ever considered at that point?

MS. BALCH SANTIAGO:  Form.

**THE WITNESS:  I believe so.**

Q.    BY MR. FRANKEL:  And what makes you think that?

**A.    Because part of the questions that were asked were related to first responder duties.**

Q.    Was there ever any discussion that you recall specifically related to the first responder exception to



26

responder exception?

A.   The first responder would -- there's duties that a first responder would do that are -- that you would see when somebody is basically the first responder on the scene of -- of either an investigation or an accident or a crime.

However, I know that there is a difference between an officer who is on the scene doing those first interviews and taking notes and whatnot versus a lieutenant who is at the scene directing and managing people that are at the scene.

Q.   Do you think it's possible that a lieutenant's primary duties could be first responder duties even if they may also have other managerial duties under the exception?

A.   No.

MS. BALCH SANTIAGO:  Form.  Foundation.

Q.   BY MR. FRANKEL:  Did you ever -- was legal counsel involved in helping make that determination?

A.   No.

Q.   What makes you think that their primary duty would never be first responder simply because they may actually have managerial duties, then?

MS. BALCH SANTIAGO:  Form.

THE WITNESS:  So the primary duty is their



33

MS. BALCH SANTIAGO:  -- relied upon advice of counsel.

Q.   BY MR. FRANKEL:  Have you relied on advice of counsel related to the decision to classify the patrol lieutenants as exempt?

A.   No.

Q.   So it was all laypeople who were evaluating that Department of Labor decision that you referenced?

A.   Yes.

Q.   There was never any consultation with anyone that had a legal background regarding that?

A.   **No, not to my knowledge.**

Q.   Are you aware that lieutenants at other departments, like the City of Phoenix, are classified as non-exempt from overtime?

MS. BALCH SANTIAGO:  Form.

**THE WITNESS:  Yes.  So in 2007, we analyzed what other agencies were doing, and a lot of them had them as exempt.**

**And then after I was aware that I was going to be depositioned to talk about this, I did go out and look at some of those other positions and saw that several of them changed them to non-exempt.**

Q.   BY MR. FRANKEL:  Were you aware that other departments classified lieutenants as non-exempt prior



41

you feel that you can answer that question as phrased, do so.

If you feel that you need to read a separate part of Exhibit 1 to properly answer it, then you are free to do that.

**THE WITNESS:  I would like to read Exhibit 1 so that I better understand all of --**

MR. FRANKEL:  That's fine, and I'm just going to let you know you're absolutely free to do that, and it may result in me having to go to the Court to ask for more time because your counsel is refusing to let this deposition go beyond three hours, even though she's added topics to what you're testifying to today.

MS. BALCH SANTIAGO:  Ty, you can go to the Court if you want.  That's fine.  Noted.

Q.   BY MR. FRANKEL:  Have you had a chance to review Exhibit 1?

A.   Yes, I have.

MS. BALCH SANTIAGO:  Let the record reflect that he took three minutes to review it.

Q.   BY MR. FRANKEL:  Can you please -- do you need me to ask my question again?  Do you remember it?

A.   Yes, please.

Q.   So the type of information that Mr. Houck is raising in these emails, for example, he is indicating



42

that he doesn't believe he is properly classified as exempt.  He has talked to his captain, and he's indicated that the patrol lieutenants' duties have changed in the last few years.  He believes that they're identical to the patrol sergeants who are classified as non-exempt.  He is raising a number of concerns regarding the exempt status.  Would you agree with that characterization?

MS. BALCH SANTIAGO:  Form.

THE WITNESS:  Yes.

Q.   BY MR. FRANKEL:  Do you believe that these are the types of issues that should have been then escalated to your department for investigation regarding the classifications?

MS. BALCH SANTIAGO:  Form.

THE WITNESS:  No.

Q.   BY MR. FRANKEL:  Why not?

A.   Because I would want them to take additional steps.  Right now it's one person who is saying that, hey, I was recently promoted.  My job has changed.  And there's been no -- there's been no difference between this and that and then he went and talked to a captain.

So what I would want the Sheriff's Office to do to assess how are they utilizing their lieutenants, did it really change, or is this just one lieutenant, one

43

captain who are doing things differently?

And then really assess did it change, and then let us know that -- because there is a difference between "I think it's changed" and, you know, are they -- was this lieutenant doing what his job was supposed to be, or was he doing -- did he understand fully what his job would be?

And given the fact that lieutenants would be doing managerial responsibilities as well as -- as it mentions in there, some sergeants could also meet the exemption classification as well, I would want to -- them to dig in to make sure that, you know, just because they're doing -- what is the frequency of them doing it and whatnot.

So there is a lot of questions that would need to be asked before it should be pushed over to Human Resources.

Q.   Okay.  So it's your testimony that you believe the Sheriff's Department should have done some sort of investigation itself in light of this correspondence in Exhibit 1?

MS. BALCH SANTIAGO:  Form.  Speculation.

THE WITNESS:  My -- what they should have done -- what they should have done was had conversations of, you know, were they -- was this lieutenant directing

44

them back?  Was this lieutenant doing the responsibilities of the lieutenant?  Did they understand what they were fully doing or not?

Q.   BY MR. FRANKEL:  And is that something that Keely Farrow should have been involved with?

MS. BALCH SANTIAGO:  Form.  Foundation. Speculation.

THE WITNESS:  Something that Keely Farrow would have been involved with?  Like what do you mean "involved with"?

Q.   BY MR. FRANKEL:  So you see that this exchange is between Keely Farrow and Lieutenant Houck, correct?

A.   Yes.

Q.   So the only person who knows this information initially is Keely Farrow, correct?

A.   Yes.

Q.   And she was a Human Resources person within the Sheriff's Department, correct?

A.   Yes.

Q.   So what should she have done to satisfy your opinion that some sort of investigation within the Sheriff's Department needed to occur?  What steps would she have had to take upon having this exchange with Lieutenant Houck?

MS. BALCH SANTIAGO:  Form.  Foundation.



Speculation.

THE WITNESS:  So she should assess what she knows of the position, right, and she knows of the situation, and determine whether or not she thinks that a further discussion with the command staff is necessary.

Q.   BY MR. FRANKEL:  And do you believe further conversation should have occurred within the Sheriff's Department?

MS. BALCH SANTIAGO:  Form.  Speculation.  Foundation.

THE WITNESS:  I don't know all the specifics of what did or didn't happen, so I can't -- so I can't answer that.

Q.   BY MR. FRANKEL:  So my question is not about the specifics.  Based on what you've read in Exhibit 1, do you believe there should have been further investigation within the Sheriff's Department in light of this information?

MS. BALCH SANTIAGO:  Form.  Foundation.  Speculation.

THE WITNESS:  So with no other information, no other conversations that may or may not have happened, then, yes, some additional conversations could have been made with the command staff.

50

Q.   Do you have any reason to think there is a new job description that's been produced for the patrol lieutenants since the one referenced in these Exhibits 2 and 3?

A.   Other than if --

MS. BALCH SANTIAGO:  Form.

THE WITNESS:  Other than if the department felt that they needed to update it for recruiting purposes.

Q.   BY MR. FRANKEL:  Okay.  Do you know -- do you know if they have updated it?  Is that something you would be aware of?

A.   Not necessarily.

Q.   So I'm not sure why I'm getting stonewalled on this.  I'm just trying to get an understanding if there is a job description that would exist that's more current than what's in Exhibit 2 and Exhibit 3.

A.   And I don't know if there is a more -- a more current job description that exists.

Q.   When evaluating whether a patrol lieutenant is exempt, is that based on the duties that's in the job description, or is that based on the duties they performed out in the field --

MS. BALCH SANTIAGO:  Form.

Q.   BY MR. FRANKEL:  -- on a day-to-day basis?

MS. BALCH SANTIAGO:  Form.



THE WITNESS:  So it's based on what they do in the field is what's the real determination of -- the real determination is what's done in the field, which should be reflected on the job description in the essential functions.

Q.   BY MR. FRANKEL:  But ultimately what matters from a legal perspective, your understanding, is how they actually perform their job on a day-to-day basis?

A.   Yes.

Q.   Are you aware of any audits that have occurred since 2020 regarding the job duties that are performed by the patrol lieutenants?

A.   No.

Q.   Do you personally observe the patrol lieutenants on a daily basis and how they're performing their job duties?

A.   No.

Q.   Would you agree that the patrol lieutenants themselves are the best source of knowledge for how they perform their jobs?

MS. BALCH SANTIAGO:  Form.

THE WITNESS:  Not necessarily.

Q.   BY MR. FRANKEL:  Who would know more than them?

A.   Their -- it would be a combination of them and their supervisor.



56

A.   This is the policy that applies and provides guidance to exempt employees.

Q.   And it relates to -- in part to keeping track of their hours worked; is that correct?

A.   Yes.

Q.   And you -- I think you testified earlier that you thought this was the policy that would make it so the departments knew to look into issues with the exemption when they're creating a new position; is that correct?

A.   No.  There is an hours worked for non-exempt and overtime.

Q.   Okay.  So that's a different policy?

A.   Yes.

Q.   And what do you believe that says about the specific requirement that the departments look into the issues when a new patrol lieutenant position is created?

A.   So I believe that it says that Human Resources is responsible for making the final determination, and that departments are responsible for letting Human Resources know when there are significant changes to a position.

Q.   And that's part of the ongoing monitoring to make sure the classification is correct?

A.   Yes.



57

Q.   And so part of that is on -- actually, a significant part of that is on the department to pass that information on to HR, correct?

MS. BALCH SANTIAGO:  Form.

THE WITNESS:  Yes.

Q.   BY MR. FRANKEL:  Is there any other procedure in place that you know of related to the ongoing monitoring of the classification as exempt?

A.   Not that I can think of at this time.

Q.   Are the captains at all involved in the process related to monitoring whether the exemption classification is correct?

MS. BALCH SANTIAGO:  Form.  Foundation.

THE WITNESS:  So the captains wouldn't really understand the Fair Labor Standard Act necessarily, unless they've done research on it or anything.

What captains would be looked to for is what are your lieutenants doing?  What's the job duties and their essential functions?

Q.   BY MR. FRANKEL:  Would you agree the captains would have a general understanding of the type of duties that an exempt versus non-exempt lieutenant is supposed to be doing?

MS. BALCH SANTIAGO:  Form.  Foundation.

THE WITNESS:  No.

60

final decision-maker in the FLSA determination; however, we have to rely on the department's Human Resources people that are extensions, since they are out there in the field.  They're working side by side the supervisors and the employees.

Q.   BY MR. FRANKEL:  Sure.  That's what you've been describing, that department HR, if they decide something needs to be escalated, that would get escalated to you in Central HR, and then Central HR makes the final determination about the exempt status, correct?

A.   Yes.

Q.   So ultimately, the County's exemption decision relies pretty heavily on the decisions that are being made at the department level as far as what they escalate, correct?

MS. BALCH SANTIAGO:  Form.

THE WITNESS:  Yes.

Q.   BY MR. FRANKEL:  And we touched on this initially, but can you tell me who was involved in the decision to classify the patrol lieutenants as exempt at the County?

MS. BALCH SANTIAGO:  Form.  Asked and answered. Form -- yeah, form.

THE WITNESS:  So in 2005, '6 -- the change was actually made in 2007, but I would have been involved



62

A.    We have three compensation analysts, and I don't know who was in that position.  So Mary Lou -- a little bit on Mary Lou.  She was the prior compensation manager.  She retired and then had been brought back, and so she had been just moved around in different roles.

Her last role she was in, I believe a compensation analyst, and we were able to -- when she left, we took that position and hired another analyst at the time, and I think -- who was it?  It might have been -- oh, shoot.  I can't think of who we hired at the time.

Q.    Do you know who currently is in that role?

A.    Who is -- when you say "that role," there wasn't -- there isn't --

Q.    The compensation analyst role.

A.    So we have three compensation analysts.  We have Shaye.  I can't remember her last name.  We have Bridget Laborg, and then Jennifer Glassman.

Q.    Was FLSA expert that Mary Lou was called, was that sort of like friendly terminology you guys were doing because you thought she knew a lot about the FLSA?

A.    Yes.

MS. BALCH SANTIAGO:  Form.

Q.    BY MR. FRANKEL:  So there wasn't any sort of



66

A.   So you had asked if the hours worked by exempt employees provided the guidance that I was thinking about regarding departments monitoring the job descriptions.  And after looking at this exhibit, yes, it says here:  Human Resources determines the exempt status for each position/employee, according to the provisions outlined in the FLSA.  Departments are responsible for monitoring the duties of each employee and must notify Human Resources when an employee's duties, responsibilities or compensation changes.  Human Resources will reevaluate the exemption from overtime status for any employee/position after a change, and, as warranted, will revise and maintain such status.

Q.   Okay.  Thank you.

And am I correct you're referring to section F of Exhibit 4?

A.   Yes.

Q.   And so am I correct that that is, in fact, the policy you're referring to about how the department is the first line related to investigating exempt status and then they make a determination of when that needs to be passed up to HR?

MS. BALCH SANTIAGO:  Form.

THE WITNESS:  So that is the policy that talks about how they're responsible for letting us know.



67

And actually, it doesn't say that they have to understand the FLSA and make that determination.  It just says that they provide us their -- they notify us when the duties and responsibilities change.

Q.   BY MR. FRANKEL:  Right.  So -- sure.  So you're referring to section F of Exhibit 4 then, correct?

A.   Yes.

Q.   So in relation to that, I'm going to have you -- do you recall the email between Lieutenant Houck and Ms. Farrow that we looked at earlier?

A.   That we looked at earlier?

MS. BALCH SANTIAGO:  Form.

Q.   BY MR. FRANKEL:  Yes.

A.   Yes.

Q.   And you recall he raised the fact that his captain indicated that he thought the duties had changed for the patrol lieutenants?  Do you recall that?

MS. BALCH SANTIAGO:  Form.  Foundation.

THE WITNESS:  Yes.

Q.   BY MR. FRANKEL:  Do you think that should have been escalated to Human Resources in light of the policy we looked at in Exhibit 4, at section F of that exhibit?

MS. BALCH SANTIAGO:  Form.  Foundation.  Speculation.

THE WITNESS:  No, not knowing what Keely --



68

what Keely was aware of, the information that Keely was provided, what analysis she did, what additional discussions she had, I can't answer whether or not it would have been raised to Human Resources.

Q.   BY MR. FRANKEL:  But you agree, though, the policy requires the department to raise duties issues that have changed to Human Resources for purposes of analyzing the exemption to make sure it's accurate, correct?

MS.  BALCH SANTIAGO:  Form.  Overbroad.

THE WITNESS:  When those duties are significant enough that they feel it should be pushed up, yes.

Q.   BY MR. FRANKEL:  So now turning to Exhibit 5, please, this is a Department of Labor opinion that's been disclosed by the County.  Is this the opinion that you relied on in making the determination to classify the patrol lieutenants as exempt?

A.   It would -- it was one of many resources that we would have used.

Q.   Okay.  But this is -- is this the only Department of Labor opinion that you recall relying on?

A.   That I -- yes.

Q.   Have you had a chance to review Exhibit 5?

A.   Reviewed it recently in preparation, yes.

Q.   Okay.  So you're prepared to testify about it?



69

A.   I would like to read it real quick.

Q.   Sure.  We can go off the record while you read it.

(Discussion off the record.)

MR. FRANKEL:  Back on the record.

Q.   BY MR. FRANKEL:  Did you have a chance to review Exhibit 5?

A.   Yes.

Q.   I'm going to ask you some questions about it.

Do you see in the second sentence it says, "Specifically you asked whether a particular city's Police Lieutenants, Police Captains, and Fire Battalion Chiefs are exempt from minimum wage and overtime requirements of the FLSA"?

Do you see that?

A.   You said in the second or the first?

Q.   The second sentence.

A.   Oh, the second sentence.  Okay, yes.

Q.   You see it references that it's related to questions about particular -- a particular city's patrol lieutenants?  Do you see that?

A.   Yes.

Q.   And so this letter is answering a question about whether certain patrol lieutenants at a specific city are exempt, correct?

70

A.    Correct.

Q.    Do you -- do you know what city this was referring to?

A.    No, I don't.

Q.    Was it referring to the lieutenants at Maricopa County?

A.    No.

Q.    Did you ever consult with legal counsel about the applicability of this Department of Labor opinion?

A.    No.

So what we do with Department of -- opinion letters, they're all specific to the situation. Department of Labor is always very clear that they look at what was requested from them, from the person that's requesting an opinion.  And so none of them spec- -- and they're very clear:  This applies to here and these situations.

However, what we could look at and what we saw here was that it talks about the lieutenants in this situation.  It says, are they doing the management?  Are they doing the executive responsibility?

And so we just didn't take the fact that the Department of Labor said that this city's lieutenant should be exempt because, once again, everything is specific to the individual and to the situation.



73

Q.   BY MR. FRANKEL:  Sure.  I understand that --

A.   **The Department of Labor --**

Q.   -- from what you just said.

A.   **-- opinion letters are specific to the circumstances and individual that is in that letter.**

Q.   So with respect to the information that the Department of Labor was analyzing in making this determination, you agree that there was something submitted by this unknown employer to the Department of Labor for them to arrive at this conclusion, correct?

A.   **Yes.**

Q.   Did you ever review what was submitted to the Department of Labor?

A.   **No.**

Q.   Do you even know the employer, the name --

A.   **No.**

Q.   -- of who submitted this to the Department of Labor?

A.   **No.**

Q.   So how can you know how their analysis was conducted on these issues if you don't know the facts that ultimately led to that conclusion?

MS. BALCH SANTIAGO:  Form.

**THE WITNESS:  So what you're talking about, the analysis, I don't know the analysis that the Department**

74

of Labor went into.  However, they specifically mention the exemptions applying to lieutenants, and then they covered, basically, that the employee is employed in a bona fide executive capacity for the purpose of exemption as -- exemption if the employee meets this.

Q.   BY MR. FRANKEL:  Sure.  And you --

A.   So what I understand --

Q.   -- agree, though --

A.   -- from this is that the Department of Labor was asked some questions from an organization.  The Department of Labor felt that what they were provided showed that it met the executive exemption.

And so for -- what we did is we can look at this and say, okay, do our lieutenants meet the executive exemption?

And so we looked at what our lieutenants' essential job functions were doing.  We also compared it to the Department of Labor information, the frequently asked questions.  They specifically outline exemptions.  They go into what is or is not an exemption.

And so we can take that and use that to point us in the right direction to say, okay, based on this, based on what we compared our essential job functions for lieutenants to, and what we have on the Department of Labor website, we were comfortable that they were



75

exempt from overtime.

Q.   Sure.  So that was a determination that, ultimately, you in your role at the County, as a layperson, not as a lawyer, made regarding the classification, correct?

A.   Yes.

Q.   And you agree that this Department of Labor opinion is specifically related only to the patrol lieutenants that were being asked about, those particular patrol lieutenants and the facts that were submitted regarding them from that employer, correct?

MS. BALCH SANTIAGO:  Form.

THE WITNESS:  All Department of Labor opinion letters are specific to those that are requested, so yes.  This opinion letter is specific to the information that was provided them from the other employer.

Q.   BY MR. FRANKEL:  And you never consulted with legal counsel about your conclusion that the Department of Labor opinion supported the fact that you had made the correct exemption analysis?

MS. BALCH SANTIAGO:  Form.

THE WITNESS:  So it's not the legal counsel's job to analyze and review the Fair Labor Standard Act. It's Human Resources' job.

Q.   BY MR. FRANKEL:  So did you consult with legal



76

counsel about it?

A.    No.

MS. BALCH SANTIAGO:  Asked and answered.

THE WITNESS:  And what's further helpful when you're looking at Department of Labor opinion letters is that it keeps going, and it says, okay --

Q.    BY MR. FRANKEL:  Sir, there is not a question pending, so thank you.

A.    Okay.  I was just trying to answer how the opinion letter helped us.

Q.    Did the -- did Maricopa County ever submit a request to the Department of Labor itself to analyze whether the patrol lieutenants were exempt the way this employer did in Exhibit 5?

A.    No.  It's not a requirement.

Q.    Did you ever conduct any research into case law regarding patrol lieutenants and whether in other instances they had been found to be exempt or not?

A.    I don't recall.

Q.    What specifically do you recall looking at regarding the decision to classify them as exempt other than Exhibit 5?

A.    So I looked at their essential job functions, looked at -- talked with our FLSA expert to analyze what she knew of lieutenants and officers, looked at the



100

Q.   So their pay stubs would show the amount of hours that they have input into the system?

A.   Yes.

Q.   I'm going to ask you to look back at Exhibit 4, please.  And I'm going to ask you to look at section B on page 2, please.

A.   Okay.

Q.   Do you see the last sentence of that first paragraph in section B?  It says, "All exempt and not covered employees must account for and record in the County's timekeeping system at least the hours for which they are paid by either working or using leave."

Do you see that?

A.   Where was it?  You said on section B?

Q.   The last sentence of the first paragraph in section B.

A.   Oh, the last sentence.  Yes.

Q.   What does that mean, in practice?  What's the expectation for the patrol lieutenants?

A.   The expectation --

MS. BALCH SANTIAGO:  Form.  Foundation.

THE WITNESS:  The expectation for all employees is to input into the system either 80 hours of work or leave, anything to account for the hours that they are getting paid.



101

So it's -- it can be hours worked, and it can be leave.  We have a lot of very generous leave plans, a lot of leave options.  It could be bereavement.  It could be sick.  It could be holiday.  Those things help account for what the person is being paid.

Q.   BY MR. FRANKEL:  And you see in the next sentence, it says, "In general, full-time exempt and not covered employees are expected to work or account for at least 40 hours per week, or for those on alternative schedule, their normal scheduled hours for that week"?

Do you see that?

A.   Yes.

Q.   And so the goal is, you know, they're supposed to be working at least 40 hours or taking leave that gets them to the 40 hours.  They need to be at least at 40 hours, right?

A.   Yes.

Q.   There might be instances, though, where they don't necessarily have to track time above the 40 hours; is that correct?

A.   There is --

MS. BALCH SANTIAGO:  Form.  Foundation --

THE WITNESS:  There is no requirement --

MS. BALCH SANTIAGO:  -- speculation.

THE WITNESS:  -- to track your hours above what

102

you're getting paid.

Q.   BY MR. FRANKEL:  And the pay here, based on the full-time employees, would be the 40 hours per week?

A.   Yes.

And I should say there is no requirement that Central HR has.  Appointing authorities have their -- can have their own requirements and can require their staff to track over the standard hours.

Q.   Are you aware of any written policies related to that for the patrol lieutenants?

A.   I am not.

(Exhibit No. 8 was marked for identification.)

Q.   BY MR. FRANKEL:  The court reporter has just marked Exhibit 8, which is Bates-labeled at the bottom MCC 000456 through 470.  Do you see that?

A.   Yes.

Q.   And these are pay statements for Lieutenant Houck from when he was a patrol lieutenant. Do they seem like pay statements for patrol lieutenants to you?

MS. BALCH SANTIAGO:  Form.  Foundation.

THE WITNESS:  So they're pay statements for the County, and it's got Christopher Houck on there, but I don't see it indicates what his position was at the time.



103

Q.   BY MR. FRANKEL:  Sure.  But it's fair to say that we think these are reflective of the patrol lieutenants' pay statements?

MS. BALCH SANTIAGO:  Form.  Foundation. Speculation.

**THE WITNESS:  So a patrol lieutenant would have the same paycheck.**

Q.   BY MR. FRANKEL:  I'm going to ask you to look at the document that's 459 at the bottom.  I'm going to ask you if you know what some of these phrases mean.

So when it says "Holiday" and there's hours for that, did the individual work those hours for holiday?

**A.   No.  Holiday pay is pay that people get for a holiday.**

Q.   And it's a holiday they don't work?

**A.   Yes.**

Q.   So "Holiday Over Budget," is that a holiday that they worked?

**A.   Holiday Over Budget is what is coded when they worked the holiday.**

Q.   And Regular Pay where there's hours, do you see that?

**A.   Yes.**

Q.   Is that reflective of the hours that were worked that week?



104

A.   It's reflective of the hours that were recorded.

Q.   Okay.  And so is the Holiday Over Budget, those 8 hours, is that part of the 32, or is that in addition to the 32?

A.   That, I don't know.

Q.   Do you know who would know that?

A.   Our payroll unit.

Q.   Would Erin Erskine know that?

A.   She might.

Q.   I'm going to ask you to turn to 464, please. So do you see in this document it shows 67 hours worked? Do you see that?

A.   Yes.

Q.   And you see at the bottom, it says "Regular Pay" and it says 67 hours?  Do you see that?

A.   Yes.

Q.   So does the 67 hours under Regular Pay, does that reflect time worked?

A.   Regular Pay should reflect time worked, yes.

Q.   Okay.  And you see above that, it says "Regular No Pay," and it says 16.  Do you see that?

A.   Yes.

Q.   Does that reflect time worked?

A.   I believe it does.



Q.   So the time worked for this period would be 67 regular pay hours, plus 16 regular no pay hours; is that correct?

A.   Yes, I believe so.

Q.   So it would be 83 hours?

A.   Yes.

(Exhibit No. 9 was marked for identification.)

Q.   BY MR. FRANKEL:  The court reporter has just marked as Exhibit 9 a document that says "Service Codes" at the top.  Do you see that?

A.   Yes.

Q.   Do you know what this is?

A.   I do not.

Q.   Have you ever seen this before?

A.   I do not -- I have not.

Q.   And you don't know if it's something that relates to payroll or anything?

A.   No.

Q.   Do you know who might know what this is?

MS. BALCH SANTIAGO:  Speculation.

THE WITNESS:  I would believe it would be someone in the Sheriff's Office.

(Exhibit No. 10 was marked for identification.)

Q.   BY MR. FRANKEL:  Mr. Ellison, the court reporter has just handed you what's been marked as

