Shayna Balch Santiago, SBN 024852
Lori A. Guner, SBN 031646
David G. Myers, SBN 038484
FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
Telephone: (602) 281-3400
Fax: (602) 281-3401
ssantiago@fisherphillips.com
lguner@fisherphillips.com
dmyers@fisherphillips.com
Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Christopher J. Houck, on behalf of himself and all those similarly situated, | No. 2:23-cv-00068-DGC |
| Plaintiff, | **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DECERTIFY PLAINTIFFS' COLLECTIVE ACTION** |
| v. | |
| Maricopa County, | **(Oral Argument Requested)** |
| Defendant. | |

Defendant Maricopa County (the "County" and/or "Defendant"), by and through undersigned counsel, hereby submits its Reply in Support of its Motion to Decertify the Collective Action at Doc. 152 (the "Motion"). This Reply is supported by all pleadings and papers on file, the entire record, and the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff Christopher Houck and Opt-In Plaintiffs, current and former Patrol Lieutenants of the Maricopa County Sheriff's Office ("MCSO"), bring claims against the County in which they challenge their designation as exempt employees for purposes of overtime pay under the Fair Labor Standards Act ("FLSA"). The crux of Plaintiffs' claims is that their primary duty is law enforcement, and therefore they are categorically non-exempt under 29

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

C.F.R. § 541.3(b), the so-called "first responder regulation." Plaintiffs appear to claim the first responder regulation constitutes an "exception," and eliminates the need to analyze their duties under the executive, administrative, and highly compensated employee exemptions. Specifically, Plaintiffs claim that because their work is encompassed within MCSO's law enforcement function, law enforcement is their primary duty. Despite acknowledging that "much of a first responder's time and day may be devoted to work that is not necessarily frontline law enforcement," Plaintiffs assert that they all qualify as first responders because such other work "does not negate the fact that their 'primary duty' is still first responder in nature." *See* Pls.' Opp'n to Def's Mot. to Decertify at Doc. 165, p. 10.

Plaintiffs' position misapplies the first responder regulation by treating it as a bar on the application of the executive, administrative, and highly compensated employee exemptions to *leadership employees* in a first responder organization. As a result, Plaintiffs incorrectly frame the merits issue as "whether the Patrol Lieutenants' primary duty of law enforcement qualifies them as non-exempt first responders subject to overtime pay." (Doc. 165, p. 17). This flawed characterization conflates "law enforcement" with "first responders" and assumes, without engaging in any primary duty analysis, that all law enforcement personnel have a primary duty acting as frontline first responders simply because they work for a first responder organization and occasionally perform some first responder duties.

Correctly framed, the disposition of Plaintiffs claims depends on whether they are exempt from overtime under one or more of the FLSA's exemptions. The question of fact material to Plaintiffs' claims is which duty is their primary duty. The question of law material to Plaintiffs' claims is whether their primary duty brings them within an exemption to the FLSA's overtime requirements. For purposes of the decertification analysis, the question is therefore whether Plaintiffs have demonstrated that they share legal or factual similarities material to the dispositions of their claims. The answer to this question is "no." The facts in this case demonstrate considerable variances in Plaintiffs' day-to-day duties and responsibilities such that they are not similarly situated for purposes of evaluating whether they all have the same primary duty and determining whether that primary duty categorically renders them exempt or

2

nonexempt.

Plaintiffs, however, dismiss these variations as "irrelevant under a proper analysis of their 'primary duty,' which requires a holistic examination of their job duties, and ignores that the first responder regulation itself states that it applies to 'police officers . . . regardless of rank or pay level.'" (Doc. 165, p. 22). Yet Plaintiffs never engage in any such "holistic examination" and instead wield the first responder regulation to foreclose any consideration of the FLSA's exemptions. As a result, Plaintiffs summarily conclude that their primary duty is first response by virtue of working in law enforcement and that they are all similarly situated by virtue of having all engaged in some first responder activities. (Doc. 165, pp. 20-22). Plaintiffs miss the mark on the correct standard, the correct analysis, and the correct result.

Rather, the facts in this case demonstrate that Plaintiffs are not similarly situated for purposes of evaluating their exempt status. Resolution of Plaintiffs' claims would require individual analysis of each Plaintiff's job duties, making collective litigation impracticable. Accordingly, decertification of this collective is appropriate.

## II.    LEGAL ARGUMENT

### A.    The First Responder Regulation Does Not Foreclose the Application of the Executive, Administrative, or Highly Compensated Employee Exemptions to Leadership Employees in First Responder Organizations

The FLSA contains many exemptions to its overtime requirements, including the statutory exemptions for employees who are "employed in a bona fide executive capacity," 29 C.F.R. § 541.100(a), "employed in a bona fide administrative capacity," 29 C.F.R. § 541.200(a), and a subcategory of those exemptions for "[h]ighly compensated employees," 29 C.F.R. § 541.601. The determination of whether an employee falls into one of these exemptions is typically made using the "primary duty" test. 29 C.F.R. § 541.700. However, the first responder regulation, 29 C.F.R. § 541.3(b)(1), which Plaintiffs argue applies here, prohibits these exemptions in *certain* situations. The first responder regulation states that the executive, administrative, and highly compensated employee exemptions do not apply to

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

police officers, detectives, . . . and similar employees, regardless of rank or pay level, who perform work such as preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims; preventing or detecting crimes; conducting investigations or inspections for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals, including those on probation or parole; interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; or other similar work.

29 C.F.R. § 541.3(b)(1).

As courts throughout the country have explained, the purpose of the first responder regulation is to preclude the use of these exemptions for employees whose primary duty is to work in the field in frontline police, fire, or other first responder roles. *See Defining and Delimiting the Exemption for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 Fed. Reg. 22122-01, 22129-22130 (April 23, 2004) (collecting cases) (*cited with approval in Mullins v. City of New York*, 653 F.3d 104 (2d Cir. 2011)). However, "[t]he 'first responder regulation does not alter the 'primary duty' test." *Maestas v. Day & Zimmerman, LLC*, 972 F. Supp. 2d 1232 (D.N.M. Mar. 25, 2013) ("*Maestas II*") (citing *Maestas v. Day & Zimmerman*, 664 F.3d 822, 827 (10th Cir. 2012) ("*Maestas I*").

"Although 'directing the work of employees' is normally a managerial duty, it is not a managerial duty when it is performed concurrently with front-line law enforcement work." *Maestas I*, 664 F.3d at 829. While supervision and direction of subordinate employees *by an employee that primarily works in the field as a first responder, while conducting field first responder duties alongside them*, is not considered management activity for purposes of the executive exemption, it is still considered executive management when a supervisory employee engages in "directing operations" at an emergency scene, "including deciding how and where to allocate personnel, equipment and quarters." *See Mullins*, 653 F.3d at 115-16. The operative "distinction appears to hinge on whether the supervisors engage in the same front-line activities as their subordinates on a daily basis." *Maestas I*, 664 F.3d at 829. Accordingly, "high-level employees who perform some first responder duties, like police lieutenants or fire chiefs, can nonetheless be exempt executives if their primary duty is managerial and they meet the other elements of the test." *Id.* at 827.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

4

Similarly, employees that primarily engage in duties covered by the administrative exemption, or a combination of administrative and executive duties, are properly classified as exempt, even in first responder organizations. This is true regardless of whether those employees also engage in field command duties to support the first responder organization's mission. *See, e.g.*, *Maestas*, 972 F. Supp. 3d at 1243 (D.N.M. 2013) (supervisory employee in nuclear laboratory private security force that spent majority of time on executive and administrative duties did not have a primary duty as first responder despite being in uniform and armed, responding to all alarms, and remotely directing subordinates response to security threats as tactical commander); *Benavides v. City of Austin*, No. A-11-CV-438-LY, 2013 WL 3197636, at *7-10 (W.D. Tex. June 20, 2013) (EMS field commanders found exempt despite the fact that they spent only a small percentage of their day on administrative duties and spent much of their time responding to calls and directing subordinates in the field, where managerial and administrative duties were important to overall command structure).

Under the same analysis, it holds true that employees that satisfy a certain salary threshold, who "customarily and regularly perform any one or more the exempt duties or responsibilities of an executive[] [or] administrative [] employee," and "whose primary duty includes performing office or non-manual work," are properly classified as exempt, even in first responder organizations. 29 C.F.R. § 541.601.

**B.    The Fact-Specific First Responder Standard Cannot Be Satisfied by Generic Assertions that Plaintiffs' Primary Duty is Law Enforcement/First Responder**

Repeatedly, Plaintiffs generically assert that their primary duty qualifies under the first responder regulation because they are "law enforcement employees" who "engage in first responder work."[1] This simplistic argument must be rejected. Just because Plaintiffs are "law

---

[1] *See, e.g.*, Doc. 165, p. 1 ("primary role was that of a law enforcement officer" and "similarly situated in their position as law enforcement officers"); *id.* at p. 2 ("Patrol Lieutenants are similarly situated on issues material to the outcome of the case – *i.e.*, that their primary role is as law enforcement officers"); *id.* at p. 4 ("Patrol Lieutenants are similarly situated as to the material issue in this case – that they are all engaged in law enforcement as their primary duty" and "the ultimate[] liability question [is] related to first responder work"); *id.* at p. 13 ("Patrol

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

enforcement officers" on paper does not necessarily mean they are "first responders" under the first responder regulation. The primary duty question is highly fact-specific, and an employee's uniformed, armed service in a law enforcement organization is not sufficient by itself to find their primary duty is "first responding." Rather, the correct analysis is of Plaintiffs' job duties to determine if, within the context of their organization, their primary duty is properly considered to be executive management, administrative, and/or office or non-manual work, on the one hand, or field first responding alongside non-exempt subordinates, on the other. *See Mullins*, 653 F.3d at 114-19; *see also* 29 C.F.R. § 541.700 ("employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole").

Here, Plaintiffs claim that because they are all active law enforcement officers, they all: typically begin their shifts by putting on their uniform (including wearing body armor and body cameras and carrying a weapon) so they can respond to calls for service in a moment's notice; log into the CAD system at the start of their day so dispatch is aware they are available for law enforcement calls; monitor the radio to ensure they are aware of when and where they need to respond to a law enforcement call; are expected to provide law enforcement as their primary duty; respond to high-level patrol calls and report as first responders; and prioritize emergency law enforcement duties over administrative tasks. (Doc. 165, pp. 5-8). Plaintiffs claim that this evidence "clearly demonstrates" that "each of the Patrol Lieutenants . . . have the same primary duty of law enforcement." (Doc. 165, p. 9).

---

Lieutenants' primary duty (*i.e.*, their most important duty) is law enforcement and that of a first responder" and "Patrol Lieutenants are 'similarly situated' in their primary duty of law enforcement"); *id.* at p. 16 ("Patrol Lieutenants are all 'similarly situated' as law enforcement officers"); *id.* at p. 17 ("Patrol Lieutenants' primary duty of law enforcement qualifies them as non-exempt first responders"); *id.* at p. 21 ("Patrol Lieutenants are 'similarly situated' in that they engaged in [] first responder duties"); *id.* at p. 22 ("Patrol Lieutenants' primary duty of law enforcement"); *id.* at p. 26 ("Patrol Lieutenants all testified that their primary duty was law enforcement"); *id.* at p. 28 ("Patrol Lieutenants are 'similarly situated' in that they do law enforcement in the field"); *id.* at p. 29 ("Patrol Lieutenants are similarly situated in their primary duty being law enforcement"); *id.* at p. 30 ("Patrol Lieutenants are similarly situated as to their law enforcement duties").

This argument demonstrates Plaintiffs' misapplication of the first responder regulation to the primary duty analysis. This is no more evident than where Plaintiffs contend that the "practical nature of being a first responder must be taken into account *as much of a first responder's time and day may be devoted to work that is not necessarily frontline law enforcement*, but that does not negate the fact that their 'primary duty' is still first responder in nature." (Doc. 165, p. 10) (emphasis added). At no point do Plaintiffs actually engage in the proper analysis of Plaintiffs' job as a whole and explain how they arrive at their conclusion that the above evidence establishes that first response is Plaintiffs' primary duty. Rather, Plaintiffs altogether sidestep the primary duty analysis and instead generally assert that working in law enforcement is tantamount to having a primary duty of first response. Courts have rejected the arguments Plaintiffs make here.[2]

---

[2] The cases cited by Plaintiffs in support of this argument underscores their failure to properly consider their job as a whole. *See, e.g.*, *Morrison v. County of Fairfax*, 826 F.3d 758, 769-71 (4th Cir. 2016) ("Captains do not have discretion to decline to respond" and lack "discretion to determine whether and where their assistance is needed;" Captains only spent approximately 25 out of 2600 hours per year performing exempt managerial tasks); *Cunningham v. Mission Support Alliance, LLC*, No. 4:18-CV-5060-RMP, 2019 WL 13201913, at *5 (E.D. Wash. July 22, 2019) ("Captains must be prepared to leave the station in response to an emergency call in one minute during the day and in two minutes at night;" "while the Captains only spend a minimal amount of time responding to emergencies and another amount of time completing administrative or managerial tasks, a good portion of the Captains' time is spent preparing for the next emergency response"); *Carson v. City of Los Angeles*, No. CV 15-7057-JFW, 2016 WL 7647681, at *7-8 (C.D. Cal. Sept. 22, 2016) ("Plaintiffs must respond to all emergency calls to which they are dispatched;" "a substantial part of Plaintiffs' other duties consist of non-exempt work directly related to emergency response"); *Barrows v. City of Chattanooga, Tenn.*, 944 F. Supp. 596, 604-05 (E.D. Tenn. 2013) (Plaintiff responded "to every fire or medical call received during his shifts;" "[t]he basic managerial duties that were performed by Plaintiff . . . were mainly ministerial . . . [and] [t]he remainder of Plaintiff's managerial duties . . . related directly to his regular front line firefighting duties"). (Doc. 165, pp. 10-13).

These cases are distinguishable, as they involved fire department captains whose primary duty was deemed emergency response in large part because responding to emergency calls took precedence over any other activity, and because the time spent by the captains when not responding to emergency calls involved minimal exempt work and/or significant non-exempt work preparing for the next emergency response. Here, unlike the fire captains who were required to respond to *all* emergency calls, Plaintiffs specifically conceded at their depositions that they are only required to respond to "major incidents" meaning they have discretion to respond to all other calls for service (Doc. 155, DSOF, ¶¶ 220, 284); (Doc. 169, PSOF, ¶ 293).

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

For example, in *Maestas II*, the court found that a Field Operations Captain in a private security force at a nuclear security plant primarily conducted supervision, direction and administrative tasks that qualified him as exempt under the executive and/or administrative exemptions. 972 F. Supp. 2d at 1240-44. The court rejected the employee's argument that he was a first responder because he, like the subordinate Security Officers, was an armed member of the security force which served the "important purpose of 'safely securing the special nuclear material, information, employees, and property from theft, sabotage and destruction.'" *Id.* at 1244. Like Plaintiffs' approach here, that simplistic approached "prove[d] too much" because all levels of the security organization had duties that contributed to that purpose, but only those that engaged in "front-line protection" qualify as first responders. *Id.*

Similarly, in *Rooney v. Town of Groton*, the court found that a police lieutenant's duties met the administrative and/or executive exemptions, and that he was properly classified as exempt. 577 F. Supp. 2d 513, 520-34 (D. Mass. 2008). The employee's principal argument was that he should have been treated as a non-exempt first responder because his "primary duty as a Groton police officer is law enforcement." *Id.* at 520, 535-36. The court rejected this approach, saying "[s]uch broad statements . . . do not advance the analysis that needs to be undertaken. Indeed, at a certain level of abstraction, all police officers could be viewed as first responders. However, such a perspective would undermine the Department of Labor's specifically stated intent not to depart from established case law." *Id.* at 536. The court explained that the focus should be on the specific duties and responsibilities primary to his position and whether they satisfy the administrative and/or executive exemptions, which it found they did. *Id.* (holding that the fact that his leadership role supported "crime prevention" was insufficient).

Therefore, the Court must reject Plaintiffs' simplistic and misleading argument that they are all subject to the first responder regulation simply because they are members of an armed

---

Moreover, unlike the fire captains who spent most of their time performing nonexempt duties, Plaintiffs spend most of their time performing exempt duties, notwithstanding that responding to "major incidents" to perform incident command is itself an exempt duty. (Doc. 155; DSOF, ¶¶ 200-22, 276-90).

law enforcement organization devoted to ensuring public safety. Because of the significant differences in Plaintiffs' day-to-day job duties—which Plaintiffs simply disregard as "irrelevant differences," (Doc. 165, p. 13)—Plaintiffs are not similarly situated for purposes of determining their primary duty on a collective basis.[3]

### C.    Plaintiffs Rely on Generalized Evidence to Show They Are "Similarly Situated"

Plaintiffs are misplaced in their continued reliance on the County's uniform job description for all Patrol Lieutenants, uniform compensation and overtime policies applicable to all Patrol Lieutenants, and uniform policy of classifying all Patrol Lieutenants as exempt to show that they are "similarly situated."

First, Plaintiffs may not rely on the County's uniform policy of classifying Patrol Lieutenants as exempt. (Doc. 152, p. 7). *See In re Wells Fargo Home Mortg. Litig.*, 571 F.3d 953, 959 (9th Cir. 2009) ("The fact that an employer classifies all or most of a particular class of employees as exempt does not eliminate the need to make a factual determination as to whether class members are actually performing similar duties."). *C.f. McElmurry v. US Bank Nat'l Ass'n*, No. CV-04-642-HU, 2006 WL 8459340, at *9 (D. Or. Oct. 3, 2006) (noting that "exemption

---

[3] Plaintiffs endeavor to distinguish *Burke v. Mgmt. and Training Corp.*, No. 3:16-CV-00152-NBB-JMV, 2018 WL 4038115 (N.D. Miss. Aug. 28, 2018), which is cited by the County, because the plaintiffs in that case "involved lieutenants working at a correctional facility (versus the law enforcement Patrol Lieutenants at issue here)." (Doc. 165, p. 11). However, if this is grounds to ignore *Burke*, then the court should also ignore every case cited by Plaintiff which does not involve law enforcement lieutenants.

Plaintiffs also argue that the County relies on *Maestas I* "for its narrow interpretation of the applicable first responder duties" because that case "acknowledges that exempt tasks, such as managerial tasks, and first responder tasks are typically intertwined." (Doc. 165, p. 12). Plaintiffs' claims that *Maestas I* is bad law because it cites to a 2005 DOL Opinion Letter that more recent courts, including *Morrison*, have called "misplaced." (Doc. 165, p. 12). However, the 2005 DOL Opinion Letter simply applied the 2004 first responder regulation, *see generally* 2005 WL 3308611, and the part of *Morrison* referenced by Plaintiffs simply held that reliance on precedence "pre-dating the 2004 first responder regulation" was "misplaced," 826 F.3d at 768. Moreover, the County cited *Maestas I* for its statement that "[t]he first responder regulation does not alter the primary duty test." (Doc. 152, p. 23). That legal statement was not disturbed by *Morrison* and remains good law. *Morrison*, 826 F.3d at 766-73.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

1    misclassification claims are particularly unsuited to collective action treatment"). Plaintiffs'

2    reliance on *Hudgins v. Total Quality Logistics, LLC*, No. 16 C 7331, 2019 WL 354958 (N.D. Ill.

3    Jan. 29, 2019), and *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008), both out-

4    of-circuit cases, is not persuasive for the contrary proposition. (Doc. 165, p. 16). *See Beauperthuy*

5    *v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1131 (N.D. Cal. 2011) (rejecting the plaintiffs'

6    citation to a non-Ninth Circuit case for a position contrary to *Wells Fargo*, observing that

7    "[a]lthough *Wells Fargo* dealt with a Rule 23 class action, other courts in this district have

8    extended its reasoning to FLSA cases").[4]

9         Second, while a uniform job description may in some circumstances form part of the

10   evidentiary support to satisfy the similarly situated standard, it holds no weight here because

11   several Plaintiffs allege the Patrol Lieutenant job description was incomplete, while others

12   agreed that it accurately describes their duties and responsibilities as a Patrol Lieutenant. (Doc.

13   155, DSOF, ¶ 14). *See Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 579 (E.D. La. 2008)

14   ("Indeed, plaintiffs maintain that it is their day-to-day job responsibilities, not their job

15   descriptions, that render them misclassified. Therefore, the Court must look beyond the

16   nominal description of ASMs' job responsibilities to determine whether plaintiffs are similarly

17   situated with respect to their actual job duties.").

18        This fact alone distinguishes *Hudgins*, 2019 WL 354958 (N.D. Ill. Jan. 29, 2019), and

19   *Learing v. Anthem Cos., Inc.*, 722 F. Supp. 3d 929 (D. Minn. 2024), both cases cited by Plaintiffs.

20   (Doc. 165, pp. 4, 16). *Learing* is further distinguishable because the job descriptions in that case

21   were "all but identical in their description of the positions' primary duties," and it appears there

22   was no dispute as to whether all plaintiffs had "their primary duty of conducting utilization

23

24   ───────────────
     [4] The other cases cited by Plaintiffs are also distinguishable. *See Klimchak v. Cardrona, Inc.*, No.

25   CV-09-04311, 2011 WL 1120463, at *4-5 (E.D.N.Y. Mar. 24, 2011) (not a misclassification
     case); *Butler v. DirectSAT USA, LLC*, 47 F. Supp. 3d 300, (D. Md. 2014) (same); *Falcon v.*

26   *Starbucks Corp.*, 580 F. Supp. 2d 528 (S.D. Tex. 2008) (same). (Doc. 165, pp. 4-5). *Klimchak* is
     further distinguishable because it involved the similarly situated standard at the first step of

27   conditional certification, not at the second step involving "a more stringent factual
     determination." 2011 WL 1120463, at *4-5.

28

10

review," only whether that primary duty "constitutes nonexempt work under the FLSA." [5] 722 F. Supp. 3d at 937. Here, the facts show that Plaintiffs are not similarly situated on the preliminary question of what their primary duty even is.

### D.  Plaintiffs Are Not Similarly Situated Simply Because They Allegedly Perform First Responder Duties

Plaintiffs contend that collective treatment is appropriate "given the similarities in the Patrol Lieutenants' primary duty as law enforcement officers." (Doc. 165, p. 17). Specifically, Plaintiffs claim that "all the Patrol Lieutenants are uniformed law enforcement officers who are logged into CAD and monitoring the radio to be ready to respond at a moment's notice to respond to any high-level calls for service as they were required to," "[a]ll the Patrol Lieutenants engage in law enforcement duties, including responding to 'major incidents,'" and "law enforcement duties take priority over all administrative tasks they may be working on." (Doc. 165, pp. 16-17). Plaintiffs further claim there is "no evidence demonstrating that the Patrol Lieutenants do *not* engage in active law enforcement duties (Doc. 165, p. 17), and in fact, the evidence "demonstrate[s] that *all* the Patrol Lieutenants have in their role as a Patrol Lieutenant actually engaged in specific activities set forth in 29 C.F.R. § 541.3(b)," (Doc. 165, p. 20). Once again, this argument exemplifies Plaintiffs' misapplication of the first responder regulation.

While the first responder regulation does not replace the primary duty test, it does alter it in one manner: "although 'directing the work of employees' is normally a managerial duty, it is not a managerial duty when it is performed concurrently with front-line law enforcement work." *Maestas I*, 664 F.3d at 829. Thus, "[h]igh-level police, fire, and emergency officials may still be exempt employees if their primary duty is not first-response work but rather managerial

---

[5] Plaintiffs' reliance on *Landis v. Elevance Health Cos., Inc.*, No. 4:23-CV-5-M-KS, 2025 WL 2557193 (E.D.N.C. Aug. 22, 2025), is also distinguishable on the same grounds as *Learing*. (Doc. 165, p. 13). In *Landis*, there did not appear to be any doubt as to the plaintiffs' primary duty. 2025 WL 2557193, at *7 ("Plaintiffs spend the majority of their time performing utilization review." . . . "[T]he factual differences asserted by Defendants 'do not subvert the central question of whether [Plaintiffs'] primary duty of conducting utilization review constitutes nonexempt work under the FLSA.") (quoting *Learing*, 722 F. Supp. 3d at 937).

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

and administrative tasks." *See Benavides v. City of Austin*, No. A-11-CV-438-LY, 2013 WL 3197636, at * (W.D. Tex. June 20, 2013) (citing 69 Fed. Reg. at 22130). "The distinction [between exempt and nonexempt] appears to hinge on whether the supervisors engage in the same front-line activities as their subordinates on a daily basis." *Maestas I*, 664 F.3d at 829.

Here, Plaintiffs testified that unlike Patrol Deputies, Patrol Lieutenants are not required to "take all the calls that come in from dispatch" including calls that do not require a supervisor because they are low level crimes. (Doc. 155, DSOF, ¶ 284); (Doc. 169, PSOF, ¶ 284). Plaintiffs testified instead that Patrol Lieutenants are only required to respond to "high-level patrol calls," "major incidents," "serious calls," "critical incidents," and "priority calls to service" that require "incident command." (Doc. 169, PSOF, ¶ 293). Such major incidents include armed robberies, homicides, shooting victim incidents, drownings, school threats, deputy-involved shootings, and deputy-involved accidents. (Doc. 155, DSOF, ¶ 220); (Doc. 169, PSOF, ¶ 293). Plaintiffs further testified that when responding to major incidents, they assume a supervisory and managerial role, which includes taking command of the incident until it is resolved, setting up a command post, calling in and coordinating resources, assigning duties to people on scene, ensuring notifications are given to the chain of command, and ensuring sergeants are properly doing their duties. (Doc. 155, DSOF, ¶ 220).

Accordingly, the issue is not whether Plaintiffs perform law enforcement tasks, but whether Plaintiffs primarily engage in the type of frontline activities as their subordinates on a daily basis. Here, not only do Plaintiffs fail to establish that they are similarly situated with respect to the frontline first responder duties they perform, the record indicates that Plaintiffs are not similarly situated for purposes of determining whether those frontline activities constitute Plaintiffs' primary duty.

For example, Plaintiffs' testimony varied considerably regarding the frequency that they perform the type of first responder duties enumerated in the first responder regulation. Plaintiffs' individual testimony revealed that some Plaintiffs have never rescued a fire, crime, or accident victim while serving as a Patrol Lieutenant, while others have rescued upwards of 20 to 30 victims over a two-and-a-half-year period. (Doc. 155, DSOF, ¶ 225). With respect to

preventing or detecting crimes, the testimony revealed that some Plaintiffs do so weekly and others none at all. (Doc. 155, DSOF, ¶ 226). The testimony revealed similarly wide variances with respect to conducting investigations or inspections for violations of law; performing surveillance; pursuing, restraining, and apprehending suspects; detaining or supervising suspected and convicted criminals; interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; and conducting traffic stops. (Doc. 155, DSOF, ¶¶ 227-34).

Further, in those instances where a Plaintiff did respond to a call for service and perform a frontline first responder activity, the testimony does not establish whether it was performed while *concurrently* directing an operation, *ancillary* and *episodic* to major incident command, or predicated upon a *discretionary* and *voluntary* response to a low-level call. *See Morrison*, 826 F.3d at 771-72 (distinguishing between "a fire official responsible for high-level direction of operations" with "front-line firefighting" and concluding that fire captains who performed frontline firefighting were non-exempt); *Mullins*, 653 F.3d at 116 (affording controlling deference to the DOL Secretary's interpretation that "certain managerial tasks such as 'directing operations at crime, fire or accident scenes' when performed by high-level personnel who typically do not engage in any front-line activities would still be considered 'management'"); 69 Fed. Reg. at 22130 ("Another important fact considered in at least one case is that exempt police and fire executives generally are not dispatched to calls, but rather have discretion to determine whether and where their assistance is needed.") (*citing Anderson v. City of Cleveland, Tenn.*, 90 F. Supp. 2d 906, 909, 919-20 (E.D. Tenn. 2000) (police lieutenants considered exempt where they "monitor the radio in order to keep tabs on their men and determine where their assistance is needed," *i.e.*, "to ensure the law enforcement *function* with which they have been charged is being carried out correctly") (emphasis added).

Here, Plaintiffs' testimony varied considerably regarding how much time each Plaintiff spends in the field responding to calls for service. To illustrate, Plaintiff Houck testified he spent approximately 25% of his time each week out in the field responding to calls for service. (Doc. 155, DSOF, ¶ 20). Yet Plaintiff Houck testified that during a two-and-a-half-year period,

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

13

he responded to approximately ten major incidents where he performed incident command and responded to approximately four low-level calls for service as the primary unit each quarter. (**Exh. 1**, Houck Depo. 183:3-9, 223:24-224:4). Similarly, Plaintiff Freeman testified he spends between 25-50% of his time in the field, but that he responds to a major incident where he assumes the role of incident commander approximately one to two times each month. (Doc. 155, DSOF, ¶ 203); (**Exh. 2**, Freeman Depo. 92:22-94:4). Plaintiff Halverson testified that between January 2020 and June 2023, he responded on scene as the primary unit a total of 69 times (but he would expect a Patrol Deputy to respond as the primary unit to more than 100 calls for service in a given year), that he responds remotely (phone, text, email) as the nonprimary unit to the majority of calls for service, and that he spends between 10-20% of his time on scene in the field.[6] (**Exh. 3**, Halverson Depo. 87:1-95:17)

Because the testimony establishes only that each Plaintiff performed some first responder duties, and nothing more, Plaintiffs are not similarly situated for purposes of determining their primary duty and whether that duty qualifies them as nonexempt under the first responder regulation.

### E.    Plaintiffs Are Not Similarly Situated for Purposes of Determining Whether They Are Exempt Executive, Administrative, and/or Highly Compensated Employees

The executive and/or administrative exemptions are still properly applied to an employee of a first responder organization if that employee: (a) has duties that are primarily executive and/or administrative (as defined by those exemptions); (b) does not have a primary duty acting as frontline first responder; and (c) meets all other relevant requirements for the executive and/or administrative exemptions. *See Mullins*, 653 F.3d at 115-16. Similarly, the highly compensated employee exemption is still properly applied to an employee of a first

---

[6] Based on these facts, the County fails to comprehend Plaintiff's claim that a variance of 5-70% of time spent in the field "actually support[s] that the Patrol Lieutenants are 'similarly situated' in their primary duty" and "demonstrate[s] that all the Patrol Lieutenants are 'similarly situated' in that they do law enforcement work in the field." (Doc. 165, p. 28).

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

responder organization if that employee: (a) has a primary duty performing office or non-manual work; (b) does not have a primary duty acting as frontline first responder; and (c) meets all other relevant requirements for the highly compensated employee exemption. 29 C.F.R. § 541.601.

"Whether an employee is categorically non-exempt under the First Responder Regulation or is considered exempt under the executive, administrative, or [highly compensated employee] exemptions depends on that employee's primary duty." *Emmons v. City of Chesapeake*, No. 2:18-cv-402, 2019 WL 8888192, at *3 (E.D. Va. June 18, 2019) ("*Emmons I*"). An employee's "primary duty" is the "principle, main, major or most important duty that the employee performs" after analyzing "all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a). Factors to consider when determining an employee's primary duty include: (1) "the relative importance of the exempt duties as compared with other types of duties," (2) "the amount of time spent performing exempt work," (3) "the employee's relative freedom from direct supervision," and (4) "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. 541.700(a).

### 1. Differences In Work Related to the Executive and Administrative Exemption Factors

#### a. Primary Duty of Management

To qualify for the FLSA's executive exemption, an employee must have the primary duty of "management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof." 29 C.F.R. 541.100. To qualify for the FLSA's administrative exemption, an employee's primary duty must be "related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. 541.200. The Preamble to section 541.3(b) makes clear that "performing managerial tasks" is the touchstone consideration of whether high-level police officials are exempt executive or administrative employees. 69 Fed. Reg. at 22129-30 (police officers "are entitled to overtime pay even if they direct the work of other police officers because their primary duty is not

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

management or directly related to management or general business operations"); *Burke*, 2018 WL 4038115, at *2 ("Both exemptions require that the employee's 'primary duty' be related to 'management' or 'management of the enterprise.'") (citing 29 C.F.R. § 541.100, 541.200). In addition, the Preamble includes a list of emergency response tasks that can qualify as "managerial" for purposes of the primary duty test. 69 Fed. Reg. at 22130. Here, Plaintiffs' testimony varied considerably regarding their performance of the identified managerial tasks.

For example, all Plaintiffs testified that they perform annual performance evaluations and prepare performance notes for each of their sergeants on a bi-weekly basis. (Doc. 155, DSOF, ¶ 221). All Plaintiffs also testified that a significant part of their job involves performing administrative duties and attending to administrative concerns. (Doc. 155, DSOF, ¶¶ 213-222, 272-291). To varying degrees and frequencies, all Plaintiffs testified that they are responsible for responding to major incidents where they assume command and direct operations, including deciding whether additional personnel or equipment is needed. (Doc. 155, DSOF, ¶ 220). However, the similarities end there.

With respect to enforcing and imposing penalties for violations of policies, some Plaintiffs issue verbal and/or formal coaching while others do not. (Doc. 155, DSOF, ¶¶ 218, 241). With respect to discipline, Plaintiffs' testimony differed regarding their involvement in reviewing internal affairs investigations and complaints or even serving as an investigator. (Doc. 155, DSOF, ¶ 218). With respect to making recommendations as to hiring and promotion, some Plaintiffs have been involved in hiring but not promotion decisions, other Plaintiffs have been involved in promotion but not hiring decisions, and still other Plaintiffs have been involved in both hiring and promotion decisions. (Doc. 155, DSOF, ¶¶ 217, 240). With respect to coordinating and implementing training programs, some Plaintiffs have never conducted any formal training programs, some have served as training instructors, and still others have managed entire training programs. (Doc. 155, DSOF, ¶ 222). With respect to preparing budgets and controlling expenditures, some Plaintiffs have been involved in budgeting while others have not. (Doc. 155, DSOF, ¶¶ 222, 242).

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

16

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

Moreover, some but not all Plaintiffs have served as acting commanders of their district where they assume the additional managerial and command responsibilities of the district captain. (Doc. 155, DSOF, ¶ 216). Similarly, some but not all Plaintiffs have served as watch commanders where they oversee all patrol functions of an entire patrol bureau or, at times, for the entire County. (Doc. 155, DSOF, ¶¶ 20, 29-31, 49-50, 61, 63, 74, 83, 92, 95, 103-05, 107, 116, 118, 128, 139, 141, 182-83, 200-10, 212). Additionally, Plaintiffs' testimony confirmed that the day-to-day job duties varied greatly from district-to-district. (Doc. 155, DSOF, ¶ 245).

**b.   Additional Requirements Under the Executive and Administrative Exemptions**

Plaintiffs must satisfy additional requirements in order to qualify as exempt under the executive and/or administrative exemptions. It is undisputed that Plaintiffs meet the first two elements of both exemption tests: they each were paid a salary of at least $648/week. 29 C.F.R. § 541.100(a)(1), 541.200(a)(1). (Doc. 169, PSOF, ¶¶ 24, 34, 43, 53, 68, 78, 87, 98, 111, 120, 127, 138, 148, 156, 164, 172, 181, 189).

With respect to the executive exemption test, it is also undisputed that each Plaintiff routinely supervises at least two or more employees. 29 C.F.R. § 541.100(a)(3). (Doc. 169, PSOF, ¶¶ 25, 35, 44, 54, 69, 79, 88, 99, 112, 133, 145, 187). The last element is that Plaintiffs must have "the authority to hire or fire other employees" or their "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(4). As noted above in Section II.E.1., *supra*, the testimony relating to whether and to what extent Plaintiffs were involved in hiring, firing, disciplining, promoting, and other actions impacting employees' status is one of considerable differences in degree of involvement and responsibility. Although Plaintiffs contend that "these variations do not address the relevant point at this stage – whether the Patrol Lieutenants are similarly situated as to their law enforcement duties," (Doc. 165, p. 30) this misses the point altogether.

With respect to the administrative exemption test, the only remaining element is the requirement that the Plaintiffs' "primary duty includes the exercise of discretion and

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3). However, Plaintiffs' testimony regarding the amount of discretion each had and the significance of the matter of which discretion was exercised again varied considerably. To begin, all Plaintiffs exercised some degree of discretion and independent judgment with respect to matters of significance because they all served as Patrol Lieutenants, which is the second-highest ranking officer within each district. (Doc. 155, DSOF, ¶ 14). However, as noted Section II.E.1, *supra*, many Plaintiffs, but not all Plaintiffs, also served as watch commanders or acting commanders where they served as the highest-ranking scheduled individual during their respective shift, resulting in them regularly assuming supervisory command over scenes involving matters of significance. (Doc. 155, DSOF, ¶¶ 19, 20, 30, 63, 74, 103, 128, 137, 139, 182, 183, 216). Additionally, some Plaintiffs exercised discretion and made recommendations involving hiring and promotion decisions, and still others exercised discretion in formulating and revising district-wide operations manuals, overseeing district redesigns and buildouts, working on staff scheduling projects, and procuring new equipment for office-wide implementation. (Doc. 155, DSOF, ¶¶ 217-18, 222, 240-41). Plaintiffs are far from similar with respect to the frequency and degree of which they are involved with these types of matters. (Doc. 155, DSOF, ¶¶ 217-18, 222, 240-41).

Further, Plaintiffs' reliance on *Mullins* is misplaced. (Doc. 165, p. 25). In *Mullins*, the court found that police sergeants' exercise of discretion in the performance of their law enforcement work in the field did not compel a finding that their primary duty was management because they specifically *lacked* discretion to determine when they perform law enforcement work in the field. 653 F.3d at 119. Here, there is no dispute that Plaintiffs were *only encouraged* to respond to "major" incidents of limited type, such as homicides, shootings, barricades, hostage situations, school threats, and armed robberies, whereas they had *discretion* to respond to all other non-major incidents. (Doc. 155, DSOF, ¶ 220); (Doc. 169, PSOF, ¶ 293). Moreover, Plaintiffs overlook all the other matters for which they exercise discretion when not responding to calls for service and fail to show how they are similarly situated with respect to the significance, or lack thereof, of those matters.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

To qualify for the FLSA's administrative exemption, an employee must have the primary duty of "performing office or non-manual work." 29 C.F.R. § 541.601(d). When asked to quantify the time spent in the office versus out in the field, Plaintiffs' estimates reflect wide variation.

First, there are significant variations between Plaintiffs who worked in different districts. For example, Plaintiff Rankin testified to spending almost the entirety of each shift in the office while in District 3, whereas Plaintiff Rosenberger testified to spending almost the entirety of each shift out in the field while in District 1. (Doc. 155, DSOF, ¶¶ 208-09). Second, there are significant variations between Plaintiffs who worked in the same district. For example, Plaintiff Vance testified he spent upwards of 95% of his time in the office while in Lake Patrol, whereas Plaintiff Rosenberger testified he spent approximately 8.5 hours each shift out in the field. (Doc. 155, DSOF, ¶¶ 209, 212). Third, there are significant variations between Plaintiffs themselves. For example, Plaintiff Acosta testified he spent approximately 30% of his time in the office when he worked in District 3, whereas he now spends approximately 90% of his time in the office working in District 2. (Doc. 155, DSOF, ¶ 201).

### 2. Additional Requirements Under the Highly Compensated Employee Exemption.

To qualify as exempt under the highly compensated employee exemption, Plaintiffs must also satisfy two requirements. First, it is undisputed that Plaintiffs satisfy the element requiring that they "customarily and regularly perform[] any one or more of the exempt duties or responsibilities of an executive[] [or] administrative . . . employee." 29 C.F.R. § 541.601(b)(c). (Doc. 155, DSOF, ¶¶ 25, 35, 44, 54, 69, 79, 88, 99, 112, 133, 145, 187). However, as set forth above, there are wide differences regarding the specific executive or administrative tasks performed by the lieutenants.

As to the remaining element, it is undisputed that Plaintiffs are not similarly situated with respect to the applicable salary threshold. During the relevant lookback period, federal regulations have applied different salary thresholds for the highly compensated exemption, and many Plaintiffs satisfied the applicable threshold in some years and not in others. (Doc. 155,

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

1    DSOF, ¶ 26, 36, 45, 54, 70, 80, 89, 100, 113, 119, 134, 146, 154, 162, 170, 179, 188, 196). Thus,

2    a factfinder will need to determine which years each Plaintiff satisfied the salary threshold and

3    then conduct a highly individualized inquiry into the actual job duties performed and the time

4    spent in the office versus in the field in each particular year to determine whether this exemption

5    is met.

6              **3.    *Variations Relevant to the Primary Duty Analysis***

7              a.    <u>**Relevant Importance of Exempt Duties as Compared with**</u>
8                    <u>**Other Types of Duties**</u>

9              When asked to provide responses about their "primary" duty as Patrol Lieutenants,

10   Plaintiffs testimony varied considerably. Plaintiff Brice identified "a combination of

11   management, leadership, policing, and unfortunately a lot of admin duties that have to be

12   done." (Doc. 155, DSOF, ¶ 219). While working in District 1, Plaintiff Acosta identified "giving

13   guidance," "ensuring that the deputies were safe and that they were following policies and

14   procedures and – and that they were documenting whatever they needed to document to ensure

15   it was done appropriately." (Doc. 155, DSOF, ¶ 283). But in District 2, Plaintiff Acosta

16   identifies his primary duty as overseeing "internal affairs investigations," working with the "field

17   training program," and "building maintenance and anything that has to do with supplies for . .

18   . the district itself." (Doc. 155, DSOF, ¶ 283). Plaintiff Houck identified "law enforcement"

19   and "being *available* to respond to calls," but unlike Patrol Deputies, his primary duty is not

20   *actually* "tak[ing] all the calls that come in from dispatch." (Doc. 155, DSOF, ¶ 284); (Doc. 169,

21   PSOF, ¶ 284). Plaintiff Keller identified "uphol[ing] the laws, lead[ing] by example, while

22   managing my sergeant and deputies." (Doc. 155, DSOF, ¶ 285). And Plaintiff Thomas

23   identified "incident command" of "significant incidents," "setting up a command post,"

24   "requesting additional resources," assigning duties to people on scene," ensuring notifications

25   are given to the chain of command," and "ensuring the sergeants are properly doing their

26   duties." (Doc. 155, DSOF, ¶ 286).

27

28

### b. <u>The Amount of Time Spent Performing Exempt Work</u>

When asked to quantify the amount of time spent performing exempt work, some Plaintiffs could not even attempt to do so. (Doc. 155, DSOF, ¶ 245). For those Plaintiffs that could, their testimony varied considerably regarding the amount of time they spend out in the field responding to significant incidents they are *required* to respond to versus responding to low-level calls they have the *discretion* to respond to, driving their unmarked patrol vehicle and the tasks performed while on patrol, and performing non-manual work in the office and the combination of managerial and administrative duties while in the office. (Doc. 155, DSOF, ¶¶ 200-12, 219, 245).

### c. <u>Relative Freedom from Direct Supervision</u>

The County does not argue that Plaintiffs are not similarly situated under this factor, as the facts demonstrate that Plaintiffs did enjoy relative freedom from direct supervision. (Doc. 156, p. 13). However, Plaintiffs take the position that Patrol Lieutenants "have little freedom in deciding how to perform their jobs, which weighs in favor of them being non-exempt first responders." (Doc. 165, p. 25). Specifically, they claim that "Captains – not Patrol Lieutenants – had the final decision-making power in terms of district decisions;" that Captains can "overrule them;" that Patrol Lieutenants have "no authority to make important decisions;" and that Captains review Patrol Lieutenants "on all tasks they performed to ensure they followed all the County policies and tracked the lieutenants consistently throughout [the] day when logged onto CAD." (Doc. 165, pp. 25-26).

None of this establishes that Plaintiffs lack relevant freedom from direct supervision. Rather, as set forth above and in the County's Motion, Plaintiffs' testimony confirms that they had considerable freedom and control over when, where, and how they performed their daily duties. This is abundantly clear by the fact that Plaintiffs are tasked with responding to major incidents to direct subordinate officers and make split second strategy decisions on scene, where a directional or strategic mistake could result in loss of equipment, loss of property, or worse, severe injury or loss of life. Moreover, "[i]t is, more generally, no argument against the managerial nature of an employee's activities to imply that said employee could always enjoy

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

*more* liberty or exercise *more* control." *Emmons v. City of Chesapeake*, 982 F.3d 245, 253 (4th Cir. 2020) (emphasis in original) ("The appreciable independent judgment [fire captains] must exercise in coordinating and monitoring their firefighters' work does not dwindle to nothing simply because greater authority over certain matters lies higher up in the chain of command.").

### d.    Relationship Between Salary and Wages Paid to Other Employees for the Kind of Nonexempt Work Performed

Finally, there are significant differences in the relationship between salary and wages paid to lieutenants versus other employees, rendering the lieutenants not similarly situated. Upon their promotion, lieutenants receive pay raises of about 10%.  Doc. 159, Ex. 1 ¶ 18. However, in his Response to Defendant's Motion for Summary Judgment, Plaintiff contends "even if the Patrol Lieutenants are assigned a higher pay grade than non-exempt sergeants below them, the sergeants make more than the Patrol Lieutenants when factoring in their overtime."  Doc. 166, p. 33:16-18.  If Plaintiff's logic were followed, then to determine the relationship between salary and wages paid to other employees, the Court would need to determine how much each sergeant makes, add their overtime pay, and compare each of those figures against the hours and pay of every lieutenant.  Such an analysis would be highly individualized.  Accordingly, the lieutenants are also not similarly situated in this respect.

## III.    CONCLUSION

For the reasons set forth above, in the County's Motion, and in the voluminous discovery record submitted in support thereof, Defendant respectfully requests that the Court decertify Plaintiffs' collective action under the FLSA and further order any other relief the Court deems just and proper.

DATED this 13th day of February 2026.

FISHER & PHILLIPS LLP

By  s/  David G. Myers
    Shayna Balch Santiago
    Lori A. Guner
    David G. Myers
    3200 N. Central Avenue, Suite 1550
    Phoenix, Arizona 85012-2487
    Attorneys for Defendants

FP 61654843.1

# CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

Ty D. Frankel
Frankel Syverson PLLC
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
ty@frankelsyverson.com
Attorneys for Plaintiff

Patricia N. Syverson
Frankel Syverson PLLC
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
patti@frankelsyverson.com
Attorneys for Plaintiff

    s/  Michelle C. Xochicale

23

FP 61654843.1