1   Shayna Balch Santiago, SBN 024852
2   Lori A. Guner, SBN 031646
    David G. Myers, SBN 038484
3   FISHER & PHILLIPS LLP
    3200 N. Central Avenue, Suite 1550
4   Phoenix, Arizona 85012-2487
    Telephone: (602) 281-3400
5   Fax: (602) 281-3401
6   ssantiago@fisherphillips.com
    lguner@fisherphillips.com
7   dmyers@fisherphillips.com
8   Attorneys for Defendants

9                  UNITED STATES DISTRICT COURT

10                      DISTRICT OF ARIZONA

11  Christopher J. Houck, on behalf of himself      No. 2:23-cv-00068-DGC
    and all those similarly situated,
12                                                   **DEFENDANT'S OBJECTIONS
                            Plaintiff,               AND CONTROVERTING
13                                                   STATEMENT OF FACTS TO
            v.                                       PLAINTIFF'S ADDITIONAL
14                                                   STATEMENT OF FACTS AT DOCS.
    Maricopa County,                                 173 AND 175**
15
16                          Defendant.

17

18          Pursuant to LRCiv 56.1(b), Defendant Maricopa County (the "County" and/or

19  "Defendant") hereby submits its Controverting Statement of Facts in response to

20  Plaintiff's Additional Statement of Facts in Support of Plaintiff's Cross Motion for

21  Summary Judgment and Plaintiff's Response to Defendant's Motion for Summary

22  Judgment and Motion to Decertify, beginning on page 86 of Doc. 173 and Doc. 175

23  (sealed).

24              **DEFENDANT'S CONTROVERTING STATEMENT OF FACTS**

25          292.    During their shifts, each of the Patrol Lieutenants are required to be in

26  uniform (including wearing their Body Worn Camera ("BWC")), logged into the computer-

27  aided dispatch ("CAD") system and monitoring the police radio, as the Patrol Lieutenants

28  are not simply working in the office but are required to be ready at a moment's notice to

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FP 61586460.2

respond to any high-level patrol calls. PSOF Ex. 6, Jackson 30:8-23, 32:15–34:14, 35:2-20, 40:2-8, 43:3-8 ("uniformed, armed, prepared to be a first responder or respond as backup", logged into CAD and monitoring the radio); PSOF Ex. 1, Houck 21:9-22:23, 30:5-23, 31:15-32:14, 96:3-11 (logged in, monitoring radio so "can respond to first responder law enforcement calls as required by the County"); PSOF Ex. 15, Cpt. Bailey 54:9-13 ("the lieutenants that all worked under me wore their uniform. They wore their body armor. They wore their body worn cameras. And they were expected to carry the same equipment that a deputy would carry when he was on duty"); PSOF Ex. 14, Cpt. Aldorasi 23:7-24:9 (lieutenants' job is not simply an office job – they have to be involved in patrol duties, logged into CAD, monitor radio for activity); PSOF Ex. 18, Cpt. Stutsman 34:6-35:3 62:6-10 (required to wear BWC "just like a deputy is", logged in and monitoring the radio); PSOF Ex. 14, Cpt. Aldorasi 27:9-14 (wear BWC); PSOF Ex. 16, Cpt. Kratzer 25:2-25, 27:12-28:6, 52:2-4 (wears a uniform and BWC so they can respond, logged into CAD and monitoring radio); PSOF Ex. 5, Halverson 35:20-36:19 (in uniform); PSOF Ex. 17, Cpt. Lee 35:20-36:2, 38:15-39:1, 54:6-17, 66:19-23 (in uniform, with BWC, logged into CAD and monitoring radio in case need to respond); PSOF Ex. 4, Freeman 50:16-53:12 (in uniform and required to be logged on during normal shift when doing law enforcement); PSOF Ex. 11, Thomas 47:2-51:5 (in uniform, including BWC, logged in and monitoring radio); Rankin 19:17-25, 21:22- 22:12, 90:22-91:3, 104:2-6 (in uniform and expected to be logged in); PSOF Ex. 7, Keller 64:18-65:8, 99:7-10, 100:9-101:6 (in uniform, logged into CAD and monitor radio); PSOF Ex. 10, Rosenberger 44:10-21, 46:16-25 (logged into CAD); PSOF Ex. 5, Halverson 35:20-36:19, 46:3-10 (logged into CAD and monitoring calls for service before driving to work); PSOF Ex. 8, Neville 71:1-72:3 (logged into CAD); PSOF Ex. 13, Vance 59:1-61:4, 62:7-17 (logged into CAD); PSOF Ex. 3, Brice 35:1–37:4, 37:21-39:12 (required to be logged into CAD, monitor radio and be available for calls); Doc. 27-1, Houck Decl. at 10, ¶11-11, ¶16; Doc. 27-2, Halverson Decl. at 3, ¶7 and 4, ¶12 and Sanchez Decl. at 127, ¶12.

   ***Defendant's Response: Defendant objects to PSOF ¶ 292 because it misstates***

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

1   *the cited testimony. In the testimony cited by Plaintiff, although Houck and*

2   *the opt-ins confirmed that they wear a uniform and that they log into the*

3   *CAD system as part of their job, they did not state that they are required to*

4   *always be in uniform and logged into CAD. In fact, Houck testified that he is*

5   *not always logged into CAD, nor it is it a hard and fast rule that he must be.*

6   *For example, when asked if he performed any patrol duties while he was not*

7   *logged into the CAD system, Plaintiff Houck testified that "sometimes there*

8   *was cases where I had like logged off [of CAD] at my driveway and I would*

9   *hear of a call and have to log back in and respond to it[.]" PSOF Ex. 1, at*

10  *32:15-20. He further testified that only if one is "in patrol" are they required to*

11  *be logged into CAD is one required to be logged into CAD the entire time*

12  *they are on shift. Id. at 31:15-23. When asked, "[i]s it your testimony that for*

13  *each day that you worked you were required to log in to CAD at the*

14  *beginning of your shift and log out of CAD at the end of your shift?", Houck*

15  *replied: "For the most part. It wasn't like a – a hard-fast rule." Id. at 96:3-7.*

16  *When further asked, "[o]n what percentage of your scheduled workdays did*

17  *you log in at the beginning of your shift in CAD and log out at the beginning*

18  *– at the end of your shift in CAD?", Houck stated, "I think for the majority of*

19  *the workdays I did." Id. at 96:8-11.*

20

21  *Furthermore, Defendant disputes that "Patrol Lieutenants are not simply*

22  *working in the office," as some Patrol Lieutenants spend essentially all of*

23  *their working time in the office on all or most days. The opt-ins testified that*

24  *they spend a significant amount of time in the office doing administrative*

25  *work. For example, Lieutenant Brice testified that there were times he spent*

26  *an entire day at his office. DSOF, ¶ 202. Lieutenant Rankin testified that*

27  *while in District 3, his commute to and from work took approximately 30*

28  *minutes. He further testified that the majority of the remaining 9.5 hours of*

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

*his shift was spent in the office. Half of the day, he would be in his personal office and the other half, he would be in the captain's or other sergeants' offices. DSOF, ¶ 208. Lieutenant Thomas testified that while in District 1, he spends about 3 out of his 4 workweek days entirely in the office. DSOF, ¶ 210. Lieutenant Vance testified that he spent "maybe 90, 95 percent" of his day "in the office." Exhibit 1, Jerry Vance deposition transcript at 72:12-19. Furthermore, several opt-ins testified that they have discretion concerning which calls to respond to. Lieutenant Freeman testified that lieutenants have discretion in deciding which calls to respond to, and further testified that not all high priority calls required a sergeant to respond, Exhibit 2, Benjamin Freeman deposition transcript at 30:3-31:10; Lieutenant Jackson testified about using the CAD system to "monitor the radio….determine what you should or shouldn't respond to, prioritize what needs a response, that type of thing[]," Exhibit 3, Alden Jamaal Jackson deposition transcript at 32:19-33:3; Lieutenant Houck testified, in response to a question whether there was "a specific cutoff where a sergeant would be called out supervise" based on the severity of the call, that they "are not called by dispatchers to a scene. They have to self-[deploy]" and that every supervisor "has like a different way of going about business", Exhibit 4, Christopher Houck deposition transcript at 158:4-159:9; Lieutenant Vance testified that as watch commander, every shift there would be "at least three or four a night all the way up to maybe 10 or 12 … priority one calls" - which he described as a shooting, death, significant injuries, etc. - but that he would not personally respond to all priority one calls, and on some shifts he would not respond to any. Exhibit 1, Jerry Vance transcript 66:11-68:11.*

293.     Each of the Patrol Lieutenants are expected to provide law enforcement as their primary duty, including being required to respond to all high-level patrol calls and report as first responders in the field for all such calls – including "major incidents" such as

4

armed robberies, homicides, shooting victim incidents, drownings, and school threats. PSOF Ex. 13, Vance 66:11-67:9 (required to respond to "major incidents" "like, a deputy involved shooting, deputy-involved accident, if an employee got injured, if a suspect or a member of the public got injured at the hands of the sheriff's office'" and "major incidents like, you know, shooting in a community, an accident where somebody died or has the potential to die due to their injuries"); PSOF Ex. 15, Cpt. Bailey 43:10-19, 62:6-63:21 ("you would expect a watch commander or a lieutenant to show up on" all newsworthy, unusual or major emergency incidents – such as armed robberies, homicides, shooting victim incidents); PSOF Ex. 17, Cpt. Lee 42:9-13, 56:4-57:5 (expected to respond to major incidents, which includes drownings); PSOF Ex. 16, Cpt. Kratzer 26:12-19, 45:7-16 (expected to respond to major incidents, as outlined in the MCSO policy); PSOF Ex. 18, Cpt. Stutsman 57:3-16, 59:12-60:15, 66:17-19 (should go out on all Officer Involved Shooting (OIS) calls, "absolutely" should respond to school threat calls); PSOF Ex. 2, Acosta 78:8-79:4 (required to go on "serious calls" or "critical incidents", such as shootings, aggravated assault search where people were injured, major accidents, kidnapping, murder, hostage situation, bus accident with lots of kids); PSOF Ex. 4, Freeman 27:1-22, 28:4-20, 30:4-24 (function was to respond to significant events, such as major crimes, anything with media, homicide, suicide, serious vehicular accidents, shooting, assaults, "deputy-involved shooting"); PSOF Ex. 8, Neville 124:6-125:14 (expected to go to major incidents, any time a "gun gets fired in a district that I'm a commander of. I'm going to [respond]."); PSOF Ex. 9, Rankin 17:2-14 (go to priority calls to service that would need incident command, such as shootings, stabbings, anything where an officer got hurt, questionable deaths), PSOF Ex. 9, Rankin 97:11-25 (go to more serious calls, like homicide); Doc. 27-1, Houck Decl. at 10, ¶10; Doc. 27-2, Halverson Decl. at 3, ¶8 and Sanchez Decl. at 126, ¶8.

*Defendant's Response: Defendant objects to PSOF ¶ 293 because it is a legal conclusion and not a fact based on admissible evidence as required under Fed. R. Civ. P. 56 and LRCiv 56.1 ("The separate statement should include*

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

1  *only those facts that the Court needs to decide the Motion.*”); *see also* Kilroy

2  *v. Ruckelshaus, 738 F.2d 1448, 1452 (9th Cir. 1984) (“Our reading of*

3  *[plaintiff's] proposed findings of fact reveals that they are actually legal*

4  *conclusions … and were disputed by [defendant] in its memoranda. The*

5  *district court was not obligated to accept [plaintiff's] legal conclusions as true*

6  *simply because he characterized them as statements of fact.”).*

7

8  *Furthermore, Defendant disputes the statements within PSOF ¶ 293. The*

9  *Patrol Lieutenants' primary duty involves management and managerial tasks,*

10  *including: making recommendations as to hiring and promotions;*

11  *participating in discipline and internal affairs investigations; supervising,*

12  *monitoring, and directing the work of subordinate employees, assuming*

13  *command and directing operations at major incidents; evaluating personnel*

14  *performance and monitoring and enforcing legal compliance measures;*

15  *participating in training programs, and budgeting, and special projects.*

16  *Defendant's Separate Statement of Facts at Doc. 157 (“DSOF”), ¶¶ 217 – 222.*

17  *Further, the Opt-Ins do not have a primary duty to serve as a first responder*

18  *as set forth in 29 U.S.C. § 541.3(b). DSOF, ¶¶ 223 – 235. Lieutenants are not*

19  *required or expected to engage in deputy level tasks such as rescuing crime*

20  *victims, detecting crimes, conducting criminal investigations, apprehending*

21  *suspects, or interviewing/interrogating individuals. DSOF, ¶¶ 213 – 215.*

22  *Moreover, the lieutenants are not required to respond to all “major*

23  *incidents,” as they testified that they had discretion to decide which incidents*

24  *to respond to. DSOF ¶¶ 258-263, 284. Additionally, Defendant further the*

25  *statement within PSOF ¶ 293 is not-supported by the cited testimony of the*

26  *Captains. The cited testimony indicates that the Lieutenants had discretion*

27  *as to which incidents to show up to; it does not indicate that it is expected as*

28  *the Lieutenants' primary duty that they must show up to all high-level patrol*

1    **calls. *Indeed, this proposition is contradicted by the testimony of the***
2    ***Lieutenants themselves. DSOF, ¶¶ 258-263, 284.***

3    294.    Such first responder duties take priority over any administrative tasks Patrol
4    Lieutenants had. Captain Stutsman testified: "[A]ll the administrative duties come to a
5    screeching halt when preservation of life is foremost. They will respond, and they will stop
6    what they're doing." PSOF Ex. 18, Cpt. Stutsman 65:22-66:1; see also PSOF Ex. 18, Cpt.
7    Stutsman 66:20-22 ("that's the preservation of life I mentioned. That is foremost, and then
8    property and then administrative"); PSOF Ex. 3, Brice 49:20-50:3, 54:9-16, 57:13-16
9    ("you're still listening to radio and something kicks out, then you got to unfortunately drop
10    all of that and then go and take that call…the difficulty of patrol, is you have these
11    [administrative] assignments and you are constantly being pulled away from those
12    assignments and you have to come back"; "if you spend all your time doing admin, you are
13    not doing your job, right. Admin stuff is important, but you got to -- we are here for
14    policing"); PSOF Ex. 6, Jackson 93:25-94:5, 96:7-17, 96:24-97:5 (as a patrol lieutenant "you
15    are uniformed, armed, listened to the radio, monitoring CAD, so you are ready to respond
16    at all times and expected to respond. So doing an EPA [employee performance evaluation]
17    would take a back burner to first responder duties as -- as they came up"); PSOF Ex. 15,
18    Cpt. Bailey 66:11-67:7 (for "big events" or serious calls, the call would take priority over
19    administrative tasks); PSOF Ex. 14, Cpt. Aldorasi 27:2-8 (law enforcement is more
20    important than administrative duties); PSOF Ex. 17, Cpt. Lee 44:24-45:9 ("managing a
21    major incident definitely is more important than those administrative tasks"); PSOF Ex.
22    16, Cpt. Kratzer 26:21-27:10, 28:20-29:12 (when first responder incident presents itself, it
23    is the priority over administrative tasks); PSOF Ex. 9, Rankin 94:21-95:15, 95:20-96:20
24    ("primary function was to patrol and the needs of patrol and to assist and lead patrol, and
25    then everything was secondary to that"; includes "directing work" as well as "going to the
26    important calls yourself to manage things when they are of high priority"); Ex. 15, Cpt.
27    Bailey 45:1-5, 54:19-55:7, 56:20-57:3 ("primary function" is to "protect the public",
28    "prevent crime" and "oversee and manage the assets" that are involved in first responder

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

7

1  duties and, in doing so, they are also engaged as a first responder when necessary)); Doc.
2  27-1, Houck Decl. at 10, ¶12; Doc. 27-2, Halverson Decl. at 3, ¶6 and Sanchez Decl. at
3  126, ¶6.

**Defendant's Response: Defendant objects to PSOF ¶ 294 because it is vague and ambiguous and overstates and misstates the testimony it relies upon. It does not specify what "first responder duties" it refers to. Furthermore, in the cited testimony, the opt-ins stated that they only respond occasionally to some incidents, i.e., to major incidents or big events.**

**Thus, Defendant further disputes the statement in PSOF ¶ 294. There is no evidence or testimony that all first responder duties take priority over administrative tasks. To the contrary, first responder duties do not take priority over any administrative tasks Patrol Lieutenants have, because Lieutenants are not required or expected to engage in deputy level tasks such as rescuing crime victims, detecting crimes, conducting criminal investigations, apprehending suspects, or interviewing/interrogating individuals. DSOF, ¶¶ 213 – 215. Further, Lieutenants do not have a primary duty to serve as a first responder as set forth in 29 U.S.C. § 541.3(b). DSOF, ¶¶ 223 – 235. Patrol Lieutenants are responsible for responding to significant incidents, wherein they have a supervisory and managerial role, which includes taking command of the incident until it is resolved, setting up a command post, calling in and coordinating resources, assigning duties to people on scene, ensuring notifications are given to the chain of command, and ensuring sergeants rae properly doing their duties. DSOF, ¶ 220.**

295.    As Houck explained, as a Patrol Lieutenant his job involved "going to calls, monitoring the radio, assisting with the apprehension of bad guys, putting together – helping deputies put together criminal investigations" "being ready" as that accounts for "75 percent of my time. That's what I'm there for. I'm there to respond to calls. I'm there

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

FP 61586460.2

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

1    to respond to things that need a command presence." PSOF Ex. 1, Houck 192:4-193:12.

2        ***Defendant's Response:** Defendant objects to and disputes PSOF ¶ 295*

3        *because it misstates the cited testimony. At his deposition, in response to the*

4        *question, "Are there are categories not listed on this job description that you*

5        *would describe as an essential job task as a law enforcement lieutenant?",*

6        *Plaintiff Houck testified, among other things, that if the job description "was*

7        *written for my duty assignment I would expect it to talk about like patrol,*

8        *going to calls, monitoring the radio, assisting with the apprehension of bad*

9        *guys, putting together – helping deputies put together criminal*

10       *investigations." Houck Deposition, 192:4-6, 192:22 – 193:1.    Further, in*

11       *response to the question, "So if there was an additional category for what you*

12       *just described as assisting with apprehension and patrol, what amount of*

13       *time would you say you spend on a weekly basis focused on just those*

14       *tasks?", Plaintiff Houck responded: And part of that I consider to be like*

15       *monitoring the radio, being ready. I think that's 75 percent of my time. That's*

16       *what I'm there for. I'm there to respond to calls. I'm there to respond to*

17       *things that need a command presence." Houck Deposition, 193:4-12.*

18       296.    Significantly, Patrol Lieutenants are subject to reprimand or discipline for

19   failure to respond to such incidents. See, e.g., PSOF Ex. 14, Cpt. Aldorasi 24:10-19; PSOF

20   Ex. 17, Cpt. Lee 37:1-38:5; PSOF Ex. 18, Cpt. Stutsman 35:10-19; PSOF Ex. 16, Cpt.

21   Kratzer 26:21-27:10.

22       ***Defendant's Response:** Defendant objects to PSOF ¶ 296 because it is*

23       *overbroad and vague, as it does not identify the "incidents" it refers to, and*

24       *furthermore, the cited deposition testimony does not stand for the proposition*

25       *asserted in PSOF ¶ 296 because the statement is so vague and overbroad.*

26       *Defendant further disputes the statement because Plaintiff Houck testified*

27       *his "Primary duty as a patrol lieutenant remains law enforcement, being*

28       *available to respond to calls," yet he agreed that it is not the primary duty of a*

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

*Patrol Lieutenant to actually "respond to calls for service." DSOF, ¶ 284. When asked, "So would you agree that it's not a primary duty of sergeants or lieutenants to respond to calls for service?", Houck testified: "Right. That's the deputy's job." Ex. 2 to DSOF (Houck Deposition), 234:22-25. This contradicts the statement in PSOF ¶ 296 that Patrol Lieutenants are subject to reprimand for discipline for failure respond to incidents, since, according to Plaintiff, the Lieutenants' primary duty is not to respond to calls for service.*

297.    Simply stated, the Patrol Lieutenants' primary role is as a law enforcement officer. As Houck explained:

> "The duties that I have as a patrol lieutenant are exactly the same as I had as a patrol sergeant….My primary duty as a patrol lieutenant remains law enforcement, being available to respond to calls, being -- having to show up in uniform, be on the radio, be logged in to the CAD system to be dispatched to calls. I'm not a -- in a management-type role. I'm still in a first responder role….That my primary duty remains law enforcement. That's what – that's what I'm there for."

PSOF Ex. 1, Houck 19:22-20:11. See also PSOF Ex. 8, Neville 26:11-27:20 (still law enforcement role: "I was responding to calls for service. I was taking calls as a primary. I was writing reports. I was doing a lot of the same jobs that I did as a patrol sergeant when I worked as a sergeant in District II.").

*Defendant's Response: Defendant objects to PSOF ¶ 297 because Plaintiff's statement that "the Patrol Lieutenants' primary role is as a law enforcement officer" is a legal conclusion and not a fact based on admissible evidence as required under Fed. R. Civ. P. 56 and LRCiv 56.1 ("The separate statement should include only those facts that the Court needs to decide the Motion."); see also Kilroy v. Ruckelshaus, 738 F.2d 1448, 1452 (9th Cir. 1984) ("Our reading of [plaintiff's] proposed findings of fact reveals that they are actually legal conclusions … and were disputed by [defendant] in its memoranda. The district court was not obligated to accept [plaintiff's] legal conclusions as*

*true simply because he characterized them as statements of fact."). To the contrary, the Patrol Lieutenants' primary role is not as a law enforcement officer. As the MCSO Command Responsibility Policy GB-2 demonstrates and as corroborated by the MSCO Lieutenant job description, lieutenants are not required or expected to engage in deputy level tasks such as rescuing crime victims, detecting crimes, conducting criminal investigations, apprehending suspects, or interviewing/interrogating individuals. Instead, lieutenants are required to supervise their direct reports who carry out these law enforcement duties, such that lieutenants' primary role is not as a law enforcement officer. DSOF, ¶¶ 14-15, 214-215. The Lieutenant job description sets forth the essential duties of the Lieutenant position, which include administration, incident management, career and professional development, supervision, community policing, and management. DSOF, ¶ 15. Absent from the Patrol Lieutenant job description is the expectation that Lieutenants conduct criminal investigations, respond to calls for service, or engage in patrol duties. Id. The lieutenants' primary duty involves management and managerial tasks, as follows: (a) Many of the opt-ins testified that they were involved with and make recommendations as to hiring and promotion decisions (DSOF, ¶ 217); (b) patrol lieutenants have the authority to report misconduct; file complaints; initiate, serve as the principal; and assume responsibility over internal affairs investigations, including making recommendations of sustained findings; issue action plans to subordinates; and issue verbal and formal coachings (DSOF, ¶ 218); (c) Houck and the deposed opt-ins all testified that they supervise two or more employees (DSOF, ¶ 219); (d) as stated by Brice when asked what the primary duty of a law enforcement lieutenant is: "You are the – the supervisor, you are there to help the deputies and sergeants grow so they can one day also be supervisors, so a combination of management, leadership, policing, and unfortunately a*

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

11

*lot of admin duties that have to be done." (Id.); (e) patrol lieutenants are responsible for responding to significant incidents, and Houck and the deposed opt-ins testified to their supervisory and managerial role when responding to significant incidents, which includes taking command of the incident until it is resolved, setting up a command post, calling in and coordinating resources, assigning duties to people on scene, ensuring notifications are given to the chain of command, and ensuring sergeants are properly doing their duties (DSOF, ¶ 220); (f) patrol lieutenants perform annual performance evaluations for each of their sergeants, and, on a bi-weekly basis, patrol lieutenants also prepare performance notes for each of their sergeants to ensure legal compliance with policies, procedures, protocols, and court orders, which is based on a review of the sergeants' internal affairs investigation and reports, BlueTeam supervisor notes, productivity, patrol activity logs, traffic stops, arrests, accidents, and body camera video (DSOF, ¶ 221); (g) patrol lieutenants are responsible for several other key managerial and administrative tasks to maintain departmental functions and operational readiness, including budgeting, formal training of sergeants and deputies, serving as firearms instructors for the MCSO firearms training unit, teaching substantive courses at the policy academy, and managing and overseeing Field Training Officer programs (DSOF, ¶ 222); and (h) patrol lieutenants are also tasked with special projects where they make important recommendations, including scheduling projects to address staffing issues, design and buildouts of facilities, procuring new equipment and devices like fingerprint scanner for office-wide implementation, and revising district operations manuals (Id.).*

298.    This understanding of the Patrol Lieutenant's role was shared by the Patrol Lieutenants' Captains as well. For example, Captain Stutsman explained that he expected his Patrol Lieutenants were actively involved in law enforcement as "we're cops first,

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FP 61586460.2

always":

> "[M]y lieutenants are uniformed. They respond. They are constantly monitoring. They go out when necessary and they are engaged….So my lieutenants are engaged in the field. Yes, they have administrative duties. Yes, they spend time in the office, but they are available to respond to all calls for service."

PSOF Ex. 18, Cpt. Stutsman 58:22-59:4, 33:3-10; *see also* PSOF Ex. 18, Cpt. Stutsman 36:14-22 ("But the lieutenants, that's their job. They are to get out there. They're to make sure that everything is d[one, so, yes, they will be responding…. [T]hey are uniformed, and I do want them out there hands-on at the scene."), PSOF Ex. 18, Cpt. Stutsman 16:13-20 (lieutenants are "first responders").

> ***Defendant's Response: Defendant objects to PSOF ¶ 298 because it is vague and ambiguous, as it is entirely unclear what the phrase "this understanding of the Patrol Lieutenants' Role" refers to. Defendant further disputes PSOF ¶ 298 because the Captains testified that the Lieutenants' primary duty consists of supervising. See Exhibit 5, John Bailey deposition transcript p. 56:13-22 (denying that the "most important element of a lieutenant's job is to law enforcement and first responder duties" and responding that "their primary function is to oversee and manage the assets that are doing that); Exhibit 6, Brian Stutsman deposition transcript p. 28:17-29:7 and 52:13-53:7 (denying that first responder duties are the primary duties of a patrol lieutenant; testifying that the duties of a watch commander "are to oversee the patrol functions of the County" including providing "mentorship or management" to the deputies); Exhibit 7, David Lee deposition transcript p. 43:7-44:13 (denying that "acting as a first responder" was the most important duty of a lieutenant and stating that going to a scene "as a first responder [is] a deputy and a sergeant thing.").***

299.    Captains are a higher rank than the Patrol Lieutenants who are supervised by captains. *See, e.g.,* PSOF Ex. 14, Cpt. Aldorasi 12:19-13:7 (captains' duties included

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

supervising Patrol Lieutenants); PSOF Ex. 15, Cpt. Bailey 32:20-34:4 (captains were responsible for evaluating the Patrol Lieutenants and ensuring they were complying with all County policies and procedures); Doc. 155-4 at Ex. 5 HOUCK000179 (noting Law Enforcement Lieutenants report to Law Enforcement Captains).

**Defendant's Response: It is undisputed that Captains are ranked higher than Patrol Lieutenants, and that Captains supervise Patrol Lieutenants.**

300.    Senior Human Resources employees from the County agree that how the Patrol Lieutenants *actually* perform their jobs is what matters, not the job descriptions. PSOF Ex. 19, Ellison 50:19-51:13; PSOF Ex. 20, Erskine 36:4-24.

**Defendant's Response: Defendant objects to Plaintiff's PSOF ¶ 300 because statement that "how the Patrol Lieutenants actually perform their jobs is what matters, not the job descriptions" is a legal conclusion and not a fact based on admissible evidence as required under Fed. R. Civ. P. 56 and LRCiv 56.1 ("The separate statement should include only those facts that the Court needs to decide the Motion."); see also Kilroy v. Ruckelshaus, 738 F.2d 1448, 1452 (9th Cir. 1984) ("Our reading of [plaintiff's] proposed findings of fact reveals that they are actually legal conclusions … and were disputed by [defendant] in its memoranda. The district court was not obligated to accept [plaintiff's] legal conclusions as true simply because he characterized them as statements of fact."). Defendant further objects on the basis that PSOF ¶ 301 misstates the testimony by Defendant Maricopa County's Deputy Director of Human Resources Darrien Ellison and Maricopa County's Compensation Manager Erin Erskine. Mr. Ellison did not testify that he agreed that how the Patrol Lieutenants perform their jobs matters, and their job descriptions do not matter. Instead, Mr. Ellison testified that the evaluation of whether a patrol lieutenant is exempt is "based on what they do in the field … which should be reflected on the job description in the essential functions." PSOF, Ex. 19, deposition transcript of Darrien Ellison at 50:19-51:13. Therefore, Mr.**

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

14

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

1  *Ellison did not make a representation that the job descriptions do not matter,*

2  *but rather indicated that they indicate what is done in the field. Similarly, Ms.*

3  *Erskine did not testify that the job descriptions do not matter. Rather, she*

4  *testified both that the patrol lieutenant job description is informative of their*

5  *duties, and additionally, that how someone performs their job governs*

6  *whether they are exempt. PSOF, Ex. 20, deposition transcript of Erin Erskine*

7  *at 36:4-24.*

8      301.    Senior Human Resources personnel also agree that the job description does

9  not contain all the duties that the Patrol Lieutenants perform. PSOF Ex. 22, Grennan

10  29:17- 21.

11      **Defendant's Response: Defendant objects to PSOF ¶ 301 because it does not**

12  **contain a citation to a specific admissible portion of the record, as required**

13  **by LRCiv 56.1(a).  PSOF ¶ 301 contains a citation to page 29 of the deposition**

14  **transcript of Maricopa County Sheriff's Office's Deputy Chief of Human**

15  **Resources Bureau, Kelly Grennan, however page 29 of her deposition was not**

16  **attached as an exhibit to Plaintiff's statement of facts, therefore Plaintiff did**

17  **not provide any support to a specific admissible portion of the record for this**

18  **statement of fact. Moreover, Ms. Grennan testified that lieutenants have**

19  **duties described in their job description, "as well as other duties that are**

20  **assigned at each division or district or assignment", suggesting that some**

21  **lieutenants may have duties which are not set forth in their job description.**

22  **Exhibit 8.**

23      302.    The Fields report lists first responder duties that the Patrol Lieutenants

24  perform, including for example interviewing and interrogating suspects, interviewing

25  victims and witnesses at crime scenes, and initiating traffic stops to ensure public safety.

26  PSOF Ex. 22, Grennan 31:12-34:25, 39:14-40:24; Doc. 155-2, 155-3, and 155-11 at Ex. 4 at

27  HOUCK000052.

28      **Defendant's Response: Defendant objects to PSOF ¶ 302 because the**

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

*deposition testimony it cites to does not stand for the proposition in the statement, and further, it misstates The Fields Report. The Fields report does not state that the Patrol Lieutenants perform first responder duties, including interviewing and interrogating suspects, interviewing victims and witnesses at crime scenes, and initiating traffic stops to ensure public safety, and Ms. Grennan did not so state. Fields Consulting Group, Inc. was hired by Maricopa County to analyze the job duties actually performed by deputies, sergeants, lieutenants, and captains with the Patrol Bureau of MCSO, and a report was prepared in 2017. DSOF, ¶ 9. The purpose of the Job Analysis Report was to assist Maricopa County with preparation of updated and accurate job descriptions for each rank, based on job duties actually performed. Id. As stated in the report, Fields sent surveys to numerous individuals, performed interviews, and analyzed the responses before preparation of their findings contained in the report. DSOF, ¶ 10. Fields received and analyzed responses to the "Task Survey" (asking questions about frequency of tasks performed), and as part of the surveys, Fields specifically asked lieutenants about the "frequency" and "importance" of the various tasks performed. Id. As Ms. Grennan explained in her deposition, the Fields report lists the interviewing and interrogating suspects, interviewing victims and witnesses at crime scenes, and initiating traffic stops to ensure public safety as tasks that lieutenants responding to the report were asked to review. PSOF, Ex. 2, Kelly Grennan deposition transcript at 39:8-12. Fields reported the findings to Maricopa County by way of "Task Cluster" tables, demonstrating that "Incident Management" and "Supervision" were some of the most important and commonly performed tasks. DSOF, ¶ 11. On the other hand, "Patrol Duties" and "Criminal Investigations" were rarely performed. Id.*

303.    Key County human resources personnel testified that the Fields report

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

delineates numerous first responder tasks that the Patrol Lieutenants perform. PSOF Ex. 21, Farrow 109:6-110:20, 111:14-115:9; PSOF Ex. 22, Grennan 38:23-40:23.

> *Defendant's Response: Defendant objects to PSOF ¶ 303 because it misstates the testimony of Maricopa County Sheriff's Office Human Resources Manager Keely Farrow and Ms. Grennan. Human Resources personnel did not testify that the Fields report delineates numerous first responder tasks that the Patrol Lieutenants actually perform, but rather, they testified that the Fields report lists various tasks regarding which respondents were asked to review. PSOF Ex. 21, deposition transcript of Keely Farrow at 109:6-110:20, 11:14-115:9; PSOF Ex. 22, deposition transcript of Kelly Grennan at 38:23-40:23.*

> *The Fields report does not state that the Patrol Lieutenants perform first responder tasks. Fields Consulting Group, Inc. was hired by Maricopa County to analyze the job duties actually performed by deputies, sergeants, lieutenants, and captains with the Patrol Bureau of MCSO, and a report was prepared in 2017. DSOF, ¶ 9. The purpose of the Job Analysis Report was to assist Maricopa County with preparation of updated and accurate job descriptions for each rank, based on job duties actually performed. Id. As stated in the report, Fields sent surveys to numerous individuals, performed interviews, and analyzed the responses before preparation of their findings contained in the report. DSOF, ¶ 10. Fields received and analyzed responses to the "Task Survey" (asking questions about frequency of tasks performed), and as part of the surveys, Fields specifically asked lieutenants about the "frequency" and "importance" of the various tasks performed. Id. As Ms. Grennan explained in her deposition, the Fields report lists the interviewing and interrogating suspects, interviewing victims and witnesses at crime scenes, and initiating traffic stops to ensure public safety as tasks that*

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

*lieutenants responding to the report were asked to review. PSOF, Ex. 2, Kelly Grennan deposition transcript at 39:8-12. Fields reported the findings to Maricopa County by way of "Task Cluster" tables, demonstrating that "Incident Management" and "Supervision" were some of the most important and commonly performed tasks. DSOF, ¶ 11. On the other hand, "Patrol Duties" and "Criminal Investigations" were rarely performed. Id.*

304.    Even when they may be the highest-ranking official on duty such as when they are serving a period as night commander or an acting captain, the Patrol Lieutenants ultimately must run decision-making by their Captains and/or Chief. PSOF Ex. 1, Houck 115:13-116:7 (after night shift, had to update captains and chief about status of all calls); PSOF Ex. 11, Thomas 20:2-21:2, 24:16-21 (when acting captain, may still have contact with captain if any major issues came up); PSOF Ex. 8, Neville 126:2-128:8 (as a watch commander, he was "scene commander" but was still "getting my orders from my captain who, at the time, is asleep in his bed").

*Defendant's Response: Defendant objects to PSOF ¶ 304 because it misstates the testimony of Plaintiff Houck and opt-ins Thomas and Neville. Furthermore, the citations in PSOF ¶ 304 do not support the proposition in the statement. The citations indicate that Houck and opt-ins testified that they updated their captains after a shift or occasionally contacted them regarding major issues, not that they "must ultimately run decision-making by their Captains and/or Chief." PSOF ¶ 304 cites to the Houck deposition at 115:13-116:7 for the assertion that "even when they may be the highest-ranking official on duty such as when they are serving a period as night commander or an acting captain, the Patrol Lieutenants must ultimately run decision-making by their Captains and/or Chiefs. However, to the contrary, at 115:13-116:7 of his deposition, Plaintiff Houck merely stated that he would email a "duty report" to Chiefs and Captains when working night shift, not that he*

FP 61586460.2

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

*was required to run any decision-making by the Chiefs and captains. PSOF Ex. 1, deposition transcript of Plaintiff Houck at 115:13-116:7. Similarly, PSOF ¶ 304 cites to the deposition testimony of opt-in Thomas at 20:2-21:2 and 24:16-21, however, therein, Thomas testified that he typically had zero contact with Captain Bailey when Captain Bailey was out and Thomas was serving as acting commander for him, and further, that Thomas had once contacted Captain Bailey when he was out on vacation, simply "to check on him," not for work related matters. PSOF Ex. 11, Thomas 20:2-21:2, 24:16-21. Finally, PSOF ¶ 304 cites to the deposition testimony of opt-in Neville at 126:2-128:8, wherein Neville gave an example of a scene of a flood in Gila Bend, for which he was the night commander, and for which he received orders from his Captain. PSOF Ex. 8, Neville 126:2-128:8. None of the deponents mentioned herein stated that while serving as the highest-ranking official on duty (such as when serving a period as night commander or acting captain), the Patrol Lieutenants ultimately must run decision-making by their Captains and/or Chief.*

305.    Patrol Lieutenants are responsible for "incident management" of high-level calls which is not simply supervision and management but involves being actively engaged in law enforcement duties. *See* PSOF Ex. 15, Cpt. Bailey 26:23-27:17 (when "running an incident" – such as a barricade, a warrant service, an aggravated assault – "the lieutenants are the ones that pretty much go in and they become the incident manager for that event…So are they putting hands on a suspect and putting handcuffs on a suspect? It happens occasionally. But for the most part, they're directing the law enforcement operation at the time of the incident."); PSOF Ex. 18, Cpt. Stutsman 22:5-23:18 and PSOF Ex. 16, Cpt. Kratzer 20:13-21:3, 21:15-22:13 (incident management occurs in the field and "absolutely" involves law enforcement duties); PSOF Ex. 14, Cpt. Aldorasi 16:14-18:4 (incident management routinely includes "any sort of major incident that might occur in the field: maybe a death, a fatal car accident, a homicide that occurs in the streets, you

know, in our community, hit-and-run" and the lieutenants involved are engaged in first responder duties); PSOF Ex. 17, Cpt. Lee 26:3-27:1, 39:19-23, 41:4-17 ("Lieutenants manage bigger incidents where there needs to be additional resources requested, interagency communication, command posts"; management of these types of large incidents are "a first responder activity"); PSOF Ex. 8, Neville 126:2-128:8 (duties on scene include "coordinating" the command and control center, as well as in one example, "responding with the [deputies and sergeants]" to rescue and recover flood victims and control looting); PSOF Ex. 3, Brice 118:6-119:13, 122:6-21 (primary duty is controlling the scene and do what needs to be done, engage in active patrolling to prevent crime); Ex. 6, Jackson 93:25-94:5, 96:7-17, 96:24-97:5 (lieutenants were "absolutely" first responders as they were "expected in their role to respond to an emergency incident and [ ] administer lifesaving efforts in whatever capacity that may be in, so you risk life and limb to save that of another"); Ex. 9, Rankin 94:21-95:15, 95:20-96:20 ("primary function was to patrol and the needs of patrol and to assist and lead patrol, and then everything was secondary to that"; includes "directing work" as well as "going to the important calls yourself to manage things when they are of high priority"); Ex. 15, Cpt. Bailey 45:1-5, 54:19-55:7, 56:20-57:3 ("primary function" is to "protect the public", "prevent crime" and "oversee and manage the assets" that are involved in first responder duties and, in doing so, they are also engaged as a first responder when necessary)).

*Defendant's Response: It is undisputed that "Patrol Lieutenants are responsible for 'incident management' of high-level calls. However, Defendant disputes the statement that "'incident management' of high-level calls … is not simply supervision and management but involves being actively engaged in law enforcement duties. Rather, the patrol lieutenants' "incident management" of high-level calls involves managing the scene and directing and coordinating law enforcement. When asked to describe the essential job task of "incident management" in his own words, Plaintiff Houck testified that: Lieutenants "respond to major scenes and set up … a*

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

*command post. Where you basically set up a pop-up tent and you coordinate the resources that coming out, like the – the SWAT team, the hostage negotiation team, and you basically take charge or command of the incident until the incident is resolved." DSOF, ¶ 281. Houck further testified that whenever "something of significance" occurred such as a barricade situation or murder, he was expected to take command of the scene, make judgment calls in real time, and then provide briefing up the chain of command "after [he] made the world safe." DSOF, ¶ 281.*

306.    All such duties involve the Patrol Lieutenants engaging in non-exempt, first responder duties. As Lieutenant Halverson explained:

Q. Earlier you indicated that you are a first responder. Do you remember that testimony?

A. Yes.

Q. What exactly do you mean by that? Do you mean that you are the one actually making arrests and doing investigations, or is that a reference to your supervising, overseeing, giving feedback to your sergeants and your deputies who are preforming those duties?

A. **They are all first responder responsibilities.** I have actually been the one to go out and take the calls for service and clear them or write a report. I have been the one to actually go and make the arrest. I have also been the one that does the very same job as the sergeant or a senior deputy in helping them make the decisions and process the scene, whether it is being there or do it telephonically.

PSOF Ex. 5, Halverson 86:10-25; see also PSOF Ex. 5, Halverson 93:10-23, 94:11-15 (even if the non-primary responder, he would be "directing that call, analyzing evidence, making the decisions on probable cause, ensuring that the deputy processes it the correct way").

*Defendant's Response: Defendant objects to PSOF ¶ 306 because the statement that "[a]ll such duties involve the Patrol Lieutenants engaging in non-exempt, first responder duties" is a legal conclusion and not a fact based on admissible evidence as required under Fed. R. Civ. P. 56; and LRCiv 56.1*

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

21

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

*("The separate statement should include only those facts that the Court needs to decide the Motion."); see also Kilroy v. Ruckelshaus, 738 F.2d 1448, 1452 (9th Cir. 1984) ("Our reading of [plaintiff's] proposed findings of fact reveals that they are actually legal conclusions … and were disputed by [defendant] in its memoranda. The district court was not obligated to accept [plaintiff's] legal conclusions as true simply because he characterized them as statements of fact."). Defendant further objects on the basis the PSOF ¶ 306 is vague and ambiguous, as it does not indicate what "all such duties" refers to. Moreover, it is further objectionable because is conclusory and relies on an inadmissible opinion under Federal Rule of Evidence 701, and not a specific admissible portion of the records where the fact finds support, as required by LRCiv 56.1.*

*Additionally, Defendant disputes PSOF ¶ 307, because when asked to describe the essential job task of "incident management" in his own words, Plaintiff Houck testified that: Lieutenants "respond to major scenes and set up … a command post. Where you basically set up a pop-up tent and you coordinate the resources that coming out, like the – the SWAT team, the hostage negotiation team, and you basically take charge or command of the incident until the incident is resolved." DSOF, ¶ 281. Houck further testified that whenever "something of significance" occurred such as a barricade situation or murder, he was expected to take command of the scene, make judgment calls in real time, and then provide briefing up the chain of command "after [he] made the world safe." DSOF, ¶ 281.*

307.    The Captains – not the Patrol Lieutenants – had final decision-making power in terms of district decisions. See, e.g., PSOF Ex. 15, Cpt. Bailey 24:16-25:1 ("I would let the lieutenants make their decisions. But if it was a decision that I thought maybe was not the best interest of the office or the individual, I would overrule them.") and 33:3-34:4,

59:12-60:12 (Captains reviewed lieutenants on all tasks they performed to ensure they followed all the County policies and tracked the lieutenants consistently throughout day when logged onto CAD); PSOF Ex. 8, Neville 25:20-26:1 (as lieutenant he doesn't have "the kind of command latitude to be able to make day-to-day decisions that shape the landscape of this agency by personnel or policy", decisions go through "his bosses"); PSOF Ex. 1, Houck 15:6-12 (no authority to make important decisions); Doc. 27-1, Houck Decl. at 10, ¶14; Doc. 27-2, Halverson Decl. at 4, ¶10 and Sanchez Decl. at 126, ¶10.

*Defendant's Response: Defendant objects to PSOF ¶ 307 because it is irrelevant and inadmissible, and it does not "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FRE 401, 402; Fed R. Civ. P. 56(c)(2). Information concerning the Captains' decision-making authority does not constitute purported facts that is of consequence to either Plaintiff's or Defendant's motions for summary judgment. Nevertheless, Defendant disputes PSOF ¶ 307. When a patrol district's Captain/Commander is unavailable, a Patrol Lieutenant fill the role as the patrol district's "acting commander" or "acting captain," who becomes the highest-ranking individual in the patrol district. DSOF, ¶ 216. Similarly, Patrol Lieutenants who work the night shift are referred to as the "watch commander" and are the highest-ranking individual during that shift for Patrol Bureau East or West, and at times for the entire County. Id.*

308.    As Lieutenant Jackson explained, the job description says "The Law Enforcement Lieutenant administers, plans, organizes and directs the operations of a district," [but] that's not true. That would be the captain's job. The law enforcement lieutenant supports the captain in that -- in that mission." PSOF Ex. 6, Jackson 66:23-67:9.

*Defendant's Response: Defendant objects to PSOF ¶ 308 because it is vague and ambiguous, as it does not specify which "job description" it refers to. PSOF ¶ 308 is further objectionable on the basis that is merely a quote of an*

*opt-in purportedly reading a job description, which does not constitute a fact, as required by LRCiv 56.1.*

*Moreover, Defendant disputes Plaintiff's assertion that the statement "The Law Enforcement Lieutenant administers, plans, organizes and directs the operations of a district" is "not true," and it is "the captain's job" to administer, plan, organize and direct the operations of a district, and further, that "the … lieutenant supports the captain in that … mission." The Lieutenants administer, plan, organize, and direct the operations of a district by: filling the role as the patrol district's "acting commander" or "acting captain", thereby becoming the highest-ranking individual in the patrol district; working the night shift as the "watch commander", thereby becoming the highest-ranking individual during that shift for Patrol Bureau East or West, and at times for the entire County; being involved with and making recommendations as to hiring and promotion decisions; having the authority to report misconduct; filing complaints; initiating, serving as the principal, and assuming responsibility over internal affairs investigations; issuing action plans to subordinates; issuing verbal and formal coaching; supervising two or more employees; supervising, monitoring, and directing the work of their subordinates; responding to and taking command of significant incidents; performing annual performance evaluations for each of their sergeants; on a bi-weekly basis, prepare performance notes for each of their sergeants; budgeting; conducting formal training to sergeants and deputies; serving as firearms instructors for the MCSO firearms training unit; teaching substantive courses at the police academy; managing and overseeing Field Training Officer programs; being tasked with special projects where they make important recommendations, including scheduling projects to address staffing issues, design and buildouts of facilities,*

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

FP 61586460.2

*procuring new equipment and devices like fingerprint scanners for office-wide implementation, and revising district operations manuals; DSOF, ¶¶ 216 – 221.*

309.    The Patrol Lieutenants "supervise by policy" – i.e., enforce the County's policies – and have no discretion to deviate from the County's policies that they have no role in setting. PSOF Ex. 7, Keller 91:10-19 ("There is no discretion from a captain to lieutenant. The way we're told how we supervise is by policy. So it's all the same.").

**Defendant's Response: Defendant objects to PSOF ¶ 309 because it is conclusory and is an inadmissible opinion by one opt-in under Federal Rule of Evidence 701; it does not establish that all Patrol Lieutenants "supervise by policy." Defendant objects on the basis that PSOF ¶ 301 misstates the cited testimony by opt-in Keller. When asked whether "when [he] served as acting commander … captain for Kratzer" whether he "possess[ed] any degree of discretion in [his] oversight of subordinates", Keller did not state that he "supervise[s] by policy" or that he and the other lieutenants have no discretion "to deviate from the County's policies" but rather, he stated, "I don't know what you mean by 'discretion,' first off." PSOF Ex. 7, deposition transcript of David Keller at 91:10-19.**

310.    For example, Patrol Lieutenants do not create paid sick time policies for their subordinates but simply convey and follow the County's established paid sick time policy. *See, e.g.,* PSOF Ex. 11, Thomas 75:21-76:4, PSOF Ex. 8, Neville 93:7-18, PSOF Ex. 9, Rankin 36:24-37:6, PSOF Ex. 4, Freeman 96:23-97:8.

**Defendant's Response: Defendant objects to PSOF ¶ 315 to the extent that it is a legal conclusion and improperly implies that a Lieutenant must create paid sick time policies in order to qualify for an exemption under the FLSA. Thus, it is not a fact based on admissible evidence as required under Fed. R. Civ. P. 56 and LRCiv 56.1 ("The separate statement should include only those facts that the Court needs to decide the Motion."); see also Kilroy v.**

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

25

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

*Ruckelshaus, 738 F.2d 1448, 1452 (9ᵗʰ Cir. 1984) ("Our reading of [plaintiff's] proposed findings of fact reveals that they are actually legal conclusions … and were disputed by [defendant] in its memoranda. The district court was not obligated to accept [plaintiff's] legal conclusions as true simply because he characterized them as statements of fact.").*

*Defendant further objects to PSOF ¶ 310 because it is irrelevant and inadmissible and does not "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FRE 401, 402; Fed. R. Civ. P. 56(c)(2). Information regarding whether Patrol Lieutenants create paid sick time policies is not a purported fact that is of consequence to either Plaintiff's or Defendant's motions for summary judgment because the executive and administrative exemptions from overtime under 29 CFR §§ 541.100 and 541.200 do not require such acts qualification for said exemptions, nor is it relevant to the First Responder Regulation found at 29 CFR § 541.3(b)(1).*

311.    The Patrol Lieutenants also do not have final or full authority to **create department policies.** PSOF Ex. 8, Neville 26:6-10 (would have to go through policy review process if didn't agree with policy); PSOF Ex. 9, Rankin 48:17-52:10 (updated operations manual but really no discretion; specifically told what to do by captain).

*Defendant's Response: Defendant objects to PSOF ¶ 311 to the extent that it is a legal conclusion and improperly implies that a Lieutenant must have final or full authority to create department policies in order to qualify for an exemption under the FLSA. Thus, it is not a fact based on admissible evidence as required under Fed. R. Civ. P. 56 and LRCiv 56.1 ("The separate statement should include only those facts that the Court needs to decide the Motion."); see also Kilroy v. Ruckelshaus, 738 F.2d 1448, 1452 (9ᵗʰ Cir. 1984)*

*("Our reading of [plaintiff's] proposed findings of fact reveals that they are actually legal conclusions ... and were disputed by [defendant] in its memoranda. The district court was not obligated to accept [plaintiff's] legal conclusions as true simply because he characterized them as statements of fact.").*

*Defendant further objects to PSOF ¶ 311 because it is irrelevant and inadmissible and does not "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FRE 401, 402; Fed. R. Civ. P. 56(c)(2). Information regarding whether Lieutenants have authority to create department policies is not a purported fact that is of consequence to either*

312.    The Patrol Lieutenants also do not have final or full authority to **make final scheduling decisions.** PSOF Ex. 1, Houck 72:12-14, 75:8-76:3 (need captain's permission for scheduling); PSOF Ex. 4, Freeman 95:17-25 (did not make scheduling decisions); PSOF Ex. 11, Thomas 88:14-89:15 (no authority to permanently adjust someone's schedule or change squad, requires "captain's approval"); PSOF Ex. 6, Jackson 45:21-46:10 (made recommendations but not accepted); PSOF Ex. 13, Vance 104:12-20 (could only temporarily change schedules).

*Defendant's Response: Defendant objects to PSOF ¶ 312 to the extent that it is a legal conclusion and improperly implies that a Lieutenant must have final or full authority to make final scheduling decisions in order to qualify for an exemption under the FLSA. Thus, it is not a fact based on admissible evidence as required under Fed. R. Civ. P. 56 and LRCiv 56.1 ("The separate statement should include only those facts that the Court needs to decide the Motion."); see also Kilroy v. Ruckelshaus, 738 F.2d 1448, 1452 (9ᵗʰ Cir. 1984) ("Our reading of [plaintiff's] proposed findings of fact reveals that they are*

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

*actually legal conclusions ... and were disputed by [defendant] in its memoranda. The district court was not obligated to accept [plaintiff's] legal conclusions as true simply because he characterized them as statements of fact.").*

*Defendant further objects to PSOF ¶ 312 because it is irrelevant and inadmissible and does not "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FRE 401, 402; Fed. R. Civ. P. 56(c)(2). Information regarding whether Patrol Lieutenants have final or full authority to make final scheduling decisions is not a purported fact that is of consequence to either Plaintiff's or Defendant's motions for summary judgment because the executive and administrative exemptions from overtime under 29 CFR §§ 541.100 and 541.200 do not require such authority for qualification for said exemptions, nor is it relevant to the First Responder Regulation found at 29 CFR § 541.3(b)(1). Defendant further objects to PSOF ¶ 312 because it is vague and ambiguous, as it is entirely unclear what "final scheduling decisions refers to."*

313.    The Patrol Lieutenants also do not have final or full authority to discipline sergeants or deputies. PSOF Ex. 1, Houck 15:6-12, 209:21-210:10, 211:20-212:7 (no authority to issue discipline); PSOF Ex. 8, Neville 26:2-5 (decision to place on admin leave would have to go through executive chief level); PSOF Ex. 3, Brice 107:9-16 (not permitted to make recommendations regarding discipline); PSOF Ex. 7, Keller 54:6-20 (not permitted to discipline subordinates).

*Defendant's Response: Defendant objects to PSOF ¶ 314 to the extent that it is a legal conclusion and improperly implies that a Lieutenant must have final or full authority to discipline sergeants or deputies in order to qualify for an exemption under the FLSA. Thus, it is not a fact based on admissible*

1    *evidence as required under Fed. R. Civ. P. 56 and LRCiv 56.1 ("The separate*

2    *statement should include only those facts that the Court needs to decide the*

3    *Motion."); see also Kilroy v. Ruckelshaus, 738 F.2d 1448, 1452 (9th Cir. 1984)*

4    *("Our reading of [plaintiff's] proposed findings of fact reveals that they are*

5    *actually legal conclusions … and were disputed by [defendant] in its*

6    *memoranda. The district court was not obligated to accept [plaintiff's] legal*

7    *conclusions as true simply because he characterized them as statements of*

8    *fact.").*

9

10   *Defendant further objects to PSOF ¶ 313 because it is irrelevant and*

11   *inadmissible and does not "make the existence of any fact that is of*

12   *consequence to the determination of the action more probable or less*

13   *probable than it would be without the evidence." FRE 401, 402; Fed. R. Civ.*

14   *P. 56(c)(2). Information regarding whether Patrol Lieutenants have final or*

15   *full authority to discipline sergeants or deputies is not a purported fact that is*

16   *of consequence to either Plaintiff's or Defendant's motions for summary*

17   *judgment because the executive and administrative exemptions from*

18   *overtime under 29 CFR §§ 541.100 and 541.200 do not require such authority*

19   *for qualification for said exemptions, nor is it relevant to the First Responder*

20   *Regulation found at 29 CFR § 541.3(b)(1).*

21

22   *Defendant further disputes PSOF ¶ 313. Patrol Lieutenants have the authority*

23   *to report misconduct; file complaints; initiate, serve as the principal, and*

24   *assume responsibility over internal affairs investigations, including making*

25   *recommendations of sustained findings; issue action plans to subordinates;*

26   *and issue verbal and formal coachings. DSOF, ¶ 217. For example, Plaintiff*

27   *Houck testified that he has placed a sergeant on an action plan. DSOF,*

28   *Exhibit 5, deposition transcript of Plaintiff Houck at 217:12-15.*

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

314.    The Patrol Lieutenants also do not have final or full authority to **hire or fire employees.** PSOF Ex. 15, Cpt. Bailey 25:7-16 (lieutenants "had no say in hiring or firing or even assignments"); PSOF Ex. 18, Cpt. Stutsman 28:19-29:9 (even as a Captain, can be involved in the process but does not have discretion to hire or fire – all goes through HR); PSOF Ex. 14, Cpt. Aldorasi 20:12-21:1, 22:6-12 (lieutenants and even captains do not have authority – all goes through HR; lieutenants may have "advisory' role on staffing issues but they "do not have the last say"); PSOF Ex. 2, Acosta 119:15-123:10 (involved in making recommendations but "didn't make the final say" as that would go up to captain and chief); PSOF Ex. 17, Cpt. Lee 32:4-19, 33:4-19, PSOF Ex. 16, Cpt. Kratzer 23:10-24:25, PSOF Ex. 1, Houck 15:6-12, 209:16-210:10, 211:20-212:2 and PSOF Ex. 9, Rankin 70:8-14 (lieutenants and even captains involved in process but HR makes decisions); PSOF Ex. 4, Freeman 98:10-99:8 and PSOF Ex. 8, Neville 98:10-23 (involved in promotional panel or interviewing but didn't make final determination); PSOF Ex. 6, Jackson 57:6-10, PSOF Ex. 3, Brice 107:9-16 and PSOF Ex. 7, Keller 53:24-54:5 (not involved in hiring/firing); Doc. 27-1, Houck Decl. at 10, ¶15; Doc. 27-2, Halverson Decl. at 4, ¶11 and Sanchez Decl. at127, ¶11).

*Defendant's Response: Defendant objects to PSOF ¶ 314 to the extent that it is a legal conclusion and improperly implies that a Lieutenant must have final or full authority to hire or fire an employee in order to qualify for an exemption under the FLSA. Thus, it is not a fact based on admissible evidence as required under Fed. R. Civ. P. 56 and LRCiv 56.1 ("The separate statement should include only those facts that the Court needs to decide the Motion."); see also Kilroy v. Ruckelshaus, 738 F.2d 1448, 1452 (9th Cir. 1984) ("Our reading of [plaintiff's] proposed findings of fact reveals that they are actually legal conclusions … and were disputed by [defendant] in its memoranda. The district court was not obligated to accept [plaintiff's] legal conclusions as true simply because he characterized them as statements of fact.").*

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

*Moreover, Defendant further objects, and disputes PSOF ¶ 314, because, as Defendant argued in its Motion for Summary Judgment at Doc. 156, the Lieutenants need only "provide suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees" under the FLSA's executive exemption. See 29 C.F.R. § 541.105. Thus, Defendant further objects to PSOF ¶ 314 because it is irrelevant and inadmissible and does not "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FRE 401, 402; Fed. R. Civ. P. 56(c)(2). Information regarding whether Patrol Lieutenants have final or full authority to hire or fire employees is not a purported fact that is of consequence to either Plaintiff's or Defendant's motions for summary judgment because the executive and administrative exemptions from overtime under 29 CFR §§ 541.100 and 541.200 do not require such authority for qualification for said exemptions, nor is it relevant to the First Responder Regulation found at 29 CFR § 541.3(b)(1).*

315.    The Patrol Lieutenants also do not have final or full authority to make purchase/budgeting decisions. PSOF Ex. 1, Houck 222:10-18 (never heard of lieutenants doing budgeting); PSOF Ex. 8, Neville 142:20-143:4 (filled out a purchase order but numerous higher command signatures required to finalize).

*Defendant's Response: Defendant objects to PSOF ¶ 315 to the extent that it is a legal conclusion and improperly implies that a Lieutenant must have final or full authority to make purchase/budgeting decisions in order to qualify for an exemption under the FLSA. Thus, it is not a fact based on admissible evidence as required under Fed. R. Civ. P. 56 and LRCiv 56.1 ("The separate statement should include only those facts that the Court needs to decide the Motion."); see also Kilroy v. Ruckelshaus, 738 F.2d 1448, 1452 (9th Cir. 1984)*

*("Our reading of [plaintiff's] proposed findings of fact reveals that they are actually legal conclusions … and were disputed by [defendant] in its memoranda. The district court was not obligated to accept [plaintiff's] legal conclusions as true simply because he characterized them as statements of fact.").*

*Defendant further objects to PSOF ¶ 315 because it is irrelevant and inadmissible and does not "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FRE 401, 402; Fed. R. Civ. P. 56(c)(2). Information regarding whether Patrol Lieutenants have final or full authority to make purchase/budgeting decisions is not a purported fact that is of consequence to either Plaintiff's or Defendant's motions for summary judgment because the executive and administrative exemptions from overtime under 29 CFR §§ 541.100 and 541.200 do not require such authority for qualification for said exemptions, nor is it relevant to the First Responder Regulation found at 29 CFR § 541.3(b)(1).*

*Additionally, Defendant dispute PSOF ¶ 315. The Patrol Lieutenants have authority to make purchase and budgeting decisions. For example, opt-in Vance testified that he would manage and oversee funding, and that he had authority to make purchase order requests and submission. DSOF, Ex. 30, deposition testimony of Jerry Vance at 84:122. Furthermore, opt-in Halverson testified that he had been involved in budgeting as a lieutenant within District 7. Exhibit 9, Jonathan Halverson deposition transcript at 82:14-16.*

316.    Many of the tasks – such as "taking command of significant incidents until they are resolved" – do not involve simply "managerial tasks," but law enforcement tasks as well. See, e.g., PSOF Ex. 18, Cpt. Stutsman 22:5-23:18; PSOF Ex. 16, Cpt. Kratzer

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

FP 61586460.2

20:13-21:3, 21:15-22:13; PSOF Ex. 14, Cpt. Aldorasi 16:14-18:4; PSOF Ex. 17, Cpt. Lee 26:3-27:1, 39:19-23, 41:4-17; PSOF Ex. 8, Neville 126:2-128:8; PSOF Ex. 3, Brice 118:6-119:13, 122:6-21.

*Defendant's Response: Defendant objects to PSOF ¶ 316 to the extent that it is a legal conclusion and it is not a fact based on admissible evidence as required under Fed. R. Civ. P. 56 and LRCiv 56.1 ("The separate statement should include only those facts that the Court needs to decide the Motion."); see also Kilroy v. Ruckelshaus, 738 F.2d 1448, 1452 (9th Cir. 1984) ("Our reading of [plaintiff's] proposed findings of fact reveals that they are actually legal conclusions … and were disputed by [defendant] in its memoranda. The district court was not obligated to accept [plaintiff's] legal conclusions as true simply because he characterized them as statements of fact."). Defendant further objects to PSOF ¶ 316 because the phrase "many of the tasks" is vague and ambiguous.*

*Furthermore, the statement that "'taking command of significant incidents until they are resolved' do[es] not involve simply 'managerial tasks,' but law enforcement tasks as well" is disputed. To the extent that PSOF ¶ 315 attempts to state that lieutenants are responsible for performing law enforcement tasks while taking command of significant incidents, Houck and the deposed opt-ins testified to their supervisory and managerial role when responding to significant incidents, which includes taking command of the incident until it is resolved, setting up a command post, calling in and coordinating resources, assigning duties to people on scene, ensuring notifications are given to the chain of command, and ensuring sergeants are properly doing their duties. DSOF, ¶¶ 220, 286. Moreover, the MCSO Command Responsibility Policy and Lieutenant job description demonstrate that lieutenants are not required or expected to engage in deputy level tasks*

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

33

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

*such as rescuing crime victims, detecting crimes, conducting criminal investigations, apprehending suspects, or interviewing/interrogating individuals. DSOF, ¶ 215. Instead, lieutenants are required to supervise their direct reports who carry out these law enforcement duties. Id. Therefore, the lieutenants do not perform law enforcement tasks while taking command of significant incidents, but rather, they are required to take a managerial role over such situations.*

317.    The County stated Houck testified that:

• he "put procedures in place regarding call outs", **BUT** Houck also testified that really what that entailed was simply having the sergeants and deputies follow the County's sick leave and vacation policies (PSOF Ex. 1, Houck 208:10-209:8)

• "had authority to file complaints about employees with internal affairs", **BUT** Houck also testified that "[a]nybody in the sheriff's office or outside the sheriff's office can file complaints," including third parties and anonymously, and that he was "forbidden by policy to issue discipline" and could only "enter a complaint in BlueTeam and sen[d] it to PSB to investigate and discipline" (PSOF Ex. 1, Houck 212:3-11, 214:4-215:1)

• "conducted informalized training", **BUT** Houck also testified that it simply consisted of "briefing my squad" on how to handle certain calls or fill out certain forms or going over how a call went and only happened maybe "six, seven times a year" (PSOF Ex. 1, Houck 220:10-221:10)

*Defendant's Response: Defendant objects to the statement in PSOF ¶ 317 that "[t]he County stated Houck testified" as quoted in PSOF ¶ 317 because Plaintiff has provided no admissible portion of the record where such allegation finds support, as required by LRCiv 56.1(a). Furthermore,*

34

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

*Defendant object to the following statements within PSOF ¶ 317 because they misstate the cited testimony of Plaintiff Houck:*

- *PSOF ¶ 317 states: Houck "'put procedures in place regarding call outs', __BUT__ Houck also testified that really what that entailed was simply having the sergeants and deputies follow the County's sick leave and vacation policies (PSOF Ex. 1, Houck 208:10-209:8). Defendant objects to this as a misstatement of the cited testimony because Houck testified that he 'put in place a procedure for if a sergeant needs to call out sick', and he further stated that he told sergeants that 'they needed to let [him] know' if they were calling out sick or for vacation. PSOF Ex. 1, deposition testimony of Plaintiff Houck at 208:10-209:8.*

- *PSOF ¶ 317 further states: Houck "'had authority to file complaints about employees with internal affairs', __BUT__ Houck also testified that '[a]nybody in the sheriff's office or outside the sheriff's office can file complaints,' including third parties and anonymously, and that he was 'forbidden by policy to issue discipline' and could only 'enter a complaint in BlueTeam and sen[d] it to PSB to investigate and discipline'" (PSOF Ex. 1, Houck 212:3-11, 214:4-215:1). Defendant objects to a portion of this paragraph as a misstatement of the cited testimony because Houck testified that he "had the authority to file complaints in BlueTeam." PSOF Ex. 1, deposition of Plaintiff Houck at 214:4:6. It is undisputed that Houck testified that "anybody in the sheriff's office or outside the sheriff's office can file complaints", however he did not specify that this included third parties and anonymously. It is undisputed that Houck testified that he was "forbidden by policy to issue discipline", and that he could "enter a complaint in BlueTeam and send it to PSB to*

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

*investigate and … discipline." Id.* at 212:9-11.

- *PSOF ¶ 317 also states: Houck "'conducted informalized training',* <u>*BUT*</u> *Houck also testified that it simply consisted of 'briefing my squad' on how to handle certain calls or fill out certain forms or going over how a call went and only happened maybe 'six, seven times a year' (PSOF Ex. 1, Houck 220:10-221:10). Defendant objects to this as a misstatement of the cited testimony because when asked "what would be informalized training that you have conducted?", Houck testified: "It would be something where like there was no curriculum. It wasn't like a classroom-type setting. It was just a – me briefing my squad on how to, you know, handle a certain call or how to fill out a certain form or going over how a call went, what we can do better, what we can do worse." PSOF Ex. 1, deposition transcript of Plaintiff Houck at 220:10-21. It is undisputed that Houck testified that he did informal training with his sergeants "maybe six, seven times a year."*

318.    Houck testified that he only "5 to 10 percent" of his time was spent on management duties (PSOF Ex. 1, Houck 191:12-15).

**Defendant's Response: Defendant objects to PSOF ¶ 318 because it misstates the cited testimony of Plaintiff Houck. When asked, "[h]ow much of your time as a law enforcement lieutenant would you say is dedicated towards this management category in the [lieutenant] job description?", Houck responded, "I would say five to ten percent." PSOF Ex. 1, deposition transcript of Plaintiff Houck at 191:12-15.**

319.    The sergeants make more than the Patrol Lieutenants when factoring in their overtime, which even results in Patrol Lieutenants not wanting to be promoted above sergeant. See, e.g., PSOF Ex. 4, Freeman 131:19-132:1 (had to work a lot of off duty work to make up for decrease in pay following promotion to Patrol Lieutenant).

FP 61586460.2

1    *Defendant's Response: Defendant objects to PSOF ¶ 319 because it is*
2    *irrelevant and inadmissible and does not "make the existence of any fact that*
3    *is of consequence to the determination of the action more probable or less*
4    *probable than it would be without the evidence." FRE 401, 402; Fed. R. Civ.*
5    *P. 56(c)(2). Information regarding whether sergeants' pay is not a purported*
6    *fact that is of consequence to either Plaintiff's or Defendant's motions for*
7    *summary judgment, as it has no bearing on whether the executive and*
8    *administrative exemptions from overtime under 29 CFR §§ 541.100 and*
9    *541.200 apply to the Patrol Lieutenants, nor is it relevant to the First*
10   *Responder Regulation found at 29 CFR § 541.3(b)(1).*

11

12   *Defendant objects to PSOF ¶ 319 because it misstates the cited testimony, is*
13   *vague and ambiguous, and relies on and speculation, which is inadmissible*
14   *under Federal Rule of Evidence 701 and 602. Furthermore, the statement does*
15   *not refer to a specific admissible portion of the record where the statement*
16   *finds support, as required by LRCiv 56.1(a). The cited testimony of opt-in*
17   *Freeman is merely a speculative, unsupported statement from one opt-in,*
18   *Freeman, that he received a pay decrease in 2023; it does not contain any*
19   *specific admissible portion of the record where the statement in PSOF ¶ 319*
20   *finds support, including failing to contain any information concerning the*
21   *pay of other lieutenants and the sergeants. United States v. Holguin, 51 F.4th*
22   *841, 865 (9th Cir. 2022) ("Under Rule 701, a witness may not 'testify based on*
23   *speculation, rely on hearsay, or interpret unambiguous, clear statements.'")."*
24   *Moreover, the statement is vague and ambiguous, because it does not*
25   *identify how much overtime it is referring to. On the other hand, Defendant*
26   *has offered admissible evidence in the form of declaration testimony by*
27   *MCSO Chief Human Resource Officer of MCSO Human resources Bureau,*
28   *Kelly Grenna, that upon promotion to Lieutenant, Plaintiff Houck and each*

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

37

*opt-in lieutenant received pay raises of a minimum of 10%. Doc. 159-1, ¶¶ 3, 18.*

320.    Trowbridge testified that SWAT was part of Patrol Bureau West at least from January of 2020 through March of 2022. PSOF Ex. 12, Trowbridge 12:25-13:6, 29:20-30:17, 40:3-16.

*Defendant's Response: Defendant objects to PSOF ¶ 320 because it does not refer to a specific admissible portion of the record where it finds support, as required by LRCiv 56.1, and further because it misstates the cited testimony. As set forth in Defendant's Motion for Summary Judgment at Doc. 156, while Lieutenant Trowbridge summarily stated his opinion that SWAT is a part of Patrol Bureau West, he conceded at deposition that he has no admissible facts in support of that subjective belief. DSOF, ¶¶ 264-269. While Plaintiff has offered records to attempt to establish that SWAT is part of Patrol Bureau West, Trowbridge conceded that those records do not support that SWAT is a part of Patrol Bureau West, and further, that other than the records at issue, he has no evidence or facts to support that proposition. Id.*

321.    In fact, when specifically asked at his deposition whether he fell within the collective definition comprised of "all current and former lieutenants from patrol divisions east and west who worked for [the County] at any time from January 11, 2020 and the present," Trowbridge unequivocally answered, "Yes. Definitely." PSOF Ex. 12, Trowbridge 31:24-32:15.

*Defendant's Response: Defendant does not dispute that during his deposition, Trowbridge stated "yes" when asked whether he falls within the category of a current or former lieutenant from patrol divisions east and west who worked for defendant at any time from January 11, 2020 to the present. However, this proposition is incorrect. As set forth in Defendant's Motion for Summary Judgment at Doc. 156, while Lieutenant Trowbridge summarily stated his opinion that SWAT is a part of Patrol Bureau West, he conceded at*

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

38

*deposition that he has no admissible facts in support of that subjective belief. DSOF, ¶¶ 264-269. While Plaintiff has offered records to attempt to establish that SWAT is part of Patrol Bureau West, Trowbridge conceded that those records do not support that SWAT is a part of Patrol Bureau West, and further, that other than the records at issue, he has no evidence or facts to support that proposition. Id.*

322.    Trowbridge's testimony based on his personal knowledge about his work performing patrol duties at the County is corroborated by County documents demonstrating periods of time when SWAT was part of Patrol. PSOF Ex. 12, Trowbridge 15:4-16:1, 24:17-25:9, 26:12-21, 31:24-34:20, 47:2-48:11, 107:14-108:25 and exhibits referenced in deposition (Doc. 155-10 at Exs. 80-83).

*Defendant's Response: Defendant disputes and objects to PSOF ¶ 322 because it does not refer to a specific admissible portion of the record where it finds support, as required by LRCiv 56.1, and further because it misstates the cited testimony. As set forth in Defendant's Motion for Summary Judgment at Doc. 156, while Lieutenant Trowbridge summarily stated his opinion that SWAT is a part of Patrol Bureau West, he conceded at deposition that he has no admissible facts in support of that subjective belief. DSOF, ¶¶ 264-269. While Plaintiff has offered records to attempt to establish that SWAT is part of Patrol Bureau West, Trowbridge conceded that those records do not support that SWAT is a part of Patrol Bureau West, and further, that other than the records at issue, he has no evidence or facts to support that proposition. Id.*

323.    Some Patrol Lieutenants tracked all their hours in the timekeeping system and the records show how many hours they worked, including overtime. PSOF Ex. 2, Acosta 36:6-11, 48:14-50:7; PSOF Ex. 7, Keller 24:11-25:10, 26:15-20, 4:18-35:15, 125:10-12 ("But if I have to [work over 40 hours], and it's something that needs to be get done, I will give you that extra time, but I reflect that appropriately."); PSOF Ex. 8, Neville 57:17-

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

FP 61586460.2

58:12, 61:25-63:5; PSOF Ex. 1, Houck 48:1-13, 85:6-18; PSOF Ex. 3, Brice 18:24-19:23, 22:10-23:2; PSOF Ex. 4, Freeman 60:5-61:15; PSOF Ex. 6, Jackson 91:12-15; PSOF Ex. 5, Halverson 61:5-16; PSOF Ex. 9, Rankin 31:8-32:22; PSOF Ex. 10, Rosenberger 13:23-14:15; PSOF Ex. 11, Thomas 25:3-26:4, 43:1-46:23; PSOF Ex. 12, Trowbridge 103:22-104:24, 106:19-107:1; PSOF Ex. 24, Opt in Plaintiffs' Responses to NUI No. 6; PSOF Ex.19, Ellison 102:12-105:6.

> *Defendant's Response: Defendant objects to PSOF ¶ 323 because it is impermissibly vague and ambiguous, such that Defendant cannot formulate a response, as it does not refer to any specific dates for hours worked, or number of hours worked/entered. Defendant further objects because is a conclusory statement unsupported by pay and time records, which also relies on conclusory testimony. A conclusory statement which is devoid of specifics is insufficient to defeat a motion for summary judgment. Fed. R. Civ. P. 56; see also io Snellinger v. Fed. Nat'l Mortgage Ass'n ("Fannie Mae"), 785 F. Supp. 3d 3, 6 (S.D.N.Y. 2025). Therefore, PSOF ¶ 323 does not comply with LRCiv 56.1, which requires reference to a specific admissible portion of the record where the fact finds support. Instead, it cites to conclusory statements by the opt-ins that they tracked all of their hours, including overtime.*

324.    Others tracked only up to 40 hours per week or 80 hours per two week pay period, but they worked additional hours off the clock. *See, e.g.,* PSOF Ex. 6, Jackson 92:17-20 (so long as 40 hours, may not always modify); PSOF Ex. 9, Rankin 31:8-32:22 (may not have always recorded); PSOF Ex. 12, Trowbridge 103:22-104:10 (not "very religious" about adjusting time because "it was almost depressing because you weren't getting paid more than 80 hours"); PSOF Ex. 19, Ellison 102:12-105:6; PSOF Ex. 25, Opt in Plaintiffs' Responses to NUI No. 6.

> *Defendant's Response: Defendant objects to PSOF ¶ 324 because it is impermissibly vague and ambiguous, such that Defendant cannot formulate a response, as it does not refer to any specific dates for hours worked, number*

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

*of hours worked/entered, or identified the "others" who purportedly tracked only up to 40 hours per work or 80 hours per two week pay period. Defendant further objects because is a conclusory statement unsupported by pay and time records, which also relies on conclusory testimony. A conclusory statement which is devoid of specifics is insufficient to defeat a motion for summary judgment. Fed. R. Civ. P. 56; see also io Snellinger v. Fed. Nat'l Mortgage Ass'n ("Fannie Mae"), 785 F. Supp. 3d 3, 6 (S.D.N.Y. 2025). Therefore, PSOF ¶ 323 does not comply with LRCiv 56.1, which requires reference to a specific admissible portion of the record where the fact finds support. Instead, it cites to conclusory statements by some opt-ins.*

325.    While the County had a policy of requiring Patrol Lieutenants to track their hours, the County only required Patrol Lieutenants to account for 40 hours per week or 80 hours per two week pay period, which is not necessarily their actual hours worked. PSOF Ex. 19, Ellison 100:9-25, 101:6-12, 101:18-102:1.

*Defendant's Response: Defendant objects to PSOF ¶ 325 because it mischaracterizes the cited testimony, the cited testimony does not stand for the proposition asserted in the statement, and it is conclusory. In the cited testimony, Darrien Ellison states that "the expectation for all employees is to input into the system either 80 hours of work or leave, anything to account for the h ours that they are getting paid." PSOF, Ex. 19, deposition transcript for Darrien Ellison at 100:22-25. Further, Mr. Ellison did not state that entered hours are "not necessarily … actual hours worked."*

326.    There is testimony, written discovery, and payroll records supporting that the Patrol Lieutenants were required to work more than forty hours a week without receiving overtime. *See, e.g.,* PSOF Ex. 2, Acosta 53:16-55:17, 98:2-17; PSOF Ex. 7, Keller 19:17-25, 23:15-18; PSOF Ex. 8, Neville 61:25-63:5; PSOF Ex. 1, Houck 12:17-13:25, 19:18-20:5; PSOF Ex. 3, Brice 18:24-19:23; PSOF Ex. 4, Freeman 68:18-69:3, 73:15-74:11; PSOF Ex. 6, Jackson 29:22-31:8; PSOF Ex. 5, Halverson 57:21-58:13, 60:3-24, 62:5-10; PSOF Ex. 9,

FP 61586460.2

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

Rankin 32:23-33:13; PSOF Ex. 10, Rosenberger 13:23-14:15; PSOF Ex. 11, Thomas 32:25-33:6, 43:1-46:23; PSOF Ex. 12, Trowbridge 95:9-96:5, 98:2-25; PSOF Ex. 13, Vance 7:17-20, 38:9-12; Doc. 27-1, Houck Decl. at 10-11 at ¶¶ 18, 20, 25-27 and 13-32 (Exhibit A (paystubs)); Doc. 27-2, Halverson Decl. at 4-5, ¶¶15-17, 20-21 and 6-117 (Exhibit A (paystubs)) and Sanchez Decl. at 127-128, ¶¶14-15, 19; PSOF Ex. 23, 24 Opt in Plaintiffs' Responses to NUI No. 6.

> **Defendant's Response: Defendant objects to PSOF ¶ 326 because it is impermissibly vague and ambiguous, such that Defendant cannot formulate a response, as it does not refer to any specific dates for hours works, or number of hours worked/entered. Defendant further objects because is a conclusory statement unsupported by pay and time records, which also relies on conclusory testimony. Therefore, it does not comply with LRCiv 56.1, which requires reference to a specific admissible portion of the record where the fact finds support. Instead, it cites to conclusory statements by the opt-ins that they were required to work more than 40 hours in a week, and paystubs which do not support this statement. Nevertheless, Defendant has maintained in its Motion for Summary Judgment at Doc. 156 and throughout this case that Plaintiff and the opt-ins are properly classified as exempt for overtime. DSOF, ¶¶ 2, 8.**

327.    The County knows that the Patrol Lieutenants work overtime, which is made evident by the Captains' testimony indicating that Patrol Lieutenants work overtime and the fact that the County's CAD records (and many payroll records) show that to be the case as well. *See, e.g.*, Doc. 159-1 at 17-75 (Houck's CAD Patrol Activity Log from CAD); Doc. 27-1, at 13-32, Doc. 27-2 at 6-117 (paystubs); PSOF Ex. 19, Ellison 102:12-105:6.

> **Defendant's Response: Defendant objects to PSOF ¶ 327 because the cited testimony does not support the proposition in ¶ 327 that "[t]he County knows that the Patrol Lieutenants work overtime." In the cited testimony, Darrien Ellison did not admit that the County knows that the Lieutenants work**

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

*overtime, but rather he read the hours listed on one pay stub.*

*Defendant further objects to PSOF ¶ 327 because it is overbroad, vague, and ambiguous. It constitutes a generalized statement unsupported by admissible facts to show that the County is aware that each and very opt-in and Plaintiff purportedly work overtime, or that the CAD records purportedly show the same for each one of the opt-ins and Plaintiff. Additionally, the payroll records relied upon in support of this statement include both worked and unworked hours, including, for example, holiday time. Thus, the statement simply does not refer to an admissible portion of the record where it finds support, as required by LRCiv 56.1.*

*Moreover, Defendant disputes the statement in PSOF ¶ 327 because some opt-ins testified that they were told to enter all of their hours worked and simply chose not to do so. DSOF, ¶ 239.*

328.    Darrien Ellison, the senior Human Resources employee who made the decision to classify the Patrol Lieutenants as exempt from overtime in 2007, testified that he does not recall evaluating the first responder exception when the decision was made. PSOF Ex. 19, Ellison 8:25-10:9, 16:8-14.

*Defendant's Response: Defendant objects to PSOF ¶ 328 because it misstates and is unsupported by the cited testimony. Darrien Ellison testified that he was involved in the decision to classify the Patrol Lieutenants from exempt, not that he was the only one who made the decision. PSOF, Ex. 19, deposition transcript of Darrien Ellison at 9:4-13. Further, Mr. Ellison testified that the decision was reached after Maricopa County had done a review of the Lieutenant job duties and reviewed and relied upon guidance from the Department of Labor. DSOF, ¶ 8.*

329.    Despite being tasked with determining the classification, Mr. Ellison also fundamentally misunderstands the law, believing that an employee cannot be a first

responder under the exception if they have any managerial duties. PSOF Ex. 19, Ellison 26:12-16.

**Defendant's Response: Defendant objects to PSOF ¶ 329 because it is argumentative. It is not a "fact[] that the Court needs to decide the motion", as required by LRCiv 56.1, but rather an argumentative statement of Plaintiff's contention that a witness purportedly misunderstands the law. Moreover, it does not cite to any specific admissible portion of the record where the fact finds support, as required by LRCiv 56.1. Furthermore, to the contrary of the statement, Mr. Ellison is a seasoned human resources professional who understands the FLSA and opined that he reviewed the FLSA regulations and Department of Labor checklist in determining that the Lieutenants are firmly exempt under the law. DSOF, ¶ 8.**

330.   Had the County not failed to consult with legal counsel at any point regarding the Patrol Lieutenants' classification, perhaps this misconception about the law could have been corrected.

**Defendant's Response: Defendant objects to PSOF ¶ 330 because it is argumentative. It is not a "fact[] that the Court needs to decide the motion", as required by LRCiv 56.1, but rather an argumentative statement of Plaintiff's contention that a witness purportedly misunderstands the law. Moreover, it does not cite to any specific admissible portion of the record where the fact finds support, as required by LRCiv 56.1. Nevertheless, there is no requirement under the law that counsel must be consulted in order for an FLSA overtime exemption to apply – Plaintiff has not cited to any authority to support a proposition contrary to this.**

331.   The County relied entirely on its own employees' lay opinions about the application of the Department of Labor letter when making the decision to classify the Patrol Lieutenants as exempt. PSOF Ex. 19, Ellison 11:15-24, 13:5-8, 33:3-12.

**Defendant's Response: Defendant objects to PSOF ¶ 331 because it is**

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

44

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

*argumentative and misstates the cited testimony. To the contrary to Plaintiff's statement, Mr. Ellison testified that in concluding that the Lieutenants are exempt from overtime, the County relied on the advice of an employee who formerly worked at the Department of Labor as an investigator and with prior experience advising the County with respect to the FLSA. Moreover, Mr. Ellison was also involved in the decision to classify Lieutenants as exempt, based on an analysis of the Department of Labor regulations and rules, and he is well-versed in the FLSA with 21 years of experience. Exhibit 10, Darrien Ellison deposition transcript p. 60:18-64:9.*

332.    The senior Human Resources official who decided to classify the Patrol Lieutenants as exempt in 2007 admits that the County never consulted with legal counsel about the decision. PSOF Ex. 19, Ellison 33:3-12, 68:13-70:10, 75:2-76:2.

*Defendant's Response: Defendant objects to PSOF ¶ 332 because it is irrelevant and inadmissible, and it does not "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FRE 401, 402; Fed R. Civ. P. 56(c)(2). Whether the individuals who decided to classify the Patrol Lieutenants as exempt admits that Defendant did not consult with legal counsel about the decsision does not constitute a purported fact that is of consequence to either Plaintiff's or Defendant's motions for summary judgment, as consultation with legal counsel is not required in order for an exemption or the good faith defense to apply under the FLSA, and Plaintiff has not cited to any authority for this proposition.*

333.    The County appears to identify one of its lay employees involved with the original classification as an FLSA "expert," but the County admits that she has no legal background, no formal recognition as an expert, and in fact the County did not even consider this employee important enough in the classification decision to disclose her as a witness in this case. PSOF Ex. 19, Ellison 12:2-13:18, 14:5-13, 62:20-23 (when asked if she

1  was an FLSA expert, Ellison responded, "that was just what we called her.").

2      *Defendant's Response: Defendant objects to PSOF ¶ 333 because it is*
3  *argumentative and misstates the cited testimony. In the cited testimony,*
4  *Darrien Ellison refers to one of his peers, Mary Lou Sarrault, as an "FLSA*
5  *expert … because prior to coming to the County, she worked as a*
6  *Department of Labor investigator[.]" PSOF Ex. 19, deposition transcript of*
7  *Darrien Ellison at 12:2-10. However, Defendant has not designated this*
8  *individual as an expert in this case and she is now retired, therefore no longer*
9  *working for Maricopa County. It is undisputed that Ms. Sarrault does not*
10  *have a law degree, however Defendant disputes that "she has no legal*
11  *background," given her experience as a Department of Labor investigator.*

12  334.  The County did not know about the factual circumstances that led to the
13  Department of Labor determination it claims to have relied on, with senior Human
14  Resources personnel at the County testifying that the County was unaware of the precise
15  circumstances that were considered by the Department of Labor in reaching its conclusion.
16  PSOF Ex. 19, Ellison 68:13-70:7, 73:6-74:1, 75:7-76:2.

17      *Defendant's Response: Defendant objects to PSOF ¶ 334 because it misstates*
18  *the cited testimony. Darrien Ellison testified that he is aware of the factual*
19  *circumstances set forth in the Department of Labor determination referenced*
20  *in the cited testimony, including "the exemptions applying to lieutenants,*
21  *and then they covered, basically, that the employee is employed in a bona*
22  *fide executive capacity for the purpose of exemption[.]" He further stated*
23  *that the Department of Labor opinion was specifically related to patrol*
24  *lieutenants. It is undisputed that the County would not have been aware of*
25  *any confidential, private information that would have been shared with the*
26  *Department of Labor in connection with the opinion letter at issue.*

27  335.  The County never submitted its own request to the Department of Labor
28  about the exempt status of the Patrol Lieutenants, nor does the person who was tasked

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

with the classification determination recall having ever researched any case law regarding the classification. PSOF Ex. 19, Ellison 76:11-19.

> *Defendant's Response: It is undisputed that Maricopa County did not submit a request to the Department of Labor concerning the exempt status of Patrol Lieutenants. However, Defendant is not required to do so in order to plead the defense that it relied in good faith on any written administrative regulation, order, ruling, approval or interpretation under 29 U.S.C. § 259(a), and is entitled to rely on a Department of Labor opinion letter. In re Wal-Mart Stores, Inc., 395 F.3d 1177, 1184 (10th Cir. 2005), as amended on denial of reh'g (Feb. 28, 2005) ("The DOL considers these opinion letters to be 'rulings,' 29 C.F.R. 790.17(d); and under the Portal to Portal Act, 'no employer shall be subject to any liability or punishment ... under the [FLSA] ... if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation of the [Administrator of the DOL's Wage and Hour Division]....' 29 U.S.C. § 259(a) (emphasis added). See Frank v. McQuigg, 950 F.2d 590, 598–99 (9th Cir.1991) (Postal Service is protected from liability for failure to pay overtime in conformity with FLSA requirements due to good-faith reliance on opinion letter issued by the Administrator approving payment scheme)). Additionally, Defendant objects to the reference that cited testimony refers to "the person who was tasked with the classification determination" because the cited testimony does not support this proposition, as required by LRCiv 56.1.*

336. The County received correspondence indicating that Patrol Lieutenants believed their job duties had changed such that they were non-exempt, and human resources employees testified about potential changes in their job duties resulting from staffing shortages during the COVID-19 pandemic in 2020. PSOF Ex. 26, HOUCK000238-241; PSOF Ex. 19, Ellison 41:24-42:10; PSOF Ex. 21, Farrow 86:1-88:14,

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

FP 61586460.2

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

117:10-118:6.

*Defendant's Response: Defendant objects to PSOF ¶ 336 because it is vague and ambiguous, as it refers to "correspondence" but does not indicate who sent the correspondence to whom, or the date of the correspondence. Defendant further objects to PSOF ¶ 336 on the basis that it mischaracterizes the cited emails and testimony. Defendant further disputes PSOF ¶ 336 because in the cited testimony, Ms. Farrow did not state that there were potential changes in Lieutenants' job duties resulting from staffing shortages during the Covid-19 pandemic. She merely stated that the Covid-19 pandemic caused staffing issues for the organization as a whole. PSOF, Ex. 21, deposition transcript of Keely Farrow at 86:1-88:8, 117:10-20.*

337. Yet, the County did not re-evaluate the legality of their classification. PSOF. Ex. 19, Ellison 51:10-13; PSOF Ex. 21, Farrow 86:1-88:14, 117:10-118:6.

*Defendant's Response: Defendant objects to PSOF ¶ 337 because it misstates the cited testimony of Darrien Ellison and Keely Farrow. Specifically, within the cited portion of his deposition, Darrien Ellison stated that he is not aware of any audits that have occurred since 2020 regarding the job duties that are performed by the patrol lieutenants. PSOF Ex. 19, deposition transcript of Darrien Ellison at 51:10-13. And within the cited portions of her deposition, Keely Farrow discussed staffing issues arising out of the Covid-19 pandemic. She further testified that she was not aware of or familiar with whether a new analysis concerning job duties had been conducted for classification of patrol lieutenants in light of the staffing issues related to the pandemic. PSOF Ex. 21, deposition transcript of Keely Farrow at 86:1-88:14, 117:10-118:6. Neither witness stated within the cited testimony that the County had never re-evaluated the legality of the lieutenants' classification.*

338. Houck sent senior human resources personnel, Keely Farrow, correspondence raising concerns that he performed the same duties as a non-exempt

48

sergeant when he was a Patrol Lieutenant, emphasizing that Patrol Lieutenants agreed with his belief that they should be paid overtime based on the job duties they are required to perform. PSOF Ex. 26, HOUCK000238-241; PSOF Ex. 21, Farrow 40:12-41:16.

**Defendant's Response: Defendant objects to PSOF ¶ 338 because it misstates the cited email. Plaintiff cites to emails within PSOF Ex. 26 wherein he emailed HR Commander Keely Farrow regarding his personal belief that following his promotion from sergeant to patrol lieutenant, he was performing the same job and requested to know whether there was a process to evaluate the patrol lieutenant for re-classification as non-exempt. He did not "emphasize" that he or the other lieutenants "should be paid overtime based on the job duties they are required to perform." PSOF Ex. 26, HOUCK000238-241. Furthermore the cited deposition testimony for Keely Farrow is also misstated, as within that excerpt of her deposition, Ms. Farrow merely confirms that in his email, Plaintiff wrote, "I have now worked for a couple months in the Patrol Lieutenant role and have not had any different tasks/duties for which I've been responsible for that's any different from when I was a Patrol Sergeant." PSOF Ex. 21, deposition transcript of Keely Farrow at 40:12-41:16.**

339.    He also raised the fact that lieutenants in other departments are non-exempt and entitled to overtime. PSOF Ex. 21, Farrow 45:1-7; PSOF Ex. 26, HOUCK000238-241.

**Defendant's Response: Defendant objects to PSOF ¶ 339 because it is vague and ambiguous such that Defendant cannot formulate a response.**

340.    Keely Farrow, who was a senior Human Resources employee tasked with answering questions from Patrol Lieutenants like Houck about their exemption classification, testified that she did not speak with legal counsel or consult with anyone else at the County about Houck's inquiry raising concerns about the Patrol Lieutenants' improper classification. PSOF Ex. 21, Farrow 36:13-39:16, 40:4-6, 41:22-42:5, 45:1-18.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

49

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

*Defendant's Response: Defendant objects to PSOF ¶ 340 because it is irrelevant and inadmissible, and it does not "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FRE 401, 402; Fed R. Civ. P. 56(c)(2). Whether Ms. Farrow spoke with legal counsel or consulted with anyone else at the County about Houck's inquiry concerning Patrol Lieutenants' classification does not constitute a purported fact that is of consequence to either Plaintiff's or Defendant's motions for summary judgment, as consultation with legal counsel is not required in order for an exemption or the good faith defense to apply under the FLSA, and Plaintiff has not cited to any authority for this proposition.  Moreover, Mr. Ellison testified that the County had already done a review of the Lieutenants' job duties and reviewed and relied upon guidance from the Department of Labor. DSOF, ¶ 8. Plaintiff has presented no evidence that any of the Lieutenants' job duties actually changed after this determination, such that another review would be warranted. In fact, Defendant has presented evidence that the only change as to the Lieutenants' responsibilities was an increase in administrative and management duties following the Melendres order, which* Plaintiff does not dispute. Doc. 167, ¶ 16.

20
21
22
23

341.    Ms. Farrow had access to lawyers at the County to ask questions related to Human Resources issues that arise, but she still never talked with them about the exemption classification even though she did not have training on the FLSA. PSOF Ex. 21, Farrow 41:22-42:5, 44:16-25, 45:8-18, 57:8-20, 59:12-22, 60:19-61:5, 67:8-68:3.

24
25
26
27
28

*Defendant's Response: Defendant objects to PSOF ¶ 341 because it misstates the cited testimony of Keely Farrow. Ms. Farrow did not state that she never at any point talked with County lawyers about "the exemption classification." Rather, she stated that she did not speak with County lawyers about an email from Plaintiff concerning lieutenants' classification as exempt from overtime.*

50

*PSOF Ex. 21, deposition testimony of Keely Farrow at 41:22-42:5, 44:16-25, 45:8-18, 57:8-20, 59:12-22, 60:19-61:5, 67:8-68:3.*

342.    Ms. Farrow also neglected to do any investigation into whether the Patrol Lieutenants were properly classified after Houck raised his concerns about the exemption; she never talked to any other Patrol Lieutenants or their Captains about it or looked into whether their duties impacted the legality of the classification. PSOF Ex. 21, Farrow 47:25-48:19, 71:21-24.

*Defendant's Response: Defendant objects to PSOF ¶ 341 because it misstates the cited testimony of Keely Farrow. Contrary to Plaintiff's assertion, Ms. Farrow indicated that she conducted an investigation into Plaintiff Houck's inquiry regarding the classification of the lieutenants by reviewing the lieutenants' job description and conducting research, including review the Department of Labor website and the Society of Human Resources Management. PSOF Ex. 21, deposition transcript of Keely Farrow at 45:19-47:8, 47:25-48:13. Further, Ms. Farrow indicated that she "didn't believe [that the lieutenants] were misclassified." PSOF Ex. 21, at 41:22-42:516 67:23-68:3.*

343.    After Houck stated that the Patrol Lieutenants do not perform exempt job duties and specifically raised the first responder exception, Ms. Farrow could not recall any affirmative steps taken to ensure the County had them properly classified. PSOF Ex. 21, Farrow 75:14-77:21, 78:16-24.

*Defendant's Response: Defendant objects to PSOF ¶ 343 because it misstates the cited testimony of Keely Farrow. Contrary to Plaintiff's assertion, Ms. Farrow indicated that she conducted an investigation into Plaintiff Houck's inquiry regarding the classification of the lieutenants by reviewing the lieutenants' job description and conducting research, including review the Department of Labor website and the Society of Human Resources Management. PSOF Ex. 21, deposition transcript of Keely Farrow at 45:19-47:8, 47:25-48:13. Further, Ms. Farrow indicated that she "didn't believe [that*

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

the lieutenants] were misclassified." PSOF Ex. 21, at 41:22-42:516 67:23-68:3.

344.    Ms. Farrow does not even recall having considered the first responder exception to the overtime exemption when considering the concerns raised about the Patrol Lieutenants' classification. PSOF Ex. 21, Farrow 73:24-74:19.

**Defendant's Response: Defendant objects to PSOF ¶ 344 because Plaintiff misstates the law, which does not call for a "first responder exception." Moreover, Moreover, Mr. Ellison testified that the County had already done a review of the Lieutenants' job duties and reviewed and relied upon guidance from the Department of Labor at the time that Plaintiff Houck raised the Patrol Lieutenants' classification to Ms. Farrow. DSOF, ¶ 8.**

345.    Ms. Farrow also acknowledged that Houck contacted her specifically stating that his Captain informed him that the Patrol Lieutenants' job duties had changed since they were classified as exempt from overtime and specifically asking for an investigation into the classification of Patrol Lieutenants versus other types of lieutenants, yet Ms. Farrow did nothing to investigate that either. PSOF Ex. 21, Farrow 90:8-91:11.

**Defendant's Response: Defendant objects to PSOF ¶ 345 because it misstates the cited testimony of Keely Farrow. Contrary to Plaintiff's assertion, Ms. Farrow indicated that she conducted an investigation into Plaintiff Houck's inquiry regarding the classification of the lieutenants by reviewing the lieutenants' job description and conducting research, including review the Department of Labor website and the Society of Human Resources Management. PSOF Ex. 21, deposition transcript of Keely Farrow at 45:19-47:8, 47:25-48:13. Further, Ms. Farrow indicated that she "didn't believe [that the lieutenants] were misclassified." PSOF Ex. 21, at 41:22-42:516 67:23-68:3.**

346.    Ms. Farrow also testified that COVID-19 caused significant staffing decreases that impacted how the Patrol Lieutenants performed their jobs, yet the County never conducted any investigation into whether they remained properly classified as exempt. PSOF Ex. 21, Farrow 86:1-88:14, 117:10-118:6.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

1      ***Defendant's Response: Defendant objects to PSOF ¶ 346 because it misstates***

2      ***the cited testimony of Keely Farrow. Ms. Farrow did not testify that Covid-19***

3      ***caused staffing decreases that impacted how the Patrol Lieutenants***

4      ***performed their jobs. Rather, she testified that the Covid-19 pandemic had an***

5      ***impact on staffing and many employees were out on leave, such that***

6      ***"staffing levels were low." However, she did not state that this impacted***

7      ***lieutenants' job duties. She further testified that was not "aware of or familiar***

8      ***with" whether the patrol lieutenants' classification "was ever looked into in***

9      ***light of [the] staffing issues" during the Covid-19 pandemic. She did not***

10     ***affirmatively state that the County "never conducted any investigation into***

11     ***whether they remained properly classified as exempt. PSOF Ex. 21, Farrow***

12     ***86:1-88:14, 117:10-118:6.***

13 347.    The County relies on the department run by Ms. Farrow to report changes in

14 the Patrol Lieutenants' role to central human resources when they occur, so Human

15 Resources can consider any potential issues regarding their classification as exempt. PSOF

16 Ex. 19, Ellison 56:15-57:5, 60:6-18, 66:5-67:7, 68:5-22; PSOF Ex. 20, Erskine 30:17-25,

17 45:2-46:10; Doc. 155-8, at Ex. 59 (MCC000620-622 at § F).

18     ***Defendant's Response: Defendant objects to PSOF ¶ 347 because it misstates***

19     ***the cited testimony. Darrien Ellison testified that "departments are***

20     ***responsible for letting Human Resources know when there are significant***

21     ***changes to a position", not that solely Ms. Farrow's department is***

22     ***responsible, or that any change, including insignificant changes, must be***

23     ***reported. PSOF Ex. 19, deposition transcript of Darrien Ellison at 56:15-22.***

24     ***Similarly, Erin Erskine testified that if there is a concern about significant***

25     ***changes to work that might affect an exemption, then human resources***

26     ***would be notified, contrary to Plaintiff's statement that any "changes" must***

27     ***be reported. PSOF Ex. 20, deposition testimony of Erin Erskine at 30:17-25.***

28 348.    Farrow's job duties include identifying issues within the Sheriff's Department

where the Patrol Lieutenants work that may need to be addressed by central human resources for the County. PSOF Ex. 21, Farrow 51:19-52:1.

> **Defendant's Response: Defendant objects to PSOF ¶ 348 because it misstates the cited testimony. During her deposition, Ms. Farrow was asked: "Did you also have a role – for the County as far as making sure the classification is correct? What that have been part of your role in HR?" She responded as follows: "Issue identification certainly would be a role of – you know, within the scope of my role." She did not mention specifically the role of central human resources for the County. PSOF Ex. 21, deposition transcript of Keely Farrow at 51:19-52:1.**

349.    Mr. Ellison, a chief human resources employee within the central Human Resources department, admitted that the department where Houck worked should have taken steps to evaluate the issues that he raised about the exemption classification. PSOF Ex. 19, Ellison 43:18-44:3, 45:15-25.

> **Defendant's Response: Defendant objects to PSOF ¶ 349 because it is vague and ambiguous such that Defendant cannot formulate a response, misstates the cited testimony, and relies on inadmissible speculation in violation of Federal Rule of Evidence 701 and 602 requiring personal knowledge. United States v. Holguin, 51 F.4th 841, 865 (9th Cir. 2022) ("Under Rule 701, a witness may not 'testify based on speculation, rely on hearsay, or interpret unambiguous, clear statements.'"). " The statement does not identify which "issues" it is referring to. Further, Darrien Ellison did not testify that the department where Plaintiff Houck worked "should have taken steps to evaluate the issues that he raised about the exemption classification," but rather, he stated that it was his opinion the Sheriff's Department should have "had conversations" regarding the lieutenant's "responsibilities." Plaintiff has not cited to any admissible portion of the record which establishes that Mr. Ellison had sufficient personal knowledge to offer this opinion.**

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

54

350.    However, the issues raised by Houck were never investigated further by anyone at the County, in violation of its own internal policy about monitoring their job duties. PSOF Ex. 20, Erskine 30:17-31:19, 46:11-21: PSOF Ex. 19, Ellison 51:10-13; PSOF Ex. 21, Farrow 71:21-72:3, 75:14-25, 76:13-80:4, 90:8-91:11.

*Defendant's Response: Defendant objects to PSOF ¶ 350 because it is vague and ambiguous such that Defendant cannot formulate a response and misstates the cited testimony. PSOF ¶ 351 does not identify the specified "issues" referenced therein, or the "policy" which it refers to. Moreover, Ms. Farrow indicated that she conducted an investigation into Plaintiff Houck's inquiry regarding the classification of the lieutenants by reviewing the lieutenants' job description and conducting research, including review the Department of Labor website and the Society of Human Resources Management. PSOF Ex. 21, deposition transcript of Keely Farrow at 45:19-47:8, 47:25-48:13. Further, Ms. Farrow indicated that she "didn't believe [that the lieutenants] were misclassified." PSOF Ex. 21, at 41:22-42:516 67:23-68:3.*

351.    Chief Human Resources Officer Grennan has never even seen the correspondence from Houck regarding his belief that the Patrol Lieutenants are misclassified. PSOF Ex. 22, Grennan 13:16-18, 21:20-22:2.

*Defendant's Response: Defendant objects to PSOF 351 because it is vague and ambiguous such that Defendant cannot formulate a response. The statement does not identify the specific "correspondence" referenced.*

352.    She also testified that she is not aware of any investigation that was ever done by the County regarding issues related to the exemption classification for the Patrol Lieutenants. PSFO Ex. 22, Grennan 13:16-18, 20:7-12.

*Defendant's Response: While it is undisputed that Ms. Grennan testified that she personally was not aware of an investigation by the County regarding the issues regarding the Patrol Lieutenants' classification, Ms. Farrow indicated that she conducted an investigation into Plaintiff Houck's inquiry regarding*

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

55

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

*the classification of the lieutenants by reviewing the lieutenants' job description and conducting research, including review the Department of Labor website and the Society of Human Resources Management. PSOF Ex. 21, deposition transcript of Keely Farrow at 45:19-47:8, 47:25-48:13. Moreover, Mr. Ellison testified that the County had already done a review of the Lieutenants' job duties and reviewed and relied upon guidance from the Department of Labor. DSOF, ¶ 8*

353.     All of the Patrol Lieutenants are uniformly classified by the County as exempt from overtime. Doc. 155-4 at Ex. 5 (job description noting "exempt" status); FLSA Employee Acknowledgments, Doc. 155-4 at Ex. 7; Doc. 155-5 at Exs. 11, 13; Doc. 155-6 at Exs. 17, 20, 23; Doc. 155-7 at Exs. 26, 31, 34, 39; Doc. 155-8 at Exs. 43, 45, 47, 49, 51, 54, 56; Doc. 155-9 at Exs. 61, 69; PSOF Ex. 15, Cpt. Bailey 8:7-9:1; PSOF Ex. 14, Cpt. Aldorasi 6:23-7:5; PSOF Ex. 17, Cpt. Lee 9:12-25; PSOF Ex. 1, Houck 12:17-21; PSOF Ex. 12, Trowbridge 95:12-19; Doc. 27-1, Houck Decl. at 10, ¶17; Doc. 27-2, Halverson Decl. at 4, ¶14 and Sanchez Decl. at 127, ¶13.

**Defendant's Response: Defendant does not dispute that MCSO Patrol Lieutenants are classified as exempt from overtime.**

354.     All of the Patrol Lieutenants are subject to the same uniform compensation policies and practices, including regularly and repeatedly working in excess of forty hours per week without overtime pay. *See, e.g.,* Doc. 155-8 at Ex. 59; Doc. 27-1, Houck Decl. at 10-11 at ¶¶ 18, 20, 25-27 and 13-32 (Exhibit A (paystubs)); Doc. 27-2, Halverson Decl. at 4-5, ¶¶15-17, 20-21 and 6-117 (Exhibit A (paystubs)) and Sanchez Decl. at 127-128, ¶¶14-15, 19; Doc. 27-1, Houck Decl. at 10-11 at ¶¶ 18, 20, 25-27; Doc. 27-2, Halverson Decl. at 4, ¶¶15-17-5, ¶¶20-21 and Sanchez Decl. at 127, ¶¶14-15, 18-128, ¶19; PSOF Ex. 2, Acosta 53:16-55:17, 98:2-17; PSOF Ex. 7, Keller 19:17-25, 23:15-18; PSOF Ex. 8, Neville 61:25-63:5; PSOF Ex. 1, Houck 12:17-13:25, 19:18-20:5; PSOF Ex. 3, Brice 18:24-19:23; PSOF Ex. 4, Freeman 68:18-69:3, 73:15-74:11; PSOF Ex. 6, Jackson 29:22-31:8; PSOF Ex. 5, Halverson 57:21-58:13, 60:3-24, 62:5-10; PSOF Ex. 9, Rankin 32:23-33:13; PSOF Ex. 10,

1   Rosenberger 13:23-14:15; PSOF Ex. 11, Thomas 32:25-33:6, 43:1-46:23; PSOF Ex. 12,

2   Trowbridge 95:9-96:5, 98:2-25; PSOF Ex. 13, Vance 7:17-20, 38:9-12.

3   *Defendant's Response: It is undisputed that all the Patrol Lieutenants are*

4   *classified as exempt, such that they are not entitled to overtime*

5   *compensation. However, Defendant disputes the statement that all Patrol*

6   *Lieutenants are subject to the same policies and practices, because they work*

7   *in different divisions, which have varying policies and practices. DSOF, ¶¶ 1-*

8   *2, 17-196, 246-257.*

9   355.   All of the Patrol Lieutenants are subject to the same, uniform job description

10  which specifically refers to them as "Law Enforcement Lieutenants" and classified as

11  exempt. Doc. 155-4 at Ex. 5 (Law Enforcement Lieutenant job description); PSOF Ex. 14,

12  Cpt. Aldorasi 14:22-15:7; PSOF Ex. 17, Cpt. Lee 20:1-16, 22:7-10; PSOF Ex. 16, Cpt.

13  Kratzer 18:20-19:12.

14  *Defendant's Response: Undisputed.*

15  356.   The job description itself provides it "is not an all-inclusive list of all job

16  duties that may be required," and Senior Human Resources personnel also agree that the

17  job description does not contain all the duties that the Patrol Lieutenants perform. Doc.

18  155-4 at Ex. 5 (Law Enforcement Lieutenant job description); PSOF Ex. 22, Grennan

19  29:17-21.

20  *Defendant's Response: Defendant objects to PSOF ¶ 356 because it is vague*

21  *and ambiguous as it does not specify which "job description" it refers to.*

22  *Further, to the extent it refers to the Maricopa County Job Description for*

23  *Law Enforcement Lieutenant, it is not disputed that that job description*

24  *states not state that it "is not an all-inclusive list of all job duties that may be*

25  *required." DSOF, Ex. 5.*

26  357.   In particular, the Patrol Lieutenants' testimony emphasized that they are all

27  routinely required to engage in law enforcement duties. For example, Houck testified that

28  the job description provides a description for a "general blanket lieutenant" for the County

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

(PSOF Ex. 1, Houck 193:1-3), but a job description for the specific duty assignment of "patrol lieutenant" would include "going to calls, monitoring the radio, assisting with the apprehension of bad guys, putting together – helping deputies put together criminal investigations" "monitoring the radio, being ready" as that accounts for "75 percent of my time. That's what I'm there for. I'm there to respond to calls. I'm there to respond to things that need a command presence." PSOF Ex. 1, Houck 192:4-193:12; *see also* Doc. 152 at n.2; PSOF Ex. 5, Halverson 22:20-23:17, 26:3-27:15 (confirms patrol lieutenants do all those activities listed but also should include the "requirement of actually taking the calls for service and being the first responder on scene"); PSOF Ex. 4, Freeman 79:15-85:12 (general job description but would add that "So if while on duty and I'm at work and I observe something, especially while I'm in uniform, I take it as I have a responsibility to act and take action"; talks about work environment that implies not just an office job); PSOF Ex. 11, Thomas 68:19-69:5 (job description should also include deputy descriptions because "you respond to calls for services, make arrests, ensure public safety "you're still a law enforcement officer"); PSOF Ex. 8, Neville 138:22-140:23 (more than what is involved in job description – doesn't really address that "actively supervising"); PSOF Ex. 9, Rankin 26:1-15 (believes accurate but "similarly to the sergeant position, we also are enforcing laws and maintaining order while protecting life and property as our first responsibility as a police officer in any position"); PSOF Ex. 13, Vance 29:18-31:2 (should also include "responding to incidents rather than just managing and monitoring'"); PSOF Ex. 7, Keller 102:16-104:25 (beyond "management role" should include more duties regarding "serve and protect the community" and "law enforcement officer").

> **Defendant's Response: Defendant objects to PSOF because it misstates the cited testimony, and further the statement is disputed. The Patrol Lieutenants testified that their primary duty involves management and managerial tasks, including: making recommendations as to hiring and promotions; participating in discipline and internal affairs investigations;**

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

*supervising, monitoring, and directing the work of subordinate employees, assuming command and directing operations at major incidents; evaluating personnel performance and monitoring and enforcing legal compliance measures; participating in training programs, and budgeting, and special projects. DSOF, ¶¶ 217 – 222.*

358.    And, the Captains and Patrol Lieutenants testified that regardless of what district or shift (day or night) they are assigned to, the duties and policies amongst the assignments were "very similar." *See, e.g.,* PSOF Ex. 13, Vance 19:14-21:9, 24:18-25:15, 32:25-34:10, 104:25-105:8, 107:2-25 (the Patrol Lieutenants' assignments are "very similar" in that they are responsible for "managing the supervisors, managing the deputies, listening to the radio for incidents that occur and responding to the incidents that occur"; "The volume would be the major difference"); PSOF Ex. 17, Cpt. Lee 58:10-16; 59:9-62:21 (Lake Patrol may not have as much crime but has "more safety issues" – still patrol related and still exchangeable with other districts); PSOF Ex. 14, Cpt. Aldorasi 43:21-44:2 (same patrol type duties in Lake Patrol even though different transportation may be used to perform); PSOF Ex. 10, Rosenberger 60:25-61:2, 62:16-25 (scheduling and day/night shift lieutenants are essentially the same in all three districts he worked in); PSOF Ex. 18, Cpt. Stutsman 65:2-11 (although nighttime watch commanders have some differences, "overall, I think, yes, they're probably pretty similar."); PSOF Ex. 1, Houck 28:9-16, 63:11-24 (districts/day & night shifts – similar duties but may be busier).

*Defendant's Response: Defendant objects to PSOF ¶ 358 because it is vague and ambiguous such that Defendant cannot formulate a response. Plaintiff cites to the deposition transcripts of six individuals for a very broad proposition that all the Captains and Patrol Lieutenants testified that they are subject to very similar duties and policies. Yet the statement does not even identify the policies and duties referred to. Accordingly, the statement does not comply with the requirement to refer to a specific admissible portion of the record where the statement finds support, under LRCiv 56.1.*

359.    Further, the payroll records similarly support that the Patrol Lieutenants worked more than forty hours in a workweek. *See, e.g.,* Doc. 27-1, Houck Decl. at 10-11 at ¶¶ 18, 20, 25-27 and 13-32 (Exhibit A (paystubs)); Doc. 27-2, Halverson Decl. at 4-5, ¶¶15-17, 20-21 and 6-117 (Exhibit A (paystubs)) and Sanchez Decl. at 127-128, ¶¶14-15, 19; PSOF Ex. 19, Ellison 102:12-105:6.

**Defendant's Response: Disputed. Plaintiff has not provided any admissible portion of the records where this statement finds support, as required by LRCiv 56.1. The statement merely cites to declarations of Plaintiff and two opt-ins, and the deposition testimony of one Plaintiff, which state in a conclusory fashion that they work over 40 hours in a workweek. The paystubs attached to the declarations do not support this statement, and in fact show that show 0 hours of overtime in the paychecks attached for Plaintiff Houck and opt-ins Halverson and Sanchez.**

360.    Further, when Patrol Lieutenants are in the role of *Acting* Captain – *i.e.*, filling in for a Captain when he is on leave or vacation – the Patrol Lieutenant still maintains his role and duties as a Patrol Lieutenant in addition to taking on Captain duties. *See* PSOF Ex. 14, Cpt. Aldorasi 64:21-65:8; PSOF Ex. 11, Thomas 122:17-123:6; PSOF Ex. 7, Keller 38:3-9.

**Defendant's Response: Defendant objects to PSOF ¶ 360 because it is vague and ambiguous such that Defendant cannot formulate a response. The statement does not identify the specific "role and duties as a Patrol Lieutenant" that it refers to. However, Defendant does not dispute that Patrol Lieutenants take on captain duties when in the role of Acting Captain, when they fill in for a Captain when they are on leave or vacation.**

361.    Although there may be differences in volume of calls between the day and night shifts, and even certain districts, that also does not change the nature of the Patrol Lieutenant's primary duty. *See, e.g.,* PSOF Ex. 14, Cpt. Aldorasi 43:21-44:2 (same patrol type duties in Lake Patrol even though difference transportation may be used to perform);

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 261-3400

60

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

1  PSOF Ex. 10, Rosenberger 60:25-61:2 and 62:16-25 (day and night shifts and scheduling in

2  different districts is essentially the same); PSOF Ex. 17, Cpt. Lee 58:10-16; 59:9-62:21

3  (Lake Patrol may not have as much crime but has "more safety issues" – still patrol related

4  and still exchangeable with other districts); PSOF Ex. 1, Houck 28:9 16, 63:11-24

5  (districts/day & night shifts have similar duties but some may be busier); PSOF Ex. 13,

6  Vance 104:25-105:8 ("the duties are very similar. The volume would be the major

7  difference.").

8  ***Defendant's Response: Defendant objects to PSOF ¶ 361 because it is a legal***

9  ***conclusion and not a fact based on admissible evidence as required under***

10  ***Fed. R. Civ. P. 56 and LRCiv 56.1 ("The separate statement should include***

11  ***only those facts that the Court needs to decide the Motion."); see also Kilroy***

12  ***v. Ruckelshaus, 738 F.2d 1448, 1452 (9th Cir. 1984) ("Our reading of***

13  ***[plaintiff's] proposed findings of fact reveals that they are actually legal***

14  ***conclusions … and were disputed by [defendant] in its memoranda. The***

15  ***district court was not obligated to accept [plaintiff's] legal conclusions as true***

16  ***simply because he characterized them as statements of fact."). Defendant***

17  ***objects to PSOF ¶ 362 for the additional reason that the cited testimony does***

18  ***not support the proposition asserted, that the differences of volumes of calls***

19  ***between day and night shifts, does not change the Lieutenants' primary***

20  ***duties.***

21  362.    And, even in the role of an "administrative lieutenant", the Patrol Lieutenants

22  still have law enforcement/first responder duties. *See* PSOF Ex. 2, Acosta 41:9-18, 146:19-

23  147:16 (although he is currently in more of an administrative role in District 2, he still has

24  the radio on, is logged into CAD and still involved in patrol such that if there was a critical

25  incident, he "absolutely" would still be expected to respond).

26  ***Defendant's Response: Defendant objects to PSOF ¶ 362 because it misstates***

27  ***the cited testimony. Acosta testified that while he "still ha[s] patrol***

28  ***functions," he is "more of an administrative" and "do[es] the internal***

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

1   *investigations and I do the special – the special squads." He did not testify*
2   *that he still had "law enforcement/first responder duties", but rather that he*
3   *would have been expected to respond to a critical incident if in a position to*
4   *do so. Further, he was not speaking for all "administrative lieutenants" but*
5   *rather was discussing his own personal role. PSOF Ex. 2, deposition*
6   *transcript of Acosta 41:9-18, 146:19-147:16.*

7   363.   Although Jackson did testify that the districts may have differences, the
8   "main" difference he noted was simply the "hours" and also the type of patrol (*e.g.*,
9   residential versus unincorporated areas such as national parks or county parks) – he did
10   not offer any testimony raising doubt that the Patrol Lieutenants engage in law
11   enforcement duties.

12   **Defendant's Response: Defendant objects to PSOF ¶ 363 because it is**
13   **unsupported by any specific admissible portion of the record where it finds**
14   **support, as required by LRCiv 56.1.**

15   364.   Although for that particular shift, the Watch Commander may be the
16   "highest-ranking individual" on shift, that does not change the Patrol Lieutenant's primary
17   duties. *See* PSOF Ex. 18, Cpt. Stutsman 65:2-11 (overall the day and night shifts are "pretty
18   similar").

19   **Defendant's Response: Defendant objects to PSOF ¶ 364 because it misstates**
20   **the cited testimony and relies on inadmissible speculative testimony pursuant**
21   **to Federal Rules of Evidence 701 and 602. United States v. Holguin, 51 F.4th**
22   **841, 865 (9th Cir. 2022) ("Under Rule 701, a witness may not 'testify based on**
23   **speculation, rely on hearsay, or interpret unambiguous, clear statements.'"). "**
24   **In the cited testimony, there is no reference to "primary duties" of the**
25   **lieutenants. Furthermore, within the cited testimony, Captain Stutsman offers**
26   **his own speculative opinion that he believes that "overall, [he] think[s], yes,"**
27   **the expectations for the duties that the lieutenants are to perform as**
28   **nighttime lieutenants are "probably pretty similar." This does not constitute**

62

*an admissible portion of the record as required by LRCiv 56.1.*

365.    The Watch Commander assignment "still requires you to be uniformed, armed, prepared to be a first responder or respond as backup." PSOF Ex. 6, Jackson 43:3-8.

***Defendant's Response: Defendant objects to PSOF ¶ 365 because it does not cite to any specific admissible portion of the record where the statement finds support, as required by LRCiv 56.1. The statement cites to page 43 of Lieutenant Jackson's deposition testimony, which Plaintiff states is attached to his statement of facts at Doc. 167, however that page was not attached to Plaintiff's exhibits to his statement of fact.***

DATED this 13th day of February 2026.

FISHER & PHILLIPS LLP

By    s/  Lori A. Guner
   Shayna Balch Santiago
   Lori A. Guner
   David Myers
   3200 N. Central Avenue, Suite 1550
   Phoenix, Arizona 85012-2487
   Attorneys for Defendants

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FP 61586460.2

**CERTIFICATE OF SERVICE**

I hereby certify that on February 13, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

Ty D. Frankel
Yen Pilch Robaina & Kresin PLC
6017 N. 15th Street
Phoenix, Arizona 85014
tdf@yprklaw.com
Attorneys for Plaintiff

Patricia N. Syverson
Yen Pilch Robaina & Kresin PLC
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
pns@yprklaw.com
Attorneys for Plaintiff

  s/  Michelle C. Xochicale

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FP 61586460.2