## INDEX OF EXHIBITS

**Description**

**Exhibit 1:**  Jerry Vance Deposition Excerpts

**Exhibit 2:**  Benjamin Freeman Deposition Excerpts

**Exhibit 3:**  Alden Jackson Deposition Excerpts

**Exhibit 4:**  Christpher Houck Deposition Excerpts

**Exhibit 5:**  John Baily Deposition Excerpts

**Exhibit 6:**  Brian Stutsman Deposition Excerpts

**Exhibit 7:**  David Lee Deposition Excerpts

**Exhibit 8:**  Kelly Grennan Deposition Excerpts

**Exhibit 9:**  Jonathan Halverson Deposition Excerpts

**Exhibit 10:** Darrien Ellison Deposition Excerpts

# EXHIBIT 1

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Christopher J. Houck, on      )
behalf of himself and all     )
those similarly situated,     )
                              )
         Plaintiff,           )
                              )
vs.                           ) Case No.:
                              ) 2:23-cv-00068-DGC
Maricopa County,              )
                              )
         Defendant.           )
                              )

VIDEO-RECORDED DEPOSITION OF JERRY VANCE
(and Videoconference via Zoom)

Phoenix, Arizona
July 14, 2025
1:59 p.m.

REPORTED BY:                CARRIE REPORTING, LLC
Kristy A. Ceton, RPR, CRR  Certified Reporters
AZ CR No. 50200            12725 W. Indian School Rd.
                           Suite F-100
CERTIFIED COPY             Avondale, AZ 85392
                           (480) 429-7573

66

A.    Yeah.

Q.    From January of 2021 to July of 2021, so during that time period, can you give me your best estimate of how often you were on scene responding to calls?

A.    That's -- I -- that's tough for me.  It's a while ago.  I -- I did still have administrative duties I had to do as a lieutenant.  But I like to get out into the field so I could observe my subordinates on calls.

Q.    Let me go about it differently.  Are there certain calls that it's your position you were required to respond to?

A.    Yes.

Q.    What calls would those be?

A.    I would say a lot of major incidents to begin with would be, like, a deputy-involved shooting, deputy-involved accident, if an employee got injured, if a suspect or a member of the public got injured at the hands of the sheriff's office.

And then major -- like, then, major incidents like, you know, shooting in a community, an accident where somebody died or has the potential to die due to their injuries.

I'm trying to think.

Barricade situation or hostage situation, bomb threat.

Q.    Would it be fair to characterize everything you've just described as major incidents?

A.    Yeah.  They're -- they're definitely -- what would I describe it as -- priority one, I would say.

Q.    Let's use that phrase then.  Priority one.

With regards to priority one issues that came in, how often would those occur?  Daily? Weekly?  Monthly?

A.    Every shift there's priority one calls.

Q.    How many?  What was -- what was the highest number of priority one calls that you would receive in a single shift?

A.    As the watch commander?

Q.    Sure.  Let's start there.  Watch commander over District 1?

A.    Yeah.  But the watch commander, the night watch commander manages all the districts on the east side.

Q.    Yes.  But when you were in District 1 as watch commander overseeing all of the districts, how many priority one calls would come in?

68

A.   I would say generally at least three or four a night all the way up to maybe 10 or 12.

Q.   Would you respond to all of those?

A.   Me personally, no.

Q.   How many would you personally respond to?

A.   That would depend on the geographic area. So it's hard for me to answer that.

Q.   Give me some outer limits.  Have you ever not personally responded to any calls during a single shift?

A.   Yes.

Q.   What's the largest number of calls that you've responded to in a single shift?

A.   I wouldn't say it's exceeded 10.

Q.   And is that as watch commander in District 1?

A.   I would say that as my whole lieutenant position over the years.

Q.   Would you say that it would be common for you to respond to five or more calls in a single shift as watch commander District 1?

A.   Yeah.

Q.   And when I say "respond," I just want to be clear here.  Are you referring to physically going on scene or are -- is responding taking phone calls

Q.    Very close.

A.    Yeah.

Q.    And when you were in that administrative position, walk me through what a typical day would look like.  Would you just drive into the office and start your day?

A.    Yeah.

Q.    So you would log into CAD in your driveway and then drive to the administrative office or the office at Salt River recreation area?

A.    Generally speaking, yes.

Q.    And what percentage of your day would you say you spent in the office versus on scene in the field in this administrative position?

A.    I would say maybe 90, 95 percent.

Q.    90 to 95 percent in your office as opposed to in the field?

A.    If I was just the administrative lieutenant for that day, yes.

Q.    When you went back to District 1 after your time in Lake Patrol, can you describe for me if your position and time in the office versus time in the field changed at all?

A.    When I went back to watch commander earlier this year?

Q.   Okay.  And would the calls and responses that you took as administrative assistant -- as an administrative lieutenant be reflected in the CAD data?

A.   Generally speaking, yes.

MS. BALCH SANTIAGO:  Okay.

MS. SYVERSON:  Okay.  We'll read and sign.

THE VIDEOGRAPHER:  This concludes today's deposition.  We are off the record at 5:24.

(The proceedings concluded at 5:24 p.m.)

_____
JERRY VANCE

# EXHIBIT 2

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Christopher J. Houck, on         )
behalf of himself and all        )
those similarly situated,        )
                                 )
        Plaintiff,               )
                                 )
vs.                              ) Case No.:
                                 ) 2:23-cv-00068-DGC
Maricopa County,                 )
                                 )
        Defendant.               )
                                 )

VIDEO-RECORDED DEPOSITION OF BENJAMIN FREEMAN

Phoenix, Arizona
August 7, 2025
10:06 a.m.

REPORTED BY:                     CARRIE REPORTING, LLC
Kristy A. Ceton, RPR, CRR        Certified Reporters
AZ CR No. 50200                  12725 W. Indian School Rd.
                                 Suite F-100
                                 Avondale, AZ 85392
CERTIFIED COPY                   (480) 429-7573

Deposition of: Benjamin Freeman                         August 7, 2025

30

would be feasible or reasonable for me to respond to something.

Q.   Let me ask it a different way.

Are there any calls that you are required to respond to?

A.   The calls that I'm required to respond to would be a deputy-involved collision, a deputy-involved shooting.  Strongly encouraged if a deputy is injured during the course of an arrest that we would respond to that.

Q.   Any other calls that you are required to respond to?

A.   I wouldn't say "required."  I would say probably encouraged --

Q.   Okay.

A.   -- to go to.

Q.   Let's go through the calls that you were encouraged to go to.

A.   Fatal collisions.  We'll call them SIDS deaths, deaths of children, suspicious deaths.  A supervisor would definitely be required to respond to those.  Based upon the information they would relay to me would be determining factor if I would respond to that.

Those are some of the big ones off the

top of my head that I can think of right now.

Q.   You're not required to respond to all calls, correct?

A.   Correct.

Q.   Do you have discretion as a lieutenant to determine which calls to respond to outside of the ones you listed that you are required to respond to?

A.   Uh-huh.  Yep.

Q.   Yes?

A.   Yes.

Q.   When you served as watch commander in District 7, how long were you in that role for?

A.   In -- in District 7, until April of '23.

Q.   So is it safe to assume, November -- is it safe to assume that you were in the watch commander position within District 7 approximately December 2022 through April of 2023?

A.   Yeah.  That's -- that's a pretty accurate timeline.

Q.   During that time frame of December 2022 through April of 2023, as night watch commander, did you ever have responsibility for the entire district?

A.   The entire district, that was every day.

Oh, are you talking as, like, an -- as the acting captain?  Or -- I'm going to have you get

141

questions.  We'll read and sign.

MS. BALCH SANTIAGO:  Okay.

THE VIDEOGRAPHER:  This concludes today's deposition.  We are off the record at 1:35.

(The proceedings concluded at 1:35 p.m.)

                    _____
                    BENJAMIN FREEMAN

# EXHIBIT 3

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Christopher J. Houck, on          )
behalf of himself and all         )
those similarly situated,         )
                                  )
        Plaintiff,                )  No. 2:23-cv-00068-DGC
                                  )
vs.                               )
                                  )
Maricopa County,                  )
                                  )
        Defendant.                )
                                  )
_____ )

VIDEOTAPED DEPOSITION OF ALDEN JAMAAL JACKSON

Phoenix, Arizona
April 15, 2025
1:35 p.m.

CERTIFIED COPY

Reported by:                      CARRIE REPORTING, LLC
CARRIE A. CARIATI                 Certified Reporters
Certified Professional Reporter   17505 North 79th Avenue
Certified Realtime Reporter       Suite 301-C
Arizona CR No. 50355              Glendale, Arizona 85308
carrie@carriereporting.com        (480)429-7573

A.    No, ma'am.

Q.    Same question with regards to the rest of the months that are listed on Exhibit 1.  So other than the numbers listed for December 2022 through January of 2024, are you claiming entitlement to any other hours or overtime pay other than the hours listed under "'Reg No Pay' on Stub" in Exhibit 1 to your deposition?

A.    No, ma'am.

Q.    Does the abbreviation CAD mean anything to you?

A.    It does.

Q.    What is -- what does CAD mean to you?

A.    CAD is the Computer-Aided Dispatch.

Q.    And are you required to use the CAD system -- strike that.

While you were in District 2 as a lieutenant and while you were in Lake Patrol as a lieutenant, were you required to use the CAD system?

A.    Yes, ma'am.

Q.    In what ways were you required to use CAD while in District 2 and/or Lake Patrol?

A.    Both would have been similar.  In a patrol setting, a lieutenant has to log on to CAD, especially in the capacity as watch commander, and you are to monitor the calls, monitor the radio, assess scenes as far as what you are reading on CAD for resources that may be needed or

situations that may, you know, require different resources, determine what you should or shouldn't respond to, prioritize what needs a response, that type of thing.

Q.     While you were in District 2 as a lieutenant and while you were in Lake Patrol as a lieutenant, were you required to be logged into CAD during the entirety of your shift?

A.     Yes.

Q.     Let's start first with District 2 when you were promoted to lieutenant and up until your transfer out of District 2.  Can you walk me through what a typical day might look like, of course, understanding that days could vary, but start me out with when you first started your shift or logged into the CAD system.

A.     So a typical day in District 2, I would log into CAD, which means at that point I am already in uniform in my vehicle.  I actually live in District 2, so I was actually able to -- to start my day.  Because I lived in my district, I could start my day as soon as I got in my truck.

From there, I would show up at the district and do the patrol briefing with the patrol squads, check e-mails, check CAD once again, which was kind of an ongoing thing to see what was happening and when.  I am obviously monitoring the radio the entire time.

*A.*    Yes.

*Q.*    Do you have an opinion one way or the other as to whether or not you performed more or less traffic stops than other lieutenants in patrol?

*A.*    No.

MS. SANTIAGO:  That's all I have.

MS. SYVERSON:  Okay.  I have no questions. We will read and sign.

MS. SANTIAGO:  All right.

VIDEO TECHNICIAN:  This concludes today's deposition.  We are off the record at 4:42.

(Proceedings adjourned at 4:42 p.m.)

_____
ALDEN JAMAAL JACKSON

# EXHIBIT 4

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA


Christopher J. Houck, on behalf )
of himself and all those        )
similarly situated,             )
                                )
      Plaintiff,                )  NO.
                                )  2:23-cv-00068-DGC
vs.                             )
                                )
Maricopa County,                )
                                )
      Defendant.                )
                                )


VIDEOTAPED DEPOSITION OF CHRISTOPHER JOHN HOUCK

Phoenix, Arizona
March 18, 2025
9:34 a.m.


Glennie Reporting Services, LLC
1555 East Orangewood Avenue      Prepared by:
Phoenix, Arizona 85020
                                 Jill Marnell, RPR
602.266.6535                     Arizona Certified
www.glennie-reporting.com        Reporter No. 50021

158

particularly violent situation or something that required more than, you know, one or two deputies the sergeant would usually go to support the -- the squad.

Q.   And I understand that there's obviously a very wide range of calls that you could receive on a daily basis.  Presumably ranging from minor traffic infractions to literally the worst of humanity with homicide and other serious crimes.

With responding to calls, what -- was there a specific cutoff where a sergeant would be called out to supervise?

A.   No.  Sergeants and lieutenants are not called by dispatchers to a scene.  They have to self-(indecipherable) themselves.

Q.   BY MS. BALCH SANTIAGO:  Thank you for --

THE COURT REPORTER:  I'm sorry, they have to self?

THE WITNESS:  They have answer up and say like I'm en route, show me en route.  They have to self-deploy.

Q.   BY MS. BALCH SANTIAGO:  So to use your phrase self-deploy, is there a general rule of thumb where sergeants would self-deploy themselves?

A.   I think everybody has like a different way of going about business.  I know like when I was a sergeant

159

if I had a deputy that was newer going to like a -- what I thought was a complex call, like maybe a -- multiple burglaries in a -- on a street, and I knew that that deputy was inexperienced I would go, just knowing that he's probably going to need like extra help processing the scene. And then there's other deputies on the squad that are more senior I might not do that with.

So just you kind of have to feel out your guys and see who you can kind of trust and who you can't.

And then there's certain calls that are obvious supervisor responds to, like violent felonies, barricade situations, stuff -- stuff of that resort [sic].

Q. What -- Can you give me a listing of the serious felonies that would be an obvious self-deployment for a sergeant?

A. I mean, it's -- there's very many. There's like a murder, an aggravated assault with serious physical injuries, a vehicle accident that someone is likely to die from, domestic violence calls involving like strangulation. Anything where a weapon is involved. Kidnapping, severe child abuse. There's -- there's many things.

And sometimes it may even be a minor thing but like the deputy will say like, hey, the media is showing up. That's usually the cue for the supervisor to

250

STATE OF ARIZONA           )
                           )  ss.
COUNTY OF YAVAPAI          )

          BE IT KNOWN that I took the foregoing proceedings; that the witness was duly sworn by me; that said transcript is a full, true, and accurate record of the proceedings; that the proceedings were taken down by me in shorthand and thereafter reduced to print under my direction; that I have acted in compliance with ACJA 7-206.

          I CERTIFY that I am in no way related to any of the parties hereto, nor am I in any way interested in the outcome thereof.

          Pursuant to request, notification was provided that the deposition is available for review and signature.

          Dated this 1st day of April, 2025.


_____
          JILL MARNELL
     Certified Reporter #50021
   Registered Professional Reporter

     *     *     *     *     *     *

          I CERTIFY that GLENNIE REPORTING SERVICES, LLC, has complied with                        : forth in ACJA 7-206.


_____
     GLENNIE REPORTING SERVICES, LLC
        Registered Reporting Firm
         Arizona RRF No. R1035

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF ARIZONA

Christopher J. Houck, on      )
behalf of himself and all     )
those similarly situated,     )   No. 2:23-cv-00068-DGC
                              )
              Plaintiff,      )
                              )
         vs.                  )
                              )
Maricopa County,              )
                              )
              Defendant.      )
_____)


DEPOSITION OF CAPTAIN JOHN BAILEY


Phoenix, Arizona
November 13, 2024
9:33 o'clock a.m.


REPORTED BY:
Leisel Baker, RPR
Certified Court Reporter
Certificate No. 50217

PREPARED FOR:
ASCII/CONDENSED
(Certified Copy)



56

jurisdiction, they would pull over.  They would block traffic.  They would render whatever aid they could render, and basically let our communication know: Hey, there's a traffic accident here.

Most of the time when that happens, it has already been reported and the individual just happens to be in the right place at the right time to get there a little sooner than normal.  And then once the local PD shows up, or local fire department pull up, they just hand it over.  If they witnessed it, then they would provide a witness statement to whoever that agency was.

Q.  BY MS. SYVERSON:  Okay.  And so would you agree with me that even though a lieutenant's job involves both administrative and supervisory duties, that the most important element of a lieutenant's job is to law enforcement and first responder duties?

MS. SANTIAGO:  Form.  Form; foundation; overbroad.

THE WITNESS:  I would say their primary function is to oversee and manage the assets that are doing that.

Q.  BY MS. SYVERSON:  Okay.  But they still are doing first responder duties when necessary; is that correct?

79

SIGNATURE OF WITNESS

I, John Baily, the undersigned, say that I have read the foregoing transcript of testimony taken on July 25, 2023, and I declare, under penalty of perjury, that the foregoing transcript is a true and correct record of my testimony, with such corrections and changes, if necessary, attached.

EXECUTED this____day of_____, 2024.


_____

Captain John Bailey



**Griffin Group International**
**888.529.9990 | 602.264.2230**

# EXHIBIT 6

# In the Matter of:

*Houck*

*vs*

***Maricopa Country***

*Videoconference Deposition of Captain Brian Stutsman*

*March 21, 2025*



GRIFFIN GROUP
INTERNATIONAL

3200 East Camelback Road, Suite 177
Phoenix, Arizona 85018

28

I mean, I don't want a one-trick pony.  I want a supervisor that's rounded, you know, knowledgeable in all areas of his duties, and the majority of a sergeant's duties is in the field, and lieutenants need to be out there monitoring them.

Q.   BY MS. SYVERSON:  And when lieutenants are out there monitoring them, are they just watching them, or are they actively engaged in whatever incident might be occurring at the time?

MS. GUNER:  Form; foundation.

THE WITNESS:  I mean, actively engaged is relevant to the situation, obviously.  Are they out there holding the sergeant's hands?  I don't think that's the case.  But I feel like they have to be close enough proximity to be aware of what's going on, but I don't know.  I mean, that's just relevant on the situation, but ...

Q.   BY MS. SYVERSON:  Okay.  That's fair.

Do lieutenants as part of their supervisory role, do they have the discretion to hire or fire individuals?

MS. GUNER:  Form; foundation.

THE WITNESS:  I don't even have that discretion.  So I will tell you that, like, I can select people from a process, but, like, I don't say, "You're

hired.  Congratulations.  Welcome aboard."  I mean, I can't do that, so -- nor can they.

I have included lieutenants in processes for hiring like a DSA, and I think we're currently going through a process, but they're just involved in reviewing, interviewing.  HR does all that.

And I wish that I could fire somebody, but I can't.  I've got a lot of -- a couple people in mind, but no.  They can't, nor can I.

Q.    BY MS. SYVERSON:  Okay.  Do lieutenants have actual decision-making authority regarding management in operations at the patrol division?

MS. GUNER:  Form; foundation.

THE WITNESS:  I mean, they do.  But, I mean, it's -- obviously, it has to be in line with my directions and the office directions.  I mean, they can't go rogue on me, but I encourage them to, you know, make decisive decisions, make command decisions, especially in my absence.

I'm going out for probably six weeks on a surgery on Monday, and I'm having a lieutenant fill in for me, which is I think, at times, kind of frustrating because he doesn't have all the accesses that I do.  He can't see the whole division in some, you know, applications on our systems and stuff, so it's -- it's

52

short, so ...

Q.   Okay.  And I just have a question on this page, which is MCC 1398.  This shows a situation where Lieutenant Rankin is -- he's on two squads at the same time.  Is that something that commonly happens in --

MS. GUNER:  Form; foundation.

THE WITNESS:  Well, if you look at all the rosters, each -- well, hang on a second.  Show me -- wait a minute.

Q.   BY MS. SYVERSON:  It seems to happen a lot with Squad 3 in District III.  It's -- because of the redactions, it's a little hard to tell, but ...

A.   Hang on a second.  I'm going to check something real quick here.  That just might be a typo, to be honest with you.

Q.   If it's not a typo, is that just because of staffing?  Like -- well, do you have any --

A.   Let me -- I'm going to compare something right now.

Okay.  No, it's not a typo.  So I'm sorry.  I -- because it's all redacted, I just got confused.

Okay.  So I've got two day-shift lieutenants, and I've got a watch commander.  So whenever you see the Squad 3 and Squad 4s, that's the nighttime watch commander.  That's -- that's a common practice, so even

looking at the current one.

So one of the day-shift lieutenants has one of the day-shift squads, and the other lieutenant on days has the other day-shift squad, but the watch commander -- excuse me. The watch commander is at night, which is Squad 3 and 4. Those are the night shift. The watch commander has both squads. He is responsible. That's -- he is responsible for four sergeants on nights and both squads, even though he typically only really works the Sunday, Monday, Tuesday, Wednesday; therefore, he only sees the Squad 3 guys on Wednesday nights, but yet he is still responsible for them.

And then the District II watch commander covers the every other Wednesday, Thursday, Friday, Saturday squad.

So, no. On all of the rosters, Squad 3 and 4 are going to be the same name, or should be. And if it's not, then that's the typo.

Q.   Okay, okay. That's helpful.

A.   That's not because of staffing issues. That's the way it's always scheduled.

Q.   Okay. Is part of your -- part of your duties as a captain to do performance evaluations of the lieutenants?



86

STATE OF ARIZONA          )
                          ) ss.
County OF MARICOPA        )

        BE IT KNOWN that the foregoing proceedings were taken before me; that the witness before testifying was duly sworn by me to testify to the whole truth; that the foregoing pages are a full, true, and accurate record of the proceedings, all done to the best of my skill and ability; that the proceedings were taken down by me in shorthand and thereafter reduced to print under my direction.

        I CERTIFY that I am in no way related to any of the parties hereto, nor am I in any way interested in the outcome hereof.

        [X]  Review and signature was requested; any changes made by the witness will be attached to the original transcript.
        [ ]  Review and signature was waived/not requested.
        [ ]  Review and signature not required.


        I CERTIFY that I have complied with the ethical obligations set forth in ACJA 7-206(F)(3) and ACJA 7-206 J(1)(g)(1) and (2).
        Dated at Phoenix, Arizona, this 1st day of April, 2025.

                    /s/ Kellie L. Olney

              _____
                    KELLIE L. OLNEY, RPR
                    Certified Reporter
                    Arizona CR No. 50223

              *       *       *       *       *


        I CERTIFY that GRIFFIN GROUP INTERNATIONAL has complied with the ethical obligations set forth in ACJA 7-206 (J)(1)(g)(1) through (6).

                    /s/ Pamela A. Griffin

              _____
                    GRIFFIN GROUP INTERNATIONAL
                    Registered Reporting Firm
                    Arizona RRF No. R1005



# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Christopher J. Houck, on behalf of himself and all those similarly situated, | ) ) ) | Civil No. 2:23-cv-00068-DGC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Maricopa County, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

DEPOSITION OF CAPTAIN DAVID LEE

Zoom Videoconference

April 14, 2025

9:07 a.m. MST

REPORTED BY:
TERI HOSKINS, RMR, CSR
Certified Reporter
Certified Reporter #51037

PREPARED FOR:
THE COURT

(Original)



**Griffin Group International**
**888.529.9990 | 602.264.2230**

43

because the -- going back to what I said earlier, when they get involved in a task, their focus narrows, and they're not able to effectively manage that whole situation.  I would not want them to get involved directly in interviews.

BY MS. SYVERSON:

Q.   Okay.  Would you agree that even though a patrol lieutenant's job duties involve both administrative and supervisory duties and patrol duties, that the lieutenant's most important duty is law enforcement and acting as a first responder when necessary?

MS. SANTIAGO:  Form, foundation, legal conclusion.

THE WITNESS:  That was a long question.

I would agree that their -- can you say it again?

BY MS. SYVERSON:

Q.   Yeah.  Let me kind of rephrase it.

Would you agree that even though a patrol lieutenant's job duties have various different aspects to them, that the most important duty of a patrol lieutenant is still law enforcement and acting as a first responder when necessary?

MS. SANTIAGO:  Form, foundation, calls for a

44

legal conclusion.

THE WITNESS:  So that goes back to that sort of bifurcated definition that we have, that we've talked about, of a first responder.

My -- my chief is a first responder, but he's not coming to any of my scenes.  So he's technically a first responder.  He has to maintain his POST certification and all of his training and his -- his shoot and all that stuff, but he is not going to the scene as a first responder.  That's a -- that's a deputy and a sergeant thing.  So yeah, he's doing law enforcement, but he's not -- he's not the actual -- like the hand that's enforcing it, no.

BY MS. SYVERSON:

Q.   Right.  No, I understand.

And that kind of goes back to before, when we talked about whether a patrol lieutenant would be required to respond to a major incident versus continuing to work on administrative tasks they might have at hand.

Do you recall --

A.   Yeah.

Q.   -- discussing that?  Okay.

So would it be fair to say that even though it might not happen as often with patrol lieutenants,

91

12:30, correct?

   MS. SANTIAGO:  That's, I think, what I have.

   MS. SYVERSON:  Okay.  Awesome.  Thank you.

   MS. SANTIAGO:  Do you know -- just so I can plan accordingly, do you know, will that one last about the same amount of time?

   MS. SYVERSON:  Yeah.  Yeah, it should be.

   MS. SANTIAGO:  Thanks.  All right.

   (The deposition concluded at 11:11 a.m.)

   (Exhibit Nos. 1 and 2 were marked for identification.)


_____
CAPTAIN DAVID LEE



# EXHIBIT 8

# In the Matter of:

*Houck*

*vs*

***Maricopa Country***

*Chief Kelly Grennan*

*September 5, 2025*



**GRIFFIN GROUP INTERNATIONAL**

3200 East Camelback Road, Suite 177
Phoenix, Arizona 85018

29

is a more recent version of this job description?

A.   No, I don't know offhand.

Q.   Would that be something in your position that you would be aware of?

A.   I would have -- I would be able to see it, but we have hundreds of job descriptions, so whether or not if there is a current one for specifically two lieutenants, I would have to look.  I don't know off the top of my head, no.

Q.   Okay.  And would you agree with me that it's what the patrol lieutenants actually do in their jobs that matter versus what is outlined in a job description for purposes of FLSA classification?

MS. BALCH SANTIAGO:  Form.

But go ahead and answer.

THE WITNESS:  It would be their overall duties.

Q.   BY MS. SYVERSON:  And so those would be the actual duties that they're performing; is that correct?

A.   It would be the duties described in the job description, as well as the other duties that are assigned at each division or district or assignment.

Q.   This job description is dated 2019.  Were you involved at all in the creation of this job description?

A.   No, I was not.

Q.   Is that something that your division at that



81

STATE OF ARIZONA          )
                          ) ss.
COUNTY OF MARICOPA        )

        BE IT KNOWN that the foregoing proceedings were taken before me; that the witness before testifying was duly sworn by me to testify to the whole truth; that the foregoing pages are a full, true, and accurate record of the proceedings, all done to the best of my skill and ability; that the proceedings were taken down by me in shorthand and thereafter reduced to print under my direction.

        I CERTIFY that I am in no way related to any of the parties hereto, nor am I in any way interested in the outcome hereof.

        [X]  Review and signature was requested; any changes made by the witness will be attached to the original transcript.
        [ ]  Review and signature was waived/not requested.
        [ ]  Review and signature not required.


        I CERTIFY that I have complied with the ethical obligations set forth in ACJA 7-206(F)(3) and ACJA 7-206 J(1)(g)(1) and (2).
        Dated at Phoenix, Arizona, this 16th day of September, 2025.

                /s/ Kellie L. Olney
        _____
                KELLIE L. OLNEY, RPR
                Certified Reporter
                Arizona CR No. 50223

            *      *      *      *      *


        I CERTIFY that GRIFFIN GROUP INTERNATIONAL has complied with the ethical obligations set forth in ACJA 7-206 (J)(1)(g)(1) through (6).

                /s/ Pamela A. Griffin
        _____
                GRIFFIN GROUP INTERNATIONAL
                Registered Reporting Firm
                Arizona RRF No. R1005

# EXHIBIT 9

1

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Christopher J. Houck, on          )
behalf of himself and all         )
those similarly situated,         )
                                  )
        Plaintiff,                ) No. 2:23-cv-00068-DGC
                                  )
vs.                               )
                                  )
Maricopa County,                  )
                                  )
        Defendant.                )
                                  )
                                  )


VIDEOTAPED DEPOSITION OF JONATHAN HALVERSON


Phoenix, Arizona
April 8, 2025
9:33 a.m.


CERTIFIED COPY


Reported by:                    CARRIE REPORTING, LLC
CARRIE A. CARIATI               Certified Reporters
Certified Professional Reporter 17505 North 79th Avenue
Certified Realtime Reporter     Suite 301-C
Arizona CR No. 50355            Glendale, Arizona 85308
carrie@carriereporting.com      (480)429-7573

82

Q.   And were you temporarily reassigned during the completion of that staffing study?

A.   Temporarily reassigned, but not reassigned out of the division.  There's a difference.  My chain in command wasn't changed, but I was reassigned for that project.  TDY is what we call it.

I was still a District 7 lieutenant, but I was taken from there and put into enforcement support to work with Cory Morrison on that project, but my -- my assignment is still District 7.

Q.   Were you doing any patrol-related duties during that approximately three-month period?

A.   No.

Q.   Have you been involved in any budgeting as a lieutenant within District 7?

A.   Yes.

Q.   Have you been involved in making recommendations regarding new equipment or tools?

A.   No.

Q.   While you were in District 7 as a lieutenant between January of 2020 through 2024, understanding that there was a time period that you were not actually in District 7 during that time period, how many times did you personally rescue fire, crime, or accident victims?

A.   Was I on scene with them, or did I actually

106

                              CERTIFICATE

          I HEREBY CERTIFY that the foregoing deposition
was taken by me pursuant to notice; that I was then and
there a Certified Court Reporter for the State of Arizona,
and by virtue thereof authorized to administer an oath;
that the witness before testifying was duly sworn by me to
testify to the whole truth and nothing but the truth;
pursuant to request, notification was provided that the
deposition is available for review and signature; that the
questions propounded by counsel and the answers of the
witness thereto were taken down by me in shorthand and
thereafter transcribed through computer-aided
transcription under my direction, and that the foregoing
typewritten pages contain a full, true, and accurate
transcript of all proceedings had upon the taking of said
deposition, all done to the best of my skill and ability.
          I FURTHER CERTIFY that I am in no way related to
nor employed by any of the parties hereto, nor am I in any
way interested in the outcome hereof.
          I FURTHER CERTIFY that I have complied with the
ethical obligations set forth in ACJA Sections
(J)(1)(g)(1) and (2).
          DATED at Phoenix, Arizona, this 21st day of
April, 2025.


                         CARRIE A. CARIATI
                         Registered Professional Reporter
                         Certified Realtime Reporter
                         Certified LiveNote Reporter
                         Certificate No. 50355


          I CERTIFY that this Registered Reporting Firm
has complied with the ethical obligations set forth in
ACJA Sections (J)(1)(g)(1) and (2).


          DATED at Phoenix, Arizona, this 21st day of
April, 2025.


                         _____
                         Registered Reporting Firm R1064
                         CARRIE A. CARIATI, Owner

# EXHIBIT 10

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Christopher J. Houck, on )
behalf of himself and all )
those similarly situated, )
                                  )
        Plaintiff,                ) No.
                                  ) 2:23-cv-00068-DGC
vs.                               )
                                  )
Maricopa County,                  )
                                  )
        Defendant.                )
_____ )


DEPOSITION OF DARRIEN ELLISON

Phoenix, Arizona
August 28, 2025
9:04 a.m.


REPORTED BY:
Kellie L. Olney, RPR
AZ Certified Reporter No. 50223

PREPARED FOR:
Superior Court
(Original)



**Griffin Group International**
**888.529.9990 | 602.264.2230**

60

final decision-maker in the FLSA determination; however, we have to rely on the department's Human Resources people that are extensions, since they are out there in the field.  They're working side by side the supervisors and the employees.

Q.   BY MR. FRANKEL:  Sure.  That's what you've been describing, that department HR, if they decide something needs to be escalated, that would get escalated to you in Central HR, and then Central HR makes the final determination about the exempt status, correct?

A.   Yes.

Q.   So ultimately, the County's exemption decision relies pretty heavily on the decisions that are being made at the department level as far as what they escalate, correct?

MS. BALCH SANTIAGO:  Form.

THE WITNESS:  Yes.

Q.   BY MR. FRANKEL:  And we touched on this initially, but can you tell me who was involved in the decision to classify the patrol lieutenants as exempt at the County?

MS. BALCH SANTIAGO:  Form.  Asked and answered. Form -- yeah, form.

THE WITNESS:  So in 2005, '6 -- the change was actually made in 2007, but I would have been involved



61

and Mary Lou, our FLSA expert, would have been providing me advice, and then I would have talked with my boss at the time, which I believe was Jessica Wilson.

Q.    BY MR. FRANKEL:  Jessica Wilson?

A.    (No audible response.)

Q.    Is that correct?

A.    Yes.

Q.    Thank you.

Was Mary Lou's title -- official title "FLSA expert"?

A.    No.

Q.    What was her official title?

A.    As I said before, I believe it was -- she was a consultant at one point, and then I think she was classified as a compensation analyst at one point.

Q.    And do you know when she left the County?

A.    I believe it was maybe 2013, 2014.

Q.    And who took over her role?

A.    So her role was -- we took her position, and then we made it a regular compensation analyst.

Q.    And who is that person?

A.    The person --

MS. BALCH SANTIAGO:  Form.

Q.    BY MR. FRANKEL:  Who is the compensation analyst in that role since 2020?



62

A.   We have three compensation analysts, and I don't know who was in that position.  So Mary Lou -- a little bit on Mary Lou.  She was the prior compensation manager.  She retired and then had been brought back, and so she had been just moved around in different roles.

Her last role she was in, I believe a compensation analyst, and we were able to -- when she left, we took that position and hired another analyst at the time, and I think -- who was it?  It might have been -- oh, shoot.  I can't think of who we hired at the time.

Q.   Do you know who currently is in that role?

A.   Who is -- when you say "that role," there wasn't -- there isn't --

Q.   The compensation analyst role.

A.   So we have three compensation analysts.  We have Shaye.  I can't remember her last name.  We have Bridget Laborg, and then Jennifer Glassman.

Q.   Was FLSA expert that Mary Lou was called, was that sort of like friendly terminology you guys were doing because you thought she knew a lot about the FLSA?

A.   Yes.

MS. BALCH SANTIAGO:  Form.

Q.   BY MR. FRANKEL:  So there wasn't any sort of



official determination that she was an FLSA expert, was there?

MS. BALCH SANTIAGO:  Form.

THE WITNESS:  When you say "official determination," yes, there was -- we knew that she had worked with the Department of Labor.  We knew that she had been a compensation manager.  We knew that she had been advising the County on FLSA issues since she had been at the County.  So that is why we used her for FLSA review.

Regarding the title of FLSA expert, that is just a title that we used internally.  That's not a formal title that she was assigned to because she -- she had other duties than -- she was helping out on different projects that weren't just FLSA.

Q.   BY MR. FRANKEL:  And she didn't have like a formal certification as an FLSA expert or anything like that?

A.   There is -- to my knowledge, there is no formal certification of an FLSA expert.

Q.   Is there anyone that you would describe as an FLSA expert that's worked at the County since Mary Lou left?

A.   I would say that --

MS. BALCH SANTIAGO:  Form.



64

THE WITNESS:  I would say that I am not as expert as Mary Lou, but I would say that I would be working alongside Mary Lou, as well as the fact that I've been doing it for 21 years, certainly know where to go.

Once again, the best things to do when you're analyzing exemptions is to go and make sure you're looking at the most up-to-date DOL regulations and rules.

Q.   BY MR. FRANKEL:  Are you the final say at the County about how the patrol lieutenants are classified?

MS. BALCH SANTIAGO:  Form.

THE WITNESS:  So I am the final say unless the department would want to push it above, and then ultimately it would go up to the board if -- if there was ever disagreements.

Q.   BY MR. FRANKEL:  Are you referring to the County Board of Supervisors?

A.   Yes.

Q.   Did the decision ever go up to the County Board of Supervisors --

A.   No.

Q.   -- related to the patrol lieutenants?

A.   No, I'm not aware of any FLSA decision that didn't get resolved at the Department of -- and Central



120

THE COURT REPORTER:  Shayna, are you ordering a copy of the transcript?

MS. BALCH SANTIAGO:  Yes, please.

(Deposition concluded at 12:18 p.m.)


                    (Signature not requested.)
                    DARRIEN ELLISON

