Shayna Balch Santiago, SBN 024852
Lori A. Guner, SBN 031646
David G. Myers, SBN 038484
FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
Telephone: (602) 281-3400
Fax: (602) 281-3401
ssantiago@fisherphillips.com
lguner@fisherphillips.com
dmyers@fisherphillips.com
Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Christopher J. Houck, on behalf of himself and all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Maricopa County,<br><br>Defendant. | No. 2:23-cv-00068-DGC<br><br>**DEFENDANT'S CONSOLIDATED REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>**AND**<br><br>**RESPONSE TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>**(Oral Argument Requested)** |

Defendant Maricopa County ("Defendant" or "Maricopa") hereby submits its consolidated reply in support of its Motion for Summary Judgment (Doc. 156) and its response to Plaintiff's Cross Motion for Summary Judgment (Doc. 166) as follows.

## I.    INTRODUCTION

Plaintiff's response to Defendant's Motion for Summary Judgment is nothing more than an attempt to confuse and conflate the issues in this case.[1] In actuality, the facts are simple and undisputed. The legal analysis straight forward. Having failed to respond to the

---

[1] Plaintiff criticizes Defendant for "spending twenty-two pages" of its brief addressing the required elements of its affirmative defense that the lieutenants are properly classified as exempt employees. Notably, Plaintiff does not so much as address the majority of these elements. However, Plaintiff engages in circular reasoning for 46 pages about the first responder regulation, FLSA liquidated damages, and the FLSA's willfulness/lookback period. Defendant concisely argued these points, including its primary duty analysis, in its opening brief in about 12 pages.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

majority of Defendant's arguments at summary judgment, the main issue for the Court to consider is what the lieutenants' primary duty was. If the Court holds their primary duty is managerial or administrative in nature, summary judgment in favor of Defendant is required.[2]

## II.    LEGAL ARGUMENT

### A.    Houck and the Opt-In Plaintiffs Do Not Dispute The Majority of the FLSA Exemption Elements

As fully briefed in Defendant's Opening Motion, Houck and the remaining lieutenants are not entitled to overtime pay because they are correctly classified as exempt from overtime. Defendant moved for summary judgment on the grounds that the Plaintiffs were properly classified as exempt under the executive, administrative, or highly compensated exemptions. Doc. 154. While Defendant bears the burden of proof with regards to this affirmative defense, Plaintiff has failed to dispute most of the elements for each of these exemptions, with the exception of the primary duty analysis.

As the U.S. Supreme Court held in *Encino Motorcars, LLC v. Navarro*, FLSA exemptions should be given a fair interpretation, rather than a narrow reading. 138 S. Ct. 1134 at 1142. "The narrow-construction principle relies on the flawed premise that the FLSA 'pursues' its remedial purpose 'at all costs.'" *Id.* The *Encino* Court further noted that the exemptions in the FLSA, including the white-collar exemptions, "are as much a part of

---

[2] To the extent Plaintif's argument is intelligible, Plaintiff appears to be engaging in the entirely circular and illogical reasoning that "[t]he County bears the burden of establishing that an exemption applies," that "[t]here is no reason to evaluate the executive, administrative, or highly compensated exemptions because the Patrol Lieutenants are first responders as a matter of law," and that "[i]f the Court believes here is a dispute of fact on [the first responder] issue that necessarily requires analysis of the specific exemptions addressed in the :County's Motion involving executives, administrators, and highly compensated employees." Doc. 166, p. 16:14-16. Plaintiff never actually addresses the elements of any of the exemptions at issue. Instead, he argues that "[w]hen considering analysis of the white collar exemptions, at a minimum, the County's Motion should be denied because there is a dispute of fact regarding whether the Patrol Lieutenants' primary duty is exempt in nature versus first responder in nature." Doc. 166, p. 16:18-21. Plaintiff's response and cross motion is so confusing that he both argues that he is entitled to summary judgment in his favor regarding exempt status while simultaneously arguing that "there is a dispute of fact regarding whether the Patrol Lieutenant's primary duty is exempt in nature versus first responder in nature." Doc. 166, p. 16:20-21.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

the FLSA's purpose as the overtime-pay requirement." *Id.* As set forth in greater detail below, the lieutenants are properly classified as exempt from overtime.

  1. **Defendant is Entitled To Summary Judgment That The Lieutenants Are Properly Classified As Exempt Under the FLSA's Executive Exemption.**

  To establish that the lieutenants qualify under the executive exemption, Defendant must establish: (1) the lieutenants were compensated on a salary basis at not less than $684 per week; (2) their primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) the lieutenants customarily and regularly direct the work of two or more other employees; and (4) the lieutenants have the authority to hire or fire other employees or their suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a).

  In his response, Plaintiff has offered no admissible facts or argument to dispute Defendant's entitlement to summary judgment on this executive exemption other than the primary duty analysis (management vs. first responder). Defendant's summary and analysis of the undisputed nature of the majority of the elements for the FLSA's executive exemption are set forth below.

  a) **It Is Undisputed That Houck and the Opt-Ins Earned At Least $684 Per Week.**

  Defendant argued in its opening brief, and offered unrefuted admissible evidence, that Houck and the Opt-Ins earned at least $684 per week as Lieutenants. Doc. 154. Plaintiff has offered no evidence or argument to dispute this. In fact, Plaintiff admits the relevant facts in response to Defendant's Statement of Facts. *See*, Doc. 169 (PCSOF ¶¶ 24, 34, 43, 53, 68, 78, 87, 98, 111, 120, 127, 138, 148, 156, 164, 172, 181, 189).  Where a non-moving party fails to address an argument raised by the moving party in a motion for summary judgment in the opposition brief, any arguments that are not addressed by the non-moving party may be deemed waived. *Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 (9th Cir. 2016); *Ford Motor Co.*, 756 F. Supp. 3d 885, 907 (S.D. Cal. 2024), 19-CV-01082-AJB-

AHG, 2025 WL 97598 (S.D. Cal. Jan. 14, 2025) Accordingly, these facts are undisputed for purposes of summary judgment. *See, also,* Fed. R. Civ. Pro., 56(e).

b)    **It is Undisputed That Houck and the Opt-Ins Supervised A Customarily Recognized Department or Subdivision.**

Defendant argued in its opening brief that the lieutenants supervised a customarily recognized department or subdivision within MCSO. Doc. 154. In support of this, Defendant set forth admissible facts in DSOF ¶ 2 detailing the structure of Patrol Bureaus East and West, including the subdivisions that the lieutenants oversee. Doc. 155 (DSOF ¶ 2). Plaintiff failed to offer any facts to dispute this DSOF and incredibly argued that he objects to the DSOF as improper" because it purportedly "includes unnecessary background information." Doc. 169 (PCSOF, Response No. 2). Plaintiff has further failed to address the argument that the lieutenants supervised a customarily recognized department or subdivision in their response. Accordingly, the Court should deem this fact as undisputed for purposes of summary judgment. Fed. R. Civ. Pro., 56(e).

c)    **Direct the Work of Two Or More Other Employees.**

It is undisputed that the lieutenants all direct the work of two or more employees. As set forth in Defendant's opening motion, each lieutenant within Patrol Bureaus East and West supervise a squad. Doc. 155 (DSOF ¶ 2) (Plaintiff offered no facts in his response to DSOF ¶2 to dispute the lieutenants' supervision of squads). Moreover, Houck and the opt-ins conceded at deposition that they supervised at least two or more employees at all times since they have been a lieutenant. Doc. 155 (DSOF ¶¶ 25, 35, 44, 54, 69, 79, 88, 99, 112, 133, 145, 187). Plaintiff has offered no evidence or argument to dispute this. In fact, Plaintiff admits the relevant facts in response to Defendant's DSOF. *See*, Doc. 169 (PCSOF ¶¶ 25, 35, 44, 54, 69, 79, 88, 99, 112, 133, 145, 187). This fact is undisputed for purposes of summary judgment. Fed. R. Civ. Pro., 56(e).

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FP 61791640.1

d)    **Authority to Hire or Fire Other Employees, or Suggestions Are Given Particular Weight.**

Defendant argued in its opening Motion that the lieutenants also have "the authority to hire or fire other employees, 'or their suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.'" Doc. 154, p. 15:15-18. Plaintiff has presented no argument or facts to dispute this. In response to DSOF ¶¶ 217-222 describing the lieutenants' testimony about their recommendations for hiring and firing, disciplinary input, and overall supervision, Plaintiff did not provide any contrary facts. Each of the deposed lieutenants testified that they were involved with and made at least some recommendations as to hiring, promotion, or employment action decisions.. Defendant's statements of fact (Doc. 155, DSOF ¶¶ 217-222) on this issue read as follows:

- **DSOF 217**: Many of the opt-ins testified that they were involved with and make recommendations as to hiring and promotion decisions. For example, Patrol Lieutenants serve on hiring panels of deputy services aides, interview lateral transfer candidates and administrative assistants, and make recommendations regarding their hiring. Patrol Lieutenants also serve on deputy-to-sergeant and sergeant-to-lieutenant promotion boards. (internal citations omitted)

- **DSOF 218:** Patrol Lieutenants have the authority to report misconduct; file complaints; initiate, serve as the principal, and assume responsibility over internal affairs investigations, including making recommendations of sustained findings; issue action plans to subordinates; and issue verbal and formal coachings. (internal citations omitted)

- **DSOF 219:** Houck and the deposed opt-ins all testified that they supervise two or more employees. Patrol Lieutenants acknowledged the importance of their responsibility for supervising, monitoring, and directing the work of their subordinates. For example, Houck testified he "actively" supervises a couple hours each week and "passively" supervises "all day." As stated by Brice when asked what the primary duty of a law enforcement lieutenant is: "You are the – the supervisor, you are there to help the deputies and sergeants grow so they can one day also be supervisors, so a combination of management, leadership, policing, and unfortunately a lot of admin duties that have to be done." As stated by Vance, a Patrol Lieutenant's responsibility of managing deputies is similar across all districts. (internal citations omitted)

- **DSOF 220:** Patrol Lieutenants are responsible for responding to significant incidents. Houck and the deposed opt-ins testified to their supervisory and managerial role when responding to significant incidents. This includes taking command of the incident until it is resolved, setting up a command post, calling in and coordinating resources, assigning duties to

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FP 61791640.1

people on scene, ensuring notifications are given to the chain of command, and ensuring sergeants are properly doing their duties (internal citations omitted)

- **DSOF 221:** Patrol Lieutenants perform annual performance evaluations for each of their sergeants. On a bi-weekly basis, Patrol Lieutenants also prepare performance notes for each of their sergeants to ensure legal compliance with policies, procedures, protocols, and court orders, which is based on a review of the sergeants' internal affairs investigations and reports, BlueTeam supervisor notes, productivity, patrol activity logs, traffic stops, arrests, accidents, and body camera video. (internal citations omitted)

- **DSOF 222:** Patrol Lieutenants are responsible for several other key managerial and administrative tasks to maintain departmental functions and operational readiness. For example, Patrol Lieutenants are involved in budgeting. Patrol Lieutenants conduct formal training to sergeants and deputies, serve as firearms instructors for the MCSO firearms training unit, teach substantive courses at the policy academy, and manage and oversee Field Training Officer programs. Patrol Lieutenants are also tasked with special projects where they make important recommendations, including scheduling projects to address staffing issues, design and buildouts of facilities, procuring new equipment and devices like fingerprint scanners for office-wide implementation, and revising district operations manuals. (internal citations omitted)

In Plaintiff's responses to the above DSOF, Plaintiff stated that he "does not dispute the testimony provided" and instead argues that the lieutenants "did not have authority to make **_final_** hiring or promotional decisions," "final disciplinary decisions," and/or that they "are still actively engaging in law enforcement." Doc. 169 (PCSOF, Response to Nos. 217-222) (emphasis added). However (and as Defendant argued in its opening motion), it is well-established that an "employee's recommendations regarding hiring and employment decisions are deemed to have 'particular weight' even if the employee does not have authority to make the **_ultimate_** decision as to the employee's change in status." C.F.R. § 541.105 (emphasis added). Plaintiff has nothing to say in response to this. Accordingly, it is undisputed for purposes of summary judgment that the lieutenants' recommendations regarding hiring and employment decisions are given particular weight. Fed. R. Civ. Pro., 56(e).

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FP 61791640.1

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

**e)    It is Undisputed That The Lieutenants Performed Significant and Daily Management Responsibilities.**

As Defendant argued in its opening brief, the CFRs provide the following guidance as to what constitutes "management" within the context of the FLSA's executive exemption:

> Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures. 29 C.F.R. § 541.102.

Here, there is no dispute that the lieutenants perform these types of duties on a daily and significant basis. Plaintiff "agrees that the Law Enforcement Lieutenant Job Description applied to all Law Enforcement Lieutenants, including the Patrol Lieutenants in Patrol Bureaus East and West." Doc. 169 (PCSOF, Response No. 14). Plaintiff has offered no evidence to dispute that the lieutenants actually performed all the duties listed in the job description. Doc. 155 (DSOF ¶ 14); Doc. 169 (PCSOF, Response No. 14). Rather in response to DSOF ¶ 14 (which states that the job description applies to lieutenants and that the lieutenants conceded at deposition that they actually perform each of the listed job duties), Plaintiff merely alleges that the job description is not an "all inclusive" list and that there are "additional patrol duties" that the lieutenants also perform. Doc. 169 (PCSOF, Response No. 14). At deposition the lieutenants also conceded that they regularly and customarily performed a wide variety of managerial duties including:

- having authority to deny a sergeant's request to flex his time,

- having authority to approve or deny requests for days off and/or overtime,

- putting procedures in place regarding call outs,

- placing sergeants on action plans,

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

- having authority to file complaints about employees with internal affairs,

- performing evaluations of assigned (and previously assigned) sergeants,

- conducting informalized training,

- filling the role as the patrol district's "acting commander" or "acting captain (who becomes the highest-ranking individual in the patrol district) for periods ranging from an occasional weekend to several consecutive months at a time;

- being involved with and making recommendations as to hiring and promotion decisions;

- serving on deputy-to-sergeant and sergeant-to-lieutenant promotion boards;

- having the authority to report misconduct, file complaints, initiate and serve as the principal, and assume responsibility over internal affairs investigations, including making recommendations of sustained findings, issuing action plans to subordinates, and issuing verbal and formal coaching;

- supervising two or more employees;

- supervising, monitoring, and directing the work of their subordinates;

- taking command of significant incidents until they are resolved (which includes setting up a command post, calling in and coordinating resources, assigning duties to people on scene, ensuring notifications are given to the chain of command, and ensuring sergeants are properly doing their duties);

- preparing performance notes for sergeants on a bi-weekly basis;

- other managerial and administrative tasks such as budgeting, conducting formal training for sergeants and deputies, serving as firearms instructors for the MCSO firearms training unit, teaching substantive courses at the police academy, and managing and overseeing Field Training Officer programs; and

- being tasked with special projects where they make important recommendations, including scheduling projects to address staffing issues, designing and buildouts of facilities, procuring new equipment and devices like fingerprint scanners for office-wide implementation, and revising district operations manuals.

Doc. 155 (DSOF ¶¶ 216-22). Plaintiff does not dispute any of the above in his response to Defendants' motion for summary judgement (for he cannot - the facts come directly from the lieutenants' deposition testimony). In response to DSOF ¶¶ 216-222 (outlining the various managerial duties performed by lieutenants), Plaintiff states that he does not dispute the deposition testimony and attempts to add irrelevant supplemental information. For example:

> **DSOF ¶ 216** – This DSOF relates to lieutenants who have served in an acting commander, acting captain, or watch commander role (who is the highest-ranking individual overnight over Patrol Bureau East, Patrol Bureau West, or the whole county). Plaintiff admits that "the Patrol Lieutenants may have served in roles where they were the 'highest-ranking individual in the district,'" and merely offers that the lieutenants "still maintain their role and duties as a Patrol Lieutenant." Doc. 169 (PCSOF, Response No. 216).

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

**DSOF ¶ 217** – This DSOF relates to lieutenants making recommendations regarding hiring and promotion. For example, lieutenants testified that they serve on hiring panels, interview lateral transfer candidates and administrative assistants, and make recommendations regarding their hiring. Doc. 155 (DSOF ¶ 217). Lieutenants also sit on deputy-to-sergeant and sergeant-to-lieutenant promotion boards. Doc. 155 (DSOF ¶ 217). Plaintiff responded to this DSOF by stating he "does not dispute the testimony" but contends that lieutenants "did not have authority to make *final* hiring or promotional decisions." Doc. 169 (PCSOF, Response No. 217) (emphasis added). However, the C.F.R.'s make clear that the test is not whether a manager has "final" authority. The manager merely needs to have their suggestions and recommendations be given "particular weight." 29 CFR 541.100(a)(4). Plaintiff has offered no facts that lieutenants' suggestions and recommendations are not given "particular weight."

**DSOF 219** – This DSOF relates to the lieutenants supervising, monitoring, and directing the work of subordinate employees. The DSOF recites Houck and the other lieutenants' deposition testimony, namely that they all supervise two or more employees and that they acknowledged the importance of their responsibility for supervising, monitoring, and directing the work of subordinates. Plaintiff responded to this DSOF by stating he "does not dispute the testimony" but contends that lieutenants "primary duty was law enforcement regardless of their supervisory duties." Doc. 169 (PCSOF, Response No. 219).

**DSOF 220** – This DSOF relates to the patrol lieutenants taking command responsibility of significant events (as opposed to being on the line side-by-side with deputies and sergeants). The DSOF cites deposition testimony where the lieutenants testified they take command of the incident until it is resolved, set up a command post, call in and coordinate resources, assign duties to people on scene, ensure notifications are given to the chain of command, and ensure sergeants are properly doing their duties. Plaintiff responded to this DSOF by stating he "does not dispute the testimony" but contends that lieutenants "are still actively engaging in law enforcement" Doc. 169 (PCSOF, Response No. 220).

**DSOF 221** – This DSOF relates to the performance of annual performance evaluations and ensuing compliance with policies, procedures and court orders. The DSOF recites deposition testimony where the lieutenants admit to performing annual performance evaluation for each of their sergeants, as well as preparing bi-weekly performance notes to ensure compliance with policies, procedures, protocols and court orders. Plaintiff agrees this DSOF is "Undisputed." Doc. 169 (PCSOF, Response No. 221).

Finally, Defendant has offered the Job Analysis Report authored by Fields Consulting Group, Inc. Doc. 155 (DSOF ¶¶ 9-11). Plaintiff has not disputed the authenticity of the record. Instead, in response to Defendant's statements of fact relating to this report, Plaintiff states "the document speaks for itself." Plaintiff's CSOF, Response No. 9-11. As stated in the report, task clusters (which demonstrated duties that lieutenants self-reported performing) were ranked in order of importance, according to lieutenants. Doc.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

155 (DSOF ¶ 11). Incident Management topped the list, along with Supervision, Management, and Administration. Doc 155 (DSOF ¶ 11). Patrol Duties and Criminal Investigations were ranked at the bottom of the list. Doc 155 (DSOF ¶ 11)

       **f)**    **There is No Material Dispute That The Lieutenants' Primary Job Duty Is Management.**

Finally, as Defendant argued in its opening brief, there is no material dispute that Houck and the remaining opt-ins' primary duty is "management." The primary duty analysis requires consideration of four factors, which are addressed more fully in section II(B) below.

       **2.**    <u>**Defendant is Entitled To Summary Judgment That The Lieutenants Are Properly Classified As Exempt Under the FLSA's Administrative Exemption.**</u>

To prove the lieutenants qualify under the administrative exemption, Defendant must establish: (1) the lieutenants were compensated on a salary basis at not less than $684 per week; (2) their primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer; and (3) their primary duty includes the exercise of discretion and independent judgment with matters of significance. 29 C.F.R. § 541.200(a).

       **a)**    **It Is Undisputed That Houck and the Opt-Ins Earned At Least $684 Per Week.**

As set forth in section II(A)(1)(a) above, it is undisputed that Houck and the opt-ins earned a salary basis of at least $684 per week. This fact is undisputed for purposes of summary judgment.

       **b)**    **It is Undisputed That The Lieutenant Performed Significant and Daily Office or Non-Manual Work Directly Related to Management or General Operations.**

As set forth above in section II(A)(1)(e), it is undisputed that the lieutenants performed significant work related to management. It is further undisputed that the majority of the work performed by lieutenants office or non-manual work. Houck and the remaining lieutenants were extensively questioned at deposition about the amount of office

or non-manual work they performed and the consensus was that very significant periods of time were spent in the office. This deposition testimony is summarized in Defendant's Statement of Facts at Doc. 155 (DSOF ¶¶ 200-211). Plaintiff has not seriously disputed these facts (many of the statements of fact are "undisputed" and others that are "disputed" do not offer controverting facts, but purport to "clarify" or supplement. According to Plaintiff's Controverting Statement of Facts at Doc. 169:

- It is undisputed that Houck testified it took him between 90 minutes and 3 hours each day, depending on traffic, to commute to/from work and that for the remaining 7-8.5 hours of his shifts he spent about 4-5 hours in his office. Doc. 155 (DSOF ¶ 200); Doc. 169 (PCSOF, Response to No. 200).

- It is undisputed that in Acosta's current role in District 2 he spends 90% of his time in his office versus out in the field. Doc. 169 (PCSOF, Response to DSOF ¶ 201)

- It is undisputed that it was common for Brice to head to his office multiple times during his shift and there were times that he spent the entire day at his office. Doc. 169 (PCSOF, Response to DSOF ¶202.

- It is undisputed that Freeman spent 75% of his time in his office in Distrct 7. As a Watch Commander in District 7 Freeman spent 50% of his time in the office. In District 3 Freeman spent 75% of his time in the office. As a nighttime Watch Commander in District 3 Freeman spent 50% of his time in the office. Doc. 169 (PCSOF, Response to DSOF ¶ 203).

- It is undisputed that Jackson spent about 50% of his time in the office while in Lake Patrol. Doc. 169 (PCSOF, Response to DSOF ¶204)

- It is undisputed that Keller spent about 50% of his time in his office in District 2 and currently spends about 50% of his time in his office in District 3. Doc. 169 (PCSOF, Response to DSOF ¶205)

- It is undisputed that Keller spent about 50% of his time in his office at District 2 and continues to spend about 50% of his time in his office at District 3. Doc. 169 (PCSOF, Response to DSOF ¶206)

- It is undisputed that Neville spent 2-3 hours per day in his office at District 2. Doc. 169 (PCSOF, Response to DSOF ¶207).

- It is undisputed that Rankin spent the majority of his shift in his office or his captain's office. Doc. 169 (PCSOF, Response to DSOF ¶ 208).

- It is undisputed that Thomas spends 3 out of 4 of his workweek days entirely in his office at District 1. Doc. 169 (PCSOF, Response to DSOF ¶210).

- It is undisputed that Trowbridge had a 1.5 hour commute to/from the office that he was clocked in for and spent 30-40% of his remaining time in his office. Doc. 169 (PCSOF, Response to DSOF ¶211).

- It is undisputed that while in Lake Patrol Vance spent 75% of his time in the office as a West Side Lieutenant, then spent 90-95% of his day in his office as a Lake Patrol Administrative Lieutenant. Doc. 169 (PCSOF, Response to DSOF ¶212).

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

11

Simply put, there is no dispute that the lieutenants spent significant portions of their day performing office or non-manual work directly related to management or general operations in their personal offices in their respective headquarter buildings.

> **c)    It is Undisputed that the Lieutenants Exercised Discretion and Independent Judgment with Regards to Matters of Significance on a Significant and Daily Basis**

Defendant argued in its opening brief that the lieutenants exercised discretion and independent judgment with respect to matters of significance. In support of this argument, Defendant offered deposition testimony of Houck and the remaining lieutenants wherein they conceded that they were responsible for performing in a supervisory and managerial capacity when responding to significant incidents. Doc. 155, DSOF ¶220. Plaintiff responded to this DSOF by indicating that he "does not dispute the testimony provided" but clarifying that he believed the lieutenants were still "actively engaging in law enforcement duties" along with managerial tasks. Doc. 169, PCSOF, Response to No. 220. It is also undisputed that Houck and many of the lieutenants had served as the night Watch Commander or an Acting Commander in their Captain's absence. In one these commander roles, the lieutenants were expected to take command of scenes and make judgment calls in real time. Doc. 155, DSOF 14, 220, 280, 216, 19, 63, 20, 30, 74, 103, 128, 137, 139, 182, 183; Doc. 169, PCSOF Responses to same. None of these facts are seriously in dispute and represent the epitome of discretion. Plaintiff has not meaningfully responded to his argument in Defendant's Motion. However, to the extent Plaintiff alleges he has no "final" authority and that he needed to update and inform his Captain, such an argument misses the mark. Whether an individual has "final" authority is not relevant to the discretion and independent judgment analysis. Indeed, if that were the case, then each organization would only have a single exempt employee – the President/CEO with final approval over all decisions. Clearly, that is not the case and not what is intended under the FLSA.

Moreover, it is undisputed that the lieutenants exercised wide discretion over what calls they wanted to go on scene to, in order to oversee and supervise their subordinates.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

12

**Exh. 3** (Acosta, 79:13-16); **Exh 2** (Freeman, 31:5-10); **Exh 4** (Houck 158:9-14); **Exh. 7**(Jackson 34:19-35:3); **Exh 8** (Rosenberger 29:4-7, 60:3-61)

        **d)**      **There is No Material Dispute That The Lieutenants' Primary Job Duty Is Exempt In Nature.**

Finally, as Defendant argued in its opening brief, there is no material dispute that Houck and the remaining opt-ins' primary duty involved the performance of office or non-manual work directly related to management or general business operations and that it included the exercise of discretion and independent judgment with matters of significance. The primary duty analysis requires consideration of four factors, which are addressed more fully in section II(B) below.

        **3.**      **Defendant is Entitled To Summary Judgment That The Lieutenants Are Properly Classified As Exempt Under the FLSA's Highly Compensated Exemption for the Periods Stated In Defendant's Opening Motion.**

The Highly Compensated Exemption applies if: (1) "the employee receives total annual compensation" of set amounts proscribed under the rules; and (2) "the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative, or professional employee." 29 C.F.R. §541.601(a). Until June 30, 2024, the threshold to qualify under the HCE exemption was $107,432. It increased to $132,964 on July 1, 2024. C.F.R. § 541.601

        **a)**      **It Is Undisputed That Houck and the Opt-Ins Met the Yearly Pay Threshold For the Highly Compensated Exemption for the Periods Stated in Defendant's Motion.**

Defendant argued in its opening motion that the $107,432 highly compensated salary threshold was exceeded in 2020 for opt-ins Keller, McCann, and Rosenberger. Doc. 154, p. 22:1-3; Doc. 155 (DSOF ¶¶ 36, 55, 162). It was similarly met in 2021 for Haverson, McCann, Neville, and Rosenberger. Doc. 154, p. 22:3-5; Doc. 155 (DSOF ¶¶ 70, 162, 89, 55). It was met in 2022 for Freeman, Halverson, Jackson, Keller, Ranck, Rosenberger, and Sanchez. Doc. 154, p. 22:5-7; Doc. 155 (DSOF ¶¶ 188, 70, 100, 36, 55, 45). In 2023 the amount was met by Halverson, Rosenberger and Whelan-Gonzales. Doc. 154, p. 22:8-9;

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

Doc. 155 (DSOF ¶¶ 70, 55, 196). In 2024 the salary threshold was met by Rosenberger and Whelan-Gonzalez. Doc. 154, p. 22:9-10; Doc. 155 (DSOF ¶¶ 55, 196). Plaintiff has offered no evidence or argument to dispute the fact that the highly compensated thresholds were met for the opt-ins in the above-referenced years. In fact, Plaintiff admits these facts in response to Defendant's Statement of Facts. *See*, Doc. 169 (PCSOF ¶¶ 36, 45, 55, 70, 89, 100, 162, 188, 196). Accordingly, these facts are undisputed for purposes of summary judgment. Fed. R. Civ. P. 56(e).

> **b)    There is No Material Dispute That the Lieutenants' Primary Job Duties Consist of Exempt Duties or Responsibilities.**

Finally, as Defendant argued in its opening brief, there is no material dispute that Houck and the remaining opt-ins' primary duties consist of exempt duties or responsibilities. The primary duty analysis requires consideration of four factors, which are addressed more fully in section II(B) below.

### B.    The Primary Duty Analysis Requires A Finding in Defendant's Favor

To the extent intelligible, Plaintiff appears to contend that the first responder analysis should start and stop with determining that the lieutenants are "law enforcement personnel" and are, therefore, "first responders." This is simply not the case and Plaintiff has not offered a single case or piece of legal authority in support of this preposterous position. Instead, all case law cited by Plaintiff (and Defendant) clearly states that the Court must perform the FLSA "primary duty" analysis to determine whether the lieutenants are exempt employees or non-exempt first responders.

> **1.    <u>The First Responder Regulation Requires Precisely The Primary Duty Analysis That Defendant Conducted in its Opening Motion.</u>**

To begin, there is no "first responder *exception*." (emphasis added). There is a first responder regulation, which Defendant predominantly argued in its opening brief. The first responder regulation states as follows:

> The section 13(a)(1) exemptions and the regulations in this part also do not apply to police officers, detectives, deputy sheriffs, state troopers, highway patrol officers, investigators, inspectors, correctional officers, parole or

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

probation officers, park rangers, fire fighters, paramedics, emergency medical technicians, ambulance personnel, rescue workers, hazardous materials workers and similar employees, regardless of rank or pay level, who perform work such as preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims; preventing or detecting crimes; conducting investigations or inspections for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals, including those on probation or parole; interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; or other similar work.

29 C.F.R. § 541.3(b)

There is no dispute as to the infrequency at which Houck and the other lieutenants perform "first responder" type duties in this case. Defendant correctly summarized the lieutenants' deposition testimony regarding personal performance of the duties listed in the first responder regulation at DSOF ¶¶ 223-233, 258-263 (Doc. 155). Defendant also correctly summarized deposition testimony regarding traffic stops at DSOF ¶ 234 (Doc. 155). **In response to DSOF ¶¶ 223-234, Plaintiff concedes that all of the DSOF are "Undisputed."** Doc. 169 (PCSOF, Response to DSOF Nos. 223-234, 258-263). By brief example, and as summarized in the DSOF, the lieutenants testified that over the course of the roughly five-year-relevant timeframe in this case, they had:

| DSOF ¶ No. | 29 C.F.R. §541.3(b) First Responder Category | Lieutenant Deposition Testimony |
|---|---|---|
| DSOF ¶ 224 | Prevented, controlled or extinguished fires of any time | Between 0 and one or two times |
| DSOF ¶ 225 | Recued fire, crime, or accident victims | Between 0 and 20-30 times |
| DSOF ¶ 226 | Prevented or detected crimes | Most lieutenants between a couple and 20 times. Freeman less than 50 in 3 years, Acosta 50-100 times in 5 years, Keller 100 times in 5 years, Vance weekly as a patrol lieutenant. |
| DSOF ¶ 227 | Conducting investigations or inspections for violations of law | Many lieutenants testified several or less than 20 times. Vance between 50-75 in 2.5 years, Acosta between 50-100 times in 5 years, Rosenberger upwards of 75 in 3.5 years, Freeman less than 100 in 3 years. Brice was not the primary unit, but assisted with about 75 over 2 |

15

| DSOF ¶ No. | 29 C.F.R. §541.3(b) First Responder Category | Lieutenant Deposition Testimony |
|---|---|---|
| | | years |
| DSOF ¶ 228 | Performing surveillance | Halverson, Brice, and Jackson – 0, Keller, Freeman, Neville, Thomas, Rankin and Acosta up to 10 times each the entire time as patrol lieutenant, Vance, Houck and Rosenberger 10-30 times |
| DSOF ¶ 229 | Pursuing, restraining and apprehending suspects | Brice – does not recall, Rosenberger and Halverson – once, Thomas – 3 times in 3 years, Ranking – 5 times in 2 years, Neville – less than 10, Acosta, Keller Houck and Vance – ranging between 15-30, Freeman – less than 50. |
| DSOF ¶ 230 | Detaining or supervising suspected and convicted criminals, including those on probation or parole | Keller – 0, Freeman – less than 5 times in over 2.5 years, Thomas – 12 times in over 3 years, Rosenberger – 15 times in 3.5 years, Vance – between 25 and 40 times in 2.5 years, Rankin – around 30 times in 2 years, Houck – around 50 times in 3 years, Acosta – 15 to 20 times in over 5 years. |
| DSOF ¶ 231 | Interviewing witnesses | Rankin – possible but does not recall, Brice – does not recall but not often, Keller, Halverson, and Acosta – 5 times, Rosenberger- 10 times in 3.5 years, Neville – 10 to 50 times in 2 years, Freeman and Thomas – around 20 times, Vance – less than 50 times in 2.5 years, Houck – about 50 times in supporting capacity and 10 times in primary capacity in 3 years, Jackson – cannot approximate number of times. |

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

16

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

| DSOF ¶ No. | 29 C.F.R. §541.3(b) First Responder Category | Lieutenant Deposition Testimony |
|---|---|---|
| DSOF ¶ 232 | Interrogating and fingerprinting suspects | Most were zero. Thomas – 4-5 times in 3 years, Vance – less than 20 in 2.5 years, Neville – less than 30 in 2 years, Freeman – less than 50 in 2.5 years. |
| DSOF ¶ 233 | Preparing investigative reports | Rankin – does not recall taking any primary reports, Keller and Acosta – 1 to 2 times in 5 years, Brice – handful of times in six-month period as watch commander, Halverson – 2 to 3 times in 4 years, Rosenberger – 3 times in 3.5 years, Neville, Vance, and Thomas – approximately 10 times, Freeman and Jackson – cannot approximate number of times. |
| DSOF ¶ 234 | Traffic stops | Houck, Acosta, Rankin – 0, Keller – rarely and only for reckless driving or DUI, Freeman – 1 time per week, Thomas – 1 to 2 stops in 3 years, Halverson – 2 to 3 stops in 4 years, Vance – 13 stops in 2 years, Rosenberger – previously around 20 to 25 stops each year in Lake Patrol and 40 stops between January and July 2025, Jackson – cannot estimate number of times. |

By comparison, the lieutenants agree that deputies and sergeants should be performing the above-referenced duties on a much more regular basis. For example, Chief Grennan stated in her sworn declaration that between January 1, 2023 and March 31, 2023 – *a four month period* - all deputies working more than 200 hours in the Patrol Bureau for District 1 were the "primary responding unit on a "call for service" at least 41 times and over 75% of the deputies were the primary responder on more than 100 "calls for service."

FP 61791640.1

Doc. 159, Ex. 1, Grennan Decl. ¶ 31. Many of the lieutenants also testified that deputies and sergeants would have responded to many more calls than lieutenants. Doc. 155, DSOF ¶ 258 (Lieutenant Halverson responded to 69 calls in five years total; deputies likely respond to 100 calls yearly); Doc. 155, DSOF ¶¶ 226-232, 234, 261 (Acosta conceding that his responses to calls were "[c]ertainly not to the level that a deputy would be expected to do[.]"); Doc. 155, DSOF ¶¶ 224-229 and **Exh. 5**, Brice Dep. Trans. p. 125:8-21 (Brice conceding that patrol deputies would be responding more frequently than a lieutenant); Doc. 155, DSOF ¶¶ 224-228 and **Exh. 2,** Freeman Dep. Trans. p. 118 (Freeman admitting that deputies on average perform more traffic stops than lieutenants); Doc. 155, DSOF ¶¶ 227-231, 234 and **Exh. 4**, Houck Dep. Trans. p. 233:18-234:25 Lieutenant Houck (admitting to 4 calls for service per quarter and admitting that deputies would have a significantly higher number because "that deputy's job."); Doc. 155, DSOF ¶ 258 (Lieutenant Jackson responded to calls for service as the primary unit 10 times during 7 months in 2023 but expects a higher number for patrol deputies); Doc. 155, DSOF ¶¶ 259, 262 (Keller testifying to 15 instances of pursuing, apprehending or restraining suspects since October 2020 whereas deputies average "three times a day;" Doc. 155, DSOF ¶¶ Neville 224-233 and **Exh 9,** Neville Dep. Trans. p. 33:13-34-5 and 37:2-38:13 (Neville had 44 primary unit responses in 2022 and 3 in 2023; admitting that a deputy would "easily" have more than 100 calls per year, could have more than 200, and will be the primary responding unit to a call the majority of the time); Doc. 155, DSOF ¶¶ 224-234 and **Exh. 10** Rankin Dep. Trans. p. 82:23-10 and 86:3-9 (Rankin admitting to less than 40 calls for service between January 1 and June 28, 2023 and admitting that a deputy's primary job is responding to calls for service; Doc. 155, DSOF ¶¶ 224-234 and **Exh. 11,** Thomas Dep. Trans. p. 118:22-119:23 (Thomas admitting to infrequent detections of crime, rescues, arrests and admitting that deputies perform these duties on a weekly basis and do so more often than a lieutenant); Doc. 155, DSOF ¶¶ 259-260 (Rosenberger admitting that deputies detain or make an arrest at least once per shift whereas he had only done so about 15 times in the past three years.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

18

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

Simply put, there is no dispute that the lieutenants rarely perform first responder type duties, especially in comparison to their deputy and sergeant counterparts. Defendant has offered significant admissible evidence in support of the undisputed fact that lieutenants rarely perform first responder duties consisting of a detailed report from third party consultant Fields Consulting Group, Inc. and deposition testimony of Houck and each of the lieutenants that the Court allowed Defendant to depose. Doc. 155 (DSOF ¶¶ 9-13, 223-234, 258-263). Plaintiff does not dispute the accuracy of these offered facts. Instead, Plaintiff's entire theory rests on the incorrect legal position that the sole question for the court to determine is whether the "Lieutenants' most important duty is emergency response" based on Houck's lawyerly argument that the lieutenants somehow lacked discretion to respond to calls that came in.[3] Doc. 166, p. 2:13-15.

However, when it comes to the first responder regulation, the law is very clear that the first responder regulation did not change the primary duty analysis.[4] Indeed, the very cases that Plaintiff so heavily relies upon in his response brief expressly recognize that the primary duty analysis must be followed.[5] *See Cunningham v. Mission Support Alliance, LLC, 2019 WL 13201913, at *4* (E.D. Wash. 2019) ("Case law has stablished that the first responder regulation does not supplant the primary duty analysis when determining the

---

[3] Plaintiff offers no evidence in support of this position. To the contrary, Defendant has offered significant sworn deposition testimony from the opt-ins that they did, in fact, have discretion regarding which calls they wanted to respond to. **Exh. 3** (Acosta, 79:13-16); **Exh 2** (Freeman, 31:5-10); **Exh 4** (Houck 158:9-14); **Exh. 7** (Jackson 34:19-35:3); **Exh 8** (Rosenberger 29:4-7, 60:3-61)

[4] Plaintiff argues, without legal support, that the first responder regulation somehow "negates" the executive, administrative, or highly compensated exemptions. Plaintiff offers no case law for this position. In fact, the case law cited by Plaintiff in his response demonstrates that the first responder regulation does not replace the primary duty analysis.

[5] Plaintiff repeatedly and confusingly complains in his response that "the County does not cite a single case in its Motion that granted summary judgment in favor of finding that lieutenants are exempt from overtime under the FLSA that was decided after the first responder exception went into effect." Doc. 166, p. 17-19. However, as set forth above, even the cases relied upon by Plaintiff clearly indicate that the first responder regulation did not replace or supplant the "primary duty analysis" that Defendant argued in its opening brief. To the contrary, the *Cunninham, Carson, Barrows,* and *Morrison* cases that Plaintiff relies upon methodically go through the primary duty analysis precisely as Defendant argued the elements in its opening brief.

exempt status of certain responders"); *Carson v. City of Los Angeles*, 2016 WL 7647681, at *6 ("However, the DOL interpretation of the first responder regulation does not replace or alter the primary duty test"); *Barrows v. City of Chattanooga, Tenn*, 944 F.Supp.2d 596, 603 (E.D. Tenn 2013*)* ("In a recent case, the Unites States Court of Appeals for the Second Circuit held that the DOL did not eliminate the primary duties rest in interpreting the first responder regulation."); *Morrison v. County of Fairfax, VA,* 826 F.3d 758, 767 (4th Cir. 2016) ("reading the first responder regulation to incorporate the well-established primary duty test does not render the regulation meaningless" and also incorrectly relying on the now rejected "narrow construction" analysis)

### 2.    Plaintiffs' Primary Duty is Exempt in Nature.

In the context of law enforcement, the first responder regulation makes clear that employees whose primary duty is first response cannot "qualify as exempt executive employees because their primary duty is not management of the enterprise" and cannot "qualify as exempt administrative employees because their primary duty is not the performance of work directly related to the management or general business operations of the employer." 29 C.F.R. § 541.3(b)(2)-(3). However, the first responder regulation does not replace the primary duty test as the key inquiry, nor does it automatically make first response the primary duty of all law enforcement employees. *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 827 (10th Cir. 2012) ("*Maestas I*"). The preamble to the first responder regulation indicates that

> Federal courts have found that high-level police and fire officials to be exempt executive or administrative employees only if, in addition to satisfying the other pertinent requirements, . . . their primary duty is performing managerial tasks such as . . . evaluating personnel performance; enforcing and imposing penalties for violations of the rules and regulations; making recommendations as to hiring, promotion, discipline or termination; coordinating and implementing training programs; maintaining company payroll and personnel records; handling community complaints, including determining whether to refer such complaints to internal affairs for further investigation; preparing budgets and controlling expenditures; ensuring operational readiness through supervision and inspection of personnel, equipment and quarters; deciding how and where to allocate personnel; managing the distribution of equipment; maintaining inventory of property

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

and supplies; and directing operations at crime, fire or accident scenes, including whether additional personnel or equipment is needed.

*Mullins v. City of New York*, 653 F.3d 104, 115 (2d Cir. 2011) (quoting 69 Fed. Reg. 22122, 22130 (Apr. 23, 2004).[6] Thus, the executive and/or administrative exemptions still are properly applied to an employee of a first responder organization if that employee: (a) has duties that are primarily executive and/or administrative (as defined by those exemptions); (b) does not have a primary duty acting as frontline first responder; and (c) meets all other relevant requirements for the executive and/or administrative exemptions. *See id.* at 115-116.

An employee's "primary duty" is the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). An employee's primary duty "'will usually be what she does that is of principal value to the employer.'" *Morrison*, 826 F.3d at 773 (quoting *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1227 (5th Cir. 1990)). Factors to consider regarding an employee's primary duty include: (1) "the relative importance of the exempt duties as compared with other types of duties," (2) "the amount of time spent performing exempt work," (3) "the employee's relative freedom from direct supervision," and (4) "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. § 700(a).

---

[6] Plaintiffs' contention that "the County misleads the Court with its analysis regarding the preamble to the Department of Labor first responder regulation" is misplaced. (Doc. 166, p. 13). Numerous circuit courts have cited the preamble and deferred to the DOL secretary's interpretation of the first responder regulating in holding that the first responder regulation does not replace the primary duty. *See Mullins*, 653 F.3d at 113-17; *Maestas*, 664 F.3d at 828-29; *Morrison*, 826 F.3d at 765-68. Moreover, although Plaintiffs' articulation of the first responder regulation vis-à-vis the primary duty test is incomprehensible, the principal cases relied on by Plaintiffs directly cite the preamble and *Mullins*, *Maestas*, and/or *Morrison* for the legal statement that the first responder regulation does not replace the primary duty test. *See Barrows*, 944 F. Supp. 2d at 601-04; *Carson*, 2016 WL 7647681, at *4-5; *Cunningham*, 2019 WL 13201913, at *4-7.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

a)      **Relative Importance of the Exempt Duties as Compared with Other Types of Duties.**

As set forth above, it is undisputed that Plaintiffs regularly perform numerous exempt tasks and rarely engage in hands-on first responder duties. Despite this, Plaintiffs argue that "[u]nder the first responder regulation, tasks performed as part of or in furtherance of the employee's first responder duties will not render the employee exempt from overtime pay requirement. (Doc. 166, pp. 17-18). According to Plaintiffs, "[t]he undisputed evidence demonstrates that Patrol Lieutenants must drop everything to take a high level emergency call no matter what else they are working on," and therefore "[w]hatever the precise importance of the Patrol Lieutenants duties that are exempt in nature, it is clear that acting as a first responder is the most important part of being a Patrol Lieutenant." (Doc. 166, p. 19). However, the undisputed facts show that Plaintiffs' most important duties are managerial, supervisory, and administrative and not first response.

First, many of Plaintiffs' undisputed managerial and administrative job duties are untethered from any direct first response activity. For example, Plaintiffs are involved with and make recommendations as to hiring and promotion decisions; serve on hiring and promotion boards; have authority to report misconduct; initiate, serve as the principal, and assume responsibility over internal affairs investigations; issue verbal and formal coachings; perform annual performance evaluations; prepare bi-weekly performance notes for their subordinates to ensure legal compliance with policies, procedures, protocols, and court orders; maintain departmental function and ensure operations readiness by conducting informalized training and formal training, serving as firearms instructors for the MCSO firearms training unit, teaching substantive courses at the police academy, revising district operations manuals, and procuring new equipment and devices for office-wide implementation; and perform other managerial and administrative tasks such as budgeting, approving/denying time off requests, and supervising their subordinates. Doc. 155 (DSOF, ¶¶ 216-22).

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

22

FP 61791640.1

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

These tasks are attenuated from any direct first response activity and cannot be deemed non-managerial simply because they relate, in some abstract way, to the type of hands-on first responder duties contemplated by the first responder regulation. As such, these off-scene tasks that lieutenants perform cannot be considered non-managerial tasks under the first responder regulation because they have no direct connection to first response and are not performed in conjunction with any first response activity.

Second, Plaintiffs' job duties that are related to first response are supervisory and managerial in nature. Plaintiffs are required to respond to high-level calls involving major incidents such as armed robberies, homicides, shooting victim incidents, drownings, school threats, deputy-involved shootings, deputy-involved accidents, kidnappings, barricades, and hostage situations. Doc. 155 (DSOF, ¶¶ 220, 280-81); Doc. 169 (PCSOF; ¶ 293). Plaintiffs' role when responding to major incidents is to perform incident command, which involves taking command of the incident until it is resolved, setting up a command post, calling in and coordinating resources, assigning duties to people on scene, ensuring notifications are given to the chain of command, ensuring sergeants are properly doing their jobs. Doc. 155 (DSOF, ¶¶ 220, 280-81).

These on-scene duties at major incidents are not the kind of first response activities contemplated by the first responder regulation. They are, however, the types of duties specifically contemplated by the first responder regulation as decidedly managerial. 69 Fed. Reg. at 22130 ("directing operations at crime, fire or accident scene, including deciding whether additional personnel or equipment is needed," is a managerial task). Plaintiffs' on-scene duties are also decidedly distinct from the on-scene duties of patrol deputies and sergeants whose primary duty is first response.

Moreover, the fact that Plaintiffs primarily supervise patrol deputies and patrol sergeants whose primary duty is frontline law enforcement does not make Plaintiffs a first responder. *See Miller v. Travis County, Tex.*, No. 1:16-CV-1196-RP, 2018 WL 1004860, at *7 (W.D. Tex. Feb. 21, 2018) ("The first responder regulation does not create a transitive property of management such that the direction or supervision of frontline law

enforcement, no matter how attenuated, is itself considered law enforcement.") (citations omitted). Nor does the fact that Plaintiffs' on-scene duties go towards the purpose of first response transform those duties from non-managerial to first responder. *See Maestas II*, 972 F. Supp. at 1244 (rejecting a similar argument and observing that the "highest level of management also contributes to [law enforcement]—but their primary duty is still management," and "in order to carry out [the] mission of [law enforcement], the work is divided into different duties to be performed by different employees," where "[s]ome of these duties are directed to front-line protection, while other duties are directed to management of the business"). While Plaintiffs' on-scene role is unquestionably crucial to successful law enforcement and emergency response, taking command, overseeing, strategizing, supervising, directing personnel, and coordinating resources does not constitute "first response" as contemplated by the primary duty test or the first responder regulation.

Third, to the extent Plaintiffs engaged in first responder tasks, they were not the lieutenants' primary duty. Unlike patrol deputies, lieutenants are not required to respond to all calls for service. Doc. 155 (DSOF, ¶ 284); Doc. 169 (PCSOF, ¶¶ 284, 293). If a lieutenant is not responding to a major incident, he or she has discretion whether or not to respond to a lower-level call. Doc. 155 (DSOF, ¶ 284). Also, unlike patrol deputies, Plaintiffs do not drive a marked patrol car or work traffic, but if they see a violation, they have the authority to make a stop. Doc. 155 (DSOF, ¶¶ 197, 234). However, the fact that Plaintiffs perform patrol officer duties does not make those duties their primary duties, particularly given the amount of discretion they have whether or not to perform patrol officer duties. *See Fidler v. Twentieth Judicial District Drug Task Force*, 325 F. Supp. 3d 840, 849-50 (M.D. Tenn. Sept. 17, 2018) (finding police sergeant exempt where "[t]he first responder tasks could be completed with or without [him]," but "he—and only he—was required to determine what equipment the agents needed; direct operations and determine whether additional personnel was needed; if additional personnel was needed, coordinate with other jurisdictions; allocate the split of money; and much more").

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

24

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

Fourth, when asked to describe their primary and most important duty as lieutenants, many Plaintiffs described it as managerial, supervisory, and administrative. For example, Plaintiff Acosta, who now works in District 2, characterized his primary responsibilities as overseeing "internal affairs investigations," working with the "field training program," and "building maintenance and anything that has to do with supplies for . . . the district itself." Doc. 155 (DSOF, ¶ 283). When he worked in District 1, Plaintiff Acosta characterized his primary duty as "basically giving guidance and – and ensuring that the deputies were safe and that they were following policies and procedures and – and that they were documenting whatever they needed to document to ensure it was done appropriately." Doc. 155 (DSOF, ¶ 283). Plaintiff Thomas testified his primary responsibility is "incident command" of "significant incidents," where he "set[s] up a command post," "request[s] additional resources," "assign[s] duties to people on scene," "ensure[s] notification are given to the chain of command," and "[e]nsure[s] the sergeants are properly doing their duties." Doc. 155 (DSOF, ¶ 286). Plaintiff Keller testified his "primary duty is to uphold the laws, lead by example, while managing [his] sergeants and deputies." Doc. 155 (DSOF, ¶ 285). And Plaintiff Houck, who remains steadfast that his "primary duty as a patrol lieutenant remains law enforcement" (which is the function and purpose of the MCSO and is not in and of itself a first responder activity), and "being available to respond to calls," nevertheless concedes that the "primary job" of patrol deputies "is to take all the calls that come in from dispatch" and that it is *not* the primary duty of sergeants or lieutenants to respond to calls for service. Doc. 155 (DSOF, ¶ 284).

Fifth, the 2016/2017 Fields Job Analysis Report further demonstrates that lieutenants' primary duty is exempt work. The purpose of the Job Analysis Report was to assist Maricopa County with preparing an updated and accurate job description for each rank, based on job duties actually performed. Doc. 155 (DSOF, ¶ 9). As stated in the report, Fields sent surveys to numerous individuals, performed interviews, and analyzed the responses before preparing their findings contained in the report. Doc. 155 (DSOF, ¶ 10). One of the surveys sent and analyzed was a "Task Survey," which asked questions about the

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

frequency of tasks performed from *over 90% of the lieutenants* (37 out of 41 lieutenants). Doc. 155 (DSOF, ¶ 10). As part of the surveys, Fields specifically asked lieutenants about the "frequency" and "importance" of the various tasks performed, and lieutenants selected their own rankings in response to the surveys. Doc. 155 (DSOF, ¶ 10). The findings showed that lieutenants ranked "Incident Management" as the first most important and commonly performed task, "Supervision" as the third, "Management" as the fifth, and "Administration" as the sixth. Doc. 155 (DSOF, ¶ 11). According to the surveyed lieutenants, "Patrol Duties" and "Criminal Investigations" were less important and less frequently performed. Doc. 155 (DSOF, ¶11).

Overall, lieutenants' managerial, supervisory, and administrative roles, on-scene and off-scene, cannot be understated. Lieutenants have moved through the ranks from frontline deputies to lieutenants, which allows them to direct response operations in a strategic, safe, and organized fashion. When out in the field and not responding to major incidents, lieutenants are supervising their deputies and sergeants and providing leadership. At the office, lieutenants perform key management and administrative roles by ensuring that policies and procedures are implemented and enforced, evaluating their subordinates' performance, and maintaining departmental function and operational readiness.

**b)    Amount of Time Spent Performing Exempt Work**

This factor weighs in favor of identifying Plaintiffs' exempt work as their primary duty. "[E]mployees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." 29 C.F.R. § 541.700(b). Although exempt work can still be the primary duty even if an employee spends less than half of his or her time on such tasks, here, Plaintiffs actually spend 50 percent or more of their time performing exempt tasks.

First, Plaintiffs testified that they spend the majority of their time performing exempt work. For example, Plaintiff Houck testified he spends 4-5 hours each shift performing administrative duties. Doc. 155 (DSOF, ¶ 288). Plaintiff Acosta testified he spends approximately 65% of his time performing administrative work. Doc. 155 (DSOF, ¶ 289).

For the two-and-a-half-year period Plaintiff Halverson worked in District 7, he testified "every task [he] did involve[d] administration, supervisory, oversight, management, mentoring, professional development." Doc. 155 (DSOF, ¶ 290). Some Plaintiffs testified they spend most of their time each shift performing tasks at the office, and for those Plaintiffs who prefer to spend more time out in the field, they perform administrative work on their laptop in their county-issued vehicle. Doc. 155 (DSOF, ¶¶ 220-12, 276-79). Accordingly, whether in the office or out in the field, including on-scene management at major incidents, which is exempt managerial work, Plaintiffs spend the majority of their time performing managerial and administrative work.

Second, data from the CAD system demonstrates that Plaintiffs infrequently engage in first responder activity. Plaintiffs log in/out of the CAD system at the start and end of their shifts. Doc. 169 (PCSOF, ¶ 292). The CAD system tracks the following information, among other things, for each law enforcement officer: (1) number of calls taken, (2) type of activity, (3) traffic stops, and (4) types of calls taken. Doc. 159, Ex. 1, ¶ 29. The CAD system also tracks the identity of the primary unit and secondary unit (if applicable) on scene for an incident, and supervisory and administrative work can be specifically coded into the CAD system. Doc. 159, Ex. 1, ¶ 29.

For example, CAD data for the period January 1, 2023, to March 31, 2023, shows that Plaintiff Houck responded as the primary unit on four calls, whereas all deputies served as the primary responding unit at least 41 times, over 75% of the deputies did so over 100 times, and one deputy did so on 288 calls. Doc. 159, Ex. 1, ¶ 31. CAD data for Plaintiff Halverson shows that from January 19, 2020, to June 27, 2023, he was involved with 41 calls for service and 18 supervisor duties in 2022, and 17 calls for service and 18 supervisor duties in 2023. Doc. 159, Ex. 1, ¶ 38. Of those calls, Plaintiff Halverson testified that he only responded as the primary unit ten times in 2022 and seven times through June 2023. Doc. 155 (DSOF, ¶ 258). Yet Plaintiff Halverson testified he would expect a patrol deputy to respond to calls for service as the primary unit more than 100 times per year. Doc. 155 (DSOF, ¶ 258).

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

27

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

Additionally, Plaintiffs' reliance on *Morrison*, *Cunningham*, and *Barrows* in support of their argument that time spent out in the field is an irrelevant consideration is misplaced. Doc. 166, p. 26. Each of those cases involved fire captains who were required to respond to *every* emergency call, who were *expected* to drop everything they were doing to respond to an emergency call, and spent the majority of their time on *nonexempt* work when not responding to an emergency call. *See Morrison*, 826 F.3d at 769-70; *Cunningham*, 2019 WL 13201913, at *5; *Barrows*, 944 F. Supp. 2d at 604-05. Here, Plaintiffs concede they are only expected to respond to major incidents, (Doc. 169, PCSOF, ¶¶ 292-93), and the facts demonstrate that they spend the majority of their time on exempt work, which *includes* on-scene management at major incidents.

### c)    Relevant Freedom from Direct Supervision

There is no dispute that Plaintiffs enjoyed relative freedom from direct supervision. Many Plaintiffs have served as acting commanders for their district where they assume the role of district captain and are the highest-ranking individual in their district. Doc. 155 (DSOF, ¶¶ 216, 219, 263). Many Plaintiffs have also served as watch commanders where they are the highest-ranking individual during that shift for an entire patrol bureau, and at times, for the entire county. Doc. 155 (DSOF, ¶¶ 20, 30, 74, 103, 128, 137, 139, 182-83). Plaintiffs also make independent decisions on a daily basis without direct supervision, including approving or denying requests to flex time; approving or denying requests for days off and/or overtime; putting procedures in place regarding call outs; evaluating sergeants; supervising, monitoring, and directing the work of their subordinates, both in the office and out in the field; and preparing performance notes on a bi-weekly basis to ensure legal compliance with policies, procedures, protocols, and court orders, which is based on their independent review of their sergeants' internal affairs investigations and reports, BlueTeam supervisor notes, productivity, patrol activity logs, traffic stops, arrests, accidents, and body camera video. Doc. 155 (DSOF, ¶¶ 216-22).

Besides their authority to make administrative and managerial decisions without oversight, Plaintiffs make strategic decisions on scene without direct supervision because

28

they are the highest-ranking field officer on scene. Doc. 155 (DSOF, ¶ 220); Doc. 169 (PCSOF, ¶¶ 292-93). Moreover, because Plaintiffs are only required to respond to major incidents, they act free from supervision in determining whether to respond to low-level calls for service. *See Benavides v. City of Austin*, No. A-11-CV-438-LY, 2013 WL 3197636, at *7-8 (W.D. Tex. June 20, 2013) (holding that EMS Field Commanders, the highest-ranking field officers, had management as a primary duty when they were dispatched to only certain calls, could take themselves out of service, and could add themselves to a dispatch).

Regarding Plaintiffs' contention that they lack freedom from direct supervision because their captains have "final decision-making power" and can "overrule them," (Doc. 166, p. 29), "[i]t is, more generally, no argument against the managerial nature of an employee's activities to imply that said employee could always enjoy *more* liberty or exercise *more* control." *Emmons v. City of Chesapeake*, 982 F.3d 245, 253 (4th Cir. 2020) (emphasis in original) ("The appreciable independent judgment [fire captains] must exercise in coordinating and monitoring their firefighters' work does not dwindle to nothing simply because greater authority over certain matters lies higher up in the chain of command."). Equally unpersuasive is Plaintiffs' contention that they lack freedom from direct supervision because they "supervise by policy, *i.e.*, enforce the County's policies – and have no discretion to deviate from the County's policies that they have no role in setting." Doc. 166, p. 29.

### d)    Lieutenants Make More than Sergeants

Finally, there are significant differences in the relationship between salary and wages paid to lieutenants versus sergeants. Upon their promotion, lieutenants receive pay rases of approximately 10%. Doc. 159, Ex. 1, ¶ 18.

### 3.    Plaintiff's Reliance and Overstatement of Unpublished Decisions is Misplaced.

Plaintiff accuses the County of having a "fundamental misunderstanding of the law regarding first responders." Doc. 166, pp. 8-9. However, it is Plaintiff that appears to have a fundamental misunderstanding of the law. Plaintiff bases the majority of his legal analysis on

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

29

the following four unpublished and out of circuit cases: *Cunningham*, *Carson*, *Barrows*, and *Morrison*. Two of the cases predate *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018), in which the Supreme Court overruled Ninth Circuit (and other circuit) authority holding that FLSA exemptions were to be narrowly construed. Plaintiff also misstates and/or overstates the holdings of all of these cases.

**a)  Plaintiff Relies Upon Unpublished Legal Analysis That Was Rejected By The Supreme Court In *Encino Motorcars, LLC v. Navarro* (2018).**

*Encino Motorcars, LLC v. Navarro*, 584 U.S. 79 (2018) involved employees who were service advisors for an automobile dealership. *Id.* at 79. They claimed to be entitled to overtime due to misclassification as exempt under the FLSA. The district court dismissed the case, ruling that the employees were properly classified as exempt. The Ninth Circuit reversed, holding that the exemptions to the FLSA should be "construed narrowly." *Id* at 85. On appeal, the U.S. Supreme Court expressly rejected the Ninth Circuit (and other circuit) "narrow construction" interpretation. *Id.* at 88-89. The Supreme Court ultimately held that FLSA exemptions must be given a "fair-reading." not narrowly construed against the employer. *Id* at 88-89.

Despite the Supreme Court's holding in *Encino*, Plaintiff has argued the applicability of the *Carson* and *Barrows* cases, two cases that premised their holdings on the "narrow construction" analysis rejected by the *Encino* Court. In fact, Houck specifically relies on and quotes *Carson* for the rejected narrow construction proposition, namely that the "FLSA exemptions should be applied 'only in instances plainly and unmistakably within the exemptions' terms and spirit.'" (Doc. 166, p. 7:20-22)[7] (quoting *Carson v. City Los Angeles*,

---

[7] The internal citations are a reference to the *Carson* decision. The full quote as it appears in *Carson* is as follows: "FLSA exemptions 'are to be narrowly construed against the employers seeking to assert them,' and applied only in instances 'plainly and unmistakably within the exemptions' terms and spirit.'" *Carson*, 2016 WL 7647681, at *4. This holding that Plaintiff expressly relies upon in support of his legal argument was rejected by the U.S. Supreme Court in *Encino*. *Encino*, 138 S. Ct., at 88-89 ("[w]e reject this principle as a useful guidepost for interpreting the FLSA.")

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

30

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

2016 WL 7657681, at *4 (C.D. Cal. Sept. 22, 2016).[8] Following *Encino*, courts are not permitted to rely upon this narrow construction analysis.

   **b)**   **Plaintiff Misstates The Facts and Holdings of the *Cunningham*, *Carson*, and *Barrows* Cases**

  Turning to the facts of *Carson*, *Cunningham* and Bar*rows* which Houck extensively relies upon in his brief, the facts are easily distinguishable from this case and do not support Houck's position.[9] *Carson v. City of Los Angeles*, 2016 WL 7647681 * 1 (C.D. Cal. Sep. 22, 2016) involved emergency medical services captains ("EMS captains"), who were licensed paramedics, working at different fire stations for the Los Angeles Fire Department. Half of the EMS captains worked in 24-hour-shifts and the other half of the EMS captains worked 10-hour-shifts. *Id.* at *2. The EMS captain duties were "assigned emergency response duties and equipment and narcotics resupply duty for two battalions, or approximately 14 to 16 fire stations." *Id.* The EMS captains were required to respond to all emergency calls in which they were assigned based on a dispatch algorithm, meaning that they had no discretion as to which calls to take or assign. At the scene of an emergency, the EMS captains first reported "to the Incident Commander [to] perform any tasks that may be assigned by the Incident Commander" and would then direct other paramedics and EMTs on the scene. *Id.* at *2, *8. When not at an emergency scene, the EMS captains would "spend the majority of their time (other than sleep time) restocking ambulances in the field with narcotics and other equipment." *Id* at * 2.

  With respect to managerial duties, the EMS captains were "not responsible for supervising or managing Department personnel or making management decisions." *Id.* They did not grant leave or vacation time to employees, had no responsibilities for hiring, firing, promoting or demoting employees. *Id.* In short, the EMS captains were noted to be

---

[8] Similarly, Houck's argument under Section IV(A) of its Opposition (Doc. 166), that the FLSA 'must be applied in a way that favors employees', is also misplaced. In *Encino*, the Court held that "[t]he narrow-construction principle relies on the flawed premise that the FLSA 'pursues' its remedial purpose 'at all costs.'" 584 U.S. at 89. Rather, the exemptions under the FLSA "are as much a part of the FLSA's purpose as the overtime-pay requirement" *Id.*

[9] *Carson*, *Cunningham*, and *Barrows* dealt only with the highly compensated exemption under the FLSA and did not concern the administrative or executive exemptions.

"among the lowest ranking members of the department" who "spen[t] much of the day waiting to be told where to respond and which ambulances need restocking." *Id.* at *8.

The facts in this Houck case are completely different from the *Carson* case. In Houck, it is undisputed that the lieutenants were *not* required to respond to all calls. Instead, the lieutenants have merely alleged that they were expected to respond to all "serious calls." Even then, they were not required and did not respond to all "serious calls." They had discretion regarding which calls to respond to. **Exh. 3** (Acosta, 79:13-16); **Exh 2** (Freeman, 31:5-10); **Exh 4** (Houck 158:9-14); **Exh. 7** (Jackson 34:19-35:3); **Exh 8** (Rosenberger 29:4-7, 60:3-61). Plaintiff has offered no evidence that the lieutenants engaged in menial tasks such as "stocking" supplies. On the other hand, Defendant has offered voluminous undisputed evidence that the lieutenants supervised and managed division personnel, managed vacation and time off requests, were involved in providing recommendations regarding hiring, promotion and disciplinary action. Doc. 155 (DSOF ¶¶216-222).

*Cunningham v. Mission Support Alliance, LLC*, 2019 WL 13201913, at *1 (E.D. Wash. Jul. 22, 2019) involved Fire Platoon Captains for the Hanford Fire Department near Richland, Washington. *Id.* at *1. The captains were subordinate to the battalion chief and the department chief. The captains worked 24-hour shifts and slept at the fire station. The captains were assigned to an emergency vehicle and were *required* to respond to any emergency for which their vehicle was assigned; they could not refuse a call. *Id* at *2. At the scene, the captains wore the same equipment as the other firefighters, handled hoses, and engaged in the same rescue operations. *Id.* While the captains were noted to spend less than 3% of their time actually responding to calls, when they were back at the fire station their duties consisted of "ensur[ing] that the vehicles are stocked with supplies and that the vehicles' systems, such as the fire hose, are operational," completing the same training as the other firefighters, and "preparing for the next emergency." *Id.* Significantly, the court held that after reviewing all the admissible evidence in the record, "the Captains spend less than 50 percent of their time performing management-type work." *Id.* Thus, the Court determined that the second prong of the exemption test (the "amount of time spent

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

performing exempt work") weighed in the Captains' favor. *Id.* Also of particular note, the Captains did not have any authority or responsibility to discipline other employees or write performance evaluations, nor could they spend the department's money. *Id.* While the captains could offer overtime to other employees, they did so only as a representative under a collective bargaining agreement and not as a duty as a captain. *Id* at \*6. At no point in time were the captains the highest ranking person at the fire station, as a Battalion Chief was always on duty and the captain must always "follow the Battalion Chief's orders." *Id.*

The facts in this Houck case are also completely different from the *Cunningham* case. In Houck, it is undisputed that the lieutenants were *not* required to respond to all calls; they had discretion regarding which calls to respond to. Again, there is no evidence that the lieutenants "stocked" supplies. However, Defendant has offered undisputed evidence that the lieutenants spent well over 50% of their time performing managerial work in their personal offices (versus working out in the field).[10] Doc. 155 (DSOF ¶¶ 201-212). Defendant has also offered evidence that the lieutenants supervised and managed division personnel, managed vacation and time off requests, were involved in providing

---

[10] See Plaintiff's responses to DSOF ¶¶ 201-211 detailing the amounts of time the lieutenants spend in their personal office at headquarters versus out in the field: DSOF ¶201 (Acosta admitting that in his current role in District 2 he spends 90% of his time in his office versus out in the field); DSOF ¶202 (undisputed that it was common for Brice to head to his office multiple times during his shift and there were times that he spent the entire day at his office); DSOF 203 (undisputed that Freeman spent 75% of his time in his office in Distrct 7, as a Watch Commander in District 7 spend 50% of his time in the office, spend 75% of his time in the office in District 3 for day shifts, and spent 50% of his time in the office as a nighttime Watch Commander in District 3); DSOF ¶204 (undisputed that Jackson spent about 50% of his time in the office while in Lake Patrol); DSOF ¶205 (undisputed that Keller spent about 50% of his time in his office in District 2 and currently spends about 50% of his time in his office in District 3); DSOF ¶206 (undisputed that Keller spend about 50% of his time in his office at District 2 and continues to spend about 50% of this workday in the office in District 3); DSOF ¶207 (undisputed that Neville spent 2-3 hours per day in his office at District 2); DSOF ¶ 208 (undisputed that Rankin testified that the majority of his shift was spending in his office or his captain's office); DSOF ¶210 (undisputed that Thomas spends 3 out of 4 of his workweek days entirely in his office at District 1); DSOF ¶211 (undisputed that Trowbridge had a 1.5 hour commute to/from the office that he was clocked in for and spent 30-40% of his remaining time in his office); DSOF ¶212 (undisputed that while in Lake Patrol Vance spent 75% of his time in the office as a West Side Lieutenant, then spent 90-95% of his day in his office as a Lake Patrol Administrative Lieutenant).

recommendations regarding hiring, promotion and disciplinary action. Doc. 155 (DSOF ¶¶ 216-222).

*Barrows v. City of Chattanooga*, 944 F. Supp. 2d 596, 598 (E.D. Tenn. 2013) involved a claim by a single fire captain working for the City of Chattanooga Fire Department. The fire captain, who was retired at the time he filed the claim, asserted that he had worked 24-hour-shifts during his employment. *Id* at 599. Fire captains were each assigned to a fire truck along with four "lower-level firefighters …and interacted as a team and did most everything together during the course of a shift." *Id.* When the captain's fire truck was sent out, while the captain would supervise his team and generally oversee the scene, the captain would also participate in "'interior attacks' and rescues … 'typically' … alongside his team members." *Id* at 600. If two captains appeared at an emergency call, or if a battalion chief showed up, one or both captains would relinquish control at the scene and work solely on fire control or the requisite emergency response. *Id.* While the fire captain and his team would typically spend more time at the fire station than out on a call, they typically received calls, sometimes as many as 12 calls per 24-hour-shift. *Id.* And, plaintiff testified that he "spent an equivalent amount of time engaged in firefighting duties on any given shift as his subordinate."

With respect to managerial duties, the captain claimed to only spend 20 to 30% of his time on managerial duties, and the majority of the duties were still related to "first responder duties, such as fire suppression and team readiness." *Id* at 600, 604. The captains would ensure firefighters are on duty, fill out paperwork, prepare incident reports after a call, check supplies, conduct formal and informal training, and schedule shifts for their subordinates. *Id.* However, the captains could not set the number of hours worked by the subordinates, nor were they responsible for hiring, firing, promoting or disciplinary actions. They had no control over the budget and simply filled out a "wish list" for supplies. *Id* at 600-601. In short, the court noted that the managerial duties – aside from training and preparedness which related to front line duties - were "mainly ministerial in nature[.]" *Id* at 604.

The facts in the Houck case are very different from *Barrows*. In Houck, it is undisputed that the lieutenants were **_not_** required to respond to all calls. Plaintiff did not work 24-hour-

FP 61791640.1

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

shifts and has offered no evidence that he did "everything" side by side with his subordinates. There is also no evidence that Houck performed the same amount of alleged first responder duties as his subordinates. To the contrary, Defendant has offered undisputed evidence that the amount of first responder duties performed by lieutenants pales in comparison to the deputies or sergeants. *See* pp. 18-19. There is no evidence that the lieutenants did ministerial tasks such as "stocking" supplies. Unlike in the Barrows case, Houck and the lieutenants did not spend 20-30% or less of their time on managerial tasks. Rather, Defendant has offered undisputed evidence that the lieutenants spent well over 50% of their time performing managerial work in their personal offices (versus working out in the field). Doc. 155 (DSOF ¶¶ 201-212). Defendant has offered evidence that the lieutenants supervised and managed division personnel and were involved in providing recommendations regarding hiring, promotion and disciplinary action. Doc. 155 (DSOF ¶¶ 216-222).

Simply put, the facts in the above-referenced cases are easily distinguishable from the present case. Indeed, based on the analysis in the *Carson*, *Cunningham* and *Barrows* decisions, findings would have been rendered for the defendants if the courts had been presented with facts analogous to the present case.

### C. Defendant Is Entitled to Summary Judgment Regarding Liquidated Damages and the Two-Year Lookback Period.

As set forth in Defendant's opening motion, Defendant is entitled to summary judgment in its favor regarding liquidated damages and the application of a two-year (instead of three-year) lookback period. However, because Plaintiff has also moved for summary judgment on these issues, they are briefed in a consolidated fashion below.

### D. The Lieutenants' Potential Recovery of Damages Should Be Limited To Time Periods They Worked In Patrol Bureaus East or West as a Lieutenant

Defendant argued in its opening motion that many opt ins offered damage computations (in Plaintiff's disclosure statements) for periods of time that they were not in Patrol Bureaus East of West. Defendant provided detailed statements of fact summarizing the largest potentially relevant time periods for each of the lieutenants, based on when they

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

contended they were in these bureaus. These dates as summarized in DSOF ¶¶ 23, 32, 42, 52, 57, 67, 77, 86, 97, 110, 119, 131, 136, 143, 151, 159, 167, 176, 185, 193, 250, 256. Plaintiff responded to these statements of fact stating that they were "undisputed." Doc. 169 (PCSOF, Response to Nos. 23, 32, 42, 52, 57, 67, 77, 86, 97, 110, 119, 131, 136, 143, 151, 159, 167, 176, 185, 193, 250, 256). At a minimum, Defendant is entitled to an order limiting the damages recovery windows for the lieutenants to no greater than these undisputed windows.

### E. Lieutenant Michael Trowbridge Worked Exclusively in SWAT For the Relevant Time Period, Which Is Not In Patrol Bureaus East or West; He Must Be Dismissed.

Defendant moved for summary judgement dismissing Trowbridge from the case on the basis that he has offered no admissible facts that he has ever worked in Patrol Bureaus East or West as a lieutenant. Doc. 154, p. 27:15-28:5. There is no dispute that Trowbridge was promoted to Captain on March 3, 2025. Prior to that date, he had only worked as a lieutenant during the relevant time period in SWAT. Doc. 155 (DSOF ¶¶ 121-125). There is no dispute as to these facts. The only dispute that Plaintiff has alleged is whether SWAT ever fell within Patrol Bureaus East or West. Doc. 169 (PCSOF, Response to No. 125). However, Trowbridge was extensively questioned about this at deposition. During his deposition. Trowbridge testified that he did not have any other facts or records to support his position that SWAT was in Patrol Bureau West, other than the four records discussed at his deposition and referenced in DSOF ¶ 264-267. With regards to these records, and as extensively briefed in Defendants' opening motion, they do not actually support Trowbridge's speculative and unsupported belief that he was in Patrol Bureau West. Trowbridge has not offered any more than his speculative belief at summary judgment. It is well-established that unsupported and speculative beliefs are insufficient to overcome summary judgment. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) ("A party 'cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements.'"). Moreover, other lieutenants have

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FP 61791640.1

testified that SWAT has never been in Patrol Bureaus East or West, which is undisputed. Doc. 155 (DSOF ¶¶ 269-271); Doc. 169 (PCSOF, Response Nos. 269-271).

### F.    Houck Has Offered No Evidence To Dispute Defendant's Entitlement to Summary Judgment Regarding the Non-Deposed Opt-Ins.

In Defendant's opening motion, Defendant argued that Plaintiff should not be permitted to offer declarations in support of the opt-in plaintiffs that Defendant was not allowed to depose during discovery. In response, Plaintiff has argued that the issue is moot because Plaintiff did offer declaration of the additional opt-ins. However, Defendant affirmatively moved for summary judgment as to **all** of the plaintiffs in this case. Plaintiff has offered no evidence in support of the claims for Cruz, Goad, McCann, Sanchez, Rank, Kremer, Jakowinicz, or Whelan-Gonzalez. It is well-established that at the summary judgment stage, a plaintiff must offer more than mere allegations in the complaint. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) These additional opt-ins have offered no evidence in support of their claims to overcome summary judgment and their claims should be dismissed.

### G.    Plaintiffs Hunter and Bocardo Who Filed Self-Titled "Notice of Withdrawal of Consent" Forms Must be Dismissed.

Defendant also properly moved for dismissal of opt-in Plaintiffs Matthew Hunter and Kelly Bocardo. These plaintiffs filed claims against Defendant. Docs 8 and 18. However, after Defendant served written discovery on these Plaintiffs, they filed self-titled "Notice of Withdrawal of Consent" forms. Docs. 63&65. Plaintiff does not dispute these facts. In fact, Plaintiff offers that Defendant brought up the fact that the notices were improper because there was never a stipulated dismissal notice. Doc. 166:13-26. Hunter and Bocardo are still active party plaintiffs in this case and since they have refused to participate in discovery and indicated their desire to be removed from the case, Defendant is entitled to an order dismissing them.[11]

---

[11] The cases relied upon by Plaintiff do not indicate that these self-titled "Notice of Withdrawal of Consent" are a proper mechanism in FLSA collective actions.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

**III.    Houck's Cross Motion for Summary Judgment Must Be Denied.**

   **A.    Houck's Motion Grossly Exceeds The Scope Of His Two Page Notice**

As part of the Court's scheduling order, the parties were directed to prepare two page letters regarding summary judgment. The Court held a hearing on summary judgment briefing and outlined the scope and deadlines for the briefing. The Court recognized that Plaintiff had only intended to move for summary judgment on the limited issue of the good faith affirmative defense to liquidated damages and Plaintiff's counsel agreed:

> COURT: …
>
> My reading of plaintiff's motion – or, pardon me, plaintiff's letter suggested that plaintiff's counsel intent to file a cross-motion on a fairly narrow issue and that is the good faith affirmative defense to liquidated damages. Is that right, from plaintiff's side?
>
> MR. FRANKEL: Yes. That is correct, Your Honor.

**Exh. 1** (Court Transcript, p. 5:8-13). However, despite only notifying the Court and Defense counsel of his intention to move for summary judgement on Defendant's good faith affirmative defense to liquidated damages, Plaintiff also appears to have affirmatively moved on additional grounds. Specifically, Plaintiff has purported to move for summary judgement on the issue of whether a two versus three-year statute of limitations applies under the FLSA based on a willfulness argument. To the extent intelligible, Plaintiff also appears to have half-heartedly moved for summary judgment on the first responder regulation.[12]

   **B.    Plaintiff Is Not Entitled to Summary Judgment on the Applicability of The First Responder Exemption.**

As set forth above, Defendant (not Plaintiff) is entitled to a summary judgment ruling that the first responder regulation does not apply to the lieutenants and that they are properly classified as exempt from overtime under the FLSA.

However, to the extent the Court is inclined to separately consider Plaintiff's cross-

---

[12] To the extent Plaintiff half-heartedly moved for summary judgment on the first responder issue in an improper attempt to file the equivalent of an improper sur-reply, such a tactic is improper.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FP 61791640.1

1  motion for summary judgment regarding the first responder regulation, the Court need look

2  no further than Plaintiff's own representation that he contends "there is a dispute of fact

3  regarding whether the Patrol Lieutenants' primary duty is exempt in nature versus first

4  responder in nature." Doc. 166, p. 16:20-21. Having made this representation in a court

5  pleading, Plaintiff cannot turn around and separately move for summary judgment on the

6  very same issue he contends a "dispute of fact" exists regarding.[13]

7  **C.**  **The Court Should Deny Plaintiff's Request For Liquidated Damages Because The County's Actions Were Taken In Good Faith.**

8

9  Plaintiff contends that he and the opt-ins are entitled to liquidated damages, and that

10  the County cannot rely on the good faith defense in opposition to this claim, principally

11  because the County did not consult with legal counsel when determining that the Patrol

12  Lieutenants are properly classified as exempt from overtime, and it relied on guidance and

13  determination of a seasoned human resources professional and a former Department of

14  Labor investigator. Plaintiff's request for liquidated damages should be denied because the

15  law is well-settled that legal counsel need not be consulted in order for the good faith

16  defense to apply. Furthermore, the County took several active steps to ascertain and comply

17  with the FLSA, including reliance on Department of Labor interpretations and advice from

18  a former Department of Labor investigator, as well as review and interpretation of the

19  FLSA and DOL guidelines by seasoned human resources professionals.

20  Under 29 U.S.C. § 260, an employer may assert a "good faith" defense to a claim for

21  liquidated damages under the FLSA:

22      In any action commenced prior to or on or after May 14, 1947 to recover
        unpaid minimum wages, unpaid overtime compensation, or liquidated
23      damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C.
        201 et seq.], if the employer shows to the satisfaction of the court that the act
24      or omission giving rise to such action was in good faith and that he had
        reasonable grounds for believing that his act or omission was not a violation
25      of the Fair Labor Standards Act of 1938, as amended, the court may, in its
        sound discretion, award no liquidated damages or award any amount thereof
26      not to exceed the amount specified in section 216 of this title.

27

28  [13] On the other hand, Defendant is not bound by Plaintiff's assertion and Defendant is entitled to summary judgment on this issue.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

39

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

*Bratt v. Cnty. of Los Angeles*, 912 F.2d 1066, 1071 (9th Cir. 1990). The employer must show that they were acting in good faith and that they had reasonable grounds for believing that no violation of the FLSA took place. *Id.* at 1071. In order "[t]o satisfy the subjective 'good faith' component, the [County was] obligated to prove that [it] had 'an honest intention to ascertain what [the FLSA] requires and to act in accordance with it." *Id.* at 1072. The Court has discretion to refuse to award liquidated damages once the employer has demonstrated good faith and reasonable grounds. *Id.*

In his Cross Motion, Plaintiff argues that the Patrol Lieutenants are entitled to liquidated damages because he contends that the County's good faith defense is inapplicable, based on his mischaracterization that "the County relied on human resources employees who failed to properly consider and understand the law." Doc. 166, p. 39:18-21. Specifically, Plaintiff asserts that it was improper for a senior Human Resources employee, Darrien Ellison, to make the decision to classify the Patrol Lieutenants as exempt, that Mr. Ellison did not understand the relevant law, and that it was improper for the County to rely on "lay" employees' interpretation of the FLSA on this point. Plaintiff further contends the County was required to consult with legal counsel on this decision and that instead of relying on a DOL opinion letter with facts nearly identical to those relevant to the Patrol Lieutenants, the County was required to submit its own letter to the DOL. Finally, the Plaintiff incorrectly argues that the Patrol Lieutenants' job duties changed at some point, to necessitate another review of their classification, based solely on one email from Plaintiff Houck to Ms. Farrow, wherein Houck contends he feels that he is performing the same duties as those he performed as a sergeant. Plaintiff's argument fails because the law does not require an employer to consult with legal counsel in order to assert the good faith defense. Furthermore, the law is well settled that DOL opinion letters may be used as guidance in these circumstances.

In *Bratt*, employees of Los Angeles County sued the County for overtime wages under the FLSA, seeking liquidated damages. 912 F.2d at 1067-68. The County argued that the employees were exempt from overtime under the FLSA's administrative exemption. *Id.*

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

at 1068. The Ninth Circuit affirmed the district court's ruling that liquidated damages were not recoverable because the County had successfully asserted the good faith defense. The Court reasoned as follows:

> The district court found "that an objective as possible a study was made of the job classifications for the purpose of determining presumptively exempt and non-exempt status." Moreover, there is no evidence that the County attempted to evade its responsibilities under the Act. "[A] decision made above board and justified in public is more likely to satisfy this test. An employer's willingness to state and defend a ground suggests a colorable foundation, and openness facilitates challenges by the employees. Double damages are designed in part to compensate for concealed violations, which may escape scrutiny." *Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 312 (7th Cir.1986). The district court concluded that "[t]his is not a case, like many of those cited [by the Employees], where the employer is using 'ticky-tack' reasons to attempt to evade the wage and hour laws."

> The Employees nevertheless claim that the County's lack of good faith intent to comply with the FLSA is evidenced by 1) its assignment of the coverage decisions to someone with insufficient expertise in this area; 2) its reliance solely on written job specifications as opposed to individual job descriptions; 3) its refusal to review pertinent data obtainable from internal documents as well as the Employees' representative; and 4) its establishment of group exemptions. While the Employees present arguments that the County did not do as good a job as it could have done, they fail to show that the County had anything other than an honest intention to comply with the Act. The person assigned to make the coverage decisions arguably was adequately qualified, and his decisions whether to make more extensive studies of individual jobs and corresponding data involved practical considerations on how best to complete the required evaluations in a timely fashion. The district court's finding that the County's actions were taken in good faith, therefore, was not clearly erroneous.

*Bratt*, 912 F.2d 1066, 1072 (9th Cir. 1990).

Similarly, here, the County has displayed that it had an honest intention to comply with the Act. Maricopa County's Deputy Director of Human Resources Darrien Ellison, who has been working for the County about 21 years, testified that he was tasked with assessing whether the Lieutenants qualify for an exemption under the FLSA in 2007. **Exhibit 6** (Deposition Transcript of Darrien Ellison at 11:12-22, 17:9-12). He further testified that his colleague, a former Department of Labor investigator, "assisted in providing consultation and advice on that", and that he was certain he would have consulted his supervisor on the matter as well. *Id.* at 12:2-10. Mr. Ellison explained that they conduct research and reviewed and assessed a DOL opinion letter with nearly identical

41

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

circumstances to those in this case (involving lieutenants), other DOL resources such as frequently asked questions, and applicable rules, and regulations. *Id.* at 13:14-14:1. The County reevaluated the Lieutenants' classification in 2016/2017, when, as set forth in Defendant's Motion for Summary Judgment it tasks the outside consultant Fields Consulting Group to assess the job duties actually performed by deputies, sergeants, lieutenants, and captains within the Patrol Bureau of MCSO and evaluate whether the positions were properly classified under the FLSA. *Id.* at 14:14-15:9. Doc. 155 (DSOF, ¶¶ 9-14). Following completion of the Fields Job Analysis, in 2019, the County revised the Law Enforcement Lieutenant job description. Mr. Ellison testified that he believed that the first responder regulation was taken into consideration when making this assessment, and that they had looked at the Lieutenants' essential functions as part of their review. **Exhibit __** (Ellison Depo. at 16:8-18:25). Accordingly, the County tasked adequately qualified individuals to make determine whether the Lieutenants were properly classified, and these individuals reviewed and considered pertinent data and resources, including an extensive study by Fields. As such, the County in made good faith attempts to comply with the FLSA.

Contrary to Plaintiff's contention, the County is not barred from asserting the good faith defense just because it did not consult with legal counsel on this issue. "Simply failing to seek legal advice concerning … pay practice does not evidence a willful violation of the statute." *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990); *see also Helton v. Factor 5, Inc.*, 26 F. Supp. 3d 913, 924 (N.D. Cal. 2014) (emphasis added) ("courts have held that the advice of counsel can ***in some circumstances*** support a good faith defense to liquidated damages."). For example, in *Bratt*, there is no indication that Los Angeles County relied on advice of counsel, yet the Ninth Circuit affirmed the district court's holding that the County had successfully asserted the defense. Its reliance on Mr. Ellison—a seasoned HR professional—and a Department of Labor investigator, is entirely appropriate. Indeed, in *Bratt*, the Ninth Circuit determined that Los Angeles County had successfully asserted the good faith defense even though it had not consulted with legal counsel for compliance with the FLSA.

42

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

Plaintiff further argues that the County should have revisited the Lieutenants' classification based on "evidence that the Patrol Lieutenants' job has changed in a way that necessitated legal analysis of the classification." Doc. 166, p. 41:25-27. The only support Plaintiff provides for this argument is an email chain between Plaintiff Houck to Ms. Farrow in June/July 2022, wherein Plaintiff asserts he had just been promoted to Lieutenant in April 2022, and that he felt he was not performing different tasks/duties from those that he had been performing as a sergeant—or in other words, Plaintiff's own subjective belief that the Lieutenants' duties had changed. Doc. 169 (PCSOF, Ex. 26). However, Plaintiff has presented no actual evidence that the job duties changed. Tellingly, he has not identified a single duty that has changed, or how it changed. On the other hand, Defendant offered evidence that Farrow has personally interacted with the lieutenants, captains and the remaining chain of command since their classification as exempt employees. Doc. 159, Exh. 1, ¶ 13. She testified in a sworn declaration that the lieutenant position in the control bureau has not significantly changed since 2007. Doc. 159, Exh. 1, ¶ 13

Moreover, contrary to his own position on this issue, Plaintiff has admitted that the Lieutenants' duties have changed over years to include more administrative tasks. As set forth in DSOF ¶ 16, following the *Melendres v. Maricopa County* court orders which the County is subject to, MCSO instituted reforms regarding increased supervision and monitoring by management personnel, which have evolved over the years, including following Defendant's revision of the Law Enforcement Lieutenant job description in 2019. Plaintiff does not dispute that as a result of the reforms, Lieutenants have been tasked with additional administrative and management duties. Doc. 169, ¶ 16 ("Plaintiff does not dispute that the *Melendres* orders may have resulted in some increase in administrative duties[.]"). Accordingly, there is no evidence that the County was aware any alleged change in job duties which would have required it to revisit the Lieutenants' job classification.

Accordingly, for the reasons stated above, the Court should grant Defendant's Motion for Summary Judgment as to liquidated damages and dismiss Plaintiff's liquidated damages claim. Moreover, and for the same reasons, the Court should deny Plaintiff's Cross

Motion for Summary Judgment on the same issue.

**D.** **Plaintiff's Claim For A Three-Year Statute of Limitations Should Be Denied Because There Is Sufficient Evidence That The County Did Not Willfully Violate The FLSA.**

The Court should deny Plaintiff's request that it apply a three-year statute of limitations because there is extensive evidence that the County's conduct was not "willful."

Under 29 U.S.C. 255(a), "ordinary violations of the FLSA are subject to the general 2–year statute of limitations", which may be extended to three years for an action arising out of a willful violation. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988). "In order to obtain the benefit of the 3–year exception, Plaintiff must prove that the County's conduct was willful." *Id.* "A violation is willful if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA…. although merely negligent conduct will not suffice[.]" *Flores v. City of San Gabriel*, 824 F.3d 890, 906 (9th Cir. 2016) (quotations and modifications omitted). A court **may** apply the three-year statute of limitations "where [th]e employer disregarded the very possibility that it was violating the statute." *Id.*

Plaintiff argues that a three-year statute of limitations period is warranted because the County willfully violated the FLSA, "recklessly disregard[ing] the law" because it did not conduct another investigation into the Lieutenants' classification after Houck emailed Ms. Farrow regarding his classification as set forth above. Plaintiff's argument fails because, as set forth above and in Defendant's Motion for Summary Judgment, the County in no way disregarded the possibility it was violating the FLSA.

In *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003), aff'd, 546 U.S. 21, 126 S. Ct. 514, 163 L. Ed. 2d 288 (2005), the Ninth Circuit Court of Appeals affirmed the district court's decision that the employer had committed a willful violation of the FLSA, where it "was on notice of its FLSA requirements, yet took no affirmative action to assure compliance with them." The Ninth Circuit determined that the employer attempted to "evade compliance" with the FLSA by failing to inquire into the meaning of relevant FLSA

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FP 61791640.1

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

terms and steps necessary to comply with the FLSA. *Id.* By contrast, here, the County reassessed the Lieutenants' classification numerous times throughout the years, including by a seasoned human resources professional and a former DOL investigator, and even elicited an outside company to assist with the assessment, resulting in the Fields report. It cannot be said that the County disregarded a possibility that it was violating the statute, when it took numerous affirmative steps throughout the years to evaluate whether it was complying with the FLSA. For the same reason, Plaintiff cannot show that the County somehow knew or showed reckless disregard regarding whether its conduct was prohibited by the FLSA.

Plaintiff's request relies on his contention that the County should have reassessed the Lieutenants' classification after Houck emailed Ms. Farrow regarding the Lieutenants' classification in June/July 2022. However, as Mr. Ellison testified, the County will reassess a classification any time there is a change to the job duties. **Exhibit __** (Ellison Depo. at 18:5-10). Plaintiff has not identified a single change to the Lieutenant duties in support of his argument. He has only offered his own subjective belief of a change. Moreover, to the contrary, Plaintiff concedes that after *Melendrez*, the Lieutenants' administrative duties increased. Accordingly, the only change that Plaintiff has identified is an increase in duties that support the County's position that Plaintiff is properly classified.

Accordingly, for the reasons stated above, the Court should grant Defendant's Motion for Summary Judgment as to the applicable statute of limitations and dismiss Plaintiff's claim for a three-year statute of limitations. Moreover, and for the same reasons, the Court should deny Plaintiff's Cross Motion for Summary Judgment on the same issue.

## IV.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests the Court to enter complete summary judgment in its favor, and deny Plaintiff's cross-motion for summary judgment in its entirety.

FP 61791640.1



1    DATED this 13th day of February 2026.

2                       FISHER & PHILLIPS LLP

3                     By s/Shayna Balch Santiago

4                         Shayna Balch Santiago
                          3200 N. Central Avenue, Suite 1550

5                         Phoenix, Arizona 85012-2487
                          Attorneys for Defendants Rollins, Inc.,

6                         Critter Control, Inc., Rebecca Dye and Jeff
                          Campbell

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FP 61791640.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FISHER & PHILLIPS LLP**
**3200 N. Central Avenue, Suite 1550**
**Phoenix, Arizona 85012-2487**
**(602) 281-3400**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 13, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

Isaac P. Hernandez
Thunderbird Law Group
361 E. Coronado Rd.
Phoenix, Arizona 85004
isaac@thunderbirdlawgroup.com
Attorneys for Plaintiff

Timothy F. Coons
Aaron S. Ludwig
Cameron Mitchell
Counxel Legal Firm
2222 South Dobson Road Suite 1104
Mesa, Arizona 85202
docketing@counxel.com
Attorneys for Defendant Khosravi


 s/ Michelle Xochicale

FP 61791640.1