# EXHIBIT 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

Christopher J. Houck, on behalf of )
himself and all those similarly    )
situated,                          )
                                   )   No. 2:23-cv-00068-DGC
          Plaintiff,               )
                                   )
          vs.                      )       Phoenix, Arizona
                                   )       July 29, 2025
Maricopa County,                   )       2:00 p.m.
                                   )
          Defendant.               )
_____)


     BEFORE:  THE HONORABLE DAVID G. CAMPBELL, Senior Judge


     REPORTER'S TRANSCRIPT OF TELEPHONIC PROCEEDINGS


               (Scheduling Conference)


Official Court Reporter:
Scott M. Coniam, RDR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 43
Phoenix, Arizona 85003-2151
(602) 322-7257

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                    A P P E A R A N C E S

2    For the Plaintiff:

3            Frankel Syverson PLLC
             By:  Mr. Ty D. Frankel, Esq.
4                 Ms. Patricia N. Syverson, Esq.
             2375 E. Camelback Road, Suite 600
5            Phoenix, Arizona 85016

6    For the Defendant:

7            Fisher & Phillips LLP
             By:  Ms. Shayna Balch Santiago, Esq.
8                 Mr. David G. Myers, Esq.
             3200 N. Central Avenue, Suite 1550
9            Phoenix, Arizona 85012

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED  STATES  DISTRICT  COURT

1    that's not a good use of counsel's time or the court's time.

2           When I see nine issues outlined, my inclination is to

3    think there's got to be at least a few of these where everybody

4    knows there's a factual dispute.  I might just be wrong on

5    that.  But I would encourage you to be selective in identifying

6    the issues where there clearly is a clear summary judgment

7    argument.

8           My reading of plaintiff's motion -- or, pardon me,

9    plaintiff's letter suggested that plaintiff's counsel intend to

10   file a cross-motion on a fairly narrow issue and that is the

11   good faith affirmative defense to liquidated damages.

12          Is that right, from plaintiff's side?

13          MR. FRANKEL:  Yes.  That is correct, Your Honor.

14          THE COURT:  Okay.  Well, coming back to defense

15   counsel, Ms. Balch Santiago, what is your best estimate at this

16   point as to how long your summary judgment motion will be?

17          MS. SANTIAGO:  Well, Your Honor, we're trying

18   to assess right now and want to, I guess, ask for Your Honor's

19   input on what would be easier for you to read.  It might be

20   easier for us to file separate distinct motions for summary

21   judgment, but one example of one of the topics that we plan on

22   raising in the motion for summary judgment on is the

23   proposition that plaintiff has an obligation to proffer some

24   evidence that the opt-in plaintiffs are actually in the

25   purported class, that they worked in Patrol Bureaus East or

1                    C E R T I F I C A T E

2


3         I, SCOTT M. CONIAM, do herby certify that I am duly

4    appointed and qualified to act as Official Court Reporter for

5    the United State District Court.

6         I FURTHER CERTIFY that the foregoing pages constitute

7    a full, true, and accurate transcript of all of that portion of

8    the proceedings contained herein, had in the above-entitled

9    cause on the date specified therein, and that said transcript

10   was prepared under my direction and control.

11        DATED August 18, 2025.

12


13
                s/Scott M. Coniam_____
14                SCOTT M. CONIAM, RDR, CRR

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 2

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Christopher J. Houck, on     )
behalf of himself and all    )
those similarly situated,    )
                             )
          Plaintiff,         )
                             )
vs.                          ) Case No.:
                             ) 2:23-cv-00068-DGC
Maricopa County,             )
                             )
          Defendant.         )
                             )


VIDEO-RECORDED DEPOSITION OF BENJAMIN FREEMAN


Phoenix, Arizona
August 7, 2025
10:06 a.m.


REPORTED BY:                 CARRIE REPORTING, LLC
Kristy A. Ceton, RPR, CRR    Certified Reporters
AZ CR No. 50200              12725 W. Indian School Rd.
                             Suite F-100
                             Avondale, AZ 85392
CERTIFIED COPY               (480) 429-7573

1    top of my head that I can think of right now.

2            Q.    You're not required to respond to all

3    calls, correct?

4            A.    Correct.

5            Q.    Do you have discretion as a lieutenant to

6    determine which calls to respond to outside of the

7    ones you listed that you are required to respond to?

8            A.    Uh-huh.  Yep.

9            Q.    Yes?

10           A.    Yes.

11           Q.    When you served as watch commander in

12   District 7, how long were you in that role for?

13           A.    In -- in District 7, until April of '23.

14           Q.    So is it safe to assume, November -- is

15   it safe to assume that you were in the watch

16   commander position within District 7 approximately

17   December 2022 through April of 2023?

18           A.    Yeah.  That's -- that's a pretty accurate

19   timeline.

20           Q.    During that time frame of December 2022

21   through April of 2023, as night watch commander, did

22   you ever have responsibility for the entire district?

23           A.    The entire district, that was every day.

24                 Oh, are you talking as, like, an -- as

25   the acting captain?  Or -- I'm going to have you get

118

1          Q.    But if all of your deputies that were

2    overseen by your sergeants were only averaging one

3    traffic stop each per week, would that be a problem,

4    in your mind?

5          A.    That would be an opinion.  So I don't

6    think it holds much weight to what my opinion is

7    versus the rest of the office.

8          Q.    Would you have a discussion with your

9    sergeants and deputies if the deputies were only

10   averaging one traffic stop per week?

11         A.    Nope.

12         Q.    Do you have any estimate of the number of

13   traffic stops deputies have averaged in your

14   districts since your promotion to lieutenant?

15         A.    As far as in the districts, no.  I think

16   the last thing I read was we were somewhere between

17   18- and 22,000 stops last year as an entire agency.

18         Q.    But you don't know how many of those are

19   deputies, sergeants, lieutenants?

20         A.    I could -- I could pull -- again, with

21   the correct stuff in front of me on my computer, I

22   could pull up those numbers for you, but offhand, no,

23   I don't.

24         Q.    Would you agree that on average, deputies

25   are performing more traffic stops than sergeants or

Deposition of: Benjamin Freeman                    August 7, 2025

119

1   lieutenants?

2         A.   Yes.

3         Q.   Turn to page MCC8598.  Midway through the

4   page.  Under where it says "Summary."  I'm going to

5   read out loud.

6              "This is the second supervisor note entry

7   of December 2022 for Lieutenant Freeman.

8              "Lieutenant Freeman has continued to work

9   as the daytime administrative and patrol lieutenant

10  while his counterpart is out on approved leave."

11             Do you see that?

12        A.   Yep.

13        Q.   Is it true that you, in fact, served as

14  the daytime administrative and patrol lieutenant

15  while your counterpart was out on leave?

16        A.   Yes.

17        Q.   How long did you serve as the daytime

18  administrative and patrol lieutenant?

19        A.   That was during that initial

20  couple-of-week period that I was on dayshift when I

21  first got promoted.

22        Q.   Approximately two weeks, then?

23        A.   Between two to four weeks while I was

24  there before I went to nightshift.

25        Q.   Have you ever been counseled or coached

```
 1    STATE OF ARIZONA        )
                              ) ss.
 2    COUNTY OF MARICOPA      )

 3

 4              BE IT KNOWN that the foregoing
      proceedings were taken by me, KRISTY A. CETON, a
 5    Certified Reporter, in and for the County of
      Maricopa, State of Arizona; that the witness before
 6    testifying was duly sworn to testify to the whole
      truth; that the questions propounded to the witness
 7    and the answers of the witness thereto were taken
      down by me in shorthand and thereafter reduced to
 8    typewriting under my direction; that the witness
      requested reading and signing said deposition; that
 9    the foregoing pages are a true and correct transcript
      of all proceedings had, all done to the best of my
10    skill and ability.
                 I FURTHER CERTIFY that I am in no way
11    related to any of the parties hereto, nor am I in any
      way interested in the outcome hereof.
12               I FURTHER CERTIFY that I have complied
      with the ethical obligations set forth in ACJA
13    7-206(J)(1)(g)(1) and (2).

14
      Kristy A. Ceton                      50200_____
15    Certified Reporter                   CR Number

16    _____          8.12.25
17    Certified Reporter Signature         Date

18
                 I CERTIFY that this Registered Reporting
19    Firm has complied with the ethical obligations set
      forth in ACJA 7-206(J)(1)(g)(1) and (2).

20
21    Carrie Reporting, LLC                R1064
      Registered Reporting Firm            RRF No.

22
23    _____          8.12.25
      Registered Reporting Firm            Date
24    Signature

25
```

# EXHIBIT 3

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Christopher J. Houck, on      )
behalf of himself and all     )
those similarly situated,     )
                              )
            Plaintiff,        )
                              )
vs.                           ) Case No.:
                              ) 2:23-cv-00068-DGC
Maricopa County,              )
                              )
            Defendant.        )
                              )


VIDEO-RECORDED DEPOSITION OF RUDY VERDUGO ACOSTA, JR.
        (and Videoconference via Zoom)



Phoenix, Arizona
July 15, 2025
1:59 p.m.



REPORTED BY:                  CARRIE REPORTING, LLC
Kristy A. Ceton, RPR, CRR     Certified Reporters
AZ CR No. 50200               12725 W. Indian School Rd.
                              Suite F-100
CERTIFIED COPY                Avondale, AZ 85392
                              (480) 429-7573

Deposition of: Rudy Verdugo Acosta, Jr.                    July 15, 2025

79

1   scenarios.

2              Those are --  You know, a bus accident

3   with a lot of kids that are injured.  Those are

4   critical incidents.

5        Q.   So if we call these priority one calls or

6   critical incidents, how many of those types of calls

7   would come in during a single shift?

8        A.   It's hard to say.  They could -- could be

9   10.  It could be two.  It's hard to say.  Sometimes

10  you could -- you get only one.  There's no...

11       Q.   So it varied each shift?

12       A.   Yeah.  Absolutely.

13       Q.   Were there calls that you -- were there

14  calls for service that you went out to that you were

15  not required or expected to go to?

16       A.   Yes.

17       Q.   Describe those for me.

18       A.   If I wanted to -- if I wanted to learn

19  how -- observe how my -- the staff was doing, the

20  deputies were doing, the sergeants were doing, what

21  kind of leadership they were providing, you know, my

22  -- and I would like to do -- I like to be out there

23  for that.

24              Or if I needed to just be visible, let

25  them know that, you know, I'm not stuck in the office

Deposition of: Rudy Verdugo Acosta, Jr.                    July 15, 2025

105

1              MS. SYVERSON:  Object.  Foundation.

2              THE WITNESS:  It's kind of the same

3    question you asked me on the first one.

4              Once again, I -- I would say by looking

5    at it, it looks like I shouldn't be.  But I sure want

6    to know why, because, I mean, in a 40-hour workweek

7    --  Hold on.  This one is different.  It's not more

8    than -- 20 and -- yeah, this doesn't even show me

9    working a full 40 hours.  So I took a lot of vacation

10   time and time off.  So I don't know.  I don't know

11   why.

12             So the answer is, am I -- do I feel like

13   I'm entitled to it?  No.  But I feel like I'm

14   entitled to some -- someone to explain it to me.

15             MS. BALCH SANTIAGO:  I think we're at

16   time.  So we'll agree to reconvene.  I'll get an

17   assessment of how much time we have left.

18             THE VIDEOGRAPHER:  This concludes today's

19   deposition.  We are off the record at 11:30.

20        (The proceedings adjourned at 11:30 a.m.)

21

22

23        _____

24                 RUDY VERDUGO ACOSTA, JR.

25

# EXHIBIT 4

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA


Christopher J. Houck, on behalf )
of himself and all those        )
similarly situated,             )
                                )
        Plaintiff,              )  NO.
                                )  2:23-cv-00068-DGC
vs.                             )
                                )
Maricopa County,                )
                                )
        Defendant.              )
                                )


VIDEOTAPED DEPOSITION OF CHRISTOPHER JOHN HOUCK

Phoenix, Arizona
March 18, 2025
9:34 a.m.


Glennie Reporting Services, LLC
1555 East Orangewood Avenue        Prepared by:
Phoenix, Arizona 85020
                                   Jill Marnell, RPR
602.266.6535                       Arizona Certified
www.glennie-reporting.com          Reporter No. 50021

158

1  particularly violent situation or something that required
2  more than, you know, one or two deputies the sergeant
3  would usually go to support the -- the squad.
4      Q.  And I understand that there's obviously a very
5  wide range of calls that you could receive on a daily
6  basis.  Presumably ranging from minor traffic infractions
7  to literally the worst of humanity with homicide and other
8  serious crimes.
9           With responding to calls, what -- was there
10 a specific cutoff where a sergeant would be called out to
11 supervise?
12     A.  No.  Sergeants and lieutenants are not called by
13 dispatchers to a scene.  They have to
14 self-(indecipherable) themselves.
15     Q.  BY MS. BALCH SANTIAGO:  Thank you for --
16          THE COURT REPORTER:  I'm sorry, they have to
17 self?
18          THE WITNESS:  They have answer up and say
19 like I'm en route, show me en route.  They have to
20 self-deploy.
21     Q.  BY MS. BALCH SANTIAGO:  So to use your phrase
22 self-deploy, is there a general rule of thumb where
23 sergeants would self-deploy themselves?
24     A.  I think everybody has like a different way of
25 going about business.  I know like when I was a sergeant

233

1    Q.   And then the next column over "Call for Service
2    (Assisting Unit)," do you see that?
3    A.   Yes.
4    Q.   And it says 11.
5         Do you see that?
6    A.   I do.
7    Q.   Can you describe for me what that four and 11
8    refer to?
9    A.   So call for service primary usually means that
10   you took care of the call by yourself.  So you
11   dispatched -- you got dispatched to the call and then
12   cleared the call and there was no -- no units assisting
13   you.
14        And then assisting call usually means that
15   multiple people are on the call.  You aren't the one like
16   taking the report or handling the investigation, but you
17   were just there to assist.
18   Q.   And do you see that this is a report that's run
19   from January 1, 2023, through 3/31/2023?
20   A.   I do.
21   Q.   So this is for a three-month time period;
22   correct?
23   A.   Yes.
24   Q.   Is it typical for you to respond to about four
25   calls for service as the primary unit a quarter?

Christopher John Houck, Videotaped - 03/18/2025

234

1      A.   Yeah, I would say that's pretty typical.  About

2  the same as the sergeants that work there.  So not -- Most

3  calls don't require a supervisor because they are like

4  low-level crimes.

5      Q.   Is it typical for you to respond in an assisting

6  unit capacity to about 11 calls per quarter?

7      A.   Sometimes more, sometimes less.  But, yeah, I

8  would say that's a good estimate.

9      Q.   What would the -- What would be a high number for

10  a quarter for assisting unit calls for service?

11      A.   Probably 25.

12      Q.   Do you see in both of those columns there are

13  some numbers that are significantly higher?

14      A.   I do.  I'm guessing those are deputies.

15      Q.   Why are you guessing those are deputies?

16      A.   Because that's their primary job, is to take all

17  the calls that come in from dispatch.

18           Yeah, all the ones that have zeros or less

19  than ten for calls for service I'm going to guess were

20  supervisors, sergeants or lieutenants.

21           THE COURT REPORTER:  I'm so sorry.

22      Q.   BY MS. BALCH SANTIAGO:  So would you agree that

23  it's not a primary duty of sergeants or lieutenants to

24  respond to calls for service?

25      A.   Right.  That's the deputy's job.

1    STATE OF ARIZONA          )
                              )  ss.
2    COUNTY OF YAVAPAI         )

3           BE IT KNOWN that I took the foregoing
     proceedings; that the witness was duly sworn by me; that
4    said transcript is a full, true, and accurate record of
     the proceedings; that the proceedings were taken down by
5    me in shorthand and thereafter reduced to print under my
     direction; that I have acted in compliance with
6    ACJA 7-206.

7           I CERTIFY that I am in no way related to any of
     the parties hereto, nor am I in any way interested in the
8    outcome thereof.

9           Pursuant to request, notification was provided
     that the deposition is available for review and signature.

10          Dated this 1st day of April, 2025.

11

12

13

14          _____
                    JILL MARNELL
15            Certified Reporter #50021
            Registered Professional Reporter

16          *      *      *      *      *      *

17          I CERTIFY that GLENNIE REPORTING SERVICES, LLC,
     has complied with                          : forth in
18   ACJA 7-206.

19

20

21          _____
22          GLENNIE REPORTING SERVICES, LLC
               Registered Reporting Firm
23              Arizona RRF No. R1035

24

25

# EXHIBIT 5

1          IN THE UNITED STATES DISTRICT COURT

2                    DISTRICT OF ARIZONA

3
   Christopher J. Houck, on        )
4  behalf of himself and all       )
   those similarly situated,       )
5                                   )
        Plaintiff,                  )   No. 2:23-cv-00068-DGC
6                                   )
   vs.                             )
7                                   )
   Maricopa County,                )
8                                   )
        Defendant.                  )
9                                   )
   _____ )
10

11

12

13     VIDEOTAPED DEPOSITION OF TODD CHRISTOPHER BRICE

14
                      Phoenix, Arizona
15                    April 15, 2025
                       9:08 a.m.
16

17

18

19

20
   CERTIFIED COPY
21

22
   Reported by:                    CARRIE REPORTING, LLC
23 CARRIE A. CARIATI               Certified Reporters
   Certified Professional Reporter 17505 North 79th Avenue
24 Certified Realtime Reporter     Suite 301-C
   Arizona CR No. 50355            Glendale, Arizona 85308
25 carrie@carriereporting.com      (480)429-7573

```
 1  key duties that a patrol deputy would perform on a nearly
 2  daily basis?
 3       A.    I missed the first word you said.  I ...
 4       Q.    So these -- these topics, I will --
 5       A.    Okay.
 6       Q.    -- I will run through them again --
 7       A.    Okay.  I just heard the topics.  But yes.
 8       Q.    I want to know if these are responsibilities
 9  that a patrol deputy would do on a nearly daily basis.
10       A.    Yes.
11       Q.    And --
12       A.    Well -- not all of them, right, like definitely
13  respond to calls, like he is not going to daily put out
14  fires, chase people, those things, but some version of
15  that?
16       Q.    But patrol deputies would be doing these items
17  on a fairly frequent basis, correct?
18       A.    Some of them.
19       Q.    Would patrol deputies be doing these items more
20  frequently than you would as a lieutenant?
21       A.    Yes.
22       Q.    All right.
23             MS. SYVERSON:  I think you are pretty much
24  at time.
25             MS. SANTIAGO:  We got a few minutes left.
```

1  the beginning to try to get our wives added so we could be

2  sued to recover damages.  And frankly, that was very

3  upsetting to me that the County would pursue such a thing,

4  and it is just a reflection how they have been treating us

5  monetarily this whole time.  But, yes, I understand that.

6  That was upsetting.

7       *Q.*   Okay.

8       *A.*   Yeah.

9            MS. SANTIAGO:  I am out of time.  So since

10  I am out of time, then that's all that I have.

11            MS. SYVERSON:  I have no questions.

12            VIDEO TECHNICIAN:  This concludes today's

13  deposition.  We are off the record at 12:38 p.m.

14            (Proceedings adjourned at 12:38 p.m.)

15

16            _____

17            TODD CHRISTOPHER BRICE

18

19

20

21

22

23

24

25

## CERTIFICATE

1            I HEREBY CERTIFY that the foregoing deposition was taken by me pursuant to notice; that I was then and there a Certified Court Reporter for the State of Arizona, and by virtue thereof authorized to administer an oath; that the witness before testifying was duly sworn by me to testify to the whole truth and nothing but the truth; pursuant to request, notification was provided that the deposition is available for review and signature; that the questions propounded by counsel and the answers of the witness thereto were taken down by me in shorthand and thereafter transcribed through computer-aided transcription under my direction, and that the foregoing typewritten pages contain a full, true, and accurate transcript of all proceedings had upon the taking of said deposition, all done to the best of my skill and ability.

            I FURTHER CERTIFY that I am in no way related to nor employed by any of the parties hereto, nor am I in any way interested in the outcome hereof.

            I FURTHER CERTIFY that I have complied with the ethical obligations set forth in ACJA Sections (J)(1)(g)(1) and (2).

            DATED at Phoenix, Arizona, this 28th day of April, 2025.

_____
CARRIE A. CARIATI
Registered Professional Reporter
Certified Realtime Reporter
Certified LiveNote Reporter
Certificate No. 50355


            I CERTIFY that this Registered Reporting Firm has complied with the ethical obligations set forth in ACJA Sections (J)(1)(g)(1) and (2).


            DATED at Phoenix, Arizona, this 28th day of April, 2025.

_____
Registered Reporting Firm R1064
CARRIE A. CARIATI, Owner

# EXHIBIT 6

**Houck vs**
**Maricopa Country**

**Darrien Ellison**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Christopher J. Houck, on          )
behalf of himself and all         )
those similarly situated,         )
                                  )
          Plaintiff,              ) No.
                                  ) 2:23-cv-00068-DGC
vs.                               )
                                  )
Maricopa County,                  )
                                  )
          Defendant.              )
_____)

DEPOSITION OF DARRIEN ELLISON

Phoenix, Arizona
August 28, 2025
9:04 a.m.

REPORTED BY:
Kellie L. Olney, RPR
AZ Certified Reporter No. 50223

PREPARED FOR:
Superior Court
(Original)



**Griffin Group International**
**888.529.9990 | 602.264.2230**

Houck vs
Maricopa Country

Darrien Ellison

11

1  then -- back in 2005.

2        And so the reason that they went hourly had

3  nothing to do with the fact that they -- basically they

4  were always doing management and they always qualified

5  under the executive and administrative exemption of the

6  FLSA.

7     Q.   BY MR. FRANKEL:  When you say they always

8  qualified, was that a determination that you were

9  making?

10        MS. BALCH SANTIAGO:  Form and overbroad.

11        Answer if you can.

12        THE WITNESS:  So I was not at the County in

13  1997.  In 2007, I was involved because I was at the

14  County.

15     Q.   BY MR. FRANKEL:  So in 2007, when there was the

16  switch back from non-exempt hourly for the patrol

17  lieutenants to exempt, you were involved with that?

18     A.   Yes.

19     Q.   What was your role at the time?

20     A.   My role was to analyze the FLSA and essentially

21  assess whether or not lieutenants should be or could

22  qualify as exempt under the Fair Labor Standard Act.

23     Q.   Do you have a legal background?

24     A.   No, I do not.

25     Q.   What was your job title at the time?



12

1    A.    I believe I was compensation coordinator.

2    Q.    Who else was involved with the decision to

3  reclassify the patrol lieutenants as exempt in 2007?

4    A.    So we had -- one of my peers was our FLSA

5  expert, and the reason she was our FLSA expert is

6  because prior to coming to the County, she worked as a

7  Department of Labor investigator, so she assisted the --

8  she assisted in providing consultation and advice on

9  that.  I'm sure I would have also had a conversation

10 with my boss and discussed the outcome with the boss.

11   Q.    What was the name of the DOL investigator?

12   A.    Mary Lou Sarrault.

13   Q.    Mary Lou -- what was the last name?

14   A.    Sarrault.

15   Q.    And what was her title at the County at the

16 time?

17   A.    I don't recall what her title would have been.

18 She would have been either a consultant, or at one point

19 I think she was a comp analyst.  She was the -- she was

20 a previous manager at the County and then retired.

21        And so at that time she was retired, but we

22 hired her back, and she was helping us with projects as

23 well as advising us, you know, helping us with FLSA

24 concerns and challenges.

25   Q.    And what was your boss's name who was involved?



13

1    A.    I believe it was Jessica Wilson.

2    Q.    And what was her title?

3    A.    I believe it was either compensation supervisor

4    or compensation manager.

5    Q.    Was legal counsel involved?

6    A.    No.

7    Q.    Did Mary Lou or Jessica have a law degree?

8    A.    No.

9    Q.    Do you recall what information was evaluated to

10   make the determination that the patrol lieutenants were

11   eligible for the executive or administrative exemption?

12        MS. BALCH SANTIAGO:  Form.  Overbroad as to

13   time, if you could specify that.

14   Q.    BY MR. FRANKEL:  When the decision was being

15   made to reclassify them in 2007, do you recall what

16   information was evaluated to make that decision?

17   A.    Yes.  So we looked at their central functions.

18   We -- we researched and looked at the resources that are

19   on the Department of Labor.  They have some really

20   useful resources, from frequently asked questions, from

21   the actual rules and regulations.

22        There was a 2005 Department of Labor opinion

23   letter that we were aware of that another agency or

24   organization reached out to the Department of Labor and

25   asked some questions about lieutenants, patrol



**Houck vs**                                              **Darrien Ellison**
**Maricopa Country**

14

1    lieutenants, and captains and I think fire captains.

2              And as -- also, as I mentioned, had

3    conversations with the -- or with our FLSA expert,

4    Mary Lou.

5       Q.   Was her title "FLSA expert," or is that just

6    your characterization of her --

7       A.   That was just what we called her.  Her title,

8    it was either -- I don't know if it was consultant or

9    comp analyst or -- but we called her our "FLSA expert,"

10   and we had her -- one of her responsibilities at

11   different times was to basically keep us updated on any

12   of the FLSA changes because that was one of her

13   passions.  She really enjoyed the FLSA and knew it well.

14      Q.   Since that decision was made in consultation

15   with Mary Lou in 2007, has there been any reevaluation

16   by the County of whether the patrol lieutenants are

17   properly classified as exempt?

18              MS. BALCH SANTIAGO:  Form.  Overbroad.

19              THE WITNESS:  Yes.

20      Q.   BY MR. FRANKEL:  When?

21      A.   2016, 2017.

22      Q.   And who was involved in that?

23      A.   We had an outside consultant, Fields

24   Consulting, conduct the job analysis on that.  And then

25   I was involved as far as just being there for, you

16

1  responder exception to the exemption applied?

2  **A.   So --**

3      MS. BALCH SANTIAGO:  Form.

4      Answer if you can.

5      MR. FRANKEL:  The "answer if you can" is

6  coaching, so that needs to stop.

7      **THE WITNESS:  So can you repeat the question?**

8  Q.  BY MR. FRANKEL:  Sure.  At the point in time in

9  2007 when the County was evaluating whether the patrol

10 lieutenants were properly classified as exempt, was

11 there an evaluation of whether the first responder

12 exception applied?

13     MS. BALCH SANTIAGO:  Form.

14     **THE WITNESS:  I don't recall.**

15 Q.  BY MR. FRANKEL:  In 2016, 2017, when Fields was

16 commissioned regarding the evaluation of the patrol

17 lieutenants, do you know whether the first responder

18 exception was ever considered at that point?

19     MS. BALCH SANTIAGO:  Form.

20     **THE WITNESS:  I believe so.**

21 Q.  BY MR. FRANKEL:  And what makes you think that?

22 **A.   Because part of the questions that were asked**

23 **were related to first responder duties.**

24 Q.  Was there ever any discussion that you recall

25 specifically related to the first responder exception to

17

1    the overtime exemption?

2              MS. BALCH SANTIAGO:  Form.

3              **THE WITNESS:  I don't recall.**

4    Q.   BY MR. FRANKEL:  And you were involved with

5    those discussions?

6    **A.   I would have been involved, as far as the --**

7    **Fields conducted the analysis.  I would have been**

8    **involved when the analysis was complete.**

9    Q.   How long have you been with the County?

10   **A.   About 21 years.**

11   Q.   So since about 2004?

12   **A.   Yes.**

13   Q.   Have you always been in a role that was in

14   Human Resources?

15   **A.   We were -- I've always been in a role that --**

16   **so we were in Compensation at one time, and we weren't**

17   **in Human Resources.  We were in -- we were moved in**

18   **different departments in different units, but I've been**

19   **in Compensation or Human Resources.**

20   Q.   And so during your entire tenure at the County,

21   to some extent you would have been involved with the

22   classification of the patrol lieutenants; is that

23   correct?

24             MS. BALCH SANTIAGO:  Form.

25             **THE WITNESS:  Yes.**

18

1    Q.   BY MR. FRANKEL:  Are -- 2007 and 2016, are

2    those the only two times the County looked into the

3    classification of the patrol lieutenants?

4         MS. BALCH SANTIAGO:  Form.  Foundation.

5         **THE WITNESS:  So anytime a position is created,**

6    **we look at the -- we look at the position's essential**

7    **functions to determine whether or not they should be**

8    **exempt or non-exempt.  And anytime there is a change to**

9    **the job description, we would look at and consider**

10   **their -- whether or not they were properly classified.**

11   Q.   BY MR. FRANKEL:  Okay.  So my question

12   specifically, though, is other than the two instances

13   that you described, the one in 2007 and the one in 2016

14   or 2017, where the exemption was analyzed for the first

15   responders, do you recall any other times where that

16   classification was evaluated by the County?

17   **A.   Yes.**

18   Q.   When?

19   **A.   Whenever there was -- there's been positions**

20   **that have been submitted to have them created, and so we**

21   **would review the job description and analyze and assess.**

22   **Part of our -- when we're creating a position is to**

23   **determine whether they should be classified, as far as**

24   **what is their classification, but also their FLSA**

25   **status.**



120

1          THE COURT REPORTER:  Shayna, are you ordering a

2    copy of the transcript?

3          MS. BALCH SANTIAGO:  Yes, please.

4          (Deposition concluded at 12:18 p.m.)

5

6
                    (Signature not requested.)
7                    DARRIEN ELLISON

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



# EXHIBIT 7

1          UNITED STATES DISTRICT COURT

2              DISTRICT OF ARIZONA

3
    Christopher J. Houck, on        )
4   behalf of himself and all       )
    those similarly situated,       )
5                                    )
         Plaintiff,                  )  No. 2:23-cv-00068-DGC
6                                    )
    vs.                              )
7                                    )
    Maricopa County,                 )
8                                    )
         Defendant.                  )
9                                    )
    _____ )
10

11

12

13      VIDEOTAPED DEPOSITION OF ALDEN JAMAAL JACKSON

14

                    Phoenix, Arizona
15                   April 15, 2025
                      1:35 p.m.
16

17

18

19

20
    CERTIFIED COPY
21

22
    Reported by:                    CARRIE REPORTING, LLC
23  CARRIE A. CARIATI               Certified Reporters
    Certified Professional Reporter 17505 North 79th Avenue
24  Certified Realtime Reporter     Suite 301-C
    Arizona CR No. 50355            Glendale, Arizona 85308
25  carrie@carriereporting.com      (480)429-7573

1           Any minor stuff that needs to be done --
2   that needed to be done before, quote, unquote, close of
3   business, because as a watch commander we started later in
4   the day, so for the people that worked day shift we had to
5   catch them just as we were starting and they were ending.
6           And from there, we respond to calls as
7   needed, traffic enforcement, made sure all my personal
8   admin stuff was done, you know, supervisor notes, BlueTeam
9   stuff, anything like that, and then the day would just
10  evolve as it did depending on radio traffic and that kind
11  of thing.
12      Q.   As a lieutenant in District 2, were you issued
13  an unmarked vehicle that you could take home?
14      A.   I was.
15      Q.   And what were the crossroads of the building in
16  District 2 that you worked out of?
17      A.   I guess the major cross streets would be 107th
18  Avenue and Van Buren.
19      Q.   And I understand that you testified that you
20  lived in District 2.  Approximately how long was your
21  commute if you were to drive directly from your personal
22  residence to the District 2 building that you worked out
23  of?
24      A.   Approximately, I don't know, 15 minutes maybe,
25  if that.

1    Q.    Would you typically -- strike that.

2              So you would be dressed, ready, in your

3    uniform, you would get into your unmarked vehicle at your

4    home, get into your vehicle, log into CAD, and then start

5    driving?

6    A.    Correct.

7    Q.    And was the reverse true that when you were

8    finishing your shift that you would stay logged into CAD

9    until you arrived back home, at which point you would log

10   out of the CAD system?

11   A.    Yes, ma'am.

12   Q.    When you would start your day, would you

13   typically drive to the District 2 building to start your

14   day?

15   A.    If needed.  There was times where I didn't have

16   to go there and I would go to calls, or there was times,

17   you know, a hot tone would come out or I wouldn't make it

18   to the district before I had to respond to something else.

19   So once my day was started then I was working, so I didn't

20   always have to respond to the district.

21   Q.    So let me back up here a little bit.

22              District 2, did you have a personal office

23   in District 2?

24   A.    I did.

25   Q.    Did you share that office with anyone or was it

|    |    |
|----|----|
| 1  | CERTIFICATE |
| 2  | I HEREBY CERTIFY that the foregoing deposition |
| 3  | was taken by me pursuant to notice; that I was then and there a Certified Court Reporter for the State of Arizona, |
| 4  | and by virtue thereof authorized to administer an oath; that the witness before testifying was duly sworn by me to |
| 5  | testify to the whole truth and nothing but the truth; pursuant to request, notification was provided that the |
| 6  | deposition is available for review and signature; that the questions propounded by counsel and the answers of the |
| 7  | witness thereto were taken down by me in shorthand and thereafter transcribed through computer-aided |
| 8  | transcription under my direction, and that the foregoing typewritten pages contain a full, true, and accurate |
| 9  | transcript of all proceedings had upon the taking of said deposition, all done to the best of my skill and ability. |

1    CERTIFICATE

2            I HEREBY CERTIFY that the foregoing deposition
    was taken by me pursuant to notice; that I was then and
3   there a Certified Court Reporter for the State of Arizona,
    and by virtue thereof authorized to administer an oath;
4   that the witness before testifying was duly sworn by me to
    testify to the whole truth and nothing but the truth;
5   pursuant to request, notification was provided that the
    deposition is available for review and signature; that the
6   questions propounded by counsel and the answers of the
    witness thereto were taken down by me in shorthand and
7   thereafter transcribed through computer-aided
    transcription under my direction, and that the foregoing
8   typewritten pages contain a full, true, and accurate
    transcript of all proceedings had upon the taking of said
9   deposition, all done to the best of my skill and ability.
            I FURTHER CERTIFY that I am in no way related to
10  nor employed by any of the parties hereto, nor am I in any
    way interested in the outcome hereof.
11          I FURTHER CERTIFY that I have complied with the
    ethical obligations set forth in ACJA Sections
12  (J)(1)(g)(1) and (2).
            DATED at Phoenix, Arizona, this 23rd day of
13  April, 2025.

14  _____
    CARRIE A. CARIATI
15  Registered Professional Reporter
    Certified Realtime Reporter
16  Certified LiveNote Reporter
    Certificate No. 50355
17

18          I CERTIFY that this Registered Reporting Firm
    has complied with the ethical obligations set forth in
19  ACJA Sections (J)(1)(g)(1) and (2).

20
            DATED at Phoenix, Arizona, this 23rd day of
21  April, 2025.

22  _____

23  Registered Reporting Firm R1064
    CARRIE A. CARIATI, Owner
24

25

# EXHIBIT 8

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Christopher J. Houck, on      )
behalf of himself and all     )
those similarly situated,     )
                              )
          Plaintiff,          )
                              )
vs.                           ) Case No.:
                              ) 2:23-cv-00068-DGC
Maricopa County,              )
                              )
          Defendant.          )
                              )

VIDEO-RECORDED DEPOSITION OF DONALD ROSENBERGER
        (and Videoconference via Zoom)

Phoenix, Arizona
July 18, 2025
10:05 a.m.

REPORTED BY:                  CARRIE REPORTING, LLC
Kristy A. Ceton, RPR, CRR     Certified Reporters
AZ CR No. 50200               12725 W. Indian School Rd.
                              Suite F-100
                              Avondale, AZ 85392
CERTIFIED COPY                (480) 429-7573

Deposition of: Donald Rosenberger                    July 18, 2025

29

1   on that day, how I feel that day, where I want to go.

2                 I try to -- I try to spread the wealth

3   amongst my subordinates to, you know, be around them

4   and, you know, work with them as much as I can.

5          Q.   Do you have discretion in where you head

6   to each day?

7          A.   Yes.

8          Q.   And have you ever used --  Strike that.

9                 Are you issued an unmarked vehicle for

10  your use as lieutenant with Maricopa County?

11         A.   Yes, it is considered unmarked vehicle.

12         Q.   And what does that mean?

13         A.   It's not an undercover vehicle, which a

14  lot of people like to refer to it as that.  It does

15  have visible lights affixed to the side, antennas on

16  top.  It's just a -- a Ford pickup truck that's just

17  not -- doesn't have sheriff wording, stars, or

18  anything like that on it.

19                But it's not like an undercover, like,

20  Ford Mustang or something like that.  It's -- it's

21  pretty obvious -- it should be pretty obvious to most

22  people that it's a -- a police vehicle.

23         Q.   But unmarked refers to no signage on the

24  vehicle indicating sheriff's office, correct?

25         A.   Yes.

60

1    day commander; is that correct?

2         A.   Yes.

3         Q.   Can you describe for me what a night

4    watch commander is and a day watch commander is?

5         A.   So night watch commander, there is

6    typically -- the way that we're doing it now is

7    there's typically one lieutenant that covers the east

8    side of the county and one lieutenant that covers the

9    west side of the county.

10              And I -- I don't know exactly, but

11   they're typically out there from 5 p.m. until, I

12   don't know, 2:00, 3 a.m.  And they are overseeing and

13   listening to the radio, and they have the discretion

14   to go to whatever district they -- they choose to on

15   any given night to patrol and -- and work with those

16   guys from that district.  Unless a major incident

17   takes place in a particular district, they -- it's

18   their responsibility to respond to that.

19              Daytime is -- is -- there's more of them.

20   Daytime typically each district has a lieutenant

21   that's on just for that particular district.  And,

22   again, the -- the daytime watch commanders, which I

23   guess that's what I would fall under, is to oversee

24   the patrol operations of that district.

25         Q.   How does a day watch commander differ

117

1    at time.  So that's all that I have for you based on

2    that.

3              MS. SYVERSON:  Okay.  I do not have any

4    questions.  We will read and sign.

5              MS. BALCH SANTIAGO:  Okay.

6              THE VIDEOGRAPHER:  This concludes today's

7    deposition.  Off the record at 1:29.

8         (The proceedings concluded at 1:29 p.m.)

9

10

11

12                    _____
                       DONALD ROSENBERGER
13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

CHRISTOPHER J. HOUCK, on )
behalf of himself and all )
those similarly situated, )
)
     Plaintiff, )
) No.
) 2:23-cv-00068-DGC
       vs. )
)
)
MARICOPA COUNTY, )
)
     Defendant. )
_____ )

VIDEORECORDED DEPOSITION OF RYAN NEVILLE

Phoenix, Arizona
April 11, 2025
9:08 a.m.

Prepared by:                        CARRIE REPORTING, LLC
MICHAELA H. DAVIS                   Certified Reporters
Registered Professional Reporter   17505 N. 79th Avenue
Certified Realtime Reporter        Suite 301-C
Certified Realtime Captioner       Glendale, AZ 85308
AZ CR No. 50574                      (480) 429-7573
NM CCR No. 614

(COPY)

1          Going down to the next little chart below
2    that where it says "Dispositions by Year."
3          Do you see that?
4    A.    Yes, ma'am.
5    Q.    And same years:  2021, 2022, 2023.
6          Do you see that?
7    A.    Yes, ma'am.
8    Q.    And there's a listing here.  And, for example,
9    it says "Assist to Other Agency," "Assisting Unit,"
10   "Primary Unit," "Report Taken."
11          Do you see that?
12   A.    Yes, ma'am.
13   Q.    My understanding is that "primary unit" refers
14   to the primary responding unit to the scene; is that
15   correct?
16   A.    Yeah, that would be correct.
17   Q.    And an assisting unit would be a unit that would
18   show up on scene to assist the primary unit; is that
19   correct?
20   A.    Yeah.
21   Q.    And for 2022, the number 44 appears for you as
22   primary unit; and then for 2023, the number 3 appears.
23          Do you see that?
24   A.    Yes, ma'am.
25   Q.    Do you have any reason to dispute those numbers?

1      *A.*    No.

2      *Q.*    How about assisting unit, 3 for 2022 and 2 for

3    2023?

4      *A.*    Yeah.  No, I'd have no reason to dispute that

5    either.

6      *Q.*    In your role as a lieutenant, you -- as a

7    lieutenant when you were in District II, you oversaw

8    sergeants; correct?

9      *A.*    Yes.

10     *Q.*    And also, to a degree, oversaw deputies --

11     *A.*    Yes.

12     *Q.*    -- as well?

13     *A.*    Yes.

14     *Q.*    If I were to run a similar report for sergeants,

15   could you give me any estimation as to the number of

16   deputy-initiated activities or calls for service that

17   might show on their report?

18     *A.*    So it's -- that's a nuanced question because the

19   activity that appears at night is usually going to be

20   higher for a watch commander because there's only one

21   watch commander to shoulder that load, by and large.

22   Okay?

23             You'll have some overlap on Wednesdays when

24   you have watch commanders on in Districts II and III, but,

25   generally speaking, throughout the week, it's one guy

 1  hope so, yeah.

 2      Q.    Would it be safe to assume they should have more

 3  than 100 calls for service in a given year?

 4      A.    Easily, yes.

 5      Q.    Would it be safe assume that a deputy should

 6  have more than 200 calls for service in a given year?

 7      A.    If it's a bad year, sure.

 8      Q.    And same with deputy-initiated activities?  Is

 9  it safe to assume they should have more than 150

10  deputy-initiated activities for a given a year?

11      A.    Now we're going to get into a philosophical

12  conversation about whether I think the deputies should be

13  more actively out there and proactively enforcing the law.

14  I would think from my opinion, yes.  But it's -- a lot has

15  changed since the post-Melendres days, so ...

16      Q.    Understood.  Understood.

17             How about with responding as the primary

18  unit?  Am I correct the majority of the time the primary

19  responding unit is going to be a deputy?

20      A.    See, I -- there's a sticking point for me

21  because my ID, my badge, my patch, says "deputy" as well.

22  I understand where you're going with it.  And, yeah, I

23  would assume that it would stand to logic, right, that

24  it's that deputy's beat, that deputy's district, and it's

25  their general job description that they are going to more

1  calls for service, they are taking more paper than me.

2          But, yeah, it's kind of one of those

3  sticking points.  Like, I'm a deputy whether I'm a

4  lieutenant, captain, deputy chief, or sheriff.  So I

5  guess --

6      Q.   Let me rephrase that then.

7          Am I correct in understanding that deputy --

8  deputy officer?  I mean --

9      A.   No.  Patrol deputy is fine.

10     Q.   Patrol deputy.

11         That a patrol deputy will, majority of the

12  time, be the primary responding unit to a call?

13     A.   Certainly.  Yeah.

14     Q.   And as far as dispositions by year, am I correct

15  in assuming that a patrol deputy should have more than 44

16  dispositions as a primary unit in a given year?

17     A.   Absolutely.

18     Q.   Should they have more than 200?

19     A.   Oh, I don't know about that necessarily.  Again,

20  it depends on the beat and how busy that beat is, even if

21  you're talking about District II because we have our ups

22  and down months too, but ...

23         I mean, if -- I've not looked at the patrol

24  stats in District II in some time.  If you look at, say,

25  the 225 beat or the 231 beat, which are the two busiest

1   STATE OF ARIZONA    )
                        )  ss.
2   COUNTY OF MARICOPA  )

3

4          BE IT KNOWN that the foregoing proceedings were
    taken by me, MICHAELA HERMAN DAVIS, a Certified Reporter,
5   in and for the County of Maricopa, State of Arizona; that
    the witness before testifying was duly sworn to testify to
6   the whole truth; that the questions propounded to the
    witness and the answers of the witness thereto were taken
7   down by me in shorthand and thereafter reduced to
    typewriting under my direction; that the foregoing pages
8   are a true and correct transcript of all proceedings had,
    all done to the best of my skill and ability.

9
           I CERTIFY that I am in no way related to any of
10  the parties hereto, nor am I in any way interested in the
    outcome hereof.

11
                    [X] Review and signature was requested.
12                  [ ] Review and signature was not requested.
                    [ ] Review and signature was waived.

13

14         I FURTHER CERTIFY that I have complied with the
    ethical obligations set forth in ACJA 7-206(F)(3) and
15  ACJA 7-206(J)(1)(g)(1) and (2). Dated at Phoenix, Arizona,
    this 28th day of April, 2025.

16

17                          

18  _____
                 Michaela H. Davis, RPR, CRR, CRC
19                    Arizona CR No. 50574
                      New Mexico CCR No. 614

20

21         I CERTIFY that Carrie Reporting, LLC, has
    complied with the ethical obligations set forth in
22  ACJA 7-206.  Dated at Phoenix, Arizona, this 30th day of
    April, 2025.

23

24  _____
                   Carrie Reporting, LLC
25                 Arizona RRF No. R1064

# EXHIBIT 10

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

CHRISTOPHER J. HOUCK, on       )
behalf of himself and all      )
those similarly situated,      )
                               )
          Plaintiff,           )
                               )  No.
                               )  2:23-cv-00068-DGC
          vs.                  )
                               )
                               )
MARICOPA COUNTY,               )
                               )
          Defendant.           )
_____)


VIDEORECORDED DEPOSITION OF ANDREW RANKIN

Phoenix, Arizona
April 11, 2025
1:35 p.m.


Prepared by:                   CARRIE REPORTING, LLC
MICHAELA H. DAVIS              Certified Reporters
Registered Professional Reporter   17505 N. 79th Avenue
Certified Realtime Reporter    Suite 301-C
Certified Realtime Captioner   Glendale, AZ 85308
AZ CR No. 50574                 (480) 429-7573
NM CCR No. 614

(COPY)

1   2023 and -- on the bottom of both of these.

2       Q.   Oh, the top 20 on view and the top 20 calls for

3   service?  Is that what you're referring to?

4       A.   I was just looking at the bottom totals down

5   here.  But I don't know what those totals represent.

6       Q.   I don't want to speculate myself, but I think

7   that it's in reference -- it says top 20 calls for

8   service.  Is that potentially in reference to some of the

9   more common calls for service for on view that come in?

10      A.   Maybe.  But then it would show -- I mean, those

11  should be my numbers, I assume, and it's showing on view

12  for the top 20, it's showing 12 in the total.

13      Q.   For 2023?

14      A.   Yes.

15      Q.   Okay.

16      A.   So I don't know what is accurate.  Or is ever

17  accurate in our statistical reporting, for that matter.

18      Q.   Do you have any reason to dispute or disagree

19  that your total on view deputy-initiated activities for

20  January through June 28th of 2023 was less than 20?

21      A.   No, I don't have a reason to dispute that my on

22  view activity was less than 20.

23      Q.   Do you have any reason to dispute that your

24  calls for service in 2023 between January 1st and June 28,

25  2023 was less than 40?

1          A.    No, I don't dispute that for in-person response.
2     We struggle to be everywhere we want to be because my
3     district alone was 1800 square miles.  So when you respond
4     to a call for service in person, it could be over an hour
5     away to get to where you need to go, and then that leaves
6     the rest of the district vulnerable where you can now not
7     be there because you went to somewhere that is in a remote
8     area.  So a lot of our job gets handled via conversations
9     by phone with supervisors and deputies.  That's the
10    unfortunate reality of having massive areas to cover.
11         Q.    Understood.
12               When it comes to deputy-initiated activities
13    for sergeants, would you expect sergeants to have a higher
14    number of deputy-initiated activities than yourself?
15         A.    I would think that it would be; I wouldn't say
16    that I expect it to be.  And I would also argue that I
17    could probably find patrol sergeants where it isn't.
18         Q.    How about with calls for service?  Would you
19    expect sergeants to have a higher number of calls for
20    service than yourself as a lieutenant in District III?
21         A.    For in-person response, I would say I don't
22    expect it, but it probably would be higher in most cases.
23         Q.    How about patrol deputies?  Would you expect
24    patrol deputies to have a higher instance of
25    deputy-initiated activities in Patrol District III than

1  lieutenant, for sure.  That is their -- that is their full

2  job is taking calls of service.

3      Q.   Is a patrol deputy's primary job taking calls of

4  service?

5      A.   Yes.

6      Q.   Would you expect a patrol deputy in District III

7  to take more than ten calls for service in a six-month

8  time period?

9      A.   Yes.

10     Q.   Would you expect a patrol deputy to take more

11  than 50 calls for service in a six-month period?

12     A.   Not necessarily.

13          (Deposition Exhibit No. 7, 8, 9 and 10 was

14      marked for identification by the reporter.)

15  BY MS. SANTIAGO:

16     Q.   You've been handed what has been marked as

17  Exhibits 7 through 10 to your deposition.  We're going to

18  take these one at a time and go through them relatively

19  quickly.

20          Do you recognize the type of report at

21  Exhibit 7 to your deposition?

22     A.   Which type of report are you asking me about?

23     Q.   Exhibit 7 to the deposition.

24     A.   Exhibit 7.

25     Q.   It looks like this.

```
 1   STATE OF ARIZONA    )
                         )  ss.
 2   COUNTY OF MARICOPA  )

 3

 4        BE IT KNOWN that the foregoing proceedings were
     taken by me, MICHAELA HERMAN DAVIS, a Certified Reporter,
 5   in and for the County of Maricopa, State of Arizona; that
     the witness before testifying was duly sworn to testify to
 6   the whole truth; that the questions propounded to the
     witness and the answers of the witness thereto were taken
 7   down by me in shorthand and thereafter reduced to
     typewriting under my direction; that the foregoing pages
 8   are a true and correct transcript of all proceedings had,
     all done to the best of my skill and ability.

 9
          I CERTIFY that I am in no way related to any of
10   the parties hereto, nor am I in any way interested in the
     outcome hereof.

11
                  [X] Review and signature was requested.
12                [ ] Review and signature was not requested.
                  [ ] Review and signature was waived.

13

14        I FURTHER CERTIFY that I have complied with the
     ethical obligations set forth in ACJA 7-206(F)(3) and
15   ACJA 7-206(J)(1)(g)(1) and (2). Dated at Phoenix, Arizona,
     this 28th day of April, 2025.

16

17
     _____
18           Michaela H. Davis, RPR, CRR, CRC
                 Arizona CR No. 50574
19               New Mexico CCR No. 614

20

21        I CERTIFY that Carrie Reporting, LLC, has
     complied with the ethical obligations set forth in
22   ACJA 7-206.  Dated at Phoenix, Arizona, this 30th day of
     April, 2025.

23

24   _____
                 Carrie Reporting, LLC
25               Arizona RRF No. R1064
```



# EXHIBIT 11

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Christopher J. Houck, on    )
behalf of himself and all   )
those similarly situated,   )
                            )
        Plaintiff,          )
                            )
vs.                         ) Case No.:
                            ) 2:23-cv-00068-DGC
Maricopa County,            )
                            )
        Defendant.          )
                            )


VIDEO-RECORDED DEPOSITION OF JASON THOMAS
(and Videoconference via Zoom)


Phoenix, Arizona
July 14, 2025
9:15 a.m.

REPORTED BY:              CARRIE REPORTING, LLC
Kristy A. Ceton, RPR, CRR Certified Reporters
AZ CR No. 50200           12725 W. Indian School Rd.
                          Suite F-100
CERTIFIED COPY            Avondale, AZ 85392
                          (480) 429-7573

118

1          Q.   Over three years?

2          A.   Yes.

3          Q.   How about interrogating and

4   fingerprinting suspects, how many times have you done

5   that since April of 2022?

6          A.   I would say maybe assisted with

7   interrogation four or five times.  We don't do any

8   fingerprinting in the patrol districts.

9          Q.   So you assisted with interrogation four

10  to five times over three years?

11         A.   Yeah.

12         Q.   And no -- none on the fingerprinting?

13         A.   Yeah.  We don't do any fingerprinting on

14  patrol.

15         Q.   Okay.  And last one is preparing

16  investigative reports.  How many times have you

17  prepared investigative reports since April of 2022?

18         A.   I would say about 10.  Preparation being

19  as in I authored something as a part of that

20  investigation is about 10.  I prep them to submit to

21  the county attorney quite often.

22         Q.   Of the topics that we just discussed --

23  I'll briefly go through them again.  Things like

24  rescuing fire, crime, or accident victims, preventing

25  or detecting crimes, conducting investigations,

119

1    surveillance, apprehending suspects, interviewing

2    witnesses, interrogations, and preparing reports, do

3    you agree with me that those are tasks that deputies

4    are doing on a daily basis?

5            A.   Not a daily basis.

6            Q.   On a weekly basis?

7            A.   I should --  Deputies.

8            Q.   Deputies, yes.

9            A.   Not every deputy.  So there's deputies in

10   general do that every day.  But we have deputies that

11   haven't done some of those things in a year.  So, in

12   general, deputies throughout the county do those

13   every day.

14           Q.   And, to be clear, the patrol deputies do

15   these tasks, for the most part, on a daily basis,

16   correct?

17           A.   All of patrol deputies, yes, if you look

18   at all of them.  But we have individuals that haven't

19   done some of those things in years.

20           Q.   Patrol deputies are certainly doing each

21   of these things more often than you as lieutenant,

22   correct?

23           A.   Correct.

24                MS. BALCH SANTIAGO:  Time check on this?

25   Where are we at on time?

Deposition of: Jason Thomas                                        July 14, 2025

124

```
 1   STATE OF ARIZONA        )
                             ) ss.
 2   COUNTY OF MARICOPA      )

 3

 4              BE IT KNOWN that the foregoing
     proceedings were taken by me, KRISTY A. CETON, a
 5   Certified Reporter, in and for the County of
     Maricopa, State of Arizona; that the witness before
 6   testifying was duly sworn to testify to the whole
     truth; that the questions propounded to the witness
 7   and the answers of the witness thereto were taken
     down by me in shorthand and thereafter reduced to
 8   typewriting under my direction; that the witness
     requested reading and signing said deposition; that
 9   the foregoing pages are a true and correct transcript
     of all proceedings had, all done to the best of my
10   skill and ability.
                I FURTHER CERTIFY that I am in no way
11   related to any of the parties hereto, nor am I in any
     way interested in the outcome hereof.
12              I FURTHER CERTIFY that I have complied
     with the ethical obligations set forth in ACJA
13   7-206(J)(1)(g)(1) and (2).

14
     Kristy A. Ceton                    50200_____
15   Certified Reporter                 CR Number

16
     _____            7.25.25
17   Certified Reporter Signature       Date

18
                I CERTIFY that this Registered Reporting
19   Firm has complied with the ethical obligations set
     forth in ACJA 7-206(J)(1)(g)(1) and (2).
20
21   Carrie Reporting, LLC              R1064
     Registered Reporting Firm          RRF No.
22
23   _____            7.25.25
     Registered Reporting Firm          Date
24   Signature
25
```

Carrie Reporting, LLC - Certified Reporters
480.429.7573