**Frankel Syverson** pllc

FRANKEL SYVERSON PLLC
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
602-598-4000
Ty D. Frankel (027179)
ty@frankelsyverson.com

9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
602-598-4000
Patricia N. Syverson (020191)
patti@frankelsyverson.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Christopher J. Houck, on behalf of himself and all those similarly situated, | Case No. 2:23-cv-00068-DGC |
| Plaintiff, | **PLAINTIFF'S REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| Maricopa County, | |
| Defendant. | |

Plaintiff Christopher Houck ("Houck" or "Plaintiff") submits this Reply in Support of his Cross-Motion for Summary Judgment ("Motion" at Doc. 166). For the reasons set forth in his opening motion and below, Plaintiff requests that his Motion for summary judgment be granted in its entirety.

## I.    The Scope of Plaintiff's Summary Judgment Motion is Appropriate

On August 1, 2025, just prior to the end of the discovery period, the County disclosed four new witnesses. Doc. 131. Following the disclosure, there was a hearing on August 7, 2025, addressing the need to take depositions of these additional witnesses outside of the discovery period. While the County fails to acknowledge this hearing – noting only an earlier hearing in July 2025 – the August hearing is significant. During that hearing, the Court stated: "And to address a concern you raised, Mr. Frankel, if you find in your depositions of these four newly disclosed witnesses that there is an additional ground for summary judgment, you may assert it when you file your cross-motion on October 3rd." *See* Ex. 1, August 7, 2025 hearing at 20:7-11. After consideration of the issues that arose from the additional depositions, Plaintiff believed moving for summary judgment on the first responder exception and willfulness, in addition to liquidated damages, was warranted. The County was on notice of this on November 21, 2025, as Plaintiff explained that was one of the reasons for requesting additional pages for his briefing – which the Court granted. Doc. 164, at 2:21-24 (Plaintiff "seeks summary judgment on three grounds, consistent with the Court's ruling during the August 7, 2025 discovery dispute hearing addressing the scope of Plaintiff's cross motion").[1] The County offered no objection at that time to Plaintiff moving on three grounds. The first objection ever raised was in the County's opposition brief. Doc. 182, § III(A). However, there is nothing improper about the scope of Plaintiff's motion for summary judgment.[2]

---

[1] Further, the County was previously on notice of Plaintiff's positions regarding the issues in his motion. As early as July 2025, the Parties conferred by letter about the anticipated scope of summary judgment motions, including conferring about the application of the exemptions, willfulness, and the good faith defense. *See* Docs. 119, 121.

[2] The County asserts that Plaintiff's "half-hearted" summary judgment motion on the first responder exception may be an "improper attempt" to file an "improper sur-reply." Doc.

1

## II. The Patrol Lieutenants are First Responders who are Entitled to Overtime

Under the first responder exception,[3] courts look to the practical reality of what it means to be a first responder and recognize that of course a first responder cannot always be completing emergency first responder tasks – that is just not the nature of the job of a first responder. *Cunningham v. Mission Support Alliance, LLC*, 2019 WL 13201913, at *6 (E.D. Wash. July 22, 2019) (fire captains were not exempt because their primary duty was as emergency first responders because they "must be prepared to leave the station in response to an emergency call" and such calls "take preference over any other activity"). Because of that, the broad principle of the first responder exception is that exempt tasks like management "undertaken in conjunction with, or directly related to, primary first responder duties do not turn a first responder into an exempt executive or administrator." *Morrison v. County of Fairfax, VA*, 826 F.3d 758, 767, 769 (4th Cir. 2016). "The main inquiry is determining the principal, main, major or most important duty that the employee performs. . . with the major emphasis on the character of the employee's job as a whole." *Cunningham*, 2019 WL 13201913 at *6.[4] Thus, by focusing on the "primary duty test," the first responder exception negates application of the executive, administrative, or highly compensated exemptions for employees whose primary duty is that of a first responder. The County does not dispute this. *See* Doc. 182, 21:3-8 (the County acknowledges that the executive and administrative

---

182, n. 12. There is no truth or support for this accusation. Plaintiff strongly believes and fully briefed why he is entitled to summary judgment on the first responder exception – which, as explained below, raises distinct issues from the County's summary judgment motion. If anything, it is the County's opposition to Plaintiff's motion that is "half-hearted" as it fails to rely on the proper legal analysis, ignores the practical nature of the Patrol Lieutenants' job duties, and mischaracterizes the facts.

[3] The County contends there is "no 'first responder *exception*'", but rather only a first responder "regulation." Doc. 182, 14:24-25. This purported distinction is immaterial. Regardless of the terminology used, it is without question that the DOL clarified the scope of the white collar and highly compensated exemptions as applied to first responders and, in doing so, promulgated a provision that operates as an exception to those exemptions such that first responders are not exempt from overtime under the FLSA. 29 C.F.R. § 541.3(b); Doc. 166, 6-7.

[4] Although the first responder exception does not supplant or "replace the primary duty test as the key inquiry," as the County incorrectly contends is Plaintiff's argument (Doc. 182, 20:16-18), it does impact the overall analysis of the primary duty test by taking a more holistic view of the job duties and routinely results in first responders being found entitled to overtime if they are dispatched to emergency calls. *Morrison*, 826 F.3d at 767.

exemptions are applied if the employee "does not have a primary duty acting as frontline first responder"). Given this law, if the Court finds that the Patrol Lieutenants are first responders falling within the first responder exception as a matter of law, then the Court need not consider application of the other exemptions. The analysis ends there. If, however, the Court does not find summary judgment is appropriate on the first responder exception, then as Plaintiff has set forth in his opposition, there is a dispute of fact as to whether the County has met its burden to prove its affirmative defenses regarding the white-collar exemptions such that the County's summary judgment motion should be denied. *See* Doc. 166, at §V.

Ignoring this law, the County attempts (and fails) to present a purported "gotcha" moment to the Court to defeat Plaintiff's motion based on a misleading characterization of Plaintiff's statements. Specifically, the County claims that Plaintiff's "own representation" that "he contends 'there is a dispute of fact regarding whether the Patrol Lieutenants' primary duty is exempt in nature versus first responder in nature'" essentially precludes finding in Plaintiff's favor on his summary judgment motion. Doc. 182, 38:24-39:4. In making this argument, the County utterly ignores the context in which the statement was made and once again demonstrates a misunderstanding of the law. In truth, Plaintiff was very clear in his Motion that "the Patrol Lieutenants are nonexempt first responders as a matter of law." Doc. 166, 16:14-15. However, in light of the procedural posture of this case in which both parties' summary judgment motions are being briefed in one document, Plaintiff alternatively argued that "[i]f the Court believes there is a dispute of fact on that issue [*i.e.*, whether the Patrol Lieutenants are first responders] that necessarily requires analysis of the specific exemptions addressed in the County's Motion involving executives, administrators, and highly compensated employees." *Id*. at 16:15-17. Plaintiff then went on to discuss – in opposition to the County's motion – that "[w]hen considering analysis of the white collar exemptions, at minimum, the County's Motion should be denied because there is a dispute of fact regarding whether the Patrol Lieutenants' primary duty is exempt in nature versus first responder in nature." *Id*. at 16:19-22. Plaintiff's statement in no way precludes a finding in his favor on summary judgment.

3

### A. The Patrol Lieutenant's Primary Duty is that of a First Responder

As set forth below and more fully in Plaintiff's Motion, there is overwhelming evidence demonstrating that the Patrol Lieutenants' primary duty is law enforcement and engaging in first responder duties such that the Patrol Lieutenants should be classified as non-exempt under the FLSA.

#### 1. Relative Importance of First-Responder Non-Exempt Duties

A key consideration in determining whether the Patrol Lieutenants are first responders is determining what is "the more important part of the job." *See Morrison*, 826 F.3d at 769 (the court focused its analysis on what is "the more important part of the job," discounting the significance of managerial duties that are performed as part of their first responder tasks in the field); *see also Cunningham*, 2019 WL 13201913, at *8 (despite all the managerial and administrative duties that captains performed, their primary duty was first response because responding to an emergency takes precedence over all the other duties). Here, the evidence supports that the Patrol Lieutenants' most important duty is that of providing law enforcement as a first responder. *See* Doc. 166, 4:9-5:5. In particular, each of the Patrol Lieutenants is required to be ready and prepared to respond to any high level calls and report as first responders in the field at a moment's notice by being in uniform, logged into the CAD system and monitoring the radio. *Id.* at 1-3. As Houck explained, "[t]he duties that I have as a patrol lieutenant are exactly the same as I had as a patrol sergeant….My primary duty as a patrol lieutenant remains law enforcement, being available to respond to calls, being -- having to show up in uniform, be on the radio, be logged in to the CAD system to be dispatched to calls. I'm not a -- in a management-type role. I'm still in a first responder role….That my primary duty remains law enforcement. That's what – that's what I'm there for." *Id*. at 4:1-5; *see also Id*. at 2-5. And, although the County repeatedly argues the Patrol Lieutenants are not required to respond to "all" calls, even the County acknowledges that "Plaintiffs are required to respond to high-level calls involving major incidents such as armed robberies, homicides, shooting victim incidents, drownings, school threats, deputy-involved shootings, deputy-involved accidents, kidnappings, barricades, and hostage situations."

4

1  Doc. 182, 23:8-11.[5] And, Patrol Lieutenants are subject to reprimand or discipline for failure
2  to respond to such incidents. *See* Doc. 166, 4:6-8.
3     The County's claim that the Patrol Lieutenant's "most important duties are
4  managerial, supervisory, and administrative and not first response" (Doc. 182, 22:12-13), is
5  not supported by the law or facts. Although there are certain "managerial and administrative
6  job duties [that] are untethered from any direct first response activity," (*Id*. at 22:14-15), such
7  duties do not comprise the most important or highest priority duties: "[A]ll the administrative
8  duties come to a screeching halt when preservation of life is foremost. They will respond,
9  and they will stop what they're doing." *See* Doc. 166, 3:7-10 (*citing* SOF ¶ 294).
10    Further, although the County argues that when they are "on scene" at "high-level
11 calls" their duties are "supervisory and managerial in nature" (Doc. 182, 23:7-16),[6] this
12 ignores that the Patrol Lieutenants also testified that on scene they are responsible for
13 "incident management" of high-level calls which is not simply supervision and management
14 but involves being actively engaged in law enforcement duties. *See* Doc. 166, 22-23. And,
15 the case law makes clear that the Patrol Lieutenants are still first responders when they are
16 performing exempt duties on the scene of an emergency. *Id*.; *see also Morrison,* 826 F.3d
17 at 767 ("management-like tasks undertaken in conjunction with, or directly related to,
18 primary first responder duties do not turn a first responder into an exempt executive or
19 administrator"); *Barrows v. City of Chattanooga*, 944 F.Supp.2d 596, 604 (E.D. Tenn. 2013)
20 ("the first responder regulation specifically states that an individual who directs the work of

---

[5] The County's reliance on *Fidler v. Twentieth Judicial District Drug Task Force* is misplaced. There, in finding the police sergeant (Fidler) was exempt, the court found "persuasive" that "no one else at the Task Force [] could perform the managerial duties other than Fidler," that unlike in *Morrison*, "where the fire captains would have to leave any managerial work they were performing in order to respond to a fire", the "opposite" was true in *Fidler*, and Fidler had "complete control over his day-to-day activities" and could decide when and whether to respond to calls versus performing managerial tasks. 325 F. Supp. 3d 840, 850 (M.D. Tenn. 2018). In contrast, here (like in *Morrison*), the primary and priority duty for the Patrol Lieutenants was to report to all high level calls.

[6] The County argues these duties are "not the kind of first response activities contemplated by the first responder regulation," citing once again to the preamble to the first responder regulation (Doc. 182, 23:17-21). However, as Plaintiff noted in his Motion, the preamble summarized the case law that existed in 2004 ***prior*** to the enactment of the first responder exception and not the current law. *See* Doc. 166, 13:6-18.

5

other employees at a fire scene will not automatically be transformed into a manager").[7]

Finally, the County's reliance on the "2016/2017 Fields Job Analysis" is misplaced. Doc. 182, 25:22-26:9. Relying on a report from an outside consultant purportedly summarizing the "frequency" and "importance" of various tasks the Patrol Lieutenants performed is not the appropriate focus of the analysis because "the determination of whether an employee is exempt is an inquiry that is based on the particular facts of his employment and not general descriptions." *Morrison*, 826 F.3d at n. 4 (quoting *Ale v. Tenn. Valley Auth.*, 259 F.3d 680, 689 (6th Cir. 2001)); *see also* Doc. 166, 20-22. In fact, senior Human Resources employees from the County agree that how the Patrol Lieutenants *actually* perform their jobs is what matters, not the job descriptions. *Id*. at 22:3-5.[8]

## 2. Amount of Time Spent Performing Exempt vs First Responder Work

Given the nature of the work, much of a first responder's time and day may be devoted to work that is not necessarily frontline law enforcement, but that does not negate the fact that their primary duty is still first responder in nature. *See Cunningham,* 2019 WL 13201913, at *1, 5 (fire captains were not exempt because their primary duty was as emergency first responders and even though the captains "spent less than 3% of their time on duty responding to emergency calls," the court found that such a small percentage of first responder work out in the field did not mean that the captains were not first responders as a matter of law). The law is clear that "[p]rimary duty does not mean the most time consuming duty; it instead connotes the 'principal' or 'chief' – meaning the most important duty

---

[7] The County argues that the "fact that Plaintiffs primarily supervise patrol deputies and patrol sergeants whose primary duty is frontline law enforcement does not make Plaintiffs a first responder." Doc. 182, 23:24-24:2. That is not an argument that Plaintiff made in his Motion or disputes here.

[8] The County argues that "many Plaintiffs described [the job duties] as managerial, supervisory, and administrative." However, as previously explained, the County fails to account for the full testimony provided by Patrol Lieutenants Acosta, Thomas, Keller, and Houck. For example, significantly, *and ignored by the County*, is Acosta's further explanation that in District 1, during the day he was "mostly going to patrols, going to actual calls for service," and the night shift was "absolutely more focused on the patrol calls" and probably out 70% of the time; he was required to go on "serious calls" – such as shootings, aggravated assault search where people were injured, major accidents, kidnapping, murder, hostage situation, and "critical incidents" such as bus accident with lots of kids. *See* Doc. 166, 24-25 (Acosta); *see also* Doc. 166, 25-26 (Thomas, Keller, and Houck).

performed by the employee." *Barrows*, 944 F.Supp.2d at 601 (internal citations omitted). The court even stated that "it would be illogical to give much weight to how much time a Captain devotes to answering emergency calls; that time presumably would vary from year to year, based on how many emergencies arise, without changing the character of the employee's job as a whole. *Id.* (internal citations omitted).

Despite the law that focuses on the overall practical nature of their jobs, the County insists on analyzing the Lieutenants' primary duty by focusing on the amount of time spent on certain tasks, minimizing the Patrol Lieutenants' first responder work by claiming it was "infrequent" or "rare" that they engaged in first responder duties by, *e.g.*, looking to the CAD data showing the number of times they were the "primary responding unit" on a call, tallying up the amount of time Patrol Lieutenants spent on purportedly exempt tasks in comparison to other non-exempt duties, and comparing the amount of time Patrol Lieutenants spent on law enforcement compared to other positions such as Patrol Deputies and Sergeants. Doc. 182, 26:10-28. This is irrelevant based on the proper analysis of their first responder duties requiring a holistic examination of the job. *See* Doc. 166, at IV(C).[9] This is especially true here where regardless of the percentage of time spent on exempt versus non-exempt duties,[10] the Patrol Lieutenants testified that the most important part of their job is still their first responder duties. Doc. 166, at II, and IV(D).

### 3. Free from Supervision/Exercise of Discretion

Contrary to the County's arguments, the Patrol Lieutenants do not have "relative freedom from supervision." First, during the relatively limited periods of time when they were serving as "acting commander" or "Watch Commander," the Patrol Lieutenants ultimately must still run decision-making by their Captains and/or Chiefs (in particular with regarding to major incidents) and update Captains and the Chief about status of all calls they are monitoring. *See* Doc. 166, 28:11-26. These temporary periods of time with less

---

[9] The County relies on legal authority that is outdated or does not support what it is cited for. *See* Doc. 166, 11:15-12:11 (discussing the County's citation to *Miller* and *Maestas*).
[10] Even if the Court were to accept the percentages the County relies on, they actually support that the Patrol Lieutenants are first responders as a matter of law. *See* Doc. 166, 27:5-28:10.

7

1  limitations on their discretion do not turn Patrol Lieutenants into exempt managers. *See*
2  *Morrison*, 826 F.3d at 771 (noting that the captains are not relatively free from supervision
3  even during periods when their superiors are not at the station because they still have
4  telephone and email contact with them). That they make "strategic decisions on scene"
5  similarly does not make the Patrol Lieutenants free from supervision because the Captains –
6  not the Patrol Lieutenants – had final decision-making power in terms of district decisions.
7  *See* Doc. 166, 28:27-29:25. And, all decisions have to comply with County policies – the
8  Patrol Lieutenants have no discretion to deviate from the County's policies that they have no
9  role in setting. *See Id*. at 29:26-31:6 (citing Keller 91:10-19 ("There is no discretion from a
10 captain to lieutenant. The way we're told how we supervise is by policy. So it's all the
11 same.")). As Lieutenant Jackson explained, the job description says "The Law Enforcement
12 Lieutenant administers, plans, organizes and directs the operations of a district," [but] that's
13 not true. That would be the captain's job. The law enforcement lieutenant supports the
14 captain in that -- in that mission." Doc. 166, 29 (SOF ¶ 308 (*citing* Jackson 66:23-67:9)).

15  The County cites to *Benavides* to argue that the Patrol Lieutenants are "free from
16 supervision in determining whether to respond to low-level calls for service." Doc. 182,
17 29:2-7. The Field Commanders in *Benavides* – as opposed to the Patrol Lieutenants here –
18 "are dispatched only to certain types of calls and always have discretion to take themselves
19 out of service once an ambulance arrives on the scene," have "discretion to self assign to
20 calls" and can "choose to remove themselves completely from the dispatch matrix" rather
21 than "always be ready to respond." *Benavides v. City of Austin*, 2013 WL 3197636, at *7
22 (W.D. Tex. June 20, 2013).[11] In contrast, here, the Patrol Lieutenants are undisputedly
23 required to respond to high-level calls and do not experience the same wide-spread discretion
24 at issue in *Benavides*.

---

[11] *Emmons* – cited by the County – is also distinguishable. Specifically, the *Emmons* court noted that unlike in *Morrison* (which is similar to the facts in this case) – the captains are unsupervised for much of the time they are on the job and many of the "staffing and other supervisory decisions they make are not typically subject to direct supervision," the "extent to which the [*Morrison*] captains were expected to use their independent judgement was, relative to the [*Emmons* captains], quite limited." *Emmons v. City of Chesapeake*, 982 F.3d 245, 255 (4th Cir. 2020).

8

### 4. Comparative Salary

And, even the relationship between the Patrol Lieutenants' salary in comparison to compensation of the non-exempt sergeants immediately below them in the chain of command supports that the Patrol Lieutenants are non-exempt employees. *See* Doc. 166, 32:15-27 (*citing*, *e.g.*, Freeman 131:19-132:1).

Thus, as discussed above and in Plaintiff's Motion, the Patrol Lieutenants' "primary duty" – *i.e.*, their most important duty – is emergency, first-responder response, which is evident from the fact that regardless of the time of day or whatever the Patrol Lieutenants are doing, if a high level emergency call comes in, the Patrol Lieutenants must respond to the call. Thus, it is not simply that the Patrol Lieutenants are law enforcement personnel that makes them non-exempt[12]; it is that their "primary duty" when considering their job as a whole is that of a first responder. Under these circumstances, the Patrol Lieutenants are properly classified as non-exempt first responders entitled to overtime.

### B. The County Fails to Demonstrate that Plaintiff's Cases Do Not Support a Finding that the Patrol Lieutenants Are Non-Exempt First Responders

The County's attempts to distinguish the cases that Plaintiff relies on regarding the first responder exception fail. As an initial point the County argues that "[t]wo of the cases predate *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018), in which the Supreme Court overruled Ninth Circuit (and other circuit) authority holding that FLSA exemptions were to be narrowly construed." Doc. 182, 30:2-4. However, *Encino* – which did not involve the first responder exception – did not change the underlying concept that the "FLSA is "remedial and humanitarian in purpose," reflecting an intent by Congress to protect broadly the "rights of those who toil."" Rather, in *Encino* the court came to the unexceptional decision that the exemptions must be given a "fair reading." *Encino*, 584 U.S. at 89; *see also Cunningham*, 2019 WL 13201913, at *7 (noting that *Encino* "does not make the reasoning in the other [pre-*Encino*] cases less persuasive" and *Encino* "did not eliminate the guidance

---

[12] Contrary to the County's claim, Plaintiff does not believe that the first responder analysis "starts and stops" with whether Patrol Lieutenants are "law enforcement." If that were true – which it is not – there would be no need for Plaintiff to engage in any further analysis of their "primary duty" – which Plaintiff has spent a significant amount of time doing.

provided by several decades of FLSA precedence"). None of the cases Plaintiff relies on propose anything to the contrary.

Further, the County's attempt to distinguish *Cunningham*, *Carson*, *Morrison*, and *Barrows* as "completely different" based on an overly narrow characterization of the specific duties at issue in each of the cases fails.[13] For example, the County repeatedly argues that the cases are distinct because the Patrol Lieutenants are not required to respond to "all" calls. However, as set forth above, the Patrol Lieutenants are required to respond to all *high-level* calls, supporting that their first responder duties are of primary importance. Whether the Patrol Lieutenants engaged in menial tasks – such as stocking – or the percentage of time spent on exempt versus non-exempt tasks are not the relevant inquiries in this case (or the other cases Plaintiff relies on); the question is what the primary duty of the Patrol Lieutenants is. *See Morrison*, 826 F.3d at 769-70 (accounting for the nature of first responder work when evaluating each of the factors of the primary duty test, not simply focusing on the purportedly exempt tasks that the employees perform). Thus, while there may be some factual variations in the cases Plaintiff relies on compared to the facts of the Patrol Lieutenants' job duties – there are not variations that impact the first responder analysis Plaintiff has set forth here.

### III. The Patrol Lieutenants are Entitled to Liquidated Damages

For the reasons set forth in his Motion, Plaintiff is entitled to summary judgment in favor of the Patrol Lieutenants on the issue of liquidated damages because the County cannot rely on the good faith defense under the circumstances. None of the issues the County raised in its Opposition support a finding to the contrary.

First, contrary to the County's claim, Plaintiff's Motion is premised on more than the simple fact that "the County did not consult legal counsel" in making its classification determination; it is premised on the fact that the County cannot show it acted "in subjective good faith and had objectively reasonable grounds for believing its conduct did not violate

---

[13] Despite the County's claim that Plaintiff relies on "unpublished" cases, that is simply not true. Of the four cases the County is referring to (*Cunningham*, *Carson*, *Barrows*, and *Morrison*), all are "published," two are reported and all of them are on point and relevant to the issues in this case. There is nothing improper about Plaintiff's citation to these cases.

the FLSA." Doc. 166, 38:17-25. For example, the County claims its actions regarding the exemption classification were in good faith because it relied on a "seasoned human resources professional and a former Department of Labor Investigator" to properly consider and understand the law. Doc. 182, 39:13-14. However, the "seasoned human resources professional" (Darrien Ellison) testified that he does not recall evaluating the first responder exception when the decision was made (Doc. 166, 39 (SOF ¶ 328))[14] – which, as set forth above, is a key part of a proper analysis – and during his deposition he demonstrated a fundamental misunderstanding of the first responder exception (*Id*. at 40, (SOF ¶ 329)). The "former Department of Labor Investigator" (Mary Lou Sarrault) was notably not identified as an expert, or even a witness, in this case, has no law degree, no formal recognition as an expert, and there is no indication of what her involvement in any decisions may have actually been. *See* Doc. 166, 39-40. Although Plaintiff pointed these issues out in his Motion, the County failed to provide any other support for why reliance on Ms. Sarrault to support a good faith defense was appropriate. *Id.* at 40:7-20 (citing *Wang* and *Ackley*).

The County also claims it relied on a DOL opinion letter with "facts nearly identical to those relevant to the Patrol Lieutenants." Plaintiff explained all the reasons why such reliance was misplaced in his Motion, at 40-41. However, the most significant reason is that the County did not actually know the factual circumstances that led to the DOL's determination. Doc. 166, 41 (SOF ¶ 334)). The County does not dispute this, explain how relying on a DOL opinion letter without knowledge of the actual facts supports a "good faith defense," or offer any explanation why it did not submit its own letter to the DOL. *Ackley v. Dep't of Corrections of State of Kan.*, 855 F.Supp. 680, 688 (D. Kan. 1994) ("The most logical step for a defendant concerned about the legality of its compensation plan is to seek an opinion from the relevant government agency"). The County does not explain how simply

---

[14] The County claims that Mr. Ellison testified that "he believed that the first responder regulation was taken into consideration when making this assessment, and that they had looked at the Lieutenants' essential functions as part of their review." Doc. 182, 42:9-12. However, he also testified that he thought that was the case only "Because part of the questions that were asked were related to first responder duties," but that he does not recall any discussion specifically related to the first responder exception and he would have been involved in such discussions. (Doc. 182-1, Ex. 6, Ellison Depo. at 16:15-17:8)).

11

updating its job description means that it had reasonable grounds to believe its classification was in compliance with the FLSA. Finally, the County claims that the Patrol Lieutenants' job duties "have not significantly changed" but if they have changed, it is only to include more managerial and administrative duties. However, it is undisputed that the County received correspondence indicating that Patrol Lieutenants believed their job duties had changed such that they were non-exempt, and human resources employees testified about potential changes in their job duties resulting from staffing shortages during the COVID-19 pandemic in 2020, yet did not re-evaluate the legality of their classification. Doc. 166, 41-42 (SOF ¶ 336-337).

Unlike in *Bratt* – relied on by the County – the facts here do not simply show the County "did not do as good of a job as it could have done" but show a lack of any "honest intention to comply with the Act." As set forth above, the employees tasked with complying with the Act do not specifically recall even evaluating the first responder exception (or even show they understand the exception and how it is applied), did not seek guidance from the DOL on the actual facts at issue in this case, did not explain how updating the job description went to the issue of ensuring compliance with the Act, or any other conduct or decisions that would demonstrate the County had an "honest intention to comply with the Act." Thus, the County cannot meet its burden on the good faith defense because it did not have objectively reasonable grounds for believing its conduct complied with the FLSA in its classifying the Patrol Lieutenants are exempt. *Renfro v. City of Emporia*, 732 F.Supp.1116, 1119 (D. Kan. 1990) (the good faith defense "was not intended to make each employer his own judge of whether or not he has been guilty of a violation"). The Patrol Lieutenants are entitled to summary judgment on this issue.

### IV. The County's Violation of the FLSA is Willful

For the reasons set forth in Plaintiff's Cross-Motion, Plaintiff is entitled to summary judgment in favor of the Patrol Lieutenants on the issue of willfulness because the County failed to take affirmative actions to ensure compliance with the FLSA when classifying the Patrol Lieutenants as exempt and not eligible for overtime. *Alvarez v. IBP, Inc.*, 339 F.3d

12

894, 909 (9th Cir. 2003). None of the issues the County raised in its Opposition support a finding to the contrary.

The County claims it reassessed the job description "numerous" times over the years – including by a seasoned human resources professional and a former DOL investigator. Doc. 182, 45:1-3. However, as set forth above, Mr. Ellison testified that he does not recall evaluating the first responder exception when the decision and it is unclear what, if any, actual role Ms. Sarrault had in reviewing the job classification. The County alludes to a consultant commissioned to update the Patrol Lieutenants' job description about ten years after the original classification but does not and cannot explain how simply updating a job description impacts a willfulness finding. And, significantly, not only did Houck raise his personal concerns that he was performing the same duties as a non-exempt sergeant when he was a Patrol Lieutenant, but he also emphasized in this complaint that other Patrol Lieutenants agreed with his belief that they should be paid overtime based on the job duties they are required to perform. Despite the complaint, it is undisputed that Keely Farrow (the senior human resources who was supposed to address concerns related to classifications): (1) did not speak with legal counsel or consult with anyone else at the County about Houck's inquiry about the Patrol Lieutenants' improper classification; (2) never talked to lawyers at the County about the exemption classification even though she did not have training on the FLSA; and (3) never talked to any other Patrol Lieutenants or their Captains about it or looked into whether their duties impacted the legality of the classification. *See* Doc. 166, 42-44. These are all steps that Mr. Ellison (the County's human resources professional), admitted should have taken place. Doc. 166, 44 (SOF ¶ 349). This is undisputed evidence that the County recklessly disregarded the law by failing to conduct any investigation, especially even after it was presented with a complaint about the Patrol Lieutenants' classification as exempt from overtime.[15] *See Acosta v. TBG Logistics, LLC*, 2018 WL

---

[15] And, pointing to the *Melendrez* orders as causing an "increase" in administrative duties and thus supporting exempt classification once again ignores the first responder exception's emphasis on the total nature of the Patrol Lieutenants' jobs and demonstrates the County still does not fully understand the relevant law upon which it should be making such decisions.

3145938, at *3 (D. Ariz. June 27, 2018)(employer willfully violated the FLSA because it received information related to unpaid overtime and failed to conduct any investigation into whether employees were entitled to overtime).  Summary judgment should be granted in favor of the Patrol Lieutenants.

### V.     Conclusion

Based on the foregoing, Houck respectfully requests that the Court grant summary judgment in favor of the Patrol Lieutenants regarding the first responder exception, liquidated damages, and willfulness.

DATED:  March 13, 2026.

**FRANKEL SYVERSON PLLC**

By   *s/ Patricia N. Syverson*
Patricia N. Syverson
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123

**FRANKEL SYVERSON PLLC**
Ty D. Frankel
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016

*Attorneys for Plaintiff*