**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher J Houck, on behalf of himself and all those similarly situated, | No. CV-23-00068-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Maricopa County, | |
| Defendant. | |

Plaintiffs in this collective action claim Defendant Maricopa County violated the Fair Labor Standards Act by improperly classifying patrol lieutenants of the Maricopa County Sheriff's Office as exempt managers. Doc. 1. Defendant has filed a motion to decertify the collective (Doc. 152) and a motion for summary judgment (Doc. 156). Plaintiffs have filed a cross motion for summary judgment (Doc. 172). The motions are fully briefed, and oral argument was heard on July 9, 2026. For the reasons stated below, the Court denies Defendant's motion to decertify, dismisses Plaintiffs Hunter and Bocardo, and otherwise denies both motions for summary judgment.

## I.      Background.

Named Plaintiff Christopher Houck has been employed by the Maricopa County Sheriff's Office ("MCSO") since February 2007. Doc. 1 ¶ 7. On April 4, 2022, Plaintiff was promoted to patrol lieutenant and remains in that position. *Id.* ¶ 18.

Defendant classifies patrol lieutenants as exempt managers under the Fair Labor Standards Act ("FLSA"). *Id.* ¶ 27. Patrol lieutenants are paid a salary on an hourly basis and are required to account for at least 80 hours every two weeks. *Id.* ¶ 28. Patrol lieutenants are not paid for hours worked beyond 80. *Id.* ¶ 30.

The MCSO is divided into districts. Each district follows a chain of command that includes deputies, sergeants, patrol lieutenants, and a captain. Doc. 173 ¶ 2. Patrol lieutenants perform certain managerial and administrative duties, and they must also respond to certain emergency calls. Doc. 1 ¶¶ 21, 23, 25. Plaintiff alleges patrol lieutenants perform the primary duty of first response, which qualifies them as non-exempt under 29 C.F.R. § 541.3(b)(1). *Id.* ¶¶ 20, 23. He asserts his FLSA claim on behalf of himself and similarly situated patrol lieutenants for their alleged improper classification as exempt employees. *Id.* ¶ 39.

The Court granted Plaintiff's motion for conditional certification under 29 U.S.C. § 216(b). Doc. 38. Thia collective action is limited to patrol lieutenants who worked in Patrol Bureaus East or West between January 11, 2020 and the present. *Id.* at 11. Notice of the collective action was given to relevant patrol lieutenants, and 22 have opted in. Docs. 5-14, 16-18, 24, 44, 50, 54, 56-60.

## II.    FLSA Governing Law.

Under the FLSA, employers must pay overtime to employees for hours worked beyond a 40-hour work week. 29 U.S.C. § 207(a)(1). Certain employees are exempt from these overtime requirements, including executive employees (29 C.F.R. § 541.100), administrative employees (§ 541.200), and highly compensated employees (§ 541.601). 29 U.S.C. § 213(a)(1). To qualify as exempt, "an employee's 'primary duty' must be the performance of exempt work." 29 C.F.R. § 541.700(a). "The term 'primary duty' means the principal, main, major or most important duty that the employee performs." *Id.* "[T]he major emphasis [is] on the character of the employee's job as a whole," but factors to consider include (1) "the relative importance of the exempt duties" compared to the employee's other duties, (2) the time spent performing exempt work, (3) "the employee's

relative freedom from direct supervision," and (4) "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.*

Under a regulation commonly called the First Responder Regulation, 29 C.F.R. § 541.3, FLSA exemptions "do not apply to police officers" and "similar employees" when first response is their primary duty, "regardless of rank or pay level[.]" § 541.3(b)(1). First response duties include "preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims; preventing or detecting crimes; conducting investigations or inspections for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals," and "interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; or other similar work." *Id.*

**III.    Motion for Decertification.**

An action seeking relief under the FLSA may proceed on a collective basis if the plaintiffs are "similarly situated." 29 U.S.C. § 213(b). The Ninth Circuit has held that plaintiffs are "similarly situated" if they are "alike with regard to some *material* aspect of their litigation." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1114 (9th Cir. 2018) (citation omitted). They must be "alike in ways that matter to the disposition of their FLSA claims." *Id.* "If the party plaintiffs' factual or legal similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment." *Id.* (citation omitted).

Certification of a collective action typically involves a two-stage process, and the plaintiffs bear the burden of proof at both stages. *Guanzon v. Vixxo Corp.*, No. CV-17-01157-PHX-DWL, 2019 WL 1586873, at *5 (D. Ariz. Apr. 12, 2019). At the first stage, the court preliminarily determines whether the potential plaintiffs are "similarly situated" as defined above – they must be "alike with regard to some *material* aspect of their litigation." *Campbell*, 903 F.3d at 1114. The analysis at this stage is "lenient," and the court conditionally certifies the collective action if there are "substantial allegations that

the putative class members were together the victims of a single decision, policy, or plan." *Shoults v. G4S Secure Sols. USA Inc.*, No. CV-19-02408 PHX-GMS, 2020 WL 8674000, at *1 (D. Ariz. July 31, 2020) (citation omitted).  The Court certified this collective action on October 25, 2023, and an opt-in period and discovery followed.  Doc. 38.

At the second stage, a defendant may seek decertification of the collective action "for failure to satisfy the 'similarly situated' requirement in light of the evidence produced to that point." *Shoults*, 2020 WL 8674000, at *1.  The court then takes "a more exacting look at the plaintiffs' allegations and the record," viewing the evidence in the light most favorable to the plaintiffs.  *Campbell*, 903 F.3d at 1109, 1119.  To maintain the collective action, the Court must find "substantial evidence" of similarity.  *Id.* at 1118.  "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Id.* (citation omitted).  If substantial evidence of sufficient similarity exists, decertification "cannot be permitted unless the collective mechanism is truly infeasible."  *Id.* at 1116.

Defendant argues that Plaintiffs' disparate testimony regarding their job duties shows they are not similarly situated.  Doc. 152 at 3, 10-11.  Plaintiffs argue they all have the duty of responding to high-level patrol calls and prioritizing those calls over their other duties, rendering them first responders.  Doc. 171 at 8.  Plaintiffs argue that any differences in their day-to-day work are immaterial for purposes of collective certification.  *Id.* at 5.

Plaintiffs have presented substantial evidence of their similarity.  They consistently testified in their depositions that they are required to respond to all high-level patrol calls and report as first responders in the field for all such calls, and that this duty takes priority over any administrative tasks patrol lieutenants have.  *Id.* at 8-9 & n.8.  All Plaintiffs must also (1) be uniformed at all times, including wearing body-worn cameras and the same equipment as deputies, (2) log into the CAD system at the start of their shift to ensure dispatch is aware they are available for calls, and (3) monitor the radio to ensure they are alerted to calls.  *Id.* at 6-7.  Plaintiffs are subject to discipline for failure to respond to high-level patrol calls.  *Id.* at  9.

Plaintiffs' facts are material to the question of whether they were properly classified as exempt employees, as will be evident in the summary judgment discussion below. And because these material facts are the same for all Plaintiffs, the Plaintiffs are "alike with regard to some material aspect of their litigation." *Campbell*, 903 F.3d at 1114. The "similarly situated" requirement for a collective action is therefore satisfied in this case. 29 U.S.C. § 216(b).

Defendant does not dispute that Plaintiffs testified to the facts set forth above, but argues that other testimony shows they assumed a managerial as opposed to first response role when responding to high-level patrol calls. Doc. 179 at 12. This argument will be relevant in the summary judgment discussion below, but it is not enough to defeat certification of the collective action. "If collective treatment is premised on a genuine dispute of material fact as to the merits of the party plaintiffs' FLSA claims, the collective action cannot be decertified unless the factual dispute is resolved against the plaintiffs' assertions by the appropriate factfinder." *Campbell*, 903 F.3d at 1119 ("If there is a merits dispute that would survive summary judgment on which the disposition of decertification also depends, the merits dispute should be tried. Whether the question will be answered favorably or unfavorably is for the trier of fact.").

Defendant argues that the "primary duty" question "requires individualized analysis," and there is too much variation in the material facts to find Plaintiffs similarly situated. Docs. 152 at 9, 11-22, 179 at 14-22. Defendant argues that Plaintiffs testified differently regarding their primary responsibilities (Doc. 152 at 14), and that there is wide variation among Plaintiffs with regard to their duty assignments because patrol lieutenants are transferred between different districts. *Id.* at 9. But these factual dissimilarities do not defeat collective treatment where the Plaintiffs are alike on "*some* material aspect of their litigation." *Campbell*, 903 F.3d at 1114 (emphasis added). There is no requirement, as there is in a Rule 23 class action, that common issues predominate over individual issues. *Id.* at 1115.[1]

---

[1] Defendant argues that Plaintiffs cannot point to "the County's uniform job description for all patrol lieutenants, uniform compensation and overtime policies applicable to all patrol

- 5 -

Cases cited by Defendant are distinguishable. *See Julian v. MetLife, Inc.*, No. 17-CV-957 (AJN), 2021 WL 3887763, at *3 (S.D.N.Y. Aug. 31, 2021) (finding plaintiffs factual similarities were not "material to the disposition of their FLSA claims"); *Guanzon v. Vixxo Corp.*, No. CV-17-01157-PHX-DWL, 2019 WL 1586873, at *7 (D. Ariz. Apr. 12, 2019) (finding plaintiffs "provided divergent testimony" revealing "material differences" with no showing of material similarities); *Weeks v. Matrix Absence Mgmt. Inc.*, No. CV-20-00884-PHX-SPL, 2022 WL 17104261, at *2-3 (D. Ariz. Nov. 22, 2022) ("Plaintiffs have failed to demonstrate any material factual or legal similarities within the collective class."); *Myers v. Hertz Corp.*, 624 F.3d 537, 542 (2d Cir. 2010) (addressing Rule 23 standard not at issue here).

Finally, Defendant argues that "any attempt at an effective trial of each Plaintiff's misclassification claim on a collective basis would prove infeasible, if not impossible" based on "the number of exemptions involved in this case and the wide variety of actual duties performed[.]" Doc. 152 at 9. But *Campbell* instructs that "if the party plaintiffs' FLSA right to choose collective litigation has any force, 'procedural considerations' must mean more than the inconvenience, from the court's or defendant's viewpoint, of the party plaintiffs' choice." 903 F.3d at 1116. Courts may decertify "where conditions make the collective mechanism *truly* infeasible," *id.* at 1117 (emphasis added), but the Court is not persuaded that trial of this collective action would be infeasible. Defendant's decertification motion is denied.

## IV.   Motion for Summary Judgment.

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence in the light most favorable to the

---

lieutenants, and uniform policy of classifying all patrol lieutenants as exempt to show that they are 'similarly situated.'" Doc. 152 at 5. Plaintiffs do not rely on these facts. Doc. 171 at 15.

nonmoving party and draw all reasonable inferences in that party's favor. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1220 (9th Cir. 1995).[2]

### A.    Plaintiffs' Primary Duty.

Plaintiffs argue that their "primary duty" is to act as a first responder. They base this argument on a narrow set of largely undisputed facts: they must respond to high-level patrol calls, and in preparation for those calls they must be in uniform, must wear cameras and body armor, must monitor all dispatch traffic throughout the day, and must drop everything else and respond when a high-level call comes in. Doc. 172 at 10-11. Plaintiffs cite a handful of cases finding that first response was the plaintiffs' primary duty based in part on the requirement that they respond to emergency calls. *Id.* at 8-10, 13-14.

Plaintiffs' cases involved high-ranking fire personnel who performed jobs closely aligned with frontline firefighters. The plaintiffs in those cases were required to respond to every emergency call. Indeed, fire engines could not leave the station without them onboard. And like firefighters, they slept at the fire station in readiness for an emergency call. *See Morrison v. County of Fairfax*, *VA*, 826 F.3d 758, 771-72 (4th Cir. 2016); *Cunningham v. Mission Support Alliance, LLC*, No. 4:18-CV-5060-RMP, 2019 WL 13201913, at *2 (E.D. Wash. July 22, 2019); *Barrows v. City of Chattanooga, Tenn.*, 944 F. Supp. 2d 596, 604 (E.D. Tenn. 2013); *Carson v. City of Los Angeles*, No. CV157057JFWKLSX, 2016 WL 7647681, at *7 (C.D. Cal. Sept. 22, 2016). When not responding to emergency calls, the high-ranking fire personnel, like all the firefighters, spent significant time at the station waiting for emergency calls, maintaining the readiness of fire vehicles and ambulances, completing emergency response training, and training other first responders. *Morrison*, 826 F.3d at 763; *Cunningham*, 2019 WL 13201913, at *2; *Barrows*, 944 F. Supp. 2d at 604; *Carson*, 2016 WL 7647681, at *7.

---

[2] Defendant argues in its reply that Plaintiffs exceeded the scope of the issues they gave notice of in their required letter to the Court. Doc. 182 at 38. But the purpose of the letters was simply to aid the Court in setting the summary judgment briefing, not to limit what parties can argue. Defendant has had a full and fair opportunity to address all of Plaintiffs' arguments.

Plaintiffs' role is different.  They do not respond to every call, only to high priority calls.  Between calls they are not doing the same work as their subordinates – deputy sheriffs are on patrol in the community while Plaintiffs typically are at the station engaged in administrative and management duties.  Thus, their work is not as fully aligned with the work of first responders as was the work of the high-ranking fire personnel addressed in their cases.  Doc. 173 at 3, 11, 45, 86.  This does not mean that Plaintiffs necessarily are exempt employees; that is a factual question as discussed below.  But it does mean that the Court cannot look to the firefighter cases cited by Plaintiffs to hold as a matter of law that Plaintiffs are first responders because they respond to high priority calls.

Nor is the Court persuaded by Defendant's argument that undisputed facts show Plaintiffs are properly classified as exempt employees.  As noted above, an employee is exempt from overtime pay under the FLSA if their "primary duty" is "the performance of exempt work."  29 C.F.R. § 541.700(a).  "Primary duty" is defined in regulations as "the principal, main, major or most important duty that the employee performs."  *Id.*  Plaintiffs' "primary duty" cannot, however, be determined by focusing on a single fact or a small set of facts.  The Court at summary judgment, and the jury at trial, must consider "the character of the employee's job as a whole," with relevant factors including (1) "the relative importance of the exempt duties" compared to the employee's other duties, (2) the "time spent performing exempt work," (3) "the employee's relative freedom from direct supervision," and (4) "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."  *Id.*  In this case, these factors present disputes of fact that preclude summary judgment for any party.

Defendant focuses on facts that support its claim that Plaintiffs are exempt.  These include the fact that "[w]hen a patrol district's Captain/Commander is unavailable, a Patrol Lieutenant will fill the role as the patrol district's 'acting commander' or 'acting captain,[']" who becomes the highest-ranking individual in the patrol district," and that "Patrol lieutenants who work the night shift are referred to as the 'watch commander' and are the

highest-ranking individual during that shift for Patrol Bureau East or West, and at times for the entire County." Doc. 157 at 42. Plaintiffs respond that even in these temporary roles, "the Patrol lieutenants still maintain their role and duties as a Patrol Lieutenant" and must respond to high level calls. Doc. 173 at 55.

Defendant further argues that Plaintiffs "make recommendations as to hiring and promotion decisions," and that they have the authority to take various disciplinary actions. Doc. 157 at 43. Plaintiffs point to "testimony in the record that Patrol lieutenants did not have authority to make final hiring or promotional decisions" or the "authority to make final disciplinary decisions." Doc. 173 at 56-57. The parties also disagree on the relative importance of various other duties of Plaintiffs, including supervising other employees, making annual performance evaluations, and budgeting, training, and conducting special projects. Docs. 157 at 43-44, 173 at 57-60. These facts are relevant to the regulatory factors of Plaintiffs' relative freedom from direct supervision and the relative importance of their exempt duties compared to their other duties. *See* § 541.700(a).

There is also a factual dispute regarding the relationship between the salaries of Plaintiffs' and sergeants. Defendant claims Plaintiffs receive a 10% pay raise on promoting to patrol lieutenants (Docs. 156 at 13, 172 at 33), which Plaintiffs challenge as factually unsupported (Doc. 172 at 33). Plaintiffs also argue that they make less than sergeants when factoring in sergeants' overtime (*id.*).

In short, determining Plaintiffs' "primary duty" is a multi-factor inquiry and the parties disagree on the facts relevant to that inquiry. A jury must resolve these factual disputes and determine the inferences to be drawn from them. *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (explaining "juries [have] broad discretion in deciding what inferences to draw from the evidence presented at trial" (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979))); *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004) ("[I]t is the exclusive function of the jury to determine the credibility of the witnesses, resolve evidentiary conflicts and draw reasonable inferences from proven facts[.]" (citation

omitted)).  The Court cannot grant summary judgment for either side on the question of whether exempt work or first response is Plaintiffs' primary duty.

### B.    Plaintiffs' Unrecorded Overtime.

Without citing the record or case law, Defendant argues Plaintiffs cannot seek damages for unrecorded hours because both exempt and non-exempt MCSO employees are instructed "to accurately record all hours worked in [MCSO] timekeeping systems[.]" Doc. 154 at 28-29.  Defendant asserts that Plaintiffs "testified at deposition that they were specifically instructed to record all hours worked and that no one told them not to."  *Id.* at 28. Plaintiffs argue that they may prove their right to overtime pay through their testimony and other evidence in the record, regardless of whether the overtime is reflected in Defendant's timekeeping system.  Doc. 172 at 36.

"An employee seeking to recover unpaid minimum wages or overtime under the FLSA 'has the burden of proving that he performed work for which he was not properly compensated.'"  *Brock v. Seto*, 790 F.2d 1446, 1447-48 (9th Cir. 1986) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).  But it is "the employer's statutory obligation 'to keep proper records of wages, hours and other conditions and practices of employment[.]"  *Id.* at 1448 (citation omitted).  "When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records."  *Est. of Barton v. ADT Sec. Servs. Pension Plan*, 820 F.3d 1060, 1066 (9th Cir. 2016) (citation omitted).  But "where an employer fails to keep adequate records of hours worked as required by FLSA, the employee carries his burden of establishing damages 'if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'"  *Id.* at 1068 (citation omitted).

There is record evidence that Plaintiffs were required to work more than 40 hours per week.  *See* Doc. 173 at 97.  Because Plaintiffs were classified as exempt and were not paid for hours above 40 per week, it served no purpose for them to log into Defendant's timekeeping system and record extra hours.  Plaintiffs may prove the amount of their

overtime work by other means. *See Ader v. SimonMed Imaging Inc.*, 465 F. Supp. 3d 953, 968 (D. Ariz. 2020) ("Plaintiffs have produced sufficient evidence to substantiate their estimates such that a trier of fact could determine the amount and extent of hours worked as a matter of just and reasonable inference."); *Manuel v. Quest Diagnostics, Inc.*, 341 Fed. App'x 348, 349 (9th Cir. 2009) (plaintiff's testimony sufficient to create genuine issue of material fact on whether she worked uncompensated overtime, and it is the jury's duty to draw reasonable inferences from her evidence). Given the remedial purpose of the FLSA, *Anderson*, 328 U.S. at 687, Plaintiffs can recover damages for hours worked that were not logged in Defendant's timekeeping system provided they meet their burden of proof. *Id.* at 680. Defendant's motion on this issue will be denied.[3]

### C.    Overtime Outside Patrol Bureaus East or West.

Defendant argues many opt-in Plaintiffs submitted damage computations for time periods when they did not work in Patrol Bureaus East or West, and that Plaintiffs should "be limited to claiming damages only during periods of time that they worked in Patrol Bureaus East or West as a Lieutenant from January 11, 2022 to the present." Doc. 156 at 30. Defendant misstates the appropriate date for the statutory time period.

The collective action is limited to "all current and former lieutenants from Patrol Divisions East and West who worked for Defendant at any time from January 11, 2020, to the present[.]" Doc. 38 at 11. At that time, the parties did not dispute Plaintiffs' allegations of willful violations of the FLSA, so a three-year statutory time period was appropriate at preliminary certification. *Id.* at 10 n.3. The complaint was filed January 11, 2023. Doc. 1. Thus, the statutory time period runs from January 11, 2020, to the present, subject to Defendant's challenge to Plaintiffs' allegations of willful violations of the FLSA. Plaintiffs

---

[3] The Court need not address Defendant's argument that the Court should disregard declarations of opt-in Plaintiffs Cruz, Goad, McCann, Sanchez, Ranck, Kremer, Jakowinicz, and Whelan-Gonzalez (Doc. 156 at 29) because those Plaintiffs offered none. In its reply, Defendant argues for the first time that the Court should grant summary judgment against these Plaintiffs because they offered no evidence to support their claims. Doc. 182 at 37. The Court will not address an argument made for the first time in a reply.

make clear that they seek to recover overtime only for the periods they worked in Patrol Bureaus East or West during the three-year lookback period. Doc. 172 at 39.

### D.    Defendant's Alleged Willfulness.

Claims under the FLSA "may be commenced within two years after the cause of action accrued, . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued[.]" 29 U.S.C. § 255(a). "[T]he three-year term can apply where an employer disregarded the very 'possibility' that it was violating the statute," but this Court may "not presume that conduct was willful in the absence of evidence." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908-09 (9th Cir. 2003), *aff'd*, 546 U.S. 21 (2005) (citations omitted). Willfulness can be proved by "evidence of an employer's knowing or reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* at 909 (citation modified).

Both parties move for summary judgment on whether Defendant acted willfully. Whether a violation is willful, however, cannot be determined before the violation is established. *See Allen v. Bd. of Pub. Ed. for Bibb Cnty.*, 495 F.3d 1306, 1324 (11th Cir. 2007) ("We have concluded that triable issues of fact remain as to some Plaintiffs' claims that they worked overtime without compensation; as such, the district court's ruling that the two-year limitation applies is reversed and a determination of which statute of limitations to apply must be reserved until it is determined whether a violation of the FLSA occurred in this case."); *Brantley v. Ferrell Elec., Inc.*, 112 F.Supp.3d 1348, 1377 (S.D. Ga. 2015) (same). Because the fact of a violation has not been determined in this case, the Court will not rule on the willfulness of that violation by summary judgment.

### E.    Liquidated damages.

Liquidated damages equal to the amount of the unpaid overtime wages "are 'mandatory' unless the employer can overcome the 'difficult' burden of proving both subjective 'good faith' and objectively 'reasonable grounds' for believing that it was not violating the FLSA." *Haro v. City of Los Angeles*, 745 F.3d 1249, 1259 (9th Cir. 2014). But "the court may, in its sound discretion, award no liquidated damages" when the

- 12 -

employer acted in "good faith" and with "reasonable grounds" to believe it did not violate the FLSA. 29 U.S.C. § 260.

Both parties move for summary judgment on the issue of whether Plaintiffs are entitled to liquidated damages. The Court, in its discretion, concludes that the determination of liquidated damages, including whether Defendant has met its difficult burden, should be made after the jury determines whether the FLSA has been violated. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (trial court may deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial); *Local 246 Util. Workers Union of Am. v. S. Cal. Edison Co.*, 83 F.3d 292, 298 (9th Cir. 1996) (award of liquidated damages is a matter of discretion with the court, depending in part on whether the defendant shows good faith and a jury finds willfulness).

### F.    Withdrawal of Plaintiffs Hunter and Bocardo.

Defendant argues Plaintiffs Matthew Hunter and Kelly Bocardo should be dismissed from this case because they voluntarily withdrew from the collective action by filing "Notice of Withdrawal of Consent" forms. Doc. 156 at 33. Plaintiffs agree. Doc. 172 at 46. Plaintiffs Hunter and Bocardo are dismissed from this action.

**IT IS ORDERED:**

1.    Defendant's motion for decertification (Doc. 152) is **denied**; Defendant's motion for summary judgment (Doc. 156) is **granted in part** with respect to the dismissal of Plaintiffs Hunter and Bocardo and otherwise **denied**; Plaintiffs' cross-motion for summary judgment (Doc. 172) is **denied**.

2.    The Court will hold a conference call with the parties on **September 10, 2026, at 10:00 a.m.**, to set a trial date and final pretrial conference date. In preparation for that conference call, the Court notes that a majority of cases have held that trial in FLSA cases can be conducted on a representative basis. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455 (2016) (discussing the use of representative sample evidence in class and collective actions and explaining that "[i]n many cases, a representative sample is 'the

only practicable means to collect and present relevant data' establishing a defendant's liability"); *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009) ("[R]epresentative testimony from a subset of plaintiffs c[an] be used to facilitate the presentation of proof of FLSA violations[.]"), *abrogated in part on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016); *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1279-80 (11th Cir. 2008) ("[E]mployees who perform 'substantially similar work' may testify on behalf of their counterparts[.]" (citation omitted)); *DeLuca v. Farmers Ins. Exch.*, No. 17-CV-00034-EDL, 2019 WL 4307940, at *5-6 (N.D. Cal. Sept. 11, 2019) ("Courts have frequently granted back wages under the FLSA to non-testifying employees based upon the representative testimony of a small percentage of the employees. The requirement is only that the testimony be fairly representational." (citation omitted)).

Before the conference call, the parties shall meet and confer about how best to conduct the trial of this collective action. If they reach agreement, the parties shall jointly file a proposed trial plan, no longer than ten pages in length, at least seven days before the conference call. If the parties are unable to agree, each side shall file a memorandum, no longer than ten pages in length, at least seven days before the conference call.

Dated this 24th day of July, 2026.

David G. Campbell
Senior United States District Judge