Shayna Balch Santiago, SBN 024852
Lori A. Guner, SBN 031646
David G. Myers, SBN 038484
FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
Telephone: (602) 281-3400
Fax: (602) 281-3401
ssantiago@fisherphillips.com
lguner@fisherphillips.com
dmyers@fisherphillips.com
Attorneys for Defendants

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Christopher J. Houck, on behalf of himself and all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Maricopa County,<br><br>Defendant. | No. 2:23-cv-00068-DGC<br><br>**DEFENDANT'S MOTION TO (1) CERTIFY THE COURT'S JULY 24, 2026 DECERTIFICATION ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b), AND (2) STAY THE ACTION PENDING INTERLOCUTORY APPEAL** |

Defendant Maricopa County ("Defendant" or "County"), by and through undersigned counsel, respectfully request that this Court certify its July 24, 2026 Order Denying Defendant's Motion for Decertification ("Order") for interlocutory appeal to the Ninth Circuit Court of Appeals, and stay proceedings in the District Court pending resolution of interlocutory appellate review.

For purposes of this Motion, the County relies on, and incorporates by reference, the record of evidence cited in its briefings to date, and the following Memorandum of Points and Authorities.

/ / /

/ / /

/ / /

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The Fair Labor Standards Act ("FLSA") provides that a party may bring a collective action on behalf of other "similarly situated" employees. 29 U.S.C. § 216(b). On January 11, 2023, Plaintiff Christopher Houck ("Plaintiff") commenced this action alleging that he and all others similarly situated, who are current or former Maricopa County Patrol Lieutenants, were misclassified as exempt employees under the FLSA, 29 U.S.C. § 201 *et seq.* ("FLSA"), and wrongfully denied overtime wages. In summary, Plaintiffs argue they are non-exempt "first responders" under 29 C.F.R. § 541.3(b) because their primary duty is the performance of law enforcement duties. The County maintains that Plaintiffs are properly classified as exempt because their primary duty is the performance of exempt duties that qualify them for the FLSA's executive, administrative, or highly compensated employee exemptions.

On October 25, 2023, the Court conditionally certified this collective action under the FLSA on the basis of various affidavits submitted by Plaintiff and opt-in Plaintiffs, finding that "Plaintiffs sufficiently allege that they are alike with regard to a material aspect of this litigation – namely, that they all have the primary duty of law enforcement." (Doc. 38, at 7:21-8:10). Following the close of discovery, the County filed a Motion to Decertify on September 26, 2025, and in support submitted substantial evidence demonstrating material dissimilarities among Plaintiff and the opt-in Plaintiffs that go to the heart of the exemption inquiry, namely, differences in the actual job duties they perform. (Doc. 152). The Court denied the County's Motion to Decertify on July 24, 2026, after determining that Plaintiffs had satisfied the Ninth Circuit's "similarly situated" standard articulated in *Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018). (Doc. 190).

*Campbell* clarified "the meaning of the statutory term 'similarly situated'" and held that "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claim." *Id.* at 1117. "[W]hat matters is not just *any* similarly between party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiffs' claims, in the sense of having the potential

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

to advance these claims, collectively, to some resolution." *Id.* at 1115 (citation omitted). "[A]s long as the proposed collective's 'factual or legal similarities *are* material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment.'" *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 947 (9th Cir. 2019 (quoting *Campbell*, 903 F.3d at 1114).

*Campbell* also clarified "the standard the district court should apply in evaluating a post-discovery motion for decertification," and the court concluded that district courts should evaluate the record using a summary-judgment-type analysis referred to as "substantial evidence." 903 F.3d at 1117-18. At the decertification stage, *Campbell* instructs the district court to ask "whether sufficient evidence exists to preclude a judgment as a matter of law because, viewing the competent evidence in the light most favorable to the nonmoving party, the trier of fact could properly find for the nonmoving party." *Id.* at 1118 (citations omitted).

In denying the County's Motion to Decertify, the Court faithfully attempted to apply *Campbell* and found that "Plaintiffs have presented substantial evidence of their similarity," namely:

> They consistently testified in their depositions that they are required to respond to all high-level calls and report as first responders in the field for all such calls, and that this duty takes priority over any administrative tasks patrol lieutenants have. All Plaintiffs must also (1) be uniformed at all times, including wearing body-worn cameras and the same equipment as deputies, (2) log into the CAD system at the start of their shift to ensure dispatch is aware they are available for calls, and (3) monitor the radio to ensure they are alerted to calls. Plaintiffs are subject to discipline for failure to respond to high-level patrol calls.

(*Id.* at 4:20-28) (citations omitted). The Court found that these "facts are material to the question of whether [Plaintiffs] were properly classified as exempt employees," and "because these material facts are the same for all Plaintiffs, the Plaintiffs are 'alike with regard to some material aspect of their litigation.'" (*Id.* at 5:1-6) (quoting *Campbell*, 903 F.3d at 1114). Although the Court acknowledged Plaintiffs' divergent testimony regarding their primary responsibilities, the Court declined to consider this evidence on the ground that "these factual

dissimilarities do not defeat collective treatment where the Plaintiffs are alike on '*some* material aspect of their litigation.'" (*Id.* at 5:18-27) (quoting *Campbell*, 903 F.3d at 1114).

The Court's application of the *Campbell* standard makes clear that this case presents important issues that *Campbell* clearly does not resolve.

The unresolved issue centers on how the second stage "similarly situated" inquiry operates when the dispositive merits issue itself requires individualized factual determinations. In this case, the dispositive merits issue is the applicability of one or more of the FLSA's exemptions. Whether a specific exemption applies ultimately turns on whether the Plaintiffs' "primary duty" is the performance of the type of work, duties, and activities considered exempt under the regulations. And that question can only be answered after a holistic review of the job duties each Plaintiff actually performs, day to day, considering things like the relative importance of the exempt duties as compared with other types of duties, the amount of time spent performing exempt work, the employee's relative freedom from direct supervision, and the relationship between the employee's salary and the wage paid to other employees for the kind of nonexempt work performed by the employee.

Towards that end, *Campbell* instructs a district court to determine whether plaintiffs are similarly situated with respect to a "material aspect" of their litigation and explains that "what matters is not just *any* similarity between the party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiffs' claims, in the sense of having the potential to advance these claims, collectively, to some resolution." But *Campbell* does not explain what constitutes the relevant "material aspect" in a case like this. Is the material aspect any common factual characteristic shared by the Plaintiffs, or is it the issue that will ultimately determine liability? If the former, what degree of common proof is sufficient to satisfy the similarly situated requirement? Nor does *Campbell* provide guidance regarding the significance of material *differences*. At what point do they become sufficiently significant to require decertification? Clarification on these issues would materially affect not only this case, but future FLSA misclassification cases involving individualized exemption analyses.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

## II. STANDARD FOR CERTIFICATION

The County seeks certification of the Court's decertification Order for interlocutory review pursuant to 28 U.S.C. § 1292(b) because the Order: (1) "involves a controlling question of law" (2) "as to which there is substantial ground for difference of opinion" and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

## III. ARGUMENT

### A. <u>The Order Involves a Controlling Question of Law.</u>

A "controlling" question of law is merely one the resolution of which "could materially affect the outcome of the litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982). The issue need not be "dispositive of the lawsuit in order to be regarded as controlling" but cannot be "collateral to the basic issues of [the] case." *United States v. Woodbury*, 263 F.2d 784, 787-88 (9th Cir. 1959).

The Court's decertification Order involves a controlling question of law because it goes to the very nature of this suit – whether, at the second stage of an FLSA collective action, Plaintiffs are "similarly situated" such that a factfinder could collectively determine whether Plaintiffs are exempt employees. At a high level, *Campbell* establishes the standard as to what it means for employees to be similarly situated and makes clear that dissimilarities which are *immaterial* to the resolution of their case should not defeat collective treatment where similarities exist which are *material* to the resolution of their case. But in a misclassification case like this, where there exists both similarities and dissimilarities which are material to the resolution of Plaintiffs' case, *Campbell* is silent on the type and degree of collective proof required to satisfy the standard it espouses.

Should *Campbell* be interpreted as allowing a district court to identify any factual similarity which bears on, but does not answer, the ultimate liability question of whether plaintiffs are exempt, and to ignore the numerous factual dissimilarities which also bear on, but do not answer, the ultimate liability question? In other words, where the ultimate liability question turns on whether plaintiffs satisfy the applicable criteria for one or more of the

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FLSA's exemptions, a question which itself turns on an analysis of numerous individualized factors in light of the actual job duties each plaintiff performs, does *Campbell* permit the conclusion that employees are similarly situated, and may proceed as a collective, where there is substantial evidence that they all perform any one similar job duty, or where their job duties are of the same type, as the Court found here?

The County respectfully submits that if this is the correct reading of *Campbell*, it is difficult to see how a district court could ever decertify an FLSA misclassification collective, as virtually every misclassification case involves some common facts regarding job characteristics or baseline responsibilities. Yet the exemption analysis requires district courts to determine an employee's actual primary duties, which often necessitates individualized factual inquiries. If the existence of any common factual dispute is sufficient to satisfy *Campbell*, then the second-stage inquiry risks becoming largely meaningless in exemption cases because decertification would rarely, if ever, be appropriate. It is the County's position that *Campbell* did not intend for a multi-factor exemption case like this to proceed as a collective based on a commonality of facts that are relevant to the exemption analysis but that are not determinative of the ultimate liability question of whether an employee is or is not exempt.

Guidance from the Ninth Circuit as to how a district court should identify which facts are material, how to weigh material similarities and dissimilarities, and whether material similarities need only bear on the resolution of the case or instead must answer the ultimate liability question, will affect the conduct of this action. To be clear, the County is not asking the Ninth Circuit to determine whether Plaintiffs are exempt or to reweigh the evidence. Nor is the County arguing that the district court improperly resolved disputed facts. Rather, the County is asking that the Ninth Circuit clarify the legal framework established in *Campbell* – specifically, how district courts should apply the second stage "similarly situated" inquiry when the dispositive issue requires individualized factual determinations regarding each employee's actual job duties.

/

/

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

### *1. In Exemption Cases Like This, The Material Issue is Each Employee's Actual "Primary Duty"*

This case turns on whether Plaintiffs were properly classified as exempt under the FLSA's executive, administrative, or highly compensated employee exemptions. Under these exemptions, certain employees are exempt from the FLSA's wage protections based on the nature of their primary duties within the job. 29 U.S.C. § 213(a)(1). An employee's "primary duty" is "the principal, main, major or most important duty that the employee performs . . . with a major emphasis on the character of the employee's job as a whole." 29 C.F.R. §541.700(a). Relevant factors to consider in determining an employee's primary duty include: "the relative importance of the exempt duties as compared with other types of duties," "the amount of time spent performing exempt work," "the employee's relative freedom from direct supervision," and "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.*

Exempt workers include executive employees whose primary duty is "management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof," administrative employees whose primary duty is "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and "includes the exercise of discretion and independent judgment with respect to matters of significance," and highly compensates employees whose primary duty "includes performing office or non-manual work." 29 C.F.R. §§ 541.100(a), 541.200(a), 541.601(a), (d).

However, under 29 C.F.R. § 541.3(b) (the "First Responder Regulation"), the executive, administrative, and highly compensated employee exemptions do not apply to "police officers" and "similar employees" who perform work such as "preventing or detecting crimes," "conducting investigations or inspections for violations of law," "performing surveillance," pursuing, restraining and apprehending suspects," detaining or supervising suspected and convicted criminals," "interrogating and fingerprinting suspects," "preparing investigative reports," or "other similar work." 29 C.F.R. §541.3(b). These employees are not

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

exempt because "their primary duty is not management of the enterprise," nor is it their "performance of work directly related to the management or general business operations of the[ir] employer," nor is it "performing office or non-manual work." *Id. See also Defining and Delimiting the Exemption for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 Fed. Reg. 22122-01, 22129-22130 (April 23, 2004) ("Preamble").

Importantly, the First Responder Regulation does not eliminate the primary duty test when determining the exempt status of patrol lieutenants like Plaintiffs. *See Mullins v. City of New York*, 653 F.3d 104, 119 (2d Cir. 2011) (applying the primary duty test in conjunction with the first responder regulation); *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 827 (10th Cir. 2012) (holding that the first responder regulation does not alter the primary duty test); *Morrison v. County of Fairfax*, 826 F.3d 758, 767 (4th Cir. 2016) (explaining that the first responder regulation clarifies, but does not displace, the primary duty test); *Escribano v. Travis County*, 947 F.3d 265, 268 n.4 (5th Cir. 2020) (explaining that whether an employee's primary duty is management determines both the executive and application of the first responder regulation); *Schroeder v. City of Vista*, 832 F. Supp. 3d 1093, 1102-05 (S.D. Cal. 2024) (compiling cases and concluding that "the plain language of the [first responder] regulation evinces that an employee's primary duties remain the determinant of exempt status").

Accordingly, "the [first responder] regulation does not state that any worker within the [law enforcement] field or any worker who performs any level of [police work] is automatically non-exempt." *Schroeder*, 832 F. Supp. 3d at 1104 (citation omitted). Rather, "by explaining that frontline [] [law enforcement officers] are non-exempt *because* their primary duty is not executive or administrative—in other words, exempt in nature—the regulation affirms that exempt status remains determined by a worker's primary duties." *Id.* (emphasis in original).

### 2. *Campbell Does Not Explain What Type and Degree of Collective Proof Is Sufficient to Determine Whether Plaintiffs Are Similarly Situated with Respect to their Primary Duty*

*Campbell* directs district courts to analyze decertification based on whether the

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

plaintiffs are "alike with regard to some material aspect of their litigation." *Campbell*, 903 F.3d at 1114. *Campbell* makes clear however that "what matters is not just *any* similarity between party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiffs' claims, in the sense of having the potential to advance these claims, collectively, to some resolution." *Id.* at 1114-15.

As set forth above, the ultimate issue of Plaintiffs' exempt status turns on whether Plaintiffs' primary duties are exempt or non-exempt in nature – that is the issue material to the resolution of Plaintiffs' claims. For purposes of decertification, the critical question is whether Plaintiffs are similarly situated as to their primary duty. Collective treatment of that question is only appropriate if, based on the evidence, a fact finder could properly conclude that Plaintiffs' primary duty is performing first response and similar tasks *because* the Plaintiffs' primary duty is not performing managerial, administrative, or office or non-manual work.

Although the First Responder Regulation does not alter the primary duty analysis, *see Schroeder*, 832 F. Supp. 3d at 1102-1105, Plaintiffs must establish that they at least perform first responder tasks to invoke the regulation as a basis for their misclassification. To that extent, collective proof that Plaintiffs perform such tasks does bear on the question of their exempt status. However, without more, collective proof that Plaintiffs simply perform some first responder duties says little about whether those duties are Plaintiffs primary duties.

In this case, the Court applied *Campbell* and found that Plaintiffs consistently testified that "they are required to respond to all high-level patrol calls and report as first responders in the field for all such calls, *i.e.*, baseline responsibilities, and the fact that they all must "(1) be uniformed at all times, including wearing body-worn cameras and the same equipment as deputies, (2) log into the CAD system at the start of their shift to ensure dispatch is aware they are available for calls, and (3) monitor the radio to ensure they are alerted to calls," *i.e.*, common job characteristics. (Doc. 190, at 4:20-5:6). The Court determined that these "facts are material to the question of whether they were properly classified as exempt employees" and stopped its analysis there, despite acknowledging Plaintiffs' varying testimony regarding "their primary responsibilities." (Doc. 190, at 4:20-5:27).

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

The Court's analysis exposes important questions that *Campbell* does not answer in exemption cases like this: When the resolution of plaintiffs' exemption status turns on their primary duty, is the district court required to consider only whether the record bears substantial evidence of similarity regarding the plaintiffs' job duties, or must the district court also make a finding that the record bears substantial evidence that would allow a fact finder to conclude that those job duties are the plaintiffs' primary duties? If the former, do plaintiffs satisfy *Campbell's* "similarly situated" standard with substantial evidence of similarity regarding any relevant job duty to the exclusion of substantial evidence of dissimilarity regarding other relevant job duties?

These issues are important and should be clarified because they bear on the type and degree of evidence that is sufficiently probative of collective-wide liability. The dispositive liability question turns on each Plaintiff's actual primary duty. This Court found that Plaintiffs are similarly situated because they all respond to high-level calls as first responders, all wear a uniform, all log into the CAD system, and all monitor the radio. The County respectfully submits that this is not the type or degree of common proof that *Campbell* contemplates to resolve the issue of each Plaintiff's primary duty, and this case would not proceed as a collective action but for this Court's adherence to *Campbell's* instruction to ignore dissimilarities which abound in exemption cases such as this. This Court's adherence to *Campbell* thus has a significant impact over the scope of this litigation and trying this action on a "representative basis" where the issue centers on individualized primary duty analyses of Plaintiff Houck and 20 opt-in Plaintiffs and the applicability of multiple exemptions, multiple criteria, and multiple factors.

### B. <u>There Is a Substantial Ground for Difference of Opinion with Respect to the Controlling Question of Law</u>

A "substantial ground for difference of opinion" means that the question is not definitively settled by prior case law – a "novel legal issue[] . . . on which fair-minded jurists might reach contradictory conclusions." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). To make this determination, "courts must examine to what extent the controlling

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

law is unclear." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

There is little precedent in this Circuit applying *Campbell* at the decertification stage, and few of those cases apply *Campbell* in a pure misclassification case such as this. Those cases that do exist, none of which involved the First Responder Regulation, establish that there is substantial ground for difference of opinion as to what courts consider to be the relevant "material aspect" in misclassification cases, and the requisite type and degree of common proof that is required of plaintiffs to satisfy their burden of proving that they are similarly situated at the decertification stage.

For example, in *Guanzon v. Vixxo Corp.*, a case alleging misclassification and non-payment of overtime compensation under the FLSA, the district court decertified the collective after finding that the plaintiffs did not satisfy *Campbell's* "similarly situated" standard with respect to the third element of the FLSA's administrative exemption. No. CV-17-01157-PHX-DWL, 2019 WL 1586873, at *7 (D. Ariz. Apr. 12, 2019). The defendant in *Guanzon* argued that the plaintiffs were properly classified as exempt under the administrative or executive exemptions. *Id.* at 4. Before addressing the parties' decertification-related arguments, the district court first identified "the substantive FLSA issues that are at issue in this case," which it determined was the "the applicability of the FLSA's 'administrative exemption.'" *Id.* Importantly, the district court did not identify the applicability of the FLSA's executive exemption as a substantive issue "in light of its conclusion regarding the administrative exemption." *Id.* at *4, n.2.

Turning to the elements of the administrative exemption, the district court explained that the first element was not in dispute because the parties agreed that all plaintiffs met the minimum salary requirement. *Id.* at *4. With respect to the second element, the defendant conceded that "all 37 plaintiffs *are* similarly situated" because the parties agreed that all plaintiffs performed the same primary job duty; the only dispute between the parties regarding the second element was whether the plaintiffs' primary job duty "related to the management or general business operations of the employer or the employer's customers." *Id.* at *4-5. The district court therefore identified the "critical question" in the case to be whether the third

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

element of the FLSA's administrative exemption is satisfied, which requires that each plaintiff's "primary duties included the exercise of discretion and independent judgment with respect to matters of significance." *Id.* After narrowing the issues, the district court concluded that "[t]he decertification analysis here turns on whether the 37 plaintiffs are similarly situated with respect to the amount of discretion they possessed—that is the issue that is 'material to the resolution of the party plaintiffs' claims.'" *Id.* at *5 (quoting *Campbell*, 903 F.3d at 1114-15).

In support of decertification, the defendant in *Guanzon* "identified seven different job functions as to which the plaintiffs provided divergent deposition testimony concerning the degree of discretion they possessed" and "also cited case law suggesting those job functions can trigger the administrative exemption if performed with a sufficient degree of discretion." *Id* at *6. In response, the plaintiffs only addressed three of the seven job functions and did not dispute the defendant's legal arguments concerning whether those functions can trigger the administrative exemption. *Id.* After reviewing the evidence, the district court found that the plaintiffs had "provided divergent testimony concerning whether they had discretion" with respect to the seven job duties identified by the defendant. *Id.* at *7. The district court explained that "*[t]hese aren't immaterial differences*—they go to the heart of the merits issue to be decided at trial, which is whether each [plaintiff] was properly classified as exempt under the administrative exemption because he or she had a 'primary duty that includes the exercise of discretion and independent judgment with respect to matters of significance.'" *Id.* (emphasis added). Consequently, the district court could not conclude that "the 37 plaintiffs are 'similarly situated' in a manner that would justify their claims in a collective action." *Id.*

In *Weeks v. Matrix Absence Manag. Inc.*, another case alleging misclassification and non-payment of overtime compensation under the FLSA, the district court decertified the collective after finding that the plaintiffs did not satisfy *Campbell's* "similarly situated" standard with respect to the third element of the FLSA's administrative exemption. No. CV-20-00884-PHX-SPL, 2022 WL 17104261, at *3 (D. Ariz. Nov. 22, 2022). Unlike in *Guanzon*, the defendant only argued that the plaintiffs were properly classified as exempt under the

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

administrative exemption. *Id.* at *2. But like in *Guanzon*, the parties agreed that the plaintiffs satisfied the first element. *Id.* And also like in *Guanzon*, the parties agreed that each plaintiff performed the same primary job duties relevant to the second element and only disagreed as to whether those primary job duties satisfied that element. *Id.* Thus, the district court identified the third element of the administrative exemption as the only material disputed issue in the case. *Id.*

In support of decertification, the defendant in *Weeks* identified six job functions for which the plaintiffs' testimony varied widely regarding their levels of discretion in performing those tasks. *Id.* The district court found that these differences "are material as they go to whether or not the third element is met and thus whether the administrative exemption applies. *Id.* at *3 (citing *Guanzon*, 2019 WL 1586873, at *6-7). The plaintiffs countered that "common proof shows that [plaintiffs] 'had no policy making authority, did not carry out major assignments of the business, negotiate or bind the company with respect to significant matters,'" and cited to deposition testimony concerning "a laundry list of specific tasks that [plaintiffs] do not perform." *Id.* The district court rejected this argument, observing that "the third element of the administrative exemption is concerned with an employee's primary duty—not what the employee does not do." *Id.* In decertifying the collective, the district noted that "the *Campbell* standard focuses more on similarities than differences," but the plaintiffs had "failed to demonstrate any material factual or legal similarities within the collective class." *Id.*

And in *Richter v. AutoZoners, LLC*, another case alleging misclassification and non-payment of overtime compensation under the FLSA, the district court denied decertification of the collective after finding that the plaintiffs satisfied *Campbell's* "similarly situated" standard with respect to the second and fourth elements of the FLSA's executive exemption. No. CV-22-47-M-DLC, 2026 WL 657813, at *3-5 (D. Mont. Mar. 9, 2026). In *Richter*, the parties agreed that the plaintiffs met the first and third elements of the executive exemption. *Id.* at *3. The district court thus began its analysis with the second element, which requires that an employee's "primary duty" is management. *Id.* at *4. The district court identified the

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

various "management" activities enumerated in the federal regulations and the various factors relevant to determining whether such activities constitute an employee's "primary duty." *Id.* The district court then identified the plaintiffs' consistent deposition regarding the specific job duties they perform and the various factors bearing on the primary duty analysis. *Id.* Based on its "thorough review of the record," the district court found that it "bears substantial evidence that would allow a fact finder to conclude that Plaintiffs are similarly situated as to their primary duty." *Id.*

Turning to the fourth element of the executive exemption, the district court found that "[t]he record likewise contains substantial evidence that either Plaintiffs lack authority to hire and fire, or that their recommendations on such decisions are not given particular weight." *Id.* The district court ultimately concluded that "based on the substantial evidence in the record, a trier of fact could properly conclude that Plaintiffs are similarly situated in that they share common questions of law and fact central to the FLSA claims," namely, that "Plaintiffs' primary duty was not management, but rather sales and other menial tasks," and that "Plaintiffs either lacked authority to hire or fire, or district managers did not afford Plaintiffs opinion significant weight in deciding whether to hire or fire employees." *Id.* at *5.

The above cases demonstrate conflicting authority regarding the treatment of FLSA exemptions under *Campbell* in the decertification analysis. *Campbell* instructs that plaintiffs are "similarly situated" where they are alike with regard to "some *material* aspect of their litigation," and "[i]f the party plaintiffs' factual or legal similarities *are* material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment. *Campbell*, 903 F.3d at 1114. In both *Guanzon* and *Weeks*, the defendants conceded that the plaintiffs were alike with regard to the second element and proving that element at trial was material to the ultimate liability question of whether the executive exemption applied. Nevertheless, those district courts proceeded to conduct a similarly situated analysis as to the third element and ultimately determined that the plaintiffs did not satisfy *Campbell* because of their dissimilarities bearing on that element.

Moreover, the district court in *Guanzon* did not proceed to analyze whether the plaintiffs were similarly situated with respect to any of the elements of the executive exemption *because* the plaintiffs were not similarly situated with respect to one of the elements of the administrative exemption. Whereas in *Richter*, the district court proceeded to analyze whether the plaintiffs were similarly situated with respect to the fourth element of the executive exemption even though it had already determined that the plaintiffs were similarly situated with respect to the second element of that exemption. Further, both *Guanzon* and *Weeks* performed the decertification analysis with respect to one element of one exemption, neither of which required an analysis of the plaintiffs' primary duty, whereas *Richter* performed the decertification analysis with respect to two elements of one exemption, one of which concerned the plaintiffs' primary duty, and analyzed whether the plaintiffs were similarly situated as to the primary duty factors.

Thus, these cases make clear what *Campbell* does not clarify in misclassification cases: where does the similarly situated analysis start and end, what is the aspect material to the litigation, and what degree of common proof is sufficient to satisfy its standard. These questions are exemplified in this case, where the ultimate liability question is the applicability of the executive, administrative, and highly compensated exemptions for which the parties dispute multiple elements for each exemption, including the primary duty element for each exemption, which itself requires an analysis of multiple factors that the parties also dispute. Under *Campbell*, was the Court here required to find similarity concerning only some job duties, as it did, similarity concerning just one element of one exemption, similarity concerning all elements of one exemption, or similarity concerning all elements of all exemptions? Under *Campbell*, was the Court here required to disregard all dissimilarities upon the finding of any material similarity, as it did, or to consider whether the dissimilarities are themselves material?

It is clear that there is substantial ground for difference of opinion on how district courts are to apply *Campbell's* "similarly situated" standard at the decertification stage.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

**C. <u>An Immediate Appeal from the Order Will Materially Advance the Ultimate Termination of the Litigation</u>**

Last, section 1292(b) requires a determination that resolution of the question presented "may materially advance the ultimate termination" of the case, 29 U.S.C. §1292(b), or "avoid protracted and expensive litigation." *In re Cement Antitrust Litig.*, 673 F.2d at 1026. It need not be certain that resolution of the issue would advance the end of the litigation; its resolution need only have a substantial effect on the rights of the parties during the pendency of litigation. *Woodbury*, 263 F.2d at 787.

Here, an immediate appeal of the Court's decertification Order will materially advance the termination of this litigation. If clarification from the Ninth Circuit leads to a reversal of the Court's Order, this case will proceed to trial on only the claims of the named Plaintiff Houck. A trial of one individual's claims for overtime will be straightforward and take little time to conclude, as compared to the considerable time and resources that will be expended by litigating a collective trial involving 21 individuals and the analysis of multiple factors bearing on multiple elements of multiple exemptions. The Decertification Order discussed the facts and concluded that the Plaintiffs in this case were similarly situated on minimal facts it deemed material, despite acknowledging the many differences among the Plaintiffs that are also material to the disposition of their claims. Given the lack of precedent within and between district courts in this circuit applying *Campbell* in a misclassification case at the decertification stage, guidance from the Ninth Circuit as to the type and degree of commonality sufficient to satisfy *Campbell's* "similarly situated" standard will materially advance this litigation and how best to try this case if it should remain a collective.

**D. <u>This Court Should Stay the Case Pending Resolution of the Interlocutory Appeal</u>**

Because certification of a question for interlocutory appeal does not automatically stay proceedings in the district court, section 1292(b) authorizes a district court to grant a stay at its discretion. *Watson v. Yolo Cnty. Flood Control and Water Conservation Dist.*, No. 2:06-cv-1549-FCD-DAD, 2007 WL 4107539, at *2 (E.D. Cal. Nov. 16, 2007) ("by statute, this court has authority to stay the proceedings pending interlocutory appeal"). The district court has "broad

discretion" to enter a stay in light of an interlocutory appeal. *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1094 (E.D. Cal. 2008). "A trial court . . . may find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983). District courts also have inherent authority to stay cases on their dockets. *Fitrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972).

Here, depending on what guidance the Ninth Circuit may give about potential decertification of Plaintiffs' FLSA claims may well alter the direction of the current proceedings entirely. Discovery is complete, and no dispositive motions remain pending. The only remaining aspect of this litigation is the trial of Plaintiffs' claims. Should the Ninth Circuit determine that Plaintiffs' collective should be decertified, then the trial of their collective claims will be futile. For those reasons, it would be a waste of judicial and party resources to continue with the FLSA-based claims while awaiting a ruling from the Ninth Circuit clarifying whether this case is properly certified as a collective.

## IV. CONCLUSION

For all the foregoing reasons, the Court should certify its July 24, 2026 Order pursuant to 28 U.S.C. §1292(b) and stay the case pending resolution of the proposed appellate proceedings.

DATED this 9th day of September 2026.

FISHER & PHILLIPS LLP

By s/ Shayna Balch Santiago
Shayna Balch Santiago
Lori A. Guner
David G. Myers
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
Attorneys for Defendants

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

Ty D. Frankel
Frankel Syverson PLLC
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
ty@frankelsyverson.com
Attorneys for Plaintiff

Patricia N. Syverson
Frankel Syverson PLLC
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
patti@frankelsyverson.com
Attorneys for Plaintiff

s/ Lori A. Guner

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400