FRANKEL SYVERSON PLLC
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
602-598-4000
Ty D. Frankel (027179)
ty@frankelsyverson.com

9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
602-598-4000
Patricia N. Syverson (020191)
patti@frankelsyverson.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Christopher J. Houck, on behalf of himself and all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Maricopa County,<br><br>Defendant. | Case No. 2:23-cv-00068-DGC<br><br>**JOINT MEMORANDUM REGARDING TRIAL MANAGEMENT** |

Plaintiff Christopher J. Houck and Defendant Maricopa County (collectively the "Parties"), by and through their undersigned counsel, hereby submit this joint memorandum regarding trial management issues in compliance with the Court's November 2, 2026 Order (Doc. 207).

**<u>Plaintiffs' Position</u>**

Plaintiff respectfully submits that this case can be tried fairly and efficiently within the approximately thirty hours per side contemplated by the Court's November 2, 2026

Order (Doc. 207). Plaintiff anticipates calling approximately thirty-two witnesses at trial, including the Named Plaintiff, Opt In Plaintiffs, Captains, County human resources employees, among others disclosed in this case. Although the number of witnesses is substantial, Plaintiffs agree with the Court that once the jury understands the common factual and legal issues, individualized testimony can be relatively brief and focused on the facts relevant to each Plaintiff's exemption status and hours worked.

**Trial length and bifurcation**

Plaintiff opposes Defendant's request for seventy-five hours per side and its alternative proposal to bifurcate the trial. The Court expressly rejected Defendant's prior estimate of a 55-day trial as entirely unreasonable and indicated that approximately thirty hours per side should be sufficient. Defendant's current proposals do not adequately account for the efficiencies identified by the Court, including focused testimony, preliminary jury instructions, and stipulations.

Bifurcation would also unnecessarily complicate the proceedings, duplicate testimony, and prejudice Plaintiffs. The FLSA does not establish a hierarchy requiring the primary duty analysis including the first responder regulation to be litigated before the remaining executive exemption elements, and in fact, the first responder regulation simply influences the analysis of the application of the exemptions at issue. Importantly, Defendant has the burden to prove each exemption as a whole and if Defendant cannot satisfy each of the elements of the exemptions, Plaintiffs are not exempt regardless of whether the first responder regulation applies.

For example, the executive exemption requires more than a finding that an employee performed certain management duties. Defendant must also establish the other applicable requirements, including the requisite supervisory responsibilities and hiring or firing authority, or recommendations given particular weight. Similarly, the administrative exemption requires proof that the employee's primary duty involves qualifying office or nonmanual work and the exercise of discretion and independent judgment with respect to matters of significance. The highly compensated employee exemption likewise requires,

among other things, that the employee's primary duty include office or nonmanual work. The first responder regulation must be considered in evaluating Defendant's asserted exemptions, but the jury's rejection of Plaintiffs' first responder position would not itself establish that Defendant has satisfied its burden to prove the exemption.

Furthermore, the evidence concerning Plaintiffs' actual duties, supervisory responsibilities, discretion, assignments, and hours[1] overlaps substantially among Defendant's three asserted exemptions. Separating the primary duty determination from the remaining exemption elements and damages issues would cause duplicative testimony and prejudice Plaintiff by confusing the jury regarding the application of Defendant's burden to prove its affirmative defenses, which includes proving each of the elements of the defense as well as accounting for how the first responder regulation impacts the exemption analysis. The jury's determination that a Plaintiff does not fall within the first responder regulation would not establish that Defendant has proven the elements of an applicable exemption. Plaintiff submits that a unified trial with appropriate jury instructions and verdict forms would be more efficient and would eliminate the prejudice caused by Defendant's attempt to shift its burden on the affirmative defense to Plaintiff by improperly requiring Plaintiff to first prove that the Patrol Lieutenants are first responders.

**Stipulations**

Plaintiff agrees that stipulations can significantly reduce trial time. Consistent with the Court's Order, Plaintiff is willing to stipulate to undisputed employment dates, assignments, compensation records, and the foundation and admissibility of appropriate documents. However, Defendant's proposed stipulations go substantially beyond undisputed facts and would require Plaintiff to concede contested elements of Defendant's affirmative defenses. These include whether Plaintiffs managed recognized departments, possessed qualifying hiring or firing authority, exercised discretion and independent

---

[1] In fact, Plaintiff's hours worked even impacts the exemption analysis, considering that the amount of time they performed different duties is a factor for consideration regarding their primary duty.

judgment on matters of significance, and performed work directly related to management or general business operations. Plaintiffs should not be required to concede these disputed issues merely to streamline trial. The parties can instead stipulate to specific underlying activities without agreeing to their legal characterization.

Importantly, the prima facie case that the Patrol Lieutenants have the burden of proving can be established largely by stipulation between the parties as outlined below. The central dispute at trial will be whether the County has satisfied its burden of proving its affirmative defenses as to each of the Plaintiffs and the amount of hours that each Plaintiff worked. Plaintiff believes that nearly all the documents and records that the parties will rely on in the case can be stipulated to regarding foundation, further streamlining the trial. For example, Plaintiff believes that the parties should stipulate to the foundation of the payroll records, County records like policies, body cam footage, and other documents, and numerous other documents that were utilized as exhibits during depositions in which the testifying witness laid the foundation. The parties should work together to stipulate regarding the foundation of the precise exhibits that they intend to use at trial to avoid the jury having to listen to testimony that could be avoided during the trial.

The parties agree that the following issues can be stipulated to:

1. The Patrol Lieutenants are employed by the County and their work is covered by the FLSA.
2. The Patrol Lieutenants are classified as exempt and not paid overtime.

Although Defendant disagrees, Plaintiff maintains that the following issues could be stipulated to as well:

3. The Patrol Lieutenants worked more than forty hours in one or more workweeks.
4. The County had actual or constructive knowledge of overtime worked by the

Patrol Lieutenants.[2]

5. The parties can stipulate regarding the Patrol Lieutenants' salaries earned in which periods, which in turn would establish which weeks the highly compensated exemption cannot apply regardless of their job duties.
6. The parties can stipulate that the County had knowledge of overtime worked by the Patrol Lieutenants.
7. The parties can stipulate about the dates that each Plaintiff worked as a Patrol Lieutenant and the districts within Patrol Bureaus East and West that they worked in during their time as Patrol Lieutenant.

Plaintiff cannot stipulate to the facts in Defendant's section at this time but commits to working cooperatively with Defendant regarding factual stipulations that would streamline the trial. Plaintiff cannot stipulate to legal conclusions on disputed issues like Defendant is currently requesting.

**Presentation of witnesses**

Plaintiff proposes that witnesses testify only once, with both parties permitted to develop testimony relevant to their respective claims and defenses during that appearance. Plaintiff would examine a witness; Defendant would be permitted to elicit evidence supporting its affirmative defenses during its examination of the witness; Plaintiff would then be given appropriate opportunity to respond. This procedure would preserve both parties' rights while avoiding unnecessary witness recalls. Plaintiffs do not oppose a neutral jury instruction explaining this procedure. Plaintiff further proposes that the jury receive preliminary instructions concerning the asserted exemptions, the first responder regulation, and the parties' respective burdens of proof. As the Court suggested, this would allow individual testimony to focus on material differences rather than repeatedly establishing the same legal and factual framework.

---

[2] The jury should only have to decide whether the Patrol Lieutenants are entitled to overtime and the amount of hours that they worked. The parties can complete the calculations regarding damages from the jury's determination of the hours worked and their rates of pay after the conclusion of trial.

**Documentary evidence and summaries**

Plaintiff believes that the parties can substantially streamline trial by stipulating to the foundation of payroll records, County policies, job descriptions, body-camera footage, and other relevant documents. Plaintiff is also amenable to appropriate summaries of voluminous records under Federal Rule of Evidence 1006. However, Defendant's proposed summaries of deposition testimony and purportedly undisputed summary judgment facts must satisfy the applicable evidentiary requirements and should not present contested matters as established facts or law.

**Supplemental discovery**

Defendant now requests leave to conduct discovery "including depositions" of any opt in plaintiffs who were not previously deposed. When Defendant previously raised this issue with respect to trial management, Defendant only requested the opportunity to take their deposition and did not request discovery beyond that. Doc. 193 at 10. Plaintiff will stipulate to reopening discovery for the limited purpose of taking the depositions of opt in plaintiffs who remain in the litigation and have not yet been deposed, which is consistent with Defendant's original request in this regard. Those depositions should be limited to three hours, which is consistent with the Court's Order regarding depositions of the opt in plaintiffs who were already deposed. Doc. 48 at ¶ 3. There is no need for discovery beyond the depositions, which would cause unnecessary delay. Nearly every piece of information that the County claims it needs in additional written discovery, such information regarding their districts or captains, is the type of information the County already has access to. Anything else they are concerned about, such as off duty assignments and duties, can be asked about during the deposition.

**Trial dates**

Plaintiff is available for trial starting in May 2027 other than the following weeks:

- The week of May 24, 2027;
- The week of August 9, 2027.

**Request for settlement conference or mediation**

Plaintiff appreciates the Court's request for suggestions on how the case can be resolved fairly and efficiently. Plaintiff believes that mediation could be worthwhile and respectfully asks the Court to order the parties to attend a settlement conference or private mediation.

**<u>Defendants' Position</u>**

Defendant proposes that the greatest trial efficiencies can be achieved through stipulations narrowing the disputed issues and bifurcation focusing the initial presentation on the Lieutenants' primary duties. To explain the potential savings and the scope of proof otherwise required, Defendant first outlines the requirements of each asserted exemption and the primary-duty analysis, followed by its proposals for streamlining trial.

**Exemption Requirements and Primary Duty**

Absent stipulations narrowing the issues, Defendant must present evidence supporting each element of its asserted exemptions, in addition to addressing Plaintiffs' first-responder theory, primary duty analysis, hours worked, damages, and other issues:

- **Executive Exemption**: To prove the lieutenants qualify under the executive exemption, Defendant must establish: (1) the lieutenants were compensated on a salary basis at not less than $684 per week; (2) their primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) the lieutenants customarily and regularly direct the work of two or more other employees; and (4) the lieutenants have the authority to hire or fire other employees or their suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a).
- **Administrative Exemption:** To prove the lieutenants qualify under the administrative exemption, Defendant must establish: (1) the lieutenants were compensated on a salary basis at not less than $684 per week; (2) their primary

duty is the performance of office or non-manual work directly related to the management or general business operations of the employer; and (3) their primary duty includes the exercise of discretion and independent judgment with matters of significance. 29 C.F.R. § 541.200(a).

- **The Highly Compensated Exemption**: This exemption applies if: (1) "the employee receives total annual compensation" of set amounts proscribed under the rules; and (2) "the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative, or professional employee." 29 C.F.R. §541.601(a). At all times relevant to this case, the highly compensated emption has remained at $107,432.
- **Primary Duty Analysis:** The parties also need to offer evidence and testimony regarding the primary duty analysis. "An employee's "primary duty" is the "principle, main, major or most important duty that the employee performs" after analyzing "all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a). Each Plaintiff must perform exempt work as their primary duty but performing both exempt and non-exempt work does not necessary defeat exempt status. 29 C.F.R. § 541.106(a)–(b). Generally, an employee satisfies the primary duty requirement if he spends more than 50 percent of his time performing exempt work, but "[e]mployees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." § 541.700(b). Factors to consider regarding an employee's primary duty include: (1) "the relative importance of the exempt duties as compared with other types of duties," (2) "the amount of time spent performing exempt work;" (3) "the employee's relative freedom from direct supervision;" and (4) "the relationship between the employee's salary and the wages paid to other

employees for the kind of nonexempt work performed by the employee." § 541.700(a).

**Bifurcation:** Defendant submits that the best opportunity to streamline trial on the numerous above issues is to bifurcate issues and first resolve the central dispute concerning the Lieutenants' actual duties: whether their primary duty consisted of management or administrative work, as Defendant contends, or first-responder work, as Plaintiffs contend. A first phase focused on the disputed duties issues relevant to the executive, administrative, and highly compensated employee exemptions could substantially reduce the evidence necessary to resolve this case. That phase could exclude evidence directed solely to hours worked, damages, salary basis, compensation thresholds, and other discrete exemption requirements reserved for subsequent determination.

Although the parties did not previously propose this approach, their present positions warrant renewed consideration of bifurcated proceedings. Plaintiffs propose to focus their presentation on first-responder duties, hours worked, and damages, while requiring Defendant to establish independently every requirement of its three affirmative defenses. With 22 opt-in Plaintiffs, potentially up to 15 captains called as witnesses, and five additional human-resources or management witnesses, that approach would require extensive testimony on issues beyond the central duties dispute. Addressing all of those subjects within the court's proposed allocation of 30 hours per side presents substantial practical difficulties.

Under Defendant's proposal, the jury would first determine the primary duty for each opt in, taking into account the potential material differences among Lieutenants, assignments, and relevant periods. To the extent the findings foreclose the asserted exemptions, the remaining proceedings could focus on hours worked and damages. To the extent they support an exemption, any remaining requirements of that exemption would be resolved before proceeding to hours and damages. This could avoid substantial testimony and calculations concerning damages for claims ultimately resolved by an exemption.

**Stipulations:** An even greater efficiency would result from combining bifurcation with stipulations concerning underlying facts that should not require trial testimony. During discovery, the opt-in Plaintiffs testified about their compensation, supervisory responsibilities, daily work, discretion, and assignments. Defendant contends that numerous corresponding facts were not disputed in Plaintiffs' response to Defendant's Statement of Facts submitted with its Motion for Summary Judgment. Identifying which of those facts can be stipulated would permit the parties to direct trial time to the matters actually contested.

Defendant therefore proposes factual stipulations itemized below. Absent a stipulation, Defendant must allocate sufficient time to present evidence supporting each remaining requirement of its affirmative defenses, as well as its positions concerning hours worked and damages.

***<u>Proposed Stipulations of Fact/Law</u>***

1. All of the patrol lieutenants earned a salary basis of at least $684 per week at all times relevant to this case.

2. The highly compensated salary threshold was satisfied for the following opt ins for the following years: [Defendant proposes that the parties come to an agreement for each opt in for relevant years]

3. Each of the opt ins managed customarily recognized departments or subdivision within MCSO

4. Each of the opt ins customarily and regularly directed the work of two or more other employees at all times relevant to this case.

5. All of the patrol lieutenants perform certain daily management responsibilities [to be determined by the parties]. Note: Defendant anticipates preparing a list based on non-contested facts from its statement of facts. To be clear, the issue Defendant proposes that the parties should focus on at trial is not whether these duties were performed, but rather whether these duties versus first responder duties were the "primary duty."

6. Each of the opt ins had the authority to hire or fire other employees or their suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

7. Each of the opt ins enjoyed relative freedom from direct supervision at all times relevant to this case.

8. All of the patrol lieutenants received pay raises of at least 10% at the time of their promotion sergeant to lieutenant.

9. The Patrol Lieutenant job description accurately reflects the job responsibilities for each of the opt ins.

10. The office or non-manual work performed by the opt ins relates directly to management or general business operations at all times relevant to this case.

11. The opt ins exercised discretion and independent judgement with matters of significance at all times relevant to this case.

12. The dates that the opt-ins worked as Patrol Lieutenants, and the dates they worked in specific districts within Patrol Bureaus East or West

13. That Patrol Bureaus East and West are comprised of the following districts: (1) West - Districts I, VII, and Lake Patrol (V) and (2) East - Districts II, III and IV. Defendant understands that Plaintiff Trowbridge contends SWAT was within Patrol Bureau East or West for a period of time (Defendant disputes this). There does not appear to be a dispute that the remaining specialty assignments were not in patrol bureaus east or west, specifically the Patrol Resources Bureau (Intelligence Information Division, Enforcement Support Division, Judicial Enforcement Division, Aviation Services, Extraditions, Court Security Division, and Communications Division), Investigations Bureau (Special Investigations Division, Major Crimes Division, Scientific Analysis Division, General Crimes Division, Property Management Division, and Records & AFIS). Defendant contends SWAT was part of of Patrol Resources but understands that Trowbridge disputes this.

14. That the opt ins exercised discretion regarding which calls to respond to, other than "serious" calls.

15. There may be additional issues/facts that the parties can stipulate to.

**Witnesses:** At this time, Defendant anticipates presenting testimony from the named Plaintiff and all remaining Opt-In Plaintiffs, totaling 22 individuals; between 5-10 Captains who supervised and managed the Opt-In Plaintiffs; and five additional management and human resources witnesses (MSCO Chief Barry Roska, current Chief Human Resources Officer for MSCO Kelly Grennen, former Chief Human Resources Officer for MSCO Keely Farrow, Deputy Human Resources' Director for Maricopa County, and Maricopa County Compensation Manager Erin Erskine). This totals approximately 32-37 witnesses overall, plus and additional captains called by Plaintiff (the Captains called may not overlap).

**Anticipated Length of Trial**

Defendant respectfully requests at least 75 hours per side if all issues are tried together (and unless substantial stipulations can be reached). The Court's proposed allocation of 30 hours per side presents substantial practical difficulties given the anticipated witnesses and scope of proof. Plaintiffs anticipate calling 32 witnesses, including the 22 opt-in Plaintiffs whom Defendant also intends to examine 32-37. Thirty hours divided among those 32+ witnesses permits less than one hour of examination per witness for each side, before accounting for additional defense witnesses, openings, and closings. Defendant's examination must address three asserted exemptions, Plaintiffs' first-responder theory, and individualized issues concerning assignments, hours worked, and damages.

Alternatively, if the court is inclined to bifurcate, Defendant respectfully submits that the presentation of evidence and testimony can be substantially narrowed. Defendant anticipates it could potentially present its case in 55 hours or less if bifurcated. That figure could further be reduced through stipulation of facts relevant to the exemptions that Defendant needs to establish. For example, if Plaintiff is willing to stipulate that the lieutenants all manage a customarily recognized department or subdivision within MCSO and only dispute whether that is their primary duty, then Defendant can focus presentation

of evidence on the primary duty analysis rather than offering evidence that the lieutenants manage a customarily recognized department **<u>and</u>** that it is their primary duty. Defendant requests that the final time allocation be finalized after stipulated facts are established.

**Presentation of Defendant's Affirmative Case**

Defendant objects to Plaintiffs' proposal that Defendant be required to present its affirmative case exclusively through cross-examination during Plaintiffs' case-in-chief. Defendant seeks a meaningful opportunity to organize and present its defenses coherently and based on its own case in chief. Requiring its affirmative proof to be presented within Plaintiffs' own chosen witness sequence risks fragmenting Defendant's presentation of evidence and creating the mistaken impression that Defendant offered little evidence of its own.

If the Court nevertheless limits witnesses to a single appearance, Defendant requests that the examination sequence accommodate both parties' affirmative presentations: (1) Plaintiffs' direct examination; (2) Defendant's cross-examination followed by its affirmative examination; (3) Plaintiffs' redirect examination concerning their claims and cross-examination concerning Defendant's affirmative presentation; and (4) Defendant's redirect examination concerning matters raised during Plaintiffs' examination of the defense presentation. Defendant's affirmative examination should not be restricted to the scope of Plaintiffs' direct examination. And Defendant should be given the opportunity for re-direct as part of its case-in-chief.

Moreover, it the Court is inclined to adopt Plaintiff's proposal that witnesses have a single appearance, it is Defendant's position that the Court should give a jury instruction before testimony begins, repeated when Plaintiffs rest, explaining that the Court has required witnesses to testify only once and that Defendant is therefore presenting substantial portions of its affirmative case during Plaintiffs' case-in-chief.

**Other suggestions on how this case can be resolved efficiently and fairly.**

**Use of Summaries.** As an additional means of streamlining trial, Defendant proposes presenting summaries of voluminous business records under Federal Rule of

Evidence 1006. Separately, Defendant proposes identifying relevant portions of each opt-in Plaintiff's deposition testimony and also preparing concise summaries of uncontested facts based on facts that Plaintiff did not dispute in response to Defendant's Separate Statement of Facts offered with its Motion for Summary Judgment. These materials could focus examinations, avoid unnecessary repetition, and identify matters requiring clarification or additional testimony. Defendant proposes that the parties exchange the summaries and supporting record references before trial and identify specific objections in advance, while preserving each party's opportunity to examine witnesses concerning disputed facts.

**Limited Supplemental Discovery:** Defendant also requests leave to conduct targeted discovery, including depositions, of any opt-in Plaintiffs whom it has not previously had an opportunity to examine. By way of explanation, Defendant was only permitted to take written discovery as to half of the proposed collective. The limited discovery that Defendant took of the opt ins it was permitted to take included: (1) interrogatories seeking information such as the district the opt in worked in and dates/schedule as well as whether they served as a commander or acting captain, identification of workweeks they contended to be entitled to overtime, and outside employment (including police related off duty assignments); (2) requests for production sought production of records relating to the number of hours worked, duties, and outside employment/off duty police assignments; and (3) requests for admission regarding the scope of overtime claims in this case. In total, Defendant served six interrogatories, seven requests for production, and five requests for admission on the opt ins it was permitted to take discovery of (other than Houck). Defendant respectfully submits that being able to take this basic discovery prior to depositions will expedite and streamline the deposition process.

Defendant's Availability for Trial:

Counsel for Defendant has multiple trials scheduled in 2027.

Defense counsel Santiago has a scheduled arbitration the week of January 12, 2027. She Also has a two-week federal court jury trial before Judge Tuchi commencing February

24, 2027.

Defense counsel Guner also has multiple federal court trials scheduled before Judge Rayes. These are consolidated cases resulting from decertified actions. The decertified actions have resulted in 144 cases in Arizona that have been consolidated before Judge Rayes. Judge Rayes has indicated that he will begin scheduling 8-day trials where the cases will be tried in batches of 8, 10, or 12 starting in May 2027. Defendant has requested certification for interlocutory relief, but the request has not been addressed via a written order. Defendant anticipates orders on outstanding issues to be issued shortly.

In light of the foregoing trial schedules, Defense counsel respectfully requests that a trial date be set fall or winter of 2027.

DATED: November 20, 2026.

**FRANKEL SYVERSON PLLC**
By *s/ Ty D. Frankel*
Ty D. Frankel
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016

**FRANKEL SYVERSON PLLC**
Patricia N. Syverson
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123

*Attorneys for Plaintiff*

**FISHER & PHILLIPS LLP**
By *s/ Shayna Balch Santiago (w/permission)*
Shayna Balch Santiago
Lori A. Guner
David G. Myers
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487

*Attorneys for Defendant*